1  Catherine Cabalo, Esq. (CA Bar No. 248198)
2  Peiffer Rosca Wolf Abdullah Carr & Kane
   4 Embarcadero Center, 14th Floor
3  San Francisco, CA 94111
   Telephone: 415.766.3592
4  Facsimile: 415.402.0058
   Email: ccabalo@prwlegal.com
5

6  *Attorneys for Plaintiffs*
   *Abdul Nevarez and Priscilla Nevarez*
7

8                   UNITED STATES DISTRICT COURT
9                   NORTHER DISTRICT OF CALIFORNIA
10

| 11 | ABDUL NEVAREZ and PRISCILLA NEVAREZ, | ) | Case No. |
|---|---|---|---|
| 12 | | ) | <u>Civil Rights</u> |
| 13 | Plaintiffs, | ) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES |
| 14 | | ) | |
| 15 | v. | ) | 1.  Violations of Title III of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*) |
| 16 | FORTY NINERS FOOTBALL COMPANY, LLC, a Delaware limited liability company; FORTY NINERS SC STADIUM COMPANY, LLC, a Delaware limited liability company; NATIONAL FOOTBALL LEAGUE; CITY OF SANTA CLARA; SANTA CLARA STADIUM AUTHORITY; TICKETMASTER ENTERTAINMENT, INC.; and DOES 1-10, Inclusive, | ) | 2.  Violations of Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*) |
| 17 | | ) | 3.  Violation of the Rehabilitation Act of 1973 (29 U.S.C. § 794) |
| 18 | | ) | 4.  Violations of California Government Code Section 11135 |
| 19 | | ) | 5.  Violations of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*; California Health & Safety Code §§ 19955 *et seq.*) |
| 20 | | ) | 6.  Violations of the California Unruh Act (Cal. Civil Code § 51 *et seq.*) |
| 21 | | ) | |
| 22 | | ) | |
| 23 | Defendants. | ) | |

24

25       COME NOW Plaintiffs ABDUL NEVAREZ and PRISCILLA NEVAREZ

26  (together "Plaintiffs") on behalf of themselves and all other similarly situated disabled

27  and associated persons in this civil rights action, and hereby complain of defendants

28  FORTY NINERS FOOTBALL COMPANY, LLC; FORTY NINERS SC STADIUM

    COMPANY, LLC; NATIONAL FOOTBALL LEAGUE; CITY OF SANTA CLARA;

SANTA CLARA STADIUM AUTHORITY; TICKETMASTER ENTERTAINMENT, INC.; and DOES 1-10 (together "Defendants") as follows:

## INTRODUCTION

1.      This is a civil rights action involving the lack of disabled access to the building, structure, facility, complex, property, land, development, and/or surrounding business complex known as "Levi's Stadium," located at or about: 4900 Marie P DeBartolo Way, Santa Clara, California 95054 (hereinafter the "Stadium").

2.      Plaintiff ABDUL NEVAREZ (sometimes "Mr. Nevarez") is mobility disabled and requires the use of a wheelchair.  He and his wife, plaintiff PRISCILLA NEVAREZ (sometimes Ms. Nevarez") have been long-time fans of the San Francisco Forty-Niners football team ("Niners").  Mr. and Ms. Nevarez go to as many Niners games as possible at the Stadium with their family.  They also attend other events at the Stadium, such as Supercross.

3.      The configuration of the Stadium and its ticketing policies deny "full and equal" access required by Title III of the Americans with Disabilities Act of 1990, and supplementary State civil rights laws.  As a result, Mr. Nevarez has been continuously denied access and/or deterred from visiting the Stadium during the two years preceding the filing of this Complaint (and earlier), suffered a denial of his rights to due process, was embarrassed and humiliated, and suffered statutory and general damages.  Such discrimination by public entity defendants CITY OF SANTA CLARA and SANTA CLARA STADIUM AUTHORITY is prohibited by Title II of the Americans with

Disabilities Act of 1990.  Mr. Nevarez seeks damages and injunctive relief requiring provision of access under the Americans with Disabilities Act of 1990 ("ADA") and injunctive relief for "full and equal access" and statutory damages under California law. Plaintiff PRISCILLA NEVAREZ seeks recovery of damages for being retaliated against by Defendants for her assertion of rights on her and her husband's behalf.  Plaintiffs also seek recovery of reasonable statutory attorney fees, litigation expenses and costs, under federal and state law.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction of this action pursuant to 28 USC § 1331 for violations of the ADA, 42 USC §§ 12101 *et seq.*  Pursuant to pendant jurisdiction, attendant and related causes of action arising from the same facts are also brought under California law, including but not limited to violations of Health & Safety Code §§ 19953-19959; California Civil Code §§ 51, 52, 54, 54.1, and 54.3; and Title 24 California Code of Regulations.

5.      Venue is proper in this court pursuant to 28 USC § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiffs' causes of action arose in this district.

6.      This case should be assigned to the San Jose Division of the Northern District of California, as the real property which is the subject of this action is located in this intradistrict and Plaintiffs' causes of action arose in this intradistrict.

## PARTIES

7.      At all times relevant to this Complaint, Plaintiff ABDUL NEVAREZ is qualified as a "person with a disability," as this term is used under California law and under federal laws, including but not limited to Titles II and III of the ADA.  Mr. Nevarez's right leg is amputated above the knee and he has significant nerve damage in his left leg and left arm.  He requires use of a wheelchair for mobility.  He also possesses a disabled parking placard and/or license plate issued by the State of California, entitling him to park in designated accessible and van-accessible parking spaces.  Mr. Nevarez's wife, Plaintiff PRISCILLA NEVAREZ, assisted Mr. Nevarez with and accompanied him to all the events described in this Complaint.

