1  MATTHEW S. CONANT, SBN 94920
   msc@llcllp.com
2  MARIA M. LAMPASONA, SBN 259675
   mlampasona@llcllp.com
3  ALEXEI N. OFFILL-KLEIN, SBN 288448
   aoffillklein@llcllp.com
4  LOMBARDI, LOPER & CONANT, LLP
   Lake Merritt Plaza
5  1999 Harrison Street, Suite 2600
   Oakland, CA  94612-3541
6  Telephone:     (510) 433-2600
   Facsimile:     (510) 433-2699
7
   Attorneys for Defendants FORTY NINERS
8  FOOTBALL COMPANY LLC, FORTY NINERS
   SC STADIUM COMPANY LLC, FORTY
9  NINERS STADIUM MANAGEMENT
   COMPANY LLC, CITY OF SANTA CLARA,
10 SANTA CLARA STADIUM AUTHORITY, and
   NATIONAL FOOTBALL LEAGUE
11
                UNITED STATES DISTRICT COURT
12
              NORTHERN DISTRICT OF CALIFORNIA
13
                      SAN JOSE DIVISION
14

15 ABDUL NEVAREZ and PRISCILLA      Case No.  5:16-cv-07013-LHK
16 NEVAREZ,
                                    **DEFENDANT NATIONAL FOOTBALL**
17              Plaintiffs,         **LEAGUE'S NOTICE OF MOTION AND**
                                    **MOTION TO DISMISS; MEMORANDUM OF**
18      v.                          **POINTS AND AUTHORITIES**

19 FORTY NINERS FOOTBALL            Hon. Lucy H. Koh
   COMPANY, LLC, a Delaware limited
20 liability company; FORTY NINERS SC   Date:     May 4, 2017
   STADIUM COMPANY, LLC, a Delaware     Time:     1:30 p.m.
21 limited liability company; NATIONAL  Ctrm:     8, 4th Floor
   FOOTBALL LEAGUE; CITY OF
22 SANTA CLARA; SANTA CLARA         Trial:    None Scheduled
   STADIUM AUTHORITY;
23 TICKETMASTER ENTERTAINMENT,
   INC.; FORTY NINERS STADIUM
24 MANAGEMENT COMPANY LLC; and
   DOES 1-10, Inclusive,
25
                Defendants.
26

27

28

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORDS:

PLEASE TAKE NOTICE that on Thursday, May 4, 2017, at 1:30 p.m., in Courtroom 8, located on the 4th Floor of the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, or as soon thereafter as the matter may be heard, defendant National Football League ("NFL") will, and hereby does, move this Court for an order to dismiss plaintiffs' first amended complaint pursuant to Federal Rule of Civil Procedure, rules 12(b)(1) and 12(b)(6), on the grounds that plaintiffs fail to state a claim upon which relief may be granted, and on the grounds that plaintiff Priscilla Nevarez lacks standing to a assert a claim against defendant.  This motion is made and based upon this Notice, the Memorandum of Points and Authorities, the Court's record in this matter, any reply brief filed, and any other evidence or argument that may be presented prior to the Court's decision.

## RELIEF SOUGHT / ISSUES TO BE DECIDED

Defendant National Football League requests that this Court dismiss plaintiffs' first amended complaint, and each cause of action therein on the following grounds:

1.     Under Federal Rules of Civil Procedure, rule 12(b)(6), plaintiffs fail to state a claim upon which relief can be granted.

2.     Under Federal Rules of Civil Procedure, rule 12(b)(1), Priscilla Nevarez lacks standing to assert a claim against defendant because she does not allege that she suffered an injury caused by defendant.

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION AND FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT

3

4         Plaintiffs bring this action against defendants for claims arising out of defendants'

5 purported denial of access to disabled persons at Levi's Stadium and its facilities in Santa Clara

6 (the "Stadium").  The Stadium is a physical location that includes spectator seating, entrances and

7 exits, and parking facilities.   [Dkt. 9, 6:6-14.]  Plaintiffs allege that Mr. Nevarez is disabled, and

8 that he and his wife, plaintiff Priscilla Nevarez, encountered architectural and other access

9 barriers at the Stadium.  [Dkt. 9, ¶¶ 11-12.]

10         The following allegations constitute the entirety of plaintiffs' contentions specific to the

11 National Football League ("NFL"):  "Upon information and belief . . . [Forty Niners Football

12 Company, LLC] and the NFL own and operate the Niners, for which the Stadium was built."[1]

13 [Dkt. 9, 4:26-28."]  Plaintiffs "have been injured by being deterred from visiting the Stadium and

14 other events sponsored by . . . NFL for other occasions that Plaintiffs desired to visit, including

15 Super Bowl City 2016, and incidents occurring after the filing of this Complaint to the time of

16 final judgment."  [Dkt. 9, 17:9-13.]  Based on these allegations, plaintiffs plead three causes of

17 action against the NFL: (1) Violation of the ADA, Title III (First Cause of Action -- ¶¶ 42-54);

18 (2) Violation of the California Disabled Persons Act (DPA) (Fifth Cause of Action -- ¶¶ 72-84);

19 (3) Violation of the Unruh Civil Rights Act (Sixth Cause of Action -- ¶¶ 85-90).

