UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| ABDUL NEVAREZ, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> FORTY NINERS FOOTBALL COMPANY, LLC, et al., <br><br> Defendants. | Case No. 16-CV-07013-LHK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF FORTY NINERS FOOTBALL COMPANY LLC; FORTY NINERS SC STADIUM COMPANY LLC; FORTY NINERS STADIUM MANAGEMENT COMPANY LLC; CITY OF SANTA CLARA; AND SANTA CLARA STADIUM AUTHORITY** <br><br> Re: Dkt. No. 58 |
|---|---|

Plaintiffs Abdul Nevarez ("Mr. Nevarez"), Priscilla Nevarez ("Mrs. Nevarez"), and Sebastian DeFrancesco ("DeFrancesco") (collectively, "Plaintiffs") sue Defendants Forty Niners Football Company, LLC; Forty Niners SC Stadium Company, LLC; Forty Niners Stadium Management Company, LLC; the City of Santa Clara; the Santa Clara Stadium Authority (together, the "Stadium Defendants"), in addition to Live Nation Entertainment, Inc.; and Ticketmaster, LLC (together, the "Ticketmaster Defendants").[1] ECF No. 50. Before the Court is

---

[1] The Court will refer to the Forty Niners Football Company, LLC, Forty Niners SC Stadium Company, LLC, and Forty Niners Stadium Management Company, LLC, as the "Forty Niners Defendants." The Court will refer to the City of Santa Clara and the Santa Clara Stadium

1
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF FORTY NINERS FOOTBALL COMPANY LLC; FORTY NINERS SC STADIUM COMPANY LLC; FORTY NINERS STADIUM MANAGEMENT COMPANY LLC; CITY OF SANTA CLARA; AND SANTA CLARA STADIUM AUTHORITY

the Stadium Defendants' motion to dismiss. ECF No. 58. The Ticketmaster Defendants have filed a motion to compel arbitration, which the Court will address in a separate order. Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS in part and DENIES in part Stadium Defendants' motion to dismiss.

**I.     BACKGROUND**

**A.     Factual Background**

Stadium Defendants own, lease, and operate Levi's Stadium in Santa Clara, California, which is the home stadium of the San Francisco Forty Niners professional football team (hereinafter, "the Stadium").[2] ECF No. 50, at ¶¶ 1, 9 (Second Amended Complaint, or "SAC"). The Stadium also hosts several other events throughout the year. *Id.* ¶ 2. Plaintiffs in this case allege that, on several occasions, they visited the Stadium for events, but discovered that the Stadium was not fully accessible to disabled individuals.

**1.     The Nevarezes**

Mr. Nevarez's right leg is amputated above the knee, and Mr. Nevarez also suffers from significant nerve damage in his left leg and left arm. *Id.* ¶ 7. Mr. Nevarez requires the use of a wheelchair for mobility. *Id.* Mr. Nevarez also has a "disabled parking placard and/or license plate" that allows Mr. Nevarez to park in designated accessible and van-accessible parking spaces. *Id.*

Mrs. Nevarez is married to Mr. Nevarez. *Id.* Mrs. Nevarez is not disabled. *Id.* However, Mrs. Nevarez assists and accompanies her husband. *Id.*

The Nevarezes visited the Stadium for football games and other events on August 24,

---

Authority as the "Santa Clara Defendants." All of these entities together will be referred to as the "Stadium Defendants."

[2] Plaintiffs allege that the Ticketmaster Defendants "provide seating services for the Defendant owners and operators of Levi's Stadium." *Id.* ¶ 10. The Ticketmaster Defendants have answered the Complaint and filed a motion to compel arbitration, which the Court will address in a separate order. Accordingly, this Order does not address the facts alleged against the Ticketmaster Defendants or Plaintiffs' claims against the Ticketmaster Defendants.

2
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF FORTY NINERS
FOOTBALL COMPANY LLC; FORTY NINERS SC STADIUM COMPANY LLC; FORTY NINERS STADIUM
MANAGEMENT COMPANY LLC; CITY OF SANTA CLARA; AND SANTA CLARA STADIUM AUTHORITY

2014, April 18, 2015, November 29, 2015, and April 2, 2016. *See, e.g.*, *id.* ¶¶ 23–45. The Nevarezes allege that, on each occasion, the Nevarezes faced barriers in accessing the Stadium because of Mr. Nevarez's disability. *See id.* For example, Mr. and Mrs. Nevarez allege that they could not locate elevators at the Stadium, that a suite at the Stadium lacked accessible seating for Mr. Nevarez, that it was difficult for the Nevarezes to access the Stadium from the Stadium's parking lots, that the Stadium's security checkpoints were not large enough for Mr. Nevarez's wheelchair; that the Stadium's box office ticket window ("Box Office") was not accessible to Mr. Nevarez; that the Nevarezes had difficulty purchasing tickets for accessible seating in advance of events; and that the Nevarezes had difficulty obtaining sufficient companion seating to allow Mr. Nevarez to sit together with his family and friends. *Id.* ¶¶ 22–45.

