UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ABDUL NEVAREZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> FORTY NINERS FOOTBALL COMPANY, LLC, et al., <br><br> Defendants. | Case No. 16-CV-07013 <br><br> **ORDER GRANTING MOTION TO COMPEL ARBITRATION** <br><br> Re: Dkt. No. 60 |

Plaintiffs Abdul Nevarez ("Mr. Nevarez"), Priscilla Nevarez ("Mrs. Nevarez"), and Sebastian DeFrancesco ("DeFrancesco") (collectively, "Plaintiffs") sue Defendants Forty Niners Football Company, LLC; Forty Niners SC Stadium Company, LLC; Forty Niners Stadium Management Company, LLC; the City of Santa Clara; the Santa Clara Stadium Authority (together, the "Stadium Defendants"), in addition to Live Nation Entertainment, Inc. ("Live Nation"); and Ticketmaster, LLC ("Ticketmaster") (together with Live Nation Entertainment Inc., "Ticketmaster Defendants"). ECF No. 50. Before the Court is Ticketmaster Defendants' motion to compel arbitration. ECF No. 60. Having considered the parties' submissions, the relevant law, and the record in this case, the Court hereby GRANTS Ticketmaster Defendants' motion to compel arbitration.

United States District Court
Northern District of California

# I.    BACKGROUND

## A.    Factual Background

Stadium Defendants own, lease, and operate Levi's Stadium in Santa Clara, California, which is the home stadium of the San Francisco Forty Niners professional football team (hereinafter, "the Stadium").  ECF No. 50, at ¶¶ 1, 9 (Second Amended Complaint, or "SAC").  The Stadium also hosts several other events throughout the year.  *Id.* ¶ 2.  Plaintiffs in this case allege that, on several occasions, they visited the Stadium for events, but discovered that the Stadium was not fully accessible to disabled individuals.

Ticketmaster Defendants provide seating services and parking passes for the Stadium, which they make available through the website www.ticketmaster.com ("the Ticketmaster Website").  *Id.* ¶ 10.  Plaintiffs allege that Ticketmaster Defendants fail and refuse to provide accessible seating and accessible parking to persons with mobility disabilities and that, when Ticketmaster Defendants do provide accessible seating and accessible parking, they fail to provide accessible seating and accessible parking on equal terms as they provide non-accessible seating and parking.  *Id.* ¶¶ 17–18.

The instant arbitration dispute concerns Plaintiffs' use of the Ticketmaster Website to purchase tickets and parking passes for events at the Stadium, and the arbitration agreement contained within the Ticketmaster Website's Terms of Use ("TOU").[1]  The Court first addresses the process of purchasing a ticket or parking pass through the Ticketmaster Website, and the Ticketmaster Website's TOU.  The Court then addresses Plaintiffs' use of the Ticketmaster Website.

### 1.    Purchasing a Ticket or Parking Pass Through the Ticketmaster Website

To purchase a ticket or parking pass through the Ticketmaster Website, a user must have

---

[1] Plaintiff DeFrancesco does not allege that he ever used the Ticketmaster Website, and thus DeFrancesco does not appear to have any claims against Ticketmaster Defendants.  Indeed, Plaintiffs' motion in opposition refers only to the Nevarezes as "Plaintiffs," without any mention of DeFrancesco.  *See* Opp. at 9.  Accordingly, the term "Plaintiffs" in this order will refer only to the Nevarezes, who both used the Ticketmaster Website and allege claims against Ticketmaster Defendants.

2

1    an account on the Ticketmaster Website and the user must be signed in to that account.  ECF No.

2    60-1 ("Han Decl."), at ¶¶ 3–4.

3         In order to create an account on the Ticketmaster Website, a user must complete the

4    "Create Account" webpage on the Ticketmaster Website.  *Id.* ¶ 4.  The "Create Account" webpage

5    asks the user to fill out required information, such as the user's name and e-mail address.  *See* ECF

6    No. 60-4.  In order to proceed past the "Create Account" webpage, a user must click the button

7    "Accept and Continue."  *Id.*  Below the "Accept and Continue" button, in black bold text against a

8    white background, is the sentence: "By continuing past this page, you agree to our terms of use."

9    *Id.*  The words "terms of use" are in blue text, and these words hyperlink to the Ticketmaster

10   Website's TOU.  *Id.*  A screenshot of this webpage is displayed below:



25   Clicking on the "terms of use" hyperlink brings users to the Ticketmaster Website's TOU

26   webpage.  The Ticketmaster Website's TOU state that the TOU "govern [the user's] use of the

27   Ticketmaster sites and applications."  *See* ECF No. 60-2, at 2.  The TOU include information on

Case No. 16-CV-7013-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

making purchases on the Ticketmaster Website and registering an account. *Id.* Further, the TOU contain a section with the title, in bold font, "Disputes, Including Mandatory Arbitration and Class Action Waiver." *Id.* at 6. The paragraph below this bold title contains an arbitration provision, which has been in the Ticketmaster Website's TOU since June 15, 2011. *See* Han Decl. ¶ 2. This arbitration provision provides that "[a]ny dispute or claim relating in any way to your use of the Site, or to products or services sold or distributed by us or through us, will be resolved by binding arbitration rather than in court." *See* ECF No. 60-2, at 6. This paragraph continues as follows:

> The arbitration agreement in these [TOU] is governed by the Federal Arbitration Act (FAA), including its procedural provisions, in all respects. This means that the FAA governs, among other things, the interpretation and enforcement of this arbitration agreement and all of its provisions, including without limitation, the class action waiver discussed below. State arbitration laws do not govern in any respect. The arbitration agreement is intended to be broadly interpreted, and will survive termination of these Terms. The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. There is no judge or jury in arbitration. . . . We each agree that the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action. You agree to waive any right to a jury trial or to participate in a class action."

