1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ABDUL NEVAREZ, et al., | Case No. 16-CV-07013-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION** |
| v. | |
| FORTY NINERS FOOTBALL COMPANY, LLC, et al., | Re: Dkt. Nos. 135, 172 |
| Defendants. | |

Plaintiffs Abdul Nevarez ("Mr. Nevarez"), Priscilla Nevarez ("Mrs. Nevarez"), and Sebastian DeFrancesco ("DeFrancesco") (collectively, "Plaintiffs") bring this putative class action against Defendants Forty Niners Football Company, LLC; Forty Niners SC Stadium Company, LLC; Forty Niners Stadium Management Company, LLC (collectively, "Forty Niners Defendants"); the City of Santa Clara; and Santa Clara Stadium Authority (collectively, "Santa Clara Defendants"). The Forty Niners Defendants and Santa Clara Defendants have also filed a third party complaint against Third Party Defendant Turner/Devcon ("Turner/Devcon"). Before the Court is Plaintiffs' motion for class certification. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part

Plaintiffs' motion for class certification.

## I.      BACKGROUND

### A.  Factual Background

The Forty Niners Defendants and Santa Clara Defendants (collectively, "Stadium Defendants") own, lease, and operate Levi's Stadium in Santa Clara, California, which is the home stadium of the San Francisco Forty Niners professional football team (hereinafter, "the Stadium"). ECF No. 78, at ¶¶ 1, 9 (Third Amended Complaint, or "TAC"). The Stadium also hosts several other events throughout the year. *Id.* ¶ 2. Plaintiffs allege that, on several occasions, they visited the Stadium for events, but discovered that the Stadium was not fully accessible to disabled individuals.

### 1.  The Nevarezes

Mr. Nevarez's right leg is amputated above the knee, and Mr. Nevarez also suffers from significant nerve damage in his left leg and left arm. *Id.* ¶ 7. Mr. Nevarez requires the use of a wheelchair for mobility. *Id.* Mr. Nevarez also has a "disabled parking placard and/or license plate" that allows Mr. Nevarez to park in designated accessible and van-accessible parking spaces. *Id.* Mr. Nevarez is married to Mrs. Nevarez. *Id.* Mrs. Nevarez is not disabled. *Id.* However, Mrs. Nevarez assists and accompanies her husband. *Id.*

The Nevarezes visited the Stadium for football games and other events on August 24, 2014, April 18, 2015, November 29, 2015, and April 2, 2016. *See, e.g.*, *id.* ¶¶ 22–45. The Nevarezes allege that, on each occasion, the Nevarezes faced barriers in accessing the Stadium because of Mr. Nevarez's disability. *See id.* For example, Mr. and Mrs. Nevarez allege that they could not locate elevators at the Stadium, that a suite at the Stadium lacked accessible seating for Mr. Nevarez, that it was difficult for the Nevarezes to access the Stadium from the Stadium's parking lots, that the Stadium's security checkpoints were not large enough for Mr. Nevarez's wheelchair; that the Stadium's box office ticket window ("Box Office") was not accessible to Mr. Nevarez; that the Nevarezes had difficulty purchasing tickets for accessible seating in advance of events; and that the Nevarezes had difficulty obtaining sufficient companion seating to allow Mr.

Nevarez to sit together with his family and friends. *Id.* ¶¶ 22–45.

On July 8, 2016, the Nevarezes served a government claim on the City of Santa Clara related to their visits to the Stadium on August 24, 2014, April 18, 2015, November 29, 2015, and April 2, 2016.[1] *Id.* ¶ 59. On July 20, 2016, the City of Santa Clara rejected Mr. Nevarez's claims related to the 2014 and 2015 Stadium visits as untimely. *Id.* On August 17, 2016, the City of Santa Clara rejected Mrs. Nevarez's claims related to the 2014 and 2015 Stadium visits as untimely. *Id.* On September 13, 2016 and September 26, 2016, the City of Santa Clara rejected the Nevarezes' claims related to their visits to the Stadium for the April 2, 2016 event. *Id.*

### 2. DeFrancesco

DeFrancesco is a quadriplegic and requires the use of a wheelchair for mobility. *Id.* ¶ 2. DeFrancesco owns season tickets to Forty Niners home games. *Id.* ¶¶ 46–47. Prior to purchasing his 2016 season tickets, DeFrancesco informed the Stadium Defendants that he was a wheelchair user, and that he needed accessible seating. *Id.* ¶ 46. DeFrancesco was assured that he would receive accessible seating. *Id.*

On June 23, 2016, DeFrancesco entered into a "Stadium Builders License Agreement," which guaranteed DeFrancesco the right to purchase Seat 14 and Seat 15 in Row 3 of Section 207 of the Stadium. *Id.* DeFrancesco paid $5,000 per seat, for a total of $10,000. *Id.* DeFrancesco paid a $1,000 down payment and financed the remaining payments. *Id.*

On August 26, 2016, DeFrancesco attended a pre-season football game at the Stadium. *Id.* ¶ 47. When DeFrancesco arrived at his assigned seats, he discovered he had not, in fact, received accessible seats. *Id.* Instead, DeFrancesco's seats were up a flight of stairs, and were impossible for him to access. *Id.* DeFrancesco had guest services exchange his tickets for that game to accessible seats located in a different section of the Stadium. *Id.*

---

[1] The TAC alleges that Plaintiffs attended events at the stadium on August 24, 2014, April 18, 2015, November 29, 2015, and April 2, 2016. However, the portion of the complaint labeled "Government Claim Filed" lists events at the Stadium as occurring on "December 20, 2014, April 16, 2015, November 29, 2015, and April 2, 2016." TAC ¶ 59. The reason for the discrepancy in the first two dates is unclear, but the discrepancy does not affect this Court's order.

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

Thereafter, DeFrancesco contacted the Stadium Defendants to complain that the season tickets he had purchased were for seats that DeFrancesco could not access. *Id.* ¶ 48. In response, DeFrancesco was told that accessible seating would be provided for DeFrancesco "on a game by game basis." *Id*. The Stadium Defendants required DeFrancesco "to request a ticket exchange before every" game. *Id.* ¶ 49. DeFrancesco informed Defendants that he would not pay the remaining payments for his season tickets unless he was provided with accessible seating. *Id.* ¶ 50. The Stadium Defendants told DeFrancesco that there was no available accessible seating in Section 207, and that DeFrancesco would need to apply for seat relocation in April 2017. *Id*. Defendants informed DeFrancesco that the only permanent accessible seats available for purchase were priced at approximately $6,000 for the 2017 season.[2] *Id.* ¶ 50.

DeFrancesco further alleges that, in attending events at the Stadium, he experienced barriers to access such as heavy doors, lack of accessible signage, and lack of accessible counters at the Stadium's vending services. *Id.* ¶¶ 51–54. DeFrancesco further alleges that he has encountered Stadium staff who were not adequately trained on disability access issues. *Id.* ¶ 56.

### B. Procedural History

On December 7, 2016, the Nevarezes filed suit against the Forty Niners Football Company, LLC; Forty Niners SC Stadium Company LLC; the National Football League; the City of Santa Clara; the Santa Clara Stadium Authority; and Ticketmaster LLC ("Ticketmaster"). ECF No. 1.[3]

---

[2] The TAC alleges that, because the "only permanent accessible seats available for purchase were priced at approximately $6,000 for the 2017 season," DeFrancesco "would be required to spend an additional $5,000 in order to receive the accessible seats he should have been provided for the 2016 season." TAC ¶ 50. However, DeFrancesco alleges that his seats for the 2016 season cost "$5,000 per seat for a total of $10,000." *Id.* ¶ 46. Thus, DeFrancesco would presumably have been required to pay an additional $1,000 per seat for a total of $2,000, not $5,000. *See id.*

[3] Turner/Devcon has submitted an unopposed request that the Court take judicial notice of Plaintiffs' complaint, FAC, and SAC. ECF No. 162. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Although Turner/Devcon provides no

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

On December 30, 2017, the Nevarezes filed a First Amended Complaint ("FAC"). ECF No. 9. On February 3, 2017, Ticketmaster answered the FAC. ECF No. 21. On February 7, 2017, the Forty Niners Defendants, the National Football League, and the Santa Clara Defendants each filed motions to dismiss the FAC. ECF Nos. 28, 30, 32.

On March 17, 2017, the Nevarezes voluntarily dismissed with prejudice the National Football League as a defendant. ECF No. 39.

On April 12, 2017, the parties filed a stipulation to permit the Nevarezes to file a Second Amended Complaint ("SAC"). ECF No. 46. The Court granted the parties' stipulation on April 13, 2017. ECF No. 47. In light of the anticipated SAC, the Court denied as moot the pending motions to dismiss the FAC. ECF No. 47.

On April 13, 2017, Plaintiffs filed the SAC. ECF No. 50. The SAC added DeFrancesco as a Plaintiff, and added Forty Niners Stadium Management Company LLC and Live Nation Entertainment, Inc. ("LiveNation") as Defendants. *Id.* On April 28, 2017, Ticketmaster and LiveNation answered the SAC. ECF No. 56.

On August 1, 2018, the Court granted in part and denied in part the Stadium Defendants' motion to dismiss. ECF No. 76. The Court rejected the argument that Mrs. Nevarez lacked the associational standing necessary to pursue her claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and California's Unruh Act ("Unruh Act"), California Civil Code § 51 *et seq. Id.* at 8–17. However, the Court dismissed with prejudice the Nevarezes' claims for damages under the Unruh Act against the Santa Clara Defendants that stemmed from the Nevarezes' visits to the Stadium on August 24, 2014, April 18, 2015, and November 29, 2015. *Id.* at 18–20. The Court noted that the Nevarezes were required to present their claims for damages to the City of Santa Clara within six months of accrual, pursuant to California's Government Claims Act ("Claims Act"), California Government Code § 905 *et seq.* In turn, because the Nevarezes had only satisfied this requirement with respect to their April 2, 2016 visit to the Stadium, only the

explanation for why it is necessary to specifically take judicial notice of pleadings in this case, the Court will GRANT its request.

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1   Unruh Act claim based on the April 2, 2016 visit survived. Finally, the Court dismissed

2   DeFrancesco's Unruh Act claim for damages against the City of Santa Clara without prejudice

3   because Plaintiffs had not alleged facts indicating that DeFrancesco had timely complied with the

4   Claims Act. *Id.* at 19.

5          On August 8, 2017, Plaintiffs filed the TAC. ECF No. 78 ("TAC"). The TAC alleged three

6   causes of action. Count One alleged that the Forty Niners Defendants, LiveNation, and

7   Ticketmaster violated Title III of the ADA. *Id.* ¶ 76. Count Two alleged that the Santa Clara

8   Defendants violated Title II of the ADA. *Id.* ¶ 87. Count Three alleged that all of the defendants

9   violated the Unruh Act. *Id.* ¶ 96. On September 1, 2017, the Stadium Defendants filed an answer.

10  ECF No. 90.

11         On August 15, 2017, the Court granted LiveNation's and Ticketmaster's motion to compel

12  arbitration and dismissed Plaintiffs' claims against both defendants without prejudice. ECF No.

