1  MARIA L. LAMPASONA (SBN: 259675)
   mlampasona@llcllp.com
2  TAYLOR J. POHLE (SBN: 299794)
   tpohle@llcllp.com
3  LOMBARDI, LOPER & CONANT, LLP
   2030 Franklin Street, 7th Floor
4  Oakland, CA  94612
   Telephone:  (510) 433-2600
5  Facsimile:  (510) 433-2699

6  DION COMINOS (SBN: 136522)
   dcominos@grsm.com
7  BRIAN P. MASCHLER  (SBN: 111824)
   bmaschler@grsm.com
8  GORDON REES SCULLY MANSUKHANI, LLP
   275 Battery Street, 20th Floor
9  San Francisco, CA 94111
   Telephone:  (415) 986-5900
10 Facsimile:  (415) 986-8054

11 Attorneys for Defendants
   FORTY NINERS FOOTBALL COMPANY LLC,
12 FORTY NINERS SC STADIUM COMPANY LLC,
   FORTY NINERS STADIUM MANAGEMENT
13 COMPANY LLC, CITY OF SANTA CLARA,
   and SANTA CLARA STADIUM AUTHORITY

14                UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16                     SAN JOSE DIVISION

17

18 ABDUL NEVAREZ and PRISCILLA          CASE NO.  5:16-cv-07013-LHK
   NEVAREZ,
19                                      **DEFENDANTS' OPPOSITION TO**
                 Plaintiffs,            **PLAINTIFFS' MOTION FOR**
20                                      **PARTIAL SUMMARY JUDGMENT**
   FORTY NINERS FOOTBALL COMPANY
21 LLC, a Delaware limited liability company;   Date:  February 7, 2019
   FORTY NINERS SC STADIUM            Time:  1:30 p.m.
22 COMPANY LLC, a Delaware limited      Dept.:  Courtroom 8
   liability company; CITY OF SANTA     Judge:  Hon. Lucy H. Koh
23 CLARA, SANTA CLARA STADIUM
   AUTHORITY; FORTY NINERS STADIUM     Trial Date: April 22, 2019
24 MANAGEMENT COMPANY LLC; and
   DOES 1-10, inclusive,
25
                 Defendants.
26

27

28

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

---

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1

**TABLE OF CONTENTS**

2   I.      INTRODUCTION ................................................................................1

3   II.     STATEMENT OF FACTS ...................................................................4

4           A.    The Forty Niners Defendants.................................................4

5           B.    The Santa Clara Defendants..................................................5

6           C.    The Plaintiffs.........................................................................5

7           D.    Relevant Procedural Background ..........................................7

8   III.    LEGAL STANDARDS .......................................................................9

9           A.    Summary Judgment Standards...............................................9

10          B.    The Americans with Disabilities Act ..................................12

11          C.    The Unruh Act ....................................................................12

12  IV.     ARGUMENT ...................................................................................14

13          A.    Because Plaintiffs' Have Failed To Meet Their Burden Of Demonstrating The
                  Absence Of Genuine Issues Of Material Fact On Issues On Which They Seek
14                Partial Summary Judgment, Their Motion Must Be Denied. ............................14

15                1.    Plaintiffs Have Failed to Establish That Defendants Each Are Liable for
                        the Claimed ADA and Unruh Act Violations. .........................................14

16
                  2.    The Parties' Fundamental Dispute Over Which Accessibility Standards
17                      Applied To The Construction of Levi's Stadium Precludes Partial
                        Summary Judgment. ...............................................................15
18
                  3.    Plaintiffs Lack Standing to Assert the Existence of Alleged Barriers to
19                      Access They Have Not Personally Encountered. ....................................17

20                4.    Plaintiffs Have Failed to Show That the Forty Niners Defendants or the
                        Santa Clara Defendants Are Liable Under the ADA or Unruh Act for
21                      Allegedly Failing to Construct Levi's Stadium in Compliance with
                        Federal and State Accessibility Standards. ...............................18
22
    V.      CONCLUSION.................................................................................25
23

24

25

26

27

28

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-i-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

**TABLE OF AUTHORITIES**

**Cases**

*Access Now, Inc. v. S. Fla. Stadium Corp.,*
    161 F.Supp.2d 1357 (S.D. Fla. 2001) ...............................................................................19

*Adickes v. S.H. Kress Co.,*
    398 U.S. 144 (1970) ...........................................................................................................10

*Ambat v. City and County of San Francisco,*
    757 F.3d 1017 (9th Cir. 2010) ..............................................................................................9

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    568 U.S. 455 (2013) ...........................................................................................................10

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...........................................................................................................10

*Antoninetti v. Chipotle Mexican Grill Inc.,*
    643 F.3d. 1165 (9th Cir. 2010) ...........................................................................................13

*Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.,*
    603 F.3d 666 (9th Cir. 2010) ..............................................................................................12

*Blackwell v. City and County of San Francisco,*
    2010 U.S. Dist. LEXIS 1477339 (N.D. Cal. 2010) ............................................................11

*Calderone v. United States,*
    799 F.2d 254 (6th Cir. 1986) ................................................................................................9

*Castiglione v. United States Life Ins. Co.,*
    262 F.Supp.2d 1025 (D. Ariz. 2003) ..................................................................................16

*Cayette v. PNK (Baton Rouge) P'ship,*
    2016 U.S. Dist. LEXIS 84592 (2016) .................................................................................20

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .............................................................................................................9

*Cf. A.I. Credit Corp. v. Legion Ins. Co.,*
    265 F.3d 630 (7th Cir. 2001) ..............................................................................................17

*Cherry v. City College of San Francisco,*
    2006 U.S. Dist. LEXIS 98661 (N.D.Cal. 2006) .................................................................19

*City & County of San Francisco v. Sheehan,*
    135 S. Ct. 1765 (2015) ........................................................................................................12

*Donald v. Café Royal, Inc.,*
    218 Cal.App.3d 168 (1990) .................................................................................................13

*Doran v. 7-Eleven, Inc.,*
    509 Fed.Appx.647 (9th Cir. 2013) ......................................................................................13

-ii-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Harris v. Costco Wholesale Co.,*
   389 F.Supp.1244 (S.D. Cal. 2005)..............................................................9, 10, 17

*Hintz v. May & Co.,*
   2018 U.S. Dist. LEXI 101374 (S.D. Miss. 2018) ..................................................10

*In re Ramen Antitrust Litig.,*
   281 F. Supp. 992 (N.D. Cal. 2017) ........................................................................16

*Khan v. KIR Tampa 003, LLC.*
   U.S. Dist. LEXIS 163592 (2014) ...........................................................................11

*Kohler v. Staples the Office Superstore, LLC,*
   291 F.R.D. 464 (S.D. Cal. 2013)......................................................................19, 20

*Lindsay v. 1777 Westwood C.P.,*
   2018 U.S. Dist. LEXIS 140035 (C.D. Cal. 2018) ..................................................10

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)................................................................................................17

*Madsen v. Boise St. Univ.,*
   976 F.2d 1219 (9th Cir. 1992) ................................................................................17

*Mejia v. Marauder Corp.,*
   2007 U.S. Dist. LEXIS 21313 (N.D. Cal. 20017).................................................16

*Mundy v. Pro Theo Enterprises,*
   192 Cal.App4th Supp. 1 (2011) .............................................................................13

*Munson v. Del Taco, Inc.,*
   46 Cal.4th 661 (2009).............................................................................................13

*Nissan Fire and Marine Ins. Co. v. Fritz Cos.,*
   210 F.3d 1099 (9th Cir. 2000) ...............................................................................10

*Pickern v. Pier 1 Imports (U.S.), Inc.,*
   457 F.3d 963 (9th Cir. 2006)..................................................................................14

*Playboy Enter., Inc. v. Welles,*
   279 F.3d 796 (9th Cir. 2002)..................................................................................10

*Reycraft v. Lee,*
   177 Cal.App.4th 1211 (2009).................................................................................13

*Ricci v. DeStefano,*
   557 U.S. 557 (2009) .................................................................................................9

*Rush v. Castle & Cooke Corona Inc.,*
   2011 U.S. Dist. LEXIS 162906 (C.D. Cal. 2011)..................................................11

*S. Cal Gas Co. v. City of Santa Ana,*
   336 F.3d 885 (9th Cir. 2003)....................................................................................9

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

-iii-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

*Schutza v. Premier Auto. of Ca. LLC,*
  2018 U.S. Dist, LEXIS 200748 (S.D. Cal. 2018) ....................................................10

