1 | MARIA L. LAMPASONA (SBN: 259675)
mlampasona@llcllp.com
2 | TAYLOR J. POHLE (SBN: 299794)
tpohle@llcllp.com
3 | LOMBARDI, LOPER & CONANT, LLP
2030 Franklin Street, Sixth Floor
4 | Oakland, CA 94612
Telephone: (510) 433-2600
5 | Facsimile: (510) 433-2699

6 | DION COMINOS (SBN: 136522)
dcominos@grsm.com
7 | BRIAN P. MASCHLER (SBN: 111824)
bmaschler@grsm.com
8 | GORDON REES SCULLY MANSUKHANI, LLP
275 Battery Street, 20th Floor
9 | San Francisco, CA 94111
Telephone: (415) 986-5900
10 | Facsimile: (415) 986-8054

11 | Attorneys for Defendants
FORTY NINERS FOOTBALL COMPANY LLC,
12 | FORTY NINERS SC STADIUM COMPANY LLC,
FORTY NINERS STADIUM MANAGEMENT
13 | COMPANY LLC, CITY OF SANTA CLARA,
and SANTA CLARA STADIUM AUTHORITY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ABDUL NEVAREZ and PRISCILLA NEVAREZ,<br><br>Plaintiffs,<br><br>FORTY NINERS FOOTBALL COMPANY LLC, a Delaware limited liability company; FORTY NINERS SC STADIUM COMPANY LLC, a Delaware limited liability company; CITY OF SANTA CLARA, SANTA CLARA STADIUM AUTHORITY; FORTY NINERS STADIUM MANAGEMENT COMPANY LLC; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 5:16-cv-07013-LHK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date: August 29, 2019<br>Time: 1:30 p.m.<br>Dept.: Courtroom 8<br>Judge: Hon. Lucy H. Koh<br><br>[Fed. R. Civ. Proc. 56(a)]<br><br>Trial Date: November 28, 2019 |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................2

I. INTRODUCTION ...........................................................................................................2

II. STATEMENT OF FACTS ..............................................................................................4

III. LEGAL ARGUMENT .....................................................................................................5

    A. Summary Judgment Standards..............................................................................5

    B. The Accessibility Of Remote Parking Lots And Pedestrian Rights Of Way Outside Of Levi's Stadium Is Not Part Of This Class Action; Plaintiffs' Claims Regarding Such Areas Therefore Be Dismissed....................................................5

        1. Factual Background Related to Stadium Parking Plans and Santa Clara Transition Plan ...........................................................................................5

        2. The Condition of the Satellite Parking Lots is Irrelevant to this Lawsuit Because Defendants Cluster ADA Parking in the Closest Lot to the Stadium's Entrance ...................................................................................9

        3. The Condition of the Rights of Way Is Irrelevant to this Lawsuit Because Defendants Cluster ADA Parking in the Closest Lot to the Stadium's Entrance ....................................................................................................11

        4. An Injunction Related to the Rights of Way is Unnecessary Because the City of Santa Clara Already is Evaluating and Correcting the Rights of Way in Connection with its Transition Plan............................................13

    C. ISA Signage On Stadium Restrooms 3.43.02 And 3.44.02 Is Not Required Under The ADA..................................................................................................14

    D. The Outdoor Wheelchair Seating Adjacent To Stadium Suite 517 Is ADA-Compliant............................................................................................................15

    E. The Countertops In The Main Team Store In The Stadium Are ADA-Compliant ...........................................................................................................15

    F. The Wheelchair-Accessible Seating On The Selected Platform Is ADA-Compliant............................................................................................................15

    G. The Forty Niners Defendants' Ticketing Policies And Practices Comply With The ADA.............................................................................................................16

IV. CONCLUSION..............................................................................................................16

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

# TABLE OF AUTHORITIES

Page

**Federal Cases**

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................................5

*City of Mesquite v. Aladdin's Castle, Inc.*,
   455 U.S. 283 (1982) .................................................................................................................9

*Wander v. Kaus*,
   304 F.3d 856 (9th Cir. 2002) ....................................................................................................9

**Federal Statutes**

42 U.S.C. § 12188(a)(1) ..................................................................................................................9

**Federal Rules**

Fed. R. Civ. P. 56 ........................................................................................................................1, 5

Fed. R. Civ. P. 56(c) .......................................................................................................................5

**Federal Regulations**

Chapter 28, section 35.150 of the Code of Federal Regulations ..................................................13

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

# NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 29, 2019, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Department 8 of this Court, Defendants, FORTY NINERS FOOTBALL COMPANY LLC, FORTY NINERS SC STADIUM COMPANY LLC, FORTY NINERS STADIUM MANAGEMENT COMPANY LLC, CITY OF SANTA CLARA, and SANTA CLARA STADIUM AUTHORITY (collectively, "Defendants") will move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting summary judgment in favor of Defendants related to Plaintiffs' Fourth Amended Complaint ("FAC") on the following issues:

*First*, as a matter of law and based on the subject matter of this lawsuit, Plaintiffs' claims regarding satellite parking lots (*see* ECF 195-1 at 161, 186) and so-called "pedestrian rights of way" (*see* ECF 195-1 at 189-264) are irrelevant to whether Defendants have made Levi's Stadium accessible to Plaintiffs and members of the plaintiff classes, and should be dismissed.

