1   Guy B. Wallace (SBN 176151)
    gwallace@schneiderwallace.com
2   Mark T. Johnson (SBN 76904)
    mjohnson@schneiderwallace.com
3   SCHNEIDER WALLACE COTTRELL
       KONECKY WOTKYNS LLP
4   2000 Powell Street, Suite 1400
    Emeryville, CA 94608
5   (415) 421-7100; (415) 421-7105 (Fax)

6   Linda M. Dardarian (SBN 131001)
    ldardarian@gbdhlegal.com
7   Andrew P. Lee (SBN 245903)
    alee@gbdhlegal.com
8   Katharine L. Fisher (SBN 305413)
    kfisher@gbdhlegal.com
9   GOLDSTEIN, BORGEN, DARDARIAN & HO
    300 Lakeside Drive, Suite 1000
10  Oakland, CA 94612
    (510) 763-9800; (510) 835-1417 (Fax)
11
    Adam B. Wolf (SBN 215914)
12  awolf@pwcklegal.com
    Catherine Cabalo (SBN 248198)
13  ccabalo@pwcklegeal.com
    PEIFFER WOLF CARR & KANE
14  4 Embarcadero Center, 14th Floor
    San Francisco, CA 94104
15  (415) 766-3592; (415) 402-0058 (Fax)

16  *Attorneys for Plaintiffs and the Certified Classes*

17              **UNITED STATES DISTRICT COURT**

18             **NORTHERN DISTRICT OF CALIFORNIA**

19                    **SAN JOSE DIVISION**

| | |
|---|---|
| 20  ABDUL NEVAREZ and PRISCILLA NEVAREZ, on behalf of themselves and all others similarly situated, and SEBASTIAN DEFRANCESCO, | Case No.: 5:16-cv-07013-LHK (SVK) |
| 22       Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| 23  vs. | |
| 24  FORTY NINERS FOOTBALL COMPANY, LLC, a Delaware limited liability company, et al., | Date:      August 29, 2019<br>Time:     2:00 p.m.<br>Dept:      Courtroom 8<br>Before:   Hon. Lucy H. Koh |
| 26       Defendants. | Trial Date:     November 18, 2019 |

27

28

756500.21

# TABLE OF CONTENTS

Page

NOTICE OF MOTION ................................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 3

I.      INTRODUCTION ............................................................................................................ 3

II.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL BACKGROUND ......... 4

    A.      The Defendants and Their Respective Roles .......................................................... 4

    B.      Plaintiffs' Operative Fourth Amended Complaint Identifies Thousands of
       Physical Access Barriers in Levi's Stadium and Its Related Parking and
       Pedestrian Right of Way Facilities That Violate Applicable Federal and
       California Disability Access Design Standards ........................................................ 6

III.    APPLICABLE STANDARDS .......................................................................................... 6

    A.      Summary Judgment ................................................................................................ 6

    B.      The Americans with Disabilities Act ..................................................................... 7

    C.      Unruh Civil Rights Act .......................................................................................... 8

IV.     ARGUMENT ................................................................................................................... 9

    A.      Plaintiffs Are Individuals with Disabilities, and Defendants Are Covered
       Entities Under Both Titles II and III of the ADA ................................................... 9

    B.      The Forty Niners and City Defendants Are Liable Under the ADA and the
       Unruh Act Because the Six Barriers At Issue Violate Federal and State Access
       Standards. ............................................................................................................. 11

        1.      It is undisputed that the selected drink rail at Levi's 501 Club South
           exceeds accessible height limits and does not provide an accessible
           section. ...................................................................................................... 11

        2.      It is undisputed that the dining counter in the Bourbon Pub exceeds
           accessible height limits and does not provide accessible spaces. .............. 12

        3.      It is undisputed that the designated accessible seating for Section 112-
           108 Row 1 has excessive slopes. .............................................................. 13

        4.      It is undisputed that the handrail extensions at the ramp serving the
           designated accessible seating at Sections 112-108 Row 1W are too
           short. ........................................................................................................ 15

    C.      Defendant Forty Niners Management Company LLC Failed and Fails to
       Provide the Number of Accessible Parking Spaces for Levi's Stadium
       Required by Federal and State Disability Access Standards. ................................. 16

    D.      The City Failed to Construct the Selected Curb Ramp in Compliance with the
       1991 ADAAG ...................................................................................................... 20

V.      CONCLUSION .............................................................................................................. 23

756500.21

## __TABLE OF AUTHORITIES__

**Federal Cases**                                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..........................................................................................6, 7

*Barden v. City of Sacramento*,
    292 F.3d 1073 (9th Cir. 2002) ...........................................................................10, 23

*CarePartners LLC v. Lashway*,
    428 Fed. App'x 734 (9th Cir. 2011) .....................................................................7

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................................7

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    779 F.3d 1001 (9th Cir. 2015) ............................................................................7

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
    375 F.3d 861 (9th Cir. 2004) ..............................................................................10, 11

*Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*,
    603 F.3d 666 (9th Cir. 2010) ..............................................................................8

*Kalani v. Starbucks Corp.*,
    81 F. Supp. 3d 876 (N.D. Cal. 2015), *aff'd sub nom. Kalani v. Starbucks Coffee Co.*,
    698 F. App'x 883 (9th Cir. 2017) ........................................................................7

*Kirola v. City & Cty. of San Francisco*,
    860 F.3d 1164 (9th Cir. 2017) ............................................................................8, 21

*Long v. Coast Resorts, Inc.*,
    267 F.3d 918 (9th Cir. 2001) ..............................................................................7

*Lopez v. S.F. Unified Sch. Dist.*,
    No. 3:99-cv-03260-SI, 2004 WL 6061306 (N.D. Cal. Apr. 20, 2004) ............................7

*Moeller v. Taco Bell Corp.*,
    816 F. Supp. 2d 831 (N.D. Cal. 2011) ..................................................................8

*Moeller v. Taco Bell Corp.*,
    No. 4:02-cv-05849-PJH, 2007 WL 2301778 (N.D. Cal. Aug. 8, 2007) .....................7, 8, 9

*Nevarez v. Forty Niners Football Co., LLC*,
    326 F.R.D. 562 (N.D. Cal. 2018) .........................................................................8, 11

*O'Guinn v. Lovelock Corr. Ctr.*,
    502 F.3d 1056 (9th Cir. 2007) ............................................................................7

756500.21

*Oliver v. Ralphs Grocery Co.*,
　654 F.3d 903 (9th Cir. 2011) ....................................................................................8

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
　809 F.2d 626 (9th Cir. 1987) ...................................................................................7

**Federal Statutes**

42 U.S.C.
　§ 12102(1)(A) ..........................................................................................................9
　§ 12132 ....................................................................................................................7
　§ 12182(a) ................................................................................................................8
　§ 12183(a)(1) ...........................................................................................................8
　§ 12201(b) ..........................................................................................................8, 11

**State Statutes**

2010 California Building Code ............................................................................ *passim*

Cal. Gov't Code § 6532(b)(1) ....................................................................................4

Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.*..................................... *passim*

**Rules**

Fed. R. of Civ. P.
　30(b)(6) ..................................................................................................................18
　56(a) ................................................................................................................1, 6, 7

**Regulations**

28 C.F.R.
　§ 35.149 ..................................................................................................................10
　§ 35.151(a) .............................................................................................................21
　§ 35.151(a)(1) ...................................................................................................8, 10
　§ 36.201(a) ..........................................................................................................5, 9

**Other Authorities**

1991 Americans with Disabilties Act Accessibility Guidelines.......................... *passim*

2010 Americans with Disabilities Act Accessibility Standards .......................... *passim*

ADA Best Practices Tool Kit for State and Local Government, Appendices 1 and 2,
　Section D.2 *available at* https://www.ada.gov/pcatoolkit/introapp1and2.htm ...............................21

Title II Technical Assistance Manual § II-1.3000 (Relationship to title III) *available at*
　https://www.ada.gov/taman2.html#II-1.3000...................................................................11

756500.21

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE THAT on August 29, 2019 at 2:00 p.m. in Courtroom 8 of the United

4 States Courthouse at 280 South 1st Street, San Jose, California, Plaintiffs, on behalf of themselves and

5 the certified classes of similarly situated individuals with mobility disabilities and their companions, will

6 and hereby do move this Court under Federal Rule of Civil Procedure 56(a) for an order granting partial

7 summary judgment against Defendants Forty Niners Football Company, LLC; Forty Niners SC Stadium

8 Company, LLC; Forty Niners Stadium Management Company, LLC; Santa Clara Stadium Authority;

9 and/or the City of Santa Clara with respect to six physical access barriers selected by Plaintiffs pursuant

10 to the Court's Case Management Orders (ECF Nos. 328 & 333).  This motion is based upon this Notice;

11 the accompanying Memorandum of Points and Authorities; the accompanying declarations and exhibits;

12 all pleadings and papers on file in this action; and any argument or evidence that may be presented at the

13 hearing of this motion, if a hearing is deemed necessary.

