1    Guy B. Wallace (SBN 176151)
     gwallace@schneiderwallace.com
2    Mark T. Johnson (SBN 76904)
     mjohnson@schneiderwallace.com
3    **SCHNEIDER WALLACE**
     **COTTRELL KONECKY**
4    **WOTKYNS LLP**
     2000 Powell Street, Suite 1400
5    Emeryville, CA 94608
     (415) 421-7100; (415) 421-7105 (Fax)
6
     Adam B. Wolf (SBN 215914)
7    awolf@pwcklegal.com
     Catherine Cabalo (SBN 248198)
8    ccabalo@pwcklegeal.com
     **PEIFFER WOLF CARR & KANE**
9    4 Embarcadero Center, 14th Floor
     San Francisco, CA 94104
10   (415) 766-3592; (415) 402-0058 (Fax)

11   Linda M. Dardarian (SBN 131001)
     ldardarian@gbdhlegal.com
12   Andrew P. Lee (SBN 245903)
     alee@gbdhlegal.com
13   **GOLDSTEIN, BORGEN, DARDARIAN & HO**
     300 Lakeside Drive, Suite 1000
14   Oakland, CA 94612
     (510) 763-9800; (510) 835-1417 (Fax)
15
     *Attorneys for Plaintiffs and the Plaintiff Classes*

16

### UNITED STATES DISTRICT COURT

17

### NORTHERN DISTRICT OF CALIFORNIA

18

### SAN JOSE DIVISION

19

| | |
|---|---|
| 20  ABDUL NEVAREZ and PRISCILLA NEVAREZ, on behalf of themselves and all others similarly situated, and SEBASTIAN DEFRANCESCO, | Case No.: 5:16-cv-07013-LHK (SVK) |
| 21 | **CLASS ACTION** |
| 22              Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 23  vs. | |
| 24  FORTY NINERS FOOTBALL COMPANY, LLC, a Delaware limited liability company, et al., | |
| 25              Defendants. | Date:    January 30, 2020 |
| 26 | Time:    1:30 p.m.<br>Place:   Courtroom 8<br>Before:  Hon. Lucy H. Koh |

27

28

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on January 30, 2020 at 1:30 p.m., in the Courtroom of the

4

Honorable Lucy H. Koh, United States District Judge for the Northern District of California, located at

5

280 South 1st Street, San Jose, California, Plaintiffs in the above-captioned cases will and hereby do

6

move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order:

7

a.      Granting preliminary approval of the parties' proposed Settlement Agreement and

8

Release of Claims and the exhibits attached thereto (collectively, "Settlement Agreement" and filed

9

concurrently herewith) entered into between the parties;

10

b.      Modifying the definition of the certified Damages Class to close membership as of the

11

date of preliminary approval of the proposed Settlement Agreement;

12

c.      Appointing Plaintiff Sebastian DeFrancesco as a Class Representative representing the

13

Injunctive Relief Class;

14

d.      Approving the parties' proposed notice program, including the proposed forms of

15

notice, as set forth in the Settlement Agreement, and directing that notice be disseminated pursuant to

16

such program;

17

e.      Appointing KCC as Settlement Administrator, and directing KCC to carry out the duties

18

and responsibilities of the Settlement Administrator specified in the Settlement Agreement;

19

f.      Approving the parties' proposed Claim Form, and approving the procedures set forth in

20

the Settlement Agreement for (i) the submission of Claim Forms and allocation of the Damages Fund

21

established by the Settlement Agreement, (ii) Damages Class Members to exclude themselves from the

22

Settlement, and (iii) all Plaintiff Class Members to object to the Settlement;

23

g.      Staying all non-Settlement related proceedings in the above-captioned case pending

24

final approval of the Settlement Agreement;

25

h.      Setting a Final Approval Hearing and certain other dates in connection with the final

26

approval of the Settlement Agreement.

27

28

i

Pls.' Notice of Mot. & Mot. for Preliminary Approval: Mem. of Points & Authorities in Supp. Thereof
Case No. 5:16-cv-07013-LHK (SVK)

1    This motion is based on this notice of motion and motion, the accompanying memorandum of

2    points and authorities, the Settlement Agreement, including all exhibits thereto, the accompanying

3    Declaration of Guy B. Wallace, the argument of counsel, all papers and records on file in these cases,

4    and such other matters as the Court may consider.

5    Dated: October 7, 2019                    Respectfully submitted,

6                                              /s/ Guy B. Wallace
                                               _____
7                                              Guy B. Wallace
                                               Attorneys for Plaintiffs and the Plaintiff Classes

ii

PLS.' NOTICE OF MOT. & MOT. FOR PRELIMINARY APPROVAL: MEM. OF POINTS & AUTHORITIES IN SUPP. THEREOF
CASE NO. 5:16-CV-07013-LHK (SVK)

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

       A.      The Complaint ........................................................................................ 2

       B.      Defendants' Challenges to the Pleadings .................................................. 3

       C.      Class Certification ................................................................................... 3

       D.      Discovery ............................................................................................... 4

       E.      The Parties' Cross Motions for Summary Judgment .................................. 4

       F.      Mediation and Settlement ........................................................................ 4

III.    ARGUMENT ..................................................................................................... 5

       A.      The Proposed Settlement Agreement Makes a Minor Change to the Definition of the Damages Class ............................................................... 5

       B.      The Proposed Settlement Agreement Meets the Standard for Preliminary Approval ............................................................................... 6

               1.      The Legal Standard for Preliminary Approval ............................... 6

               2.      The Settlement Is the Product of Serious, Informed and Non-Collusive Negotiations ........................................................... 7

               3.      The Settlement Has No Obvious Deficiencies and Does Not Grant Preferential Treatment to the Class Representatives or Other Class Members .......................................................................... 8

               4.      The Settlement Will Result in Substantial Benefits to the Classes and Falls Within the Range of Possible Approval ........................... 10

                        a.      Injunctive Relief ........................................................... 10

                        b.      Damages ....................................................................... 16

                        c.      The Settlement Does Not Permit Any Reversion ........................ 17

                        d.      The Litigation Risks Support Preliminary Approval .................... 18

                5.      The Proposed Service Awards to the Named Plaintiffs Are Fair and Reasonable and Routinely Approved ............................................ 18

               6.      Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs ............ 19

       C.      The Proposed Notice Satisfies Due Process and Should Be Approved ................ 22

       D.      The Plan to Allocate Settlement Funds Should Be Preliminarily Approved ........ 23

E.    The Proposed Settlement Administrator ................................................. 23

F.    Cy Pres ......................................................................................................... 24

G.    Required Notice to the Class and CAFA Notice. ................................. 24

H.    Plaintiffs Have Disclosed the Only Side Agreement Produced to Them By Defendants ................................................................................. 25

I.    The Court Should Approve the Proposed Scheduling Order and Set a Date for the Fairness Hearing ....................................................... 25

IV.    CONCLUSION ...................................................................................................... 25

iv

Pls.' Notice of Mot. & Mot. for Preliminary Approval: Mem. of Points & Authorities in Supp. Thereof
Case No. 5:16-cv-07013-LHK (SVK)

# TABLE OF AUTHORITIES

**Federal Cases**

*Armstrong v. Davis*
   275 F.3d 849 (9th Cir. 2001)..........................................................................................5

*Bautista v. Harvest Mgmt. Sub LLC*
   Case No. 12-cv-10004FMO (CWx), 2013 WL 12125768 (C.D. Cal. Oct. 16, 2013) ....................23

*Borchardt v. City of Tucson*
   706 Fed. App'x 372 (9th Cir. 2017)..............................................................................22

*Brown v. Hain Celestial Grp., Inc.*
   No. 3:11-cv-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016)..................................8

*Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*
   No. C 06—5125 SBA, 2010 WL 2228531  (N.D. Cal. June 2, 2010)................................18

*Castaneda v. Burger King Corp.*
   No. C 08—04262 WHA, 2010 WL 2735091 (N.D. Cal. July 12, 2010)............................17, 18, 20

*Connolly v. Weight Watchers N. Am. Inc.*
   Case No. 14-cv-01983-TEH, 2014 WL 3611143 (N.D. Cal. July 21, 2014)......................22

*Dennis v. Kellogg Co.*
   697 F.3d 858 (9th Cir. 2012)......................................................................................24

*Edwards v. Nat'l Milk Producers Fed'n*
   No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) ..........................17

*Eisen v. Carlisle & Jacquelin*
   417 U.S. 156 (1974)..................................................................................................22

*Farrar v. Hobby*
   506 U.S. 103 (1992)..................................................................................................19