8.      Defendants FORTY NINERS FOOTBALL COMPANY, LLC ("49ERS LLC"); FORTY NINERS SC STADIUM COMPANY, LLC ("STADCO"); NATIONAL FOOTBALL LEAGUE ("NFL"); CITY OF SANTA CLARA ("CITY"); SANTA CLARA STADIUM AUTHORITY ("STADIUM AUTHORITY"); TICKETMASTER ENTERTAINMENT, INC. ("TICKETMASTER"); and DOES 1-10 are the owners, operators, lessors, and lessees, of the businesses, properties, facilities, and/or portions thereof located at or about 4900 Marie P DeBartolo Way, Santa Clara, California 95054 (previously referred to as the "Stadium").  Upon information and belief, defendants 49ERS LLC and the NFL own and operate the Niners, for which the Stadium was built. Upon information and belief, defendants CITY and STADIUM AUTHORITY own and operate the Stadium and the property on which the Stadium was constructed.  Upon information and belief, defendant STADCO leases portions of the Stadium from defendant STADIUM AUTHORITY, and STADCO then subleases these areas of the

Stadium to defendant 49ERS LLC.  Upon information and belief, defendant TICKETMASTER operates all ticket sales for the Stadium.

9.      The true names or capacities, whether individual, corporate, associate, or otherwise of defendants DOES 1-10 are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named defendants is in some manner legally responsible for the events and happenings herein referred to, which caused injury and damages to Plaintiffs as herein alleged.  Plaintiffs pray leave of Court to amend this Complaint to show such true names and capacities when the same have been ascertained.

10.     Plaintiffs are informed and believe, and on such information and belief allege, that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of herein.  All actions alleged herein were done with the knowledge, consent approval and ratification of each of the Defendants herein, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

11.     The subject Stadium and its facilities, including but not limited to its entrances/exits, wayfinding signage, seating, interior and exterior paths of travel, concessions, parking facilities, and ticketing procedures are each a "public accommodation" and part of a "business establishment," subject to the requirements of multiple categories of § 301(7) of the ADA (42 U.S.C. § 12181(7)), of California Health & Safety Code §§ 19953 *et seq.*, of California Civil Code §§ 51 *et seq.*, and of California Civil Code §§ 54 *et seq.*  On information and belief, this Stadium and its facilities have, since July 1, 1970, undergone construction and/or "alterations, structural repairs, or additions," subjecting the facility to disabled access requirements per Health & Safety Code §§ 19955-19959 *et seq.*, and as to alterations since January 26, 1993, to the disabled access requirements of § 303 of the ADA (42 U.S.C. § 12183).  Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations.  On information and belief, the Stadium was constructed from 2012 to 2014.  However, this new Stadium lacks many required accessible features. Further, irrespective of the construction and alteration history, removal of many of the access barriers at the subject premises are subject to the "readily achievable" barrier removal requirements of Title III of the ADA and, as to defendants CITY and STADIUM AUTHORITY, to the "programmatic access" requirements of Title II of the ADA.

12.     Plaintiff ABDUL NEVAREZ has visited the Stadium as a paying customer multiple times in the last two years and encountered numerous barriers (both physical and intangible) that interfered with, if not outright denied, his ability to use and enjoy the goods, services, privileges and accommodations offered at the Stadium.  Plaintiff

PRISCILLA NEVAREZ assisted and accompanied Mr. Nevarez on all his visits to the Stadium.

13.     Mr. and Ms. Nevarez attempted to attend their first Niners game at the Stadium, a December 20, 2014 game against the San Diego Chargers.  They called the Stadium's Box Office ("Box Office") to purchase tickets but were told that the Stadium did not sell tickets over the phone and that they had to buy them in person.  Ms. Nevarez told the Box Office representative that Mr. Nevarez is an amputee in a wheelchair and that they needed to purchase tickets in advance so they could plan accordingly.  However, the Box Office refused to make any type of accommodation for them.  They were referred to the Stadium's "legal department" and explained the situation to a man on the phone.  He also refused to make any type of accommodation.

14.     Mr. and Ms. Nevarez were able to attend the December 20, 2014 game after a friend heard of their plight and gave them her season tickets for the game.  This friend called the Stadium and was able to exchange her season tickets for disabled-accessible seats.  Mr. and Ms. Nevarez were shocked that the Stadium had no problem exchanging tickets for a season ticket holder but refused to assist them earlier on the phone.

15.     Mr. and Ms. Nevarez's friend also gave them her parking pass for the game, which allowed them to park on the grass of the golf course adjacent to the Stadium.  However, it was difficult to negotiate Mr. Nevarez's wheelchair through the grass and travel to the shuttle which took them to the "Visa Box Office" to get the tickets.  After getting the tickets at the Visa Box Office, they were forced to travel a significant distance to the entrance to the Stadium.

Complaint

16.     Since the Box Office refused to assist them for the December 20, 2014 game, Mr. and Ms. Nevarez tried a different approach for an April 18, 2015 Supercross event at the Stadium -- they purchased four disabled-accessible seats.  They purchased the tickets online using the Stadium website.  Upon information and belief, all online tickets sales for Stadium are operated by defendant TICKETMASTER.

17.     On April 18, 2015, Mr. and Ms. Nevarez parked in the Stadium's main lot in disabled-accessible parking.  Upon entering the Stadium, they proceeded to find an elevator, but could not find one.  The Stadium had no signs indicating where the elevators are located, and despite walking around they could not find any elevator or any Stadium employee who knew where the elevator was located.  Mr. and Ms. Nevarez were exhausted from traveling back and forth alongside the Stadium trying to locate an elevator or knowledgeable staff.  Only after speaking with numerous employees and having one employee finally radio for assistance, were Mr. and Ms. Nevarez able to locate an elevator.

18.     While Mr. and Ms. Nevarez were watching the races at the April 18, 2015 Supercross event, their friend invited them up to his suite at the Stadium.  They entered the suite, but it was extremely tight and uncomfortable, as it was not wheelchair-accessible and they were in everyone's way.  Mr. Nevarez could not watch the races, as there was no access for him to watch.  A flight of stairs led down to the only stadium-view seats for the suite and there was a bar/table behind the stadium-view seats, at which people were sitting.  The only place Mr. Nevarez could see the races was at the door where the stairs led down to the stadium-view seats for the suite, but he and Ms. Nevarez

had to keep moving since people were coming in and out to get food.  They spent the entire time moving out of people's way, which was extremely embarrassing.