20         Because plaintiffs have not alleged that the NFL owns and/or operates the public

21 accommodation at issue – the Stadium premises – plaintiffs fail to state a Title III ADA claim

22 against the NFL.  Because plaintiffs' DPA and Unruh Act claims are predicated on violations of

23 Title III of the ADA, plaintiffs' DPA and Unruh Act claims necessarily fail as well.  Accordingly,

24 NFL respectfully requests that this Court grant this motion to dismiss.  Further, because plaintiffs

25

26

---

[1] Plaintiffs allege, on information and belief, that defendants City of Santa Clara and Santa Clara
Stadium Authority own and operate the Stadium itself, as well as the property on which the
Stadium rests, and allege that Forty Niners Stadium Management Company LLC operates and
manages the Stadium on behalf of Santa Clara Stadium Authority.  [Dkt. 9, 4:28, 5:4.]

27

28

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

1   cannot in good faith allege that the NFL owns and/or operates the Stadium, defendant requests

2   that this motion be granted without leave to amend.

3       In the event the Court finds that plaintiffs have sufficiently alleged that the NFL owns

4   and/or operates the premises, the NFL contends in the alternative that plaintiffs do not sufficiently

5   allege facts amounting to violations of the ADA, the DPA, and the Unruh Act, and contend that

6   plaintiff Priscilla Nevarez lacks standing and/or fails to state a claim upon which relief can be

7   granted.[2]

8   **II.   ARGUMENT**

9       **A.   Legal Standard**

10      A complaint may be dismissed for failure to state a claim upon which relief may be

11  granted if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its

12  face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Allegations of material fact must

13  be taken as true and construed in the light most favorable to the nonmoving party.  *Cahill v.*

14  *Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  However, the court need not accept as

15  true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences.

16  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

17      **B.   Because the NFL Does Not Own or Operate the Public Accommodation,**
18              **Plaintiffs Cannot Make out a Prima Facie Disability Discrimination Claim Against the NFL**

19          **1.   Plaintiffs' ADA Claim Fails Because Plaintiffs Do Not, and Cannot,**
20                **Allege That the NFL Owns, Leases, or Operates the Stadium**

21      In order to plead a prima facie discrimination claim under Title III of the ADA, a plaintiff

22  must plead the following elements: (1) the plaintiff was disabled within the meaning of the ADA;

23  (2) the defendant is a private entity that owns, leases, or operates a place of public

24  accommodation; and (3) the plaintiff was denied public accommodations by the defendant

25  because of his disability.[3]  42 U.S.C. § 12182(a); *Arizona ex rel. Goddard v. Harkins Amusement*

26  

———————————————

27  [2] These latter arguments apply to each of the defendants, and therefore are asserted, essentially verbatim, in each motion.

28  [3] Title III provides: "No individual shall be discriminated against on the basis of disability in the

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

*Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).  The statute identifies 12 categories of places of public accommodation.  42 U.S.C. § 12181(7).  For the purposes of this motion, NFL does not dispute that Mr. Nevarez is disabled within the meaning of the ADA, nor does it dispute that the Stadium premises constitutes a place of public accommodation.  Even assuming all facts alleged in the complaint are true, however, plaintiffs have not pleaded -- and cannot in good faith plead -- that the NFL owns, leases, leases to, or operates the Stadium.  Accordingly, plaintiffs cannot make out a prima facie Title III claim against the NFL.

Title III of the ADA prohibits discrimination "by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  The Ninth Circuit has interpreted the term "to operate" as "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage."  *Lentini v. California Center for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004).  To be considered an "operator" for purposes of the ADA, a person must have an active and significant degree of control over the access-related aspects of the facility in question.  *See id.* (holding that an individual was an "operator" under the ADA because "he was in a position of authority, having the ability to instruct the staff on who could or could not be admitted to the theater" and "in this position of authority, actively participated in the discriminatory acts."); *cf. Aikins v. St. Helena Hospital*, 843 F.Supp. 1329, 1335 (N.D. Cal. 1994) (holding that an individual was not an "operator" because he had "no authority to enact or amend hospital policy" and thus was not "in a position to ensure nondiscrimination.").

In *Lentini*, the Ninth Circuit relied on *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995) to define the term "to operate."  *Lentini*, 370 F.3d at 849 ("We agree with the Fifth Circuit's guidelines for defining the scope of the verb 'to operate' in this context.")  In *Neff*, plaintiff filed suit against the American Dairy Queen Corporation ("ADQ"), claiming it was liable for ADA violations at two San Antonio Dairy Queen franchises.  *Neff, supra,* 58 F.3d at

full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

1064.  The corporation contended that its franchisee, R&S Dairy Queens, Inc., established and

operated the stores themselves.  *Id.* at 1064-1065.  The district court granted summary judgment

in defendant's favor, concluding that ADQ did not exercise control over modifications to the

stores' facilities, and it therefore did not own or operate the stores for the purposes of the ADA.

*Id.* at 1065.