On July 8, 2016, the Nevarezes served a government claim on the City of Santa Clara related to their visits to the Stadium on August 24, 2014, April 18, 2015, November 29, 2015, and April 2, 2016.[3] On July 20, 2016, the City of Santa Clara rejected Mr. Nevarez's claims related to the 2014 and 2015 Stadium visits as untimely. *Id.* On August 17, 2016, the City of Santa Clara rejected Mrs. Nevarez's claims related to the 2014 and 2015 Stadium visits as untimely. *Id.* On September 13, 2016 and September 26, 2016, the City of Santa Clara rejected the Nevarezes claims related to their visits to the Stadium for the April 2, 2016 event. *Id.*

### 2. DeFrancesco

DeFrancesco is a quadriplegic and requires the use of a wheelchair for mobility. *Id.* ¶ 2. DeFrancesco owns season tickets to Forty Niners home games. *Id.* ¶ 45–46. Prior to purchasing his 2016 season tickets, DeFrancesco informed Stadium Defendants that he was a wheelchair user, and that he needed accessible seating. *Id.* ¶ 46. DeFrancesco was assured that he would receive

---

[3] The SAC alleges that Plaintiffs attended events at the stadium on August 24, 2014, April 18, 2015, November 29, 2015, and April 2, 2016. However, the portion of the complaint labeled "Government Claim Filed" lists events at the Stadium as occurring on "December 20, 2014, April 16, 2015, November 29, 2015, and April 2, 2016." SAC ¶ 59. The reason for the discrepancy in the first two dates is unclear, but the discrepancy does not affect this Court's order.

accessible seating. *Id.*

On June 23, 2016, DeFrancesco entered into a "Stadium Builders License Agreement," which guaranteed DeFrancesco the right to purchase Seat 14 and Seat 15 in Row 3 of Section 207 of the Stadium. *Id.* ¶ 46. DeFrancesco paid $5,000 per seat, for a total of $10,000. *Id.* DeFrancesco paid a $1,000 down payment and financed the remaining payments. *Id.*

On August 26, 2016, DeFrancesco attended a pre-season football game at the Stadium. *Id.* ¶ 47. When DeFrancesco arrived to his assigned seats, he discovered he had not, in fact, received accessible seats. *Id.* Instead, the seats that DeFrancesco purchased were up a flight of stairs, and were impossible for him to access. *Id.* DeFrancesco had guest services exchange his tickets for that game to accessible seats located in a different section of the Stadium. *Id.*

Thereafter, DeFrancesco contacted Stadium Defendants to complain that the season tickets he had purchased were for seats that DeFrancesco could not access. *Id.* ¶ 48. In response, DeFrancesco was told that accessible seating would be provided for DeFrancesco "on a game by game basis." *Id.* Stadium Defendants required DeFranceso "to request a ticket exchange before every" game. *Id.* ¶ 49. DeFrancesco informed Defendants that he would not pay the remaining payments for his season tickets unless he was provided with accessible seating. *Id.* ¶ 50. Stadium Defendants told DeFrancesco that there was no available accessible seating in Section 207, and that DeFrancesco would need to apply for seat relocation in April 2017. *Id.* Defendants informed DeFrancesco that the only permanent accessible seats available for purchase were priced at approximately $6,000 for the 2017 season.[4] *Id.* ¶ 50.

DeFrancesco further alleges that, in attending events at the Stadium, he experienced barriers to access such as heavy doors, lack of accessible signage, and lack of accessible counters

---

[4] The SAC alleges that, because the "only permanent accessible seats available for purchase were priced at approximately $6,000 for the 2017 season," DeFrancesco "would be required to spend an additional $5,000 in order to receive the accessible seats he should have been provided for the 2016 season." SAC ¶ 50. However, DeFrancesco alleges that his seats for the 2016 season cost "$5,000 per seat for a total of $10,000." *Id.* ¶ 46. Thus, DeFrancesco would presumably have been required to pay an additional $1,000 per seat for a total of $2,000, not $5,000. *See id.*

4

at the Stadium's vending services. *Id.* ¶¶ 51–53.

## B. Procedural History

On December 7, 2016, the Nevarezes filed suit against the Forty Niners Football Company, LLC; Forty Niners SC Stadium Company LLC; the National Football League; the City of Santa Clara; the Santa Clara Stadium Authority; and Ticketmaster LLC ("Ticketmaster"). ECF No. 1.

On December 30, 2017, the Nevarezes filed a First Amended Complaint ("FAC"). ECF No. 9. On February 3, 2017, Ticketmaster answered the FAC. ECF No. 21. On February 7, 2017, the Forty Niners Defendants, the National Football League, and the Santa Clara Defendants each filed motions to dismiss the FAC. ECF Nos. 28, 30, 32.

On March 17, 2017, the Nevarezes voluntarily dismissed with prejudice the National Football League as a defendant. ECF No. 39.

On April 12, 2017, the parties filed a stipulation to permit the Nevarezes to file a Second Amended Complaint ("SAC"). ECF No. 46. The Court granted the parties' stipulation on April 13, 2017. ECF No. 47. In light of the anticipated SAC, the Court denied as moot the pending motions to dismiss the FAC. ECF No. 47.