*Id.* This arbitration provision further states that "[p]ayment of all filing, administration and arbitrator fees will be governed by JAMS's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous, but in no event will we pay for attorneys' fees." *Id.*

If a user already has an account on the Ticketmaster Website, a user must sign in to that account before purchasing a ticket or parking pass on the Ticketmaster Website. *See* Han Decl. ¶ 5. On the "Sign In to My Account" webpage, a user must fill in their e-mail address and password before clicking "Sign In." *See* ECF No. 60-5. Below the "Sign In" button, in bold black text against a white background, is the sentence "By continuing past this page, you agree to our terms

4

of use." *Id.* Again, the words "terms of use" are in blue text, and these words hyperlink to the same TOU set forth above, which contains the Ticketmaster Website arbitration provision. *Id.* A screenshot of this webpage is displayed below:



Once a user has registered an account or, if the user is an existing user, signed in to that account, a user may purchase a ticket or parking pass on the Ticketmaster Website. *See* Han Decl. ¶ 5. Users of the Ticketmaster Website must "affirmatively assent to the [Ticketmaster Website TOU] each time they purchase tickets or parking passes" on the Ticketmaster Website. *Id.* Specifically, after the user has selected his or her ticket and entered his or her credit card and billing information, the user must click "Submit Order" to complete the order. *See* ECF No. 60-6. Below the "Submit Order" button is the sentence, in black bold text against a white background, "By continuing past this page, you agree to our terms of use." *Id.* Again, the words "terms of use" are in blue font, and these words hyperlink to the TOU set forth above, which contain the Ticketmaster Website arbitration provision. *Id.* Moreover, on the same "Submit Order" page—to the left of the "Submit Order" button—is the text "[b]y clicking the 'Submit Order' button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy." *Id.* The words "Purchase

Case No. 16-CV-7013-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

United States District Court
Northern District of California

Policy" and "Privacy Policy" are in blue text, and these words hyperlink to the Ticketmaster Website Purchase Policy and Privacy Policy, respectively. *Id.* A screenshot of this webpage is displayed below:



**Submit Order**

By clicking the "Submit Order" button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy. All orders are subject to credit card approval and billing address verification. Please contact customer service if you have any questions regarding your order.

**Submit Order**

Your credit card will be charged.

Cancel Order

By continuing past this page, you agree to our terms of use.
Privacy Policy // © 1999-2017 Ticketmaster. All rights reserved

The first paragraph of Ticketmaster's Purchase Policy instructs users to "review our Terms of Use which govern your use of our Site." *See* ECF No. 60-7, at 2. Again, the words "Terms of Use" are in blue text and hyperlink to the Ticketmaster Website's TOU set forth above, which contain the Ticketmaster Website arbitration provision. *See id.*

### 2. Plaintiffs' Use of the Ticketmaster Website

Plaintiffs used the Ticketmaster Website to purchase an accessible parking pass for a November 29, 2015 Supercross event at the Stadium. *See* SAC ¶ 27. Plaintiffs allege that the Ticketmaster Website did not have handicap accessible parking passes available at the standard price, so Plaintiffs were forced to purchase a "VIP parking pass" at an extra cost. *Id.* Nonetheless, Plaintiffs allege, when Plaintiffs arrived at the Stadium on the day of the event, "[t]here were many empty accessible spaces" available in standard priced lots. *Id.*

Plaintiffs also attempted to purchase on the Ticketmaster Website a block of tickets for an April 2, 2016 Supercross event at the Stadium. *Id.* ¶ 34. However, "there were no accessible seats available on the [Ticketmaster Website] for the event." *Id.* Plaintiffs purchased regular tickets through the Ticketmaster Website with the hope of exchanging Mr. Nevarez's regular seat for a handicap accessible seat at the Stadium on the day of the event. *Id.* ¶ 35.

### B. Procedural History

Case No. 16-CV-7013-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

On December 7, 2016, the Nevarezes filed suit against the Forty Niners Football Company, LLC; Forty Niners SC Stadium Company LLC; the National Football League; the City of Santa Clara; the Santa Clara Stadium Authority; and Ticketmaster LLC. ECF No. 1.

On December 30, 2017, the Nevarezes filed a First Amended Complaint ("FAC"). ECF No. 9. On February 3, 2017, Ticketmaster answered the FAC. ECF No. 21. On February 7, 2017, the Forty Niners Defendants, the National Football League, and the Santa Clara Defendants each filed motions to dismiss the FAC. ECF Nos. 28, 30, 32.

On March 17, 2017, the Nevarezes voluntarily dismissed with prejudice the National Football League as a defendant. ECF No. 39.

On April 12, 2017, the parties filed a stipulation to permit the Nevarezes to file a SAC. ECF No. 46. The Court granted the parties' stipulation on April 13, 2017. ECF No. 47. In light of the anticipated SAC, the Court denied as moot the pending motions to dismiss the FAC. ECF No. 47.

On April 13, 2017, Plaintiffs filed a SAC. ECF No. 50. The SAC added DeFrancesco as a Plaintiff, and added Forty Niners Stadium Management Company LLC and Live Nation as Defendants. *Id.*

Plaintiffs alleged three causes of action in the SAC. First, Plaintiffs alleged that the Forty Niners Defendants and the Ticketmaster Defendants violated Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101. Second, Plaintiffs alleged that the Santa Clara Defendants violated Title II of the ADA. Third, Plaintiffs alleged that all Defendants violated California's Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51. *Id.*

On April 28, 2017, the Ticketmaster Defendants answered the SAC. ECF No. 56. On May 1, 2017, the Forty Niners Defendants and the Santa Clara Defendants filed a motion to dismiss. ECF No. 58. On May 15, 2017, Plaintiffs filed an opposition. ECF No. 59. On June 5, 2017, the Forty Niners Defendants and the Santa Clara Defendants filed a reply. ECF No. 65.

On May 17, 2017, Ticketmaster Defendants filed a motion to compel arbitration. ECF No. 60 ("Mot."). On June 16, 2017, Plaintiffs filed an opposition to Ticketmaster Defendants' motion

to compel arbitration.  ECF No. 67 ("Opp.").  Also on June 16, 2017, Plaintiffs filed an

administrative motion to file under seal documents in support of their opposition.  ECF No. 68.

On July 10, 2017, Ticketmaster Defendants filed a reply to Plaintiffs' opposition.  ECF No. 69

("Reply).  On July 17, 2017, Plaintiffs filed an objection to Ticketmaster Defendants' Reply.  ECF

No. 70.[2]

        On August 1, 2017, the Court granted in part and denied in part the Stadium Defendants'

motion to dismiss the SAC.  ECF No. 76.

        Also on August 1, 2017, Plaintiffs filed a request for judicial notice in support of their

opposition to Ticketmaster Defendants' motion to compel arbitration.  ECF No. 67.

## II.    LEGAL STANDARD

        The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract

affecting interstate commerce.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9

U.S.C. § 2.  Under Section 3 of the FAA, "a party may apply to a federal court for a stay of the

trial of an action 'upon any issue referable to arbitration under an agreement in writing for such

arbitration.'"  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) (quoting 9 U.S.C. § 3).  If

all claims in litigation are subject to a valid arbitration agreement, the court may dismiss or stay

the case.  *See Hopkins & Carley, ALC v. Thomson Elite*, 2011 WL 1327359, at *7–8 (N.D. Cal.