13  85. Consequently, Plaintiffs' claims against LiveNation and Ticketmaster are not at issue in the

14  instant motion for class certification.

15         On December 13, 2017, the Court granted the Stadium Defendants leave to file a third-

16  party complaint against Turner/Devcon. ECF No. 106. On December 14, 2017, the Stadium

17  Defendants filed the third-party complaint. ECF No. 107. On January 31, 2018, Turner/Devcon

18  filed its answer. ECF No. 119.

19         On April 4, 2016, Plaintiffs filed their motion for class certification. ECF No. 135

20  ("Mot.").[4] Plaintiffs seek to certify three classes. The first two classes seek only declaratory and

21

22  ────────────────────────

23  [4] Plaintiffs have filed a request for judicial notice in connection with their motion for class
    certification. ECF No. 144. Specifically, Plaintiffs request that the Court take judicial notice of the

24  City of Santa Clara's Comprehensive Annual Financial Report for Fiscal Year ending June 30,
    2017. This report has been made publicly available and can be found online. *Id.* at 1 (so noting).

25  Public records are proper subjects of judicial notice. *See, e.g., United States v. Black*, 482 F.3d
    1035, 1041 (9th Cir. 2007). Similarly, documents available on government websites are generally

26  judicially noticeable. *See Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D.
    Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government

27  documents available from reliable sources on the Internet, such as websites run by governmental
    agencies." (internal quotation marks and alterations omitted)). Thus, the Court GRANTS
    Plaintiffs' request for judicial notice.

28

United States District Court
Northern District of California

injunctive[5] relief under Rule 23(2) and the third class seeks statutory minimum damages of $4,000 per actionable violation of the Unruh Act under Rule 23(b)(3). *Id.* at 1. Specifically, Plaintiffs seek to certify the following three classes:

> **Injunctive Relief Class:** 1. All persons with mobility disabilities who use wheelchairs, scooters, or other mobility aids who will attempt to purchase accessible seating for a public event at Levi's Stadium and who will be denied equal access to the Stadium's facilities, services, accessible seating, parking, amenities, and privileges, including ticketing, during the three years prior to the filing of the Complaint herein through the conclusion of this action.

> **Companion Injunctive Relief Class:** 2. All persons who are companions of persons with mobility disabilities who use wheelchairs, scooters or other mobility aids and who have used or will use companion seating for public events located at Levi's Stadium during the three years prior to the filing of the Complaint herein through the conclusion of this action.

> **Damages Class:** 3. All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who have purchased, attempted to purchase, or for whom third parties purchased accessible seating and who have been denied equal access to Levi's Stadium's facilities, services, accessible seating, parking, amenities, and privileges during the three years prior to the filing of the Complaint herein through the conclusion of this action.

*Id.* at 1–2 (bold titles added).

On May 11, 2018, the Stadium Defendants filed their opposition. ECF No. 154 ("Opp."). On May 11, 2018, Turner/Devcon filed its opposition. ECF No. 160 ("Turner Opp."). On May 29, 2018, Plaintiffs filed their reply to the Stadium Defendants' opposition. ECF No. 168 ("Reply"). On May 29, Plaintiffs filed their reply to Turner/Devcon's oppositions. ECF No. 170 ("Turner Reply").[6]

## II.    LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23

---

[5] Plaintiffs' injunctive relief classes seek injunctive relief under both Title II and Title III of the ADA because the Stadium is controlled by government entities (the Santa Clara Defendants) and private actors (the Forty Niners Defendants). Title II applies to government entities and Title III applies to private actors. *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015) (so noting).
[6] Plaintiffs and the Stadium Defendants have filed a number of objections to evidence presented by the opposing side in connection with the class certification briefing. ECF Nos. 157, 172, 173, 174, 175, 176, Reply at 2. The Court discusses these evidentiary objections in detail below.

7

does not set forth a mere pleading standard. To obtain class certification, plaintiffs bear the burden of showing that they have met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). That is, the class must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that the plaintiff "satisf[ies] through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Court can certify a Rule 23(b)(1) class when plaintiffs make a showing that there would be a risk of substantial prejudice or inconsistent adjudications if there were separate adjudications. Fed. R. Civ. P. 23(b)(1). The Court can certify a Rule 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, the Court can certify a Rule 23(b)(3) class if the Court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351); *see also Mazza*, 666 F.3d

8

United States District Court
Northern District of California

at 588 ("'Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23.'" (quoting *Zinser*, 253 F.3d at 1186)). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *Comcast*, 569 U.S. at 34 (stating that Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)" and that a court has a "duty to take a 'close look' at whether common questions predominate over individual ones").

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## III.   DISCUSSION

Defendants[7] oppose Plaintiffs' motion for class certification across the board. Defendants argue that Plaintiffs' class definitions contradict applicable statutes of limitations and propose impermissible "fail-safe" classes. Defendants argue further that the proposed classes do not satisfy Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements, with particular emphasis on alleged typicality and adequacy problems. Next, Defendants argue that Plaintiffs' proposed damages class fails to satisfy Rule 23(b)(3) because, among other issues, individual inquiries into whether class members encountered actionable Unruh Act violations would predominate, and because class members cannot pursue damages claims against the Santa Clara Defendants. Defendants then briefly challenge Rule 23(b)(3) superiority, and conclude with an equally brief argument that Plaintiffs' injunctive classes have not satisfied the requirements of

---

[7] The Court hereafter uses "Defendants" to refer to the Stadium Defendants and Turner/Devcon together because they advance similar arguments in their briefs. Where necessary, the Court will distinguish between the Stadium Defendants' arguments and those of Turner/Devcon.

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    Rule 23(b)(2). Both sides have also presented evidentiary objections, which the Court considers at

2    the close of the instant order.

3         The Court agrees in part with Defendants' definitional arguments. Specifically, the Court

4    rejects' defendants fail-safe arguments but agrees that Plaintiffs' damages class uses the wrong

5    statute of limitations. However, the Court finds that the statute of limitations problem can be

6    resolved by amending the class definition. The Court also agrees in part with Defendants' Rule

7    23(a) arguments. Specifically, the Court finds that DeFrancesco fails to satisfy Rule 23(a)(3)

8    typicality because he is subject to a unique defense. However, the Court rejects Defendants' other

9    Rule 23(a) arguments and finds that DeFrancesco's lack of typicality does not prevent certification

10   because Mr. Nevarez satisfies Rule 23(a)(3) typicality. Next, the Court evaluates Defendants' Rule

11   23(b)(3) predominance challenges. The Court agrees with Defendants that Plaintiffs may not

12   pursue class claims for damages against the Santa Clara Defendants, but nevertheless finds that

13   common questions predominate because Plaintiffs can still pursue claims for damages against the

14   Forty Niners Defendants. The Court then considers and rejects Defendants' brief Rule 23(b)(3)

15   superiority and Rule 23(b)(2) arguments. Finally, the Court finds that both sides' evidentiary

16   objections are barred or are unpersuasive. The Court therefore certifies Plaintiffs' two injunctive

17   relief classes and a narrowed version of Plaintiffs' damages class.

18   **A. Class Definition Arguments**

19        Defendants advance two challenges to Plaintiffs' class definitions. First, Defendants argue

20   that all three classes are invalid because they use the wrong statute of limitations. Second,

21   Defendants argue that Plaintiffs' first and third classes are impermissible "fail-safe" classes. The

22   Court agrees with Defendants' statute of limitations argument as to the damages class. However,

23   this does not bar class certification because the damages class definition can be narrowed to

24   resolve Defendants' concern. The Court is unpersuaded by Defendants' fail-safe argument.

25        Plaintiffs bring claims under Title II and Title III of the Americans with Disabilities Act

26   ("ADA"), 42 U.S.C. § 12101 *et seq.* Plaintiffs proceed under both Title II and Title III because

27   they are suing both government entities (the Santa Clara Defendants) and private actors (the Forty

28
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

*United States District Court*
*Northern District of California*

Niners Defendants). Title II applies to government entities and Title III applies to private actors. *Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015) (so noting). Plaintiffs also bring claims under the Unruh Act ("Unruh Act"), California Civil Code § 51 *et seq.*, which is California's ADA equivalent. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007) ("Any violation of the ADA necessarily constitutes a violation of the Unruh Act.").

Title II, Title III, and the Unruh Act all lack explicit statutes of limitations. *Sharkey*, 778 F.3d at 770 (noting this is true of Title II); *Estate of Stern v. Tuscan Retreat, Inc.*, 725 F. App'x 518, 525 (9th Cir. 2018) (noting this is true of the Unruh Act and Title III). Courts interpreting these statutes therefore borrow other laws' statutes of limitations. *Id.* In past, which statute of limitations to borrow has been a source of debate. *See Sharkey*, 778 F.3d at 770–74 (addressing this in ADA context); *Gatto v. Cty. of Sonoma*, 98 Cal. App. 4th 744, 754–60 (2002) (addressing this in Unruh Act context).

Nevertheless, it is now clear that Plaintiffs' claims under Title II face a three-year statute of limitations and that Plaintiffs' Unruh Act claims are subject to a two year-state of limitations. *Sharkey*, 778 F.3d at 774–75 ("We hold that California's three-year limitations period for an action upon liability created by statute applies to claims under Title II of the ADA"); *Tuscan Retreat*, 725 F. App'x at 525 ("Unruh Act suits that, as here, allege discrimination in public accommodations are likewise subject to this two-year period.").

The applicable statute of limitations for Plaintiffs' Title III claims has not been definitively established. *Tuscan Retreat*, 725 F. App'x at 526 (noting "[w]e have not decided the limitations period for Title III claims" in California). However, the Ninth Circuit has stated that "the only conceivable options" are two or three years. *Id.* The Court need not resolve the issue as to Title III because both the Santa Clara Defendants and the Forty Niners Defendants share control over the Stadium, so Title II's three year statute of limitations is applicable to the Stadium regardless.

This background contextualizes Defendants' statute of limitations argument. Plaintiffs seek to certify three classes. The first two classes seek declaratory and injunctive relief, and the third class seeks statutory damages under the Unruh Act. Yet all three classes alike assume the

11

existence of a three-year statute of limitations because all three classes define the relevant conduct

as occurring "during *the three years* prior to the filing of the Complaint herein through the

conclusion of this action."). Mot. at 1–2 (emphasis added). As Defendants point out, the damages

class therefore conflicts with the Unruh Act's two-year[8] statute of limitations. Plaintiffs agree, and

request that the Court amend the damages class definition to replace "three years" with "two

years". Reply at 14.