*Shaw v. Jar-Ramona Plaza LLC,*
  2015 U.S. Dist. LEXIS 33810 (C.D. Cal. 2015) ....................................................11

*Sheehan v. City & Cty. of San Francisco,*
  743 F.3d 1211 (9th Cir. 2014) ..............................................................................12

*Stack v. Burns,*
  2016 U.S. Dist. LEXIS 94799 (N.D. Cal. 2016) ....................................................16

*Tolan v. Cotton,*
  572 U.S. 650 (2014) ..............................................................................................10

**Statutes**

42 United States Code
  Section 12101 .........................................................................................................2

42 United States Code
  Section 12111 .......................................................................................................12

42 United States Code
  Section 12132 .........................................................................................................2

42 United States Code
  Section 12182 ....................................................................................................2, 12

42 United States Code
  Section 12183 ....................................................................................................2, 12

California Civil Code
  Section 51 .............................................................................................................12

California Civil Code
  Section 54.3 ..........................................................................................................13

California Civil Code
  Section 55.56 ................................................................................................2, 3, 13

**Rules**

Federal Rules of Civil Procedure
  Rule 56 .........................................................................................................1, 9, 11

**Regulations**

28 Code of Federal Regulations
  Section 35.151 ...........................................................................................12, 16, 17

35 Code of Federal Regulations
  Section 35.151 .........................................................................................................2

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-iv-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

1

**Other Authorities**

2

*DOJ Preamble,* 28 C.F.R. pt. 36, App.B at 681 (2005) .............................................................14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

## I.    INTRODUCTION

Plaintiffs have not met their burden under Federal Rule of Civil Procedure 56(a) of establishing the absence of a genuine issue of disputed material fact as to the matters on which they seek partial summary judgment—matters on which they bear the ultimate burdens of proof and persuasion.  They seek a summary disposition of factual and legal issues that are squarely in dispute based on their erroneous contention that Defendants' liability experts "concede" or "have not addressed" them.  Not only is that contention untrue, the notion that an expert's failure specifically to address certain claims or positions of opposing experts negates a material issue of disputed fact or constitutes a party admission, also is legally untenable.  Similarly, deposition testimony of a non-party (here, design architect HNTB) is not binding on any defendant, nor does it foreclose any defendant from presenting contrary evidence or legal authorities.  As shown below, genuine issues of disputed material fact exist with respect to the "issues" called out in Plaintiffs' motion.

The Court will recall that Plaintiffs have presented a moving target with respect to the alleged physical barriers at issue in this case.  Those alleged barriers were not specifically identified in the first four versions of the complaint filed in this action.  By Order dated February 28, 2018, the Court ordered Plaintiffs to file their lists of alleged physical barriers at Levi's Stadium, restaurants and parking lots.  ECF No. 131.  Plaintiffs did so.  ECF Nos. 132-134. Plaintiffs then identified additional alleged barriers in connection with their class certification motion and during mediation.  Defendants objected to this "moving target," (ECF No. 180), and by Order dated July 6, 2018, the Court directed Plaintiffs to file a Fourth Amended Complaint that identified *all* alleged physical barriers to access.  ECF No. 181.  On July 27, 2018, over a year and a half after the case had been filed, approximately two months before the close of fact discovery and three months before expert reports were due, Plaintiffs filed their Fourth Amended Complaint ("FAC").  ECF No. 195.  Attached as Exhibit A to the FAC is a 260-page spreadsheet of alleged "physical barriers," which in fact consists of a listing of measurements of various Stadium facilities and access features that allegedly deviate from the access code provisions which, Plaintiffs contend, apply.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

The instant motion focuses on a small subset of the purported issues listed in the Fourth Amended Complaint, which will be decided by the jury at trial. It is critical at the outset to recognize what this motion *is not*. The findings of fact urged by Plaintiffs in the motion will *not* dispose of any of the causes of action or claims alleged in this case. For example, to prove that Plaintiffs were discriminated against by the Forty Niners Defendants based upon their disabilities in violation of Title III of The Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (First Claim of the FAC), they must prove, *inter alia,* that they were deprived of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prove that the Santa Clara Defendants, public entities, violated Title II of the ADA, 42 U.S.C. § 12132 (Second Claim of the FAC), Plaintiffs must show, *inter alia,* that they were "either excluded from participation in or denied the benefits of the public entity's services, programs or activities or w[ere] otherwise discriminated against by the public entity," "by reason of [their] disability." *Id.* With regard to newly constructed or altered facilities, discrimination *may be shown* by the defendant owner/operator/lessor/lessee's failure to make those facilities "readily accessible to and usable by persons with disabilities." 42 U.S.C. § 12183(a)(1) (Title III); 35 C.F.R. § 35.151(a) (Title II). Whether a facility complies with the applicable building standard, which is what Plaintiffs' motion seeks to have adjudicated on this motion, is certainly relevant to whether the facility is readily accessible to and usable by persons with disabilities, but it is not necessarily dispositive of that ultimate issue— particularly because the alleged deviations from Code are *de minimis* and do not constitute barriers when applying real world tolerances. That is the law, and is reflected in Defendants' experts' declarations and reports. *See* Declaration of Kim Blackseth ("Blackseth Dec."), ¶ 11.

With respect to Plaintiffs' Unruh Act claim (which forms the basis for the only damages class in this case, *see* ECF No. 185, at 43), even if a violation of a construction-related accessibility standard were shown, that is not enough to establish that a plaintiff was denied "full and equal access to the place of public accommodation." Civ. Code § 55.56. The

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  plaintiff also must show that he "personally encountered the violation on a particular occasion,

2  Civ. Code § 55.56(b), and that he/she "experienced difficulty, discomfort or embarrassment"

3  as a result.  Civ. Code § 55.56 (c).  Thus, alleged departures from accessibility standards on

4  their own, even if true (they are not), do not establish an Unruh Act violation in this case.

5      Defendants' experts also have testified that Plaintiffs' experts' measurements are in

6  error, and the existence of such wide spread discrepancies puts Plaintiffs' entire data set in

7  question.  *See* Declaration of Dominic Marinelli ("Marinelli Dec."), ¶ 10.  W. Andrew Fennell,

8  who attempted to validate Plaintiffs' measurements, found that Plaintiffs' data sets were

9  unreliable, that Plaintiffs' experts used improper measuring techniques, and that Plaintiffs'

10  experts "cherry-picked" tiny locations on giant ramps in order to identify allegedly non-

11  compliant features.  *See* Declaration of W. Andrew Fennell ("Fennell Dec."), ¶¶ 5-8.

12      As a threshold matter, which accessibility standards apply, based on when construction

13  on the Stadium commenced and the date of permit applications, is itself a contested factual and

14  legal issue in this case.   Plaintiffs' requests that the Court make findings of fact based on

15  "compliance with the 1991 American with Disabilities Act Accessibility Guidelines or the

16  2010 American with Disabilities Act Standards for Accessible Design, *whichever is*

17  *applicable*" (Notice of Motion & Motion, p. 4, ll. 24-26, p 5 ll. 3-4; emphasis added), seek

18  advisory opinions on hypothetical scenarios, which is not a proper exercise of judicial

19  authority under Rule 56 or Article III of the Constitution.

20      Levi's Stadium's facilities, including those referenced in this motion, have been

21  accessed and used by persons with disabilities countless times.  *See* Declaration of Jim

22  Mercurio ("Mercurio Dec."), ¶ 7.  Dominic Marinelli, an expert in Stadium design and

23  construction, opined that Levi's Stadium is as accessible, if not more so, than other stadiums

24  with which he has been involved, and he characterizes the alleged accessibility issues as

25  "punch list" items common in any construction project of its size.  *See* Martinelli Dec, ¶ 6.

26      It is undisputed that the named Plaintiffs, who between them have visited the Stadium

27  only a handful of times, have not themselves encountered most of the alleged physical barriers

28  at issue in this motion.  They do not have standing to assert claims based on alleged barriers

-3-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

they never saw or experienced.  Plaintiffs' glaring lack of evidence that individuals with

mobility disabilities actually were denied use or access to the Stadium's facilities, or

experienced difficulty, discomfort or embarrassment, due to technical deviations from access

codes—let alone evidence establishing the absence of material factual disputes on those

issues—is fatal to their motion. So, too, is their misguided attempt to lump together all

Defendants in conjecturing responsibility for alleged physical access barriers, without any

showing as to whether any particular Defendant "owned," "operated" or "leased" the premises

when the facilities were built, or participated in their design or construction.  The facts of

record show that Plaintiffs' blanket assumptions are in error.