*Second*, regarding Stadium women's restroom 3.43.02 and men's restroom 3.44.02, Plaintiffs' claims that they must have signage that bears the International Symbol of Accessibility ("ISA") (see ECF 195-1 at 21) are legally incorrect. An ISA is required on an accessible restroom only where not all restrooms are accessible. At Levi's Stadium, all public restrooms are designed and constructed to be accessible to persons with disabilities. Therefore, the ISA signage is not required.

*Third,* the outdoor wheelchair seating adjacent to Suite 517 at the Stadium is ADA-compliant. (*See* ECF 195-1 at 45).

*Fourth,* the countertop height at the Main Team Store in the Stadium is ADA-compliant. Because this entire counter is properly accessible, no ISA signage identifying accessible portions of the counter is required. (*See* ECF 195-1 at 35).

*Fifth,* the wheelchair-accessible seating on the platform identified in FAC, Exhibit A, ECF 195-1 at 12, is ADA-compliant.

*Sixth,* the ticketing policies and practices employed by the Forty Niners Defendants, which are wholly non-discriminatory, comply with the ticketing requirements of the ADA.

The Court should dismiss all of these claims on summary judgment.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities, Declarations of Kim Blackseth, Cris C. Vaughn, Jim Mercurio, Craig Mobeck and Maria Lampasona, and Request for Judicial Notice filed herewith, and the pleadings, memoranda, Orders, exhibits and other documents already on file in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

In the Court's Order dated February 5, 2019, it directed Plaintiffs and Defendants, respectively, each to select six discrete issues to litigate through trial. (ECF 328). In its April 4, 2019 Case Management Order (ECF 337), the Court set a summary judgment briefing and hearing and trial (if necessary) schedule of those issues. Defendants seek summary judgment as to the six issues they have selected to be decided in this first phase. Plaintiffs' claims with respect to these issues are untenable as a matter of law and/or raise no genuine issue of material fact. They are as follows:

*First,* as a matter of law and based on the subject matter of this lawsuit, Plaintiffs' claims regarding satellite parking lots (*see* ECF 195-1 at 161, 186) and so-called "pedestrian rights of way" (*see* ECF 195-1 at 189-264) are irrelevant to whether Defendants have made Levi's Stadium accessible to Plaintiffs and members of the plaintiff classes, and should be dismissed.

Plaintiffs' Fourth Amended Complaint alleges that defendants' configuration of Levi's Stadium ("Levi's Stadium" or the "Stadium"), and the parking lots and rights-of-way (e.g. sidewalks, crosswalks, and curb ramps) that serve the Stadium, violate the Americans with Disabilities Act ("ADA") and the California Unruh Civil Rights Act, and that Plaintiffs have been denied full and equal access to the Stadium due to these alleged violations.

Parking at the Stadium can be broken into two categories: one large lot that is immediately adjacent to the Stadium (the "Main Lot"), and "satellite lots," which are a mix of publicly and privately-owned lots that are connected to the Stadium via the rights-of-way Defendants' parking plan provides that (1) all ADA (handicapped) parking spaces are to be in the Main Lot immediately adjacent to the Stadium, and (2) there is an ADA drop-off zone on an accessible path of travel close to the Stadium. This Stadium-adjacent parking lot is designed to provide the ADA-required number of accessible parking spaces (including van-accessible spaces), which is based on the total number of parking spaces made available to the public at large. Therefore, the number of accessible parking spaces in off-site, or satellite parking lots, which lots are not owned by Defendants, is legally immaterial to the issues before the Court in this case, and cannot serve as a proper basis for Plaintiffs' claims.

Moreover, accessibility of the rights-of-way is governed by the Code of Federal Regulations, which requires that public entities like the City of Santa Clara develop an ADA Title II Transition Plan related to accessibility of its streets and walkways. The City of Santa Clara already is in the process of developing a Transition Plan with required accessibility elements covering the rights-of-way leading to the Stadium. The Court only certified a single injunctive relief class as to the City of Santa Clara and the Santa Clara Stadium Authority defendants; they are not parties to the damages class or companion class. Because the City of Santa Clara already is in the process of making accessible all of its pedestrian rights-of-way through the procedure proscribed by Federal law (the "Title II ADA Transition Plan"), the issue is largely moot, and any injunctive decree related to the rights-of-way here would be unnecessary and ineffective.  Accordingly, Plaintiffs' claims related to the rights-of-way should be dismissed.