14

**STATEMENT OF ISSUES TO BE DECIDED AND RELIEF SOUGHT**

15

By this Motion, pursuant to Federal Rule of Civil Procedure 56(a), Plaintiffs request that the

16 Court grant partial summary judgment in their favor and enter the following findings against Defendants

17 as final determinations of these issues, not subject to further proceedings in this case:

18

1.      Plaintiffs Abdul Nevarez and Sebastian DeFrancesco are persons with disabilities within

19 the meaning of Titles II and III of the Americans with Disabilities Act of 1990 ("ADA").

20

2.      Defendants Santa Clara Stadium Authority and the City of Santa Clara (together, "the

21 City Defendants") are public entities under Title II of the ADA.

22

3.      Defendants Forty Niners Football Company, LLC; Forty Niners SC Stadium Company,

23 LLC; and Forty Niners Stadium Management Company, LLC (collectively "the 49ers Defendants") are

24 entities that own, lease, or operate Levi's Stadium.

25

4.      Levi's Stadium is a place of public accommodation under Title III of the ADA.

26

5.      Levi's Stadium is a program, service or activity of the City of Santa Clara and the Santa

27 Clara Stadium Authority under Title II of the ADA.

28

6.      Levi's Stadium is a business establishment under the Unruh Act.

1

7.      Defendants Forty Niners Football Company, LLC; Forty Niners SC Stadium Company, LLC; and Forty Niners Stadium Management Company, LLC violated Title III of the ADA; Defendants Santa Clara Stadium Authority and the City of Santa Clara violated Title II of the ADA; and all Defendants violated the Unruh Act by failing to design and construct Levi's Stadium in compliance with applicable disability access standards with respect to the following:

a.      The drink rail at the Levi's 501 Club, which exceeds accessible height limits and does not provide an accessible section (Barrier 1);

b.      The dining counter in the Bourbon Pub, which exceeds accessible height limits and does not provide accessible spaces (Barrier 2);

c.      The designated accessible seating for Section 112-108 Row 1W, which has excessive slopes (Barrier 3); and

d.      The bottom handrail extensions at the ramp serving the designated seating at Sections 112-108 Row 1W, which are too short (Barrier 4).

Plaintiffs also request that the Court enter the following findings against Defendant Forty Niners Management Company LLC as final determinations of these issues, not subject to further proceedings in this case:

1.      Defendant Forty Niners Management Company LLC operates the parking lots that serve Levi's Stadium during events; and

2.      Defendant Forty Niners Management Company LLC violated Title III of the ADA and the Unruh Act by failing to provide the required number of wheelchair accessible car and van parking spaces for Levi's Stadium (Barrier 5).

Plaintiffs further request that the Court enter the following findings against Defendant City of Santa Clara as final determinations of these issues, not subject to further proceedings in this case:

1.      The pedestrian right of way serving Levi's Stadium is a service, program or activity of the City of Santa Clara under Title II of the ADA.

2.      Defendant City of Santa Clara violated Title II of the ADA by failing to newly construct and/or alter the curb ramp at the Northwest corner of the intersection of Democracy Way and Old Ironsides Drive in compliance with slope requirements of the 1991 ADAAG (Barrier 6).

756500.21

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

Levi's Stadium ("the Stadium") opened to the public in 2014.  It hosts approximately ten professional football games each NFL season, as well as college football games, soccer matches, concerts, motocross events, and marquee events, such as the 2016 Super Bowl.  Despite its new construction and the fact that thousands of people with mobility disabilities attend events at the Stadium every year, the Stadium, its related parking facilities, and the pedestrian right of way serving the Stadium are rife with physical and operational barriers that deny full and equal access to persons with mobility disabilities and their nondisabled companions in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.* and California's Unruh Civil Rights Act ("Unruh Act"), Civil Code §§ 51, *et seq.*

Plaintiffs seek partial summary judgment against Defendants Forty Niners Football Company, LLC, Forty Niners SC Stadium Company, LLC, and Forty Niners Stadium Management Company, LLC (collectively, "the 49ers Defendants"), and Defendants City of Santa Clara and Santa Clara Stadium Authority ("the City Defendants") on the six physical access barriers that Plaintiffs selected to litigate through summary judgment and trial (ECF No. 335) pursuant to the Court's orders (ECF Nos. 328, 333). Regarding the Stadium, Plaintiffs seek partial summary judgment against all Defendants under the ADA and the Unruh Act arising from two inaccessible dining and drink surfaces; a ramp on the path of travel to designated wheelchair accessible seating; and the designated "accessible" seating itself.  Plaintiffs also seek partial summary judgment under the ADA and Unruh Act that Defendant Forty Niners Stadium Management Company, LLC, which operates parking for Levi's Stadium, failed to provide the required number of wheelchair accessible parking spaces.  Plaintiffs further seek partial summary judgment against the City of Santa Clara under the ADA for failing to comply with the applicable disability access standard when constructing a curb ramp in the pedestrian right of way that connects a remote parking lot to the Stadium.

The Parties stipulated to the requirements applicable to each of the six alleged physical access barriers selected by Plaintiffs, thus obviating the need for separate analyses under the 2010 ADA Standards ("2010 ADAS"), 1991 ADA Accessibility Guidelines ("1991 ADAAG"), and the 2010

756500.21

California Building Code ("2010 CBC").  *See* ECF No. 341.  The six barriers at issue in this motion clearly and indisputably violate those standards. [1]  As to each physical access barrier, even Defendants' experts either concede the matter or do not meaningfully contest that the barrier violates federal and/or state access standards.  Accordingly, this Court should rule in Plaintiffs' favor, as set forth in the proposed order submitted herewith.

As necessary predicates to the adjudication of the Plaintiffs' six physical access barriers, Plaintiffs also seek findings that Plaintiffs Abdul Nevarez and Sebastian DeFrancesco are persons with disabilities under Titles II and III of the ADA, and that the City Defendants and the 49ers Defendants are covered entities under Titles II and III of the ADA, respectively.

## II.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A.   The Defendants and Their Respective Roles

Defendant Santa Clara Stadium Authority ("Stadium Authority") owns Levi's Stadium.  ECF No. 220 (Defs.' Answer to Pls.' Fourth Am. Compl. ("Answer") ¶ 9).  The Stadium Authority was formed by agreement between Defendant City of Santa Clara ("the City") and the Redevelopment Agency of the City of Santa Clara for "the construction, operation, and maintenance of a stadium and related facilities" "suitable for use by a professional football team …."  Cal. Gov't Code § 6532(b)(1).  The Stadium Authority has "the power to acquire, finance, construct, manage, maintain, and operate a stadium and related facilities."  *Id.*

The City owns the real property on which Levi's Stadium was built and leases the property to the Stadium Authority in exchange for "a fair market rent," *i.e.* fixed ground rent plus additional "performance based rents," including fifty percent of net income from non-NFL events held at the Stadium.  *See* ECF No. 220 (Answer ¶ 9); Lee Decl., Ex. A (Ground Lease at SC00006 (Recitals B-D); SC00015 (§§ 1.93-1.94 defining "Performance Based Rent" and "Performance Based Rent Credits"); and SC00034-7 (Article 4 Rent)). [2]  Then, pursuant to the Stadium Lease Agreement, the Stadium Authority

---

[1] For the Court's convenience, Plaintiffs have attached relevant excerpts of these disability access standards to the Declaration of Andrew P. Lee in Support of Plaintiffs' Motion for Partial Summary Judgment ("Lee Decl.").  *See* Lee Decl. Exs. U (1991 ADAAG); V (2010 ADAS); W (2010 CBC).