*Gaudin v. Saxon Mortgage Servs., Inc.*
   No. 11-cv-01663-JST, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015)..............................19

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998)....................................................................................6, 20

*Hesse v. Sprint Corp.*
   598 F.3d 581 (9th Cir. 2010).......................................................................................9

*In re Anthem, Inc. Data Breach Litig.*
   327 F.R.D. 299 (N.D. Cal. 2018) ................................................................................17

*In re Bluetooth Headset Products Liability Litig.*
   654 F.3d 935 (9th Cir. 2011).......................................................................................20, 21

*In re High-Tech Employee Litig.*
   No. 11-cv-2509, 2013 WL 6328811 (N.D. Cal. Oct. 30, 2013) ....................................6, 23

v

PLS.' NOTICE OF MOT. & MOT. FOR PRELIMINARY APPROVAL: MEM. OF POINTS & AUTHORITIES IN SUPP. THEREOF
CASE NO. 5:16-CV-07013-LHK (SVK)

*In re Hyundai and Kia Fuel Economy Litig.*
   926 F.3d 539 (9th Cir. 2019) ............................................................ 6, 7, 20

*In re Optical Disk Drive Products Antitrust Litig.*
   No. 3:10-md-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 12, 2016) ............ 17

*In re Pacific Enters. Sec. Litig.*
   47 F.3d 373 (9th Cir. 1995) ................................................................ 20

*In re Tableware Antitrust Litig.*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................. 7

*Koller v. Med Foods, Inc.*
   No. 3:14-CV-2400-RS, 2018 WL 9619436 (N.D. Cal. Aug. 29, 2018) .......... 8

*Laguna v. Coverall N. Am., Inc.*
   753 F.3d 918 (9th Cir. 2014) .............................................................. 21

*Nachshin v. AOL, LLC*
   663 F.3d 1034 (9th Cir. 2011) ............................................................ 24

*Nat'l Rural Telecomm's Coop v. Directv, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 16, 18

*Nevarez v. Forty Niners Football Company, LLC*
   326 F.R.D. 562 (N.D. Cal. 2018) ................................................... 3, 5, 6

*Nitsch v. DreamWorks Animation SKG Inc.*
   No. 14-CV-04062-LHK, 2017 WL 399221 (N.D. Cal. Jan. 19, 2017) .......... 6, 7

*Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*
   688 F.2d 615 (9th Cir. 1982) .............................................................. 16

*Rodriguez v. West Publ'g Corp.*
   563 F.3d 948 (9th Cir. 2009) ...................................................... 7, 19, 23

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003) ............................................................... 6

*Stemple v. RingCentral, Inc.*
   No. 18-cv-04909-LB, 2019 WL 3842091 (N.D. Cal. Aug. 15, 2019) ............ 7

*Van Vranken v. Atlantic Richfield Co.*
   901 F. Supp. 294 (N.D. Cal. 1995) ...................................................... 19

*Villalpando v. Exel Direct Inc.*
   No. 3:12-cv-04137-JCS, 2016 WL 7785852 (N.D. Cal. Dec. 9, 2016) ......... 19

*Winans v. Emeritus Corp.*
   No. 13-cv-03962-HSG, 2016 WL 107574 (N.D. Cal. Jan. 11, 2016) ............ 17

**Statutes**

28 U.S.C. § 1712 ................................................................................... 25

vi

PLS.' NOTICE OF MOT. & MOT. FOR PRELIMINARY APPROVAL; MEM. OF POINTS & AUTHORITIES IN SUPP. THEREOF
CASE NO. 5:16-CV-07013-LHK (SVK)

42 U.S.C. § 12101(a)(7) ................................................................................................ 24

Cal. Civ. Code § 51 ...................................................................................................... 9

**Rules and Regulations**

F.R.C.P. 23(c)(2)(B) .................................................................................................... 22

F.R.C.P. 23(e)(2) ........................................................................................................... 6

F.R.C.P. 23(h) ............................................................................................................. 21

**Other Authorities**

Manual for Complex Litigation (Fourth)
    § 21.632 (2015) ..................................................................................................... 6

W. Rubenstein, Newberg on Class Actions
    (5th ed. 2014) § 8.5 ............................................................................................ 22

# I.  **INTRODUCTION**

The proposed Settlement Agreement and Release of Claims ("Settlement" or "Settlement Agreement") provides both extensive injunctive relief and a substantial damages fund to the Plaintiff Classes.  The Settlement Agreement provides comprehensive injunctive relief to remedy the violations of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act that were alleged in the Fourth Amended Complaint, including the barrier lists attached to the Complaint as Exhibits A through D.  (A true and correct copy of the proposed Settlement is attached as Exhibit 1 to the Declaration of Guy B. Wallace in Support of Plaintiffs' Motion for Preliminary Approval ("Wallace Decl.").  The proposed Settlement requires remedial access work with respect to all areas of Levi's Stadium, its parking, and the pedestrian rights of way leading from the parking lots to the Stadium.  The remedial work to be performed is set forth in the Settlement and Exhibits A-J thereto, which include a detailed remedial plan and specifications.  The proposed Settlement will ensure that Class Members with mobility disabilities and their companions have full and equal access to the Stadium and its related facilities.  The proposed Settlement will also require Defendants to provide full and equal access to ticketing services.  To ensure that Class Members receive this relief, the proposed Settlement mandates effective reporting and monitoring under the Court's continuing jurisdiction.

The proposed Settlement Agreement also provides a $24 million class damages fund with no reversion to Defendants.  Class Members who make claims on the fund will receive a minimum of $4,000 for each visit to Levi's Stadium in which they encountered an access barrier that caused them difficulty, discomfort or embarrassment within the meaning of California Civil Code § 55.56 *et seq.* up to a maximum of $80,000.  This is the largest class damages settlement ever achieved in a case challenging physical access to a place of public accommodation.

The proposed Settlement follows three years of contested litigation, including extensive discovery and motion practice.  The parties reached the Settlement after six formal mediation sessions under the supervision of Mark Rudy and Michael Loeb, and numerous in-person and telephone negotiations between counsel and Defendants.

The proposed Settlement is fair, adequate and reasonable, and satisfies all of the criteria for preliminary settlement approval under Rule 23 of the Federal Rules of Civil Procedure.  Accordingly,

1   Plaintiffs ask that the Court: (i) preliminarily approve the Settlement; (ii) modify the definition of the

2   certified Damages Class so that it only extends through the date of preliminary approval; (iii) appoint

3   Sebastian DeFrancesco as an additional Class Representative for the Injunctive Relief Class; (iv)

4   approve the proposed form of the class notice and distribution plan; and (v) set a fairness hearing.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Complaint

7        Plaintiffs Abdul and Priscilla Nevarez filed this class action on December 7, 2016, asserting

8   claims for both injunctive relief and damages against the Forty Niners Football Company, LLC, the

9   City of Santa Clara ("the City"), the Santa Clara Stadium Authority (the "Stadium Authority") and

10  Ticketmaster Entertainment, Inc. ("Ticketmaster") based on alleged violations of the Americans with

11  Disabilities Act ("ADA"), the Rehabilitation Act of 1973, California Government Code Section 11135,

12  the California Disabled Persons Act (California Civil Code §§ 54 *et seq*.) and the California Unruh Act

13  (California Civil Code §§ 51 *et seq*.).  *See* Complt. (ECF 1).  Thereafter, the Complaint was amended

14  to add the Forty Niners Stadium Management Company LLC as a Defendant (ECF 9).

15       On April 13, 2017, pursuant to Stipulation of the Parties approved by this Court, Plaintiffs filed

16  their Second Amended Complaint limiting their claims to the alleged violation of Titles II and III of

17  the ADA and California's Unruh Act, and adding Sebastian DeFrancesco as a Plaintiff.  (ECF 47, 50).

18  On August 1, 2017, the Court dismissed the named Plaintiffs' claims for individual damages against

19  the City and Stadium Authority except for Plaintiffs Abdul and Priscilla Nevarezes' claims for

20  damages based on their visit to the Stadium on April 2, 2016.  On August 15, 2017 the Court dismissed

21  without prejudice Plaintiffs' claims against Ticketmaster, finding that those claims were subject to

22  mandatory arbitration.  (ECF 85).