19.    A friend of Mr. and Ms. Nevarez had two extra tickets to the November 29, 2015 game against the St. Louis Cardinals, so she invited them to tailgate and go to the game. Mr. and Ms. Nevarez attempted to purchase a parking pass for the game on the Ticketmaster.com website.  Ticketmaster.com did not have any disabled-accessible parking available at the standard price so they were forced to purchase a VIP parking pass which was $10 extra.  Using this parking pass, they parked in Blue Lot 1.  They arrived early but the lot didn't open until 10:00 am, which meant that they could enjoy the tailgate party for a short time only since they had to make the trek to the Visa Box Office to exchange the tickets gifted to them for a disabled-accessible and companion seat.  They were advised by the Stadium that disabled-accessible tickets are available on a first-come, first-served basis.

20.    Ms. and Mr. Nevarez parked close to the entrance of Blue Lot 1.  From the entrance of Blue Lot 1, there was no signage indicating where shuttle service or the designated pedestrian path of travel from Blue Lot 1 to the Stadium was located.  Ms. Nevarez approached a male parking attendant to ask for a shuttle to the Visa Box Office to exchange Mr. Nevarez's ticket for a disabled-accessible seat.  The parking attendant directed them to the far end of Blue Lot 1, which was further away from the Stadium, and told them the shuttle was located there.  This was extremely inconvenient since the Visa Box Office is already a very far distance from Blue Lot 1.  They had to leave the tailgate early to give themselves enough time to push Mr. Nevarez's wheelchair across the entire

parking lot to get to the shuttle and get to the Visa Box Office before it ran out of disabled-accessible tickets.

21.     A friend of Mr. and Ms. Nevarez decided to join them since he also had to exchange his ticket for a disabled-accessible seat.  They left the tailgate to head across Blue Lot 1 to the shuttle station and arrived at a table with a flag with a wheelchair symbol.  However, the employees stationed there were unable to assist them with getting a shuttle.  Ms. and Mr. Nevarez and their friend walked to another area where a "Bauer's Transportation" bus was parked, but the employees there told them that the ramp/lift for the bus was broken.  Ms. and Mr. Nevarez then requested a golf cart for transport to the Visa Box Office.  After radioing for assistance, an employee advised them that a golf cart was on in its way.  Mr. and Ms. Nevarez and their friend waited approximately 30 minutes, but no cart came.  Ms. Nevarez went back to the employee who radioed for the golf cart to find out the status of the cart.  After calling for radio assistance again, the employee advised Ms. Nevarez that there was no golf cart coming because golf carts cannot cross Talisman Road to access the parking lot that they were in.  Stadium employees made no effort to alert Mr. and Ms. Nevarez of this change of the plan.  Had Ms. Nevarez not proactively inquired of the employee who requested the golf cart, she, Mr. Nevarez, and their friend would have been left waiting there indefinitely.

22.     By this point, Mr. and Ms. Nevarez were extremely upset by the lack of shuttle access, clueless Stadium employees, and the ultimate waste of time to get to the Visa Box Office.  When another Bauer's bus showed up, employees operating this bus said they could take them but only to a certain parking lot -- not all the way to the Visa Box Office.

By then, they had already wasted 45 minutes and had not even left the parking lot.  They decided that the time to load onto the bus and wait for other passengers (they were advised the bus would not leave until it was full) would not afford them enough time, especially because the bus could not take them all the way to the Visa Box Office.

23.     They started walking/rolling towards the Stadium along Democracy Way.  The sidewalk was uphill, curvy, with multiple cracks and split concrete, which is very dangerous for a wheelchair.  Ms. Nevarez proceeded to push Mr. Nevarez in his wheelchair to the next main intersection, Old Ironside Drive.  At that intersection a pedicab tricycle driver said he could take all 3 of them and the wheelchair for $40.  This pedicab was the only way they could get to the Visa Box Office, as it was still almost a mile away of pushing the wheelchair on the unsafe sidewalks.  Ms. Nevarez and the friend helped Mr. Nevarez get into the pedicab and Ms. Nevarez took apart Mr. Nevarez's wheelchair to fold it up and load it.  Their friend got in, Ms. Nevarez loaded Mr. Nevarez's wheelchair, and Ms. Nevarez squeezed in on Mr. Nevarez's lap.  It was humiliating for all of them to be on that pedicab together, everyone staring at them.  They were also worried that they would not be able to exchange their tickets in enough time.  The driver told them he could only take them to the entrance of the main parking lot and left them there.  Ms. Nevarez struggled to put Mr. Nevarez's wheelchair back together and rush to the Visa Box Office.

24.     They still had to hike a distance to get to the Visa Box Office.  Once they made it through the main parking lot, they had to get through the metal detectors.  They approached a flag with the wheelchair symbol, however, Mr. Nevarez's wheelchair

---

11

would not fit through the metal detector at this marked wheelchair "accessible" entrance. Multiple Stadium employees stood there with blank stares when Mr. and Ms. Nevarez asked where they were supposed to go, which made navigating more difficult and embarrassing.  None of the Stadium employees could tell them what to do or where to go. Finally, a female employee yelled at them to go all the way to the end of the metal detectors to get in.  They proceeded that way and finally made it inside, at which point they still had to get to the Visa Box Office, which was located across a bridge and on the opposite side of the Stadium from where the main entrance was located.

25.     Having endured extreme difficulty getting to the Stadium, entering through security, and finally getting seated, Ms. and Mr. Nevarez decided to leave in the third quarter of the game because they feared similar difficulties getting back to their car in Blue Lot 1.  As they were exiting, a Stadium employee offered to assist them and took them to a bench by the elevator.  They waited several minutes, but got anxious with the passage of time and more people exiting the Stadium.  They asked the employee if she was getting them assistance to take them to Blue Lot 1.  She said no, she was calling for assistance to escort them to the shuttle.  Explaining that they did not need an escort to the shuttle, Ms. and Mr. Nevarez left and headed down the elevator and out of the Stadium. As they were walking toward the parking lot, they asked an employee about the shuttle. The employee stated that passengers would need to wait until the shuttle was full before it would take off.  Deciding the shuttle would be a waste of time and further hinder their exit and make departure difficult, they continued walking/rolling toward Blue Lot 1 and hailed another pedicab, which they paid $30 for.  They finally got to their car and exited

Blue Lot 1, emotionally and physically exhausted from the day's ordeal.