On appeal, the Fifth Circuit held that the meaning of "operator" in the context of

franchising agreements depended on whether the franchisor "specifically control[led] the

modification of the franchise to improve their accessibility to the disabled."  *Neff*, 58 F.3d at

1066.  Based on this reasoning, the Fifth Circuit concluded that the franchisor, ADQ, was not an

operator.  *Id.* at 1068.  Even though ADQ retained "the right to set standards for the building and

equipment maintenance and to 'veto' proposed structural changes," "this supervisory authority,

without more, [was] insufficient to support a holding that ADQ "operates," in the ordinary and

natural meaning of that term," the franchisee stores.  *Id.*

*Neff*, whose reasoning the Ninth Circuit adopted in *Lentini*, has been applied to similar

issues presented by the instant case, i.e., a suit under Title III against both a pro sports franchisor

and a franchisee.  In *Cortez v. National Basketball Association*, 960 F.Supp.113 (W.D. Tex.

1997), the Western District of Texas applied *Neff* where the plaintiffs were hearing-impaired

spectators who had attended professional basketball games at the Alamodome in San Antonio.

The plaintiffs brought an action under the ADA, "suing a franchisor – the National Basketball

Association (NBA); a franchisee of the NBA – the San Antonio Spurs, and the owner of the

venue of NBA contests – Alamodome, Inc."  *Cortez, supra,* 960 F.Supp at 114.  The plaintiffs

claimed the NBA exercises "such profound control over the venue in which its teams play that it

de facto 'operates' those venues (e.g. the Alamodome) during its game" for purposes of the ADA.

*Id.*  In addition, the plaintiffs argued that "besides the physical structures of the venues

themselves, the games offered or sold as entertainment to the public by the NBA must comply

with Title III as well."  *Id.* at 116-17.

In denying plaintiffs' motion for reconsideration of its order granting the NBA's motion to

dismiss, the Court relied on *Neff*, holding that plaintiffs could not state a claim for relief against

the NBA because the NBA does not own, operate, or lease the Alamodome, or any other NBA arena. *Id.* at p 115, 116. With respect to plaintiffs' argument that the NBA must ensure the games themselves were ADA compliant, the district court found that *Neff* directed that the NBA did not "operate" a place of public accommodation, and there were no allegations that the NBA leased or owned the public accommodation -- the stadium -- at issue, regardless of the nature of the events that took place at the public accommodation. *Id.* at p. 117.

*Cortez* is instructive here. As in *Cortez*, plaintiffs in the instant case allege that the franchisor -- the NFL -- owns and operates a franchise: the Forty Niners.[4] [Dkt. 9, ¶ 8.] As in *Cortez*, plaintiffs do not allege that the franchisor owns and operates the Stadium, which is the public accommodation at issue. Nor do they allege any facts regarding the NFL's control, or lack thereof, over modifications of the Stadium to improve access to the disabled. Accordingly, plaintiffs have not made out a prima facie case for ADA discrimination against the NFL, and plaintiff's claims against the NFL should be dismissed. Because plaintiffs cannot in good faith amend the complaint to allege that the NFL owns or operates the Stadium premises, the claims should be dismissed without leave to amend.

> ### 2. Because Plaintiffs Do Not State an ADA Claim Against the NFL, and Do Not Allege Intentional Discrimination on the Part of the NFL, Plaintiffs' Unruh Act Claim Fails As Well

In their sixth cause of action, plaintiffs allege that defendants, including moving party the NFL, violated the Unruh Act. (Dkt. 9, ¶¶ 85-90.)

The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). When an Unruh Act claim is premised on a

---

[4] Although it is not dispositive to this motion, defendant questions whether the allegation in Paragraph 8, that the NFL "owns and operates" the Forty Niners, can be made in good faith. *See, e.g., Oakland Raiders v. National Football League*, 131 Cal.App.4th 621, 635 (2005) ("[I]t is without dispute that the NFL is an unincorporated not-for-profit association of 31 (now 32) member clubs. . . . As such, neither the NFL nor its member clubs fit the [Citation] model of fiduciary duties owed by majority shareholders to their corporation and to minority shareholders.")

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA 94612-3541

1   violation of the ADA, a plaintiff need not show intent.  *See* Cal. Civ. Code § 51(f); *Munson v. Del*

2   *Taco, Inc.*, 46 Cal.4th 661, 670 (2009).  An Unruh Act claim may be maintained independent of

3   an ADA claim, however, only where a plaintiff pleads "intentional discrimination in public

4   accommodations in violation of the terms of the Act." *Munson v. Del Taco, Inc.*, 46 Cal.4th 661,

5   668 (2009), quoting *Harris v. Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175 (1991).  As

6   discussed above, plaintiffs cannot maintain an ADA claim against the NFL.  Therefore, they must

7   plead intentional discrimination in order to state an Unruh Act claim against the NFL.

8        In order to plead intentional discrimination, "there must be allegations of 'willful,

9   affirmative misconduct,' and the plaintiff must allege more than the disparate impact of a facially

10   neutral policy on a particular group." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D.Cal.

11   2012), citing *Koebke v. Bernardo Heights Country Club*, 36 Cal.4th 824, 854 (2005) and *Young v.*

12   *Facebook, Inc.*, 790 F.Supp.2d 1110, 1115 (N.D.Cal. 2011).  To state an independent cause of

13   action under the Unruh Act, a plaintiff's claim cannot be based solely on the disparate impact of

14   defendant's policies on disabled individuals, but must be grounded in specific allegations of

15   intentional discrimination.  *See id.*

16        Here, with respect to plaintiffs' Unruh Act claim, plaintiffs allege that defendants,

17   including the NFL, (1) failed to modify their policies and procedures to afford Mr. Nevarez full

18   and equal access to the Stadium; (2) failed to construct and/or alter the Stadium in compliance

19   with building code and state architectural requirements, and (3) violated the ADA.  [Dkt. 9, 32:9-

20   18.]