On April 13, 2017, Plaintiffs filed a SAC. ECF No. 50. The SAC added DeFrancesco as a Plaintiff, and added Forty Niners Stadium Management Company LLC and Live Nation Entertainment, Inc. ("LiveNation") as Defendants. *Id.*

Plaintiffs alleged three causes of action in the SAC. First, Plaintiffs alleged that the Forty Niners Defendants and the Ticketmaster Defendants violated Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101. Second, Plaintiffs alleged that the Santa Clara Defendants violated Title II of the ADA. Third, Plaintiffs alleged that all Defendants violated California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51. *Id.*

On April 28, 2017, Ticketmaster and LiveNation answered the SAC. ECF No. 56.

On May 1, 2017, the Forty Niners Defendants and the Santa Clara Defendants filed a

1 motion to dismiss. ECF No. 58 ("Mot."). On May 15, 2017, Plaintiffs opposed the Forty Niners Defendants and Santa Clara Defendants' motion to dismiss. ECF No. 59 ("Opp."). On June 5, 2017, the Forty Niners Defendants and the Santa Clara Defendants filed a reply to Plaintiffs' opposition. ECF No. 65 ("Reply").

On May 17, 2017, Ticketmaster and LiveNation filed a motion to compel arbitration. ECF No. 60. On June 16, 2017, Plaintiffs filed an opposition to the Ticketmaster Defendants' motion to compel arbitration. ECF No. 67. Also on June 16, 2017, Plaintiffs filed an administration motion to file under seal documents in support of their opposition. ECF No. 68. On July 10, 2017, the Ticketmaster Defendants filed a reply to Plaintiffs' opposition. ECF No. 69.

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1061, 1064 (9th Cir. 2011). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

6
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF FORTY NINERS FOOTBALL COMPANY LLC; FORTY NINERS SC STADIUM COMPANY LLC; FORTY NINERS STADIUM MANAGEMENT COMPANY LLC; CITY OF SANTA CLARA; AND SANTA CLARA STADIUM AUTHORITY

*Adams v. Johnson*, 355 F.3d 1179 1183 (9th Cir. 2004).

B.  **Leave to Amend**

If the court concludes that a motion to dismiss should be granted, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (citation omitted). Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original).

III. **DISCUSSION**

The Stadium Defendants move for partial dismissal of the SAC. Specifically, Stadium Defendants move to dismiss all of Mrs. Nevarez's claims against Stadium Defendants because, according to Stadium Defendants, Mrs. Nevarez cannot allege discrimination claims under either the ADA or the Unruh Act because she lacks Article III and statutory standing. *See* Mot. at 7–14. In addition, Stadium Defendants move to dismiss portions of Plaintiffs' claims for damages against the Santa Clara Defendants under the Unruh Act because Plaintiffs failed to timely exhaust their state administrative remedies. *Id.* at 14–16.

The Court first addresses Mrs. Nevarez's claims under the ADA and the Unruh Act, and then addresses Plaintiffs' exhaustion of state administrative remedies.

A.  **Mrs. Nevarez's Claims under the ADA and Unruh Act**

First, the Stadium Defendants move to dismiss all of Mrs. Nevarez's claims against Stadium Defendants because Stadium Defendants argue that Mrs. Nevarez lacks Article III and statutory standing to bring claims for disability discrimination under either the ADA or the Unruh Act. *See* Mot. at 7–14. Specifically, Stadium Defendants move to dismiss Mrs. Nevarez's claims

under (1) Title III of the ADA, which is alleged against the Forty Niners Defendants and Ticketmaster Defendants; (2) Title II of the ADA, which is alleged against the Santa Clara Defendants; and (3) California's Unruh Act, which is alleged against all Defendants.

The parties agree that Mrs. Nevarez is not disabled within the meaning of the ADA or the Unruh Act. Instead, Mrs. Nevarez claims for disability discrimination under the ADA are "associational discrimination" claims in that Mrs. Nevarez "derive[s] [her] individual right to sue in this case solely through [her] association with [her] disabled [husband]," Mr. Nevarez. *See Glass v. Hillsboro Sch. Dist.* 1J, 142 F. Supp. 1286, 1287–88 (D. Ore. Apr. 13, 2011). According to Stadium Defendants, Mrs. Nevarez has not adequately alleged associational discrimination, and thus she does not have standing to bring a disability discrimination claim against Stadium Defendants. *See* Mot. at 8.

Accordingly, to resolve the instant motion to dismiss, the Court addresses whether Mrs. Nevarez has sufficiently alleged associational discrimination such that Mrs. Nevarez has standing to bring a disability discrimination claim under Title III of the ADA, Title II of the ADA, and California's Unruh Act. The Court addresses each of these statutes in turn.

### 1. Title III of the ADA

Mrs. Nevarez alleges in Count One a claim for disability discrimination under Title III of the ADA against the Forty Niners Defendants and Ticketmaster Defendants. SAC ¶ 75. Title III of the ADA "prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a)).