---

[2] Plaintiffs object to the fact that Ticketmaster Defendants raised new evidence and arguments for the first time in their Reply.  *See* ECF No. 70.  Specifically, Plaintiffs contend that Ticketmaster Defendants attached the 2015 and 2016 versions of the TOU only in their Reply, but not in their motion, and thus the Court may not consider these versions of the TOU.  The Court disagrees.  In their motion to compel arbitration, Ticketmaster Defendants stated that the Ticketmaster Website has had an arbitration provision since June 15, 2011, and that this arbitration has not changed since Plaintiffs used the Ticketmaster Website.  *See* Han Decl. ¶ 2.  Ticketmaster Defendants attached to their motion to compel arbitration the most recent version of the Ticketmaster Website TOU, which had last been updated in 2017.  *See id.*; *see* ECF No. 60-2.  In opposition, Plaintiffs argued that Ticketmaster Defendants failed to attach the 2015 and 2016 TOU, which were effective when Plaintiffs made their purchases.  *See* ECF No. 69-1.  Plaintiffs speculated that the 2015 and 2016 TOU were meaningfully different from the 2017 TOU.  *See id.*  Accordingly, in their Reply, Ticketmaster Defendants attached the 2015 and 2016 versions of the TOU.  *See* ECF No. 69-1.  The 2015 and 2016 TOU show that, as Ticketmaster Defendants argued in their original motions, the 2015 and 2016 versions versions contained the same arbitration provision as the 2017 TOU.  Moreover, the 2015 and 2016 TOU as a whole are substantially the same as the 2017 TOU as a whole.  *See id.*

Case No. 16-CV-7013-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

Apr. 6, 2011).

"For any arbitration agreement within the coverage of the FAA, the court is to make the arbitrability determination by applying the federal substantive law of arbitrability, absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability law." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (citations and brackets omitted). In deciding whether a dispute is arbitrable, a federal court must answer two questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that agreement to arbitrate encompasses the claims at issue. *See id.* at 1130; *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the party seeking to compel arbitration establishes both factors, the court must compel arbitration. *Id.* "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." *Republic of Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

Additionally, in cases where the parties "clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator," the Court's inquiry is "limited . . . [to] whether the assertion of arbitrability is 'wholly groundless.'" *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006) (applying Ninth Circuit law). Nonetheless, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

The FAA creates a body of federal substantive law of arbitrability that requires a healthy regard for the federal policy favoring arbitration and preempts state law to the contrary. *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 467, 475–79 (1989). State law is not entirely displaced from the federal arbitration analysis, however. *See Ticknor*, 265 F.3d at 936-37. When deciding whether the parties agreed to arbitrate a certain matter, courts generally apply ordinary state law principles of contract interpretation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Parties may also contract to arbitrate according to state rules,

so long as those rules do not offend the federal policy favoring arbitration. *Volt*, 489 U.S. at 478–79. Thus, in determining whether parties have agreed to arbitrate a dispute, the court applies "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). If a contract contains an arbitration clause, there is a presumption of arbitrability, *AT&T*, 475 U.S. at 650, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

## III. DISCUSSION

According to Ticketmaster Defendants, Plaintiffs' claims against Ticketmaster Defendants are subject to arbitration pursuant to the arbitration provision contained within the Ticketmaster Website's TOU. In opposition, Plaintiffs dispute several aspects of the TOU. First, Plaintiffs contend that they never agreed to the TOU on the Ticketmaster Website. Second, Plaintiffs contend that, even assuming that they did agree to the TOU, the arbitration provision contained within the TOU is unconscionable and thus unenforceable. The Court considers these arguments in turn.

### A. Whether Plaintiffs Agreed to the Ticketmaster Website's TOU

Plaintiffs first argue that they never agreed to the TOU when they purchased their tickets and parking passes through the Ticketmaster Website. "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Cordas v. Uber Tech.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (quoting

10

*Three Valleys Mun. Water Dist. V.E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)). "Questions of contract formation are questions of state law." *Id.* In California, "mutual assent is the key to contract formation." *Id.*

Here, the existence of mutual assent between Plaintiffs and Ticketmaster Defendants implicates the law of Internet-based contract formation. As the Ninth Circuit has explained, "[c]ontracts formed on the Internet come primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). "Unlike a clickwrap agreement, a browsewrap agreement does not require the user to manifest assent to the terms and conditions expressly . . . [a] party instead gives his assent simply by using the website." *Id.* (internal quotation marks omitted). "Indeed, 'in a pure-form browsewrap agreement, the website will contain a notice that—by merely using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service.'" *Id.* (quoting *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012)). "Thus, 'by visiting the website—something that the user has already done—the user agrees to the Terms of Use not listed on the site itself but available only by clicking a hyperlink.'" *Id.* Courts have held that the "validity of [a] browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.* (citing cases).

Plaintiffs contend that the Ticketmaster Website's TOU, and thus the arbitration provision within the TOU, is contained within an unenforceable "browsewrap" agreement. By contrast, Ticketmaster Defendants argue that the TOU is a "clickwrap" agreement, and that courts routinely enforce "clickwrap" agreements. To resolve this dispute, the Court first reviews the process of purchasing a ticket or parking pass on the Ticketmaster Website. The Court then considers whether the Ticketmaster Website's TOU are more properly described as a "browsewrap" or "clickwrap" agreement, and whether Plaintiffs assented to the TOU in purchasing their tickets and

11

parking passes on the Ticketmaster Website.

In purchasing tickets and parking passes from the Ticketmaster Website, Plaintiffs were presented with the opportunity to assent to the TOU on at least two occasions. First, in order to purchase their tickets and parking passes, Plaintiffs would have had to either register a Ticketmaster Website account or sign in to an existing account. *See* Han Decl. ¶¶ 4–5. If Plaintiffs did not have a Ticketmaster Website account at the time that Plaintiffs purchased their tickets and parking passes in 2015 and 2016, Plaintiffs would have been required to complete the information on the "Create Account" webpage. ECF No. 60-4. After filling in the required information, Plaintiffs would have been required to click "Accept and Continue" to create a Ticketmaster Website account. *Id.* Below the "Accept and Continue" button is the statement, in black bold text against a white background, "By continuing past this page, you agree to our terms of use." *Id.* The phrase "terms of use" is in blue text, and the text is a hyperlink to the Ticketmaster Website's TOU, which contain the arbitration provision at issue. *Id.*