"[D]istrict courts have broad discretion to modify class definitions." *Williams v. City of*

*Antioch*, 2010 WL 3632199, at *3 (N.D. Cal. Sept. 2, 2010) (quoting *Powers v. Hamilton County*

*Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007)); *Charlebois v. Angels Baseball, LP*,

2011 WL 2610122, at *3 (C.D. Cal. June 30, 2011) ("[T]he Court is free to limit the class

definition or give Plaintiffs leave to do so."); 7A Charles Alan Wright & Arthur R. Miller, Federal

Practice and Procedure § 1759 (3d ed.) ("[T]he court may construe the complaint or redefine the

class to bring it within the scope of Rule 23 or it may allow plaintiff to amend in order to limit the

class."). In addition, district courts can consider changes to class definitions proposed in reply

briefs. *Greenwood v. Compucredit Corp.*, 2010 WL 291842, at *3 (N.D. Cal. Jan. 19, 2010)

(noting the plaintiffs amended their class definition in their reply brief); *Briggs v. United States*,

2009 WL 113387, at *2 (N.D. Cal. Jan. 16, 2009) (considering language plaintiff inserted in a

reply brief over the language in the motion); *Charlebois*, 2011 WL 2610122, at *3 (same). Under

either framework this Court has the authority to amend the class definition, and therefore replaces

"three years" with "two years" in Plaintiffs' proposed damages class.

The Court leaves the statute of limitations for the two injunctive class definitions

unchanged because claims against the Santa Clara Defendants are subject to Title II's three-year

---

[8] Turner/Devcon argues instead that Plaintiffs' Unruh Act claims are subject to a one-year statute of limitation. Turner/Devcon's theory stems from on a misreading of *Gatto*, 98 Cal. App. 4th 744. *Gatto* held that Unruh Act claims were subject to California's statute of limitations for personal injury actions. *Id.* at 759–60. At the time *Gatto* was decided, the personal injury statute of limitations was one year. However, California has since extended it two years. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (so noting). Thus, "Unruh Act suits that, as here, allege discrimination in public accommodations are likewise subject to this two-year period. *Tuscan Retreat*, 725 F. App'x at 525.

United States District Court
Northern District of California

statute of limitations, and injunctive relief concerning architectural features will necessarily implicate both the Forty Niners Defendants and the Santa Clara Defendants because they exercise shared control over the Stadium. *See, e.g.,* ECF No. 90 ¶ 9 (Stadium Defendant's answer to TAC stating the "City of Santa Clara owns the real property on which the Stadium is located. Defendants contend that Forty Niners Stadium Management Company LLC manages and operates the stadium on behalf of Santa Clara Stadium Authority. Defendants contend that the City of Santa Clara leases the real property, not the Stadium, to the Santa Clara Stadium Authority."). Thus, regardless of whether Title III's statute of limitations is two years or three years, Title II's three year statute of limitations will apply to the Stadium.

Defendants' second definitional argument is that Plaintiffs' first and third classes are fail-safe classes. "The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). Plaintiffs' first and third classes define class members as disabled persons who "will be denied equal access" to the Stadium. Mot. at 1–2. Defendants claim that this language inappropriately conditions class membership on finding Defendants liable, presumably on the assumption that class members can only be "denied equal access" if Defendants violated the Unruh Act or ADA. *See* Opp. at 10–11; Turner Opp. at 4, 8–9.

Defendants' argument is tenuous at best, as the Ninth Circuit has noted that "our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe." *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017) ("*Melgar II*"); *see also* William B. Rubenstein, 1 Newberg on Class Actions § 3:6 (5th ed.) (citing *Melgar II* in support of statement that "many courts have held that class definitions referencing the merits of the case are not necessarily problematic"). Defendants' argument also ignores the numerous district court decisions that have certified classes with equally "fail-safe" definitions. *See, e.g., Charlebois*, 2011 WL 2610122, at *3 (disability stadium access suit certifying a class consisting of persons who have or will "be denied equal access to wheelchair accessible seating, amenities, privileges, services and facilities

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

of the Stadium on account of his/her disability."); *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 502–03 (N.D. Cal. 2011) (disability suit certifying class of persons "who are being denied programmatic access under the Rehabilitation Act of 1973 due to barriers at park sites"); *Moeller v. Taco Bell Corp.*, 2012 WL 3070863, at *1 (N.D. Cal. July 26, 2012) ("*Moeller II*") (noting court previously certified class of disabled persons who were denied "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of California Taco Bell."). In light of the Ninth Circuit's disapproval of the fail-safe concept and the district court decisions certifying materially indistinguishable classes, the Court rejects Defendants' fail-safe argument.

In sum, the Court amends Plaintiffs' damages class definition to replace "three years" with "two years," and the Court rejects Defendants' fail-safe argument. The Court now turns to Rule 23.

### B. Rule 23(a)

Rule 23(a) provides that a district court may certify a class only if the class will satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza*, 666 F.3d at 588. Both sides' Rule 23(a) arguments are framed broadly and do not usually distinguish between the three proposed classes. The Court's Rule 23(a) analysis therefore refers to specific classes only when it is clear that a given argument applies to specific classes.

#### 1.  Numerosity & Ascertainability

Pursuant to Rule 23(a)(1), Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs estimate that membership in the first and third classes exceeds 3,400, and the Stadium Defendants concede the companion class likely exceeds 100 members. Mot. at 15 ("[T]he list of putative class members who purchased accessible seating according to Defendants' business records exceeds 3,400 persons."); ECF No. 140-4, Declaration of Guy Wallace, Exhibits I–Z ("Wallace Decl. I–Z"), Ex. Y, Santa Clara Defendants' Responses to Requests for Admission at 6 ("[R]esponding parties believes [*sic*] that more than one hundred (100) companions of persons with mobility disabilities … have attended

14

United States District Court
Northern District of California

events."); Wallace Decl. I–Z, Ex Z, Forty Niners Defendants Responses to Requests for Admission at 6 (stating same). Numerosity is usually satisfied where the class consists of 40 or more members. *Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, 2013 WL 3802807, *3 (N.D. Cal. July 17, 2013) ("[T]he numerosity requirement is usually satisfied where the class comprises 40 or more members, and generally not satisfied when the class comprises 21 or fewer members."); *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) (noting same). Plaintiffs have met that bar here. Moreover, no party argues that decreasing the damages class's statute of limitations from three to two years defeats Rule 23(a)'s numerosity requirement.

Defendants respond that Plaintiffs' proposed classes cannot satisfy numerosity because they have failed to satisfy ascertainability. Opp. at 10 n.9. Defendants' argument rests on the inaccurate premise that Rule 23(a) imposes a freestanding ascertainability requirement. Opp. at 9 ("[I]n addition to Rule 23(a)'s explicit requirements, the Rule contains an implied prerequisite that the class be ascertainable." (internal quotation marks and citation omitted)). However, the Ninth Circuit has clarified that no separate ascertainability requirement exists. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir.), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017) ("We therefore join the Sixth, Seventh, and Eighth Circuits in declining to adopt an administrative feasibility requirement."); *see Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (noting "ascertainability" is synonymous with "administrative feasibility").

Defendants' ascertainability-based arguments fail even if taken on their own terms. Defendants argue that the proposed classes cannot be ascertainable if membership will have to be determined via claims forms. This is incorrect. *Briseno* "foreclos[es] … [Defendants'] argument that a self-identifying class is not 'administratively feasible' at the certification stage." *Melgar II*, 681 F. App'x at 607. In fact, *Melgar II* affirmed a district court decision that opted for the use of the type of self-identification forms that Defendants maintain are impermissible. *Compare* Opp. at 10 (denying that any of "[l]iability, causation, and damages" can be determined by claims forms) *with Melgar v. CSk Auto, Inc.*, 2015 WL 9303977, at *11 (N.D. Cal. Dec. 22, 2015) ("*Melgar I*")

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

(endorsing "a process (akin to a claim form process) where, in order to be deemed a part of the class (and thus be eligible for relief), each class member will have to affirmatively certify that he or she used a personal vehicle and was not reimbursed."). Other cases have reached similar conclusions. *See, e.g., In re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *21 (N.D. Cal. Jan. 19, 2017) ("Post-judgment claims forms and other tools can be used to allow defendants to test an absent class member's purported entitlement to damages and to appropriately apportion damages between class members."); *Kumar v. Salov N. Am. Corp.*, 2016 WL 3844334, at *7 (N.D. Cal. July 15, 2016) ("Though it is unlikely that this class of consumers will be able to produce evidence of purchase such as receipts or store/club card data to verify a purchase, this is no impediment to their offering evidence of purchase by affidavit on a claim form.").

The Court sees no reason not to adopt a similar approach in the instant case, especially given the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno*, 844 F.3d at 1128. Class members can certify whether they were present at the Stadium and whether they encountered an actionable Unruh Act violation. *See* Cal. Civ. Code § 55.56 (noting statutory damages are available only if a plaintiff personally encountered a violation of construct related-accessibility standards or was deterred on a specific occasion). This approach is also significantly more viable here than in many of the other cases employing it, because Defendants already have records of accessible seat purchasers that include names and contact information. *See* ECF No. 118 at 1 (stipulation between the Stadium Defendants and Plaintiffs noting that "the identities and contact information of the proposed class members are maintained by Defendants as part of their records"); *id.* at 2 (agreeing that Stadium Defendants "will provide a list of the names and contact information of those individuals who purchased accessible seating tickets from Defendants for any event held at Levi's Stadium on or after July 17, 2014"). Thus, self-identification will simply complement the records that the Stadium Defendants already possess.

Defendants' final ascertainability argument is solely concerned with Plaintiffs' attempts to certify a companion class that seeks declaratory and injunctive relief. Defendants argue the class is

not ascertainable because the class is defined as "companions of persons with mobility disabilities" who use "companion seating for public events" at the Stadium. Mot. at 1. The Court disagrees. ADA regulations define seats adjacent to accessible seats as "companion" seats. 28 C.F.R. § 36.302(f)(1)(i)). Thus, the companion class consists of persons who attended an event at the Stadium with a disabled person and sat in a companion seat.

In sum, Defendants' numerosity arguments fail because they are premised on a freestanding ascertainability requirement that no longer exists. Defendants' ascertainability arguments also fail even if taken on their own merits.

### 2. Commonality

Rule 23(a)(2) states that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if ... there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement has "been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (internal quotation marks and alteration omitted). Indeed, "for purposes of Rule 23(a)(2), even a single common question will do." *Dukes*, 564 U.S. at 359 (alteration and quotation marks omitted); *Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact."). Specifically, Plaintiffs must demonstrate the existence of common questions and "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Ellis*, 657 F.3d at 986 (quotation marks omitted) (emphasis in original). Nevertheless, the "common contention need not be one that will be answered, on the merits, in favor of the class." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015) (internal quotation marks omitted).

Plaintiffs' motion for class certification identifies the following three issues common to the class. Mot. at 15–20. First, whether the Stadium was built after March 15, 2012 and is therefore subject to the 2010 ADA Accessibility Standards ("2010 ADAS") and the 2010 California Building Code ("2010 CBC"). 28 C.F.R. § 35.151(c)(3) (noting physical construction beginning "on or after March 15, 2012" is subject to the 2010 ADAS); *see* Cal. Gov't Code § 4459(c) (noting

17

United States District Court
Northern District of California

the California Building Code's accessibility regulations "shall not be less" than the requirements imposed by the ADA). Second, if so, whether the Stadium and its surroundings (*e.g.* parking lots, pedestrian right of ways) comply with the 2010 ADAS and 2010 CBC. Third, whether the Stadium is operated in accordance with the ADA, especially as it relates to ticketing and seating.