Plaintiffs' framing of the issues in their motion, that they are seeking partial summary

judgment that the Forty Niners Defendants and the Santa Clara Defendants "discriminated

against Plaintiffs and the classes certified by the Court in violation of" Titles II and III of the

ADA and the Unruh Act, "by failing to construct the Stadium in compliance with federal

disability access standards" (Notice of Motion at 1-2; *see also* Motion at 12:7-9), is thus

misleading.  Properly viewed, their motion simply asks the Court to make discrete findings on

the parties' respective experts' measurements of certain physical features at the Stadium.

Those measurements, and their legal significance, are squarely in dispute.  Indeed, Plaintiffs'

200-page Proposed Order, 185 pages of which consist of (largely illegible) 23-columned

spreadsheets with recitations of, *inter alia*, dimensional measurements, selective citations to

diverging testimony and expert reports, and legal and factual arguments regarding descriptions

of alleged "barriers" and applicability of code provisions, on its face asks the Court to resolve

disputed factual issues.  Those issues are not properly resolved on summary judgment.  This

piecemeal resolution of the issues in any event would not meaningfully narrow the issues that

must be tried by the jury.  The Court should deny Plaintiffs' motion.

## II.    STATEMENT OF FACTS

### A.    The Forty Niners Defendants

Forty Niners SC Stadium Company LLC ("StadCo") was formed in March 2012 for

the express purpose of developing a stadium on the Santa Clara site, and it leases Levi's

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-4-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

1    Stadium from the Santa Clara Stadium Authority (the "Stadium Authority") during the

2    "Tenant Season" (i.e. August 1 – January 31, or the football season).  StadCo and the Stadium

3    Authority contracted with Third Party Defendant Turner/Devcon, a Joint Venture, to build

4    Levi's Stadium.  *See* Mercurio Dec., ¶ 3, Exh. A.

5        Forty Niners Stadium Management Company LLC was formed in March 2012, and has

6    contracted with the Stadium Authority and StadCo to provide management services for Levi's

7    Stadium, including the day-to-day operations of the Stadium.  *See* Mercurio Dec., ¶ 4.

8        Forty Niners Football Company LLC was formed in March 2012 and it owns and

9    operates the professional sports club, the San Francisco 49ers.  *See* Mercurio Dec., ¶ 5.

10       **B.**    **The Santa Clara Defendants**

11       The City of Santa Clara (the "City") owns the real property on which Levi's Stadium

12   was built, as well as the surrounding pedestrian rights of way, and the parking garage that is

13   across Tasman Street from Levi's Stadium, next to the Santa Clara Convention Center.  *See*

14   Pimentel Dec., ¶ 2.  The City leased the real property where Levi's Stadium was built to the

15   Stadium Authority for the Stadium Authority's exclusive right to possess, and use, as tenant,

16   the Stadium site subject to a certain forty-year Stadium Ground Lease Agreement dated March

17   28, 2012.  *See* Pimentel Dec., ¶ 3, Exh. A.  The Stadium Authority is the owner of Levi's

18   Stadium (the actual building).

19       Pursuant the Code of Federal Regulations, the City is in the process of developing an

20   ADA Title II Transition Plan related to accessibility of its streets and walkways.  On May 16,

21   2018, the City of Santa Clara issued a Request for Proposal for Professional Services related to

22   the Transition Plan.  ECF No. 285, ¶ 2.  Following the review process, the City of Santa Clara

23   selected a professional design company and tasked it with the preparation of a Transition Plan

24   Report as the first step toward implementation of the ADA Title II Transition Plan aimed at

25   continuing the City's ongoing efforts to comply with the various accessibility requirements

26   under the ADA and the California Building Code ("CBC").  ECF No. 285, ¶ 3.

27       **C.**    **The Plaintiffs**

28       As noted above, and shown in Plaintiffs' declarations (the same declarations submitted

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-5-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

with Plaintiffs' motion for class certification), Plaintiffs have not personally encountered the vast majority of the physical barriers alleged in this motion.  For example, their declarations make no mention of: dining areas cited in the motion (ECF No. 288, at Section C.1); drink rails (*id*. at Section C.2); handrails at certain ramps (*id*. at Section C.3.b); ramps to accessible seating in Sections 112-108 (*id*. at Section C.3.c); ramps to accessible seating in Sections 146-102 (*id*. at Section C.3.d); most restrooms (*id*. at Section C.5); entryway and railings at Bourbon Pub (*id*. at Section C.6); and closets in luxury suites (*id*. at Section C.7).[1]

The Nevarezes never purchased or attempted to purchase accessible seating at Levi's Stadium.  *See* Declaration of Maria M. Lampasona ("Lamp. Dec."), Exh. A, at 134-36; Exh. E at 4-5.  In Mr. Nevarez's declaration, ECF No. 139 at 90-91, he complained about arduous drives to the Stadium to exchange tickets in person, but he admitted in deposition that he and his wife never made a trip to the Stadium to secure tickets.  *See* Lamp. Dec., Exh. A, at 80, 240-41, 243-44.  Every time they went to the Stadium they attended the subject event – they were driving there anyway.

The deposition testimony of Plaintiffs calls into question the credibility of their declarations.  The Nevarezes complain about accessibility of a luxury suite on one occasion, but went in that suite without tickets and without notifying the 49ers, and stayed for 2-3 hours. They never asked anyone if it had wheelchair-accessible seating (it does).  *See* Lamp. Dec., Exh. A at 220-22, 228-31; Exh. C at 211-217.  Mr. Nevarez claims in his declaration that he has "tried many times to work with the Stadium asking for modifications of its policies…" ECF No. 139 at 92, ¶ 20, but admitted in deposition he never called, emailed, or texted anyone at the Forty Niners.  *See* Lamp. Dec., Exh. A, at 81, 206-07; Exh. C 99, 155-58, 182, 267, 272.

As a result of his 2012 motorcycle accident and the medication he has taken, Mr. Nevarez testified that he has an extremely faulty memory; he cannot remember things from day-to-day, week-to-week, or month-to-month.  *See* Lamp. Dec., Exh. A at 87-89, 22-23; Exh.

---

[1] Plaintiffs erroneously cite other putative class members' declarations to support their contention that certain **wheelchair locations in the** 100 level of the Stadium have excessive slopes. ECF No. 288, at 17 n. 4. According to those declarations, those individuals sat in other sections of the Stadium (Ms. Fortelka, in 200-level seating (ECF No. 151, at 53, ¶ 15), and Mr. Plunkett in 400-level seating (*id*., at 112, ¶ 16).

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   C at 99.  Mr. Nevarez did not recognize his own declaration, does not know who wrote it, and

2   never saw or read interrogatories or his verified responses, or the multiple versions of the

3   complaint until he was shown them at his deposition.  *See* Lamp. Dec., Exh. A. at 43, 62-63,

4   82, 84, 92, 98, 135-36, 155-57, 167-68, 171, 201-202, 205, 212. The claims of Priscilla

5   Nevarez, who is not disabled, in this case and the ten other ADA/Unruh Act cases she also has

6   filed with her husband, are derivative of her husband's claims.  *See* Lamp. Dec., Exh. C at 61-

7   65, 67-68, 71-81, 91-96; Exh. A at 109, 124-25.

8        Mr. DeFrancesco's primary claim, that he inadvertently was assigned a non-accessible

9   seat for his season ticket, was an anomaly.  *See* Lamp. Dec., Exh. D at 42, 143; 156-57.  He

10  was provided with wheelchair accessible seats for every event he attended at the Stadium, all

11  as good as, if not better than, the seats he initially purchased.  *See* Lamp. Dec., Exh. D at 69,

12  81-85.  He was offered, but rejected, superior wheelchair accessible seats for the 2017-18

13  seasons.  *Id*. at 92, 96.  He admitted he has not encountered many of the features on Plaintiffs'

14  experts' "list."  *Id*. at 169-72.  Mr. DeFrancesco opted out from the request to provide class

15  member contact information.  *See* Lamp. Dec., Exh. D at 190-91.