*Second,* regarding Stadium women's restroom 3.43.02 and men's restroom 3.44.02, Plaintiffs' claims that they must have signage that bears the International Symbol of Accessibility ("ISA") (*see* ECF 195-1 at 21) are legally incorrect. An ISA is required on an accessible restroom only where not all restrooms are accessible. At Levi's Stadium, all public restrooms are designed and constructed to be accessible to persons with disabilities. Therefore,

-3-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  the ISA signage is not required.

2  *Third,* the outdoor wheelchair seating adjacent to Suite 517 at the Stadium is ADA-
3  compliant. Plaintiffs' experts' measurements and contentions to the contrary (*see* ECF 195-1
4  at 45) are in error.

5  *Fourth,* the countertop height at the Main Team Store in the Stadium is ADA-
6  compliant. Because this entire counter is properly accessible, no ISA signage identifying
7  accessible portions of the counter is required. Plaintiffs' contentions to the contrary (*see* ECF
8  195-1 at 35) are erroneous.

9  *Fifth,* the wheelchair-accessible seating on the platform identified in FAC, Exhibit A,
10 ECF 195-1 at 12, is ADA-compliant. Plaintiffs' contentions to the contrary are erroneous.

11 *Sixth,* the ticketing policies and practices employed by the Forty Niners Defendants
12 comply, which are wholly non-discriminatory, comply with the ticketing requirements of the
13 ADA.

14 The Court should dismiss all of these claims on summary judgment.

## II.  STATEMENT OF FACTS

16 Levi's Stadium is a multi-use facility in Santa Clara, California, that has served as the
17 home venue for the National Football League ("NFL")'s San Francisco 49ers since 2014.
18 Levi's Stadium also has hosted various other non-NFL events since its opening to the public in
19 2014, including concerts, high school and college sporting events, professional hockey,
20 wrestling, and soccer events, including national and international games. Levi's Stadium is
21 situated on approximately 22 acres of land owned by the City of Santa Clara, and is leased to
22 the Santa Clara Stadium Authority, a public entity that was established specifically to provide
23 for the development and operation of Levi's Stadium, who in turn has leased the stadium to
24 Forty Niners SC Stadium Company LLC for part of each year of the lease term (generally, the
25 football season). Forty Niners Football Company LLC owns and operates the San Francisco
26 49ers football team, and Forty Niners Stadium Management Company manages the stadium
27 on behalf of both Forty Niners SC Stadium Company LLC and the Santa Clara Stadium
28 Authority. *See* Declaration of Jim Mercurio ¶ 4.

-4-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Plaintiffs have alleged that there exist numerous accessibility barriers both inside Levi's Stadium, and in the pedestrian rights of way and parking lots serving Levi's Stadium, including the following six alleged barriers addressed in this motion: barriers in the pedestrian rights of way connecting Levi's Stadium to satellite parking lots, lack of accessible signage at Stadium restrooms, non-compliant outdoor wheelchair seating near suites, non-complaint countertop height at the Team Store, and inaccessible wheelchair seating platforms.

### III. **LEGAL ARGUMENT**

#### A. **Summary Judgment Standards**

Federal Rule of Civil Procedure 56 states, in part: "A party may move for summary judgment, identifying each claim or defense – or the *part of each claim or defense* – on which summary judgment is sought."  (emphasis added). Summary judgment is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

#### B. **The Accessibility Of Remote Parking Lots And Pedestrian Rights Of Way Outside Of Levi's Stadium  Is Not Part Of This Class Action; Plaintiffs' Claims Regarding Such Areas Therefore Be Dismissed**

##### 1. **Factual Background Related to Stadium Parking Plans and Santa Clara Transition Plan**

Unlike other NFL stadiums, Levi's Stadium was not built in the middle of an undeveloped lot that could accommodate *all* parking for the venue in immediate proximity to the Stadium's entrances. *See* Declaration of Maria M. Lampasona, Exh. 3, Deposition of David Tran, 05/24/18, at 99:15-102:5; *see also* Exh. 2, Deposition of Kevin Riley, 04/24/18, at 36:21-38:23. Instead, Levi's Stadium was built adjacent to the California's Great America Amusement Park, in the middle of suburban area with nearby residential and commercial zones. *See* Request for Judicial Notice ¶ 1. Accordingly, as part of the planning for the operation of Levi's Stadium, the City of Santa Clara, in coordination with other entities such as AECOM Transportation and the Forty Niners, developed a Transportation Management and Operations Plan (the "TMOP"). *See* Declaration of Jim Mercurio, ¶ 5; *see also* Declaration of Maria M. Lampasona, Exh. 1, Deposition of Dennis Ng, 03/19/18, at 113:18-114:11; *see also*