[2] The Ground Lease between the City and Stadium Authority also requires the Stadium Authority to oversee the construction of the Stadium pursuant to plans approved by the City (Lee Decl. Ex. A (at SC00040-42 (Article 7 Construction of Improvements)); and to "use the Stadium Site for the development

leases the Stadium, including its ground site and parking spaces, to the Forty Niners SC Stadium Company LLC ("StadCo") for exclusive use during the NFL Game Season and shared use with the Stadium Authority for all other events.  *Id.* Ex. B (Stadium Lease Agreement, SC00194-5, §§ 1.1 & 1.3). The Ground and Stadium Leases define the Forty Niners Stadium Management Company LLC as the "Stadium Manager," which manages and oversees the day-to-day operations of the Stadium and related parking lots.  ECF No. 220, ¶ 9; *see also* Lee Decl. Ex. A (Ground Lease at SC00018); Ex. B (Stadium Lease at SC00224).  Defendants admit that StadCo and Forty Niners Stadium Management Company LLC are the lessee and operator of the Stadium, respectively, within the meaning of the Title III regulations, 28 C.F.R. section 36.201(a).  *See* Lee Decl., Ex. P (49ers Defendants' Responses to RFAs, Set One, at Nos. 19 and 20).

The Forty Niners Football Company LLC ("the Team") leases the Stadium as the "sub-subtenant" on the Ground Lease (between the City and Stadium Authority), Stadium Lease (between Stadium Authority and StadCo), and the Team Sublease (between StadCo and the Team).  Lee Decl. Ex. A (Tenant Recognition Agreement at SC00163-4); Ex. C (Team Sublease, Exhibit to Stadium Lease, at SC00504-505, 514-15); *see also*, *id.*, Ex. A (Ground Lease, SC00020, §§ 1.144-5).

The Santa Clara Stadium Authority, acting pursuant to its contractual arrangements with the City and the Forty Niners Defendants, hired Third-Party Defendant Turner/Devcon to build Levi's Stadium pursuant to a Design-Build Agreement.  *See* ECF No. 119, ¶ 12; *see also* Lee Decl. Ex. A at SC00009 § 1.35 (Ground Lease defining Turner/Devcon as Design-Build Contractor); Ex. B at SC00344 (same for Stadium Lease); *see generally*, ECF No. 316-1, Ex. D (excerpts of Design-Build Agreement, Ex. D to the Decl. of Andrew Lee in Supp. of Pls.' Reply Brief in Further Supp. of First Mot. for Partial Summ. J. ("Prior Lee Reply Decl.")).  Defendants have since filed a Third-Party Complaint against Turner/Devcon.  ECF No. 107.

The pedestrian right of way that leads from the parking lots adjacent to Levi's Stadium to the entrances of the Stadium is a program of the City of Santa Clara.  ECF No. 220 ¶ 9 (Answer admitting that "the City of Santa Clara owns and maintains the pedestrian rights of way connecting Levi's Stadium

and operation of the Stadium for the hosting of NFL Games and other events, including concerts, sporting events" (*i.e.* "Permitted Uses").  *Id.* at SC00038-40 (Article 6, Use of Stadium Site).

1    with the parking lots used for Levi's Stadium events").

2    **B.    Plaintiffs' Operative Fourth Amended Complaint Identifies Thousands of Physical Access Barriers in Levi's Stadium and Its Related Parking and Pedestrian Right of Way Facilities That Violate Applicable Federal and California Disability Access Design Standards.**

3

4    In this certified class action, Plaintiffs' Fourth Amended Complaint alleged more than 2,500

5    physical elements in the Stadium, adjacent parking lots, and pedestrian right of way connecting the

6    parking lots and the Stadium that violate the 2010 ADAS, the 2010 CBC, and the 1991 ADAAG, in

7    addition to illegal policies and procedures regarding ticketing.  *See* ECF No. 195.  Plaintiffs' access

8    experts, who are all architects and/or state-certified access specialists, spent ten days inspecting the

9    Stadium, its related parking facilities, and connecting pedestrian right of way to determine compliance

10   with access standards.  Declaration of Jeffrey Scott Mastin in Supp. of Pls.' Mot. for Summ. J. ("Mastin

11   Decl.") ¶¶ 15-16; Declaration of W. Scott McBrayer in Supp. of Pls.' Mot. for Summ. J. ("McBrayer

12   Decl.") ¶¶ 8-9; Declaration of Gary K. Waters in Supp. of Pls.' Mot. for Summ. J. ("Waters Decl.") ¶¶ 9-

13   10.  Their inspections confirm that the Stadium indisputably has pervasive physical access barriers that

14   violate the 2010 ADAS, the 1991 ADAAG, and the 2010 CBC.  Defendants' experts, Kim Blackseth and

15   Jonathan Adler, and Third-Party Defendants' experts, Ed Roether and Engineer Research Group, also

16   inspected these facilities.  *See* Lee Decl., Exs. E (Blackseth Stadium Report); F (Blackseth Restaurant

17   Report); O (Adler/Puente Peters Report); H (Roether Report); J (ERG Report).

18   Among the hundreds of barriers that are either confirmed or not meaningfully disputed by

19   Defendants' experts are the six physical access barriers that are the subject of this Motion.  These barriers

20   – including a curb ramp with excessive slopes; insufficient accessible parking spaces; an inaccessible

21   dining counter and drink rail; ramp handrails that are too short; and so-called "accessible" wheelchair

22   seating that has excessive slopes – significantly detract from full and equal access to Levi's Stadium by

23   persons with mobility disabilities.

24   **III.    APPLICABLE STANDARDS**

25   **A.    Summary Judgment**

26   Summary judgment is appropriate if the evidence shows that "there is no genuine dispute as to

27   any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

28   Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*,

6

477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  A plaintiff "may move for summary judgment, identifying each claim . . . - or the part of each claim . . . - on which summary judgment is sought."  Fed. R. Civ. P. 56(a).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the initial burden is met, the burden shifts to the nonmoving party to present "*specific facts* showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (emphasis original).  Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of material fact.  *CarePartners LLC v. Lashway*, 428 Fed. App'x 734, 736 (9th Cir. 2011).

Numerous courts have granted partial summary judgment where a plaintiff demonstrated undisputed violations of federal disability access standards.  *See, e.g., Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876 (N.D. Cal. 2015), *aff'd sub nom.  Kalani v. Starbucks Coffee Co.*, 698 F. App'x 883 (9th Cir. 2017); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1010 (9th Cir. 2015); *Long v. Coast Resorts, Inc.*, 267 F.3d 918, 921-24, 926 (9th Cir. 2001); *Moeller v. Taco Bell Corp.*, No. 4:02-cv-05849-PJH, 2007 WL 2301778, at *2-3, *22 (N.D. Cal. Aug. 8, 2007); *Lopez v. S.F. Unified Sch. Dist.*, No. 3:99-cv-03260-SI, 2004 WL 6061306, at *1-3 (N.D. Cal. Apr. 20, 2004).

**B.**    **The Americans with Disabilities Act**

Under Title II of the ADA, which applies to the City Defendants, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To prevail on a discrimination claim under Title II, a plaintiff must show that: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of his disability.  *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007).

Under Title III of the ADA, which applies to the 49ers Defendants and the public

accommodations that they own, lease or operate, including the Stadium and related parking facilities, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citation omitted).

Discrimination under both Titles II and III includes the failure to newly construct or alter facilities to make them "readily accessible to and usable by individuals with disabilities." *See* 42 U.S.C. § 12183(a)(1) (Title III); 28 C.F.R. § 35.151(a)(1) (Title II). A newly constructed facility is "readily accessible" and "useable" by persons with disabilities only if it complies with the applicable accessibility standards adopted by the United States Department of Justice ("DOJ"), including the 1991 ADAAG and the 2010 ADAS, in effect at the time of construction. *Kirola v. City & Cty. of San Francisco*, 860 F.3d 1164, 1177 (9th Cir. 2017). Absent such compliance, "a plaintiff can bring a civil action claiming that the feature constitutes a barrier that denies the plaintiff full and equal enjoyment of the premises in violation of the ADA." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011).

In addition, where state law "provides greater or equal protection for the rights of individuals with disabilities than are afforded by [the ADA]," those greater protections apply. 42 U.S.C. § 12201(b); *Nevarez v. Forty Niners Football Co., LLC*, 326 F.R.D. 562, 578 (N.D. Cal. 2018); *Moeller v. Taco Bell Corp.*, 816 F. Supp. 2d 831, 867 (N.D. Cal. 2011).

## C.   Unruh Civil Rights Act

The Unruh Act guarantees all persons within California, including those with disabilities, full and equal access to the services, facilities, and advantages of public accommodations. Cal. Civ. Code § 51(b). Under California law, all buildings constructed or altered after July 1, 1970 must comply with standards governing the physical accessibility of public accommodations. *Moeller*, 2007 WL 2301778, at *6 (citing Cal. Health & Safety Code §§ 19956 & 19959). Since December 31, 1981, those standards

756500.21

have been set forth in the California Building Code ("CBC"), Cal. Code Regs., tit. 24, pt. 2.  *See Moeller*, 2007 WL 2301778, at *6.  Additionally, a violation of "the right of any individual" under the ADA constitutes a violation of the Unruh Act.  Cal. Civ. Code § 51(f).  Thus, a violation of the Unruh Act may be established through an underlying violation of either the CBC or the ADA.