23       Plaintiffs filed a Third Amended Complaint on August 8, 2017 (ECF 78) and the operative

24  Fourth Amended Complaint on July 27, 2018 (ECF 195).  The Complaint includes and incorporates

25  exhibits identifying the alleged disability access barriers in the Stadium, as well as in the Stadium's

26  main parking lot and the adjacent pedestrian right of way.  (ECF 195-1 – 195-4).  It also maintains

27  class claims against the Forty Niners Defendants for Unruh Act damages. *Id.*

28

1

**B.**     **Defendants' Challenges to the Pleadings**

2
On February 7, 2017, Defendants filed a motion to dismiss the then-operative Complaint in its

3
entirety for alleged failure to state a claim and the alleged lack of standing on the part of Plaintiff

4
Priscilla Nevarez.  (ECF 28, 32).  Following the filing of a Second Amended Complaint, Defendants

5
filed new motions to dismiss on the same grounds.  (ECF 58).  The Court denied these motions in

6
relevant part, finding that Ms. Nevarez had alleged facts to establish standing.  (ECF 76 at 14, 16, 17).

7

**C.**     **Class Certification**

8
On July 12, 2018, this Court granted in part and denied in part Plaintiffs' motion for class

9
certification.  *Nevarez v. Forty Niners Football Company, LLC,* 326 F.R.D. 562, 592 (N.D. Cal. 2018).

10
The Court certified the following three classes pursuant to Federal Rule of Civil Procedure 23:

11
**Injunctive Relief Class:**  1. All persons with mobility disabilities who use wheelchairs, scooters, or other mobility aids who will attempt to purchase

12
accessible seating for a public event at Levi's Stadium and who will be denied equal access to the Stadium's facilities, services, accessible

13
seating, parking, amenities, and privileges, including ticketing, during the three years prior to the filing of the Complaint herein through the

14
conclusion of this action.

15
**Companion Injunctive Relief Class:** 2. All persons who are companions of persons with mobility disabilities who use wheelchairs, scooters or

16
other mobility aids and who have used or will use companion seating for public events located at Levi's Stadium during the three years prior to the

17
filing of the Complaint herein through the conclusion of this action.

18
**Damages Class**: 3. All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who have purchased,

19
attempted to purchase, or for whom third parties purchased accessible seating and who have been denied equal access to Levi's Stadium's

20
facilities, services, accessible seating, parking, amenities, and privileges at an event controlled by the Forty Niners Football Company, LLC, Forty

21
Niners SC Stadium Company, LLC, or Forty Niners Stadium Management Company, LLC, during the two years prior to the filing of

22
the Complaint herein through the conclusion of this action.

23
*Id.*  The first and second classes seek declaratory and injunctive relieve pursuant to Title II and Title III

24
of the ADA and were certified pursuant to Rule 23(b)(2). The third class seeks statutory damages

25
under the Unruh Act and was certified pursuant to Rule 23(b)(3). This Court appointed Abdul Nevarez

26
as representative of the first and third classes, and Priscilla Nevarez as representative of the second

27
class.

28

**D.**      **Discovery**

The parties engaged in extensive discovery prior to reaching an agreement to resolve this case. Such discovery included 13 sets of document requests (11 propounded by Plaintiffs; 2 propounded by Defendants), 6 sets of document subpoenas (all propounded by Plaintiffs); 13 sets of interrogatories (9 propounded by Plaintiffs; 4 propounded by Defendants), and 15 sets of requests for admission (all propounded by Plaintiffs).  *See* Wallace Decl. at ¶ 15.  In response to Plaintiffs' document requests and subpoenas, Defendants and third parties produced approximately 3.4 million pages of documents, including thousands of construction drawings of the Stadium and its related facilities, most of which were reviewed and analyzed for use as deposition or trial exhibits.  *Id.*

Plaintiffs' Counsel and their experts spent 14 days inspecting the accessibility of the Stadium, parking lots serving the Stadium, and nearby pedestrian rights-of-way for persons with mobility disabilities.  *Id.* at ¶ 16.  Plaintiffs took or defended 43 depositions, including 15 Rule 30(b)(6) depositions, 16 expert depositions, several depositions of third parties such as the Stadium's Architect of Record, consultants to Defendants in the design and construction of the Stadium, and the Named Plaintiffs.  *Id.*

**E.**      **The Parties' Cross Motions for Summary Judgment**

The parties filed cross motions for partial summary judgment on December 20, 2018.  ECF 282, 288.  On February 5, 2019, this Court issued an Order denying both motions without prejudice, staying the case for case narrowing at the next case management conference, and directing the parties select up to 12 physical access barriers to litigate through summary judgment, the pre-trial conference and trial.  ECF 328.  On June 20, 2019, the parties filed their narrowed motions for partial summary judgment limited to 6 physical access barriers for each side.  The motions were fully briefed and set for hearing for August 29, 2019.  The motions were pending when the parties informed the Court that a proposed settlement had been reached.

**F.**      **Mediation and Settlement**

The parties engaged in extensive settlement negotiations in order to reach a final resolution of this matter for which Plaintiffs now seek preliminary approval.  Two mediation sessions were held in May and July 2018 with Michael A. Loeb at JAMS, and four with mediator Mark S. Rudy in

December 2018, January and February 2019, and August 29, 2019.  By February 2019, the parties had made significant progress in resolving injunctive relief, and agreed to a $24 million damages fund for Damages Class members.  Beginning in March 2019, the parties continued face-to-face and telephonic negotiations to finalize injunctive relief terms.  Wallace Decl. ¶ 21.

Settlement negotiations involved detailed discussions of the scope of the barrier remediation that would be required of Defendants under the Settlement Agreement, including the specifications of the work to be performed as displayed in exhibits to the Agreement, as well as the measures to be taken for reporting on, monitoring and enforcing the obligations created by the Agreement.  The negotiations were arms-length, intensive and ultimately successful in resolving the case.  *Id*. at ¶ 24.

After class relief was fully resolved in late August 2019, the parties participated in a final mediation session with Mr. Rudy during which they agreed to the maximum amount of attorneys' fees, expenses and costs that Plaintiffs would seek through a request for Court approval.  *Id.* at ¶ 23.

## III.     ARGUMENT

### A.     The Proposed Settlement Agreement Makes a Minor Change to the Definition of the Damages Class

This Court previously granted certification of three Plaintiff classes, the contours of which are set forth in Section II.C, above.  *Nevarez*, 326 F.R.D. at 592.  The proposed Settlement Agreement only changes the definition of the Damages Class to make the end date for class member inclusion coincide with the date of preliminary approval of the settlement rather than the conclusion of this action.  Settlement Agreement at § I.3.  This ensures that only those individuals who meet the class definition at the time of preliminary approval and to whom class notice will be directed will be bound by the Settlement.  Accordingly, Plaintiffs respectfully request this Court modify the class definition so that it indicates that the Class only includes persons who meet the Class definition during the time from the beginning of the class period up through the date of preliminary approval.  *See, e.g.*, *Armstrong v. Davis*, 275 F.3d 849, 871-72 n.28 (9th Cir. 2001); *Nevarez*, 326 F.R.D. at 575 ("[d]istrict courts have broad discretion to modify class definitions") (citations omitted).

The proposed Settlement also provides that Plaintiff DeFrancesco be appointed a representative of the Injunctive Relief.  At class certification, the Court did not appoint Plaintiff DeFrancesco as a Class

1  Representative because he faced a particular defense for failing to timely file a tort claim for damages

2  against the City of Santa Clara, which made him atypical of the Rule 23(b)(3) damages class.  The Court

3  did not address whether Mr. DeFrancesco could serve as a Class Representative for purposes of the Rule

4  23(b)(2) Injunctive Relief Class.  *Nevarez*, 326 F.R.D. at 580.  The Settlement, however, names Plaintiff

5  DeFrancesco as an Injunctive Relief Class Representative because he experienced the barriers at the

6  Stadium alleged in the Complaint.  Settlement Agreement § II.D.; Wallace Decl. ¶ 54.  Plaintiff

7  DeFrancesco has no conflicts with Class Members, actively participated in the litigation, and represented

8  the interests of the Classes.  *See* Section III.B.5, *infra*; Wallace Decl. ¶ 42.  Accordingly, Plaintiff

9  DeFrancesco should be appointed a Representative of the Injunctive Relief Class.

10  **B.**  **The Proposed Settlement Agreement Meets the Standard for Preliminary Approval**

11  **1.**  **The Legal Standard for Preliminary Approval**

12  The law favors the settlement of class actions.  *See, e.g., In re Hyundai and Kia Fuel Economy*

13  *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc).  "[T]he decision to approve or reject a settlement is

14  committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and

15  their strategies, positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

16  (internal citations and quotations omitted).

17  Under Federal Rule of Civil Procedure 23(e), a court must determine whether a proposed class

18  action settlement is "fair, reasonable, and adequate." and whether to give notice of the proposed

19  settlement to the class members and an opportunity to voice approval or disapproval of the settlement.