26.     On or about March 15, 2016, Ms. Nevarez attempted to buy a block of tickets for Mr. Nevarez and her, their kids, and a few friends to go to Supercross 2016, scheduled to take place on April 2, 2016 at the Stadium.  The Stadium website automatically directed her to the Ticketmaster.com website to buy tickets.  However, there were no disabled-accessible seats available on the Ticketmaster.com website for the event.

27.     She called the Box Office on or about March 28, 2016 to buy an accessible seat for Mr. Nevarez and to coordinate seats for the rest of their family and friends.  They were planning to use a discount code provided to them by a local radio station to purchase $20 tickets for everyone.  The Box Office representative told Ms. Nevarez that the Stadium had accessible seats available for $49/seat, which were the least expensive accessible seats available, but that she had to buy the accessible seat in person from the Box Office (i.e. the Box Office could not sell tickets over the phone).  When she explained that it was not possible to drive all the way from where they live in Antioch to the Box Office just to purchase tickets in advance, she was told that there were no other options if they wanted to buy an accessible seat in advance.  Their only option was to buy tickets in person, which meant that they would need to wait until the day of the event and hope that there would still be accessible seats available and that their family and friends could be seated together.  The Box Office representative also alerted Ms. Nevarez that she would not be able to use her discount code if she did not book online.  Fearing that they would not be able to attend the event if they didn't buy tickets in advance, Ms. and Mr. Nevarez decided to buy a block of regular seat tickets online and plan to exchange

Complaint

Mr. Nevarez's ticket for an accessible seat on the day of the event.

28.     On April 2, 2016 Mr. and Ms. Nevarez arrived at the Stadium in the mid-afternoon.  Their children were arriving separately with their friends and were planning to meet them at the Stadium.  Mr. and Ms. Nevarez went to a trailer set up as the Stadium's box office for the event to exchange Mr. Nevarez's ticket for an accessible seat and to ensure they all sat together.  However, the box office trailer was set up in a way that there was no way that Mr. Nevarez or anyone in a wheelchair would be able to get to the ticket windows – the Stadium had barriers set up that did not allow for a path of travel wide enough for a wheelchair.  Mr. and Ms. Nevarez asked the Stadium employee standing in front of the trailer how Mr. Nevarez would have been expected to access the ticket window on his own.  The employee said that he would run between Mr. Nevarez and the ticket window to complete the transaction or move stuff around to "get him in there."

29.     Ms. Nevarez was forced to go to the ticket window without Mr. Nevarez.  He stayed behind the barriers, which was embarrassing and humiliating.  The female employee at the ticket window advised Ms. Nevarez that she could get no more than 4 seats together (1 accessible seat + 3 companion seats).  After the many obstacles Ms. and Mr. Nevarez endured to get to this point, only to be told that their party would not be able to be seated next to Mr. Nevarez, Ms. Nevarez expressed her frustration with the representative at the window.  The representative finally capitulated and reissued the tickets so that the entire party was seated next to an accessible seat for Mr. Nevarez, noting that she was doing this as a "one-time accommodation."

30.     When the box office trailer representative reissued the tickets, Ms. Nevarez asked

whether her kids and their friends, who were part of the original block of tickets they had purchased online but who were arriving on their own, would be able to enter the Stadium with their original tickets or if she and Mr. Nevarez now needed to track them down to give them new tickets.  The woman at the ticket window assured Ms. Nevarez that there would be no problem for the other members of the party to get in with their original tickets.

31.     When Mr. and Ms. Nevarez tried to enter the Stadium, they experienced the same entry problems as before – gate entries marked with the wheelchair symbol were not actually accessible, as the metal detectors were too narrow for a wheelchair.  They sought assistance from several Stadium employees who had no idea where Mr. Nevarez could gain entry and finally found a male employee who directed Mr. Nevarez to a gate where he could enter after being patted down.

32.     After getting through security, Ms. and Mr. Nevarez noticed a team of Stadium employees standing around with empty wheelchairs.  A woman who appeared to be the "lead" of this team approached them and asked if they needed any assistance.  Ms. Nevarez told her that they did, in fact, need assistance confirming that their kids and their friends would be able to access the Stadium despite the tickets being reissued by the box office trailer.  This woman also assured Ms. and Mr. Nevarez that their kids and their friends would be able to get in with their original tickets.

33.     Unfortunately, after Mr. and Ms. Nevarez had already situated inside to explore the vendors for the event (referred to as the "pit"), their daughter and her friend called Ms. Nevarez because they were being refused entrance to the Stadium.  Ms. and Mr.

Nevarez were forced to travel all the way to the opposite side of the Stadium (near the Visa Box Office) to get their daughter and her friend into the Stadium.  Traveling long distances like this is no small feat, given Mr. Nevarez's disability.

34.    Like all other times they have been at the Stadium, Mr. and Ms. Nevarez had difficulty locating the elevator, as it was still not marked/signed appropriately.  The elevator they finally found and used on this occasion was located through an unmarked double-door entrance.  One of the entrance doors was locked and the other door was extremely heavy to open, making it virtually impossible for Mr. Nevarez to enter without assistance.  Upon entering, they encountered difficulty trying to locate the elevator because the path to leading to the elevator was unlit and dark, making it look like an area that patrons should not be in.  Additionally, the elevator alcove was blocked by what looked like extra tables from concessions, again making it difficult for them to enter and exit the elevator.  When they complained to the elevator attendant about how difficult it always is to find the elevator, the attendant conceded, "It's like an Easter egg hunt to find the elevator.  It's like Where's Waldo?"

35.    When Mr. and Ms. Nevarez finally got to their seats, the concession booths near their seats were closed.  When they tried to access the indoor concession booths, they realized that there was no disabled-accessible seating at all seating areas and that the bar did not have a lowered section for Mr. Nevarez to order from.  They left the event frustrated, exhausted, and upset again at how awful the Stadium treats disabled patrons and their families.