21        In Paragraph 89, plaintiffs allege further, in conclusory fashion, as follows:

22            Defendants' behavior was intentional: Defendants were aware of
             and/or were made aware of their duties to refrain from establishing
23            discriminatory policies and barriers preventing physically disabled
             persons from accessing their facilities, prior to the filing of this
24            Complaint.  For example, as noted above in paragraph 83,
             Defendants were made aware of their obligations to provide
25            accessible features under the ADA but failed to construct the
             Stadium accordingly.  Accordingly, Plaintiffs complained on
26            numerous occasions to Defendants, to no avail.

27

28        As an initial matter, as discussed in section III.A.1, *supra*, there is no allegation that the

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

NFL owns, operates, or built the Stadium premises, or that it exercises any control over disabled access at the Stadium.[5]  In addition, even if plaintiffs had alleged NFL exercised the requisite control over the premises, plaintiffs' allegations do not adequately allege specific willful, affirmative misconduct on the part of the NFL.

Plaintiffs allege that, by virtue of a lease discussed in Paragraph 83, defendants were aware of their duties to refrain from establishing discriminatory policies and barriers, and, by virtue of this awareness or knowledge, any violations were necessarily willful and affirmative.[6] But there is no allegation that the NFL is a party to the lease discussed in Paragraph 83.  In addition, the mere allegation that defendants knew the law cannot, alone, be sufficient to establish willful and affirmative misconduct; the willful and affirmative misconduct requirement would be rendered toothless.

Because plaintiffs do not allege any sufficiently pleaded willful and affirmative activity on the part of defendants, and do not allege that the NFL has any connection to the Stadium premises itself, plaintiffs' Unruh Act claim against the NFL cannot be maintained.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (To establish a "plausible" claim, the complaint must contain "more than labels and conclusions" or "formulaic recitations of the elements of a cause of action."  Accordingly, plaintiffs' Unruh Act claim, as against the NFL, should be dismissed without leave to amend.

### 3.    Plaintiffs Fail to State Facts Sufficient to Constitute an Independent Violation of the DPA

In plaintiffs' fifth cause of action, they allege that each defendant violated the California Disabled Act ("DPA") with respect to barriers to access at the Stadium.

The DPA provides that "[i]ndividuals with disabilities shall be entitled to full and equal

---

[5] Defendant incorporates by reference those arguments here, but, for brevity's sake, will not repeat them.

[6] Paragraph 83 of plaintiffs' First Amended Complaint refers to a lease between defendants City of Santa Clara and Santa Clara Stadium Authority, and states that the lease is attached to the complaint.  The document is not attached.

access, as other members of the general public, to accommodations, advantages, facilities, . . .

places of public accommodation, amusement, or resort, and other places to which the general

public is invited. . . ." Cal. Civ. Code § 54(a)(1). "'Full and equal access' is defined by section

54.1 to mean access that complies with the regulations developed under federal ADA or under

state statutes, if the latter imposes a higher standard." Cal. Civ. Code § 54.1(a)(3); *Urhausen v.*

*Longs Drug Stores Cal., Inc.*, 155 Cal.App.4th 254, 263 (2007).

In Paragraph 82, plaintiffs allege defendants engaged in the following violations of the

DPA:

> A. Failure to modify its policies and procedures as necessary
>    to ensure Plaintiff ABDUL NEVAREZ full and equal
>    access to the accommodations, advantages, facilities,
>    privileges, or services at the Stadium;
>
> B. Failure to construct and/or alter the Stadium in compliance
>    with state building code and state architectural
>    requirements;
>
> C. Violation of the ADA, a violation of which is a violation of
>    the DPA.  Cal. Civ. Code §§ 54(c) and 54.1(d).

Plaintiffs' allegations with respect to the DPA are thus predicated on (1) defendants'

violation of the ADA [subdivisions (A) and (C) above], and, apparently, (2) their independent

violation of unidentified portions of California Health and Safety Code §§ 19955 and 19955.5

[subdivision (B) above].  [See Dkt. 9, ¶ 75, 82.]  But each of the three allegations above depend

on a showing that the defendant owned and operated the Stadium premises, or exercised control

over the accessibility of the premises to disabled individuals.  Plaintiffs have not alleged these

prerequisites with respect to the NFL.  Accordingly, plaintiffs' DPA claims against the NFL fail

for the same reasons their ADA claims fail.  Because plaintiffs do not allege that the NFL owned

and operated, or exercised control over, the Stadium, plaintiff's DPA claim against the NFL

should be dismissed without leave to amend.

/ / /

/ / /

/ / /

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

C.   **Even if the Court Determines the NFL "Operates" the Stadium Sufficient for Plaintiffs to State a Claim, Priscilla Nevarez Lacks Standing and/or Fails to State a Claim for Relief**[7]

1.   **Ms. Nevarez's ADA Claim**

Ms. Nevarez seeks relief not on the basis that she is disabled within the meaning of the ADA, but on the basis that she "assisted" or "supported" Mr. Nevarez, a disabled individual, "asserted" rights on his behalf, and/or because defendants have "retaliated" against her for such actions.  [Dkt. 9, 3:7-8, 23:19-20.]  Accordingly, Ms. Nevarez "seeks relief pursuant to remedies set forth in 42 U.S.C. § 12203."  [Dkt. 9, 23:18-19.]  Because Ms. Nevarez's allegations of independent harm are insufficient to constitute claims under 42 U.S.C. section 12203, nor under section 12182, as a matter of law, her ADA claims should be dismissed.[8]

42 U.S.C. § 12203 provides, in pertinent part, as follows:

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

---

[7] For the Court's reference, the reaminder of this brief is repeated, essentially verbatim, in each of defendants' motions, as the arguments apply with respect to the claims against each defendant.