Title III also explicitly prohibits associational discrimination:

> It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

8

42 U.S.C. § 12182(b)(1)(E). This statutory provision is implemented by 28 C.F.R. § 36.205, which contains the same language. *See* 28 C.F.R. § 36.205.

District courts in this Circuit have held that, in order to have Article III and statutory standing to bring an associational discrimination claim under the ADA, "a plaintiff must allege some 'specific, direct, and separate injury' as a result of association with a disabled individual." *Glass*, 142 F. Supp. 2d at 1288; *George v. AZ Eagle TT Corp.*, 961 F. Supp. 2d 971, 974–75 (D. Ari. Mar. 12, 2013) (same).[5] A plaintiff does not have Article III and statutory standing to bring an associational discrimination claim under the ADA if the plaintiff's allegation of discrimination is entirely "derivative" of the disabled individual's discrimination. *Glass*, 142 F. Supp. 2d at 1288.

Here, Mrs. Nevarez alleges that she has suffered a "specific, direct, and separate injury" from the injury suffered by Mr. Nevarez, *Glass*, 142 F. Supp. 2d at 12833, because Mrs. Nevarez "assisted and accompanied Mr. Nevarez on all his visits to the Stadium" and wished to visit the Stadium with Mr. Nevarez, but Mrs. Nevarez could not fully do so because of the Stadium's lack of accessibility. *See, e.g.*, SAC ¶ 21. Specifically, Mrs. Nevarez alleges that, because the Stadium was not fully accessible to her disabled husband, Mrs. Nevarez "experienced frustration, emotional distress, physical exhaustion, and discrimination as a result of [] being forced to assist Mr. Nevarez to traverse and/or overcome numerous physical access barriers in connection with the Stadium's inaccessible parking facilities, inaccessible paths of travel from those facilities to the Stadium, and other inaccessible features of the Stadium itself." *Id.* For example, Mrs. Nevarez

---

[5] Courts have not been consistent in discussing whether the "specific, direct, and separate" injury requirement is a component of Article III standing, or whether it is relevant to determining whether the plaintiff has adequately alleged an associational discrimination claim under the statute. *Compare Glass*, 142 F. Supp. 2d 1285, 1288 (discussing the "specific, direct, and separate" injury requirement as a "prudential" standing component of Article III), *with Huynh v. Bracamontes*, 2016 WL 3683048 (N.D. Cal. July 12, 2016) (discussing "specific, direct, and separate injury" inquiry in deciding whether plaintiff alleged an associational discrimination claim under the statute, rather than as a component of Article III). Nonetheless, regardless of whether it is relevant to Article III, the statute, or both, the inquiry is the same for purposes of the instant motion.

alleges that she had to wander around the Stadium looking for an elevator because the Stadium lacked signage for elevators, that she had to assist Mr. Nevarez in traversing the Stadium's parking lots because of the Stadium's lack of accessible transportation and walkways, that she had to approach the Box Office alone because the Box Office was not accessible to Mr. Nevarez, and that she had difficulty purchasing accessible seating and companion seating from the Stadium so that she and her family could sit with Mr. Nevarez to enjoy events at the Stadium. *Id.* ¶¶ 27–39.

Stadium Defendants contend, however, that these allegations are insufficient to establish that Stadium Defendants caused Mrs. Nevarez any injury that was separate and distinct from her husband's injury. *See* Mot. at 8–9. In support of this argument, Stadium Defendants cite the "Guidance on ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities" (hereinafter, "ADA Guidance"), which provides examples of associational discrimination prohibited by Title III's implementing regulations. *Id.* (citing 28 C.F.R. Pt. 36, App. C). For example, the ADA Guidance states that "it would be a violation of this [regulation] for a day care to refuse admission to a child because his or her brother has HIV disease." *Id.* at 8 (quoting 28 C.F.R. Pt. 36, App. C). Similarly, the ADA Guidance states that "if a place of public accommodation refuses admission to a person with cerebral palsy and his or her companions, the companions have an independent right of action under the ADA and this [regulation]." *Id.* (quoting 28 C.F.R., Pt. 36, App. C). According to Stadium Defendants, these examples show that Congress intended Title III's associational discrimination provisions to be interpreted narrowly, and that Mrs. Nevarez is only entitled to bring a cause of action if she can allege that "she was directly discriminated against as a result of her known association with Mr. Nevarez." *Id.* at 8–9. Stadium Defendants contend that Mrs. Nevarez cannot bring an associational discrimination claim simply because she "struggled to assist her husband as [he] navigated the Stadium." *Id.* at 9.