If Plaintiffs already registered a Ticketmaster Website account at the time that Plaintiffs purchased their tickets and parking passes in 2015 and 2016, Plaintiffs would have been required to sign in to their accounts in order to purchase their tickets and parking passes. *See* Han Decl. ¶ 5. In order to sign in to their Ticketmaster Website accounts, Plaintiffs would have been required to complete the required fields on the "Sign In" webpage, and click the button "Sign In" to proceed past the page. *Id.* Below the "Sign In" button is the sentence, in black bold text against a white background, "By continuing past this page, you agree to our terms of use." *Id.* Again, "terms of use" is in blue text and is a hyperlink to the Ticketmaster Website's TOU, which contain the arbitration provision at issue. *Id.*

Second, once Plaintiffs either registered an account or signed in to their existing account, and once Plaintiffs selected the tickets and parking passes that Plaintiffs wished to purchase, Plaintiffs would have been presented with a page to complete their purchase. *See* ECF No. 60-6. On the screen in which Plaintiffs were required to enter their credit card and billing information, Plaintiffs would have been required to click the "Submit Order" button to submit and finalize their

Case No. 16-CV-7013-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

order. *Id.* Below the "Submit Order" button is the sentence, in black bold text against a white background, "By continuing past this page, you agree to our terms of use." *Id.* Again, the sentence "terms of use" is in blue font, and is a hyperlink to the Ticketmaster Website's TOU, which contain the arbitration provision at issue. *Id.* In addition, on the same "Submit Order" page—and to the left of the "Submit Order" button—is the sentence: "By clicking the 'Submit Order' button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy." *Id.* The phrase "Purchase Policy" is in blue font and is a hyperlink to the Ticketmaster Website's Purchase Policy. The first paragraph of the Purchase Policy instructs users of the Ticketmaster Website that the Ticketmaster Website's Terms of Use "govern your use of this Site." *See* ECF No. 60-7.

Given the process described above for assenting to the Ticketmaster Website's TOU, the Court finds that the Ticketmaster Website's TOU are neither a "true browsewrap" agreement nor a "pure-form clickwrap agreement." *See Fteja*, 841 F. Supp. 2d at 836–37. Contrary to Plaintiffs' argument, the Ticketmaster Website's TOU are not a true browsewrap agreement—in which a user purportedly assents to terms of service merely by browsing a website without further action—because, as discussed above, a user of the Ticketmaster Website must take some affirmative actions to agree to the Ticketmaster Website's TOU. Specifically, prior to making a purchase on the Ticketmaster Website, a user of the Ticketmaster Website must click either "Accept and Continue" or "Sign In"—depending on whether the individual has an existing Ticketmaster Website account—and a user must click "Submit Order" to finalize their purchase. Below the buttons "Accept and Continue," "Sign In," and "Submit Order" is the sentence "By continuing past this page, you agree to our terms of use." *See, e.g.*, ECF No. 60-6. This sentence is in bold black font and is easily visible to a user before the user clicks on any of these buttons. *See id.* In addition, users are also told next to the "Submit Order" button that "By clicking the 'Submit Order' button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy." *Id.* The phrase "Purchase Policy" is in blue font, and is a hyperlink to the Ticketmaster Website's Purchase Policy, which instructs users that the Ticketmaster Website's TOU "govern your use of this Site." *See* ECF No. 60-7. Accordingly, to make a purchase on the Ticketmaster Website, a

13

user must make at least two affirmative clicks after being told that, "By continuing past this page, you agree to our terms of use." *See, e.g.*, ECF No. 60-6.

Although the Court finds that the Ticketmaster Website is not a pure "browsewrap" agreement, the Court disagrees with Ticketmaster Defendants that the Ticketmaster Website's TOU is a "pure-form clickwrap agreement." *Fteja*, 841 F. Supp. 2d at 836–37. With a "pure-form clickwrap agreement," "users typically click an 'I agree' box after *being presented with* a list of terms and conditions of use." *Id.* (internal quotation marks omitted). Here, "[w]hile the Terms of Use require the user to click on ['Accept and Continue,' 'Sign In,' or 'Submit Order'] to assent, they do not contain any mechanism that forces the user to actually examine the terms before assenting." *Id.* Similarly, users of the Ticketmaster Website are not required to click an explicitly labeled "I agree" button to assent to the Ticketmaster Website's TOU. Rather, users must click buttons that are labeled for other actions—such as "Sign In"—and these buttons do not themselves explicitly reference the Ticketmaster Website's TOU. Thus, the Ticketmaster Website lacks characteristics of a pure clickwrap agreement, in which website users "are presented with the proposed license terms and forced to expressly and unambiguously manifest either assent or rejection prior to being given access to the product." *Id.*

Accordingly, the Court finds that the Ticketmaster Website's TOU "are somewhat like a browsewrap agreement in that the [TOU] are only visible via a hyperlink" provided below the buttons "Accept and Continue," "Sign In," and "Submit Order." *Id.* at 838 . However, the Ticketmaster Website's TOU are "also somewhat like a clickwrap agreement in that the user must do something else" other than simply browse the website "to assent to the hyperlinked terms." *Id.* Specifically, the user must click "Accept and Continue," "Sign In," and "Submit Order" when signing in to their accounts and finalizing their orders. *Id.* (finding Facebook's terms of use fell somewhere in between a pure browsewrap agreement and a pure clickwrap agreement because, although users were required to take an affirmative action—clicking "Sign Up"—to agree to the terms of use, users could "assent whether or not the user" was presented with the terms of use because the terms of use were available only via a hyperlink below the "Sign Up" button).

14

1    In any event, regardless of whether the Ticketmaster Website's TOU are most

2    appropriately labeled as a "browsewrap" or a "clickwrap" agreement, the Court finds that

3    Plaintiffs assented to the Ticketmaster Website's TOU in purchasing their tickets and parking

4    passes on the Ticketmaster Website. Indeed, courts have "consistently enforced" arbitration

5    clauses contained within terms of use on similarly designed websites. *See, e.g.*, *Rodriguez v.*

6    *Experian Serv. Corp.*, 2015 WL 12656919, at *2 (C.D. Cal. Oct. 5, 2015) (enforcing arbitration

7    clause contained within terms of use where "Website contained a hyperlink to the Terms of Use at

8    the bottom of every page and included an express disclosure and acknowledgement, which stated

9    'By clicking the button above . . . you agree to our Terms of Use,'" which were hyperlinked); *Graf*

10    *v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015) (enforcing arbitration

11    clause contained within terms of use where "all users of the Match.com website during the

12    relevant time period were required to affirmatively agree to the Terms of Use when they clicked

13    on a 'Continue' or other similar button on the registration page where it was explained that by

14    clicking on that button, the user was affirming that they would be bound by the Terms of Use,

15    which were always hyperlinked and available for review"); *Crawford v. Beachbody, LLC*, 2014

16    WL 6606563, at *2–3 (S.D. Cal. Nov. 5, 2014) (enforcing forum selection clause contained within

17    terms and conditions of website where, at the final page of placing an order, plaintiff was required

18    to click on "Place Order" and language on the same page stated that "by clicking Place Order

19    below, you are agreeing" to the website's terms and conditions, which were hyperlinked).