Defendants do not meaningfully dispute the existence of common questions. Defendants do not, for example, explain why determining whether the Stadium complies with the 2010 ADAS and 2010 CBC is not a common question likely "to drive the resolution of the litigation." *Ellis*, 657 F.3d at 986. Instead, Defendants argue that the existence of such common questions is outweighed by individual issues. Mot. at 13 ("Plaintiffs' claims are laden with individualized inquiries that doom commonality and predominance and preclude class certification."). In other words, Defendants argue that Plaintiffs cannot satisfy Rule 23(a) commonality because Plaintiffs cannot satisfy Rule 23(b)(3) predominance. *See* Opp. at 13–14 (explicitly considering predominance and commonality together). These arguments fail because, as the Court explains below, Plaintiffs have in fact satisfied Rule 23(b)(3).

In sum, Plaintiffs have identified a number of undisputed common questions, and have therefore satisfied commonality.

### 3. Typicality

Under Rule 23(a)(3) a representative party must have claims or defenses that are "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (citations omitted). This requirement is "permissive and requires only that the representative's claims are reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citations omitted). "The purpose of the typicality

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    requirement is to assure that the interest of the named representative aligns with the interests of the

2    class." *Id.*

3          Plaintiffs argue that their claims are typical of the classes they seek to represent. Mr.

4    Nevarez has mobility disabilities and encountered access barriers at the Stadium, inaccessible

5    seating and ticketing practices, as well as access issues stemming from the Stadium's parking,

6    transportation and pedestrian right-of-way. *See* ECF No. 151, Appendix of Declarations in

7    Support of Class Certification ("Decl. App'x"), Ex. P, Declaration of Abdul Nevarez ("Mr.

8    Nevarez Decl."). DeFrancesco likewise has mobility disabilities and has encountered inaccessible

9    seating and ticketing practices, as well as a number of access barriers. Decl. App'x, Ex. H,

10   Declaration of Sebastian DeFrancesco ("DeFrancesco Decl."). Finally, Mrs. Nevarez is the

11   nondisabled companion of Mr. Nevarez who sought to use companion seating to sit next to him at

12   the Stadium and experienced physical exhaustion from helping Mr. Nevarez navigate the

13   Stadium's accessibility issues. Decl. App'x, Ex. Q, Declaration of Priscilla Nevarez ("Mrs.

14   Nevarez Decl.") ¶ 24 ("Every time Abdul and I have been to the Stadium, I am physically and

15   emotionally exhausted before we even get to the entry gates because of the access barriers and the

16   difficulties associated with getting tickets.").

17         Based on the foregoing, Plaintiffs argue that Mr. Nevarez's and DeFrancesco's injuries are

18   typical of the proposed first class (for injunctive relief) because it consists of persons with

19   mobility disabilities who were "denied equal access" to the Stadium's "facilities, services,

20   accessible seating, parking, amenities, and privileges, including ticketing … ." Mot. at 1. Plaintiffs

21   also argue that Mr. Nevarez's and DeFrancesco's injuries are typical of the third class (for

22   damages) because it consists of persons with mobility disabilities who were "denied equal access

23   to Levi's Stadium's facilities, services, accessible seating, parking, amenities, and privileges … ."

24   *Id.* at 2. Similarly, Plaintiffs contend Mrs. Nevarez's injuries are typical of the second companion

25   class (for injunctive relief) because it consists of companions of persons with mobility disabilities

26   "who have used or will use companion seating" at the Stadium. *Id.*

27         Defendants have three main responses. First, Defendants argue that despite the seeming

28

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    alignment between class representatives' claims and class members' claims, Plaintiffs cannot

2    show typicality because the class representatives are subject to unique defenses. Opp. at 11–12.

3            Defendants begin by arguing that the Nevarezes are subject to a unique defense under

4    California's Government Claims Act ("Claims Act"), California Government Code § 905 *et seq*.

5    In relevant part, the Claims Act requires claims for damages be presented to the affected public

6    entity (here, the City of Santa Clara) within six months of accrual. Cal. Gov't Code § 911.2(a)

7    (requiring claims be presented "not later than six months after the accrual of the cause of action.").

8    The Court previously found that the Nevarezes' Unruh Act claims for damages "based on events

9    that occurred on August 24, 2014, April 18, 2015, and November 29, 2015" did not satisfy this

10   presentation requirement. *Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3288634, at *10

11   (N.D. Cal. Aug. 1, 2017). The Court therefore dismissed with prejudice the Nevarezes' Unruh Act

12   damages claims based on those three dates. *Id.* Defendants maintain those dismissals show that the

13   Nevarezes are subject to a unique Claims Act defense. The Court disagrees. Defendants do not

14   dispute that the Nevarezes' Unruh Act damages claim based on their "April 2, 2016 visit to the

15   Stadium" satisfied the Claims Act. *See id.* ("According to Stadium Defendants, the Nevarezes can

16   only seek damages against the Santa Clara Defendants under the Unruh Act for the Nevarezes

17   April 2, 2016 visit to the Stadium."); TAC ¶ 59 (noting the Nevarezes on July 8, 2016, filed a

18   claim with the City of Santa Clara based on an April 2, 2016 visit to the Stadium). Defendants cite

19   no authority holding that the Nevarezes need more than one viable claim in order to satisfy Rule

20   23(a)(3) typicality. Thus, because Defendants do not dispute that the April 2, 2016 damages claim

21   satisfied the Claims Act, the Nevarezes are not subject to a unique Claims Act defense.

22           Defendants next contend that Mrs. Nevarez faces a unique standing defense because it

23   "defies credulity" for her to claim she suffered embarrassment due to her husband's accessibility

24   issues at the Stadium. Opp. at 11. Defendants' argument is not well taken. The Court has already

25   considered and rejected this theory in the course of ruling on Defendants' motion to dismiss.

26   *Nevarez*, 2017 WL 3288634, at *11 ("Stadium Defendants' motion to dismiss Mrs. Nevarez's

27   claims under Title III of the ADA, Title II of the ADA, and the Unruh Act for lack of associational

28

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1  standing is DENIED.").

2       Defendants fare better in arguing that DeFrancesco faces a unique Claims Act defense.[9]

3  Although DeFrancesco joined this suit on April 13, 2017, the City of Santa Clara did not reject his

4  claims form until April 25, 2017. ECF No. 50 (SAC naming DeFrancesco as a plaintiff that was

5  filed on April 13, 2017); TAC ¶ 60 (noting City of Santa Clara rejected DeFrancesco's claims

6  form on April 25, 2017). The Claims Act provides that "no person may sue a public entity or

7  public employee for damages unless such person has presented a timely written claim to the public

8  entity, which the public entity has then rejected." *Apollo v. Gyaami*, 167 Cal. App. 4th 1468, 1487

9  n. 14 (Cal. Ct. App. 2008). Failure to comply with this requirement "subjects a claim against a

10  public entity to a demurrer for failure to state a cause of action." *Mugno v. Hazel Hawkins Mem'l*

11  *Hosp.*, 2017 WL 2289222, at *11 (N.D. Cal. May 25, 2017) (citation omitted). Here,

12  DeFrancesco's failure to comply with the claims presentation requirement indicates he is subject

13  to dismissal. *See, e.g., Elliott v. Amador Cty. Unified Sch. Dist.*, 2013 WL 796563, at *7 (E.D. Cal.

14  Mar. 4, 2013) (dismissing suit because it was filed before the public entity rejected the plaintiffs'

15  claims form). The Court therefore concludes that DeFrancesco's claims are not typical. However,

16  this is not fatal to Rule 23(a)(3) typicality because Mr. Nevarez's claims are typical of the first and

17  third classes, and Mrs. Nevarez's claims are typical of the second class. *Hansen v. Ticket Track,*

18  *Inc.*, 213 F.R.D. 412, 415 (W.D. Wash. 2003) ("The claim of at least one of the representatives

19  seems to be typical of the claims of putative class members as described in the class definition.

20  Typicality is satisfied.")

21       Second, Defendants argue that Plaintiffs fail to satisfy typicality because the class

22  representatives have not personally encountered many of the access features or barriers that give

23  rise to their suit. The Court disagrees. Defendants' support for this argument consists of a United

24

25  _____

26  [9] Defendants also contend that DeFrancesco is subject to a unique defense because one of his claims stems from a "one-time mix-up with his season tickets" that was "a departure from 49er policy, not policy." Opp. at 11. The Court declines to decide this argument. Doing so is

27  unnecessary because the Court has already found that DeFrancesco is subject to a unique Claims Act defense.

28
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1    States Supreme Court case that Defendants cite only for the general proposition that class

2    representatives "possess the same interest and suffer the same injury" as class members, and an

3    inapposite Ninth Circuit order considering the esoteric question of who had standing to challenge

4    Oregon's Death With Dignity Act. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982); *Lee*

5    *v. State of Or.*, 107 F.3d 1382, 1386 (9th Cir. 1997). Neither case is comparable to this suit, "in

6    which a class of plaintiffs … [seeks] certification on the grounds that architectural and policy

7    barriers precluded their access." *Lopez v. San Francisco Unified Sch. Dist.*, 2003 WL 26114018,

8    at *3 (N.D. Cal. Sept. 8, 2003). In this type of case, courts in "this circuit as well as other circuits

9    … have routinely held that class certification of classes composed of people with disabilities

10   affected by the systemic access barriers is appropriate." *Id.* at *3–4 (discussing issue further and

11   providing examples).

12        The district court's decision in *Californians for Disability Rights, Inc. v. California*

13   *Department of Transportation*, 249 F.R.D. 334 (N.D. Cal. 2008), is illustrative. *Disability Rights*

14   certified a class of mobility and vision impaired persons under the ADA and Rehabilitation Act

15   based on "barriers along sidewalks, crosswalks, pedestrian underpasses, pedestrian overpasses and

16   any other outdoor designated pedestrian walkways throughout the state of California." *Id.* at 336.

17   The district court did so even though the thousands of barriers were not identical and no named

18   plaintiff claimed to have encountered every barrier. *See id.* at 344–45. Moreover, *Disability Rights*

19   considered and rejected the same argument Defendants present here:

20        [T]he essence of defendants' argument—that in order to prove the existence of the
          forest the plaintiffs must individually prove the existence of each tree—is anathema
21        to the very notion of a class action. Taken to its logical conclusion, under
          defendants' reasoning, no civil rights class action would ever be maintainable,
22        because, in order to prove the existence of a discriminatory pattern or practice, each
          class member would have to individually prove the highly individualized factors
23        relating to each instance of discrimination they allegedly suffered."

24   *Id.* at 345. The Court agrees with this reasoning, and therefore rejects Defendants' argument.

25   *Accord Gray*, 279 F.R.D. at 510 (citing *Disability Rights* and certifying class of all mobility

26   impaired and visually impaired persons across the 75,000 acres of the Golden Gate National

27

28

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

Recreation Area because all class members were affected by the same systemic access barriers).