16       **D.    Relevant Procedural Background**

17       As noted above, the first four iterations of Plaintiffs' complaint did not enumerate

18  specific alleged physical barriers at Levi's Stadium.  Plaintiffs produced prolix lists of alleged

19  barriers with their motion for class certification.  After that motion had been filed, Defendants

20  objected that "Plaintiffs have subsequently produced lists of claims of barriers that identify

21  additional barriers not included in Plaintiffs' expert reports."  ECF No. 181, at 1-2.  In the

22  Court's July 6, 2018 Order Continuing Case Management Conference (*id*.), the Court ruled

23  that "Plaintiffs' identification of claims of barriers cannot be a moving target, especially this

24  late in discovery and in this late stage of the case" (*id.* at 2), and that "plaintiffs' evolving

25  identification of barriers may deny defendants fair notice as required by Rule 8," and ordered

26  Plaintiffs to amend the complaint to include all barriers.  *Id.*  Plaintiffs then filed a Fourth

27  Amended Complaint, with a 260-page, single-spaced Exhibit A, which purported to list the

28  alleged physical barriers at the Stadium.  ECF No. 185.  After filing that document, Plaintiffs

-7-

again attempted to expand their list of alleged physical access barriers, under the guise of two separate "Errata" filings. ECF Nos. 196, 236. Defendants objected to those filings. ECF No. 240; ECF No. 270, pp. 9, 10, 13. The Court, ordered that "Plaintiffs' errata to the fourth amended complaint, ECF Nos. 196, 236, are hereby STRICKEN." ECF No. 271.

Fact discovery closed on October 4, 2018. Plaintiffs propounded thousands of requests on Defendants. Much of this discovery addressed Plaintiffs' physical barrier claims. In Defendants' responses to those discovery requests, they denied, among other things, (1) that the physical features cited by Plaintiffs constituted barriers to access, (2) the applicability of the accessibility standards urged by Plaintiffs to the facilities in question, (3) the validity of Plaintiffs' interpretations of accessibility standards, and (4) the accuracy of Plaintiffs' measurements.[2] *See* Lamp. Dec., ¶ 4. Defendants also produced hundreds of thousands of pages of documents, many related to Plaintiffs' alleged physical barriers. *See* Lamp. Dec., ¶ 5.

In addition to multiple depositions of party representatives from the Forty Niners Defendants, Santa Clara Defendants, and Third-Party Defendant Turner-Devcon Joint Venture ("Turner-Devcon"), Plaintiffs took depositions of non-party HNTB, an architect on the Stadium project. HNTB was an independent contractor on the Stadium project; it was not an employee, agent or representative of the Forty Niners defendants, and had no contractual relationship with the City or the Stadium Authority with respect to the work it did on that project. *See* Mercurio Dec., ¶ 6; *see also* Pimentel Dec., ¶ 4. The HNTB witnesses deposed in this case, represented by their own counsel, were not offered by any Defendant as a Rule 30(b)(6) designee or other party-representative.

Regarding with expert discovery, the parties exchanged opening expert witness disclosures and reports on October 18, 2018 and rebuttal reports on November 8, 2018.

---

[2] In addition, Defendants moved for a protective order regarding over *six thousand* Requests for Admission seeking Defendants to admit or deny certain measurements on the grounds that taking every measurement and confirming every photograph taken by Plaintiffs' consultants would be unduly burdensome. ECF No. 222. The Court granted the motion as it related to measurements and photographs. ECF No. 228. This procedural history makes more perplexing Plaintiffs' argument here that a measurement unaddressed by Defendants constitutes an admission given Defendants' stated position in the joint discovery letter that taking every single measurement identified by Plaintiffs would be unduly burdensome, especially for the public entity Defendants with staffing and budgetary restrictions.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-8-
**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1  Plaintiffs designated 15 different liability experts, and one damages expert.  Plaintiffs' experts

2  adopted some, but not all, of Plaintiffs' counsel's list of alleged physical access barriers.  *See*

3  Lamp. Dec., Exh. H, Deposition of Scott McBrayer, at 128:1-131:17.

4  Defendants' experts challenged the validity of Plaintiffs' physical access claims,

5  including the applicability of the access codes they and their experts had cited, their

6  interpretation of accessibility codes and standards, and the accuracy of their measurements.

7  *See* Declarations of Kim Blackseth, Ed Roether, Dominic Marinelli, and W. Andrew Fennell.

8  In so doing, they were clear that they had not addressed all of the thousands of individual

9  claims and measurements offered by Plaintiffs and their experts, and that a failure to address a

10  specific claim or measurement did not constitute any admission that they were correct.  *Id.*

### III.   LEGAL STANDARDS

11

12  ###   A.    Summary Judgment Standards

13  Summary judgment, and partial summary judgment, are proper only where there "is no

14  genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v.*

15  *Catrett*, 477 U.S. 317, 327 (1986).  Because summary judgment is a "drastic device," cutting

16  off a party's right to present its case to a jury, the moving party bears a "heavy burden" of

17  demonstrating the absence of any triable issue of material fact.  *E.g.*, *Ambat v. City and County*

18  *of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2010).  A "genuine dispute" exists when a

19  rational factfinder, considering the evidence in the summary judgment record, could find in

20  favor of the non-moving party.  *E.g.*, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

21  The party moving for summary judgment bears the Lamp. Dec.,  of showing the

22  absence of a genuine, material dispute and an entitlement to judgment.  *Celotex*, 477 U.S. at

23  323.  Where the moving party has the ultimate burden of persuasion on an issue at trial, "*his*

24  *prima facie burden is substantially heavier: "his showing must be sufficient for the court to*

25  *hold that no reasonable trier of fact could find others than for the moving party.*"  *Calderone*

26  *v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (emphasis in original); see also *S. Cal Gas*

27  *Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Harris v. Costco Wholesale Co.*,

28  389 F.Supp. 1244, 1246 (S.D. Cal. 2005) ("when the moving party bears the burden of proof

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

1    on an issue . . . the party must establish beyond peradventure *all* of the essential elements of

2    the claim . . . to warrant judgment in its favor.") (emphasis in original).)

3         If the moving party fails to discharge its initial burden of production, summary

4    judgment must be denied, and the court need not consider the non-moving party's evidence.

5    See *Adickes v. S.H. Kress Co.*, 398 U. S. 144, 159-60 (1970); *Nissan Fire and Marine Ins. Co.*

6    *v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).

7         If the moving party satisfies his initial burden, but the non-moving party shows a

8    genuine, material dispute or otherwise demonstrates that the moving party is not entitled to a

9    judgment, the court must deny the motion.  See *Amgen Inc. v. Conn. Ret. Plans & Trust*

10   *Funds*, 568 U.S. 455, 479-80 (2013) (Rule 56 imposes a "relatively lenient standard" to

11   survive the motion and continue on to trial).

12        When ruling on a motion for summary judgment, the court cannot engage in credibility

13   determinations or weighing of the evidence; those are functions for the jury.  *Anderson, supra*,

14   477 U.S. at 255; *Playboy Enter., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002).  Thus, the

15   evidence of the non-moving party will be believed as true, all evidence is to be construed in

16   the light most favorable to the non-moving party, and all doubts and reasonable inferences are

17   to be drawn in the non-moving party's favor.  *See Tolan v. Cotton*, 572 U.S. 650 (2014).

18        Applying these standards, in ADA cases the courts routinely have denied plaintiffs'

19   motions for summary judgment and partial summary judgment.  See, *e.g.*, *Harris, supra*, 389

20   F.Supp. at 1251 (denying plaintiff's motion on ADA and state law claims, granting

21   defendant's cross-motion on ADA claim); *Schutza v. Premier Auto. of Ca. LLC*, No. 14-cv-

22   2653 JCS, 2018 U.S. Dist, LEXIS 200748, \*\*14-18 (S.D. Cal. Nov. 27, 2018) (denying

23   plaintiff's motion for summary judgment on ADA Title III and Unruh Act claims due to

24   genuine issues of material fact, including divergences in expert opinions); *Hintz v. May & Co.*,

25   No. 3:17cv459-H50-JCG, 2018 U.S. Dist. LEXI 101374, \*\*18-20 (S.D. Miss. June 18, 2018)

26   (denying plaintiff's motion on grounds he had not met his burden of demonstrating absence of

27   material fact on the "readily accessible" issue); *Lindsay v. 1777 Westwood C.P.*, No. 2:17-cv-

28   03333-00WCAS, 2018 U.S. Dist. LEXIS 140035, \*\*9-12 (C.D. Cal. Aug. 17, 2018 (<u>granting</u>

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-10-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  defendant's motion for summary judgment on ADA claim, denying plaintiff's cross-motion

2  for summary judgment); *Shaw v. Jar-Ramona Plaza LLC*, No. 5:13-cv-01563-CAS(SPx);

3  2015 U.S. Dist. LEXIS 33810, **9-14 (C.D. Cal. March 15, 2015) (denying plaintiff's motion

4  on physical access barriers due to existence of genuine issues of disputed material fact); *Khan*

5  *v. KIR Tampa 003, LLC*. No. 8:14-cv-1963-T-17MAP, 2015 U.S. Dist. LEXIS 163592, ** 31-

6  42 (denying plaintiff's motion for partial summary judgment on alleged physical access

7  barriers due to conflicts in expert testimony on whether surfaces were "slip resistant," the

8  existence of alternative routes of travel, curb ramp landing requirements, and parking space

9  and access aisle slopes); *Rush v. Castle & Cooke Corona Inc.*, CV 10-8952-GW, 2011 U.S.