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

Request for Judicial Notice, ¶ 3, Exhibit 1. The original TMOP contemplated the use of the large lot immediately adjacent to the Stadium (Red Lot 1 / Green Lot 1, hereinafter the "Main Lot"), as well as various public and private lots near the Stadium (the "satellite lots") (*see* Declaration of Maria M. Lampasona, Exh. 1, Deposition of Dennis Ng, 03/19/18, at 119:18-124:20):



The original TMOP also provided that the primary supply of ADA parking would be in the Main Lot, and that the total number of spaces in that lot would be sufficient to meet ADA parking requirements for all patrons expected to arrive at the Stadium by automobile. *See* Declaration of Maria M. Lampasona, Exh. 1, Deposition of Dennis Ng, 03/19/18, at 252:17-254:16, 288:14-289:7; *see also* Request for Judicial Notice ¶ 3, Exhibit 1. Although the TMOP makes reference to accessible parking in Blue Lot 1 and Green Lot 4, the ultimate goal was to place all ADA parking in the Main Lot. The original TMOP also contained provisions for a courtesy shuttle for guests with mobility disabilities who chose to park in Blue Lot 1 or Green Lot 4. *See* Declaration of Maria M. Lampasona, Exh. 1, Deposition of Dennis Ng, 03/19/18, at 114:4-115:22; *see also* Request for Judicial Notice ¶ 3, Exhibit 1.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  The TMOP was updated in August 2017, but the provision relating to the Main Lot
2  containing sufficient accessible parking to meet ADA parking requirements for all patrons
3  expected to arrive at the Stadium by vehicles did not change. *See* Declaration of Maria M.
4  Lampasona, Exh. 1, Deposition of Dennis Ng, 03/19/18, at 47:2-16, 128:7-18; *see also*
5  Request for Judicial Notice, ¶ 4, Exhibit 2. The TMOP also stated that patrons intending to use
6  parking spaces not located within the Main Lot can park in Blue Lot 1, which would be
7  serviced by courtesy shuttles. *See* Declaration of Maria M. Lampasona, Exh. 1, Deposition of
8  Dennis Ng, 03/19/18, at 289:25-291:17; *see also* Request for Judicial Notice, ¶ 4, Exhibit 2.
9  The parking map for the 2018 football season is below, and the "Main Lot" is
10 designated as Red Lots 1 and V, and Green Lots 1 and RV. All spaces designated for people
11 with disabilities are in the Main Lot (*see* Declaration of Maria M. Lampasona, Exh. 4,
12 Deposition of James Mercurio, 7/25/18, at 13:14-24):



26 Currently, the parking plan at the Stadium is as follows: guests needing accessible
27 parking spaces are directed to the Main Lot. **All accessible parking is in the Main Lot**. The
28 Stadium offers courtesy shuttles from Blue Lot 1 as a courtesy to event attendees. The shuttle

-7-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

1  is not intended as part of the accessible parking plan. The Stadium has publicized that
2  accessible parking is located in the Main Lot, and signs are placed in all satellite lots directing
3  guests who need ADA spaces to park in the Main Lot. The Stadium also will ensure that there
4  are enough accessible standard vehicle and van spaces in the Main Lot so that the total number
5  of accessible spaces in the Main Lot is sufficient to meet the ADA parking requirement for the
6  Stadium. A recent topographic survey of the Main Lot indicates that locations in which
7  accessible parking will be located are ADA compliant in terms of slopes and paths of travel
8  issues. *See* Declaration of Jim Mercurio ¶ 6.
9        On May 16, 2018, the City of Santa Clara issued a Request for Proposal for
10  Professional Services related to the Transition Plan. *See* Declaration of Craig Mobeck ¶ 2.
11  Following the review process, the City of Santa Clara selected Moore Iacofano Goltsman,
12  Incorporated ("MIG") as the professional design company tasked with the preparation of a
13  Transition Plan Report as the first step toward implementation of the ADA Title II Transition
14  Plan. The project specifically calls for MIG to perform a survey of the City's rights-of-way –
15  including those identified by plaintiffs in this case – and issue a report related to any alleged
16  barriers identified therein as the first step in enacting its ADA Title II Transition Plan aimed at
17  continuing the City's ongoing efforts to comply with the various accessibility requirements
18  under the ADA and the California Building Code ("CBC"). *See* Declaration of Craig Mobeck
19  ¶ 3.
20        Plaintiffs in this case allege that the City of Santa Clara "owns, maintains, and
21  exercises control and authority over the pedestrian rights-of-way and the path of travel
22  between the Stadium and the parking facilities servicing the Stadium, which rights-of-way is a
23  service, program and/or activity of Defendant CITY. Defendant CITY also owns and/or
24  exercises control over the parking facilities serving the Stadium, which also constitute a
25  service, program and/or activity of Defendant CITY."  *See* ECF 195, Fourth Amended
26  Complaint ("FAC"), ¶ 9. The Court has certified two injunctive relief classes as to the City of
27  Santa Clara (a class comprised of persons with mobility disabilities who use mobility aids and
28  have allegedly been denied equal access to Levi's Stadium, and those individuals'