## IV.  ARGUMENT

**A.  Plaintiffs Are Individuals with Disabilities, and Defendants Are Covered Entities Under Both Titles II and III of the ADA.**

In order to establish their claim under the ADA, Plaintiffs must demonstrate that they are individuals with disabilities within the meaning of Titles II and III, *i.e.* that they are have "a physical impairment that substantially limits" a major life activity.  42 U.S.C. § 12102(1)(A).  Both Plaintiffs Abdul Nevarez and Sebastian DeFrancesco are substantially limited in the major life activity of walking.  ECF No. 139 at 38, ¶ 3, 87 ¶ 4.  This is undisputed. Lee Decl., Ex. P (49ers Defs.' Resp. to Pls.' Req. for Admis., Set One, Nos. 6-7 (Title III)) and Ex. R (City Defs.' Resp. to Pls.' Req. for Admis., Set Two, Nos. 24, 26 (Title II)).  The Court should enter partial summary judgment on the first prong of Plaintiffs' ADA claims under both Title II and Title III.

Additionally, there is no dispute that the 49ers Defendants are private entities that lease, manage and operate Levi's Stadium as a place of public accommodation.  *See supra* Section II.A; *see also* Lee Decl., Ex. P (49ers Defs.' Resp. to Pls.' Req. for Admis., Set One, No. 3 (Levi's Stadium is a public accommodation subject to Title III); and Nos. 19-20 (admitting that StadCo is lessee and Forty Niners Stadium Management Company LLC is operator within the meaning of 28 C.F.R. § 36.201(a))); ECF No. 220, ¶ 9 (Answer; Defendant Forty Niners Stadium Management Company LLC manages and operates the Stadium.); Lee Decl. Ex. A ((Tenant Recognition Agreement at SC00163-4; Forty Niners Football Company is "sub-subtenant").

Defendants also admit that the "parking lots used for Levi's Stadium events" are owned either by the City of Santa Clara or private owners, and that "during Levi's Stadium events, the Forty Niners Management Company LLC operates the parking lots that are owned by the City of Santa Clara [and] also operates other off-site parking lots under the 'Off-Site' Parking Permits issued by the City of Santa Clara."  ECF No. 220 (Answer ¶ 9).  Thus, there is no dispute that Defendant Forty Niners Management Company is the private

756500.21

entity "operator" of Levi's Stadium event parking.  *See*, *supra*, Section III.B.

Similarly, it is undisputed that the City Defendants are public entities under Title II.  Lee Decl., Ex. R (City Defs.' Resp. to Pls.' Req. for Admis., Set Two, Nos. 21 & 22); *see also* ECF No. 220 (Answer ¶ 9).  It is undisputed that Defendant City of Santa Clara owns the real property on which the Stadium is located, leases that property to the Stadium Authority, and contracted with the Stadium Authority to build and operate the Stadium in exchange for ground rent, a portion of event income, and oversight into the Stadium's construction and operation.  ECF No. 220, ¶ 9; Lee Decl., Ex. Q (City Defs.' Resp. to Pls.' Req. for Admis., Set One, No. 19); *see also, e.g.*, Lee Decl. Ex. A (Ground Lease at SC00040-42 (Article 7 Construction of Improvements); SC00038-40 (Article 6, Use of Stadium Site)).  Nor is there any dispute that Defendant Santa Clara Stadium Authority owns the Stadium and contracts with the Forty Niners Defendants to operate it.  ECF No. 220, ¶ 9; Lee Decl., Ex. Q (City Defs.' Resp. to Pls.' Req. for Admis. No. 20); Ex. B (Stadium Lease Agreement at SC00194-5 §§ 1.1 & 1.3).

The Stadium is therefore a service, program or activity of the City and Stadium Authority, and the City Defendants are liable under Title II if the Stadium and related "facilities are inaccessible to or unusable by individuals with disabilities."  *See* 28 C.F.R. § 35.149; *see also id.* § 35.151(a)(1) (Title II applies to "[e]ach facility [newly] constructed by, *on behalf of*, or for the use of a public entity") (emphasis added); *accord Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) ("[W]e have construed 'the ADA's broad language [as] bringing within its scope 'anything a public entity does.''") (citation omitted); *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 882 (9th Cir. 2004) ("[A] public entity acting as a landlord to a public accommodation is subject to title II, and . . . '[a]s a public entity, it cannot be subject to title III, even though its tenants are public accommodations covered by title III'") (quoting Title II Technical Assistance Manual, at III-1.7000)).

Furthermore, there can be no dispute that the pedestrian right of way that serves the Stadium is a program of Defendant City of Santa Clara.  *See Barden*, 292 F.3d at 1076-77; *see* ECF No. 220 ¶ 9 (Answer admits that "the City of Santa Clara owns and maintains the pedestrian rights of way connecting Levi's Stadium with the parking lots used for Levi's Stadium events").  Partial summary judgment should therefore be granted on the second prong of Plaintiffs' claims under ADA Titles II and III.

**B.**    **The Forty Niners and City Defendants Are Liable Under the ADA and the Unruh Act Because the Six Barriers At Issue Violate Federal and State Access Standards.**

Levi's Stadium is subject to Titles II and III of the ADA,[3] as well as the Unruh Act, because it is a private entity's place of public accommodation; a public entity's program, service or activity; and a business establishment.  *See Nevarez*, 326 F.R.D. at 575.  As such, Defendants were required to construct it to comply with applicable federal and/or state accessibility standards, whichever provides greater access.  *See* 42 U.S.C. § 12201(b); *Nevarez*, 326 F.R.D. at 578.  With regard to the four Stadium barriers at issue in this motion, it is undisputed that Defendants failed to do so.

There is no dispute that the Stadium is subject to the 2010 edition of the California Building Standards Code.  Lee Decl., Ex. P & Q (Defs.' Resp. to Pls.' Req. for Admis., Sets One, No. 5 for each). And although the Parties disagree as to whether the Stadium is subject to the 2010 ADAS or the 1991 ADAAG, the Court need not resolve that dispute now because the accessibility requirements applying to the barriers in this motion are the same.  *See generally*, ECF No. 341 at 2-4 (Parties' stipulation that access requirements applicable to Plaintiffs' six selected barriers do not change depending on which access standards apply, whether they be the 1991 ADAAG, the 2010 ADAS, or the 2010 CBC). Plaintiffs' and Defendants' access experts agree that the barriers presented in this motion are out of compliance with any potentially applicable requirement.  Accordingly, the Court should enter partial summary judgment that these conditions violate the rights of visitors with mobility disabilities and their companions to full and equal access to Levi's Stadium under the ADA and the Unruh Act.

**1.**    **It is undisputed that the selected drink rail at Levi's 501 Club South exceeds accessible height limits and does not provide an accessible section.**

Levi's Stadium has numerous counter-like surfaces that the design plans refer to as "drink rails." At the Levi's 501 Club, which is located near the 50-yard line on the 400 Level of the Stadium, a glass-

---

[3] DOJ guidance supports Plaintiffs' interpretation: Where public and private entities "engage in a joint venture … to build a new professional sports stadium … the new stadium would have to be built in compliance with the accessibility guidelines of both titles II and III."  Title II Technical Assistance Manual § II-1.3000 (Relationship to title III) *available at* https://www.ada.gov/taman2.html#II-1.3000; *see also Disabled Rights Action Comm*, 375 F.3d at 882 ("[A] public entity acting as a landlord to a public accommodation is subject to title II, and . . . '[a]s a public entity, it cannot be subject to title III, even though its tenants are public accommodations covered by title III'") (quoting Title II Technical Assistance Manual, at III-1.7000)).

1    top drink rail is positioned on the Club's exterior patio to allow Club patrons to switch from watching the

2    game on televisions inside to enjoying live views of the field while still having a surface on which to

3    place their food or drinks.  *See, e.g.*, McBrayer Decl., Ex. B (photographs depicting Levi's 501 Club

4    drink rail).