20  Rule 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at

21  1026); Manual for Complex Litigation (Fourth) § 21.632 (2015).  Such "preliminary approval" is not a

22  dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls

23  within the "range of reasonableness."  *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-

24  LHK, 2017 WL 399221, at *1 (N.D. Cal. Jan. 19, 2017) (quoting *In re High-Tech Employee Litig.*, No.

25  11-cv-2509, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) ("*High-Tech I*") (citation omitted).

26  Preliminary approval of a settlement and notice to the proposed class is appropriate "[i]f [1] the

27  proposed settlements appears to be the product of serious, informed, non-collusive negotiations, [2] has

28  no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or

segments of the class, and [4] falls within the range of possible approval." *Nitsch*, 2017 WL 399221, at *2 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). For the reasons discussed below, the proposed settlement falls well within the range of reasonableness, and easily meets the requirements for preliminary approval and those of Fed. R. Civ. Proc. 23(e).

## 2. The Settlement Is the Product of Serious, Informed and Non-Collusive Negotiations

"Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Stemple v. RingCentral, Inc.*, No. 18-cv-04909-LB, 2019 WL 3842091, at *5 (N.D. Cal. Aug. 15, 2019) (internal quotation omitted)); *see also*, *In re Hyundai and Kia*, 926 F.3d at 570 ("'[W]e put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution.' ") (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). At this stage, so long as the settlement falls into the range of possible approval, the presumption applies and the settlement should be preliminarily approved. That is the case here.

First, the Settlement was reached after informed negotiations supervised by two well-respected mediators experienced in class action cases, Michael Loeb and Mark Rudy. Wallace Decl. ¶ 21. The parties participated in six in-person mediations over the eighteen-month period between May 2018 and August 29, 2019. *Id.* at ¶¶ 21-23. The first two mediations took place with Mr. Loeb; the latter four mediations took place with Mr. Rudy. Mr. Rudy made a mediator's proposal regarding the amount of class damages, which was accepted by the parties. Six months later, at the conclusion of the mediation process, Mr. Rudy made a mediator's proposal regarding reasonable attorneys' fees and costs. Both sides accepted his proposal two weeks later. *Id.* All major issues regarding injunctive relief were resolved prior to the mediation of fees and costs. *Id.* at ¶ 23.

Second, the settlement was reached after extensive discovery, depositions and motion practice. Indeed, Counsel have thoroughly investigated the factual and legal issues raised in this action, and diligently litigated the class members' claims for almost three years. Extensive investigation, discovery and motion practice has allowed the parties to assess the strengths and weaknesses of the claims, defenses, and the benefits of the proposed Settlement. *Id.* at ¶¶ 15-20. The parties conducted more than 40 depositions, and Plaintiffs reviewed and analyzed millions of pages of documents.

Plaintiffs also conducted outreach to the Classes; conducted numerous interviews of Class Members to investigate the access barriers, policies and practices at issue; and submitted 32 Class Member declarations to support the motion for class certification. *Id*. at ¶ 16.  The motion for class certification was heavily contested, and the parties also filed cross motions for summary judgment.   Indeed, at the time of settlement the parties had completed fact and expert discovery, and were in the process of preparing for trial.  These and other proceedings in the case produced a thorough pre-settlement vetting of the factual and legal bases for Plaintiffs' claims and the key defenses thereto.

Third, Class Counsel have extensive experience litigating and settling systemic disability access and other complex class actions. *Id*. at ¶¶ 4-10.  Accordingly, the fact that qualified and well-informed counsel endorse the proposed settlement as being fair, reasonable, and adequate weighs in favor of approval. *See, e.g., Koller v. Med Foods, Inc.*, No. 3:14-CV-2400-RS, 2018 WL 9619436, at *3 (N.D. Cal. Aug. 29, 2018); *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-cv-03082-LB, 2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016).

### 3.   The Settlement Has No Obvious Deficiencies and Does Not Grant Preferential Treatment to the Class Representatives or Other Class Members

The proposed Settlement has no obvious deficiencies, but rather provides for comprehensive injunctive relief regarding all of the claims at issue in this litigation.  Once the Settlement is fully implemented, Levi's Stadium, its Main Parking Lot, and the adjacent pedestrian right of way will provide full and equal access to Class Members.  Settlement at § III; Exhibits A-J.

Moreover, the Settlement provides a non-reversionary distribution of $24 million in damages to eligible class members, without granting preferential treatment to any particular class members. Settlement at § VII.A.  All of the class members who make claims that confirm, as required under applicable law, that they have mobility disabilities and encountered one or more barriers at Levi's Stadium or its related facilities that caused them "difficulty, discomfort or embarrassment" will be able to recover a minimum of $4,000 or a maximum of $80,000 depending on the number of visits in which they encountered such barriers.  This objective allocation plan does not grant preferential treatment to any member of the Damages Class.

The Settlement only releases the claims that were alleged, or that could have been alleged, based on the factual allegations of the Fourth Amended Complaint.  In exchange for the equitable relief provided for by the Agreement, Class Members and Plaintiffs release "any and all claims that are the subject of, included within, and/or arise from this lawsuit, including without limitation, all claims, liabilities, obligations, demands, actions, and claims under Title II and Title III of the ADA, California Civil Code § 51, *et seq*., and their accompanying regulations that were brought or could have been brought based on the facts alleged in the Complaint against the Released Parties for injunctive or declaratory relief only relating to Conditions that allegedly deny access to the facilities specified in Exhibit A and access to Defendants' ticketing services for wheelchair accessible and companion seating."  Settlement at § XIII.A.1.  This release only applies for the duration of the agreement, *i.e.* three and a half years after it becomes effective.  *Id.*; § XVI.  The scope of the release for the Damages Class is essentially the same, except that it only releases claims for statutory damages that were brought or could have been brought based on the facts alleged in the Complaint for the period of time up to the date on which the Court grants Preliminary Approval of the Settlement Agreement. Settlement at § XIII.A.2.  These narrow releases fully accord with Ninth Circuit precedent.  *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

The Settlement Agreement does not grant preferential treatment to the Class Representatives, who are subject to the same damages allocation plan as the absent Class Members.  Subject to Court approval, the Named Plaintiffs would also receive service awards not to exceed $7,500 each, which Plaintiffs submit are fair and reasonable payments to recognize and compensate the Named Plaintiffs for the efforts and risks they took in stepping forward to assert claims, their participation in discovery and depositions, and the work done on behalf of the Plaintiff Classes to prosecute the claims.  *See* discussion *infra* at § III.B.5.

Members of the Injunctive Relief and Companion Classes, as well as Damages Class Members who do not opt out, will be given the opportunity to object to the settlement and to appear at the Final Approval/Fairness Hearing in order to have their objections heard by the Court.  Damages Class Members will have the opportunity to opt-out of the proposed Settlement should they so desire. Settlement, at § VI.  The Claims Process set forth in the Settlement Agreement also provides Damages

1    Class Members the opportunity, should they disagree with Defendants' records regarding the number

2    of events that they attended at the Stadium, to provide documentation and/or an explanation to show a

3    different number of visits.  *Id*. at § VII.G; H.  If there is a dispute, the Settlement Administrator will

4    consult with the Parties to determine whether an adjustment is warranted.  These procedural safeguards

5    further support preliminary approval.