36.    Plaintiff ABDUL NEVAREZ alleges continuous and ongoing discrimination.

Plaintiffs have been injured by being deterred from visiting the Stadium and other events sponsored by defendants 49ERS LLC, STADCO, and NFL for other occasions that Plaintiffs desired to visit, including Super Bowl City 2016, and incidents occurring after the filing of this Complaint to the time of final judgment.

37.     The barriers described above in paragraphs 11-36 are only those that Plaintiff ABDUL NEVAREZ encountered.  He is presently unaware of other barriers which may in fact exist at the Stadium and relate to his disabilities.  Mr. Nevarez will seek to amend this Complaint once such additional barriers are identified as it is his intention to have all barriers which exist at the Stadium and relate to his disabilities removed to afford him full and equal access.

38.     Plaintiffs' numerous complaints to Stadium employees and Defendants' representatives have been ignored.  Plaintiffs allege that it would be a futile gesture to provide further notices of violations relating to Plaintiffs' continuous visits and deterrence and retaliation by Defendants, which are certain to occur on a regular basis following the filing of this Complaint.  Therefore, Plaintiffs reserve, and will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

39.     Defendants knew, or should have known, that these policies, elements, and areas of the Stadium were inaccessible, violate state and federal law, and interfere with or deny access to the physically disabled.  Moreover, Defendants have the financial resources to remove these barriers without much difficulty or expense, and make the Stadium accessible to the physically disabled.  To date, however, Defendants refuse to either remove those barriers.

40.    GOVERNMENT CLAIM FILED – On or about July 8, 2016, Plaintiffs served a claim on defendant CITY.  In a notice dated July 20, 2016, the CITY returned plaintiff ABDUL NEVAREZ'S claims related to the December 20, 2014, April 16, 2015, and November 29, 2015 events at the Stadium as untimely.  In a notice dated August 17, 2016, the CITY returned plaintiff PRISCILLA NEVAREZ'S claims related to the December 20, 2014, April 16, 2015, and November 29, 2015 events at the Stadium as untimely.  In notices dated September 13, 2016 and September 26, 2016, the CITY rejected Plaintiffs' claims related to the April 2, 2016 event.

41.    Plaintiffs' goal in this suit is a positive one: to make the recently-constructed Stadium and its ticketing procedures available to all persons alike (regardless of their physical condition) and their families and friends who accompany them to events at the Stadium.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE ADA, TITLE III**
**[ 42 U.S.C. §§ 12101 *et seq.*]**
**(As to Plaintiffs ABDUL NEVAREZ and PRISCILLA NEVAREZ**
**against all Defendants)**

42.    Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 41 of this Complaint, and incorporate them herein as if separately repled.

43.    In 1990 the United States Congress made findings that laws were needed to more fully protect "some 43,000,000 Americans [with] one or more physical or mental disabilities;" that "historically, society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities

continue to be a serious and pervasive social problem;" that "the Nation's proper goals

regarding individuals with disabilities are to assure equality of opportunity, full

participation, independent living, and economic self-sufficiency for such individuals;"

and that "the continuing existence of unfair and unnecessary discrimination and prejudice

denies people with disabilities the opportunity to compete on an equal basis and to pursue

those opportunities for which our free society is justifiably famous . . . ." 42 U.S.C. §

12101.

44.     In passing the ADA, Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities. (Emphasis added)

42 U.S.C. § 12101(b).

45.     As part of the ADA, Congress passed "Title III - Public Accommodations

and Services Operated by Private Entities." 42 U.S.C. § 12181 *et seq.* The Stadium and

its ticketing operations are among the "private entities" which are considered "public

accommodations" for purposes of this title, which includes but is not limited to a ". . .

stadium or other place of exhibition or entertainment" (see 42 U.S.C. § 12181(7)(C)) and

"a restaurant, bar, or other establishment serving food or drink," (see 42 U.S.C. §

12181(7)(B)).

46.     The ADA states that "No individual shall be discriminated against on the

basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiffs' rights under the ADA and the regulations promulgated thereunder, 28 CFR Part 36 *et seq*.

47.     Plaintiffs allege on information and belief that the Stadium was designed

and constructed (or both) after January 26, 1993 – independently triggering access requirements under Title III of the ADA. The ADA prohibits designing and constructing facilities for first occupancy after January 26, 1993 that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1). Here, Defendants violated the ADA by designing and constructing (or both) the Stadium in a manner that made it not readily accessible to the physically disabled public, including plaintiff ABDUL NEVAREZ, when it was structurally practical to do so.

48.     The removal of each of the barriers complained of by plaintiff ABDUL NEVAREZ as herein alleged, were at all times herein mentioned "readily achievable" under the standards §§ 12181 and 12182 of the ADA. As noted throughout this Complaint, removal of each and every one of the architectural barriers complained of herein was also required under California law. Plaintiffs allege on information and belief that the Stadium was modified after January 26, 1993. Any alterations, structural repairs or additions since January 26, 1993 have independently triggered requirements for removal of barriers to access for disabled persons per § 12183 of the ADA. If removal of any physical barrier is found to be "not readily achievable," Defendants still violated the ADA, per § 12182(b)(2)(A)(v), by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

49.     The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii). Here, Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Stadium and for events at the Stadium, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, and accommodations.

50.     On information and belief, as of the dates of Plaintiffs' encounters regarding events at the Stadium and as of the filing of this Complaint, the subject premises have denied and continue to deny full and equal access to plaintiff ABDUL NEVAREZ and to other mobility disabled persons in other respects, which violate Mr. Nevarez's rights to full and equal access and which discriminate against him on the basis of his disability, thus wrongfully denying to him the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of §§ 12182 and 12183 of the ADA.  42 U.S.C. §§ 12182 and 12183.

51.     Although defendants CITY and STADIUM AUTHORITY are Title II entities, on information and belief defendants CITY and STADIUM AUTHORITY are also liable under Title III as the "owner" of the property on which the Stadium, which operates as a Title III entity, is situated and for which the Stadium operators and lessees make rental payments.  On information and belief, defendants CITY and STADIUM AUTHORITY are also liable, as a lessor of the Stadium and subject property, under Title III of the ADA, in addition to its liability under Title II.  Regarding being a Title III entity, defendants CITY and STADIUM AUTHORITY, as landlords, may be necessary parties to any injunction or consent decree for injunctive relief that may be required to obtain access for disabled persons at the Stadium in the respects complained of, pursuant to the ADA.  42 U.S.C. § 12188.