[8] As plaintiffs bring this suit on behalf of all others similarly situated, Ms. Nevarez's claims have the potential to vastly expand the scope of this litigation, and should be dismissed at this early opportunity if appropriate. Defendants are unaware of any other legal theory that could conceivably offer Ms. Nevarez relief, and therefore address her contentions only with respect to 42 U.S.C. § 12203 and § 12182.  To the extent Ms. Nevarez seeks to state a claim for association discrimination under 42 U.S.C. § 12112(b)(4), she has not alleged that she was employed by any defendant.  42 U.S.C. §§ 12112(a), 12111(2) (providing that a "covered entity" for purposes of § 12122 means "an employer, employment agency, labor organization, or joint labor-management committee).  (Nor has she alleged that she filed a charge with the EEOC.)  In the event there exist other relevant theories of relief, they have not been set forth in the First Amended Complaint.

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

42 U.S.C. section 12203(a) is the ADA's anti-retaliation provision. *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1264 (9th Cir. 2009).  To establish a prima facie of retaliation under the ADA, "an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 849 (9th Cir. 2004) (citation omitted).

Here, Ms. Nevarez has not alleged that she was an employee of defendants, nor that she has suffered an adverse employment action -- nor any adverse action.  Accordingly, her retaliation claim under 42 U.S.C. section 12203(a) should be dismissed.  To the extent retaliation can be claimed by a non-employee, she has not alleged any acts on the part of defendants that rise to the level of retaliation.

42 U.S.C. section 12203(b) is the ADA's interference provision.  To the extent Ms. Nevarez claims a violation of the ADA's interference provision based on a violation of the ADA's retaliation provision, this claim, which is duplicative, fails by virtue of Ms. Nevarez's inability to state a claim for retaliation under 42 U.S.C. section 12203(a).

To the extent Ms. Nevarez claims a separate and distinct violation of the ADA's interference provision, she must allege that she was subject to "coerc[ion]," "intimidat[ion]," a "threat[ ]," or "interference within the meaning of the statute.  42 U.S.C. § 12203(b).  As an initial matter, defendants have been unable to find a Ninth Circuit decision holding that an ADA interference claim under section 12203(b) can be maintained in a non-employment context.[9] Defendants contend that it cannot.  Even assuming that such a claim can be asserted where no individual has suffered an adverse employment action, Ms. Nevarez's allegations do not rise to the level of an actionable interference claim.

The scope of the ADA's anti-interference provision is "guided" by the Ninth Circuit's

---

[9] Facing an issue of first impression, the Eleventh Circuit, in *Shotz v. City of Plantation*, 344 F.3d 1161, 1181 (11th Cir. 2003), modified the analysis of an ADA employment retaliation claim and applied it in a non-employment complex, holding that in order to state a claim for retaliation in violation of the ADA, a plaintiff must show 1) plaintiff's involvement in a *protected activity*, 2) defendant subjected plaintiff to an *adverse action*, and there existed a 3) a causal link between the protected activity and the defendant's action.

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

1    "treatment of the [Fair Housing Act's] interference provision," which reaches "all practices [that]

2    have the effect of interfering with the exercise of rights under the federal fair housing laws."

3    *Brown v. City of Tuscon*, 336 F.3d 1181, 1191 (9th Cir. 2003) (internal citations omitted).  The

4    ADA's interference provision is not so "broad as to prohibit any action whatsoever that in any

5    way hinders a member of a protected class."  *Id.* at 1192 (emphasis added, citations omitted).

6         "Conclusory allegations" of coercion, intimidation, threats, or interference are insufficient

7    to support an ADA interference claim.  *Id.* at 1193.  An ADA plaintiff must "demonstrate that she

8    has suffered a distinct and palpable injury" or "direct harm" as a result of the claimed coercion,

9    intimidation, threats, or interference.  *Id.*  (citations omitted).  For example, a supervisor's

10   demands that a plaintiff stop taking her medications designed to help her sleep so that she would

11   be able to perform a night shift, or face demotion or forced retirement, constitutes actionable

12   interference.  *Id.*  "Short-term memory problems" along with extreme stress rise to the level of

13   distinct and palpable injury sufficient to support an ADA interference claim.  *Id.*

14        Here, Ms. Nevarez does not allege that defendants coerced, intimidated, or threatened her

15   on any occasion.  Ms. Nevarez alleges only that the mere fact that she "assisted and accompanied

16   Mr. Nevarez on all his visits to the Stadium" entitles her to state a claim for ADA interference.

17   [Dkt. 9, 7:5-7.]  In conclusory fashion, she also alleges that she "has been discriminated against in

18   her attempts to assist Mr. Nevarez with obtaining tickets for and attending events at the Stadium."