However, contrary to Stadium Defendants' argument, district courts in this Circuit have rejected nearly identical attempts to interpret the ADA's associational discrimination prohibitions

10

narrowly, and district courts in this Circuit have allowed ADA claims to proceed based on allegations that are nearly identical to Mrs. Nevarez's allegations in the SAC. For example, in *Daubert v. City of Lindsay*, 37 F. Supp. 3d 1168, 1171 (E.D. Cal. Aug. 11, 2014), a plaintiff who was not himself disabled brought suit against the City of Lindsay under the ADA. The plaintiff's great-granddaughter suffered from significant disabilities and used a wheelchair. *Id.* The plaintiff alleged that he and his great-granddaughter visited a park together that was owned by the city, but that the plaintiff had "significant difficulty navigating" his great-granddaughter's wheelchair around the park because the park was not accessible to wheelchairs. *Id.* at 1172. The plaintiff alleged that he felt "anxious, frustrated, embarrassed, conspicuous, unwelcomed and like" a second class citizen while visiting the park as a result of the park's lack of wheelchair accessibility. *Id.* The City of Lindsay moved to dismiss the plaintiff's ADA claims and argued— as Stadium Defendants argue here—that Congress intended "a narrow interpretation of Title III's associational provision." *Id.* at 1174. According to the City of Lindsay, "Congress intended to confer associational standing only when the public entity knowingly discriminates against the individual on the basis that the individual associates with someone with a disability, such as an individual who is denied a city permit because she is an associate of an HIV-positive person." *Id.* However, the district court in *Daubert* rejected the City of Lindsay's narrow interpretation of associational discrimination, and held that the non-disabled plaintiff had standing to bring an associational discrimination claim under the ADA. *Id.* at 1174–76. The district court reasoned that both the plaintiff and his great-granddaughter "encountered barriers" at the park due to the park's lack of accessibility, which caused the plaintiff to feel "anxious, embarrassed, conspicuous," and unwelcomed. *Id.* The district court found that the plaintiff's allegations, which were based on the plaintiff's *own* desire to visit the park with his great-granddaughter and the injuries that *he* suffered in doing so, were sufficient to allege an injury that was "separate and distinct from his great-granddaughter's" injury. *Id.* at 1176.

Similarly, in *Cortez v. City of Porterville*, 5 F. Supp. 3d 1160, 1162–63 (E.D. Cal. 2014),

the plaintiff's granddaughter suffered from significant disabilities and used a wheelchair. The plaintiff and his granddaughter visited a sports complex that was owned by the city, but the plaintiff and his granddaughter had difficulty accessing the sports complex "because the only way to get from the parking facility to the playing field was by traversing over grass," which caused the plaintiff to experience "physical difficulty and frustration" in accessing the sports complex with his granddaughter. *Id.* at 1163. The district court in *Cortez* held that the plaintiff had "alleged an injury separate and distinct from that of his granddaughter," and thus had constitutional and statutory standing to assert an associational claim under the ADA. Specifically, the district court reasoned that the plaintiff suffered a separate and distinct injury from his granddaughter's injury because the plaintiff "wishe[d] to access and enjoy the Sports Complex with his disabled granddaughter," but the plaintiff was "deterred from doing so due to accessibility issues" which caused the plaintiff to "feel anxious, frustrated, and conspicuous." *Id.* at 1165–66.

Most recently, in *Moore v. Equity Residential Management, LLC*, 2017 WL 2670257, at *4 (N.D. Cal. June 21, 2017), the Court held that a non-disabled plaintiff adequately alleged an associational discrimination claim against the owner and operator of the building in which she lived with her disabled husband, who was also a plaintiff in the case.[6] The plaintiffs in *Moore* alleged that the defendant failed to maintain the building's only elevator. *Id.* When the elevator was not in operation, the disabled husband could not use the stairs and needed to relocate to a hotel. *Id.* The district court held that the non-disabled wife adequately alleged an associational discrimination claim as a result of defendant's failure to maintain the building's elevator because

---

[6] The plaintiff in *Moore* brought causes of action under the Rehabilitation Act, the Fair Housing Act, the California Disabled Persons Act, the California Fair Employment and Housing Act, and the California Unruh Act, as opposed to the ADA. *See Moore*, 2017 WL 2670257, at *2. However, in determining whether the plaintiff had standing to assert an associational discrimination claim under those statutes, the district court in *Moore* analyzed whether the plaintiff had alleged a "separate and distinct injury because of her association" with her husband, and the district court applied cases interpreting the ADA's associational discrimination provisions. *See, e.g., id.* at *4 (citing *Daubert*, 37 F. Supp. 3d at 1176). Thus, although *Moore* did not directly involve the ADA, *Moore* is instructive regarding the proper interpretation of the ADA's associational discrimination provisions.

12
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF FORTY NINERS FOOTBALL COMPANY LLC; FORTY NINERS SC STADIUM COMPANY LLC; FORTY NINERS STADIUM MANAGEMENT COMPANY LLC; CITY OF SANTA CLARA; AND SANTA CLARA STADIUM AUTHORITY

the wife "traveled between [the plaintiffs'] dwelling and the hotel in order to get clothes and personal items [for her husband], and to do laundry; and that as a result, [the wife] experienced physical difficulty, pain, and emotional anguish." *Id.* The district court found that these allegations were sufficient to allege "a separate and distinct injury" from the injury suffered by her disabled husband. *Id.*

Mrs. Nevarez's allegations are indistinguishable from the allegations in *Daubert*, *Cortez*, and *Moore*, in addition to the numerous other cases in which district courts have allowed associational discrimination claims to proceed under similar circumstances. *See, e.g.*, *Huynh v. Bracamontes*, 2016 WL 3683048, at *2–3 (N.D. Cal. July 12, 2016) (rejecting defendant's argument that congress intended a narrower interpretation of associational discrimination claims and finding non-disabled plaintiff adequately alleged associational discrimination claim where the plaintiff brought her disabled daughter to a nail salon and could not locate a wheelchair-accessible parking spot, which "deterred [the plaintiff] from visiting the [salon] with her daughter"); *George v. AZ Eagle TT Corp.*, 961 F. Supp. 2d 971, 973–76 (D. Ariz. 2013) (rejecting the defendant's argument that associational discrimination provisions should be interpreted narrowly and finding non-disabled father adequately alleged associational discrimination claim where the father could not access a shopping center with his disabled son due to the mall's lack of wheelchair access).