20    As set forth in detail above, the Ticketmaster Website prominently informed Plaintiffs on

21    at least two occasions prior to purchasing their ticket or parking pass that, by clicking either

22    "Accept and Continue" or "Sign In" to register or sign in to their account, and by clicking "Submit

23    Order" to finalize their purchase, Plaintiffs were agreeing to the Ticketmaster Website's Terms of

24    Use, "which were always hyperlinked and available for review." *Graf*, 2015 WL 4263957, at *4.

25    In addition, Plaintiffs were explicitly told that by clicking "Submit Order" they were agreeing to

26    the Ticketmaster Website's Purchase Policy, which further informed Plaintiffs in the first

27    paragraph that their use of the Ticketmaster Website was governed by the Ticketmaster Website's

28

TOU. Indeed, because of the Ticketmaster Website's design and the process discussed above for assenting to the TOU, another district court has enforced the exact same arbitration clause contained within the Ticketmaster Website's TOU that is at issue here. *See Goza v. Multi-Purpose Civic Ctr. Facilities Bd. For Pulaski Cty.*, 2014 WL 3672128, at *3 (W.D. Ark. July 23, 2014) (finding there was mutual assent to the Ticketmaster Website's Terms of Use because a user must assent to the Terms of Use in registering an account and purchasing tickets on the Ticketmaster Website).

Thus, the Court concludes that Plaintiffs accepted the TOU when Plaintiffs made their ticket and parking pass purchases on the Ticketmaster Website in 2015 and 2016, and thus Plaintiffs assented to the arbitration provision contained within the Ticketmaster Website's TOU. *See, e.g.*, *Graf*, 2015 WL 4263957, at *4 (finding plaintiffs consented to the terms of use on website because Plaintiffs "were required to affirmatively agree to the Terms of Use when they clicked on a 'Continue' or other similar button"); *Rodriguez*, 2015 WL 12656919, at *2 (finding Plaintiffs consented to terms of use where the defendant's website "contained a hyperlink to the Terms of Use at the bottom of every page and included an express disclosure and acknowledgement, which stated 'By clicking the button above . . . you agree to our Terms of Use'").

However, the Court must deal with a final issue. On August 1, 2017—nearly two months after Plaintiffs filed their opposition on June 16, 2017, and nearly a full month after Ticketmaster Defendants filed their reply in support of their motion to compel arbitration—Plaintiffs filed a "Request for Judicial Notice" in support of their opposition. *See* ECF No. 75. Plaintiffs' August 1, 2017 Request for Judicial Notice requested that the Court take judicial notice of screenshots of the Ticketmaster Website's account registration and sign-in pages, which Plaintiffs accessed on July 31, 2017. *Id.* Unlike the screenshots of the account registration and sign-in pages attached to Ticketmaster Defendants' motion to compel arbitration,[3] the July 31, 2017 screenshots of the

---

[3] The screenshots of the account registration and sign-in pages attached to Ticketmaster Defendants' motion to compel arbitration are not dated. *See* ECF No. 60-2 & 60-1. However, the

Case No. 16-CV-7013-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

account registration and sign-in pages attached to Plaintiffs' August 1, 2017 Request for Judicial Notice do "not contain any hyperlink to Defendants' Terms of Use." *Id.* at 3. Rather, below the buttons "Accept and Continue" and "Sign In," there is no text whatsoever. *See id.* at 6–8.

For several reasons, Plaintiffs' August 1, 2017 Request for Judicial Notice does not change the Court's conclusion that Plaintiffs assented to the Ticketmaster Website's TOU in purchasing their tickets and parking passes on the Ticketmaster Website. First, Plaintiffs' August 1, 2017 request for judicial notice is untimely. Ticketmaster Defendants' motion to compel arbitration argued that Plaintiffs assented to the TOU in registering an account and clicking "Accept and Continue" and "Sign In," and Ticketmaster Defendants included with their motion screenshots of these webpages illustrating that these pages contained the language "[b]y continuing past this page, you agree to our terms of use." *See* ECF No. 60-5. Plaintiffs did not argue in their June 16, 2017 opposition that the Ticketmaster Website's account registration and sign in pages did not contain the language "[b]y continuing past this page, you agree to our terms of use," as Plaintiffs' August 1, 2017 Request for Judicial Notice now implies. *See* ECF No. 67. Plaintiffs do not provide any explanation for why Plaintiffs did not raise this issue in their June 16, 2017 opposition, and instead have raised it nearly a *month* after Ticketmaster Defendants filed their Reply on July 10, 2017. *See* ECF No. 75. Accordingly, because Plaintiffs failed to raise this issue in their opposition, and because Plaintiffs have not provided any reasons for why Plaintiffs waited until August 1, 2017 to raise the issue, the Court finds the Plaintiffs' August 1, 2017 Request for Judicial Notice untimely.

Second, Plaintiffs' August 1, 2017 Request for Judicial Notice states only that the registration and sign in pages accessed on *July 31, 2017* did not contain the language "[b]y

declaration to which the screenshots are attached was executed on May 16, 2017. *See* Han Decl. The declaration states that "*[s]ince 2003*, users must click an[] 'Accept and Continue' button as part[] of the website's account setup procedure," and that "[i]f a user already has an account, then he or she must log in." Han Decl. ¶ 4–5 (emphasis added). "Directly below" these buttons, the declaration states, "the customer is informed that by using the website, the customer agrees to be bound by the Terms of Use." *Id.* Accordingly, although Ticketmaster Defendants' screenshots are not dated, the accompanying declaration was issued on May 16, 2017 and states that the Ticketmaster Website has contained this language since 2003. *Id.*

17

continuing past this page, you agree to our terms of use." *See* ECF No. 75, at 3. Plaintiffs do not state in their August 1, 2017 Request for Judicial Notice—and Plaintiffs did not argue in their June 16, 2017 opposition—that the Ticketmaster Website's account registration and sign in pages did not contain a hyperlink to the TOU in *2015 and 2016*, which were the years that Plaintiffs bought the tickets and parking passes at issue. *See* ECF No. 67. Thus, the website screenshot taken on July 31, 2017 is irrelevant to the instant motion, which relates to Plaintiffs' purchases on the Ticketmaster websites for events in 2015 and 2016. *See* SAC ¶¶ 34, 47. Indeed, the declaration issued in support of Ticketmaster Defendants' motion to compel arbitration states that "[s]ince 2003, users must click an[] 'Accept and Continue' button as part[] of the website's account setup procedure," and that "[i]f a user already has an account, then he or she must log in." Han Decl. ¶ 4–5. "Directly below" these buttons, the declaration states, "the customer is informed that by using the website, the customer agrees to be bound by the Terms of Use." Han Decl. ¶ 4–5. Accordingly, based on the evidence before the Court, Plaintiffs were presented with the Ticketmaster Websites Terms of Use at the time that they either registered for or signed into their accounts in 2015 and 2016, the years that Plaintiffs purchased the tickets and parking passes at issue. *See* SAC ¶¶ 24, 27, 34, 35.