Third, Defendants argue Plaintiffs are not typical because the TAC limits class members to seeking the Unruh Act's statutory minimum of $4,000 even though the class representatives request statutory *and* actual damages. *Compare* TAC at 37 (requesting "all appropriate damages, including but not limited to statutory damages and compensatory damages" for the class representatives) *with id* (requesting "statutory damages in accordance with California Civil Code § 52(a)" for class members). Defendants' argument is persuasive, but the Nevarezes have rendered it moot by expressly disavowing actual damages and limiting themselves to the same statutory damages available to class members. ECF No. 168-5, Reply Declaration of Priscilla Nevarez ("Mrs. Nevarez Reply Decl.") at 2 ("Another clarification to my earlier deposition is that Abdul and I are seeking statutory minimum damages against the defendants—for ourselves and on behalf of the class, if it is certified by the Court."); Reply at 1 ("Plaintiffs do not seek compensatory or actual or treble damages."). The Court therefore rejects Defendants' argument. *See, e.g., Starbucks Corp. v. Lundberg*, 2005 WL 6036699, at *4 (D. Or. May 25, 2005) (allowing plaintiffs to disclaim any request for damages in a reply brief); *Jones v. Garcia*, 208 F.3d 221 (9th Cir. 2000) (basing decision on fact that "in his reply brief … [plaintiff] waives his claims for injunctive relief").

In sum, the Court agrees with Defendants that DeFrancesco fails to satisfy typicality, but finds that this does not preclude certification because Mr. and Mrs. Nevarez, who have both disavowed their claims for compensatory and treble damages, satisfy typicality.

### 4. Adequacy

Finally, Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement turns upon resolution of two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

The Court finds that Plaintiffs' counsel satisfies Rule 23(a)(4). Specifically, the Court finds

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

that counsel has experience in litigating class actions generally, and disability access class actions in particular. ECF No. 140, Declaration of Guy Wallace ("Wallace Decl.") ¶¶ 3–6 (listing past cases and experience); ECF No. 141, Declaration of Adam Wolf ("Wolf Decl.") ¶¶ 4–10 (listing past cases and experience); ECF No. 142, Declaration of Linda Dardarian ("Dardarian Decl.") ¶¶ 4–17 (listing past cases and experience). Plaintiffs' counsel has vigorously litigated this case from the beginning, and Defendants do not dispute that Plaintiffs' counsel will continue to do so. The Court therefore finds Plaintiffs' counsel have satisfied Rule 23(a)(4).

Plaintiffs also argue that the proposed class representatives satisfy Rule 23(a)(4) adequacy. Plaintiffs contend that there are no conflicts of interest because the class representatives seek the same relief as the class, namely declaratory and injunctive relief and statutory damages under the Unruh Act. Mot. at 21. Plaintiffs also argue that the class representatives will vigorously pursue this suit, and cite in support the class representatives' declarations affirming their willingness to carry out their duties as class representatives. Mr. Nevarez Decl. at 7–8 ("I am aware that my duty as a class representative in this case is to do what is in the best interests of the class. I also understand that I have a duty to stay knowledgeable about the case and be available to the attorneys for things that need to be done to pursue the case, including providing documents, answering written discovery, sitting for a deposition and testifying at trial, if necessary. I will carry out these duties to the best of my ability."); Mrs. Nevarez Decl. at 11 (stating same).

Defendants vigorously dispute the proposed class representatives' adequacy. First, Defendants argue that there is a conflict of interest between Plaintiffs and the class because Plaintiffs seek both statutory and actual damages, but limit class members to statutory damages. Opp. at 6–7. As before, Plaintiffs' decision to forego all damages except the same statutory damages open to class members renders this argument moot. Reply at 1. *See, e.g., Lundberg*, 2005 WL 6036699, at *4 (allowing plaintiffs to disclaim any request for damages in a reply brief); *Jones*, 208 F.3d 221 (basing decision on fact that "in his reply brief … [plaintiff] waives his claims for injunctive relief").

Second, Defendants contend Plaintiffs betrayed class members' interests by limiting them

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

to statutory damages instead of pursuing a potentially larger award of actual damages. This is

unpersuasive. Plaintiffs' decision to limit class members (and themselves) to statutory damages

relieves them of any obligation to prove actual damages. *Molski*, 481 F.3d at 731 ("The litigant

need not prove she suffered actual damages to recover the [Unruh Act's] independent statutory

damages of $4,000."); *Heatherly v. GD Liquor & Food*, 2015 WL 4967255, at *5 (N.D. Cal. Aug.

20, 2015) (awarding each plaintiff $8,000 based on two visits to a store at which they encountered

accessibility obstacles). That allows Plaintiffs and class members to sidestep the difficulties in

proving damages that can frequently preclude certification of a Rule 23(b)(3) class. *See, e.g.,*

*Davidson v. Apple, Inc.*, 2018 WL 2325426, at *21–24 (N.D. Cal. May 8, 2018); *Huu Nguyen v.*

*Nissan N. Am., Inc.*, 2018 WL 1831857, at *4–7 (N.D. Cal. Apr. 9, 2018).

"A strategic decision to pursue those claims a plaintiff believes to be most viable does not

render her inadequate as a class representative." *Todd v. Tempur-Sealy Int'l, Inc.*, 2016 WL

5746364, at *5 (N.D. Cal. Sept. 30, 2016); *see In re Yahoo Mail Litig.*, 308 F.R.D. 577, 595 (N.D.

Cal. 2015) (rejecting argument that class representatives were inadequate merely because they

"made the strategic decision to seek certification only under Rule 23(b)(2)" instead of pursuing a

Rule 23(b)(3) damages class). Defendants themselves argue that adding actual damages "to the

proposed class equation … [would] interject yet another matrix of individualized inquiry not

susceptible to class-wide resolution." Opp. at 20. Having done so, it strains credulity for

Defendants to also argue "that Plaintiff[s] [are] inadequate because [they] decline[] to assert a

theory that could unravel the putative class." *Kennedy v. Jackson Nat. Life Ins. Co.*, 2010 WL

2524360, at *5 (N.D. Cal. June 23, 2010). This is especially true for the specific actual damages-

for-statutory damages tradeoff that Plaintiffs have made in this case: "[C]ourts generally allow the

class representative to pursue only statutory damage claims, and to deliberately eschew actual

damage claims, without jeopardizing a finding of adequacy even if pursuing actual damage claims

might be to the advantage of some class members." William B. Rubenstein, 1 Newberg on Class

Actions § 3:59 (5th ed.). Even considering the potential preclusive effects of Plaintiffs' proposed

classes, the Court is not persuaded by Defendants' argument.

25

United States District Court
Northern District of California

1    Second, Defendants argue the Nevarezes are inadequate because they are serial ADA

2    plaintiffs. Opp. at 12. This is unpersuasive. Defendants do not explain why the Nevarezes' past

3    ADA litigation precludes certification, and Defendants' only support is an unpublished decision

4    from a different circuit. *Mielo v. Bob Evans Farms, Inc.*, 2015 WL 1299815 (W.D. Pa. Mar. 23,

5    2015). On the other hand, the Ninth Circuit has said that "the term 'professional,' as in

6    'professional plaintiff,' is not a 'dirty word' and should not itself undermine one's ability to seek

7    redress for injuries suffered … ." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1056 (9th Cir.

8    2009) (internal citation omitted). The Ninth Circuit has also emphasized that serial plaintiffs are a

9    key part of the ADA's implementation, and has instructed district courts to be "particularly

10   cautious about affirming credibility determinations that rely on a plaintiff's past ADA litigation."

11   *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). Reflecting this,

12   district courts have rejected arguments materially indistinguishable from those Defendants

13   advance here. *See, e.g., Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal.

14   2011) ("[T]his Court has already held that being a serial plaintiff is not a basis for finding that a

15   plaintiff is atypical."); *Patten v. Vertical Fitness Grp., LLC*, 2013 WL 12069031, at *9 (S.D. Cal.

16   Nov. 8, 2013) (rejecting argument that being a repeat plaintiff is a basis for finding a lack of

17   adequacy). Defendants' argument is at odds with the law of this circuit. Thus, the Court rejects

18   Defendants' argument.

19   Third, Defendants argue Mr. Nevarez cannot be an adequate class representative because

20   he has a criminal record. This argument is not well taken. A putative class representative's

21   "credibility may be a relevant consideration with respect to the adequacy analysis" and courts

22   "must be concerned with the integrity of individuals it designates as representatives for a large

23   class of plaintiffs." *Marsh v. First Bank of Delaware*, 2014 WL 554553, at *9 (N.D. Cal. Feb. 7,

24   2014) (citations omitted). However, "the 'most important issue' remains whether the class

25   representative's 'interests are antagonistic to those of the class members.'" *Id.* (quoting *In re*

26   *Computer Memories Sec. Litig.*, 111 F.R.D. 675, 682 (N.D. Cal. 1986)). "Only when attacks on

27   the credibility of the representative party are so sharp as to jeopardize the interests of absent class

28

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

members should such attacks render a putative class representative inadequate." *Harris v. Vector Mktg. Corp.*, 753 F.Supp.2d 996, 1015 (N.D. Cal. 2010). More precisely, a district court should find inadequacy "only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud." *Id.*

Mr. Nevarez does not approach that standard. Mr. Nevarez's convictions did not involve fraud or dishonesty, have no relationship to this case, and his incarceration ended in the 1990s. Opp. at 5, 12 (describing assaults with deadly weapons and DUI convictions); Reply at 5 (noting convictions over 20 years old). The convictions are therefore irrelevant, and are likely inadmissible as well. *See* Fed. R. Evid. 609(b); *see White v. E-Loan, Inc.*, 2006 WL 2411420, at *3 (N.D. Cal. Aug. 18, 2006) (finding class representative adequate despite his past theft convictions). This may be why Defendants do not attempt to explain why the convictions are relevant. Instead, they point them out and immediately move on. "Character attacks made by opponents to a class certification motion and not combined with a showing of a conflict of interest have generally not been sympathetically received in this district." *Marsh*, 2014 WL 554553, at *9 (citation omitted). At bottom, Defendants suggest that because Mr. Nevarez is a felon he is categorically barred from being a class representative. The Court disagrees.

Fourth, Defendants argue that Mr. Nevarez's lack of familiarity with the details of this case means he is an inadequate class representative. "The threshold knowledge required of the class representatives is low." *In re: Facebook Privacy Litig.*, 2016 WL 4585817, at *6 (N.D. Cal. Sept. 2, 2016) (citation omitted); *see also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 372 (1966) (rejecting proposition that plaintiff "who is uneducated generally and illiterate in economic matters, could never under any circumstances be a plaintiff in a derivative suit brought in the federal courts to protect her stock interests"). A "party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is startlingly unfamiliar with the case. It is not necessary that a representative be intimately familiar with every factual and legal issue in the case." *DuFour v. Be LLC*, 291 F.R.D. 413, 419 (N.D. Cal. 2013).

1    Mr. Nevarez meets this standard. He has reviewed pleadings and other documents, and he

2    avers that he remembers the underlying facts contained within documents even if he forgets the

3    actual document. Reply at 6. Defendants simultaneously argue that Mr. Nevarez is inadequate

4    because he is a serial ADA plaintiff and that he is inadequate because he is unfamiliar with the

5    law. *Cf. Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (noting descriptor

6    "professional" plaintiff "implies experience, if not expertise."). However, Mr. Nevarez has stated

7    that he is willing to shoulder the burden of being a class representative, has reviewed documents in

8    this case, and has experience with precisely this sort of suit. That is sufficient to satisfy the "low"

9    standard that applies here.