10 Dist. LEXIS 162906, **10-21 (C.D. Cal. Nov. 10, 2011) (denying plaintiff's motion for

11 failure to show absence of disputed material facts on alleged architectural barriers in

12 restrooms: <u>granting</u> defendants' motions for summary judgment [based in part on expert

13 testimony of Kim Blackseth, Defendants' expert in this case]); *Blackwell v. City and County of*

14 *San Francisco*, No. C 07-4629 SBA, 2010 U.S. Dist. LEXIS 1477339, **11-15 (N.D. Cal.

15 Aug. 18, 2010) (denying plaintiff's motion for partial summary judgment on Unruh Act claims

16 on alleged physical access barriers, <u>granting</u> defendant's motion for summary judgment).

17         Plaintiffs bear the ultimate burden of persuasion and proof with respect to <u>all</u> of the

18 issues on which they seek partial summary judgment.  They have not met their burden under

19 Rule 56(a) of establishing the absence of genuine disputes of material facts as to those issues.

20 The improper Exhibit D to the Declaration of Andrew Lee, on which Plaintiffs' place heaviest

21 reliance, invites the Court to resolve factual disputes (*e.g.*, on dimensional measurements and

22 conflicts among the parties' experts), as does Plaintiffs' 200-page proposed Order.[3]  As a

23 matter of law, resolution of these controverted matters is not proper on partial summary

24 judgment. They should be decided by the jury at trial.

25

26 [3] Plaintiffs themselves characterize the contents of this exhibit as "arguments," and state it is offered to
   show that "Defendants' dispute is legally unfounded." ECF No. 288 at 12, n. 3.  Legal argument

27 offered in a declaration or exhibit thereto is inadmissible.  *See* Defendants' Objections to Exhibit D to
   Declaration of Andrew Lee.  Here, the exhibit represents an obvious attempt to circumvent the briefing
   page limit, in contravention of the Court's Order denying Plaintiffs' administrative motion to file an

28 over-sized brief. *See* ECF Nos. 279, 280.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**B.**      **The Americans with Disabilities Act**

To prevail on a discrimination claim under Title II, asserted against the Santa Clara Defendants,  a plaintiff must show that: "(1) she is an individual with a disability; (2) she is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of her disability." 42 U.S.C. § 12111; *Sheehan v. City & Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other gnds., cert. dismissed in part sub nom. City & County of San Francisco v. Sheehan*, 135 S. Ct. 1765 (2015).

Under Title III of the ADA, asserted against the Forty Niners Defendants, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. *Id.*; *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citation omitted).

Discrimination under both Titles II and III <u>may</u> be shown by a failure to newly construct or alter facilities to make them "readily accessible to and useable by individuals with disabilities." *See* 42 U.S.C. § 12183(a)(1) (Title III); 28 C.F.R. § 35.151(a)(1) (Title II).

In this case, per the Court's Order on Class Certification (ECF 185 at 42-43), the plaintiffs' Americans with Disabilities Act classes (one and two) seek only injunctive and declaratory relief.  Such relief is not sought under the Unruh Act, Cal. Civ. Code § 51, *et seq*.

**C.**      **The Unruh Act**

The Court has certified a statutory damages class under the Unruh Act.  ECF 185 at 43.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1   With respect to that class, only the Forty Niners Defendants are parties; the Santa Clara

2   Defendants are not.

3   As noted above, to make out a *prima facie* case of eligibility for statutory damages

4   under the operative California Civil Code provision, Civil Code section 55.56, the plaintiff

5   must show that an alleged violation denied him "full and equal access," which can only occur

6   if he "personally encountered" the alleged barrier to access on a "particular occasion." Civ.

7   Code § 55.56 (a), (b); *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 667 (2009). To sustain a

8   claim based on "personally encountering" an alleged accessibility barrier, the plaintiff must

9   prove he "experienced difficulty, discomfort or embarrassment because of the violation. Civ.

10  Code § 55.56(c).  Absent evidence of such injury-in-fact and causation, the plaintiff is not

11  entitled to recover statutory damages under the Unruh Act.  *Mundy v. Pro Theo Enterprises*,

12  192 Cal.App.4th Supp. 1, 6 (2011) (claim for statutory damages rejected due to plaintiff's

13  failure to offer such evidence, despite showing of access code non-compliance); *Doran v. 7-*

14  *Eleven, Inc.*, 509 Fed. Appx. 647,648 (9th Cir. 2013) (citing Civ. Code § 55.56(c)); *Antoninetti*

15  *v. Chipotle Mexican Grill Inc.*, 643 F.3d. 1165, 1177-78 (9th Cir. 2010) (vacating damage

16  award under Civil Code section 54.3, ruling that "[i]n order to maintain an action for damages

17  pursuant to [that section] an individual must establish that he or she was denied equal access

18  on a particular occasion" [internal quotation marks omitted]); *Reycraft v. Lee*, 177 Cal.App.4th

19  1211, 1224 (2009) (plaintiff must "actually encounter [ ] access to. . . the [facility] that was not

20  full and equal"); *Donald v. Café Royal, Inc.*, 218 Cal.App.3d 168,183 (1990) (same).

21  Civil Code section 55.56, subd. (e), which addresses claims for multiple violations,

22  provides that statutory damages may be assessed for each denial of full and equal access at the

23  subject facility on particular occasions, but not upon the number of violations of construction-

24  related accessibility standards. Thus, for each alleged violation, the plaintiff must make the

25  same showings required under subdivisions (c) and (d); he may not rely simply on the

26  presence of multiple alleged barriers.

27  Thus, Plaintiffs' Unruh Act claim is dominated by fact-intensive issues that the jury

28  must decide.  *See also* ECF No. 278, Exh. 2 [Court-approved class notice setting Unruh Act

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-13-

1   issues that will be decided at trial]).  There is no "violation of the Unruh Act" unless those

2   issues are resolved in favor of Plaintiffs.  In their motion, Plaintiffs do not appear to seek

3   rulings on statutory damages, but to the extent their loose framing of the issues (*see* ECF 288

4   at p. 3, Item 8) suggests to the contrary, their motion for partial summary judgment as to their

5   Unruh Act claim must be denied.

6                                          **IV.   ARGUMENT**

7   **A.    Because Plaintiffs' Have Failed To Meet Their Burden Of Demonstrating
           The Absence Of Genuine Issues Of Material Fact On Issues On Which They
8          Seek Partial Summary Judgment, Their Motion Must Be Denied.**

9          **1.    Plaintiffs Have Failed to Establish That Defendants Each Are Liable
                   for the Claimed ADA and Unruh Act Violations.**
10

11          At the threshold, Plaintiffs' motion makes no clear delineation – or showing – as

12   between which Defendants "owned, operated or leased" the Stadium facilities at issue when

13   Plaintiffs visited the Stadium.  Rather, they indiscriminately lump them together in arguing

14   potential liability under the ADA and Unruh Act.  *See* ECF No. 288 at 2, "Relief Sought" item

15   3, at 3, item 8.  They adduce no facts that the Santa Clara Defendants "designed or constructed

16   Levi's Stadium."  *Id*. at 3, item 8.

17          The law is clear that there can be no liability under the ADA unless the defendant

18   owned, operated or leased the subject facility.  *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d

19   963, 966-968 (9th Cir. 2006) (upholding summary judgment in favor of defendant on ADA

20   Title III claim on grounds there was no showing made that it controlled or otherwise operated

21   a grassy strip of land); see *DOJ Preamble,* 28 C.F.R. pt. 36, App.B at 681 (2005) ("definition

22   of 'facility' only includes the site over which the private entity may exercise control.").

23          As discussed above, Forty Niners SC Stadium Company leased the Stadium only

24   during the "tenant season," essentially the football season.  *See* Mercurio Dec., ¶ 3, Exh. A.