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  companions). The Court has not certified a damages class as to the City of Santa Clara and the
2  Santa Clara Stadium Authority (collectively, the "Santa Clara defendants"). *See* ECF 186,
3  Order Granting in Part and Denying in Part Motion for Class Certification. Accordingly, the
4  only remedy available to private ADA plaintiffs as it relates to the Santa Clara defendants is
5  injunctive relief (as well as attorneys' fees and costs). 42 U.S.C. § 12188(a)(1); *Wander v.*
6  *Kaus*, 304 F.3d 856, 858 (9th Cir. 2002).

As described in further detail below, injunctive relief is unnecessary because any outstanding issues, to the extent they exist against the Santa Clara defendants, will be moot. Given the agreed-upon remediation, and the already-in-progress TMOP, all evidence shows that "the allegedly wrongful behavior could not reasonably be expected to recur." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982) (internal quotation marks omitted).

### 2. The Condition of the Satellite Parking Lots is Irrelevant to this Lawsuit Because Defendants Cluster ADA Parking in the Closest Lot to the Stadium's Entrance

Chapter 2 of the 2010 ADA Standards for Accessible Design (the "Standards") governs accessible parking at a facility like Levi's Stadium. Section 208 provides that a certain number of spaces and van spaces must be made available, and that accessible parking must be located on the shortest accessible route from parking to the facility's entrance. The Standards specifically state that "parking spaces shall be permitted to be located in different parking facilities if substantially equivalent or greater accessibility is provided in terms of distance from an accessible entrance or entrances, parking fee, and user convenience."  Section 208.3.1.

Here, *all* accessible parking for Levi's Stadium is "clustered" in the Main Lot. *See* Declaration of Maria M. Lampasona, Exh. 4, Deposition of James Mercurio, 7/25/18, at 13:14-24). The Main Lot offers greater accessibility because it is closest to the Stadium entrance on accessible routes, and therefore more convenient, and the fee for accessible parking in that lot is the same as the fee for parking in any other lot. Levi's Stadium does not *designate* any other

-9-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

**Gordon Rees Scully Mansukhani, LLP**
**275 Battery Street, Suite 2000**
**San Francisco, CA 94111**

1  accessible parking spots for use during events at the Stadium.

2  This method of locating all accessible parking in the most user-convenient and
3  accessible lot is not only adequate under the plain language of the relevant guidelines, it
4  follows the guidance of previous Department of Justice ("DOJ") Settlement Agreements with
5  similarly-situated facilities, such as the Tulsa County Fairgrounds and the University of
6  Michigan. See *Settlement Agreement Between the United States of America and Expo Square*
7  *under the Americans with Disabilities Act*, DJ No. 202-59N-48 (May 12, 2011); see also
8  *Consent Decree between United States Department of Justice and the University of Michigan*
9  *RE: Michigan Paralyzed Veterans of America v. The University of Michigan*, No. 07-11702
10 (E.D. Mich. Mar. 10, 2008). In each of these, the DOJ worked with large facilities to arrange
11 where the accessible parking would be best located over numerous parking facilities,
12 relocating spaces required in certain facilities to others because of increased accessibility or
13 convenience. While not law, these agreements bolster the plain language of the 2010 ADAAG
14 and show that the DOJ sanctions large facilities, such as Levi's Stadium, relocating parking to
15 the most convenient and accessible location.

16 Additionally, Plaintiffs' designated expert on the rights-of-way and parking lots, Jeff
17 Mastin, was examined at length on defendants' parking plan. He agreed that "clustering is, I
18 think, a good idea and a good intention." *See* Declaration of Maria M. Lampasona, Exh. 6,
19 Deposition of Jeff Mastin, at 94:23-25. He also testified that he does not expect to offer an
20 opinion at trial that defendants are obligated to provide accessible parking spaces in each of
21 the satellite lots. *See* Declaration of Maria M. Lampasona, Exh. 6, Deposition of Jeff Mastin,
22 at 93:16-21.