5         The Parties agree that under any potentially applicable building code, the drink rails must (1)

6    measure between 28 inches and 34 inches maximum above the finished floor [*see* 2010 ADAS § 902.3;

7    2010 CBC § 1122B.4; 1991 ADAAG § 4.32.4], and (2) the accessible section of the dining surface must

8    allow for forward approach, including knee clearance at least 27 inches high, 30 inches wide, and 19

9    inches deep [*see* 2010 ADAS § 306.3; 2010 CBC § 1122B.4; 1991 ADAAG § 4.32.4].  *See* ECF No. 341

10   at 3-4 § 3.b (Stipulation Regarding Alleged Barriers Selected for First Trial).[4]

11        Defense expert Blackseth found that the drink rail at the Levi's 501 Club South (and North)

12   measured forty-two (42) inches high and eight (8) inches deep.  Lee Decl. Ex. E (Blackseth Stadium

13   Report at 32-33 & Fig 3.8A (picture of drink rail), Dep. Ex. 522 at Blackseth_43-44); Lee Decl. Ex. D

14   (Blackseth Dep. 124:25-126:1) (confirming non-compliant condition); *cf.* McBrayer Decl. ¶ 16

15   (measuring same drink rail at 43.5 inches high).  Whether the drink rail exceeds the maximum height

16   by eight or ten inches, experts for both Plaintiffs and Defendants agree that the drink rail is too high

17   and fails to provide the lowered section required by all standards, which deprives individuals with

18   mobility disabilities a full and equal Levi's 501 Club experience.  The Court should therefore grant

19   Plaintiffs summary judgment on this barrier.

20        **2.    It is undisputed that the dining counter in the Bourbon Pub exceeds accessible**
21            **height limits and does not provide accessible spaces.**

22        The Bourbon Steak & Pub restaurants offer Levi's Stadium visitors the experience of enjoying

23   Michael Mina's award-winning cuisine while attending Stadium events.  However, at Bourbon Pub

24   (the more casual, less expensive choice), the dining "counter seating facing the window" lacks any

25   _____

26   [4] Plaintiffs contend that approximately twenty (20) drink rails and dining counters at the Stadium violate
     these requirements, but are only moving on one drink rail and one dining counter herein.  *See* Lee Decl.
27   ¶ 3; *see also* ECF No. 288-1 (Prior Lee MPSJ Decl. at 65-69 (Barrier Nos. 178-197)).  Moreover, the
     height requirement also applies to other dining surfaces, like tables, and Plaintiffs previously moved for
28   summary judgment that 177 tables at the Stadium were higher than 34" from the finished floor.  *See* Lee
     Decl. ¶ 3; *see also*. ECF No. 288-1 (Prior Lee MPSJ Decl. Ex. D) at pp. 38-64 (Barrier Nos. 1-177).

accessible section.  *See* Lee Decl. Ex. F (Blackseth Restaurant Report at 10 & Fig. 1.5, Dep. Ex. Ex. 522 at Blackseth_114).

The Parties agree that the Bourbon Pub dining counter must have a lowered portion that does not exceed 34 inches above the finished floor.  *See* ECF No. 341 at 3-4 § 3.b (Stipulation Regarding Alleged Barriers Selected for First Trial).  The 2010 ADAS, 1991 ADAAG and 2010 CBC all mandate a 34-inch maximum height.  *See* 2010 ADAS § 902.3; 2010 CBC § 1122B.4; 1991 ADAAG § 4.32.4. Plaintiffs' expert Waters measured the dining counter at 42-1/2 inches high, whereas Defendants' expert Blackseth measured it at 42 inches.  *See* Waters Decl. ¶ 28 & Ex. D (Photos 4318 thru 4324); Lee Decl. Ex. F (Blackseth Restaurant Report at 10 & Fig. 1.5, Dep. Ex. 522 at Blackseth_114); *id.* Ex. D (Blackseth Dep. 152:8-153:6) (confirming non-compliant condition).  Thus, there is no dispute that the Bourbon Pub dining counter lacks an accessible section and is much higher than permitted. Summary judgment on this barrier is appropriate.

### 3. It is undisputed that the designated accessible seating for Section 112-108 Row 1 has excessive slopes.

Unfortunately for Levi's Stadium visitors with mobility disabilities, having a ticket to sit in a designated "accessible" section is no guarantee of accessibility because many such sections, including the field-level seating Section challenged here, have excessive slopes in both the access aisles and the wheelchair seating spaces themselves.[5]  The slopes in the accessible seating—both the seating areas and accompanying aisle—for Section 112-108 Row 1 are so severe that they undisputedly violate all three disability access standards, even accounting for Defendants' asserted construction tolerances.

The CBC requires that surface slopes at wheelchair seating spaces be "level."  2010 CBC § 1104B.3.4; *see also* ECF No. 341 at 3 ¶ 2.a (Parties' stipulation that the "2010 CBC and 1991 ADAAG require that accessible seating spaces 'be level.'").  The ADAS provides a lesser degree of protection for persons with mobility disabilities, and therefore is not the governing standard for accessible seating

---

[5] Plaintiffs contend that there are excessive slopes in eight (8) of the wheelchair seating spaces and seven (7) of the access aisles in other designated accessible seating sections throughout the Stadium. Lee Decl. ¶ 4.  Plaintiffs previously moved for partial summary judgment regarding the slopes in four seating spaces and five access aisles.  *Id.*; *see also* ECF No. 288-1 (Prior Lee MPSJ Decl. Ex. D at p. 72 (Barrier Nos. 206-209 (seating spaces)) and p. 73 (Barrier Nos. 210-15 (access aisles)).

1    locations in Levi's Stadium.  *See* ADAS 802.1.1 (permitting seating-space slopes up to 1:48 (2.1%) at

2    the steepest point).  Although Plaintiffs contend that the 1991 ADAAG does not apply to Levi's Stadium,

3    it is important to note that, like the 2010 CBC, the 1991 ADAAG requires that wheelchair seating spaces

4    be "level."  1991 ADAAG § 4.33.4; *see also* ECF No. 341 at 3 ¶ 2.a (Parties' stipulation).

5         Whereas the *seating spaces* must be "level" under the 2010 CBC and 1991 ADAAG, all three

6    standards allow for some slope in the "access aisle," or the area immediately behind the seating spaces

7    used to access them.  (This difference makes sense: the access aisle is a path of travel, whereas a seating

8    space, in order to be equal to a seat, should allow a wheelchair user to be stationary.)  As to these paths of

9    travel, the 2010 CBC and the 1991 ADAAG prohibit surface cross slopes (*i.e.* slopes perpendicular to the

10   direction of travel) that exceed 1:50 (2.0%), and the 2010 ADAS allows cross slopes up to 1:48 (2.1%).

11   *See* 2010 CBC § 1133B.7.1.3; 1991 ADAAG § 4.3.7; 2010 ADAS § 403.3.  Again, the 2010 CBC is the

12   more protective, and thus the governing standard for the slope of the access aisles.

13        The slight differences between the standards described above make no difference here because

14   the slopes in both the seating spaces and access aisle for Sections 112-108 Row 1W violate all three

15   standards, even accounting for the construction tolerances advanced by Defendants' experts'.  *See* Lee

16   Decl. Ex. D (Blackseth Dep. Dep. 105:16-106:24) (applies one percent tolerance for all slopes); *see also id.*

17   Ex. H, (Roether report at 3) (applying "3% for 1:48 maximum, up to 6% for 1:20 maximum and then up to

18   9% for 1:12 maximum").   It is undisputed that the designated accessible seating locations for Sections

19   112-108 Row 1W are not level and have significant slopes.  Plaintiffs' expert Gary Waters measured

20   severe slopes up to 5.3% in the wheelchair seating spaces and up to 5.4% in the access aisles.  Waters

21   Decl. ¶¶ 21, 23.

22        Defendants' expert agrees that the designated accessible seating locations contain non-compliant

23   slopes.  Defendants' expert confirms that the slopes in the wheelchair seating spaces in this Section

24   exceed the 2.0% and 2.1% maximums, measuring slopes "between 3.2% to 3.7%," and finding that

25   "[t]he path of travel behind the accessible seating [*i.e.* the access aisle] has cross slopes up to 3.7% due to

26   the drains."  Lee Decl. Ex. E (Blackseth Stadium Report at 23-4, Dep. Ex. 522 at Blackseth_34-35); *see*

27   *also id.* Ex. D (Blackseth Dep. at 110:23-112:24 (confirming excessive slopes in seating spaces); 111:21-

28   113:3 (confirming excessive slopes in access aisles)); *accord id.* Ex. J (ERG Report at sec. 1, para. 7)

756500.21

(Third-Party Defendant's Expert found that "[a]cheiving positive slope to drain has affected levelness within this area.  Multiple measurements were document[ed] in excess of 3.0%.").  Even if a 1:50 (2.0%) slope allowance were applicable to the seating spaces—as opposed to the "level" requirement set forth by the 2010 CBC—Defendants' experts' measurements exceed that requirement *and* the construction tolerance that they contend should apply.  *See generally*, Lee Decl. Ex D (Blackseth Dep. 105:16-106:24) (one-percent tolerance for all slopes); *id.* Ex. H, (Roether report at 3, applying "3% for 1:48 maximum").