6         **4.    The Settlement Will Result in Substantial Benefits to the Classes and Falls Within the Range of Possible Approval**

7

8              **a.    Injunctive Relief**

9              The injunctive relief guaranteed by the Settlement constitutes an excellent result for the

10   Plaintiff Classes.  The Settlement provides comprehensive injunctive relief regarding all of the claims

11   in the Fourth Amended Complaint, including Defendants' failure to provide physical access and

12   Defendants' failure to make reasonable modifications in policy and practice to ensure equal access to

13   the Stadium's facilities and services.  The Settlement requires Defendants to remediate nearly all of the

14   access barriers identified by Plaintiffs' experts, as well as requiring Defendants to remove many other

15   access barriers that were not identified in Plaintiffs' Complaint.  As this Court will recall, Plaintiffs'

16   Exhibit A identified 2,699 access barriers in the Stadium and its related facilities, including its parking

17   lots and the pedestrian rights of way leading from those lots to the Stadium.  The Settlement will

18   remediate all but 25 of the alleged barriers (*i.e.*, all but 1% of the barriers identified in the Complaint).[1]

19   Wallace Decl. ¶ 59.  The Settlement will also remediate numerous other barriers in the Stadium's stairs

20

21   _____

22   [1] These alleged barriers include: 18 alleged barriers regarding the lack of clear space on counters in the Stadium
     concessions; 4 alleged barriers regarding the location of the accessible toilet compartment door openings and

23   whether they were located too far from the side wall or partition; an alleged barrier regarding the lack of
     wheelchair maneuvering space at urinals; and 2 alleged barriers regarding the existence of dirt sections of the

24   pedestrian right of way serving the remote parking lots. Plaintiffs compromised regarding the clear space on the
     counters because of a recent U.S. Access Board interpretive guidance in which the Board stated that this type of

25   condition did not violate the 2010 ADAS.  Similarly, the parties' experts had a good-faith disagreement
     regarding the correct interpretation of the requirement regarding the location of accessible toilet compartment

26   door openings and the side walls or partitions.  The lack of clear space for wheelchair users at urinals was not
     remediated because the Stadium's restrooms have designated accessible wheelchair stalls and the Settlement

27   provides comprehensive remediation regarding same. Settlement at § III.A.1.i.; Exh. A at Items 823 through
     1502.1.  Finally, it was not necessary to remediate the two dirt sections in the pedestrian right of way because

28   the Settlement provides compliant accessible parking in the Main Lot immediately adjacent to the Stadium, and
     compliant paths of travel from the Main Lot to the Stadium's entrances.  *See* Settlement, Exhibit J.

1    and breastfeeding stations that were not included in the Complaint.

2    The detailed remedial access work that is specified in the Settlement Agreement and Exhibits

3    A-L will bring the Stadium and its surrounding pedestrian rights of way into full compliance with the

4    2010 ADAS and the 2019 CBC.  Moreover, the Settlement provides extensive injunctive relief

5    regarding all of the other problems with ticketing, transportation and other services that were described

6    by the Class Members in their declarations.  (ECF 139 [Appendix of Class Member Declarations].).

7    Specifically, the Settlement mandates the following access work and improvements, all of which must

8    fully comply with the 2010 ADAS and the 2019 CBC:

9    Parking, Exterior Path of Travel, and Entrances.  The Settlement will provide 282 accessible

10   parking spaces immediately adjacent to the Stadium in the Main Lot.  Settlement at § III.A.3.a; Exhibit

11   J.  This is a sufficient number of parking spaces to meet the accessible parking requirement for all of

12   the lots that Defendants use to provide parking.  Wallace Decl. ¶ 28.  An accessible path of travel will

13   connect the accessible parking spaces in the Main Lot to the primary entrances to the Stadium at Gates

14   A and C.  The accessible path of travel, clearly marked and eight feet in width (*i.e.*, double the 48 inch

15   width specified in the 2010 ADAS and the 2019 CBC), will connect all of the accessible external

16   features of the Stadium, including any amenities in the Main Lot (such as portable toilets and coat

17   check), the stores and other points of interest in the Plaza, to the accessible Box Office windows, and

18   the Stadium restaurants.  Settlement at §§ III.A.1.b; Exhibit B, C, and J.  The specifications for this

19   remedial work are set forth in the drawings comprising Exhibit B (for the Plaza area and exterior

20   entrances to the Stadium) and Exhibit J (for the path of travel from the parking lot) to the Settlement

21   Agreement.  The accessible path of travel to be established and maintained leading to and between the

22   Bourbon Steak, Bourbon Pub and Tailgate restaurants is described in further detail at Section §§

23   III.A.2 of the Settlement Agreement.  As a result of this access work, Class Members will no longer

24   have to struggle with inaccessible parking, inaccessible security gates, inaccessible entrances,

25   inaccessible ticket windows at the Box Office, and many other similar access problems that existed on

26   the exterior of the Stadium.  And, the parking adjacent to the Stadium will be priced at the lowest price

27   Defendants charge for parking in the remote parking lots.  *Id.* at § III.A3.b.

28

1    Pedestrian Rights of Way Leading to the Stadium.  Some Class Members may continue to

2 choose to park in the fifteen off-site parking lots that also serve Levi's Stadium.  The pedestrian right

3 of way connecting those off-site parking lots to the Stadium contain numerous barriers to access,

4 including curb ramps that lack a flush transition to the street and have excessive running, cross,

5 counter, and side-flare slopes; sidewalks with excessive running and cross slopes, surface gaps, and

6 abrupt changes in level; and pedestrian signals that fall outside of reach range for persons using

7 wheelchairs and scooters.  The proposed Settlement requires the City of Santa Clara to make these

8 portions of the pedestrian right of way fully accessible to persons with mobility disabilities.  In total,

9 the Settlement Agreement requires the remediation of 454 non-compliant conditions, including 236

10 curb ramps barriers present on 97 curb ramps, 203 sidewalk barriers, and 15 barriers related to

11 inaccessible pedestrian signals.  Settlement at § III.A.4; Exhibits H, I.

12    Stadium Box Office.  To ensure an accessible box office and approach to the box office at the

13 Stadium, Defendants are required to remediate the box office-related barriers identified in Exhibit A to

14 the Settlement Agreement in the manner specified and in § III.A.1.c. and Exhibit C of the Settlement.

15 This includes removing the foot bar at the base of the designated accessible ticket window to allow a

16 forward approach by wheelchair users, raising the existing grade to provide a level accessible area in

17 front of the window, using accessible queuing plans, providing signage for the accessible window and

18 providing all services at the accessible window that are offered to the public.  *Id.,* Ex. C notes 8, 11.

19    Interior Circulation Within the Stadium.  The Settlement Agreement ensures that Class

20 Members will have an accessible path of travel throughout the Stadium.  Defendants are required to

21 remediate the specific conditions in the interior path of travel identified in Exhibit A in the manner

22 specified therein, and no ramps in the path of travel will be permitted to have excessive running slopes.

23 Settlement at §§ III.A.1.e.  The location and specifications of the accessible interior path of travel are

24 set forth in Exhibit D.

25    Signage, Access Map and Trained Stadium Staff.  The Settlement also requires a detailed

26 signage plan to direct Class Members to the accessible exterior and interior features of the Stadium.

27 Settlement at § III.A.1.e; Exhibit D.  Clearly marked accessible paths and overhead signage will guide

28 Class Members from the Main Lot to the entrances to the Stadium, and to the entrances leading to the

1    elevators.  *Id.*  This information will also be provided in a comprehensive access map that will be

2    available both electronically and on paper.  Settlement at § III.D.  Further, Stadium employees will be

3    trained on the location of accessible elevators, restrooms, and seating so that Class Members can get

4    reliable assistance with finding their way to their seats.  *Id.* at § III.F.1.  Under the Settlement, Class

5    Members will no longer have to struggle and engage in trial and error efforts to find the accessible

6    routes and features within the Stadium.

7        Accessible seating, companion seating, and restrooms.  The Settlement requires Defendants to

8    make extensive access improvements within the Stadium itself.  Significantly, it requires Defendants to

9    perform access work to the designated accessible seating so that it strictly complies with the

10   requirement of the 2010 ADAS for level seating spaces.  Settlement at Exhibit E.  As a result of this

11   access work, Class Members who use wheelchairs will no longer roll around in their seating spaces

12   because of the excessive drainage gradient that was erroneously constructed.  The number of accessible

13   and companion seats shall comply with the 2010 ADAS standards.  Arm rests and cupholders will be

14   provided for companion seats to make them equivalent to standard seating.  Settlement at § III.A.1.f.;

15   Ex. E  Further, Defendants will be required to remove all of the barriers identified in the Stadium's

16   restrooms in accordance with the remedial work specified in Exhibit A to the Settlement.  *Id.* at

17   § III.A.1.i.; Ex. A at Items 823 through 1502.1.

18       Social and Dining Spaces and Features, Including Restaurants, Bars, Drink Rails, and Drinking

19   Fountains.  Some of the most significant barriers in the Stadium included the general lack of accessible

20   tables in restaurants, accessible lowered sections in bars, and the inaccessibility of other social spaces

21   such as the Stadium drink rails and other counters at which patrons congregate or make purchases from

22   Stadium personnel.  As a result of the Settlement, Defendants will provide accessible seating and bar

23   spaces at all locations at which food and drink is served or consumed within the Stadium.  Settlement

24   at §§ III.A.1.g; III.A.1.h; § III.A.2; Exhibit E.  Further, the Settlement requires that all of the Stadium's

25   drinking fountains be made accessible.  *Id.* at § III.A.1.j.