52.     Pursuant to the ADA, 42 U.S.C. 12188 *et seq.*, Mr. Nevarez is entitled to the remedies and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as he is being subjected to discrimination based on disability in violation of the ADA or has reasonable grounds for believing that he is about to be subjected to discrimination.  Pursuant to § 12188(a)(2), "Injunctive relief.  In the case of violations of sections 12182(b)(2)(A)(iv) and section 12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter. Where appropriate, injunctive relief shall also include requiring the provision of an

auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this subchapter."

53.     Plaintiff ABDUL NEVAREZ seeks relief pursuant to remedies set forth in § 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), and pursuant to Federal Regulations adopted to implement the ADA.  He is a qualified disabled person for purposes of § 12188(a) of the ADA who is being subjected to discrimination based on disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may attempt to use the subject facilities.

54.     Plaintiff PRISCILLA NEVAREZ seeks relief pursuant to remedies set forth in 42 U.S.C. § 12203.  She has been discriminated against in her attempts to assist Mr. Nevarez with obtaining tickets for and attending events at the Stadium.

WHEREFORE, Plaintiffs request additional relief as outlined below.

## SECOND CAUSE OF ACTION:
### VIOLATION OF THE ADA, TITLE II [42 USC §§ 12201 *et seq.*]
### (As to Plaintiffs ABDUL NEVAREZ and PRISCILLA NEVAREZ against defendants CITY and STADIUM AUTHORITY only)

55.     Plaintiffs replead and incorporate by reference, as if fully set forth hereafter, the allegations contained in Paragraphs 1 through 54 of this Complaint and incorporate them herein as if separately repled.

56.     Effective January 26, 1992, plaintiff ABDUL NEVAREZ is entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990.  Title II, Subpart A prohibits discrimination by any "public entity", including any state or local government, as defined by 42 U.S.C. § 12131.

57.     Pursuant to Title II of the ADA (42 U.S.C. § 12132), no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.  Plaintiff ABDUL

NEVAREZ was at all times relevant herein a qualified individual with a disability as defined by the ADA.

58.     Public entity defendants CITY and STADIUM AUTHORITY have failed in their responsibilities under Title II to provide their services, programs and activities in a full and equal manner to disabled persons as described herein, including failing to ensure that the Stadium and other public facilities located on the property owned and operated by defendants CITY and STADIUM AUTHORITY are properly accessible to disabled persons; failing to ensure that related public facilities and public accommodations, as described herein, are accessible to disabled persons; and failing to remove known architectural barriers at the subject facilities so as to be accessible to disabled persons, and/or modify its programs, services and activities to make them accessible to disabled persons, including Mr. Nevarez.  As a proximate result of defendants CITY and STADIUM AUTHORITY's actions and omissions, Mr. Nevarez was discriminated against in violation of Title II of the ADA and of the regulations adopted to implement the ADA.  Mr. Nevarez has suffered damages, compensable under Title II for intentional acts of defendants CITY and STADIUM AUTHORITY, including deliberate indifference, and has suffered physical, mental and emotional damages, including difficulty, discomfort or embarrassment.

59.     Per § 12133 of the ADA, as a result of such discrimination, in violation of § 12132 of the ADA, Mr. Nevarez is entitled to the remedies, procedures and rights set forth in Section 505 of the Rehabilitation Act of 1973 (29 USC § 794a).

60.     To the date of filing this Complaint, the specified public facilities continue to be inaccessible for safe and independent use by physically disabled persons such as Mr. Nevarez.  Mr. Nevarez is unable, so long as such acts and omissions of defendants CITY and STADIUM AUTHORITY continue, to achieve equal access to and use of these public buildings and facilities, and cannot return to properly use these facilities until they are made properly accessible to disabled persons.  Mr. Nevarez alleges that he intends to do so, once legally required access has been provided.  The acts of defendants

1
2
CITY and STADIUM AUTHORITY have proximately caused and will continue to cause
irreparable injury to Mr. Nevarez if not enjoined by this Court.

3
4
5
61.     Plaintiff PRISICILLA NEVAREZ seeks relief pursuant to remedies set
forth in 42 U.S.C. § 12203.  She has been discriminated against in her attempts to assist
Mr. Nevarez with obtaining tickets for and attending events at the Stadium.

6
7
WHEREFORE, Plaintiffs request relief as outlined below.

8
9
10
11
**THIRD CAUSE OF ACTION:**
**VIOLATION OF THE REHABILITATION ACT OF 1973**
**[29 U.S.C. § 794]**
**(As to Plaintiff ABDUL NEVAREZ only against**
**defendants CITY and STADIUM AUTHORITY only)**

12
13
14
62.     Plaintiffs replead and incorporate by reference, as if fully set forth again
herein, the allegations contained in Paragraphs 1 through 61 of this Complaint, and
incorporate them herein as if separately repled.

15
16
17
18
19
63.     Upon information and belief, at all times relevant to this action, defendants
CITY and STADIUM AUTHORITY were recipients of federal funding within the
meaning of the Rehabilitation Act.  As recipients of federal funds, they are required to
reasonably accommodate persons with disabilities in their facilities, programs, and
activities.

20
21
64.     Plaintiff ABDUL NEVAREZ is a qualified individual with a disability as
defined in the Rehabilitation Act. 29 U.S.C. § 705.

22
23
24
25
65.     By their policies and practices of discriminating against and failing to
reasonably accommodate patrons with mobility disabilities, defendants CITY and
STADIUM AUTHORITY violated Section 504 of the Rehabilitation Act.  29 U.S.C. §
794.

26
27
28
66.     As a result of defendants CITY and STADIUM AUTHORITY's
discrimination and failure to provide reasonable accommodations, plaintiff ABDUL
NEVAREZ and others with disabilities do not have equal access to the activities,

programs, and services at the Stadium for which they are otherwise qualified.