19   [Dkt. 9, 23:19-20.]  She has not alleged any independent harm apart from the harm alleged to

20   have occurred to Mr. Nevarez.

21        To the extent Ms. Nevarez is attempting to bring a claim for association discrimination

22   under 41 U.S.C. section 12182(a), she has not alleged discrimination due to her actual association

23   with a disabled individual.  Her claims differ from those cases where association discrimination

24   has been permitted; specifically, she has not alleged a specific, direct, and separate injury as a

25   result of association with Mr. Nevarez.  *See e.g. Kotev v. First Colony Life Ins. Co.,* 927 F. Supp.

26   1316, 1320-21 (C.D. Cal. 1996) (denial of life insurance based on applicant's association with his

27   HIV-positive spouse was actionable under ADA); *Bravin v. Mount Sinai Med. Ctr.*, 186 F.R.D.

28   293, 307 (S.D.N.Y. 1999) (wife allowed to bring claim under ADA for hospital's refusal to

1    provide interpreter for her deaf husband), opinion vacated in part on other grounds at 58 F. Supp.

2    2d 269 (S.D.N.Y. 1999).

3                    **2.    Ms. Nevarez's Unruh Act Claim**

4           A violation of the Unruh Act[10] may be maintained independent of an ADA claim only

5    where a plaintiff pleads "intentional discrimination in public accommodations in violation of the

6    terms of the Act."  *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 668 (2009), quoting *Harris v.*

7    *Capital Growth Investors XIV*, 52 Cal.3d 1142, 1175 (1991).  In order to prove intentional

8    discrimination, "there must be allegations of 'willful, affirmative misconduct,' and the plaintiff

9    must allege more than the disparate impact of a facially neutral policy on a particular group."

10   *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D.Cal. 2012), citing *Koebke v. Bernardo*

11   *Heights Country Club*, 36 Cal.4th 824, 854 (2005) and *Young v. Facebook, Inc.*, 790 F.Supp.2d

12   1110, 1115 (N.D.Cal. 2011).

13          Thus, to state a cause of action under the Unruh Act, Ms. Nevarez's claim cannot be based

14   solely on the disparate impact of defendants' policies on disabled individuals, but must be

15   grounded in allegations of intentional discrimination.  *See Id.*  Here, Ms. Nevarez alleges that

16   defendants (1) failed to modify their policies and procedures to afford Mr. Nevarez full and equal

17   access to the Stadium, (2) failed to construct and/or alter the Stadium in compliance with building

18   code and state architectural requirements, and (3) violated the ADA.  [Dkt. 9, 32:9-18.]  These

19   allegations do not describe willful, affirmative misconduct sufficient to state an Unruh Act claim.

20          Ms. Nevarez also alleges, in conclusory fashion, as follows:

21              Defendants' behavior was intentional: Defendants were aware of
                and/or were made aware of their duties to refrain from establishing
22              discriminatory policies and barriers preventing physically disabled
                persons from accessing their facilities, prior to the filing of this
23              Complaint.  For example, as noted above in paragraph 83,
                Defendants were made aware of their obligations to provide
24              accessible features under the ADA but failed to construct the
                Stadium accordingly.  Accordingly, Plaintiffs complained on
25

26   ─────────────────────
     [10] The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and
27   equal, and no matter what their . . . disability . . . are entitled to the full and equal
     accommodations, advantages, facilities, privileges, or services in all business establishments of
28   every kind whatsoever."  Cal. Civ. Code § 51(b).

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

numerous occasions to Defendants, to no avail.

As an initial matter, if plaintiffs' allegations above were sufficient to establish willful and affirmative misconduct, then every lease that included a clause relating to ADA would be sufficient to establish willful misconduct on the part of the lessor based on a single ADA violation.  The willful and affirmative misconduct requirement would be rendered meaningless.

In short, Ms. Nevarez's allegations fail to sufficiently allege defendants engaged in willful and affirmative misconduct against her.  See *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."); see also *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (To establish a "plausible" claim, the complaint must contain "more than labels and conclusions" or "formulaic recitations of the elements of a cause of action.").  Accordingly, because Ms. Nevarez has not adequately pleaded intentional discrimination, her Unruh Act claim should be dismissed.

### 3.   Ms. Nevarez's DPA Claim

Ms. Nevarez's allegations with respect to the DPA are the same as her allegations in support of her ADA and Unruh Act claims.[11]  Ms. Nevarez's claims under the DPA fail for the same reasons her ADA and Unruh Act claims fail: she has not alleged a specific, particularized, independent injury.

### D.   Plaintiffs' Claims Are Not Actionable

Plaintiffs' claims are organized such that it is difficult to address them coherently.  Nonetheless, some or all of the claimed violations alleged by plaintiffs are not actionable as a matter of law.

/ / /

---

[11] The DPA provides that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, . . . places of public accommodation, amusement, or resort, and other places to which the general public is invited. . . ." Cal. Civ. Code § 54(a)(1).  "'Full and equal access' is defined by section 54.1 to mean access that complies with the regulations developed under federal ADA or under state statutes, if the latter imposes a higher standard." Cal. Civ. Code § 54.1(a)(3); *Urhausen v. Longs Drug Stores Cal., Inc.*, 155 Cal.App.4th 254, 263 (2007).