Like the non-disabled plaintiffs in *Daubert*, *Cortez*, and *Moore,* Mrs. Nevarez alleges that *she* wishes to access and enjoy the Stadium with her husband, but that *she* is not able to do so because of the Stadium's architectural barriers, which have caused *her* to experience "frustration, emotional distress," and "physical exhaustion." *See, e.g.*, SAC ¶¶ 27–39. These allegations are sufficient to show that Mrs. Nevarez, specifically, has suffered a separate and distinct injury from the injury suffered by Mr. Nevarez. *See, e.g.*, *Cortez*, 5 F. Supp. 3d 1160 (finding non-disabled plaintiff adequately alleged associational discrimination claim where he "experience[d] difficulty and fe[lt] anxious, frustrated, and conspicuous" attempting to visit a sports facility with his disabled granddaughter); *Daubert*, 37 F. Supp. 3d at 1175 (finding non-disabled plaintiff

adequately alleged associational discrimination claim where he "and his disabled great-granddaughter "encountered barriers, including sandy paths, that encumbered their navigation through the Park"); *George*, 961 F. Supp. 2d at 975 (finding plaintiff suffered separate and distinct injury where plaintiff "wishe[d] to access Defendant's shopping center with his disabled son, but [was] deterred by non-ADA compliant architectural barriers").

Accordingly, because the Court finds that Mrs. Nevarez has adequately alleged a "specific, direct, and separate injury" as a result of her association with Mr. Nevarez, the Court DENIES Stadium Defendant's motion to dismiss Mrs. Nevarez's claim under Title III of the ADA. The Court next turns to Title II of the ADA and the Unruh Act.

### 2. Title II of the ADA

In Count Two of the SAC, Mrs. Nevarez alleges a claim under Title II of the ADA against the Santa Clara Defendants. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Stadium Defendants move to dismiss Mrs. Nevarez's Title II claim because, according to Stadium Defendants, Mrs. Nevarez cannot state an associational discrimination claim under Title II. Mot. at 12. Stadium Defendants contend that Title II of the ADA, unlike Title III of the ADA, "does not contain an associational discrimination provision." *Id.* Further, Stadium Defendants argue that, even assuming that Title II of the ADA permits associational discrimination claims, Mrs. Nevarez does not have standing to bring such a claim because her injury is not separate and distinct from Mr. Nevarezes' injury. The Court addresses these arguments in turn.

First, Stadium Defendant's argument that Title II of the ADA "does not contain an associational discrimination provision" is not persuasive. *See id.* As courts have recognized, "although Title II contains no express right to be free from discrimination because of association with qualified individuals with disabilities, Title II's enforcement provision does *not* limit its

14
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF FORTY NINERS FOOTBALL COMPANY LLC; FORTY NINERS SC STADIUM COMPANY LLC; FORTY NINERS STADIUM MANAGEMENT COMPANY LLC; CITY OF SANTA CLARA; AND SANTA CLARA STADIUM AUTHORITY

remedies to individuals with disabilities." *A Helping Hand, LLC v. Baltimore Cty., Md.*, 515 F.3d 356, 363 (4th Cir. 2008). To the contrary, Title II's enforcement provision "provides a remedy to '*any person* alleging discrimination on the basis of disability in violation of" Title II. *Cortez*, 5 F. Supp. 3d at 1164 (quoting 42 U.S.C. § 13132).

Although the Ninth Circuit has not addressed this statutory language in the context of an associational discrimination claim, the Ninth Circuit has interpreted similar language in the context of determining whether Title II provides a cause of action for "non-disabled individuals who are retaliated against for attempting to protect the rights of the disabled." *Barker v. Riverside Cty. Off. of Educ.*, 584 F.3d 821, 827 (9th Cir. 2009) (internal quotation marks omitted). In *Barker*, the Ninth Circuit held that the statutory language "any individual" in Title II's anti-retaliation provisions, in addition to "the absence of any language [in Title II] limiting standing to those with disabilities[,] indicates Congress's intent to grant standing under Title II as broadly as is permitted by Article III of the Constitution." *Barker v. Riverside Cty. Off. of Educ.*, 584 F.3d 821, 827 (9th Cir. 2009) (internal quotation marks omitted). Accordingly, reasoning from the text of Title II and from *Barker*, district courts in this Circuit have held that the statutory text of Title II of the ADA provides for associational discrimination claims. *See, e.g.*, *Cortez*, 5 F. Supp. 3d at 1164–65 (relying on the statutory language and the Ninth Circuit's decision in *Barker* to hold that non-disabled individual could bring associational discrimination claim under Title II); *Daubert*, 37 F. Supp. 3d at 1174–75 (same).