Finally, even assuming that the Ticketmaster Website's account registration and sign in pages did not contain the statement "[b]y continuing past this page, you agree to our terms of use" at the time that Plaintiffs purchased their tickets and parking passes, the Court would still find that Plaintiffs assented to the Ticketmaster Website's TOU in purchasing their tickets and parking passes. Significantly, Plaintiffs' August 1, 2017 Request for Judicial Notice contains no argument or evidence regarding the Ticketmaster Website's "Submit Order" page for purchasing tickets and parking passes. *See* ECF No. 67. As discussed above, the Ticketmaster Website's "Submit Order" page informs users that "[b]y continuing past this page, you agree to our terms of use," which are hyperlinked. *See* ECF No. 60-6. Further, the "Submit Order" page also contains language to the left of the "Submit Order" button that instructs that, "By clicking the 'Submit Order' button, you are agreeing to the Ticketmaster Purchase Policy and Privacy Policy." *Id.* The

18

phrase "Purchase Policy" is in blue font, and is a hyperlink to the Ticketmaster Website's Purchase Policy, which instructs users that the Ticketmaster Website's TOU "govern your use of this Site." *See* ECF No. 60-7. Thus, even assuming that the Ticketmaster Website's account registration and sign in pages did not require Plaintiffs to manifest assent to the Ticketmaster Website's TOU, Plaintiffs would still have been required to manifest assent to the Terms of Use in clicking "Submit Order" to purchase their tickets and parking passes. *Id.* Accordingly, even if the Court were to consider Plaintiffs' August 1, 2017 request for judicial notice, the Court would still find that Plaintiffs manifested assent to the Ticketmaster Website's TOU in purchasing their tickets and parking passes from the Ticketmaster Website in 2015 and 2016.

## B.  Arbitrability

Having concluded that Plaintiffs assented to the Ticketmaster Website's TOU, and thus assented to the arbitration provision contained within the Ticketmaster Website's TOU, the remaining question is whether that arbitration provision governs the instant dispute between the parties. Here, Ticketmaster Defendants argue that not only is the instant lawsuit subject to arbitration, but indeed the parties have clearly and unmistakably delegated the threshold question of arbitrability to the arbitrator. For the reasons discussed below, the Court agrees.

"Under federal law, '[t]he question whether parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Loewen v. Lyft*, 129 F. Supp. 3d 945, 954 (N.D. Cal. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "If the parties clearly and unmistakably assign the arbitrability question to the arbitrator, 'the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is 'wholly groundless.'" *Id.* "An arbitration provision that explicitly refers arbitrability questions to an arbitrator is evidence that the parties clearly and unmistakably have referred the arbitrability question to the arbitrator." *Id.*

The parties do not dispute that the arbitration clause contained within the Ticketmaster Website's TOU clearly and unmistakably delegates the question of arbitrability to the arbitrator.

19

The arbitration provision explicitly provides:

> The arbitrator and not any federal, state or local court or agency shall have exclusive authority to the extent permitted by law to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation for this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.

*See* ECF No. 60-2, at 6.

Plaintiffs' only remaining defense to arbitration is that this delegation provision is unconscionable. Significantly, because the parties agree that the arbitration clause clearly and unmistakably delegates arbitrability to the arbitrator, the Court's unconscionability inquiry is limited to the delegation provision specifically, rather than the arbitration clause or the Ticketmaster Website's TOU as a whole. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) ("Because a court must enforce an agreement that, as here, clearly and unmistakably delegates arbitrability questions to the arbitrator, the only remaining question is whether the particular agreement *to delegate* arbitrability—the Delegation Provision—is itself unconscionable").

"[T]he core concern of unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145 (2013) (quotations and citations omitted). "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Pinnacle Museum Tower Ass'n Pinnacle Market Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). For unconscionability, California requires a showing of both procedural and substantive unconscionability, balanced on a sliding scale. *See Patterson*, 14 Cal. App. 4th at 1664 (noting analytical approaches to unconscionability). The Court addresses both procedural and substantive unconscionability in turn below.

### 1. Procedural Unconscionability

The Court first considers whether the delegation provision is procedurally unconscionable. The procedural component of unconscionability "focuses on the factors of oppression and

20

surprise." *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664 (1993) (citations omitted). "Oppression results where there is no real negotiation of contract terms because of unequal bargaining power." *Id.* "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* According to Plaintiffs, the delegation provision at issue here is procedurally unconscionable because the delegation provision is contained within a contract of adhesion, and because Plaintiffs were not given notice of the provision at the time they purchased their tickets and parking passes on the Ticketmaster Website.

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz*, 24 Cal. 4th at 113. An adhesive contract "signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* (citation omitted). Here, the Court agrees with Plaintiffs that the delegation provision is contained within a contract of adhesion because Ticketmaster Defendants drafted the TOU, and users of the Ticketmaster Website were given "only the opportunity to adhere to [the TOU] or reject" them. *See id.* Nonetheless, although the Court agrees with Plaintiffs that the delegation provision is contained within a contract of adhesion, the Court concludes that this creates only a "low degree of procedural unconscionability" in this case. *Loewen*, 129 F. Supp. 3d at 944 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015)). Other than the adhesive nature of the contract, there are no other indicia of oppression or surprise with regards to the delegation provision. As set forth above, Plaintiffs were prominently notified that their use of the Ticketmaster Website was governed by the Ticketmaster Website's TOU, and Plaintiffs were provided with a hyperlink to the Ticketmaster Website's TOU when Plaintiffs registered for the Ticketmaster Website, signed in to their account, and submitted their orders. The arbitration provision within the Ticketmaster Website's TOU is set forth in its own paragraph of the TOU, and it is underneath a bold heading entitled "Disputes, Including Mandatory Arbitration and Class Action Waiver." ECF No. 60-2, at 6. The paragraph delegating arbitrability to the arbitrator is