10    In sum, the Court finds that Plaintiffs have satisfied Rule 23(a)'s requirements of

11    numerosity, commonality, typicality, and adequacy. The Court now turns to Defendants'

12    challenges to Plaintiffs' proposed Rule 23(b)(3) damages class.

13    **C. Rule 23(b)(3) Predominance**

14    **1. Principle Governing the Predominance Analysis**

15    Under Rule 23(b)(3), plaintiffs must show "that the questions of law or fact common to

16    class members predominate over any questions affecting only individual members." Fed. R. Civ.

17    P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry" is meant to "tes[t] whether proposed

18    classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*

19    *v. Windsor*, 521 U.S. 591, 623 (1997). The Ninth Circuit has held that "there is clear justification

20    for handling the dispute on a representative rather than an individual basis" if "common questions

21    present a significant aspect of the case and they can be resolved for all members of the class in a

22    single adjudication." *Hanlon*, 150 F.3d at 1022. In ruling on a motion for class certification based

23    on Rule 23(b)(3), a district court must conduct a rigorous analysis to determine whether the class

24    representatives have satisfied both the predominance and superiority requirements. *See Zinser*, 253

25    F.3d at 1186. The predominance analysis focuses on "the legal or factual questions that qualify

26    each class member's case as a genuine controversy" to determine "whether proposed classes are

27    sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at

28

28

623; *see also* Fed. R. Civ. P. 23(b)(3) (to certify a class, the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members").

This Court has previously identified five principles that guide the Court's predominance inquiry:

> First, and most importantly, the critical question that this Court must answer is whether common questions predominate over individual questions. *Amgen*, 133 S. Ct. at 1191. In essence, this Court must determine whether common evidence and common methodology could be used to prove the elements of the underlying cause of action. *Id.* Second, in answering this question, this Court must conduct a "rigorous" analysis. *Comcast Corp.*, 133 S. Ct. at 1432. This analysis may overlap with the merits, but the inquiry cannot require Plaintiffs to prove elements of their substantive case at the class certification stage. *Amgen*, 133 S. Ct. at 1194. Third, this Court must determine not only the admissibility of expert evidence that forms the basis of the methodology that demonstrates whether common questions predominate. *Ellis*, 657 F.3d at 982. Rather, this Court must also determine whether that expert evidence is persuasive, which may require the Court to resolve methodological disputes. *Id.*; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 9244, 255 (D.C. Cir. 2013). Fourth, the predominance inquiry is not a mechanical inquiry of "bean counting" to determine whether there are more individual questions than common questions. *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). Instead, the inquiry contemplates a qualitative assessment, which includes a hard look at the soundness of statistical models. *Id.*; *In re Rail Freights Fuel Surcharge Antitrust Litig.*, 725 F.3d at 255. Fifth, Plaintiffs are not required to show that each element of the underlying cause of action is susceptible to classwide proof. *Amgen*, 133 S. Ct. at 1196. Rather, they need only show that common questions will predominate with respect to their class as a whole. *Id.*

*In re High-Tech Empl. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1186–87 (N.D. Cal. 2013). With these principles in mind, the Court turns to the parties' predominance arguments.

## 2. Analysis

Plaintiffs contend that common questions predominate because this case turns on the common question of whether Stadium complies with federal and state accessibility standards. Plaintiffs also stress that their decision to only seek the Unruh Act's statutory minimum of $4,000 minimizes any individual inquiries because class members will not need to show actual damages. *Molski*, 481 F.3d at 731 ("The litigant need not prove she suffered actual damages to recover the

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

[Unruh Act's] independent statutory damages of $4,000."). Instead, class members need only show they "personally encountered"[10] an Unruh Act violation that caused "difficulty, discomfort, or embarrassment" to the class member. Cal. Civ. Code § 55.56(b), (c); *see Doran v. 7-Eleven, Inc.*, 509 F. App'x 647, 648 (9th Cir. 2013) (affirming denial of statutory damages under the Unruh Act because the plaintiff did not prove he personally encountered violation and experienced difficulty, discomfort, or embarrassment). Plaintiffs therefore suggest that damages calculations will come down to multiplying $4,000 by the number of class members' visits to the Stadium.

In response, Defendants argue (1) that actual damages calculations will be necessary; (2) determining whether each class member encountered an Unruh Act on a specific occasion is fatal to predominance; and (3) that the Santa Clara Defendants' claim presentation defense bars a Rule 23(b)(3) class. The Court takes each theory in turn. The Court concludes that Defendants' first and second arguments are unpersuasive, but the Court agrees with Defendants' third argument. However, this does not defeat predominance because it is undisputed that the claim presentation defense does not apply to the Forty Niners Defendants.

First, Defendants argue that Plaintiffs have not actually limited themselves to statutory minimum damages because Plaintiffs also seek "treble damages." Mot. at 23 ("Plaintiffs seek only statutory minimum damages and treble damages on a class basis, and do not seek any actual or compensatory damages."). This means actual damages calculations will be necessary, because treble damages under the Unruh Act are "up to a maximum of three times the amount of *actual damage* … ." Cal. Civ. Code § 52(a) (emphasis added). This argument is moot. Plaintiffs' reply disavows any request for treble damages. Reply at 1 ("Plaintiffs do not seek compensatory or actual or treble damages."). *See, e.g., Lundberg*, 2005 WL 6036699, at *4 (allowing plaintiffs to disclaim any request for damages in a reply brief); *Jones*, 208 F.3d 221 (basing decision on fact that "in his reply brief … [plaintiff] waives his claims for injunctive relief").

---

[10] California Civil Code § 55.56 also allows plaintiffs to establish liability based solely on being deterred from using a place of accommodation. Cal. Civ. Code § 55.56(a)–(b). However, Plaintiffs have disavowed a deterrence theory of liability, so this option is irrelevant here. Reply at 4 ("Plaintiffs do not base their or the class' claims on a deterrence theory.").

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    Second, Defendants argue that individual questions predominate because each class

2 member will have to prove that they "personally encountered" an Unruh Act violation that caused

3 "difficulty, discomfort, or embarrassment" to the class member. Cal. Civ. Code § 55.56(b), (c).[11]

4    Defendants' argument relies on two decisions that denied certification of classes of persons

5 with mobility disabilities in part based on a concern that making such showings individually

6 meant that individual questions predominated. *Moeller II*, 2012 WL 3070863, at \*14 ("[B]ecause

7 damages must be based on an individualized determination of liability, common questions of law

8 and fact regarding entitlement to damages do not predominate over questions affecting only

9 individual members."); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2012 WL 3762440 (S.D. Cal.

10 Aug. 28, 2012) ("Even if some of the factual issues could be resolved on a class-wide basis (e.g.,

11 if Plaintiffs could establish that all high counter walls were the exact same height), the issues

12 requiring individualized proof would still predominate.").

13    Both cases are factually and procedurally distinguishable. Factually, *Moeller* concerned

14 every corporate Taco Bell in California and *Antoninetti* concerned every Chipotle in California.

15 *Moeller II*, 2012 WL 3070863, at \*1; *Antoninetti*, 2012 WL 3762440, at \*1–2. *Moeller* illustrates

16 the difference in scale, as it concerned over 220 Taco Bell restaurants and a class of up to 150,000

17 persons. *See Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 841 (N.D. Cal. 2011) ("*Moeller I*")

18 (noting court-appointed special master surveyed 223 different Taco Bell restaurants); *Moeller II*,

19 2012 WL 3070863, at \*5 (noting class size could reach 150,000). The Court grants that the

20 Stadium is large, but the fact remains that this case is concerned with one building instead of

21 hundreds spread across California. Moreover, the approximately 3,400 class members in the

22 instant case compare favorably with the 150,000 estimate in *Moeller*. *See* Mot. at 15 (stating

23 damages class exceeds 3,400). Perhaps most important, nothing in *Moeller* and *Antoninetti*

24

25 ───────────────
[11] Defendants suggest in passing that this problem is exacerbated because the Santa Clara
26 Defendants and Forty Niners Defendants operate the Stadium on different occasions. Opp. at 24;
Turner Opp. at 3. Neither the Stadium Defendants nor Turner/Devcon elaborate on this theory. It
27 therefore remains unclear why Defendants believe that determining which of two entities
controlled a single building during a given event is a task difficult enough to defeat predominance.
28

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   suggests the defendants could easily identify class members, whereas here the Stadium Defendants

2   keep records of class members' purchases of accessible seating that include names and contact

3   information. *See* ECF No. 118 at 1 ("[T]he identities and contact information of the proposed class

4   members are maintained by Defendants as part of their records").

5         *Moeller* and *Antoninetti* are also procedurally distinct. Both class certification decisions

6   were made *after* the defendants' liability had been adjudicated, which meant that the most

7   important common question had already been resolved. *Moeller II*, 2012 WL 3070863, at *2

8   (noting bench trial in previous had already determined plaintiffs were entitled to injunctive relief);

9   *Antoninetti*, 2012 WL 3762440, at *4 (noting Chipotle had previously litigated and lost the

10  argument that its restaurants complied with ADA guidelines and that the decision had been

11  affirmed on appeal). As *Antoninetti* put it, because "Chipotle is collaterally estopped from re-

12  litigating" whether its restaurants violated the ADA, the "legal question common to all putative

13  class members no longer represents a significant aspect of the case." *Id.* at *5 (internal quotation

14  marks and alteration omitted).

15        A more apposite decision is *Castaneda v. Burger King Corp.*, 264 F.R.D. 557 (N.D. Cal.

16  2009). There, the plaintiffs sought to certify a class of mobility-impaired patrons of 92 Burger

17  Kings throughout California. *Id.* at 560. The district court denied certification of a Rule 23(b)(3)

18  class because, among other things, the 92 restaurants "did not share common architecture, plans,

19  remodels, policies, or barriers to access[.]" *Id.* at 571. However, the district court certified a Rule

20  23(b)(3) class for each of the 10 restaurants visited by a named plaintiff because "[a]ll mobility-

21  impaired patrons of a particular restaurant who use wheelchairs face identical facilities and

22  identical access barriers. Their common interest in assuring that all the features at the particular

23  restaurant are in compliance will predominate over any individual differences among them." *Id.* at

24  572. The Court finds this approach persuasive. The parties' Rule 23(b)(3) dispute comes down to

25  whether the Stadium is more comparable to a single Burger King or 92 Burger Kings. In essence,

26  Defendants contend that the Stadium's size means it cannot possibly be seen as a single

27  establishment, and must therefore be analogized to dozens or hundreds of smaller restaurants.

28

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

*United States District Court*
*Northern District of California*

Plaintiffs stress that the Stadium is still *one* building and that the Stadium embodies "common architecture, plans, remodels, policies, [and] barriers to access." *Id.* at 571. Plaintiffs have the better argument. Defendants do not meaningfully contest the commonalities to which Plaintiffs point, but instead ask the Court to ignore them simply because the Stadium is a very large building. The Court declines to do so. Ultimately, it makes far more sense to compare the Stadium to one restaurant than to compare it to 92 restaurants.