25   Thus, for example, it did not "operate" the Stadium's facilities when the Nevarezes attended

26   the monster truck rally.  None of the named Forty Niners defendants contracted with HNTB

27   with respect to design of the Stadium, and the Forty Niners Football Company LLC merely

28   owns and operates the San Francisco 49ers football team.  *See* Mercurio Dec., ¶¶ 5-6.  Triable

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-14-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

issues of fact exist with respect to each defendant's potential liability under the ADA.

**2.    The Parties' Fundamental Dispute Over Which Accessibility Standards Applied To The Construction of Levi's Stadium Precludes Partial Summary Judgment.**

Plaintiffs concede in their motion that: "The issue of which set of federal accessibility standards applies depends on the date that the relevant facilities were newly constructed.  New construction by public entities commenced after September 15, 2010 and before March 15, 2012 must comply with the 2010 ADAS, the 1991 ADAAG, or the UFAS, and such work by private entities during the same time period must comply with either the 2010 ADAS or 1991 ADAAG." ECF No. 288 at 9, ll. 5-10 (emphasis added); *see also* ECF No. 291, at 8, ll 11-13. They further admit that "Defendants will likely deny that the Stadium's construction commenced on or after March 15, 2012 and contend that they comply with either elements of either set of standards…" Id. at 9, ll. 13-15.  That is indeed Defendants' position, as outlined in expert Kim Blackseth's November 8, 2018 expert rebuttal report:

> **Construction History**
>
> The initial permit for Levi's Stadium… was dated 03/01/12. Therefore, the relevant standards are the 2010 CBC and the 1991 ADAAG or the 2010 ABA / ADA guidelines.  Between March 15, 2010 and March 15, 2012 either the 1991 ADAAG or the 2010 ABA / ADA guidelines could have been used.
>
> Plaintiff experts suggest that when considering the appropriate standard, the more restrictive standard should be used.  That is correct when discussing between the CBC (state) and ADA (federal).  Whichever standard is more restrictive between the two would be the correct standard to meet. However, when discussing between both federal standards – the 1991 ADAAG and the 2010 ABA / ADA guidelines (between the timeframe of March 15, 2010 and March 15 2012), there is a choice.  It is not based on which standard is more restrictive… **We have a fundamental disagreement on the applicable standards that could be used. We believe either Federal Standard could be met.  If the 1991 Standards are met (and not the 2010 Standards) there is no compliance or accessibility issue.** [emphasis added] (Exh. D to Blackseth Dec., at p. 8; *See* Blackseth Dec., ¶ 10).

*See also* Lamp. Dec., Exh. G, Deposition of Jonathan Harvey, at 31:15-24 (testifying that construction began at Levi's Stadium in February 2012 when Turner Devcon began the indicator pile program); *see also* Marinelli Dec., ¶¶ 7-8.

-15-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

1   Plaintiffs have offered no evidence to the contrary, to wit, that construction on the

2   Stadium commenced *after* March 15, 2012.  Yet they jump (and ask the Court to jump) to the

3   unfounded conclusions that the testimony of non-party HNTB that it chose to comply with the

4   2010 ADAS, is somehow binding on all Defendants, that Defendants are thus foreclosed from

5   asserting their positions regarding applicable accessibility standards, and that the issue of what

6   standards apply is "undisputed."  Plaintiffs are wrong on all counts.

7   First, 2010 ADA Title II (§35.151 (c)(2)) provides that the *entity* may choose between

8   the 2010 Standards, UFAS, or the 1991 Standards.  HNTB is not the entity.  As the architect,

9   particularly one who is not employed by the entity, does not have the authority to usurp the

10   entity's right to determine the applicable standard.  *See* Declaration of Ed Roether ("Roether

11   Dec."), ¶ 6.  Indeed, there is no evidence that HNTB was in contract with the entity – the Santa

12   Clara Stadium Authority – or that the Stadium Authority permitted HNTB to choose the ADA

13   Standards on its behalf.  *See* Roether Dec., ¶ 6; *see also* Declaration of Nora Pimentel

14   ("Pimentel Dec."), ¶ 4.  Under the ADA regulations, it is the owner/operator/lessor who makes

15   the election as to which standard is applied.  28 C.F.R. § 35.151(c)(2) (Title II).  The Forty

16   Niners Defendants did <u>not</u> elect to apply the 2010 ADAS.  *See* Mercurio Dec., ¶ 9.

17   Second, the testimony of non-party HNTB is not the testimony of either the Forty

18   Niners Defendants or the Santa Clara Defendants, or any of them, and Defendants can and will

19   introduce evidence at trial concerning which accessibility standards applied to the Stadium's

20   facilities.  See*, e.g., In re Ramen Antitrust Litig.*, 281 F. Supp. 992, 920 n. 28 (N.D. Cal. 2017)

21   (Judge Orrick, in denying motion for summary judgment, finding that statements by the

22   Korean Fair Trade Commission regarding defendants' alleged price-fixing did "not bind [the

23   court's] resolution of that issue")); *Stack v. Burns,* No. 13-cv-05001-EMC, 2016 U.S. Dist.

24   LEXIS 94799, **20-21(N.D. Cal. July 20, 2016) (statements by defendant's attorney held "not

25   binding on this Court"); *Mejia v. Marauder Corp.*, No. C06-00520 HRL, 2007 U.S. Dist.

26   LEXIS 21313, *13 (N.D. Cal. Mar. 15, 20017) ("Generally, it is true that admissions of one

27   defendant are not binding upon a co-defendant"); *Castiglione v. United States Life Ins. Co.*,

28   262 F. Supp.2d 1025, 1030 (D. Ariz. 2003) (same). *Cf. A.I. Credit Corp. v. Legion Ins. Co.,*

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-16-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

1   265 F. 3d 630, 637 (7th Cir. 2001) (even a corporation's own Rule 30(b)(6) designee's

2   testimony may be contradicted or impeached).

3       Third, most of Plaintiffs' contentions regarding alleged compliance with accessibility

4   standards depend on their false construct that Defendants have "admitted" the 2010 ADAS

5   apply because HNTB allegedly chose the necessary number of accessible seats using the 2010

6   standards.  However, even if Defendants consulted the 2010 standards as they apply to

7   accessible seating, 2010 ADA Title ll (§35.151(c)(2)) states "departures from particular

8   requirements of either standard by the use of other methods shall be permitted when it is

9   clearly evident that equivalent access to the facility or part of the facility is thereby provided."

10  *See* Roether Dec., ¶ 7.

11      In view of the fundamental disagreement among the parties as to which standards

12  apply, Plaintiffs' motion for partial summary judgment must be denied.

13      **3.      Plaintiffs Lack Standing to Assert the Existence of Alleged Barriers**
        **to Access They Have Not Personally Encountered.**

14

15      As discussed above, Plaintiffs claim to have encountered only a small fraction of the

16  alleged physical access barriers that are the subject of this motion.  *Compare* ECF Nos. 151-1,

17  2 *with* Plaintiffs' Proposed Order, ECF No. 288-6, pp. 15-200.  Plaintiffs do not have standing

18  to make claims regarding alleged barriers they never encountered or knew about before this

19  case was filed.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff

20  has the burden of proof and persuasion as to the existence of standing); *Madsen v. Boise St.*

21  *Univ.*, 976 F.2d 1219, 1222 (9th Cir. 1992) (that a student with disability had not himself

22  suffered injury-in-fact as a result of campus parking policy disqualified him from challenging

23  legality of the policy under the rehabilitation Act of 1973); *Harris, supra,* 398 F. Supp. at

24  1252 (granting defendant summary judgement on ADA Title III claim and denying plaintiff's

25  cross-motion on the grounds that "there are no triable issues of material fact that [plaintiff] did

26  not encounter an ADA or ADAAG violation when he visited the cost co store. . . [and] as a

27  result [he] does not have standing to bring his claim under Title III").