23 Accordingly, because Defendants do not designate accessible parking in the satellite
24 lots, and because Plaintiffs will not offer an opinion that Defendants are obligated to provide
25 accessible parking in satellite lots, the accessibility of the spaces in the satellite parking lots
26 themselves should not be an issue at trial. Accordingly, Defendants respectfully request that
27 the Court dismiss from the case any claims related to the alleged nonconformance of any
28 satellite parking lot under the ADA or Unruh Act.

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### 3. The Condition of the Rights of Way Is Irrelevant to this Lawsuit Because Defendants Cluster ADA Parking in the Closest Lot to the Stadium's Entrance

As the satellite lots are not used by the Stadium for accessible parking, and the accessible lot that *is* used is immediately adjacent to the Stadium and does not require travel on any public rights-of-way to access, the accessibility of the rights-of-way from the satellite parking lots to the Stadium also is irrelevant.

As part of Mr. Mastin's examination, defense counsel made reference to one of the satellite (or "remote") parking lots – the Mission College lot (or Green Lots 4 and 5 in the image above) – in order to clarify Mr. Mastin's opinions regarding defendants' obligations as they relate to the satellite lots and the rights-of-way connecting the lots to the Stadium. The Mission College lot is approximately 2 miles away from the Stadium entrance. *See* Request for Judicial Notice ¶ 2.

Mr. Mastin agreed that he would not recommend that Levi's Stadium make available accessible parking in each of the satellite lots because "the spaces are too far away for most people to use." *See* Declaration of Maria M. Lampasona, Exh. 6, Deposition of Jeff Mastin, at 77:11-22. Instead, he agreed that the number of accessible spaces required for the Mission College lot could be made available in a lot closer to the Stadium, and that would comply with Standards, provided that the spaces offered otherwise complied with the Standards. *See* Declaration of Maria M. Lampasona, Exh. 6, Deposition of Jeff Mastin at 77:15-78:2.

In addition, he agreed that, if Levi's Stadium did not designate any accessible spaces in the Mission College lot or run accessible shuttles to that lot, then the rights-of-way between the Mission College lot and the Stadium would not need to be accessible:

> Q: Let's assume that the stadium does not designate any accessible spaces in the Mission College lot and let's assume that there is no shuttle that goes to the Mission College lot. Is it still your opinion that the pedestrian rights-of-way between the Mission college lot and the Stadium need to be accessible due to the lot servicing the Stadium?
>
> Plaintiffs' Counsel:  Objection: Vague, incomplete hypothetical.

-11-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

> A: **I don't think they would have to be accessible**, the ones necessary to communicate between that parking lot and the stadium.

Upon further examination, Mr. Mastin shared that he believed the rights-of-way may need to be accessible because someone might get dropped off somewhere along the rights-of-way. Upon further examination, he conceded that he would be speculating as to where guests may get dropped off for Stadium events and when asked if the City was obligated to make all rights-of-way in the City of Santa Clara that could possible lead to the Stadium accessible, he replied that it would not extend as far as the borders of the City, although he could not identify exactly where it would end. *See* Declaration of Maria M. Lampasona, Exh. 6, Deposition of Jeff Mastin at 90:4-93:15.

When asked if a designated drop-off spot would change this opinion, he replied that it "could" if there were effective means to notify people of the location of accessible parking and the drop off point (e.g. giant signs or the like). *See* Declaration of Maria M. Lampasona, Exh. 6, Deposition of Jeff Mastin at 81:10-86:7. In fact, the Stadium clusters its ADA parking in the Main Lot, and offers a well-publicized ADA drop-off point close to the Stadium.

Further, third-party Jim Terry, an access expert from Evan Terry Associates, the access consultant retained by the Stadium designer, was questioned about what effect the clustered parking in the Main Lot would have on the accessibility requirements related to the satellite lots. He testified as follows:

> I'd have to look at the circumstances to see exactly what you're referring to, but if the obligation for the whole stadium is to have X hundred spaces and you put those X hundred spaces dispersed around – at least as good as what you would have had for the routes other places, then while – when you're providing those accessible spaces in equal or greater – or more accessible locations typically closer to the facility, then when that is happening, *then the other routes to get to the other remote lots that are no longer being used for accessible parking, those other routes, unless they're required for some other reason, are not required to comply with the standards for the operator who is doing – who is meeting those obligations there.*

*See* Declaration of Maria M. Lampasona, Exh. 5, Deposition of James Terry at 276:24-

-12-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

278:5 (emphasis added).