Accordingly, applying any of the three standards, there is no dispute that the "accessible seating" at Sections 112-108 Row 1W is not accessible due to the excessive slopes in the access aisle and seating spaces.  These excessive slopes can ruin class members' experiences at the Stadium, as class member Rebecca Fortelka described in regard to a different designated-accessible seating section at the Stadium: "The floor beneath my seat was very sloped, and I kept feeling like I was going to fall forward out of my wheelchair . . . .  We tightened my seatbelt and back brace to try to help, but we had to tighten it all the way which is very painful.  We decided it was better for me to be in pain instead of risking me falling out of my chair."  ECF No. 139 at 53 (Ex. J, Fortelka Class Cert. Decl., ¶ 16).  The Court should therefore enter summary judgment on this barrier.

### 4. It is undisputed that the handrail extensions at the ramp serving the designated accessible seating at Sections 112-108 Row 1W are too short.

The designated accessible seating at Sections 112-108 Row 1W, described above, can be accessed only via a ramp.  However, that ramp has bottom handrails that do not extend the full required length before returning to the wall, meaning that class members who rely on the handrails for assistance are forced to traverse part of the ramp landing without the benefit of the required handrail.

The ADAAG, 2010 CBC, and ADAS each require that ramp handrails extend 12 inches beyond the top and bottom of the ramp.  *See* 1991 ADAAG § 4.8.5(2); 2010 CBC § 1133B.5.5; 2010 ADAS § 505.10.1; *accord* ECF No. 341 at 5 § 4.b (Parties stipulated that "requirements regarding this barrier are the same across the 2010 CBC, 1991 ADAAG, and 2010 ADAS. . . .  Handrails must extend 12 inches beyond the top and bottom of ramps . . . .").[6]  At the ramp to the designated accessible seating at Sections

---

[6] Plaintiffs contend that five (5) ramps throughout the Stadium violate these requirements, and previously moved for summary judgment on three (3) of them.  *See* Lee Decl. ¶ 5; *see also* ECF No.

1  112-108 Row 1W, however, the ramps' bottom handrails extend only approximately eight (8) inches

2  before starting the return.  Waters Decl. ¶ 25.  Though measuring a ten-inch extension, Defendants'

3  access expert agrees that the bottom handrail extensions in this location do not comply with the 12-inch

4  standard and need to be fixed.  Lee Decl., Ex. E (Blackseth Stadium Report at 21-22, Dep. Ex. 522 at

5  Blackseth_32-33); Ex. D (Blackseth Dep. at 110:10-102:13) (confirming non-compliant condition).  In

6  other words, under any expert documented measurement, the bottom handrail extension violates the

7  ADA and CBC.  The Court should enter summary judgment on this barrier.

8  **C.**   **Defendant Forty Niners Management Company LLC Failed and Fails to Provide the Number of Accessible Parking Spaces for Levi's Stadium Required by Federal and State**

9  **Disability Access Standards.**

10       The obligation to provide a minimum amount of wheelchair accessible parking for Levi's

11  Stadium is the same under the 2010 ADAS, the 1991 ADAAG and the 2010 CBC.  *See* ECF No. 341 at

12  4-5 §§ 5b-c (Stipulation Regarding Alleged Barriers Selected for First Trial).  Under each of these

13  standards, the minimum number of required *accessible* parking spaces is based on the number of

14  parking spaces in each parking lot or facility serving the stadium, according to the following formula:

| Total Number of Parking Spaces Provided in Parking Facility | Minimum Number of Required Accessible Parking Spaces |
| --- | --- |
| 1 to 25 | 1 |
| 26 to 50 | 2 |
| 51 to 75 | 3 |
| 76 to 100 | 4 |
| 101 to 150 | 5 |
| 151 to 200 | 6 |
| 201 to 300 | 7 |
| 301 to 400 | 8 |
| 401 to 500 | 9 |
| 501 to 1000 | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 |

288-1 (Prior Lee MPSJ Decl. Ex. D) at p. 70 (Barrier Nos. 201-203).  Plaintiffs further note that there are three (3) stairs with handrails that violate similar requirements for stair handrails that the Parties stipulated to.  *See* Lee Decl. ¶ 5; *see* ECF No. 341 at 5 § 4.b (stipulating to stair handrail requirements).

16

756500.21

1    *See* ECF No. 341 at 5 (stipulated requirements); *see also* 2010 ADAS § 208 Table 208.2; 1991

2    ADAAG § 4.1.2(5)(a); 2010 CBC § 1129B.1, Table 11B-6.

3          Where more than one parking lot or structure serves the facility, as is the case with Levi's

4    Stadium, the number of accessible spaces required is calculated based on the number of spaces in each

5    parking lot or structure, not on the total number of spaces provided in all of them combined.  2010

6    ADAS § 208.2, Advisory 208.2; *see also* 2010 CBC § 1129B.1 ("*Each lot or parking structure* where

7    parking is provided . . . shall provide accessible parking as required by [Table 11B-6]."); 1991

8    ADAAG 4.1.2(5)(a) ("If parking spaces are provided . . . , then accessible spaces . . . shall be provided

9    in *each such parking area* in conformance with the table below.")) (emphasis added).  However, the

10   required number of accessible spaces for each parking lot need not actually be located in that lot.  They

11   may be provided in different lots if equivalent or greater accessibility is provided in terms of distance

12   from an accessible entrance or entrances, parking fee and user convenience.  2010 ADAS § 208.3.1,

13   Exception 2; 1991 ADAAG § 4.1.2(5)(a); *see also* 2010 CBC § 1102B (equivalent facilitation).

14         Defendants provide parking for patrons of Levi's Stadium through a combination of one large

15   parking facility adjacent to the Stadium (referred to alternatively as "Red Lot 1 and Green Lot 1" or the

16   "Main Lot") and multiple publicly or privately-owned "off-site," "remote" or "satellite" lots secured

17   for that purpose through agreements with the lot's owner.  *See* ECF No. 282 at 6 (Defs' prior Mot. for

18   Partial Summ. J. explaining that Transportation Management Operations Plan (the "TMOP")

19   contemplates the use of the main lot and various public and private lots near the Stadium because the

20   Stadium could not accommodate all parking in immediate proximity to Stadium's entrances); *see also*

21   ECF No. 284 at ¶ 5 (Declaration of Jim Mercurio in Support of Defendants' prior Motion for Partial

22   Summ. J.); ECF No. 283 (Declaration of Maria Lampasona in Support of Defendants' prior Motion for

23   Partial Summ. J. ("Lampasona Decl."), Ex. 1 (Ng Dep. at 113:18-114:11, 119:18-124:20); *id*. Ex. 2

24   (Riley Dep. at 36:21-38:23); *id*. Ex. 3 (Tran Dep. at 99:15-102:5)); ECF No. 286 ¶ 3, Ex. 1

25   (Defendants' Request for Judicial Notice in Support of prior Motion for Partial Summ. J.).

26         Many documents produced in this case indicate that Defendants intended to make off-site

27

28

parking lots available to persons with mobility disabilities.[7]  However, confronted in this case with

allegations that those lots lack compliant designated accessible spaces and that the pedestrian rights of

way between those lots and the Stadium are inaccessible, Defendants have taken the position that they

provide *all* of the required accessible spaces in the Main Lot and none in off-site lots—an approach to

which Defendants refer as "clustering."  *See* ECF No. 282 (Defendants' prior Motion for Partial

Summ. J.) at 4 ("all spaces designated for people with disabilities are in the Main Lot"); *id.* at 5 ("all

accessible parking is in the Main Lot"); *id.* at 7 ("*all* accessible parking for Levi's Stadium is

"clustered" in the Main Lot") (emphasis and quotes in original), ("Levi's Stadium does not *designate*

any other accessible parking spots for use during events at the Stadium") (citing Lampasona Decl. Ex.