26       Shops and Concessions.  The Settlement requires that all of the barriers identified in the

27   Stadium's shops and concessions be remediated in accordance with Exhibit A.  Settlement at §§

28   III.A.1.k, m.  This access work will provide Class Members and their companions with equal access to

the Stadium's shops and concessions.

Boxes and Suites.  The Settlement will make significant access improvements to the Stadium's boxes and suites.  Defendants will be required to provide accessible tables and other furniture within the boxes and suites in place of the existing inaccessible furniture.  In addition, Defendants will be required to provide compliant accessible seating in the boxes and suites so that users with mobility disabilities will be able to access their seats and enjoy an unobstructed sightline to watch Stadium events.  Settlement at § III.A.1.l.

Stairs and Handrail Extensions.  The Settlement requires Defendants to provide compliant handrail extensions throughout the Stadium so that Class Members will be able to safely and easily transition from stairs and ramps to the landings at the top and bottom of same.  Settlement at § III.A.1.n.  In addition, the Settlement requires important access fixes that go beyond the barriers identified in Exhibit A to the Complaint, and which Plaintiffs would *not* have been able to obtain at trial.  Specifically, the Settlement requires that Defendants remove access barriers in the Stadium's external stairways, including barriers such as abrupt nosings on the risers of the stairs that constitute a tripping hazard.  Settlement at § III.A.1.s.  This important access and safety work will be performed on the external stairs at Gate A and Gate C, as well as the internal stairs at Toyota Gate F, the stairs within the Stadium bowl itself, and the stairs within the United Club.  *Id.*

First Aid and Breastfeeding Stations.  Work required to make the Dignity Health First Aid Room on Level 300 (Main Concourse) accessible are specified in § III.a.1.p. of the Settlement Agreement.  The Settlement also requires that all of the inaccessible conditions in the Stadium's breastfeeding stations be remediated so that women with disabilities will be able to access these important features.  Settlement at § III.A.1.p.

Restaurants.  The Settlement Agreement requires Defendants to ensure that the Stadium restaurants remediate numerous access barriers identified in Exhibit A, including inaccessible entrances, paths of travel, dining areas, tables and restrooms.  Settlement at § III.A.2.

Auditorium – Section III.A.1.r. of the Settlement Agreement requires that Defendants provide an accessible means for gaining access to the stage and integrated accessible and companion seating.

Ticketing.  The Settlement Agreement provides important relief regarding ticketing.

Defendants will no longer require Class Members to purchase or exchange standard tickets for tickets for accessible seating at the Stadium Box Office.  Instead, Class Members may now simply purchase or exchange standard tickets for tickets for accessible seating electronically without being required to go to the Box Office in-person.  Settlement at § III.C.

Other Relief.  The Settlement requires Defendants to provide accessible shuttles and golf carts, to maintain the Stadium's access features in operating condition by performing maintenance on a specific schedule, and to provide Class Members with a complaint and grievance procedure regarding access or service problems.  Settlement at §§ III.B; III.E; X.

Compliance Period and Deadlines.  In all cases, express deadlines are set forth in the Settlement Agreement for the completion of the specified remediation work to be undertaken.  Although these deadlines vary depending on the scope of the work and other factors identified during the settlement negotiations, all of the remedial work must be completed within a three-year compliance period.  Settlement at § II.D.

Monitoring.  Under the Settlement Agreement's reporting and monitoring provisions, Class Counsel will be able to ensure that Defendants complete all of the access work and other remedial measures required by the Settlement.  The Settlement Agreement includes periodic reporting requirements for Defendants to provide specific information regarding their progress and the status of scheduled access work.  Settlement at § X.B.  Class Counsel are entitled to review designs, drawings, plans and specifications for the access work and to conduct semi-annual inspections to monitor compliance.  Settlement at §§ X.B.; XI.  The Settlement Agreement provides for reasonable attorneys' fees for Class Counsel and for reasonable expert costs on an annual basis in connection with these monitoring and enforcement activities.  Settlement at § 14.B.

Continuing Jurisdiction.  This Court will also retain jurisdiction in the event that the parties are unable to resolve any disputes regarding implementation.  Settlement at § XV.

In summary, the Settlement Agreement constitutes an excellent result for the Plaintiff Classes.  It provides Class Members with comprehensive injunctive relief, including a detailed remedial plan to remove over 2,674 access barriers which will guarantee that the Stadium and its related facilities provide full and equal access as required by the ADA and the Unruh Act.  Wallace Decl. ¶¶ 25-35.  It

15

1    is doubtful that this Court could have ordered greater injunctive relief if Plaintiffs prevailed at trial.

2              **b.    Damages**

3         A proposed settlement is not to be measured against "a hypothetical or speculative measure of

4    what might have been achieved." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*,

5    688 F.2d 615, 625 (9th Cir. 1982); *Nat'l Rural Telecomm's Coop v. Directv, Inc.*, 221 F.R.D. 523, 527

6    (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it

7    amounts to only a fraction of the potential recovery that might be available to the class members at

8    trial.").

9         The Class damages fund represents an outstanding result for the Class.  As an initial matter, the

10   $24 million damages fund in this case is the largest ever obtained in a physical access case under Title

11   III of the ADA with Unruh Act damages claims.  Wallace Decl. ¶ 61, and comparable settlement chart

12   attached thereto as Exhibit 3.  As discussed, the non-reversionary fund will guarantee a substantial

13   recovery to the Damages Class Members who make claims, with a minimum recovery of $4,000 and a

14   maximum recovery of $80,000 per person depending on the number of visits during which the Class

15   Member encountered an access barrier that caused them "difficulty, discomfort or embarrassment."

16   Settlement at §§ VII.A; VII.D; VIII.A.1.

17        The $24 million recovery compares favorably with Plaintiffs' estimates of total exposure.  As

18   one point of comparison, the $24 million settlement amount represents 34.3% of the approximate $70

19   million outside exposure analysis calculated by Plaintiffs' damages expert.  Plaintiffs' aggregate

20   damages model was based on the assumption that a Class Member was in attendance at a particular

21   event if 100% of the seats sold to that Class Member were used. If a lesser percentage of seats were

22   actually used for a particular event, the damages calculation for that Class Member was based on a

23   corresponding percentage of the statutory amount of $4,000. This assumes the seats were actually sold

24   to and used by Class Members with mobility disabilities, and that they encountered at least one barrier

25   that caused them "difficulty, discomfort or embarrassment" on each occasion that they attend an

26   event.[2]  Wallace Decl. ¶ 38.    Plaintiffs' damages expert calculated interest on these claims at

27

28
_____

[2] Under the Unruh Act, a plaintiff may recover the $4,000 minimum per visit to a place of public

1  approximately $9 million, using a 10% interest rate which was likely to be disputed at trial.  *Id.*  These

2  figures are based on Plaintiffs' assessment of a best-case-scenario.  *Id.*  To have obtained such a result

3  at trial, Plaintiffs would have had to prove that all Damages Class Members visited the Stadium on at

4  least one occasion and encountered a barrier that caused them "difficulty, discomfort or

5  embarrassment."  During expert discovery, Defendants strongly disputed that Plaintiffs' damages

6  model provided a reliable and accurate means of calculating the number of visits on which Class

7  Members encountered such barriers.  They also strongly disputed that such claims could be resolved

8  manageably at a class trial.  Indeed, the uncertain and risky nature of calculating the number of visits

9  by disabled class members to a public accommodation which would qualify for a $4,000 damages

10  award was recognized by Judge Alsup in his decision in the *Castaneda* case, and was a factor in his

11  approval of the damages fund.  *Castaneda v. Burger King Corp.*, No. C 08—04262 WHA, 2010 WL

12  2735091, at *3 (N.D. Cal. July 12, 2010).

13        Moreover, the Damages Class' recovery of 34.3% of Plaintiffs' maximum estimated class

14  damages compares favorably with recoveries that have been held to be fair, reasonable and adequate in

15  other class actions.  *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal.

16  2018) (approving recovery of 14.5% of the "projected recovery that Settlement Class Members would

17  be entitled to if they prevailed on their claims" and collecting authorities); *Edwards v. Nat'l Milk

18  Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *7 (N.D. Cal. June 26, 2017)

19  (approving recovery of 30% of maximum damages); *In re Optical Disk Drive Products Antitrust Litig.*,

20  No. 3:10-md-2143 RS, 2016 WL 7364803, at *5 (N.D. Cal. Dec. 12, 2016) (approving 31% of

21  maximum damages); *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *5 (N.D.

22  Cal. Jan. 11, 2016) (approving recovery of 33.2% of maximum damages and collecting authorities).

23        **c.**    <u>**The Settlement Does Not Permit Any Reversion**</u>

24        The Settlement does not permit any reversion of any part of the Class damages fund to

25  Defendants.  The entire $24 million class damages fund will be distributed to Class Members who

26  make claims.  Settlement at § VIII.