67.     Mr. Nevarez's injuries are ongoing so long as defendants CITY and STADIUM AUTHORITY do not modify their policies and procedures and provide fully-accessible facilities for Mr. Nevarez and other persons with mobility disabilities.

WHEREFORE, Plaintiffs request relief as outlined below.

## FOURTH CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135
### (As to Plaintiff ABDUL NEVAREZ only against
### defendants CITY and STADIUM AUTHORITY only)

68.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 67 of this Complaint, and incorporate them herein as if separately repled.

69.     Upon information and belief, defendants CITY and STADIUM AUTHORITY receive financial assistance from the State of California.  Plaintiff ABDUL NEVAREZ is a person with a disability within the meaning of California Government Code section 11135.

70.     Defendants CITY and STADIUM AUTHORITY denied Mr. Nevarez full access to the benefits of their programs and activities for which defendants CITY and STADIUM AUTHORITY receive financial assistance from the State of California, and unlawfully subjected Mr. Nevarez and other persons with disabilities to discrimination within the meaning of California Government Code section 11135(a) based on their disabilities.

71.     Plaintiff ABDUL NEVAREZ's injuries are ongoing so long as defendants CITY and STADIUM AUTHORITY do not modify their policies and procedures and provide fully-accessible facilities for Mr. Nevarez and other persons with mobility disabilities.

WHEREFORE, Plaintiffs request relief as outlined below.

## FIFTH CAUSE OF ACTION:

**VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT**
**[Cal. Civil Code §§ 54 *et seq.* and**
**California Health and Safety Code §§ 19955 *et seq.*]**
**(As to Plaintiffs ABDUL NEVAREZ and PRISCILLA NEVAREZ against all**
**Defendants but as to Plaintiff ABDUL NEVAREZ only**
**as to Health & Safety Code §§ 19955 *et seq.*)**

72.     Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the factual allegations contained in paragraphs 1 through 71, above, and incorporate them herein by reference as if separately repled hereafter.

73.     The Stadium is a public accommodation under the California Disabled Persons Act ("DPA"). Cal. Civil Code § 54.1.

74.     Plaintiff ABDUL NEVAREZ and other similarly situated physically disabled persons, including those who require the use of a wheelchair, are unable to use public facilities on a "full and equal" basis unless each such facility is in compliance with the provisions of California Health & Safety Code §§ 19955 *et seq.*  Mr. Nevarez is a member of that portion of the public whose rights are protected by the provisions of Health & Safety Code §§ 19955 *et seq.*

75.     California Health & Safety Code §§ 19955 and 19955.5 were enacted "[t]o ensure that public accommodations or facilities constructed in this state with private funds adhere to the provisions of Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code."  On information and belief, the provisions of both Health and Safety Code §§ 19955 and 19955.5, apply to the Stadium.  Title 24, California Code of Regulations, formerly known as the California Administrative Code, was in effect at the time of construction and alterations which, on information and belief,

occurred at such public facility since January 1, 1982, thus requiring access complying with the specifications of Title 24 whenever each such "alteration, structural repair or addition" was carried out. On information and belief, Defendants and/or their predecessors in interest carried out new construction and/or alterations, structural repairs, and/or additions to such buildings and facilities during the period Title 24 has been in effect.

76.     As fully explained above in paragraphs 11 -36, Mr. Nevarez experienced numerous barriers to access at the Stadium and in buying tickets for events at the Stadium, which caused him major difficulty, discomfort and embarrassment.  Mr. Nevarez suffered physical, mental and emotional damages, all to his general, statutory and treble damages, according to proof.

77.     On information and belief, the access features of the Stadium and ticketing procedures have not been improved since Mr. and Ms. Nevarez's visit on April 2, 2016.

78.     Further, on information and belief, the Stadium and its premises are also illegally inaccessible in multiple other respects.  The barriers to access described in this Complaint are listed without prejudice to Plaintiffs citing additional barriers to access after inspection by Plaintiffs' access consultant, per the 9th Circuit's standing standards under *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008).  These barriers to access render the Stadium and its premises inaccessible to and unusable by physically disabled persons. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof.  Mr. Nevarez prays leave to amend this Complaint to obtain full injunctive relief.

79.    Further, each and every violation of the ADA (as pled in the First and Second Causes of Action, *supra*, the contents of which are repled and incorporated herein as if separately repled), also constitutes a separate and distinct violation of California Civil Code § 54(c), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code § 54.3.

80.    Further, each and every violation of the ADA (as pled in the First and Second Causes of Action, *supra*, the contents of which are repled and incorporated herein as if separately repled), also constitutes a separate and distinct violation of California Civil Code § 54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code § 54.3.

81.    Under the DPA, individuals with disabilities have the same right as "the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places."  Cal. Civil Code §§ 54 and 54.1.

82.    Defendants violated the DPA by their acts and omissions, as follows:

   A.    Failure to modify its policies and procedures as necessary to ensure Plaintiff ABDUL NEVAREZ full and equal access to the accommodations, advantages, facilities, privileges, or services at the Stadium;

   B.    Failure to construct and/or alter the Stadium in compliance with state building code and state architectural requirements;

   C.    Violation of the ADA, a violation of which is a violation of the DPA. Cal. Civ. Code §§ 54(c) and 54.1(d).

83.     TREBLE DAMAGES: On information and belief, Defendants have continued their illegal and discriminatory policies and practices despite actual knowledge that people with physical mobility disabilities, including Plaintiff ABDUL NEVAREZ, attempt to patronize the Stadium and encounter illegal barriers when they do so. Although Plaintiffs complained to several different employees, including, on information and belief, managerial employees of Defendants, about the lack of accessible ticket procedures and facilities, on information and belief, no access improvements were made as a result of complaints made by Plaintiffs.  Upon information and belief, the "Scope of Development" for the Stadium ("Exhibit D" to the ground lease between defendants CITY and STADIUM AUTHORITY, attached to this Complaint as **Exhibit 1**) mandates the inclusion of the following at the Stadium:

> . . . curbs, gutters, sidewalks, entry gates, retaining walls, and ramps, including ramps compliant with the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended ("ADA"); ADA seating platforms and camera platforms; on-site Stadium parking stalls (including ADA stalls); signage, including, pavement markings, banners, advertising signs, wayfinding signs and monument signs; handrails; railings . . . .