**1.      The December 20, 2014 Football Game**

Plaintiffs make a number of allegations regarding a December 20, 2014 football game at the Stadium.  [Dkt. 9, ¶¶ 13-15]  These allegations are not actionable.

First, plaintiffs have not alleged that any tickets were available, whether to the general public or to disabled customers.  The fact that plaintiffs' friend was able to exchange season tickets for disabled-accessible tickets over the phone [Dkt. 9, ¶ 14] does not establish that the Stadium sold tickets over the phone to the friend while refusing to sell to plaintiffs; exchanging is not the same as purchasing.  In short, plaintiffs have not alleged that they were treated in a different manner than the general population.  See *Access Now, Inc. v. South Florida Stadium Corp.*, 161 F.Supp.2d 1357, 1367 (S.D.Fla. 2001) (holding that the ADA does not require a facility to afford a disabled customer a greater opportunity to purchase a seat than a non-disabled customer).

While plaintiffs allege they received disabled-accessible seating tickets from their friend [Dkt. 9, ¶ 14], they do not allege that they received, or requested, or that their friend received or requested, disabled-accessible parking.  They allege that their friend gave them her parking pass.  [Dkt. 9, ¶ 15.]  There is no indication that they requested disabled-accessible parking.  Elsewhere in the complaint, they allege that parking passes, including potentially disabled-accessible parking passes, were available for purchase online.  [Dkt. 9, ¶ 19.]  But plaintiffs do not allege that they tried to purchase one for this event.  Accordingly, plaintiffs have not alleged a disability discrimination violation with respect to the December 20, 2014 football game.

**2.      The April 18, 2015 Supercross Event**

In Paragraph 18, plaintiffs allege violations relating to their attendance at a "Supercross event" at the Stadium.  While they were already present at a Supercross event at the Stadium, a friend invited them up to his suite.  [Dkt. 9, 8:24-26.]  Due to the small quarters in the suite, plaintiffs "were in everyone's way," and Mr. Nevarez could not see the events from the suite unless he were to descend a flight of stairs or loiter near the staircase.  [Dkt. 9, 8:24-26.]  Plaintiffs "spent the entire time moving out of people's way, which was extremely embarrassing." [Dkt. 9, 9:6-8.]

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

1    Plaintiffs do not allege that they purchased disabled-accessible tickets, that their friend

2    purchased disabled-access tickets, or that the suite was promised to be disabled-accessible.  Thus,

3    the circumstances above are not actionable.

4           **3.      The November 29, 2015 Football Game**

5    On November 29, 2015, plaintiffs attended a football game at the Stadium.  They allege

6    that there were no disabled-accessible parking passes available at the standard price on the

7    Ticketmaster website.  [Dkt. 9, ¶ 19.]

8    The fact that there was no disabled-accessible parking available at the standard price is not

9    actionable, nor is the fact that plaintiffs paid additional money to purchase VIP parking.  In

10   addition, the fact that the Stadium employed a first-come, first-served system for disabled-

11   accessible tickets is not a violation of law.  When an individual with a disability acquires an

12   inaccessible ticket through the secondary market, a public accommodation is required to make

13   reasonable modifications to its policies "to allow the individual to exchange his ticket for one to

14   an accessible seat in a comparable location if accessible seating is vacant at the time the

15   individual presents the ticket to the public accommodation."  28 U.S.C. § 36.302(f)(7)(ii).  In

16   other words, with respect to seating, a first-come, first-served policy [Dkt. 9, 9:20-22] is

17   permissible.

18   With respect to the fact that Blue Lot 1 was far from the box office, plaintiffs have not

19   alleged whether this parking lot, or their "VIP parking pass," was disabled-accessible, and have

20   not stated alternative grounds why these allegations could support their causes of action.

21          **4.      The April 2, 2016 Supercross Event**

22   Plaintiffs' next visit to the Stadium was the April 2, 2016 "Supercross 2016" event.  [Dkt.

23   9, ¶¶ 26-35.]  Again, plaintiffs advance several allegations that are not actionable.

24   First, plaintiffs allege that they were inconvenienced because tickets were not available for

25   purchase over the phone or online.  Plaintiffs allege that they live in Antioch, over two hours from

26   the stadium, and that it is not convenient for them to purchase tickets in person.  However, they

27   do not allege that non-accessible seats could not be purchased in any other way other than in

28   person.  Indeed, the Stadium does not sell *any* tickets over the phone.

1    In addition, plaintiffs have not alleged that their disability was a motivating factor in the

2    denial of a public accommodation.  *See Access Now*, at 1367.

3    At some point, Ms. Nevarez was told that she could purchase no more than four seats

4    together (one accessible seat and three companion seats).  [Dkt. 9, ¶ 29.]  This restriction is not

5    actionable, as it is in accordance with federal regulations:

6
> For each ticket for a wheelchair space purchased by an individual
> with a disability or a third-party purchasing such a ticket at his or
7  > her request, a public accommodation shall make available for
> purchase three additional tickets for seats in the same row that are
8  > contiguous with the wheelchair space, provided that at the time of
> purchase there are three such seats available.  A public
9  > accommodation is not required to provide more than three
> contiguous seats for each wheelchair space.

10   28 C.F.R. § 36.302 (f)(4)(i).