In addition, Title II's "implementing regulations provide further support for the ability to assert an associational claim under Title II of the ADA." *Cortez*, 5 F. Supp. 3d at 1165. Specifically, "[t]he regulations provide that '[a] public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." *Id.* (quoting 28 C.F.R. § 35.130(g)); *see also A Helping Hand, LLC*, 515 F.3d at 364 (finding Title II of the ADA provided cause of action to methadone clinic for associational discrimination in part

15

because Title II's implementing "regulations explicitly prohibit local governments from discriminating against [an individual or] entit[y] because of the disability of individuals with whom [an individual or] entity associates." (citing 28 C.F.R. § 13.130(g)).

Indeed, given the statutory text of Title II and implementing regulations, district courts in the Ninth Circuit, in addition to other Circuit courts, have repeatedly held that Title II allows non-disabled individuals to bring associational discrimination claims. *See, e.g.*, *Cortez*, 5 F. Supp. 3d at 1164–65 (relying on the statutory language and the Ninth Circuit's decision in *Barker* to hold that non-disabled individual could bring associational discrimination claim under Title II); *Daubert*, 37 F. Supp. 3d at 1174 (analyzing the text of Title II, the purpose of the statute, and case law interpreting Title II, and holding that Title II allows for associational discrimination claim); *A Helping Hand, LLC*, 515 F.3d at 364 (holding that Title II provided a claim for associational discrimination after "look[ing] to the text of the statute as a whole," the legislative history, and the accompanying regulations). Stadium Defendants have not cited—and the Court is not aware of—any case to the contrary. *See* Mot. at 27. Thus, the Court finds that Mrs. Nevarez may bring an associational discrimination claim under Tile II.

Second, Stadium Defendants argue that, even assuming that the Court "read[s] an association provision into Title II," Mrs. Nevarez cannot state such a claim because her injury is not specific, direct, and separate from that of Mr. Nevarez. *Id.* at 12–13. However, Stadium Defendants' argument in this regard is entirely duplicative of their argument with regards to Mrs. Nevarez's ability to state an associational discrimination claim under Title III of the ADA. *See id.* As discussed above in the context of Mrs. Nevarez's claim under Title III, the Court finds that Mrs. Nevarez has adequately alleged injury that is "specific, direct, and separate" from that of Mr. Nevarez. *Glass*, 142 F. Supp. 2d at 1288. Accordingly, for the reasons discussed above with regards to Mrs. Nevarez's claim under Title III of the ADA, the Court DENIES Stadium Defendant's motion to dismiss Mrs. Nevarez's claim under Title II of the ADA.

3. **Unruh Act**

Mrs. Nevarez alleges in Count Three of the SAC a claim under the Unruh Act against all Defendants. Section 51 of the Unruh Act provides that individuals within the state of California "are free and equal, and no matter what their . . . disability[ or] medical condition . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). "Under the Unruh Act, any violation of the ADA is an automatic violation of the Unruh Act." *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 892 (N.D. Cal. 2015) (citing Cal. Civ. Code § 51(f)).

Stadium Defendants argue that Mrs. Nevarez cannot state an Unruh Act claim against Stadium Defendants that is premised on an ADA violation because Mrs. Nevarez cannot state an ADA claim for associational discrimination against Stadium Defendants. *See* Mot. at 13.[7] However, as discussed above, the Court finds that Mrs. Nevarez has sufficiently alleged claims under both Title II and Title III of the ADA against Stadium Defendants. Thus, Mrs. Nevarez can allege an Unruh Act claim against Stadium Defendants "that is premised on a violation of the ADA." *See Smith*, 2016 WL 6393549, at *4.

Accordingly, the Court DENIES Defendants' motion to dismiss Mrs. Nevarez's Unruh Act claim to the extent Stadium Defendants move to dismiss this claim for failure to adequately allege an ADA claim. To the extent Stadium Defendants move to dismiss Mrs. Nevarez's Unruh Act claim for failure to timely exhaust administrative remedies, the Court discusses the timely exhaustion of Plaintiffs' Unruh Act claims below.

**B.    Timely Exhaustion of Plaintiffs' Unruh Act Claims**

---

[7] Stadium Defendants also argue that Mrs. Nevarez cannot allege an Unruh Act claim that is independent of the ADA because Mrs. Nevarez has failed to allege intentional discrimination, which is required to state an Unruh Act claim that is independent of the ADA. *See* Mot. at 13–15. However, Mrs. Nevarez states in her opposition that she "does not allege any claim under the Unruh Act separate and apart from her claim based on the ADA." Opp. at 27. Thus, the Court need not reach Defendants' arguments that Mrs. Nevarez has failed to allege intentional discrimination.