21

contained within this arbitration provision in clear language. *See id.* District courts have consistently rejected procedural unconscionability arguments in similar circumstances. *See, e.g.*, *Loewen*, 129 F. Supp. 3d at 957 (rejecting argument that delegation provision was highly procedurally unconscionable, even though the provision was contained in a lengthy terms of service available to users via hyperlink, because users of the website had the opportunity to read the terms of service prior to agreeing and because the arbitration provision contained within the terms of service was "under a bolded, large font heading relating to arbitration"); *Graf*, 2015 WL 4263957, at *5 (finding arbitration provision was "at most minimally procedurally unconscionable," and ultimately enforcing the arbitration provision, where the arbitration provision was contained within a contract of adhesion but was nonetheless "presented as its own section of the Terms of Service" with bold font "to draw the reader's attention to it").

Furthermore, although users of the Ticketmaster Website must agree to the Ticketmaster Website's TOU to purchase tickets and parking passes on the Ticketmaster Website, the degree of procedural unconscionability in this case is reduced because Plaintiffs were not required to use the Ticketmaster Website to purchase tickets for events at the Stadium. Indeed, Plaintiffs' own SAC shows that Plaintiffs made purchases from the Stadium Box Office itself on some occasions, rather than from the Ticketmaster Website. *See, e.g.* SAC ¶ 24. Thus, because Plaintiffs were "free to bypass Ticketmaster and purchase tickets directly from the box office," there is a low degree of procedural unconscionability in this case even though the delegation provision was presented to Plaintiffs in a contract of adhesion. *See Goza*, 2014 WL 3672128, at *5 (finding that the same arbitration provision at issue here had a low degree of procedural unconscionability because individuals are not required to use the Ticketmaster Website to purchase tickets for events).

Thus, although the Court finds that the delegation provision contains a degree of procedural unconscionability because it is contained within a contract of adhesion, the Court concludes that this creates only a "low degree of procedural unconscionability" in this case. *Loewen*, 129 F. Supp. 3d at 944 (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 915 (2015)). Accordingly, because the degree of procedural unconscionability is low, the Court

will enforce the delegation provision "unless the degree of substantive unconscionability is high." *Id.* (internal quotation marks omitted). The Court turns to address substantive unconscionability.

### 2. Substantive Unconscionability

As set forth above, under California law, a delegation provision must be both procedurally and substantively unconscionable to be deemed unenforceable. Substantive unconscionability arises when a provision is so "overly harsh or one-sided" that it falls outside the "reasonable expectations" of the non-drafting party. *Gutierrez*, 114 Cal. App. 4th at 88 (quoting *Armendariz*, 24 Cal. 4th at 113–14). It is not enough that terms are slightly one-sided or confer more benefits on a particular party; a substantively unconscionable term must be so unreasonable and one-sided as to "shock the conscience." *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996).

Plaintiffs' primary argument in support of finding the delegation provision substantively unconscionable is that, if Plaintiffs were required to arbitrate even the threshold question of arbitrability, the process of arbitration would subject Plaintiffs to "substantial costs" that they cannot afford. *See* Opp. at 17–18. According to Plaintiffs, in order to participate in arbitration, Plaintiffs will have to pay a non-refundable filing fee of $2,000 and professional fees of a mediator, which will range from $6,000 to $9,000 per day. *Id.* Plaintiffs present affidavits indicating that their income is such that they cannot afford these high costs because their disposable income is less than $100 a month. *See* ECF No. 68-13.

For several reasons, however, Plaintiffs' argument regarding arbitration expenses is not persuasive. First, to the extent that Plaintiffs are actually indigent, "JAMS waives all arbitration fees for indigent consumers in California." *See* Reply at 10–11. Specifically, JAMS provides that in California, consumers "with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees." *See* ECF No. 69-6, at 2.

Second, even if Plaintiffs are not indigent, the arbitration provision contained within the Ticketmaster Website's TOU provides that arbitration will be conducted by JAMS under JAMS's rules, including under JAMS's "Consumer Arbitration Standards of Minimum Fairness" where applicable. ECF No. 60-2, at 6. JAMS's Consumer Arbitration Standards of Minimum Fairness

United States District Court
Northern District of California

provide that "the only fee required to be paid by the consumer is $250, which is approximately equivalent to current Court filing fees. All other costs must be borne by the company, including any remaining JAMS Case Management Fee and all professional fees for the arbitrator's services." *See* ECF No. 67-1. Thus, under JAMS, Plaintiffs' total arbitration expenses will very likely not exceed $250. *Id.* Indeed, in *Goza*, in which the district court addressed the exact same arbitration clause at issue here, the district court recognized that the consumer would be required to pay only $250 to arbitrate his or her dispute against Ticketmaster, which was "comparable to fees required to file a lawsuit." *Goza*, 2014 WL 3672128, at *5.

Moreover, although Plaintiffs cite several cases in which courts have held arbitration provisions substantively unconscionable because the plaintiff would have been required to pay excessive arbitration costs, those cases are readily distinguishable. In the cases relied upon by Plaintiffs, the arbitration provision at issue explicitly "required [the plaintiff] to pay half of the arbitral fees." *See, e.g.*, *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 421 (N.D. Cal. 2015); *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 925 (9th Cir. 2013) (finding substantive unconscionability where arbitration policy "require[d] that an employee pay half of [the fees for a qualified arbitrator]—$3,500 to $7,000—for each day of the arbitration," in addition to other offending terms). Here, as discussed above, the Ticketmaster Website's arbitration provision requires Plaintiffs to pay the equivalent of Court filing fees and requires Defendants to bear all other costs including the arbitrator's professional fees. *See* ECF No. 60-2, at 6. Thus, the cases relied upon by Plaintiffs are inapposite.