Third, Defendants argue that individual questions predominate because the Santa Clara Defendants (unlike the Forty Niners Defendants) can raise the unique defense that a damages class is barred because Plaintiffs did not inform the City of Santa Clara that Plaintiffs planned to pursue a class action. Opp. at 21–22; Turner Opp. at 3–4.[12]

Under the Claims Act "no person may sue a public entity or public employee for damages unless such person has presented a timely written claim to the public entity, which the public entity has then rejected." *Apollo*, 167 Cal. App. at 1487 n. 14. "Failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *Mugno*, 2017 WL 2289222, at *11 (citation omitted). Class claims, such as damages class members' Unruh Act cause of action, satisfy the Claims Act if they "provide the name, address, and other specified information concerning the *representative* plaintiff and then sufficient information to identify and make ascertainable the class itself." *Williams*, 2010 WL 3632199, at *3 (emphasis in original) (citation omitted). Courts apply the "substantial compliance test" to determine the sufficiency of the identifying information for the class. *Id.* It considers whether there is "sufficient information disclosed on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit." *Id.* (citation omitted).

---

[12] Defendants also raise variations of this same argument in the context of Rule 23(a) commonality, typicality, and adequacy. Opp. at 11–12; Turner Opp. at 11–13. The Court considers the issue here because each variation of the argument is susceptible to the same resolution.

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    Plaintiffs' claim forms do not satisfy the substantial compliance test. Each of the named

2    Plaintiffs—Mr. Nevarez, Mrs. Nevarez, and DeFrancesco—submitted a claim form to the City of

3    Santa Clara ("Santa Clara"). ECF No. 161-1 (Declaration of Randall Creech, or "Creech Decl."),

4    Ex. D (claim of Abdul Nevarez), Ex. E (claim of Priscilla Nevarez), Ex F. (claim of Sebastian

5    DeFrancesco). Mr. Nevarez's claim form lists himself as the claimant and, oddly, also lists himself

6    in the space for "OTHER INJURED PERSONS". Mrs. Nevarez's form does the same. For his

7    part, DeFrancesco's form lists himself as the claimant and puts "N/A" in the space for "OTHER

8    INJURED PERSONS". This indicated that Plaintiffs were pursuing individual suits, not a class

9    action. *See Williams*, 2010 WL 3632199, at *6 (holding claim notices did not satisfy substantial

10    compliance test where they did not "refer to any relief sought by individuals other than the named

11    Plaintiffs").

12    Plaintiffs respond that the narrative statements attached to the Nevarezes' claims forms

13    sufficed because they stated "disabled patrons" were generally subject to accessibility issues at the

14    Stadium. Turner Reply at 10. Plaintiffs rely on the last sentence of the Nevarezes' narrative

15    statements. [13] It reads, in full, "We left the event exhausted and upset again at how awful the

16    Stadium treats disabled patrons and their families." Creech Decl., Ex. D at 01161, Ex. E at 01173

17    (making same statement). This generalized remark in the last sentence on the last page of an eight

18    page attachment to the Nevarezes' claims forms is not sufficient information to identify and make

19    ascertainable the damages class Plaintiffs here seek to certify. *See, e.g., Jackson v. California*,

20    2015 WL 2414938, at *35 (E.D. Cal. May 20, 2015) (finding written claim did not identify class

21    where plaintiff consistently stated claim in terms of "I" and only said "we" twice). At bottom,

22    Plaintiffs have not satisfied the substantial compliance test because they submitted three claims for

23

24

25    [13] The Court assumes that the quoted sentence is the portion of the claim forms to which Plaintiffs

26    refer because Plaintiffs fail to provide a page cite and this sentence is the only part of the claim
     form that refers to "disabled patrons." *See* Turner Reply at10 ("[T]he Nevarezes identified an

27    ascertainable class by stating that "disabled patrons" were generally subjected to discriminatory
     policies and inaccessible conditions at Levi's Stadium.").

28
     Case No. 16-CV-07013-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

1   individual disability access suits and now seek to certify a class of 3,400 seeking potentially tens

2   of millions in damages.

3          Plaintiffs' alternative argument is that their suit is not subject to the Claims Act. The

4   Claims Act "does not apply to actions brought primarily for declaratory or injunctive relief, even

5   though incidental money damages are sought." *Indep. Hous. Servs. of San Francisco v. Fillmore*

6   *Ctr. Assocs.*, 840 F. Supp. 1328, 1358 (N.D. Cal. 1993); *Khan v. San Francisco Hous. Auth.*, 2008

7   WL 2024600, at *3 (N.D. Cal. May 8, 2008) (making same point); *Franklin v. Sacramento Area*

8   *Flood Control Agency*, 2009 WL 2399569, at *18 (E.D. Cal. Apr. 29, 2009) (noting same and

9   listing cases). Thus, Plaintiffs argue they were not required to present their class claims to the City

10  of Santa Clara because any damages sought in this action are incidental to the injunctive relief.

11         The Court disagrees. Plaintiffs rely on *Independent Housing Services*, which found the

12  plaintiffs' suit was not subject to the Claims Act because the plaintiffs' damages' were ancillary to

13  their request "for an injunction declaring that [a defendant] is in violation of the handicap access

14  laws and must comply with them in the future … ." 840 F. Supp. at 1358. The comparability of

15  *Independent Housing Services* is questionable, given that the decision was not a class action and

16  did not state how much the plaintiffs actually sought in damages. *See Williams*, 2010 WL

17  3632199, at *5 (making same point). In fact, Plaintiffs point to no decision excusing

18  noncompliance with the Claims Act on the basis that damages are incidental that actually

19  discusses the amount of damages the plaintiffs suggested. More fundamentally, the decision in

20  *Independent Housing Services* rested on the district court's view that "potential damages are small

21  and particularly inconsequential compared to the effect of the declarations [plaintiff] seeks."

22  *Indep. Hous. Servs.*, 840 F. Supp. at 1358. That reasoning does not apply here. Plaintiffs estimate

23  there are over 3,400 damages class members, and argue each class member should receive $4,000

24  per Stadium visit. Mot. at 15, 24. Even adopting the conservative assumptions that there are

25  exactly 3,400 class members and that each class member only visited the Stadium once,

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

Defendants would face damages of $13,600,000.[14] Plaintiffs point to no case finding damages of this scale "incidental" to a request for injunctive relief. On the contrary, past decisions in this district have refused to apply the Claims Act exception to damages requests substantially smaller than the sum at issue here. *Williams*, 2010 WL 3632199, at *4–5 (rejecting argument that damages were ancillary and Claims Act did not apply in case where class sought at least $4 million in statutory damages); *Quality Towing, Inc. v. Jackson*, 2016 WL 778010, at *8 (N.D. Cal. Feb. 29, 2016) (finding damages were not merely incidental or ancillary where plaintiffs sought $3.5 million in compensatory damages, along with punitive damages and statutory penalties); *see also Madani v. Cty. of Santa Clara*, 2017 WL 1092398, at *10 (N.D. Cal. Mar. 23, 2017) ("Plaintiff's claim for $2,000,000 in compensatory and emotional distress damages are completely different from back pay or benefits, and therefore are not merely 'incidental' to a request for reinstatement.").

Consequently, the Court finds that *Williams* is a more appropriate comparison to this case. 2010 WL 3632199. There, the plaintiffs brought a racial discrimination class action against the City of Antioch which sought declaratory relief, injunctive relief, statutory damages, and individual damages for the named plaintiffs. *Williams*, 2010 WL 3632199 at *1. The class consisted of approximately 1,000 members who sought statutory damages of at least $4,000 per offense, meaning that defendants faced a "statutory minimum damage award of $4 million for the class." *Id.* at *5. Based on these figures, *Williams* rejected the plaintiffs' contention that the Claims Act's exception for suits primarily concerned with injunctive relief should apply. *Id.* As here, the district court noted the plaintiffs provided no decision deeming such a large sum incidental and noted further that the cases the plaintiffs relied on (including *Independent Housing Services*) did not state how much those plaintiffs had actually sought in damages. *Id.* at *5. The Court agrees, and like *Williams* finds that the Claims Act exception for suits brought primarily for declaratory or injunctive relief does not apply here.

---

[14] Specifically, 3,400 class members multiplied by $4,000 yields $13,600,000.

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    Consequently, Plaintiffs' class claims for damages against the Santa Clara Defendants

2    under the Unruh Act are barred because Plaintiffs did not comply with the Claims Act. Plaintiffs

3    have therefore failed to carry their burden of showing that a Rule 23(b)(3) class should be certified

4    against the Santa Clara Defendants. Nevertheless, Plaintiffs have otherwise satisfied Rule

5    23(b)(3), and it is undisputed that the Forty Niners Defendants have no Claims Act defense. The

6    Defendants maintain that the Santa Clara Defendants and Forty Niners Defendants alternate

7    control over the Stadium. Opp. at 24; Turner Opp. at 3 ("[N]either the Forty Niners nor the

8    Stadium Authority occupy the Stadium full time, but rather occupancy turns on an event by event

9    basis."). Thus, the Court will certify Plaintiffs' Rule 23(b)(3) damages class—provided Plaintiffs

10   also satisfy Rule 23(b)(3) superiority—against the Forty Niners Defendants only. The Court

11   therefore amends the damages class definition to confine it to the Forty Niners Defendants. *See*

12   *infra* at 43 (adding phrase "at an event controlled by the Forty Niners Football Company, LLC,

13   Forty Niners SC Stadium Company, LLC, or Forty Niners Stadium Management Company, LLC"

14   to damages class definition). The Court notes that this resolves Defendants' arguments that the

15   Claims Act issue prevents the Nevarezes from satisfying Rule 23(a) typicality, adequacy, or

16   commonality as to the damages class. Specifically, because the damages class is now confined to

17   the Forty Niners Defendants, whether or not the Nevarezes satisfied the Claims Act is irrelevant

18   because the Forty Niners Defendants have no Claims Act defense.

19       In sum, Plaintiffs have established Rule 23(b)(3) predominance as to the Forty Niners

20   Defendants, but have not satisfied Rule 23(b)(3) predominance as to the Santa Clara Defendants.

21   The Court will therefore amend the class definition to limit the Rule 23(b)(3) damages act claims

22   to the Forty Niners Defendants.

23   **D.  Rule 23(b)(3) Superiority**

24       Rule 23(b)(3) provides four factors that a court must consider in determining whether a

25   class action is superior to other methods of adjudication. These factors are:

26       (A) the class members' interests in individually controlling the prosecution or
        defense of separate actions;

27

28

37

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "'[T]he purpose of the superiority requirement is to assure that the class is the most efficient and effective means of resolving the controversy.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting 7A Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174 (3d ed. 2005)). "In cases in which plaintiffs seek to recover relatively small sums and the disparity between litigation costs and the recovery sought may render plaintiffs unable to proceed individually, 'class actions may permit the plaintiffs to pool claims which would be uneconomical to bring individually.'" *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 622 (C.D. Cal. 2015) (quoting *Local Joint Executive Bd. Of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001)).