28

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-17-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**4.      Plaintiffs Have Failed to Show That the Forty Niners Defendants or the Santa Clara Defendants Are Liable Under the ADA or Unruh Act for Allegedly Failing to Construct Levi's Stadium in Compliance with Federal and State Accessibility Standards.**

      **a.      As a Matter of Law, a Departure from Access Standards Does Not of Itself Establish Liability under the ADA or Unruh Act.**

The Declarations of Ed Roether, Dominic Marinelli, and W. Andrew Fennell demonstrate that Plaintiffs' experts' measurements and measurement techniques are incorrect and unreliable. The accuracy of those measurements is squarely in dispute. Partial summary judgment should be denied on that basis. Even leaving to one side disputes over the correctness of Plaintiffs' physical measurements, the motion also must be denied because there is a fundamental dispute between the parties and their respective experts as to whether the claimed departures from applicable accessibility standards (which, again are themselves in dispute), amount to statutory violations. As discussed in detail in Kim Blackseth's November 18, 2018 report (*see* Blackseth Dec., Exh. C), the regulations and industry practice standards permit construction and manufacturing tolerances, which Plaintiffs' experts fail to take into proper account in drawing their conclusions regarding alleged non-compliance:

> The CBC and ADA both allow for construction and manufacturing tolerances. We base our tolerances on the American Concrete Institute Information and the US Access Boards study called Initiative of Dimensional Tolerances in Construction, Dimensional Tolerances for Surface Accessibility. The US Access Board was established to develop and maintain accessibility guidelines implemented by the Americans with Disabilities Act…
>
> Plaintiffs' experts used Dimensional Tolerances for New and Existing Construction approved by the San Francisco Building Inspection Commission (September 16, 1988). Although the document provides guidance, Levi's Stadium is not bound by the San Francisco Building Inspection Commission.
>
> **We have a fundamental disagreement on construction and manufacturing tolerances. Plaintiff's experts do not take into account the digital margin of error. In addition, Paragraph 21 of Gary Waters report allows for up to 8.8 % for running slopes on ramps and allows up to 2.5% for cross slopes or level areas…We have a fundamental disagreement with any Plaintiff slope measurements that fall within the construction tolerance discussion detailed above…**

(Exh. E to Blackseth Dec. at 8-9, emphasis added).

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

As further noted in Mr. Blackseth's report and declaration, the CBC and ADA allow for conventional industry tolerances in construction and manufacturing in determining compliance with the Standards. (*Id.*at 9).

> CBC 1101B.5: Construction and manufacturing tolerances. All Dimensions are subject to conventional industry tolerances except where the requirement is stated as a range with specific minimum and maximum end points.

> ADA104.1 Construction and Manufacturing Tolerances. All dimensions are subject to conventional industry tolerances except where the requirement is stated as a range with specific minimum and maximum end points.

> 28 C.F.R. part 36, App. D, Section 3.2: "All dimensions are subject to conventional industry tolerances for field conditions."

The ADAAG also provides for functional equivalence. ADAAG § 2.2 states: "Departures from particular technical and scoping requirements of this guideline by use of other designs and technologies are permitted where the alternative designs and technologies used will provide substantially equivalent or greater access to and usability of the facility."

The courts have recognized, in evaluating physical access claims, that ADA compliance must be measured in accordance with applicable industry tolerances. As this Court stated in *Cherry v. City College of San Francisco*, No. C. 04-04981 WHA, 2006 U.S. Dist. LEXIS 98661, *14 (N.D.Cal. Jan. 12, 2006), the ADAAG tolerance provisions are "intended to allow for construction tolerances, such as variations based on field, material, manufacturing and workmanship conditions." The Court added: "[T]he burden is on plaintiffs to prove that the variance exceeds the allowed tolerance. It is not enough to simply show that a particular bathroom stall, for example, is less than the required width. The approximate extent of any shortfall must be proven." 2006 U.S. Dist. LEXIS 98661 at *17. See also, *Kohler v. Staples the Office Superstore, LLC,* 291 F.R.D. 464, 473 (S.D. Cal. 2013) (denying motion to strike affirmative defense of compliance with industry standards).

In *Access Now, Inc. v. S. Fla. Stadium Corp.,* 161 F.Supp.2d 1357 (S.D. Fla. 2001), a case involving stadium disability access, very similar to the present case, the Court granted <u>defendants</u>' motion for summary judgment on the ADA claims on the grounds that the plaintiff

-19-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    had not met his burden of demonstrating a violation of the law.  *Id.* at 38.  In so ruling, the

2    Court stated:

> Deviation from the standards is relevant *but not determinative*; it is
> one consideration from which the court may conclude that
> noncompliance impedes access.  At trial, a defendant may be able
> to rebut this evidence by showing that despite the technical
> noncompliance, the challenged accommodation in fact allows
> disabled persons effective access.  However, on summary
> judgment, the Court cannot weigh the evidence proffered by the
> parties, but may only consider whether Plaintiffs have adduced
> sufficient evidence of each element of their claim in satisfaction of
> their initial burden.

*Id.* at 28-29 (emphasis added); See also *Cayette v. PNK (Baton Rouge) P'ship,* No. 15-

692-SDD-RLB, 2016 U.S. Dist. LEXIS 84592, *9 (upholding validity of defense of "any

deviations from the applicable guidelines are *de minimis* and within construction and/or

manufacturing tolerances.").

Here, Plaintiffs have not met their burden of establishing that claimed variances from

accessibility standards impede access.  There is a fundamental conflict between the parties'

experts as to which tolerances even apply.  These issues must be resolved at trial; they are not

appropriate for summary disposition.

**b.    Whether "Dining Areas Throughout the Stadium" Lack
Accessible Dining Surfaces Is in Dispute.**

With regard to the alleged lack of accessible dining surfaces throughout the Stadium,

Plaintiffs ignore that the dining surfaces are movable – not fixed – and therefore there is no

ADA liability for these items.  Expert Ed Roether opined that the 1991 ADA Standards applies

only to fixed or built-in dining surfaces per both 4.1.3.18 and 5.1, and that the scoping

provisions of 226 in the 2010 ADA Standards does not specifically state that it only applies to

built-in dining surfaces, but requires compliance with 902 and Chapter 9 only provides the

technical requirements for built-in elements.  Plaintiffs' expert report shows small, clearly

moveable, tables (*see, e.g.,* photos 26-915, 26-948 in exhibit B to McBrayer declaration).

Roether Dec., ¶¶ 8-9; *see also* Marinelli Dec., ¶ 11.

In the suites are two types of tables; one is a trestle type, which is the most common,

-20-

clearly movable and not fixed (*see, e.g.,* photos 26-054, 25-888 in exhibit B to McBrayer declaration).   The other type is more fixed that includes an accessible pull out dining surface (*see, e.g.,* photos 26-480, 26-617 in exhibit B to McBrayer declaration).   *See also* Roether Dec., ¶¶ 8-9, Exh. A; *see also* Marinelli Dec., ¶ 12.

**c.      Whether "Drink Rails Throughout the Stadium" Are Too High and/or Lack the Requisite Toe Clearance Is In Dispute.**

Plaintiffs allege that drink rails throughout the Stadium (Levi's 501 Club, Level 300 Main Concourse, Level 700 Upper Concourse, and Bourbon Pub, etc.) exceed accessible height limits or lack sufficient depth for toe clearance; however, these are not "dining areas." Drink rails are not defined as such in the 1991 ADA or 2010 ADA Standards (or the applicable 2010 California Building Code).   *See* Marinelli Dec., ¶ 13.

In addition, the 1991 ADA Standards, the 2010 ADA Standards and the 2010 California Building Code permit equivalent facilitation (i.e., the use of other accessibility standards).   This is critical as the Plaintiffs' experts have indicated that drink rails are only 8 inches of depth.   The American National Standard for Accessible and Usable Buildings and Facilities (§902, Exception 1 A117.1 – 2009) – the Accessibility Standard referenced by the majority of jurisdictions in the country – provide an exception for drink surfaces 12 inches or less in depth.   *See* Marinelli Dec., ¶ 14.   These issues are squarely in dispute.

**d.      Whether "Certain Paths of Travel" to Accessible Seating Within the Stadium Are Accessible Is In Dispute.**

The experts disagree on measurements or whether paths of travel conditions constitute barriers.   Mr. Blackseth has opined that, alleged differentials are relatively minor and do not affect usability of the path of travel near accessible seating. *See* Blackseth Dec., ¶ 12e.

**e.      Elevator Signage.**

Plaintiffs do not cite provisions in the 1991 ADA Standards, the 2010 ADA Standards, or the 2010 CBC that require signage indicating accessible paths of travel.   The 2010 ADA Standards 216.3 only provides scoping requirements when directional or informational signs

-21-

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

are provided, it does not require directional signs. Section 216.6 only requires directional

signs to accessible entrances when not all entrances are accessible; all entrances to Levi's

Stadium are accessible. Similarly, the 1991 ADA Standard 4.1.3(16)(b) only provide scoping

requirements when directional or informational signs are provided, it does not require

directional signs. Also, Plaintiffs do not cite provisions in the 2010 ADA Title II Regulations

(CFR) that require signage. Section 35.151(a)(1) only requires compliance with the design

standards and separate from the design standards section 35.163(a) requires "a public entity to

ensure that interested persons, including persons with impaired vision or hearing, can obtain

information as to the existence and location of accessible services, activities, and facilities."

Plaintiffs' claim that wayfinding signage is required at major vertical circulation elements is

simply not correct. *See* Roether Dec., ¶ 10.

Plaintiffs also argue that, because defense expert Kim Blackseth agreed there could be

additional signage at Levi's Stadium, Defendants have conceded that lack of signage is a

barrier. Mr. Blackseth specifically disputes this, and clarified that his comments regarding

signage were not intended to mean that he (or Defendants) concede that the alleged lack of

elevator signage necessarily makes Levi's Stadium's elevators not readily accessible or not

useable. *See* Blackseth Dec., ¶ 12a.

### f.    Handrails on Ramps to Accessible Seating Location.

There is a conflict among the experts regarding handrails on ramps to accessible

seating locations. Mr. Blackseth has opined that, although the bottom handrail extensions in

some areas were 10" in the horizontal dimension, they are not unusable based on his

experience as a wheelchair user. *See* Blackseth Dec., ¶ 12b.

### g.    Ramp to Accessible Seating Areas.

The experts also disagree regarding the ramps to the accessible seating areas. Mr.

Blackseth opined that the claimed differentials between the specifications and the conditions

were relatively minor and do not render the ramps unusable. *See* Blackseth Dec., ¶ 12c.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

-22-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### h. Whether Designated Accessible Seating Is Accessible Is In Dispute.

Mr. Blackseth opined that claimed differentials between the specifications and the conditions were relatively minor and the ramps are unusable. *See* Blackseth Dec., ¶¶ 12d, 12e.

### i. Whether Stadium Restrooms "Have Numerous Barriers to Accessibility" Is In Dispute.

Again there is a direct conflict of expert opinion related to accessibility of the restrooms at Levi's Stadium. Mr. Blackseth specifically does not agree that the door hardware and floor slope in restrooms constitutes a barrier, or is not readily accessible or not usable by individuals with disabilities. Mr. Blackseth opined that the claimed differentials between the specifications and the conditions were relatively minor and do not render the features unusable. *See* Blackseth Dec., ¶ 12f.

In addition, using the 1991 Standards (itself a fundamental dispute in this case), Mr. Blackseth opined that baby changing stations are not addressed in the Standards, and that the toilet paper dispensers are in the appropriate place. *See* Blackseth Dec., ¶ 12f. Similarly, Mr. Roether opined that the 1991 ADA Standards and the 2010 CBC do not address baby changing stations and the 2010 ADA Standards does not prohibit them, and that there is no requirement that an accessible restroom compartment door clearance be measured with a baby changing table in the down position. *See* Roether Dec., ¶ 12; *see also* Marinelli Dec., ¶¶ 16-17. Mr. Marinelli also opined that the flush controls in the urinals are compliant because they are automatic and not hand-operated. *See* Marinelli Dec., ¶ 18.

Finally, Defendants took issue with the accuracy and reliability with Plaintiffs' measurements related to slope in the restrooms. Plaintiffs measured slope at drains in toilet stalls by standing on the digital level causing the end to be forced-up up at transition between two types of tiles (improper measuring techniques exemplified in photos 2953, 2954 among others in Masten Declaration, Exhibit C). *See* Marinelli Dec., ¶ 9.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

2

**j.      Whether the Stadium's Bourbon Steak, Bourbon Pub, and Tailgate Restaurants "Have Numerous Inaccessible Features" Is In Dispute.**

3

4

Plaintiffs allege that the Bourbon Steak, Bourbon Pub, and Tailgate Restaurants have

5

excessive slopes in their paths of travel.  Defendants' experts disagree.  Specifically,

6

Defendants' measurements differ materially from the Plaintiffs' measurements and show an

7

accessible path of travel.  *See* Roether Dec., ¶ 13, Exh. C.  Plaintiffs' claim that the slope of an

8

entire plaza area needs to be treated as a cross slope in all directions is erroneous.  What is

9

required is an accessible route at least 48" wide with compliant running slope and cross slope,

and that is provided at the Stadium.  *Id.*

10

Contrary to Plaintiffs' contention, the restaurants' use of a wheel chair platform lift is

11

appropriate.  The 1991 ADA Standards would permit an exterior path of travel to serve as the

12

accessible route between the levels connected by the wheelchair platform lift.  A compliant

13

exterior accessible route exists between the two levels.  Therefore, it would comply with the

14

1991 ADA Standards regardless of whether the wheelchair platform lift existed or not.

15

Having a wheelchair platform lift enhances accessibility per the 1991 ADA Standards, it does

16

not diminish it.  Also, it appears that together with the elevator the Santa Clara Building Dept.

17

accepted that the wheelchair platform lift facilitated an equivalent accessible route per the

18

2010 CBC and approved its use.  *See* Roether Dec., ¶ 14.

19

Finally, with regard to the handrail extensions at the stairs connecting Bourbon Pub

20

and Bourbon Steak lacking the required horizontal dimension; the 1991 ADA Standards did

21

not require stairs to comply, including their handrails and extensions, when an accessible route

22

is provided per 4.1.3(4).  It states that "interior and exterior stairs connecting levels that are not

23

connected by an elevator, ramp, or other accessible means of vertical access shall comply with

24

4.9".  Section 4.9 provides the technical requirements for stairs, including handrails.  Again, a

25

compliant exterior accessible route exists between the two levels.  Therefore, it would comply

26

with the 1991 ADA Standards even if handrails were not provided for the stairs or even if the

27

stair treads and risers themselves did not comply since the stairs were not required to comply

28

-24-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  due to the accessible route provided between the two levels.  Further, this issue was not

2  identified by the authority having jurisdiction to enforce the 2010 California Building Code

3  (the City of Santa Clara) . *See* Roether Dec., ¶ 15; *see also* Marinelli Dec., ¶ 19; *see also*

4  Blackseth Dec., ¶ 12g.

5             **k.**    **Whether the Stadium's Luxury Suites "Include Non-**

6                  **Compliant Closet Features" Is In Dispute.**

7        The 2010 ADA Standards 225.2, the 1991 ADA Standards 4.1.3(12)(a), as well as the

8  2010 CBC 1125B.1, only require compliance for one of each type of storage.  Plaintiffs'

9  photos show cabinets on the opposite side of the entry door of the luxury suites which has

10  accessible height shelves.  The cabinet doors for many are closed in the photos, but some (such

11  as photo 25 423 in exhibit B of the McBrayer Declaration) show the cabinet door open with

12  the shelves exposed.  The shelves in these cabinets are the same type of storage as the shelf in

13  the closet.  Therefore, accessible shelving is provided and additional accessible shelving is not

14  required for the luxury suites, and is provided.  *See* Roether Dec., ¶ 16; *see also* Marinelli

15  Dec., ¶ 20; *see also* Blackseth Dec., ¶ 12h.

16             **l.**    **Whether the Pedestrian Rights of Way Are Non-Compliant,**

17                  **Or Even Relevant, Is In Dispute.**

18        As demonstrated in Defendants' Motion for Partial Summary Judgment, ECF No. 282,

19  the "pedestrian rights of way" between remote parking lots and other undefined locations in

20  the City of Santa Clara, on the one hand, and the Stadium, on the other, are not properly part

21  of this case.  Those City paths of travel do not "serve" Levi's Stadium; rather, the parking lots

22  immediately adjacent to the Stadium are designated for disabled parking.  *See* Mercurio Dec.,

23  ¶ 9.  Plaintiffs' musings (not supported by any evidence) that "not all persons with disabilities

24  take a car or van to the Stadium and would enjoy taking the pedestrian right of way to the

25  Stadium were it accessible," (Mtn. at 22, n. 5), does make those purported claims relevant.

26                  **V.**    **CONCLUSION**

27        For the foregoing reasons, the Court should DENY Plaintiffs' Motion for Partial

28  Summary Judgment.

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  January 3, 2019

LOMBARDI, LOPER & CONANT, LLP

By: */s/ Maria L. Lampasona*

GORDON REES SCULLY MANSUKHANI, LLP

By:  */s/ Brian P. Maschler*
     Brian P. Maschler

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**