This is a case about the accessibility of Levi's Stadium. It is not a case about the accessibility of the rights-of-way in the City of Santa Clara in general, or the duty of a public entity even when its sidewalks are not connected to any particular service, program, or activity. This crux of this case is a particular service, program, or activity – events at Levi's Stadium. The classes the Court certified involve *access to Levi's Stadium*, and if the satellite parking lots are not required to provide access to Levi's Stadium, then the rights-of-way leading from those parking lots to the Stadium are not relevant to plaintiffs' claims in this case. The notion that someone may decide to get dropped off at some undisclosed location on or near the rights-of-way – despite there being a designated drop-off spot near the Stadium – does not result in the imposition of a duty on the City to make accessible every rights-of-way that could conceivably lead to Levi's Stadium in order to make *the Stadium and its facilities* accessible. For this reason, the Court should dismiss plaintiffs' claims as they relate to any alleged barriers in the rights-of-way leading from satellite parking lots to the Stadium.

**4.   An Injunction Related to the Rights of Way is Unnecessary Because the City of Santa Clara Already is Evaluating and Correcting the Rights of Way in Connection with its Transition Plan**

Chapter 28, section 35.150 of the Code of Federal Regulations provides that a public entity shall operate each service so that the service is "readily accessible to and usable by individuals with disabilities."  It also provides that a public entity that has responsibility or authority over streets, roads, or walkways, must identify obstacles to accessibility, describe in detail the methods that will be used to make the facilities accessible, and specify the schedule for those alterations. The development of a Transition Plan is a requirement of the Federal regulations, and is a tool used to ensure a public entity's compliance with access standards.

Here, the City has retained a design consultant to conduct a comprehensive accessibility evaluation of its rights-of-way (including the rights-of-way identified by plaintiffs in this lawsuit), and to prepare a Transition Plan report as the first step toward implementation of the ADA Title II Transition Plan, the aim of which is to ensure that the rights-of-way are

-13-

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

accessible to the public under ADA requirements. *See* Declaration of Craig Mobeck ¶¶ 2-3. Thus, the City of Santa Clara is already in the process of developing its required Transition Plan and making its rights-of-way accessible as required by relevant law. There is nothing related to the rights-of-way for the Court to enjoin.

The Court certified an injunctive relief class only as to the City of Santa Clara. That means plaintiffs' remedy in this case as it relates to the rights-of-way (should they establish liability) is a Court order directing defendants to modify the rights-of-way. However, the City already is in the process of evaluating and correcting any non-compliant rights-of-way via its Transition Plan. Thus, to the extent the Plaintiffs argue in opposition to this motion that the City has the obligation to make all of its rights-of-way accessible (regardless of their nexus to Levi's Stadium), the City already has taken affirmative steps to identify and correct access barriers in the rights-of-way. In addition, a City-wide Transition Plan, not an injunction related to the specific streets surrounding Levi's Stadium, is a more robust response to potential accessibility issues and will be based on the City's operating budgets and its realistic ability to fund such improvements – not abstract directives that fail to take into account the interrelatedness of the City's accessible routes and facilities. As the City already has been and is addressing the issues on which Plaintiffs seek an injunction, an injunction is unnecessary.

### C. ISA Signage On Stadium Restrooms 3.43.02 And 3.44.02 Is Not Required Under The ADA

Plaintiffs wrongly contend that the door at Stadium women's room 3.43.02 and men's room 3.44.02 are missing "required" ISA signage. (*See* FAC, Ex. A, ECF 195-1 at 21,22). Even assuming the current Code (2010 ADAS) were to apply, it does not require ISA signage on all restrooms. Rather, ISA signage is only required in a situation in which not all of the subject restrooms are accessible. In such a situation, the accessible restroom(s) would require an ISA. (Declaration of Kim Blackseth ["Blackseth Dec."] ¶ 11). At Levi's Stadium, *all restrooms are have accessible facilities and are designed and constructed to be accessible to persons with mobility (and other) disabilities.* Therefore, ISA signage is not required on the doors to the Stadium restrooms. (*Id.* at ¶ 11).

Gordon Rees Scully Mansukhani, LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

### D. The Outdoor Wheelchair Seating Adjacent To Stadium Suite 517 Is ADA-Compliant

Plaintiffs incorrectly claim that the wheelchair-accessible seating next to Suite 517 at the Stadium is not Code-complaint. (*See* FAC, Exh.A, ECF 195-1 at 45, Item 1671). They fail to note that the end seat of the upper row of this exterior can be removed if need to become a wheelchair-accessible space. (Blackseth Dec., ¶ 12). The width of that wheelchair seating space is 33 inches, which is fully compliant with the current Code. (*Id.; see also* CBC 1104B.3.6. Summary judgment as to this condition is therefore warranted.

### E. The Countertops In The Main Team Store In The Stadium Are ADA-Compliant

Plaintiffs erroneously contend that the countertops in the Stadium's Main Team Store are not high enough and should include ISA signage. (FAC, Exh. A, ECF 195-1 at 35). All sales counters in this store are no higher than 34 inches above the floor, and are thus ADA-compliant. (Blackseth Dec. ¶ 13). No ISA signage (designating accessible sections of the counters) is required since all of the counters are properly accessible. (*Id.*) In addition, the point of sales machines are 48 inches above the floor to the highest operable part, and are thus ADA-compliant. (*Id.* at ¶ 13). Therefore, these claims should be dismissed on summary judgment.

### F. The Wheelchair-Accessible Seating On The Selected Platform Is ADA-Compliant

Plaintiffs incorrectly assert that the seating space designated for wheelchair seating on this particular platform is not wide enough. (*See* FAC, Exh. A, ECF 195-1 at 12). The space designated for wheelchair seating at this location, marked by painted lines on the ground, is 33 inches wide. (Blackseth Dec. ¶ 14). Both the current (2010 ADAS) and the 1991 ADAAG have identical guidelines for wheelchair seating spaces: 66 inches for double wheelchair spaces, and 33 inches for each individual wheelchair space. Therefore, the wheelchair locations at this platform location are ADA-compliant. Summary judgment dismissing this

-15-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

claim is thus appropriate.

### G. The Forty Niners Defendants' Ticketing Policies And Practices Comply With The ADA

Plaintiffs have conjectured that persons with mobility disabilities or persons on their behalf should be able to exchange tickets for single-day events by contacting Forty Niners personnel by telephone. (FAC, ECF 195 at ¶ 18). This "wouldn't it be nice" contention is not grounded in the requirements of the ADA or its companion regulations and accessibility standards. It is undisputed that (1) the Forty Niners Defendants contract out to Ticketmaster to handle the great majority of ticketing services for events held at Levi's Stadium, (2) Ticketmaster does allow ticket purchases and exchanges by telephone and email, (3) the Forty Niners Defendants do provide for day-of-event purchases and exchanges at the Stadium Box Office, and (4) perhaps most significantly for this issue, treat all single event ticket holders, be they disabled or otherwise, exactly the same with respect to their ability to change the location or type of their seating for Stadium events. That is, *all* such ticket holders, disabled and non-disabled alike, may exchange their tickets in person at the Stadium on event days, on a first-come, first-served basis. *No* single event ticket holder, be he/she disabled or non-disabled, is able to exchange his/her tickets via telephone or online. (Declaration of Cris C. Vaughan ["Vaughan Dec."] ¶ 7). Non-disabled persons are not permitted to purchase wheelchair-accessible seating by falsely representing they are a person with a disability. (*Id.* at ¶ 7).

Therefore, there is no discrimination based on disability whatsoever that can be ascribed to this ticketing policy. The ADA prohibits discrimination based on disability, but does not require the use of any particular technology with regard to ticket exchanges so long as persons with disabilities are not treated any differently than persons without disabilities. (*Id.* at ¶ 7). Plaintiffs' arguments find no support in the law. This claim regarding ticket exchange protocols also should be dismissed on summary judgment.

### IV. CONCLUSION

The Court certified classes related to accessibility of Levi's Stadium. The satellite parking lots and the rights-of-way leading from those parking lots to the Stadium are not part

of the Stadium's accessibility plan, and therefore claims related to those issues should be dismissed. The rights-of-way throughout the City *are not* at issue in this case. Further, because the City of Santa Clara already has taken, and continues to take, affirmative steps to address barriers in all of its rights-of-way, plaintiffs' request for an injunction related to particular rights-of-way near Levi's Stadium is unnecessary and is not grounds to revive Plaintiffs' causes of action regarding alleged barriers in those locations.

The other specific conditions addressed above with respect to signage on two restrooms, the wheelchair accessible seating adjacent to Suite 517 at the Stadium, the countertop heights at the Main Team Store at Gate A in the Stadium, and the dimensions of the wheelchair accessible seating in the outdoor platform, all comply with the ADA and applicable regulations and guidelines. Plaintiffs have raised no genuine issue of material fact or viable legal challenge with respect to any of these conditions. Last, Plaintiffs' criticisms of the Forty Niners' ticketing practices do not describe or amount to any violation of the ADA or the California Unruh Act. These practices unquestionably do not discriminate on the basis of disability, and are not actionable under these laws.

For the reasons set forth above, the Court should enter summary judgment in favor of Defendants on all six of the issues addressed in this Motion.

Dated:  June 20, 2019                                       Respectfully submitted,

                                                            LOMBARDI, LOPER & CONANT, LLP

                                                            By: */s/ Maria L. Lampasona*

                                                            GORDON REES SCULLY MANSUKHANI, LLP

                                                            By:  */s/ Brian P. Maschler*
                                                                  Brian P. Maschler