1 (Ng Dep. at 478:2-16, 128:7-18 252:17-254:16, 288:14-291:17); *id.* Ex. 4 (7/25/2018 Dep. of James

Mercurio, at 13:14-24); ECF No. 286 (Defs.' RJN ¶ 3, Ex. 1; ¶ 4, Ex. 2)).  Accordingly, Defendants'

compliance or lack of compliance with its accessible parking obligation must be based on the number

of accessible spaces provided in the Main Lot.

Applying the above-described method of calculation for required accessible spaces to the

information Defendants provided in discovery about the number of spaces in each lot, 282 accessible

spaces must be provided in the Main Lot in order for Defendants to satisfy their accessible parking

obligations through their "clustering approach."  The following table illustrates this calculation.[8]

| Lot Designation | Location by Address | Number of Spaces | Required Accessible Spaces | Basis for Calculation[9] |
|---|---|---|---|---|
| Blue Lot 1 | 3050 Democracy Way | 5,065 | 61 | 20 + (4065/100) |

---

[7] *See* ECF No. 301-1 (Declaration of Andrew Lee in Opposition to Defendants' prior Motion for Partial Summ. J. ("Prior Lee Opp'n Decl.") at Exs. A (TMOP at 98-99, 107); B (Riley Dep. at 37:15-39:16); C (event day parking notes for 46 events identifying the lots being used for a particular event and stating that "ADA must be allowed into every lot"); Ex. D (parking permit applications submitted to City by Forty Niners require that the number of "ADA spaces" be identified, which the Forty Niners provided); Ex. E (referencing "ADA shuttles" that provide transportation from Blue Lot 1 to the entrance of Levi's Stadium)).

[8] The information in the first three columns of this table is derived from a chart produced by Defendants, which was marked as Deposition Exhibit 226 and authenticated by Defendants' Rule 30(b)(6) parking witness, James Mercurio. *See* Lee Decl. ¶¶ 17-18, Exs. K & L.  Mr. Mercurio's testimony regarding the various columns appearing in Exhibit 226 can be found in Lee Declaration Exhibit K at 29:17-31:16; 34:4-18, 35:1-11, 43:15-45:7, 48:20-49:24.

[9] Where this calculation resulted in a fraction, the result is rounded up, as required by 2010 ADAS section 104.2.

756500.21

| Lot Designation | Location by Address | Number of Spaces | Required Accessible Spaces | Basis for Calculation[9] |
|---|---|---|---|---|
| Main Lot | Great America Parking Lot | 5,892 | 69 | 20 + (4892/100) |
| Green Lot 2 | 4988 Great America Parkway | 1,400 | 24 | 20 + (400/100) |
| Green Lot 3 | 4633 - 99 Old Ironsides Drive | 716 | 15 | 2% of Total |
| Green Lots 4 & 5 | 3000 Mission College Blvd. | 2,229 | 33 | 20 + (1,229/100) |
| Purple Lot 3 | 4559 Great America Parkway | 963 | 20 | 2% of total |
| Red Lot 3 | 5200 Great America Parkway | 507 | 11 | 2% of total |
| Red Lot 4 | 5100 Patrick Henry Drive | 769 | 16 | 2% of total |
| Red Lot 7 | 5451 Great America Parkway | 600 | 12 | 2% of total |
| Yellow Lots 1,2,3 | Tasman Drive Lots & Garage | 1,008 | 21 | 20 + (8/100) |
| TOTAL: | | 19,149 | 282 | Sum of column |

It is undisputed that the Main Lot contains only 198 designated accessible spaces, far fewer than the 282 required by both the federal standards and the 2010 CBC.[10]  *See* Lee Decl. Ex. K (Mercurio July 25, 2018 Dep. at 48:20-49:24 (Forty Niners designate spaces in Main Lot); 65:14-67:16 (198 spaces currently, and Defendants calculated 12 more needed); *see also id.* Ex. L.  Equally undisputed is the fact that Defendants have designated no (zero) accessible spaces in any of the other lots for Levi's Stadium event use.  *Id.*; *see also* ECF No. 282 at 4-7 (and evidence cited above).  Class members confirm that there were too few designated accessible parking spaces for them to park in the Main Lot during events at the Stadium.[11]  For example, accessible seating season ticket holder Rodger Robinson testified that he was assigned to park on grass at the Santa Clara Golf and Tennis Club

---

[10] Although Defendants asserted that there were plans to add an additional 12 accessible parking spaces to this lot by August of 2018 through a re-striping project, there is no evidence that this project was ever undertaken, and Defendants have not supplemented their discovery responses or document production to establish any such change in the Main Lot's configuration.  And even if those additional spaces were provided, it would still fall far short of the required 282 accessible spaces.

[11] ECF No. 139 (App. of Class Cert. Decls.), Ex. A (p. 6-7, Decl. of Frishtah Afifi, ¶¶ 7-9 (no accessible spaces in main lot, re-assigned to uneven dirt and gravel lot)); Ex. D (pp. 21-22, Decl. of Melanie Casas, ¶ 5 (no accessible spaces available in main lot)); Ex. K (p. 57, Decl. of Barry Flores, ¶ 5 (often finds not enough accessible spaces, even if hours early)); Ex. R (p. 108, Decl. of Amy Nelson, ¶ 4 (no accessible spaces available in main lot)); Ex. T (p. 117, Decl. of Antonio Quistian, ¶ 4 (directed to remote gravel lot)); Ex. U (pp. 121-2, Decl. of Rodger Robinson, ¶¶ 5, 7-8 (season ticket holder assigned space in remote lot; when eventually assigned main lot space, too few accessible spaces)); Ex. X (p. 139, Decl. of Sherman Spears, ¶ 5 (no accessible spaces available in main lot)); Ex. BB (p. 155, Decl. of Debbie Veazey, ¶ 6 (same)); Ex. CC (p. 160, Decl. of Robert Veazey, ¶ 3 (same)); Ex. DD (p. 165, Decl. of Doreen Walker, ¶¶ 4-5 (told accessible parking sold out and directed to dirt parking lot 1.5 miles away from Stadium entrance)).

despite requesting accessible parking through an accessibility questionnaire.  ECF No. 139 at 121-22

(Declaration of Roger Robinson ¶¶ 5, 7-8).  In another example, Class Member Frishtah Afifi testified

that she purchased an accessible parking pass and arrived at the Main Lot an hour-and-a-half before the

event.  *Id.* at 6-8 (Declaration of Frishtah Afifi, ¶¶ 7-9).  All of the accessible parking stalls in the Main

Lot were taken, so she and her 90-year old father were required to park on a dirt and gravel surface in

an off-site lot.

Because Defendants have failed to provide the minimum level of required accessible parking

spaces for Levi's Stadium, summary judgment should be entered in favor of Plaintiffs on this issue.[12]

**D.**     **The City Failed to Construct the Selected Curb Ramp in Compliance with the 1991 ADAAG.**

The curb ramp at the Northwest corner of the intersection of Democracy Way and Old

Ironsides Drive is on the path of travel connecting remote parking lots to the Stadium.  It is near Blue

Lot 1, where Defendants allow the use of accessible parking spaces and provide "ADA" shuttle

services.  *See generally* Mastin Decl. Ex. C (expert map of pedestrian right of way, showing selected

curb ramp (Seq. 509) at intersection of Democracy Way and Old Ironsides Drive, leading away from

Blue Lot 1 toward Stadium); *see also* ECF No. 301-1, Prior Lee Opp'n Decl. Ex. C ((Parking Lot

Notes for events at Levi's Stadium describe ADA services in Blue Lot 1, including that "ADA patrons

can pay cash in this lot to take advantage of the shuttle."); *id.* Ex. E ("Parking and Transportation

Operations" document which on FN01259 and FN01261 references "ADA shuttles" that provide

transportation from Blue Lot 1 to the entrance of Levi's Stadium, authenticated at ECF No. 301-1,

Prior Lee Opp'n Decl. Ex. B).  The slopes of this curb ramp clearly and indisputably violate the

applicable legal standard.

As discussed in Section III.B, above, all facilities built by a government entity on or after

January 26, 1992 must be designed and constructed such that "the facility or part of the facility is

---

[12] Because of the disparity between the required number of accessible spaces and the number Defendants purport to provide, this Court can find Defendants liable for violating the ADA and Unruh Act without having to consider whether the designated spaces in the Main Lot comply with the requirements of an accessible parking space under ADAS section 502, 1991 ADAAG section 4.6 and 2010 CBC section 1129B.3 or whether parking in the Main Lot provides equal or greater access in terms of convenience and cost.

756500.21

readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.151(a). To comply with this mandate, public entities must adhere to binding access regulations issued by the United States Department of Justice. *Kirola*, 860 F.3d at 1176. Under Ninth Circuit precedent, these accessibility standards "apply to public rights-of-way," including curb ramps. *Id.* at 1179.

The Parties stipulate that the curb ramp in question is subject to the 1991 ADAAG, based on their "agreement that the selected curb ramp 'was constructed or altered after July 26, 1992' in their October 8, 2018 Stipulation of Facts Regarding PROW Construction or Alteration Dates (No. 36)." *See* ECF No. 341 at 2 § 1.a (Stipulation Regarding Alleged Barriers Selected for First Trial); *see also* Lee Decl. Ex. M (parties' construction-date stipulation). The running, counter, and side flare slopes of this curb ramp far exceed the slope requirements of the 1991 ADAAG, even accounting for the construction tolerances advanced by Defendants' experts. *See* Lee Decl. Ex. D (Blackseth Dep. 105:16-106:24); *see also* Ex. H, (Roether report at 3) (applying "3% for 1:48 maximum, up to 6% for 1:20 maximum and then up to 9% for 1:12 maximum"). They also violate the 2010 CBC and 2010 ADAS, which set forth the same requirements as the 1991 ADAAG.[13] *See* Mastin Decl. ¶¶ 26-28.

First, the running slope of the curb ramp, or the slope in the direction of travel of the ramp, may not exceed 1:12 (or 8.33%) plus conventional industry tolerances.[14] ECF No. 341 at 2-3 ¶ 1.b (Stipulation); 1991 ADAAG §§ 4.7.2 & 4.8.2. Defendants' experts would apply a 0.67% tolerance and allow a slope up to 9% here. *See* Lee Decl. Ex. D (Blackseth Dep. 105:16-106:24); *see also* Ex. H, (Roether report at 3). Plaintiffs' expert Mastin measured the running slope of this curb ramp to be 14.7% across the curb face. *See* Mastin Decl. ¶ 26. Defendants' expert Adler agreed that the running slope of this curb ramp failed to comply with the 1991 ADAAG. Lee Decl. Ex. O (Adler Rebuttal

---

[13] Whether a curb ramp's slopes comply with applicable access standards depends on the measurement at the steepest point, rather than the average slope. *See generally* ADA Best Practices Tool Kit for State and Local Government, Appendices 1 and 2, Section D.2 available at https://www.ada.gov/pcatoolkit/introapp1and2.htm (proper slope measuring technique requires "measuring where the running slopes appear steepest and where the cross slopes appear steepest."); *see also Kirola*, 860 F.3d at 1181 (concluding that the ADA Best Practices Tool Kit is entitled to "significant weight" and "for a mobility-impaired user like Kirola, it is the steepest point—not the average steepness—that determines whether a particular ramp is accessible").

[14] Plaintiffs contend that forty-eight (48) curb ramps have excessive running slopes, twenty-nine (29) of which were subject to Plaintiffs' prior motion for summary judgment. *See* Lee Decl. ¶ 6; *see also* ECF No. 288-1 (Prior Lee MPSJ Decl. Ex. D) at pp. 184-190 (Barrier Nos. 738-766).

1   Report at p. 39, Street # 5, Item # 509, COD B03, concluding that the curb ramp exceeds the running

2   slope maximum of the 2010 ADAS, 2013 CBC & 1991 ADAAG); *see also id.* Ex. N (Adler Dep. at

3   44:3-13, authenticating Dep. Ex. 597 (PDF version of Mr. Adler's Report)).  Thus, the running slope of

4   this curb ramp far exceeds "1:12 (or 8.33%) plus conventional industry tolerances."  *Cf.* ECF No. 341

5   at 2-3 ¶ 1.b (stipulated requirements).

6        Second, the counter slopes of adjoining gutters and road surfaces immediately adjacent to curb

7   ramps may not exceed 1:20 (5%).[15]  ECF No. 341 at 2-3 ¶ 1.b (Stipulation); 1991 ADAAG § 4.7.2.

8   Defendants' experts would apply a one-percent tolerance and allow a slope up to 6% here.  *See* Lee

9   Decl. Ex. D (Blackseth Dep. 105:16-106:24); *see also* Ex. H, (Roether report at 3).  Plaintiffs' expert

10  Mastin found that the counter slopes of adjoining gutters and road surfaces immediately adjacent to

11  and within 24 inches of the curb ramp measured 10.4%.  *See* Mastin Decl., ¶ 27.  And Defendants'

12  expert Adler agreed that the counter slopes of this curb ramp fail to comply with the 1991 ADAAG (or

13  the 2010 ADAS or 2013 CBC).  Lee Decl. Ex. O (Adler Rebuttal Report at p. 40, Street # 5, Item #

14  509, COD B11); *see also id.* Ex. N (Adler Dep. at 44:3-13, authenticating Dep. Ex. 597 (PDF version

15  of Mr. Adler's Report)).  Thus, the running slope of this curb ramp far exceeds "1:20 (or 5%) plus

16  conventional industry tolerances."  *Cf.* ECF No. 341 at 2-3 ¶ 1.b (stipulated requirements).

17       Third, the slopes of the flared sides of a curb ramp may not exceed 1:12 (8.33%) if no top

18  landing is provided.[16]  ECF No. 341 at 2-3 ¶ 1.b (Stipulation); 1991 ADAAG § 4.7.5, Figure 12(a).

19  The curb ramp at issue has no top landing, and thus its flared sides may not exceed 1:12 (8.33%).

20  Defendants' experts would apply a 0.67% tolerance and allow a slope up to 9 % here.  *See* Lee Decl.

21  Ex. D (Blackseth Dep. 105:16-106:24); *see also* Ex. H, (Roether report at 3).  Plaintiffs' expert Mastin

22  measured the side flare slopes of this ramp to be 13.2% on the right side and 12.0% on the left side.

23  *See* Mastin Decl., ¶ 28.  Defendants' expert Adler agrees that the curb ramp side flare slopes do not

24

25  [15] Plaintiffs contend that fifty-seven (57) curb ramps have excessive counter slopes, thirty-eight (38) of
26  which were subject to Plaintiffs' prior motion for summary judgment.  *See* Lee Decl. ¶ 6; *see also* ECF
    No. 288-1 (Prior Lee MPSJ Decl. Ex. D) at pp. 192-200 (Barrier Nos. 772-808).

27  [16] Plaintiffs found that twenty-six (26) curb ramps have excessive side flare slopes for curb ramps
    without top landings, seventeen (17) of which were subject to Plaintiffs' prior motion for summary
28  judgment.  *See* Lee Decl. ¶ 6; *see also* ECF No. 288-1 (Prior Lee MPSJ Decl. Ex. D) at pp. 202-205
    (Barrier Nos. 812-828).

756500.21

comply with the 1991 ADAAG, the 2010 ADAS, or the 2013 CBC.  Lee Decl. Ex. O (Adler Rebuttal Report at p. 40, Street # 5, Item # 509, COD A17); *see also id.* Ex. N (Adler Dep. at 44:3-13, authenticating Dep. Ex. 597 (PDF version of Mr. Adler's Report)).  Thus, this curb ramp far exceeds the side flare slope requirement of "1:12 (or 8.33%) plus conventional industry tolerances."  *Cf.* ECF No. 341 at 2-3 ¶ 1.b (stipulated requirements).

The City has indicated its intent to argue that these barriers are not relevant to this action because Defendants provide accessible parking in the lot closest to the Stadium.  Such an argument misses the mark in several respects.  First, because the City provides a pedestrian right of way to its residents and visitors, the pedestrian right of way, including its curb ramps, must be readily accessible to and useable by persons with disabilities regardless of the parking facilities the City also makes available.  *See Barden*, 292 F.3d at 1076-77.  Second, persons with mobility disabilities can and do park in the off-site parking lots.  Defendants' "Parking Lot Notes" require that "ADA must be allowed into every lot."  *See, e.g.* ECF No. 301-1 Prior Lee Opp'n Decl., Ex. C at FN00979.  Third, not all persons with disabilities take a car or van to the Stadium and would enjoy taking the pedestrian right of way to the Stadium were it accessible.

Both Plaintiff and Defense experts agree that the curb ramp has excessive running, counter, and side-flare slopes.  As such, the Court should grant Plaintiffs partial summary judgment on this barrier.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Partial Summary Judgment in its entirety.

Dated:  June 20, 2019

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Katharine Fisher*
Katharine Fisher

*Attorneys for Plaintiffs and the Certified Classes*

756500.21