27

28

accommodation, not per barrier encountered on any visit.  Cal. Civ. Code § 55.56(a).

### d.  The Litigation Risks Support Preliminary Approval

The potential risks attending further litigation support preliminary approval.  Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  *Nat'l Rural Telecomm's Coop.*, 221 F.R.D. at 526.  The "inherent" risks of protracted litigation, trial and appeal are all factors that militate in favor of settlement in systemic access cases under the ADA.  *See, e.g.*, *Castaneda*, 2010 WL 2735091, at *3; *Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*, No. C 06—5125 SBA, 2010 WL 2228531, at *3 (N.D. Cal. June 2, 2010) ("The settlement affords significant and immediate relief that may never have materialized had the trial concluded.").  Proceeding to the series of short trials regarding groups of barriers that this Court has ordered (and the inevitable appeals of those decisions) would have added many years to the resolution of this case.  Given the importance of the accessibility of the Stadium to the Class Members lives, the potential for years of delayed recovery is a significant concern.  Considered against the risks of continued litigation, and the importance of the accessibility of the Stadium and its related facilities to the Class Members, the totality of relief provided under the proposed Settlement is well within the range of reasonableness.  Wallace Decl. ¶ 61.

### 5.  The Proposed Service Awards to the Named Plaintiffs Are Fair and Reasonable and Routinely Approved

Under the Settlement, service awards of $7,500 will be paid to the three Named Plaintiffs.  *See* Settlement at § XIII.B.  These service awards are nominal, and are appropriate in light of the Named Plaintiffs' specific efforts to assist the litigation.  The service awards will be paid separately by Defendants and will not be paid from the Class damages fund.  These proposed amounts are specified in the class settlement notice and Class Members will have an opportunity to comment on them.

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958-59.  The factors courts use in evaluating whether to approve an award include: "'1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal

difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation[;] and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.'"  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The amounts requested here are reasonable and within the range approved by courts in this District.  *See, e.g. Gaudin v. Saxon Mortgage Servs., Inc.*, No. 11-cv-01663-JST, 2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) (finding service award of $15,000 to be "fair and reasonable"); *Van Vranken*, 901 F. Supp. at 299 (approving $50,000 participation award to plaintiffs); *Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS, 2016 WL 7785852, at *2 (N.D. Cal. Dec. 9, 2016) (approving $15,000 service awards for each of the three named plaintiffs).

All of the above factors support the service awards requested here.  The relatively small service awards are intended to compensate the Named Plaintiffs for the important role they played for the benefit of the Classes, and the substantial time, effort, and risks they undertook to secure the resulting Settlement.  They accepted the responsibility of prosecuting this case for the benefit of all Class Members.  Wallace Decl. ¶ 42.  They provided information during lengthy interviews, responded to extensive written discovery, provided documents, identified witnesses, assisted Class Counsel in preparing for depositions and in seeking discovery, and prepared for and sat for their own depositions.  *Id.*  They also assisted in preparing and evaluating the case for mediation, and in the settlement process itself.  *Id.*  As will be discussed in the motion for service awards that Plaintiffs will file during the class notice period, the amount sought is reasonable under the circumstances.

## 6. Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs

As prevailing parties by virtue of obtaining a court-enforceable Settlement, Plaintiffs are entitled to recover their reasonable attorneys' fees, costs and litigation expenses herein.  *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  Plaintiffs' motion for attorneys' fees, expenses and costs, also to be filed during the class notice period, will seek compensation under the lodestar-multiplier method.  The lodestar method is appropriate for civil rights cases involving fee shifting statutes such as the ADA.  *See, e.g.*, *In re Hyundai and Kia*, 926 F.3d at 570; *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011); *Hanlon*, 150 F.3d at 1029.

1    Class Counsel will apply to the Court for an award of reasonable attorneys' fees, costs and

2    expenses in an amount not to exceed $13,457,152.40.  *See* Settlement at § XIV.  Like the Named

3    Plaintiffs' service awards, Class Counsel's attorneys' fees, expenses, and costs will not be paid from

4    the $24 million Damages Fund, but will instead be paid separately by the Defendants.   When they file

5    their motion for attorneys' fees, expenses and costs, Class Counsel will demonstrate that this fee

6    amount is reasonable based on the lodestar method plus a multiplier of approximately 1.25.  Wallace

7    Decl. ¶ 44.  To date, Class Counsel have expended approximately 17,224.5 hours in litigating this case.

8    *Id.*  Class Counsel have incurred more than $1,300,000 in costs and expenses.  Plaintiffs will also

9    demonstrate that their costs and expenses were reasonably incurred.

10    The Ninth Circuit has held that a cross-check against the common fund method is not required

11    where, as here, the lodestar method applies.  *In re Hyundai and Kia*, 926 F.3d at 571 ("[W]e do not

12    require courts employing the lodestar method to perform a 'crosscheck' using the percentage method.

13    This would make 'little logical sense,' because 'the lodestar method yields a fee that is presumptively

14    reasonable.'") (citations omitted).  Indeed, use of the common fund method would be particularly

15    inappropriate in this case because of the extensive injunctive relief provided by the Settlement (the

16    great benefits of which to the Plaintiff Classes cannot be quantified in monetary terms).  *Id*. at 570.

17    In any event, Plaintiffs' requested fees and costs would also be reasonable under the common

18    fund method given the results achieved in this case and the risks undertaken by Class Counsel.

19    Plaintiffs' requested fees would equal 32.5% of a hypothetical common fund comprised of the sum of

20    $24 million dollars in damages and $13.46 million in fees and costs.  The Ninth Circuit has held that

21    fee awards of 33% or more of a common fund are permissible.  *In re Hyundai and Kia*, 926 F.3d at

22    571; *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also*, *Castaneda*, 2010 WL

23    2735091, at *3 (approving fee award of 33% of the damages fund in ADA access case against Burger

24    King because "the monetary damages in this settlement –although quite substantial—are only part of

25    the relief obtained for class members" under the settlement which also required "injunctive relief at the

26    ten restaurants in question to eliminate accessibility barriers").

27    The attorney's fee arrangement does not improperly favor Class Counsel at the expense of the

28    Classes.  In *Bluetooth*, the Ninth Circuit identified three indicia of collusive fee arrangements: "(1)

1    when counsel receive a disproportionate distribution of the settlement, or when the class receives no

2    monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a 'clear

3    sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . .

4    . ; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to

5    the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947.  Although the Settlement

6    includes a "clear sailing" provision and allows for the reversion of unawarded attorneys' fees, the

7    absence of collusion is clearly demonstrated by the facts of this case.  First, the settlement was reached

8    after the Court granted class certification.  Thus, the heightened-level of scrutiny applicable to pre-

9    certification settlements at issue in *Bluetooth* does not apply.  *Id.* at 946.  Second, the attorneys' fees

10   requested by Class Counsel are amply justified under both the lodestar and common fund

11   methodologies, as discussed above.  Where "the fee award is clearly reasonable as viewed through the

12   appropriate application of either the lodestar or percentage-of-recovery methods, the chance of

13   collusion narrows to a slim possibility." *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918, 925 (9th Cir.

14   2014) (vacated after appeal dismissed).  Moreover, the parties did not negotiate attorneys' fees until

15   after all relief issues had been resolved.  Finally, the presence of *Bluetooth* indicia does not foreclose

16   settlement approval.  Rather, "it is sufficient that a district court recognizes and balances potentially

17   collusive provisions, such as the reversion to defendants of unclaimed funds, against the other terms of

18   the settlement agreement." *Laguna*, 753 F.3d at 925.  Here, the proposed Settlement represents an

19   outstanding result for the Plaintiff Classes, including comprehensive injunctive relief and the largest

20   class damages fund ever obtained in a case challenging physical access to a place of public

21   accommodation.  Accordingly, the substantial benefits of the Settlement demonstrate that the interests

22   of Class Counsel did not "infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654

23   F.3d at 947.

24         In their Motion for fees, costs and expenses pursuant to Rule 23(h), Class Counsel will

25   demonstrate that when considered under both the lodestar and percentage of the fund methods, Class

26   Counsel's fees and costs are reasonable.

27

28

**C.      The Proposed Notice Satisfies Due Process and Should Be Approved**

Under Rule 23(e) and due process requirements, the parties to a class action settlement must distribute notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Borchardt v. City of Tucson*, 706 Fed. App'x 372, 373 (9th Cir. 2017).  The settlement must provide "the best notice that is practicable under the circumstances . . . ."  Fed. R. Civ. P. 23(c)(2)(B); *see also* W. Rubenstein, Newberg on Class Actions (5th ed. 2014) § 8.5.  There is no requirement that all class members receive actual notice; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974).

The Parties' proposed notice plan complies with Rule 23(e) and due process because individual notice will be directed to all Class Members who can be identified through reasonable effort.  Once the Settlement Administrator has searched for updated mailing addresses based on information in Defendants' business records, the Short Form Notice will be sent by mail and/or email to all identifiable Class Members.  The Settlement Administrator will also send one or more email reminders prior to the claim deadline to Damages Class Members who have not yet filed a claim.  In addition, the Long Form Notice will be posted on the settlement website, on Defendants' websites, and at conspicuous locations throughout Levi's Stadium.  The Short Form Notice will also be distributed to organizations that serve individuals with mobility disabilities.  The notice is therefore reasonably calculated to reach members of all three Classes.  *See, e.g.*, *Connolly v. Weight Watchers N. Am. Inc.*, Case No. 14-cv-01983-TEH, 2014 WL 3611143, at *4 (N.D. Cal. July 21, 2014) (individualized notice by first class mail only was sufficient).

In addition, the content of the proposed notice complies with Rule 23(e) and due process requirements.  The Long Form Notice, attached as Exhibit K to the Settlement Agreement, informs Class Members of their right to object to the Settlement and that, if they are in the Damages Class, they have a right to either opt out of the Settlement or file a claim for a monetary award.  It provides a digestible overview of the Settlement's injunctive relief.  It includes contact information for Class Counsel, the address for a Settlement Website maintained by the Settlement Administrator and containing the Agreement and other important documents, and instructions on how to access the case

docket.  It states the date of the Fairness Hearing and that the date may change without further notice to the Class.  The Short Form Notice, attached as Exhibit L to the Settlement Agreement, provides the same important information as the Long Form Notice in a summary form.  Both the Long Form Notice and the Short Form Notice are easy to understand, and "strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."  *Bautista v. Harvest Mgmt. Sub LLC*, Case No. 12-cv-10004FMO (CWx), 2013 WL 12125768, at *17 (C.D. Cal. Oct. 16, 2013) (citation omitted).  Accordingly, the proposed notice should be approved.

**D.**   **The Plan to Allocate Settlement Funds Should Be Preliminarily Approved**

The proposed allocation of the $24,000,000 damages fund is fair, reasonable, and adequate. Each Damages Class Member who submits a timely, valid, and approved claim form will be entitled to receive a minimum award of $4,000 unless the total number of approved claims exceeds 6,000. Settlement at § VIII.A.1.  In that event, the Damages Fund will be allocated on a *pro rata* basis such that the minimum award will be less than $4,000.  *Id.*  If fewer than 6,000 approved claims are submitted, each Damages Class Member will receive a minimum award of $4,000, and the remainder of the Damages Fund will be allocated on a *pro rata* basis to Damages Class Members who made more than one Qualifying Visit to the Stadium, with a maximum award of $80,000.  *Id.*  Any residual amounts remaining in the Damages Fund 400 after days the initial distribution will be either allocated to all eligible claims on a *pro rata* basis as part of a second distribution, or, if less than $100,000 is available for a second distribution, paid to the two *cy pres* recipients in equal portions.  Settlement at § VIII.B.  No portion of the Damages Fund will revert to Defendants.  *Id.*  Plans of allocation that divide settlement funds *pro rata* based on the extent of injury, such as the one herein, are routinely approved as "cost effective, simple, and fundamentally fair."  *In re High-Tech Employees Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sep. 2, 2015); *see also Rodriguez*, 563 F.3d at 957 (affirming approval of settlement in which monetary fund was allocated *pro rata*).

**E.**   **The Proposed Settlement Administrator**

After receiving competing proposals from two class action settlement administrators, the parties selected KCC to administer the Settlement.  Wallace Decl. ¶ 55.  KCC is a highly reputable class action settlement administrator that has implemented over 6,500 class action settlements.  KCC is

1    familiar with this matter as it successfully distributed the class certification notice approved by the

2    Court in December 2018.  (ECF 278.)  KCC estimates the cost of settlement administration to range

3    between $64,702 and $95,832 depending on the number of claims submitted (3,000 to 7,000).  *Id.*  The

4    projected costs of administration are reasonable given the amount of work necessary to distribute

5    notice and process claims for thousands of Damages Class Members.  The cost of settlement

6    administration will not be deducted from the Damages Fund.  Instead, Defendants will pay for this cost

7    separately.  Settlement at § V.A.  Collectively, Class Counsel have used KCC 13 times within the last

8    two years to distribute class certification notice or administer class settlements. Wallace Decl. ¶ 55.

9    **F.    Cy Pres**

10        The *cy pres* doctrine allows for the "next best distribution" of unclaimed portions of class

11   action settlements.  *See e.g.*, *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011).  A *cy pres*

12   award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the

13   silent class members," and must not benefit a group "too remote from the plaintiff class."  *Dennis v.*

14   *Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).  Here, any balance of a $100,000 or less remaining in

15   the Damages Fund 400 days after the date of distribution will be divided evenly between the Silicon

16   Valley Independent Living Center and the Center for Independence of Individuals with Disabilities,

17   San Mateo.  Settlement at § VIII.B.  Both of these organizations provide programs and services that

18   help persons with mobility disabilities lead independent lives.  Wallace Decl. ¶ 41.  In this way, their

19   work furthers the primary goals of the ADA and other disability non-discrimination laws, including

20   "equality of opportunity, full participation, independent living, and economic self-sufficiency."  42

21   U.S.C. § 12101(a)(7).  Moreover, these organizations serve persons with mobility disabilities who live

22   in Santa Clara and San Mateo counties.  People who receive assistance from these organizations may

23   be Class Members in this case, and are likely to attend events at the Stadium.  Accordingly, providing

24   them with the residue of the Damages Fund amounts to the "next best" use of that money.

25   **G.    Required Notice to the Class and CAFA Notice.**

26        Defendants are responsible for providing notice under the Class Action Fairness Act (CAFA).

27   Settlement at § V.B.  Defendants will provide CAFA notice within ten (10) days of the filing of this

28   motion.  *Id.*  Moreover, 28 U.S.C. § 1712 is inapplicable to the proposed settlement because it does not

provide for the recovery of coupons to Plaintiff Class Members.

## H.   Plaintiffs Have Disclosed the Only Side Agreement Produced to Them By Defendants

Plaintiffs have provided the Court with a copy of the only side agreement produced to them by Defendants, and are aware of no other such agreements.  Wallace Decl. ¶ 58; Exh. 4.

## I.   The Court Should Approve the Proposed Scheduling Order and Set a Date for the Fairness Hearing

The parties propose the following schedule for distribution of notice to the Class Members and the deadlines for claims, opt outs and objections.  The parties also request that the Court set a Final Approval Hearing:

| | |
|---|---|
| Deadline for Defendants to provide CAFA notice | 10 days after preliminary approval |
| Deadline for Defendants to provide updated contact information for Plaintiff Class Members to Settlement Administrator | 14 days after preliminary approval |
| Deadline to distribute short form notice to Plaintiff Class Members, post long form notice at Levi's Stadium, post long form notice on websites and social media, and send short form notice to disability organizations | 21 days after preliminary approval |
| Deadline for Plaintiffs to file their motion for reasonable attorneys' fees, costs, and expenses and motion for service awards | 30 days after distribution of notice |
| Deadline for Plaintiff Class Members to object or opt out | 45 days after distribution of notice |
| Deadline for Damages Class Members to file claims | 90 days after distribution of notice |
| Deadline for the parties to file their motion for final approval of settlement and response to objections | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | TBD |
| Deadline for Settlement Administrator to complete review and determine validity of all claims | 90 days after deadline for Damages Class Members to file claims |

## IV.   CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that their motion be granted.

Dated:  October 7, 2019

Respectfully submitted,

/s/ *Guy B. Wallace*
Guy B. Wallace

*Attorneys for Plaintiffs and the Plaintiff Classes*

1

**CERTIFICATE OF SERVICE**

2

      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court

3

for the United States District Court, Northern District of California, by using the Court's CM/ECF

4

system on October 7, 2018.

5

      I certify that all participants in the case are registered CM/ECF users and that service will be

6

accomplished by the Court's CM/ECF system.

7

 Dated: October 7, 2019

8

                           */s/ Guy B. Wallace*
                           Guy B. Wallace

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28