However, Defendants failed to meet these obligations in constructing the Stadium. Defendants have continued their illegal and discriminatory policies and practices at the Stadium and in ticketing procedures for the Stadium despite actual knowledge that people with physical mobility disabilities attempt to patronize the subject Stadium and encounter illegal physical and policy barriers when they do so.

84.     At all times herein mentioned, Defendants knew, or in the exercise of reasonable diligence should have known, that their barriers and policies and practices at their

facilities violated disabled access requirements and standards, and had a discriminatory

affect upon Plaintiff ABDUL NEVAREZ and his supporter and wife, Plaintiff

PRISCILLA NEVAREZ, and upon other physically disabled persons, but Defendants

have failed to rectify the violations, and presently continue a course of conduct in

maintaining policy and architectural barriers that discriminate against Mr. Nevarez and

similarly situated disabled persons.  Plaintiffs therefore pray for an award of treble

damages to assist in enforcement of access requirements.

WHEREFORE, Plaintiffs request relief as outlined below.

### SIXTH CAUSE OF ACTION:
### VIOLATION OF UNRUH CIVIL RIGHTS ACT
### [Cal. Civil Code §§ 51 *et seq.*]
### (As to both Plaintiffs ABDUL NEVAREZ and
### PRISCILLA NEVAREZ against all Defendants)

85.    Plaintiffs replead and incorporate by reference, as if fully set forth again herein,

the factual allegations contained in Paragraphs 1 through 84, above, and incorporate them

herein by reference as if separately repled hereafter.

86.    The Unruh Civil Rights Act, California Civil Code 51(b), provides that:

> All persons within the jurisdiction of this state are free and equal, and no
> matter what their sex, race, color, religion, ancestry, national origin,
> disability, or medical condition are entitled to the full and equal
> accommodations, advantages, facilities, privileges, or services in all
> business establishments of every kind whatsoever.

87.    Defendants are business establishments within the meaning of the Unruh Act.

Defendants are the owners and operators of business establishments.

88.    Defendants violated the Unruh Act by their acts and omissions, as follows:

A.     Failure to modify their policies and procedures as necessary to ensure Plaintiff ABDUL NEVAREZ full and equal access to its accommodations, advantages, facilities, privileges, or services at the Stadium;

B.     Failure to construct and/or alter the Stadium in compliance with state building code and state architectural requirements;

C.     Violation of the ADA, a violation of which is violation of the Unruh Act. Cal. Civil Code § 51(f).

89.    Defendants' behavior was intentional: Defendants were aware of and/or were made aware of their duties to refrain from establishing discriminatory policies and barriers preventing physically disabled persons from accessing their facilities, prior to the filing of this Complaint.  For example, as noted above in paragraph 83, Defendants were aware of their obligations to provide accessible features under the ADA but failed to construct the Stadium accordingly.  Additionally, Plaintiffs complained on numerous occasions to Defendants, to no avail.

90.    Plaintiffs' injuries are ongoing so long as Defendants do not modify their policies and procedures and provide fully-accessible facilities for Plaintiff ABDUL NEVAREZ and other persons with mobility disabilities.

WHEREFORE, Plaintiffs request relief as outlined below.

## **PRAYER**

1.     Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of Defendants as

alleged herein, unless Plaintiffs are granted the relief they request.  Plaintiffs and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California.  The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff ABDUL NEVAREZ and PRISCILLA NEVAREZ pray for judgment and the following specific relief against Defendants:

2.     Issue a declaratory judgment that Defendants' actions, omissions, and failures, including but limited to: failing to construct and modify the premises in compliance with the law, failing to operate accessible ticketing procedures, failing to make reasonable accommodations and reasonable modifications for Mr. Nevarez and other similarly situated disabled persons, and retaliating against Ms. Nevarez for asserting rights on her and Mr. Nevarez's behalves, violate the rights of Plaintiffs and other similarly situated persons under 42 U.S.C. §§ 12101 *et seq.* and the regulations promulgated thereunder; 29 U.S.C. § 794; California Government Code § 11135; California Health & Safety Code §§ 19955-19959; and California Civil Code §§ 51 *et seq.* and 54 *et seq.*

3.     Issue an order enjoining Defendants, their agents, officials, employees, and all persons and entities acting in concert with it:

    a.   From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To provide reasonable accommodation for persons with disabilities in all its programs, services and activities at the Stadium;

    c. To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at the Stadium;

    d. To modify the above-described facilities and procedures to provide full and equal access to persons with physical disabilities, including without limitation the removal of all barriers to access where "readily

achievable";

  e. To maintain such accessible facilities and procedures once they are provided;

  f. To train Defendant's employees and agents in how to accommodate the rights and needs of physically disabled persons;

  g. To implement nondiscriminating protocols, policies, and practices for accommodating persons with mobility disabilities.

4.   Retain jurisdiction over Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of herein no longer occur, and cannot recur;

5.   Award to Plaintiffs all appropriate damages, including but not limited to statutory damages, general damages, and treble damages in an amount within the jurisdiction of the Court, all according to proof;

6.   Award to Plaintiffs all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law, including but not limited to "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure § 1021.5.

7.   Award prejudgment interest pursuant to California Civil Code § 3291;

8.   Grant such other and further relief as this Court may deem just and proper.

Dated: December 7, 2016     PEIFFER ROSCA WOLF ABDULLAH CARR & KANE

           s/ Catherine Cabalo

           BY: CATHERINE CABALO
           Attorneys for Plaintiffs
           ABDUL NEVAREZ and PRISCILLA NEVAREZ

Complaint

## **DEMAND FOR JURY**

Plaintiffs hereby demand a jury for all claims for which a jury is permitted.


Dated: December 7, 2016       PEIFFER ROSCA WOLF ABDULLAH CARR & KANE

s/ Catherine Cabalo
BY: CATHERINE CABALO
Attorneys for Plaintiffs
ABDUL NEVAREZ and PRISCILLA NEVAREZ