11   **E.    Plaintiffs Do Not Allege a Likelihood of Future Injury**

12   A plaintiff seeking injunctive relief must demonstrate a "sufficient showing of likely

13   injury in the future related to the plaintiff's disability to ensure that injunctive relief will vindicate

14   the rights of the particular plaintiff rather than the rights of third parties."  *Chapman v. Pier 1*

15   *Imports (U.S.) Inc.*, 631 F.3d 939, 949.  A plaintiff may establish Article III standing to pursue

16   injunctive relief either by demonstrating an intent to return to a noncompliant accommodation or

17   by demonstrating that he is deterred from visiting a noncompliant public accommodation because

18   he has encountered barriers related to his disability there.  *Id.*  Here, plaintiffs do not allege either

19   prong sufficiently.  They allege only that they "have been injured by being deterred from visiting

20   the Stadium and other events sponsored by defendants 49ERS LLC, STADCO, and NFL for other

21   occasions that Plaintiffs desired to visit, including Super Bowl City 2016, and incidents occurring

22   after the filing of this Complaint to the time of final judgment."  [Dkt. 9, ¶ 36.]  This conclusory

23   allegation is insufficient to establish a likelihood of returning or that plaintiffs have been deterred

24   from visiting in the future.

25   / / /

26   / / /

27   / / /

28

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

III.   **CONCLUSION**

Plaintiffs have not, and cannot, allege that the NFL owns or operates the Stadium, or that it otherwise exercises the requisite degree of control over modifications to the Stadium premises, such as to state a viable Title III ADA claim.  For the same reasons, plaintiffs fail to state Unruh Act and DPA Claims against the NFL.  Accordingly, plaintiffs cannot make out a prima facie case against the NFL, and this motion to dismiss should be granted without leave to amend.  In addition, Ms. Nevarez, who is not disabled, lacks standing and cannot state a claim upon which relief can be granted, and certain of plaintiffs' claims are not actionable as a matter of law.

Respectfully submitted,

Dated:  February 7, 2017                          LOMBARDI, LOPER & CONANT, LLP


By: */s/  Maria M. Lampasona*
                    MATTHEW S. CONANT
                    MARIA M. LAMPASONA
                    ALEXEI N. OFFILL-KLEIN

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

CERTIFICATE OF SERVICE
***Abdul Nevarez and Priscilla Nevarez v. Forty Niners Football Company, LLC, et al.***
U.S. District Court, Northern Dist. of CA Case No. 5:16-cv-07013-LHK

    I am a resident of the State of California, over 18 years of age and not a party to the within action.  I am employed in the County of Alameda; my business address is: 1999 Harrison Street, Suite 2600, Oakland, CA 94612.  On February 7, 2017, I served the within:

**DEFENDANT NATIONAL FOOTBALL LEAGUE'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

on all parties in this action, as addressed below, by causing a true copy thereof to be distributed as follows:

Catherine Cabalo, Esq.
PEIFFER ROSCA WOLF ABDULLAH
CARR & KANE
4 Embarcadero Center, 14th Floor
San Francisco, CA  94111

415-766-3592  Phone
415-402-0058  Fax
ccabalo@prwlegal.com

*Attorneys for Plaintiffs ABDUL NEVAREZ and PRISCILLA NEVAREZ*

Gregory F. Hurley, Esq.
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA  92626-1993

714-513-5100  Phone
714-513-5130  Fax
ghurley@sheppardmullin.com

*Attorneys for Defendant TICKETMASTER ENTERTAINMENT, INC.*

☐ **By United States Mail:**  I enclosed the document in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope/package for collection and mailing, following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing documents for mailing.  On the same day that the document is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing an affidavit.

I am a resident or employed in the county where the mailing occurred.  The envelope or package was placed in the mail at Oakland, California.

☐ **By Fax Transmission:**  Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed above.  No error was reported by the fax machine that I used.  A copy of the record of the fax transmission, which I printed out, is attached.

☐ **By Overnight Delivery:**  I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the persons listed above.  I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐ **By Personal Service:**  I personally delivered the documents to the persons at the addresses listed above.  (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541

1  served with the receptionist or an individual in charge of the office.  (2) For a party, delivery was made
2  to the party or by leaving the documents at the party's residence with some person not less than 18 years
   of age between the hours of eight in the morning and six in the evening.

3  ☐  **By Messenger Service:**  I served the documents by placing them in an envelope or package
4  addressed to the persons at the addresses listed above and providing them to a professional messenger
   service for service.

5  ☒  **By E-Mail or Electronic Transmission:**  Based on a court order or an agreement of the
   parties to accept service by email or electronic transmission, I caused the documents to be sent to the
6  persons at the e-mail addresses listed above.  I did not receive, within a reasonable time after the
   transmission, any electronic message or other indication that the transmission was unsuccessful.

7  ☐  (***STATE***)  I declare under penalty of perjury under the laws of the State of California
8  that the foregoing is true and correct.

9  ☒  (***FEDERAL***)  I declare under the laws of the United States of America that I am
   employed in the office of a member of the Bar of this court at whose direction the
10 service was made and that the foregoing is true and correct.

11    Executed on February 7, 2017, at Oakland, California.

12

13                                           */s/ Alexine Braun*
                                           ALEXINE BRAUN
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LOMBARDI, LOPER & CONANT, LLP
Lake Merritt Plaza
1999 Harrison Street, Suite 2600
Oakland, CA  94612-3541