17
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OF FORTY NINERS FOOTBALL COMPANY LLC; FORTY NINERS SC STADIUM COMPANY LLC; FORTY NINERS STADIUM MANAGEMENT COMPANY LLC; CITY OF SANTA CLARA; AND SANTA CLARA STADIUM AUTHORITY

Stadium Defendants also move to dismiss portions of the Nevarezes' claims for damages under the Unruh Act against the Santa Clara Defendants, and all of Mr. DeFrancesco's claim for damages under the Unruh Act against the Santa Clara Defendants. According to Stadium Defendants, Plaintiffs failed to timely exhaust their state administrative remedies, as required by California law. *See* Mot. at 14–16.

"The California Tort Claims Act 'requires that any civil complaint for money damages first be presented to and rejected by the pertinent public entity.'" *Fernandez v. Morris*, 2008 WL 2775638, at *8 (S.D. Cal. July 16, 2008) (quoting *Ard v. Cty. of Contra Costa*, 93 Cal. App. 4th 339, 343 (2001)). Here, Plaintiffs needed to present their claims for damages under the Unruh Act to the City of Santa Clara "not later than six months after the accrual of the cause of action." Cal. Gov't Code § 911.2; *see* Opp. at 27. The Court first considers whether the Nevarezes timely presented their Unruh Act claim to the City of Santa Clara, and then considers whether DeFrancesco timely presented his Unruh Act claim.

First, Stadium Defendants argue that the Nevarezes cannot seek damages under the Unruh Act against the Santa Clara Defendants for the Nevarez's visits to the stadium on August 24, 2014, April 18, 2015, and November 29, 2015. *See* Mot. at 14–16. According to the SAC, the Nevarezes did not submit a claim to the City of Santa Clara until July 20, 2016, which is over six months after the Nevarez's visits to the Stadium on August 24, 2014, April 18, 2015, and November 29, 2015. *See* SAC ¶ 59. According to Stadium Defendants, the Nevarezes can only seek damages against the Santa Clara Defendants under the Unruh Act for the Nevarezes April 2, 2016 visit to the Stadium. *Id.* at 16.

In their opposition, Plaintiffs concede that the Nevarezes' claims for damages under the Unruh Act against the Santa Clara Defendants are barred to the extent that those claims are based on events that occurred on August 24, 2014, April 18, 2015, and November 29, 2015. Opp. at 28. Plaintiffs state only that the Nevarezes "did present a timely claim to the City based on the April 2, 2016 event." *Id. at* 28. Accordingly, because Plaintiffs concede the issue, the Court GRANTS

Stadium Defendant's motion to dismiss, and the Court DISMISSES with prejudice the Nevarezes' claims for damages under the Unruh Act against the Santa Clara Defendants to the extent those claims are premised on events that occurred on August 24, 2014, April 18, 2015, and November 29, 2015. The Court does not dismiss the Nevarezes' claims for damages under the Unruh Act against the Santa Clara Defendants to the extent those claims are premised on the Nevarezes' April 2, 2016 visit to the Stadium.

Second, the Santa Clara Defendants argue that Mr. DeFrancesco's claim for damages under the Unruh Act claim against the Santa Clara Defendants should be dismissed for failure to timely exhaust his state administrative remedies because the SAC contains *no* factual allegations regarding if or when Mr. DeFrancesco submitted a claim to the City of Santa Clara. Mot. at 15. In their opposition, Plaintiffs concede that the SAC does not contain any factual allegations regarding Mr. DeFrancesco's claim submission. *See* Opp. at 30. Rather, Plaintiffs request leave to amend the SAC so that Plaintiffs can allege that DeFrancesco timely submitted a claim to the City of Santa Clara on March 29, 2017, and that the City of Santa Clara denied DeFrancesco's claim on April 25, 2017. *Id.*

Thus, because Plaintiffs concede that DeFrancesco has not adequately alleged in the SAC that he timely presented a claim to the City of Santa Clara, the Court GRANTS the Stadium Defendants' motion to dismiss, and the Court DISMISSES without prejudice DeFrancesco's claim for damages under the Unruh Act against the City of Santa Clara. The Court grants Plaintiffs leave to amend so that Plaintiffs can adequately allege that DeFrancesco timely exhausted his administrative remedies with the City of Santa Clara.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Stadium Defendants' motion to dismiss as follows:

- Stadium Defendants' motion to dismiss Mrs. Nevarez's claims under Title III of the ADA, Title II of the ADA, and the Unruh Act for lack of associational standing is DENIED.

- Stadium Defendants' motion to dismiss the Nevarez's claims for damages under the Unruh Act against the Santa Clara Defendants is GRANTED with prejudice to the extent that the Nevarezes seek damages for any visit to the Stadium other than the Nevarez's April 2, 2016 visit.
- Stadium Defendants' motion to dismiss DeFrancesco's claim for damages under the Unruh Act against the Santa Clara Defendants is GRANTED without prejudice.

Should Plaintiffs elect to file an amended complaint alleging that DeFrancesco timely submitted his claim to the City of Santa Clara, Plaintiffs shall do so within twenty-one (21) days of this Order. Failure to meet the twenty-one day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in dismissal with prejudice of DeFrancesco's claim. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Dated: August 1, 2017

_____
LUCY H. KOH
United States District Judge