Plaintiffs speculate that "it is likely that JAMS would decline to arbitrate this matter," and thus Plaintiffs would face higher arbitration costs under different arbitration rules, because the Ticketmaster Website arbitration clause contains "offending arbitration terms," such as limits on Plaintiffs' statutory remedies. *See* Opp. at 19. However, contrary to Plaintiffs' argument, the arbitration clause does not limit Plaintiffs' right to obtain remedies, but rather provides that "an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages)." ECF No. 60-2, at 6. Ticketmaster

Defendants themselves recognize in their opposition that the arbitration provision does not impose any limitations on Plaintiffs' rights to obtain remedies. *See id.* at 12–13. Thus, Plaintiffs' argument that JAMS will decline to arbitrate this matter—and thus that Plaintiffs will be required to bear excessive arbitration fees—is wholly speculative, and does not provide a basis for finding the arbitration agreement substantively unconscionable. *See, e.g.*, *Pope v. Sonatype*, 2015 WL 2174033, at *4 (N.D. Cal. May 8, 2015) (rejecting argument that plaintiff would be responsible for unreasonable costs in arbitration where "the most logical interpretation of the Arbitration Agreement" was that JAMS's minimum standards applied and thus plaintiff would be required to pay only an initial case management fee, but not any further fees); *see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058–59 (9th Cir. 2013) (rejecting argument that arbitration provision was procedurally unconscionable merely because there was a risk that "students may not be able to afford arbitration fees"); *Goza*, 2014 WL 3672128, at *5 (rejecting Plaintiffs' substantive unconscionability challenge to same arbitration clause in Ticketmaster Website's TOU because Plaintiffs would be required to pay only a $250 fee, which "is comparable to fees required to file a lawsuit").

Moreover, even assuming JAMS would decline to arbitrate this matter, the Ticketmaster Website's arbitration provision states that Ticketmaster will reimburse administration and arbitrator fees "for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous, but in no event will we pay for attorney's fees." ECF No. 60-2. As Ticketmaster Defendants admit, this clause only means that "although Defendants will *automatically pay* for arbitration fees for small monetary claims *regardless of who the prevailing party* is," Ticketmaster Defendants "will not agree to do so for attorney's fees." *See* Reply at 12. "Nothing in this language can be construed as a waiver of Plaintiffs' right to recover attorney's fees pursuant to a prevailing party provision in a statute, such as the ADA or the Unruh Act." *Id.*

Here, Plaintiffs individual claims likely total less than $10,000. Plaintiffs assert against the Ticketmaster Defendants one count under Title III of the ADA and one count under the Unruh Act. "Monetary damages are not available in private suits under Title III of the ADA." *Molski v.*

*M.J. Cable, Inc.*, 481 F. 3d 724, 730 (9th Cir. 2007). The Unruh Act permits monetary recovery in the form of "up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars." Cal. Civ. Code § 52(a). "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski*, 481 F.3d at 730.

As far as actual damages, Plaintiffs allege that they purchased a parking pass from the Ticketmaster Website in 2015, and that they purchased a set of tickets on the Ticketmaster Website in 2016. *See, e.g.*, SAC ¶¶ 27, 34. Plaintiffs allege that Ticketmaster Defendants did not provide a sufficient number of handicap accessible tickets and parking passes, which resulted in Plaintiffs having to spend money on a "VIP" parking pass, and having to purchase Mr. Nevarez a regular seat to exchange for a handicap accessible seat on the day of the event. *See id.* However, as Ticketmaster Defendants' records show, Plaintiffs' total purchases on the Ticketmaster Website for events at the Stadium in 2015 and 2016 do not exceed $400. *See* ECF No. 60-8 (setting forth Plaintiffs' orders on the Ticketmaster Website). Accordingly, assuming either that Plaintiffs receive statutory damages of $4,000 for each of Ticketmaster Defendants' two alleged Unruh Act violations, or that Plaintiffs receive the maximum of three times their actual damages under the Unruh Act, Plaintiffs' individual claims against Ticketmaster Defendants would still likely not total $10,000. Thus, other than Plaintiffs' speculation, there is no basis in the SAC to believe that Plaintiffs' damages will total over $10,000 based on their visits to the Stadium. *See generally* SAC.

Thus, although Plaintiffs' contend that arbitration will impose "substantial costs" on Plaintiffs that they cannot afford, Plaintiffs have not established substantive unconscionability. To the extent Plaintiffs are indigent, Plaintiffs will not pay any arbitration fees. Moreover, the Ticketmaster Website's arbitration provision requires Plaintiffs to pay the equivalent of Court filing fees and requires Defendants to bear all other costs including the arbitrator's professional fees. *See* ECF No. 60-2, at 6; *see also Goza*, 2014 WL 3672128, at *5 (finding, under same arbitration provision at issue here, that Plaintiffs would face only $250 in arbitration fees). Moreover, even if JAMS Consumer Arbitration Standards of Minimum Fairness do not apply,

Case No. 16-CV-7013-LHK
ORDER GRANTING MOTION TO COMPEL ARBITRATION

1    Plaintiffs will likely not pay for the costs of arbitration because their claims against Ticketmaster

2    Defendants are likely less than $10,000, and the arbitration provision provides that Ticketmaster

3    Defendants "will reimburse [arbitration] fees for claims totaling less than $10,000 unless the

4    arbitrator determines the claims are frivolous." *See* ECF No. 60-2, at 6.  Accordingly, Plaintiffs

5    have not established that the delegation provision in the arbitration provision is substantively

6    unconscionable.

7         Therefore, while the delegation provision contains a low degree of procedural

8    unconscionability, Plaintiffs have not met their burden to demonstrate that the delegation

9    provision is both procedurally and substantively unconscionable, as required by California law.

10   Thus, the Court enforces the delegation provision.  Accordingly, the Court need not—and

11   cannot—reach Plaintiffs' remaining arguments regarding the unconscionability of the arbitration

12   clause as a whole, which the parties have clearly and unmistakably delegated to the arbitrator in

13   the first instance.  *See* ECF No. 60-2 ("The arbitrator and not any federal, state or local court or

14   agency shall have exclusive authority to the extent permitted by law to resolve all disputes arising

15   out of or relating to the interpretation, applicability, enforceability or formation for this

16   Agreement, including but not limited to any claim that all or any part of this Agreement is void or

17   voidable.").

18   **IV.    CONCLUSION**

19        For the foregoing reasons, Ticketmaster Defendants' motion to compel arbitration is

20   GRANTED.  Plaintiffs' claims against Ticketmaster Defendants are DISMISSED without

21   prejudice. *See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (stating that,

22   when arbitration is mandatory, court shave discretion to stay the case under 9 U.S.C. § 3 or

23   dismiss the litigation entirely); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *18 (N.D. Cal.

24   June 25, 2014) (dismissing claims without prejudice where arbitration was mandatory and the

25   parties did not identify any concerns for why a stay was more appropriate over dismissal).

26   **IT IS SO ORDERED.**

27

28
     Case No. 16-CV-7013-LHK
     ORDER GRANTING MOTION TO COMPEL ARBITRATION

Dated: August 15, 2017

_____
LUCY H. KOH
United States District Judge