Defendants do not meaningfully contest superiority. Their lone argument is that the proposed Rule 23(b)(3) class fails to satisfy superiority because the "individualized inquiries that predominate in this case—from the initial identification of class members to determining whether any of them has a valid statutory damages claim—make the proposed damages class unmanageable." Opp. at 21; *id.* at 3 ("The individualized inquiries that predominate make any class action unwieldy and unmanageable."). The Court has explained at length why individual inquiries do not predominate and therefore rejects Defendants' argument. Nevertheless, the Court considers the superiority factors and finds that Plaintiffs have established superiority.

The first factor is each class member's interest in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175. Although class members are entitled to $4,000 in damages per Unruh Act violation that sum pales in comparison with the cost of pursuing litigation.

1    Consequently, this factor points towards certification.

2        The second factor is "the extent and nature of any litigation concerning the controversy

3    already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). Magistrate

4    Judge Susan van Keulen has already considered and rejected Defendants' argument that *Maranon*

5    *v. Santa Clara Stadium Authority*, Case No. 15-CV-4709-BLF, was similar enough to the instant

6    suit to prevent Plaintiffs from pursuing a separate site inspection. ECF No. 105. Moreover,

7    Defendants do not here suggest that *Maranon* or any other suit should bar certification on

8    superiority grounds. Thus, this factor too points in favor of certification.

9        The third factor is "the desirability or undesirability of concentrating the litigation of the

10   claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). This factor likewise weighs in favor

11   of certification because the Stadium is located in this district, as are the Stadium Defendants.

12       The fourth factor is manageability, which requires that courts consider "the likely

13   difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). However, there is a "well-

14   settled presumption that courts should not refuse to certify a class merely on the basis of

15   manageability concerns." *Briseno*, 844 F.3d at 1128 (quoting *Mullins v. Direct Digital, LLC*, 795

16   F.3d 654, 663 (7th Cir. 2015)); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d

17   124, 141 (2d Cir. 2001) (listing "management tools available to" district courts). The Court finds

18   that any manageability concerns are not substantial because the events underlying this suit center

19   on one building and its surrounding environs. Moreover, Defendants' concerns about determining

20   prospective class members' entitlement to damages can be resolved through their own seating

21   records, potentially supplemented by claims forms.

22       In sum, Plaintiffs have established that a class action is superior to other methods of

23   adjudication.

24   **E.  Rule 23(b)(2)**

25       Plaintiffs also seek to certify two classes under Rule 23(b)(2). "Rule 23(b)(2) allows class

26   treatment when 'the party opposing the class has acted or refused to act on grounds that apply

27   generally to the class, so that final injunctive relief or corresponding declaratory relief is

28

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    appropriate respecting the class as a whole." *Dukes*, 564 U.S. at 360 (quoting Fed. R. Civ. P.

2    23(b)(2)). "[U]nlike Rule 23(b)(3), a plaintiff does not need to show predominance of common

3    issues or superiority of class adjudication to certify a Rule 23(b)(2) class." *In re Yahoo Mail Lit.*,

4    308 F.R.D. at 587. Rather, "[i]n contrast to Rule 23(b)(3) classes, the focus [in a Rule 23(b)(2)

5    class] is not on the claims of the individual class members, but rather whether [Defendant] has

6    engaged in a 'common policy.'" *Id.* at 599.

7        Plaintiffs' Rule 23(b)(2) classes consist of Stadium patrons with mobility disabilities and a

8    separate class of Stadium patrons who accompanied persons with mobility disabilities to the

9    Stadium. Both classes seek declaratory relief that the Stadium, as well as Defendants' ticketing

10   and seating practices, are in violation of the ADA and applicable accessibility guidelines. Mot. at

11   22; TAC at 36–37. Both classes also seek an order requiring the Stadium Defendants to cease

12   these violations. *Id.*

13        Defendants argue that final injunctive relief respecting the class as a whole is impossible

14   because persons with disabilities will need different types of relief. This is unpersuasive. Plaintiffs

15   only seek to certify a class of persons with mobility disabilities, which removes any force from

16   Defendants' argument that common injunctive relief is inappropriate. Underscoring the point,

17   courts have certified similar injunctive classes. *See, e.g., Gray*, 279 F.R.D. at 502–03 (disability

18   suit certifying class of persons "who are being denied programmatic access under the

19   Rehabilitation Act of 1973 due to barriers at [Golden Gate Nat. Recreational Area] park sites").

20        Defendants next contend that because Plaintiffs have submitted a great deal of evidence

21   detailing alleged accessibility standards, final injunctive relief is inappropriate. Opp. at 24. If

22   anything, Plaintiffs' evidence tends to suggest the opposite because it shows the alleged violations

23   can be cataloged and defined. Moreover, to the extent Defendants are concerned that Plaintiffs

24   have not committed themselves to a defined list of accessibility issues, this has been resolved by

25   the Court's order directing Plaintiffs to amend their complaint to "include identification of all

26   barriers" by July 27, 2018. ECF No. 181.

27        In sum, Plaintiffs have shown that the Stadium Defendants have acted or refused to act on

28

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

1    grounds that apply generally to the class, and final injunctive relief is therefore appropriate. The

2    Court now turns to the parties' evidentiary objections.

3        **F.   Evidentiary Objections**

4            The Stadium Defendants and Plaintiffs object to the other side's evidence. The Stadium

5    Defendants filed objections in response to Plaintiffs' motion for class certification. ECF No. 157.

6    Plaintiffs' reply brief in support of class certification then objected to a declaration the Stadium

7    Defendants submitted in support of their opposition. Reply at 2. Plaintiffs subsequently filed a

8    motion seeking leave to file a memorandum that elaborated on their objection. ECF No. 172.

9    Defendants then filed an opposition to Plaintiffs' motion, to which Plaintiffs filed a reply. ECF

10   Nos. 173, 174. Next, Defendants filed an objection to evidence submitted in connection with

11   Plaintiffs' reply brief in support of class certification, prompting Plaintiffs to file a response. ECF

12   No. 176.

13           Civil Local Rule 7–3(a) provides that "[a]ny evidentiary and procedural objections to the

14   motion must be contained within the brief or memorandum." Defendants' objections to the

15   evidence submitted in support of the motion for class certification were filed separately from their

16   opposition. Thus, Defendants failed to comply with Civil Local Rule 7–3(a). Accordingly, the

17   Court STRIKES Defendants' separately filed objections. ECF No. 157.

18           Plaintiffs' reply's objection to Defendants' declaration is one sentence long. It states that

19   "Plaintiffs object to the Declaration of Kim Blackseth (ECF No. 156, Ex. G) because it consists

20   entirely of legal conclusions without any factual support, is irrelevant and unreliable, and does not

21   satisfy Evidence Code Section 702 or *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579

22   (1993)." Reply at 2. This is a series of legal conclusion devoid of analysis. Plaintiffs evidently

23   agree, because their motion to file a memorandum in support of the objection states it will

24   "provide the Court with legal analysis and authorities supporting [Plaintiffs'] objections … and the

25   legal conclusions stated therein." ECF No. 172 at 1.

26           Civil Local Rule 7–3(b) provides that "[a]ny evidentiary and procedural objections to the

27   opposition must be contained within the reply brief or memorandum." By their own admission,

28
Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

Plaintiffs filed a placeholder objection in their reply brief so that they could then file a substantive objection separately. ECF No. 172 at 1 (noting that Plaintiffs did not explain their objection in the reply "because of space limitations in that [reply] … and the fact that the Blackseth Declaration contains 11 separate conclusions that warrant individual discussion"). Put otherwise, Plaintiffs are doing precisely what the Stadium Defendants did, but argue this is permissible owing to a one-sentence placeholder objection. Permitting this would effectively nullify Civil Local Rule 7–3(a) and (b). Litigants could simply file placeholder objections in briefs in the expectation that they could then file supporting memoranda. The Court therefore DENIES Plaintiffs' motion for leave to file a memorandum in support of their objection. ECF No. 172. The Court also DENIES Plaintiffs' objection because, as Plaintiffs concede, it is a legal conclusion devoid of any analysis.

The Court now turns to Defendants' objections to Plaintiffs' reply evidence. The Court DENIES Defendants' objections because the Court would reach the same outcome with or without the material to which Defendants object. The only objected-to evidence referenced in the instant order is (1) named Plaintiffs' declarations that they will forego actual damages and (2) a declaration stating Mr. Nevarez's conviction was over 20 years old. It is unclear whether a plaintiff's decision to forego a legal argument qualifies as evidence. That aside, even if the Court's decision depended on the evidence—and it does not—the Court would find that considering the evidence was appropriate because Plaintiffs raise it in direct response to Defendants' opposition brief. Opp. at 5, 12 (describing Mr. Nevarez's convictions in detail); Opp. at 12 (alleging Plaintiffs' damages claims are fatal to Rule 23(a) typicality); *see Terrell v. Contra Costa Cty.*, 232 F. App'x 626, 628–29 & n.2 (9th Cir. 2007) (evidence responding to recitation of facts in opposition is not "new" and may be considered on reply); *Defs. of Wildlife v. U.S. Fish*, 2016 WL 4382604, at *10 (N.D. Cal. Aug. 17, 2016) (court may consider reply evidence "offered in direct response" to issues raised in opposition).

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion for class certification. The Court CERTIFIES the following three classes. The first two

42

United States District Court
Northern District of California

classes seek declaratory and injunctive relief under Title II and Title III of the Americans with Disabilities Act pursuant to Rule 23(b)(2), and the third class seeks statutory minimum damages under California's Unruh Act pursuant to Rule 23(b)(3).

**Injunctive Relief Class:** 1. All persons with mobility disabilities who use wheelchairs, scooters, or other mobility aids who will attempt to purchase accessible seating for a public event at Levi's Stadium and who will be denied equal access to the Stadium's facilities, services, accessible seating, parking, amenities, and privileges, including ticketing, during the three years prior to the filing of the Complaint herein through the conclusion of this action.

**Companion Injunctive Relief Class:** 2. All persons who are companions of persons with mobility disabilities who use wheelchairs, scooters or other mobility aids and who have used or will use companion seating for public events located at Levi's Stadium during the three years prior to the filing of the Complaint herein through the conclusion of this action.

**Damages Class:** 3. All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who have purchased, attempted to purchase, or for whom third parties purchased accessible seating and who have been denied equal access to Levi's Stadium's facilities, services, accessible seating, parking, amenities, and privileges at an event controlled by the Forty Niners Football Company, LLC, Forty Niners SC Stadium Company, LLC, or Forty Niners Stadium Management Company, LLC, during the two years prior to the filing of the Complaint herein through the conclusion of this action.

The Court APPOINTS Abdul Nevarez as representative of the first and third classes, and APPOINTS Priscilla Nevarez as representatives of the second class. As Defendants do not challenge the adequacy of proposed class counsel, the Court also APPOINTS Guy Wallace of Schneider Wallace Cottrell Konecky Wotkyns LLP, Adam Wolf of Peiffer Rosca Wolf Abdullah Carr & Kane, and Linda Dardarian of Goldstein Borgen Dardarian & Ho as class counsel.

**IT IS SO ORDERED.**

Dated: July 12, 2017

_____
LUCY H. KOH
United States District Judge

Case No. 16-CV-07013-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION