EXHIBIT 1

Guy B. Wallace (SBN 176151)
gwallace@schneiderwallace.com
Mark T. Johnson (SBN 76904)
mjohnson@schneiderwallace.com
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTYKNS LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
Fax: (415) 421-7105

Attorneys for the Plaintiff Classes

Maria M. Lampasona (SBN 259675)
lampasona@rankinlaw.com
Taylor Pohle (SBN 299794)
pohle@rankinlaw.com
RANKIN, SHUEY, RANUCCI
MINTZ, LAMPASONA & REYNOLDS
2030 Franklin Street, Sixth Floor
Oakland, CA 94612-3541
Tel: (510) 433-2600
Fax: (510) 433-2699

Attorneys for Defendants

[additional counsel for the parties listed below]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ABDUL NEVAREZ and PRISCILLA NEVAREZ, on behalf of themselves and all others similarly situated, and SEBASTIAN DEFRANCESCO, <br><br> Plaintiffs, <br><br> vs. <br><br> FORTY NINERS FOOTBALL COMPANY, LLC, a Delaware limited liability company, et al., <br><br> Defendants. | Case No. 5:16-cv-07013 LHK (SVK) <br><br> **CLASS ACTION** <br><br> **SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS** |

1  Additional Counsel:

2  Adam B. Wolf (SBN 215914)
   awolf@pwcklegal.com
3  Catherine Cabalo (SBN 248198)
   ccabalo@pwcklegeal.com
4  PEIFFER WOLF CARR & KANE
   4 Embarcadero Center, 14th Floor
5  San Francisco, CA 94104
   Tel: (415) 766-3592
6  Fax: (415) 402-0058

7  Linda M. Dardarian (SBN 131001)
   ldardarian@gbdhlegal.com
8  Andrew P. Lee (SBN 245903)
   alee@gbdhlegal.com
9  Katharine L. Fisher (SBN 305413)
   kfisher@gbdhlegal.com
10 GOLDSTEIN, BORGEN, DARDARIAN & HO
   300 Lakeside Drive, Suite 1000
11 Oakland, CA 94612
   Tel: (510) 763-9800
12 Fax: (415) 421-7105

13 Attorneys for Plaintiffs and the Plaintiff Classes

14

15 Dion Cominos (SBN 136522)
   dcominos@grsm.com
16 Brian P. Maschler (SBN 111824)
   bmaschler@grsm.com
17 GORDON REES SCULLY MANSUKHANI, LLP
   275 Battery Street, 20th Floor
18 San Francisco, CA 94111
   Tel: (415) 986-5900
19 Fax: (415) 986-8054

20 Attorneys for Defendants

21

22

23

24

25

26

27

28

---

# I.   <u>RECITALS</u>

1.      This Court-Enforceable Settlement Agreement and Release of Claims ("Agreement") is made and entered into by and among Plaintiffs Abdul Nevarez, Priscilla Nevarez, on behalf of themselves and all others similarly situated, and Sebastian DeFrancesco (collectively "Plaintiffs" or "Named Plaintiffs") and Defendants Forty Niners Football Company LLC, Forty Niners SC Stadium Company LLC, Forty Niners Stadium Management Company LLC (collectively, the "Forty Niners Defendants"), the City of Santa Clara and the Santa Clara Stadium Authority (collectively, the "Santa Clara Defendants").  The Forty Niners Defendants and the Santa Clara Stadium Authority are collectively referred to herein as "Stadium Defendants."  The Forty Niners Defendants and the Santa Clara Defendants are collectively referred to herein as "Defendants."

2.      On December 7, 2016, Named Plaintiffs Abdul Nevarez and Priscilla Nevarez commenced an action in the United States District Court for the Northern District of California, San Jose Division, Case No. 5:16-cv-07013-LHK (SVK) (the "Lawsuit" or "Action"), against Defendants, alleging *inter alia,* discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), Title III of the ADA, and the Unruh Civil Rights Act, California Civil Code § 51, *et seq*.  Named Plaintiff Sebastian DeFrancesco joined the case upon the filing of Plaintiffs' Second Amended Complaint on April 13, 2017.  Plaintiffs filed their Fourth Amended Complaint on July 27, 2018.  Plaintiffs sought declaratory and injunctive relief and damages under the foregoing statutes.  Defendants filed their Answer on September 6, 2018, denying Plaintiffs' substantive claims and allegations and asserting various affirmative defenses.

3.      On July 12, 2018, the Court in the Lawsuit, the Honorable Lucy H. Koh, presiding, issued an Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification.  In this Order, the Court certified the following Plaintiff classes:
**Injunctive Relief Class:**  1. All persons with mobility disabilities who use wheelchairs, scooters, or other mobility aids who will attempt to purchase accessible seating for a

public event at Levi's Stadium and who will be denied equal access to the Stadium's facilities, services, accessible seating, parking, amenities, and privileges, including ticketing, during the three years prior to the filing of the Complaint herein through the conclusion of this action.

**Companion Injunctive Relief Class**:  2. All persons who are companions of persons with mobility disabilities who use wheelchairs, scooters or other mobility aids and who have used or will use companion seating for public events located at Levi's Stadium during the three years prior to the filing of the Complaint herein through the conclusion of this action.

**Damages Class**:  3. All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who have purchased, attempted to purchase, or for whom third parties purchased accessible seating and who have been denied equal access to Levi's Stadium's facilities, services, accessible seating, parking, amenities, and privileges at an event controlled by the Forty Niners Football Company, LLC, Forty Niners SC Stadium Company, LLC, or Forty Niners Stadium Management Company, LLC, during the two years prior to the filing of the  Complaint herein through the conclusion of this action.

4.     The Lawsuit has been vigorously prosecuted and defended.  Trial in this matter was scheduled to begin on April 22, 2019.  By Order dated February 5, 2019, the Court vacated that trial date, and ordered that the trial would proceed in phases.  On April 4, 2019, the Court set a new trial date for Phase I of the case to begin on November 18, 2019.

5.     Defendants deny any and all liability to the Named Plaintiffs and to the Classes, and deny that they have violated any laws, including without limitation, the ADA and the Unruh Civil Rights Act, pertaining to access for persons with mobility disabilities and their companions.

## II.   DEFINITIONS

### A.   Access or Accessible

"Access" or "accessible," unless otherwise indicated, mean and refer to facilities and elements that comply with the standards set forth in the 2010 ADA Standards for Accessible Design (hereafter "2010 ADA Standards" or "2010 ADAS") or Title 24 of the 2019 California Building Code (hereafter "Title 24" or "the CBC") whichever provides greater access for persons with Mobility Disabilities.  Unless otherwise indicated, equitable relief measures undertaken pursuant to Section III of this Agreement shall be performed in compliance with the 2010 ADA Standards or the 2019 CBC whichever provides greater access for persons with Mobility Disabilities.

### B.   Class Counsel

"Class Counsel" means and refers to Schneider Wallace Cottrell Konecky Wotkyns LLP, Peiffer Wolf Carr & Kane, and/or Goldstein, Borgen, Dardarian & Ho, including the attorneys therein.

### C.   Class Representatives

"Class Representatives" means and refers to Plaintiffs Abdul Nevarez and Sebastian DeFrancesco for the Injunctive Relief Class, Plaintiff Priscilla Nevarez for the Companion Injunctive Relief Class, and Plaintiff Abdul Nevarez for the Damages Class.

### D.   Compliance Period

"Compliance Period" means and refers to the period during which all obligations under this Agreement must be completed, subject to the schedule set forth herein, which period shall extend three (3) years from the Effective Date of this Agreement.  The Parties agree that the Agreement shall become effective upon Final Approval by the District Court.  The Parties further agree that following the Compliance Period there shall be a six (6)-month Post-Compliance Review Period, during which the Parties may conduct a final review, confirmation and reporting and/or motion to the Court about the completion of the obligations under this Agreement.

**E.**   **Conditions, or Non-Compliant Conditions**

"Conditions" and "Non-Compliant Conditions" mean those physical conditions of facilities and elements that Plaintiffs assert are not compliant with applicable 2010 ADA Standards, the 1991 Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), or the 2016 California Building Code, whichever provides greater access for persons with Mobility Disabilities, and includes all of the conditions set forth in Exhibit A.

**F.**   **Effective Date**

"Effective Date" means and refers to the date upon which the District Court grants Final Approval of the Agreement.

**G.**   **Final Approval**

"Final Approval" means and refers to the Order by the District Court, after notice and the holding of a fairness hearing, granting final approval of this Agreement.

**H.**   **Mobility Disability**

"Mobility Disability" or "Mobility Disabilities" means and refers to any impairment or medical condition that limits a person's ability to stand, walk, ambulate, maneuver around objects, or to ascend or descend steps or slopes.  As noted in Section I.3, above, the Plaintiff Classes in the Lawsuit include persons with mobility disabilities who use wheelchairs, scooters or other mobility aids.

**I.**   **New Construction and Alterations**

"Alterations" means and refers to any alterations performed by or on behalf of Defendants after the January 26, 1992 effective date of Title II of the ADA, and "New Construction" means and refers to any new construction performed by or on behalf of Defendants after January 26, 1993, as set forth in 28 C.F.R. §§ 35.151, 36.401, and 36.402.

**J.**   **Notice**

"Notice," with the exception of notice to the Classes of the proposed settlement of this matter, shall mean a written notification to the attorneys for the Defendants, and/or

to the attorneys for the Classes, or those attorneys' designees.  Unless otherwise stated herein or in the Federal Rules of Civil Procedure or Local Rules of the United States District Court for the Northern District of California, notice shall be provided within a reasonable period of time.

**K.   Parties**

"Parties" or "Party" means and refers to Plaintiffs, members of the Plaintiff Classes, and Defendants, or any of them.

**L.   Path of Travel**

"Path of Travel" shall mean and refer to a continuous unobstructed way of pedestrian passage by means of which a newly constructed or altered area may be approached, entered and exited, and which connects the newly constructed or altered area with an exterior approach (including sidewalks, streets and parking areas), an entrance to the Stadium, and/or other parts of the Stadium.

**M.   Pedestrian Right(s) of Way**

"Pedestrian Right(s) of Way" means or refers to any public outdoor pedestrian right of way, sidewalk, crosswalk, curb, curb ramp, walkway, walk, pedestrian undercrossing or overcrossing, or other pedestrian pathway serving Levi's Stadium.

**N.   Physical Access Barrier**

"Physical access barrier" means and refers to conditions that are not compliant with the 2010 ADA Standards, the 1991 Americans with Disabilities Act Accessibility Guidelines ("ADAAG") or the 2016 California Building Code.

**O.   Plaintiff Class or Plaintiff Classes**

"Plaintiff Class" means and refers to all persons who will fall within the definitions of Injunctive Relief Classes and/or Damages Class defined in Section I.3, above.

**P.   Post-Compliance Review Period**

"Post-Compliance Review Period" means and refers to that six (6)-month period following the Compliance Period during which the Parties shall conduct a final review, confirmation and reporting or motions to the District Court about the completion of the

5

obligations set forth in this Agreement.  The District Court shall retain jurisdiction over this Agreement until the Post-Compliance Review Period has been completed and any disputes are finally resolved, whichever is later.

**Q.**  **Program Access or Programmatic Access**

"Program Access" or "Programmatic Access" means and refers to applicable federal and California law, including Title II of the ADA, 28 C.F.R. § 35.150, and California Health & Safety Code § 11135, mandating that a public entity such as the City of Santa Clara or the Santa Clara Stadium Authority operate each service, program or activity so that the service, program or activity, when viewed in its entirety, is readily accessible to and usable by persons with Mobility Disabilities.

**R.**  **Settlement Agreement**

"Settlement Agreement" and "Agreement" mean and refer to this document and the attachments and exhibits thereto.

**S.**  **Temporary Route(s)**

"Temporary Routes" means and refers to pedestrian walks or routes provided around or through areas in which work is being performed on the Pedestrian Right(s) of Way resulting in the obstruction of those rights of way or portions thereof on any day that a public event is held at Levi's Stadium, or otherwise for any period of time greater than two (2) days.

## III.   EQUITABLE RELIEF

Upon entry of Final Approval by the District Court, the Forty Niners Defendants and the Santa Clara Defendants shall perform the equitable relief measures with respect to the remediation of alleged physical Conditions ("Access Work") and adopt and implement the policy initiatives described herein and identified in Exhibits A through J to this Agreement.  The remedial measures, and the schedules and timetables for completion of these items, are set forth herein and in Exhibits A-J.

In the Agreement, various equitable measures and responsibility for performing them are allocated as between the Forty Niners Defendants and the Santa Clara

Defendants, respectively.  Such allocations or designations in the Agreement shall not prejudice Plaintiffs' position that, in the event of a breach of the Agreement, they may seek relief from any and all Defendants.  Defendants, in turn, reserve all rights and defenses with respect to such claims.

The Access Work that Defendants will complete under this Agreement is identified herein and in Exhibits A-J, and includes but is not limited to the following:

**A.   Access Work**

**1.   Levi's Stadium**

The Stadium Defendants shall make the following facilities and elements in Levi's Stadium fully compliant with the 2010 ADAS and the 2019 CBC, whichever provides greater access for persons with Mobility Disabilities.  By no later than the end of the Compliance Period, subject to the schedule indicated below, the Stadium Defendants shall remediate the following Conditions:

a.   Paths of Travel to Entrances to Levi's Stadium.  The Stadium Defendants shall remediate the Conditions identified in Exhibit A pursuant to the remedial measures set forth therein.  Defendants shall complete this Access Work by no later than nine (9) months after the Effective Date or nine (9) months after February 15, 2020, whichever is later.

b.   Entrances to Levi's Stadium. The Stadium Defendants shall remediate the Conditions identified in Exhibit A pursuant to the remedial measures set forth therein.  With respect to the entrance plaza, the Stadium Defendants shall provide at least one Accessible Path of Travel that is no less than eight feet in width, which shall connect the entrances at Gate A to the entry gates to the team store entrances, to the entry door to the elevator at SAP tower at Plaza A, to the gates leading to the entry plaza to SAP tower, to the directional and informational signage at Plaza A, to the "catch" statues of Joe Montana and Dwight Clark, to the gates and path of travel connecting Plaza A with the 49ers Museum, to the entry door to the elevator adjacent the Museum, to the Box Office and to all Box Office windows required to be Accessible, and to Bourbon Steak, Bourbon

Pub and Tailgate restaurants.  In addition, there shall be an Accessible Path of Travel leading from the Main Lot to Gate A, and the designated Accessible entrance gates shall be at least 48 inches in width.  There shall be an Accessible Path of Travel no less than eight feet in width from the accessible parking spaces in the Main Lot to each of the Accessible gates at the Canopies being used for events, and that connects those Canopies and their Accessible gates to Gate A and Gate C.  All such Accessible Paths of Travel shall be prominently signed and marked (including but not limited to use of overhead signage) so that they may be located by persons with Mobility Disabilities.  All Accessible Paths of Travel shall use paint or other markings that identify the Accessible Path of Travel.  Specifications showing the work to be performed are attached to this Agreement as Exhibit B.  To the maximum extent feasible, the Accessible Paths of Travel shall not require remedial work in areas in the Stadium Plaza that include heritage bricks as of August 1, 2019.  Defendants shall complete this Access Work by no later than nine (9) months after the Effective Date or nine (9) months after February 15, 2020, whichever is later.

            c.      <u>Stadium Box Office</u>.  The Stadium Defendants shall remediate the Conditions identified in Exhibit A with respect to the Stadium's Box Office, ticketing windows and exterior approaches thereto, pursuant to the specifications set forth in Exhibit C.  The Stadium Defendants shall provide signage indicating which window(s) will be designated as Accessible.  Any such designated Accessible window(s) shall provide all services that are offered to the public, including but not limited to, VIP tickets, same-day ticket purchases or exchanges, and Will Call.  Stadium Defendants shall remove the foot bar at the designated Accessible ticket windows so that persons with Mobility Disabilities will be able to make a forward approach to the Accessible ticket windows.  The Stadium Defendants shall complete this access work by no later than nine (9) months after the Effective Date or nine (9) months after February 15, 2020, whichever is later.

d.     <u>Signage</u>.  The Stadium Defendants shall provide Accessible directional signage throughout the Stadium.  In lieu of relocating elevators or providing new elevators within a particular distance of the Stadium entrances and Paths of Travel, Stadium Defendants shall provide Accessible signage identifying the location of each elevator on the intended Accessible Path of Travel.  Such signage shall include airport-style overhead signs and signs at all decision points along the Path of Travel, including, but not limited to the entry point for stairs and escalators leading to Accessible seating and other facilities and amenities intended for the use of Stadium guests.  All doors leading to elevators shall also be clearly signed to indicate the existence of elevators beyond the doors.  The International Symbol of Accessibility complying with 2010 ADA Standards Section 703.7.2.1 shall be displayed as part of all such signage.  The Stadium Defendants shall complete this signage work by no later than nine (9) months after the Effective Date or nine (9) months after February 15, 2020, whichever is later. No fewer than thirty (30) days prior to implementation of any signage plan designed to comply with the above provisions, the Stadium Defendants shall provide Class Counsel with a copy of the plan showing the location of each sign relative to the elevators and the size and content of the signs and, on Plaintiffs' request, shall meet and confer with Class Counsel regarding the signage plan.

e.     <u>Interior Circulation</u>.  The Stadium Defendants shall remediate the Conditions identified in Exhibit A.  The Stadium Defendants shall remediate all Non-Compliant Conditions in ramps such that the maximum running slope at any location within the ramp does not exceed 9.0 percent, and the maximum cross slope at any location within the ramp does not exceed 3.0 percent.  There shall be an interior Accessible path of travel from Gate A and Gate C to Gate F.  Specifications showing the Access Work to be performed are attached to this Agreement as Exhibit D.  The Stadium Defendants shall complete this Access Work by no later than nine (9) months after the Effective Date or nine (9) months after February 15, 2020, whichever is later.

9

1         f.     <u>Seating</u>.  The Stadium Defendants shall remediate all non-Compliant

Conditions in the designated Accessible seating areas and the aisles adjacent thereto at

all locations throughout the Stadium, including but not limited to those Conditions

identified in Exhibit A, in accordance with the specifications shown in Exhibit E.  The

maximum slope at any location in the Accessible seating areas and the aisles adjacent

thereto shall not exceed 1:48 (2.1%).  The Stadium Defendants shall modify, adjust or

replace area drains and area drain covers as required to ensure that the maximum slope

at any location at the drain does not exceed 3.0 percent.  The total number of accessible

seats and companion seats in the Stadium will meet the requirements of the 2010 ADAS.

Companion seats shall provide armrests and cupholders such that they are equivalent to

seating provided to nondisabled persons in the Stadium.  The Stadium Defendants shall

complete this Access Work by no later than fifteen (15) months after the Effective Date

or fifteen (15) months after February 15, 2021, whichever is later.

         g.     <u>Drink rails</u>.  The Stadium Defendants shall remediate the Conditions

identified in Exhibit A with respect to the Stadium's drink rails.  Specifications showing

the Access Work to be performed are attached to this Agreement as Exhibit F.  The

Stadium Defendants shall complete remediation of half (50%) of the drink rails by no

later than fifteen months after the Effective Date or February 15, 2021, whichever is

later.  The Stadium Defendants shall complete remediation of all Access Work

regarding the drink rails by no later than fifteen (15) months after February 15, 2021.

         h.     <u>Counters and Bars</u>.  The Stadium Defendants shall remediate the

Conditions identified in Exhibit A with respect to the Stadium's counters and bars.

Counters and bars shall provide a lowered section Accessible to persons with Mobility

Disabilities that complies with 2010 ADA Standards Sections 226.2 and 902 and/or the

2019 CBC within the Counter and Bar areas such that the lowered Accessible sections

provide access in the most integrated location.  Such Accessible sections of Counters

and Bars shall be provided in the United Club, BNY Mellon Club East and West, the

NRG Solar Terrace, the Yahoo Club, the 501 Club and at all other counters and bars

located in the Stadium.  The specifications showing the Access Work to be performed on particular Counters and Bars shall be provided to Class Counsel at least forty-five (45) days before such work is commenced.  Such specifications shall be consistent with the Access Work and the location of the lowered section(s) shown in Exhibit G.  The Stadium Defendants shall complete this Access work by no later than fifteen (15) months after the Effective Date or fifteen (15) months after February 15, 2020, whichever is later.

       i.   <u>Restrooms</u>.  The Stadium Defendants shall remediate the Conditions identified in Exhibit A with respect to the Stadium's public restrooms pursuant to the remedial measures set forth therein.  The door hardware/occupied signage for all wheelchair accessible stalls and ambulatory stalls in all of the Stadium's public restrooms shall be removed or replaced so that the door and any replacement hardware can be operated with a single hand without tight grasping, pinching or twisting of the wrist.  All wheelchair accessible stalls shall be identified by overhead ISA signage so that users can easily identify where the stalls are located upon entering a restroom. Video displays in restroom mirrors in the Stadium shall be removed, modified or shut off as necessary to ensure that persons with Mobility Disabilities have full access to reflective mirrors above the sinks in the restrooms in compliance with 2010 ADAS Section 603.3 Mirrors ("Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches (1015 mm) maximum above the finish floor or ground.  Mirrors not located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 35 inches (890 mm) maximum above the finish floor or ground.").  The Stadium Defendants shall complete this Access Work by no later than twelve (12) months after the Effective Date or twelve (12) months after February 15, 2020, whichever is later.

       j.   <u>Drinking Fountains</u>.  The Stadium Defendants shall remediate the Conditions in drinking fountains identified in Exhibit A pursuant to the remedial measures set forth therein.  The Stadium Defendants shall complete this Access Work

by no later than twelve (12) months after the Effective Date or twelve (12) months after February 15, 2020, whichever is later.

k.      <u>Concessions</u>.  The Stadium Defendants shall remediate all identified Conditions in concessions they own or operate at the locations identified in Exhibit A no later than twelve (12) months after the Effective Date or twelve (12) months after February 15, 2020, whichever is later.  With respect to concessions in the Stadium not owned or operated by the Forty Niners Defendants, the Stadium Defendants shall ensure that the owners/operators of those concessions complete the remedial measures identified in Exhibit A within the same time frame specified in this subsection.

l.      <u>Stadium Suites and Boxes</u>.  The Stadium Defendants shall remediate the Conditions identified in Exhibit A with respect to the Stadium's suites and boxes. Any Suite that contains a closet or other enclosed area with a clothes rod or shelf where suite users can hang clothing or store other personal items shall also provide a similar clothes rod or shelf that is <u>within</u> the maximum height specified by 2010 ADAS Section 308.1.  All Non-Compliant dining surfaces or tables in the suites shall be replaced with an Accessible table or with one high inaccessible table and one Accessible table.  At least one wheelchair accessible seating area of a minimum width of 36 inches with a line of sight of the field must be provided for each suite.  If a removable seat is placed in that location it must be accompanied by a sign indicating that it can be removed to provide wheelchair Accessible seating.  The sign indicating seat removability shall also provide a telephone or text number by which assistance in removing the seats can be obtained.  The Stadium Defendants shall implement a policy and procedure and provide training to staff to ensure that such seats are removed within fifteen minutes following their receipt of such a request.  There shall also be signage informing nondisabled patrons not to stand up during events in such a way that obstructs the line of sight for persons with Mobility Disabilities.  The Stadium Defendants shall also provide an Accessible dining surface or table for use at the wheelchair Accessible seating area. The Stadium Defendants shall complete this Access Work in half of the Stadium suites by

12

1  no later than eighteen (18) months after the Effective Date, and the remaining half of the

2  Stadium Suites by thirty (30) months after the Effective Date.

3          m.    <u>Shops</u>.  The Stadium Defendants shall ensure that the owners and

4  operators of the <u>Stadium</u> shops remediate the Conditions identified in Exhibit A

5  pursuant to the remedial measures set forth therein no later than eighteen (18) months of

6  the Effective Date or four (4) months after February 15, 2021, whichever is later.

7          n.    <u>Handrails Extensions</u>.  The Stadium Defendants shall provide

8  handrail extensions that extend horizontally the full length in the direction of travel, as

9  required by 2010 ADAS Section 505.<u>10</u> and/or the 2019 CBC, for all handrails at stairs

10 and ramp runs throughout the Stadium.  In the event that extensions of certain handrails

11 would pose a safety issue (*e.g.*, a handrail protruding into an assembly area) to attendees

12 of events at the Stadium, the Stadium Defendants shall notify Class Counsel, and the

13 Parties shall meet and confer concerning potential alternatives, if any.  Prior to replacing

14 or modifying existing handrail extensions or providing new handrail extensions to

15 implement this provision, the Stadium Defendants shall provide Class Counsel with

16 plans identifying and illustrating the proposed handrail alterations required to provide

17 compliant extensions at all such stairs and ramps in the Stadium.  The plans shall

18 indicate specific locations and provide alteration details for each type of handrail

19 provided at stairs and ramps.  With respect to handrails located inside restaurants in the

20 Stadium that are not owned or operated by the Forty Niners Defendants, the Stadium

21 Defendants shall ensure that the Conditions identified in Exhibit A are remediated

22 within the time period specified in this subsection.  This Access Work shall be

23 completed within six (6) months of the Effective Date or six (6) months after February

24 15, 2020, whichever is later.

25          o.    <u>Dignity Health First Aid (Level 300/Main Concourse)</u>.  Within six

26 (6) months of the Effective Date or six (6) months of February 15, 2020, whichever is

27 later, the Stadium Defendants shall remediate the Conditions identified in Exhibit A

28 with respect to the Stadium's Dignity Health First Aid Room on Level 300 (Main

Concourse).  The Stadium Defendants shall remove all obstructions from door maneuvering clearances and create policies and procedures and implement employee training regarding the importance of maintaining Accessible routes and compliant clear spaces.  Beds will be repositioned and/or removed to provide the required 36" minimum wide clear space the full length of each bed.  Beds in non-emergency settings may provide the clear floor space on only one side of the beds.  At the trauma or emergency beds, a 36" minimum wide clear space the full length of the bed on both sides will be provided.  Level clear floor spaces at the lavatory and water closet will be created.  Toilet paper dispensers will be moved or replaced so that the centerlines of all dispensers are between 7" to 9" in front of the water closet.  Toilet paper dispensers shall be either a single roll at an Accessible height or side by side rolls mounted at an Accessible location.

p.      Breastfeeding Stations.  Within one year of the Effective Date or by February 15, 2021, whichever is later, the Stadium Defendants shall remediate the Conditions identified in Exhibit A with respect to breastfeeding stations throughout the Stadium.  All breastfeeding stations will be equipped with a privacy lock that can be operated with one hand and does not require tight grasping, pinching, or twisting of the wrist; provide a stable, unmovable floor surface; provide a bevel not steeper than 1:2 at changes in level between 1/4" and 1/2" maximum; and provide at least 30" x 48" clear floor space within the station, a maneuvering clearance at the push side of the door of 48" deep x the width of the door if both a latch and closer are not provided or, if both a latch and closer are provided, extending a minimum from the hinge jamb to a point not less than 12" beyond the latch jamb, and a 60" turning circle or 'T' shaped turning space.

q.      NRG Solar Terrace.  The Stadium Defendants shall provide Accessible seating and companion seating at NRG Solar Terrace bars and counters including any that overlook the field.  The Stadium Defendants shall remediate the pavers in the Solar Terrace such that they are stable and level and are in full

14

compliance with ADAS Sections 302 and 303 and/or the 2019 CBC.  Defendants shall complete this Access Work within six (6) months of the Effective Date or six (6) months after February 15, 2020, whichever is later.

r.    Auditorium.  The Stadium Defendants shall provide an Accessible means of gaining access to the stage.  The Stadium Defendants shall also provide Accessible seating areas and companion seating in the Auditorium.  If the Stadium Defendants locate such seating in the back of the Auditorium, the Stadium Defendants shall also provide seating for nondisabled persons in the same row of seating.  The Stadium Defendants shall complete this Access Work within six (6) months of the Effective Date or six (6) months after February 15, 2020, whichever is later.

s.    Stairs.  The Stadium Defendants shall remediate the stairs at Gate A and Gate C, within the United Club and the interior stairs at the Toyota Gate F, and throughout the outdoor seating areas within the Stadium to ensure that the nosings of the stair treads comply with ADAS Section 504.5.  The Stadium Defendants shall remediate the stairs at those locations such that the slope of the riser does not exceed 1:48 (2.1%). The Stadium Defendants shall complete this Access Work within twenty-four (24) months of the Effective Date or nine (9) months after February 15, 2022, whichever is later.

t.    Equivalent Access.  With respect to Exhibits A-J, the Stadium Defendants may utilize alternative plans or specifications that provide equivalent access within the meaning of applicable law to persons with Mobility Disabilities. Defendants shall provide any alternative plans or specifications to Class Counsel for their review and approval before such plans may be effectuated, with such approval not to be unreasonably withheld.

## 2.  Levi's Stadium Restaurants

The Stadium Defendants shall ensure that the owners and operators of the restaurants at the Stadium remediate the restaurant Conditions identified in Exhibit A. All Stadium restaurants shall provide Accessible seating for persons with Mobility

Disabilities for the consumption of food or drink at any and all types of dining surfaces, tables, counters and bars in the Stadium restaurants.  At least five percent (5%) of the seating and standing spaces at any and all types of dining surfaces, tables, counters and bars in the Stadium's restaurants and dining facilities shall be Accessible to persons with Mobility Disabilities.  The Stadium Defendants shall instruct the owners and operators of the restaurants at the Stadium that the lift in the Bourbon Pub is not to be used for any purpose other than to facilitate access to persons with Mobility Disabilities, and shall ensure that Bourbon Pub personnel are trained on the appropriate use and purpose of the lift.  Signs shall be posted near the lift indicating its proper and limited purpose.  The Stadium Defendants shall provide an exterior Accessible Path of Travel leading to and connecting the primary entrances to the Bourbon Pub, Bourbon Steak and Tailgate restaurants.  This Accessible Path of Travel shall include the area immediately adjacent to the front exterior of the Bourbon Pub, Bourbon Steak and Tailgate restaurants.  This Accessible Path of Travel shall be kept clear for use by persons with Mobility Disabilities and shall not be used for exterior tables or furniture or be otherwise obstructed.  At the entrance to Bourbon Steak, the Stadium Defendants shall provide Accessible maneuvering space at the left door leaf (viewed from the push side) of at least 48 inches measured perpendicular to the door in the closed position.  The Stadium Defendants also shall clear an Accessible Path of Travel next to the kitchen in Bourbon Steak leading to the elevator, and shall post signage indicating the path must be kept clear during all business hours to ensure that unimpeded access to the elevator is provided persons with Mobility Disabilities.  During business hours, the elevator shall be primarily for passenger use.  When persons with Mobility Disabilities are using the elevator during business hours, the elevator shall not be used for any other purpose. This Access Work shall be completed by not later than fifteen (15) months after the Effective Date or nine (9) months after February 15, 2021, whichever is later.

### 3. <u>Parking Lots</u>

a.     By no later than six (6) months after the Effective Date or six (6) months after February 15, 2020, whichever is later, except for smaller events defined herein below, Defendants shall provide a minimum of two-hundred-eighty-two (282) designated Accessible parking spaces in the Main Lot, also known as Red Lot 1, Premium Red Lot 1 and Green Lot 1, for use by persons with Mobility Disabilities.  Of those, 47 shall be designated van Accessible parking spaces.  Accessible spaces shall be located closer to the Accessible entrances to the Stadium than any standard parking spaces and shall be compliant in all respects with 2010 ADAS Section 502 and 2019 CBC Section 11B-502, whichever provides greater access to persons with Mobility Disabilities.  An Accessible Path of Travel shall be provided from each Accessible parking space and van Accessible space to the nearest Accessible Entrance to the Stadium.  Defendants shall ensure the Accessible Path of Travel from the Accessible parking spaces and van Accessible spaces does not require persons with Mobility Disabilities to travel behind parked cars.  A map of the Main Lot displaying the required Accessible parking spaces shall be incorporated into this Agreement as Exhibit J.  For smaller events, *i.e.*, those events to be attended by fewer than 15,000 visitors, Defendants may provide a lower number of Accessible parking spaces in the Main Lot. Defendants shall provide a minimum of 100 Accessible parking spaces in the Main Lot for all events regardless of the number of visitors or attendees.  For events attended by more than 15,000 persons, Defendants shall provide a minimum of 282 Accessible parking spaces in the Main Lot.

b.     On days when public events are held at Levi's Stadium, the designated Accessible spaces and van Accessible spaces shall not be used for any purpose other than to provide parking for persons with disabilities.  Defendants shall establish written rules and procedures to enforce these requirements, and shall communicate these rules and requirements to responsible employees and contractors. Upon furnishing a disabled parking placard, a person with a disability will be allowed

17

to park in the Main Lot, provided that all of the Accessible spaces have not already been taken by other persons with disabilities on that event day.  Patrons utilizing the Main Lot can access the lot by purchasing in advance a parking pass for any lot and furnishing it, with their disabled parking placard, upon entrance to the Main Lot. Patrons may also pay for parking onsite in the Main Lot on the day of the event, and the fee charged on the date of the event shall be no greater than the cost of parking in the least expensive off-site lot utilized or made available by the Forty Niners for Stadium parking.  Signage indicating the availability of ADA parking or Accessible parking shall be posted at the entrance(s) to the Main Lot and personnel staffing the Main Lot shall be trained and required by written procedures to direct persons requesting Accessible parking to the Accessible parking spaces.  To the extent that Caltrans-approved traffic control signage is utilized, it shall include signs identifying the direction to accessible parking in the Main Lot.

       c.      Defendants may, but are not required to, provide additional Accessible parking in off-site lots in which parking for Levi's Stadium is provided. Defendants make no representations that any satellite parking lots, including without limitation those parking lots owned or controlled by persons or entities other than Defendants, will continue to serve as part of the Stadium's parking facilities. Defendants reserve the right to discontinue the use of such satellite parking lots for events at the Stadium, including without limitation, those owned or controlled by persons or entities other than Defendants, during the Compliance Period and thereafter and agree to provide reasonable Notice to the Parties in the event that the use of satellite parking for events at the Stadium is discontinued.  To the extent that such parking is provided, however, it shall comply with 2010 ADAS Section 502 and 2019 CBC Section 11B-502, whichever provides greater access to persons with Mobility Disabilities.  In those lots where no Accessible parking has been designated for Levi's Stadium events, signs shall be posted at the entrances to those lots indicating that they have no Accessible parking and directing individuals who require Accessible parking

18

to use the Main Lot.  In addition, maps showing the location of the Main Lot shall be provided to persons arriving at those lots seeking Accessible parking.  Any website or other electronic means by which Defendants convey information about parking at Levi's Stadium or directions to the Stadium, including the Levi's Stadium App or any mobile application developed by or for any of the Defendants, shall clearly identify the location of Accessible parking, the fact that persons with Mobility Disabilities or their companions who furnish disabled parking placards may park in the Main Lot at the same price as the lowest price for any off-site lot made available by the 49ers, the fact that tailgating is permitted in the Main Lot, and the fact that the other lots are not designated for Accessible parking.  Mobility Services shall also provide such information to persons with Mobility Disabilities through a standard telephone script and/or electronic mail.

> **4.**     <u>**Pedestrian Rights of Way from the Parking Lots to the Stadium**</u>

a.     By no later than two years of the Effective Date, the Santa Clara Defendants shall remediate the Conditions identified in Exhibit H pursuant to the remedial measures set forth therein.

b.     By no later than six months before the end of the Compliance Period, the Santa Clara Defendants shall remediate all Conditions identified on Exhibit I pursuant to the remedial measures set forth therein.

c.     The City of Santa Clara's ADA Transition Plan shall incorporate the remedial measures to Pedestrian Rights of Way set forth in sub-Sections a. and b. herein.  The Santa Clara Defendants' obligations to remediate the Pedestrian Rights of Way pursuant to this Agreement is not dependent on the ADA Transition Plan in any way and constitutes an independent obligation arising from this Agreement.

**B.**     <u>**Maintenance of Accessibility Features**</u>

Defendants shall maintain in fully operational condition all new and existing Access features provided for persons with Mobility Disabilities identified in Exhibits A-J.  These steps shall include, but are not limited to, the following:

19

1.      Maintaining exterior designated Paths of Travel and repair damaged elements thereof that become greater than ½ inch due to wear or cracking, and make other repairs to keep those Paths of Travel from becoming hazardous.  Defendants shall inspect all facilities and elements in the Pedestrian Rights of Way for such Conditions every six months and shall remove any such Conditions noted or reported within 10 business days of their discovery, if not sooner.

2.      Maintaining designated Accessible parking spaces in the Main Lot and any other lots designated in Exhibit A to have all appropriate signage and to keep access aisles to the spaces and to the main entrances they serve clear and usable.  Defendants shall change the signs in the Main Lot so that the default if the sign hardware malfunctions is to show the parking as Accessible.  Defendants shall inspect all facilities for such Conditions every six (6) months and shall remove any such Conditions noted or reported within seven (7) days of their discovery, if not sooner.

3.      The Stadium Defendants shall maintain and replace as required all building signage that would direct persons with Mobility Disabilities to the Accessible Paths of Travel.  The Stadium Defendants shall inspect all facilities for such Conditions every four (4) months and shall remove any such conditions noted or reported within ten (10) business days of their discovery, if not sooner.

4.      The Stadium Defendants shall maintain all Accessible entrances and doors in a fully operational condition and unlocked during normal hours of operation of the facility and during all public functions whenever the primary entrance to the facility is in use.  The Stadium Defendants shall also maintain all Access features such as Accessible restrooms, elevators and platform lifts so that they are fully operational during normal hours of operation of the facility.

5.      The Stadium Defendants shall maintain all Accessible plumbing fixtures, including toilets, urinals, lavatories, sinks, faucets, showers, and drinking fountains, to be fully operational and in compliance with the 2010 ADA Standards and the 2019 CBC.  The Stadium Defendants shall inspect all facilities in this regard every three

20

(3) months and shall repair any such non-operating Conditions within ten (10) business days of being reported or discovery, if not sooner.

6.    The Stadium Defendants shall maintain all toilet accessories to be fully operational and in compliance with the 2010 ADA Standards and the 2019 CBC.  The Stadium Defendants shall maintain all grab bars to be tight and structurally sound.  The Stadium Defendants shall inspect all such features on a monthly basis and repair any Non-Compliant Conditions within seven (7) days of the discovery or reporting of any problem, or within two (2) days before a public event at the Stadium, whichever is sooner.

7.    The Stadium Defendants shall inspect automatic door openers monthly for compliance with the 2010 ADA Standards and the 2019 CBC and repair any Non-Compliant Conditions within seven (7) days of their reporting or discovery, or within two days before a public event at the Stadium, whichever is sooner.

8.    The Stadium Defendants shall inspect the Stadium elevators and platform lifts once per month.  The Stadium Defendants shall ensure that any elevator or platform lift malfunction or non-operational condition is remedied within five (5) business days after reporting or discovery thereof, or within two (2) days before a public event at the Stadium, whichever is sooner.

9.    The Stadium Defendants shall inspect door closure mechanisms in the Stadium at least seven (7) days prior to events during which the doors are expected to be operational and adjust those mechanisms as necessary within two (2) days prior to the event to ensure appropriate force in compliance with the 2010 ADAS and the 2019 CBC. During the Forty-Niners' football seasons and weeks in which other public events are held at the Stadium, on a weekly basis, and on a once every two (2) weeks basis during months in which no public events are held at the Stadium, throughout the Compliance Period the Stadium Defendants shall inspect the Accessible Paths of Travel to and from all Accessible features in the Stadium, including but not limited to pathways to restrooms, access to elevator control buttons, and maneuvering clearances in front of toilets and at

restroom stall doors to ensure that they are clear of any obstructions, such as trash receptacles and other moveable objects.

10.     During the two-day period prior to any public event at the Stadium, the Stadium Defendants shall inspect to ensure that Accessible-height areas of bars, dining surfaces, sales and service counters, and self-serve condiment stations are cleared of loose items, equipment or other temporary obstructions that limit or deny access to persons with Mobility Disabilities, and remedy any such Conditions.

11.     Defendants shall ensure that any movable stairs that obstruct the interior circulation paths in the Stadium, including but not limited to the Accessible aisles and paths adjacent to the Stadium's Accessible seating areas and companion seating, are removed and are not present during any public events.

12.     The Stadium Defendants shall maintain the paint or other markings showing the Accessible exterior and interior paths of travel at the Stadium and the Main Lot so that they are compliant with the 2010 ADAS and/or 2019 CBC.  The Stadium Defendants shall inspect these paths of travel for their compliance with the 2010 ADAS and/or 2019 CBC on a semi-annual basis.

## C.  Ticketing Services for Accessible and Companion Seating

1.     Whenever tickets for Accessible seating are available for particular events, the Stadium Defendants shall ensure that persons with Mobility Disabilities are permitted to purchase tickets for an Accessible seat and three (3) adjacent companion seats in the same horizontal row if available.  For larger groups, persons with Mobility Disabilities and their companions shall be permitted to purchase adjacent seating directly above and below the row in which the Accessible seat(s) are located if available.  The Stadium Defendants shall ensure that all personnel who sell or exchange tickets for Accessible seating to guests of Levi's Stadium are provided with training regarding the Stadium's policies and procedures for ensuring that persons with disabilities are provided with full and equal access to the Stadium's facilities and services, and in particular, that persons with Mobility Disabilities and their nondisabled

companions are provided with prompt, effective and courteous ticketing services for Accessible seating.

2.    Within sixty (60) days of the Effective Date, Stadium Defendants shall require the following with respect to their policies, practices and procedures for the sale and exchange of tickets for Accessible seats for all events held at Levi's Stadium: Accessible seats and companion seats for any event shall be made available for purchase at the same time as tickets for seating at that event is made available to the general public and, subject to ticket availability, shall be sold to individuals who are identified as requiring Accessible seating or to individuals purchasing on behalf of those who are identified as requiring Accessible seating.  No Accessible seats or companion seats shall be held back from sale to such individuals or made available to individuals without disabilities for their own use for any reason or under any circumstances other than those specified in 28 C.F.R. § 302(f)(5).

3.    By no later than August 10, 2019, the Forty Niners Defendants shall ensure that individuals who require Accessible seating or individuals purchasing on their behalf who have previously purchased or otherwise acquired valid tickets for non-Accessible seats for an event may exchange those tickets for tickets for Accessible seats and a corresponding number of companion seats, if available, through electronic means that do not require the ticketholder or his/her representative to exchange said tickets in person.

**D.    Access Map and Guide**

1.    By no later than twenty (20) days after the Effective Date, Defendants shall retain a mutually agreed upon disability access consultant to devise and provide guidance on informational signs and site maps of the Stadium's Accessible features and an Access guide that contains the following information:

a.    A listing of all facilities pertaining to Levi's Stadium, including its related parking lots and Pedestrian Rights of Way, which identifies all of the facilities

that are Accessible, and includes an accurate listing of the inaccessible spaces at each facility, as well as a general description of the Access conditions at each facility.

b.      Location of Accessible parking, Accessible Pedestrian Rights of Way leading from Accessible parking spaces to Accessible entrances to Levi's Stadium (including Accessible curb ramps, sidewalks and crosswalks), Accessible exterior Paths of Travel, Accessible entrances to buildings or facilities and Accessible transit stops.

c.      Location of the shortest Accessible Path of Travel from each public entry gate and from the Box Office to each area of Accessible seating, including location of elevators required to be used.

d.      Location of Accessible restrooms, water fountains, and telephones.

2.      The Access Map and guide shall be provided at the Stadium at each location at which there is presently a site map, and at each of its related parking lots. The Access map and guide shall be provided in the following formats:  physical signage, electronically on Defendants' websites for Levi's Stadium, electronically on the "Levi's Stadium" mobile application, and paper so that the Access Map and guide can be mailed or delivered to all Class Members who request a copy. In addition, the Access Map and guide shall be maintained at the Stadium and all of its related facilities and shall be distributed at the Stadium Box Office. The Access Map and guide also shall be made available in necessary and appropriate alternative formats, including foreign languages, large print, Braille, and other electronic formats.

3.      Defendants shall provide the Access Map and Guide within one hundred twenty (120) days of the Effective Date. The Access Map and Guide will be updated annually as necessary to incorporate improvements and changes.

### E.   Transportation

All of the Forty Niners Defendants' golf carts that provide transportation from the parking lots that serve Levi's Stadium to the Stadium shall be Accessible.  The Forty Niners Defendants shall contractually require the owners and operators of vans and shuttles that service the Stadium to comply with applicable federal and California Access standards, to train the operators of vans and shuttles regarding the Accessible features thereof, including proper operation of lifts.  Personnel who operate such carts, vans or shuttles shall be trained on the proper operation of lifts or ramps on the vans and shuttles.

### F.   Training

1.   Stadium Defendants shall provide disability access training to their employees, and require that all vendors and other third parties responsible for maintaining and/or setting up areas open to the public for events and/or in a position that may require them to interact with members of the public receive disability access training.  Training should be tailored to job description, and shall include, at a minimum, the following:

a.   Any person who may reasonably be expected to respond to a request to remove the seats designed to be removed to make wheelchair Accessible seating available, as referenced in Section A.1.l, above, shall be trained on those policies and procedures;

b.   Persons whose job duties include circulating throughout the Stadium shall be trained in the maintenance of Accessible routes and Paths of Travel throughout the Stadium, including, but not limited to the removal of all obstructions from door maneuvering clearances and the maintenance of the minimum required clear widths between furniture and other objects;

c.   Persons whose job duties bring them into contact with the visiting public shall be trained in the location of any and all Accessible features in Levi's Stadium and its parking lots, the Accessible routes to

25

Stadium entrances and throughout the Stadium, the responsibility to direct patrons to such Accessible routes and Accessible parking, and the availability and distribution of the Access map and guide described in Section D, above;

d.      Persons whose job duties relate to maintenance of the facilities shall be trained in the maintenance of Accessibility features and elements in the Stadium consistent with the requirements of the 2010 ADA Standards and the 2019 CBC, including, but not limited to the maintenance of maximum door pressures;

e.      Persons whose job duties relate to the sale of tickets shall be trained in the policies and procedures for the sale of Accessible seats, as described in Section C, above, and in conformance with the ADA Title III regulations regarding ticketing and applicable guidance materials from the U.S. Department of Justice, and for ensuring that persons with Mobility Disabilities are provided with prompt, effective and courteous ticketing services for Accessible seating.

f.      The availability and distribution of the Access map and guide described in Section D, above.

g.      The proper operation of the lifts or ramps used with any vans and shuttles vans or shuttles utilized to provide transportation to and from Stadium entrances.

2.      Defendants shall provide Class Counsel with a copy of the training materials for the above-described training at least thirty (30) days prior to their implementation.  Plaintiffs may provide input and suggestions concerning those training materials.  Defendants agree to give good faith consideration to Plaintiffs' input and suggestions prior to finalizing and distributing the training materials and, on Plaintiffs' request, shall meet and confer with Class Counsel regarding the training

1  plan.  Provided the training plan meets the requirements of subsection II.F.1., however,
2  Defendants shall retain final authority with respect to the contents of said plan.

3        3.     The above-described training shall be provided to existing
4  responsible personnel within three months of the Effective Date.  New employees,
5  personnel and vendors shall receive such training within thirty (30) days of being hired
6  or assigned to responsibilities requiring such training.  All such personnel shall receive
7  refresher training on an annual basis thereafter.

8          **IV.**   **NEW CONSTRUCTION AND ALTERATIONS**

9      A.     Defendants shall ensure that all future new construction and alteration work
10 performed at or within the Stadium and its related parking and Pedestrian Right of Way
11 facilities fully complies with the 2010 ADA Standards and the 2019 CBC, whichever
12 provides greater access for persons with Mobility Disabilities.

13     B.     When the Santa Clara Defendants perform new construction and alterations
14 in the City of Santa Clara's Pedestrian Rights of Way serving the Stadium identified in
15 Exhibits H and I, they shall ensure that Accessible temporary routes are provided during
16 the period of construction through and around new construction and alterations projects
17 with appropriate signage directing persons with Mobility Disabilities to such Accessible
18 temporary routes.

19     C.     Defendants shall inspect all new construction and alterations to ensure that
20 they fully comply with the 2010 ADA Standards and the 2019 CBC.  New construction
21 and alterations shall be inspected by mutually agreed upon persons who are trained in the
22 requirements of the 2010 ADA Standards and the 2019 CBC, and Defendants shall use a
23 written checklist to confirm compliance.  Such records shall be maintained throughout the
24 Compliance Period and be available for inspection by Class Counsel.

25     D.     Defendants shall remediate any new construction or alterations that are not
26 performed in full compliance with the 2010 ADAS and the 2019 CBC in accordance with
27 California Government Code Section 4452.

28

## V.    SETTLEMENT CLASS NOTICE AND CLAIMS PROCEDURE

### A.    Selection of Settlement Administrator

Defendants shall retain an independent Settlement Administrator, which will be mutually selected by the parties, to perform the following tasks in compliance with the Agreement: 1) distribute Settlement Notice and Claim Forms; 2) receive and track returned Claim Forms; 3) arrange for tracing of Damages Class Members for whom Settlement Notice, Claim Forms, and settlement payments are returned as undeliverable; 4) obtain supplemental information from Claimants, as necessary; 5) receive and forward  to the parties and the Court Opt-Out statements and Objections; 6) verify the validity of each claim submitted and certify those Damages Class Members who are eligible to receive a settlement share of the Damages Fund; 7) administer and distribute settlement shares; and 8) such other duties as agreed to by the parties that are necessary to carry out the provisions of this Agreement.  The Settlement Administrator shall be an organization or entity experienced and qualified in the administration of class action monetary settlement distribution and/or claims proceedings.  Defendants shall be responsible, jointly and severally, for all reasonable fees, expenses, and costs incurred by the Settlement Administrator.

### B.    CAFA Notice

Defendants shall comply with 28 U.S.C. § 1715 ("CAFA").  No later than ten (10) days after this Agreement is filed with the Court for preliminary settlement approval, Defendants shall mail or cause the items specified in 28 U.S.C. § 1715(b) to be mailed to each State and Federal official, as specified in 28 U.S.C. § 1715(a).  All notification duties imposed by 28 U.S.C. § 1715, including the corresponding expenses, shall be separate and in addition to any other obligation imposed herein.  Any and all costs or expenses related to Defendants' compliance with CAFA, either directly or indirectly, shall be paid directly by Defendants, jointly and severally, and shall not be deducted from the Class Damages Fund.

**C.**     **Distribution of Settlement Notice**

1.     Within fourteen (14) days of the Court's Order granting preliminary approval of settlement, Defendants shall provide the Settlement Administrator with the most current and complete Plaintiff Class Member information in their records, including Plaintiff Class Members' names, mailing and email addresses, and telephone numbers.

2.     Prior to the distribution of Settlement Notice, the Settlement Administrator shall perform a search for updated mailing addresses of Plaintiff Class Members using the National Change of Address Database maintained by the United States Postal Service.  If Defendants' records do not provide a mailing address and/or email address for any Plaintiff Class Member for whom Defendants have produced other identifying or contact information, the Settlement Administrator may use any information or resource reasonably available to identify such addresses.

3.     Prior to the distribution of Settlement Notice, the Settlement Administrator shall establish an Internet Website, www.LevisStadiumclassactionsettlement.com, that will inform the Plaintiff Classes of the terms of the Agreement, their rights, applicable dates and deadlines, Class Counsel's contact information (including telephone numbers and email addresses), the Settlement Administrator's contact information, and other related information.  The website shall make available for download in .pdf format, the following: 1) Settlement Agreement and Release of Claims and the Exhibits to the Settlement Agreement; 2) the Long Form Settlement Notice; 3) the Claim Form; 4) the Preliminary Approval Order; 5) the Fourth Amended Complaint; and 6) all other documents or materials agreed upon by the parties and/or required by the Court.  The Internet Website shall provide Damages Class Members with the option to submit a Claim Form electronically via a fillable form that may be submitted through the Internet Website.  The Website and all forms and other documents posted or available thereon will comply with the Web Content Accessibility Guidelines ("WCAG") version 2.1 Level AA.

4.      Prior to the distribution of Settlement Notice, the Settlement Administrator shall establish a toll-free telephone number, through which members of the Plaintiff Classes may obtain information about the Action, submit inquiries regarding the Settlement, and request a mailed copy of the Settlement Notice and/or the Claim Form.  In addition, prior to the distribution of the Settlement Notice, the Settlement Administrator shall establish an e-mail address for members of the Plaintiff Classes to submit inquiries regarding the Settlement.

5.      The parties shall coordinate with the Settlement Administrator to provide direct and publication notice to Plaintiff Class Members in the following forms.

6.      Long Form Notice: The Long Form Notice shall be in a form substantially similar to the document attached hereto as Exhibit K and shall, at minimum, provide the following information:

a.      General Terms: The Long Form Notice shall contain a plain and concise description of the nature of the Action and the proposed Settlement, including information on the definition of the Plaintiff Classes, the identity of Plaintiff Class Members, how the proposed Settlement would provide relief to Plaintiff Class Members, what claims are released under the proposed Settlement, and other relevant information.

b.      Opt-Out Rights: The Long Form Notice shall inform Damages Class Members that they have the right to opt out of the Damages Class. The Long Form Notice shall provide the deadlines and procedures for exercising this right.

c.      Objection to Settlement: The Long Form Notice shall inform Plaintiff Class Members of their right to object to the proposed Settlement and appear at the Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for exercising these rights.

30

d.      Fees and Expenses: The Long Form Notice shall inform Plaintiff Class Members that fees and expenses related to the Settlement Administrator will not be deducted from the Settlement Fund, the maximum amounts to be sought by Class Counsel as reasonable attorneys' fees and expenses and individual Service Awards to the Named Plaintiffs, and shall explain that the reasonable attorneys' fees and expenses awarded to Class Counsel (if any), and Service Awards to Plaintiffs (if any) will not be deduced from the Damages Fund, but rather paid separately by Defendants.

e.      Claim Form: The Claim Form shall inform the Plaintiff Class Members: (i) that Damages Class Members can elect to receive a settlement share of the Damages Fund by submitting a Claim Form to the Settlement Administrator (either through the Settlement Website, E-mail or U.S. Mail); and (ii) that in order to receive the settlement share, the Damages Class Member must fully complete and timely submit the Claim Form prior to the Claim Deadline;

7.      Short Form Notice: The Short Form Notice shall be in a form substantially similar to the document attached hereto as Exhibit L.  The Short Form Notice shall summarize the Long Form Notice and inform Plaintiff Class Members that additional information regarding the proposed settlement may be obtained through the Internet Website or pursuant to request made to the Settlement Administrator or Class Counsel.

8.      Reminder Notice: In consultation with Class Counsel, and prior to the claim deadline set forth in the Court's Preliminary Approval Order, the Settlement Administrator shall transmit one or more email reminders to Plaintiff Class Members who have not submitted a Claim Form.

9.      Within twenty-one (21) days of the Court's Preliminary Approval Order, the Settlement Administrator shall distribute the Court-approved Short Form

Settlement Notice and Claim Form, along with a self-addressed, postage prepaid return envelope, via U.S. mail, and shall distribute the Short Form Settlement Notice and Claim Form and email to Plaintiff Class Members using the mailing and email addresses from Defendants' records or as provided by the National Change of Address Database.

10.     Within twenty-one (21) days of the Court's Order granting preliminary approval of settlement, Defendants shall post the Long Form Settlement Notice in a conspicuous manner at the following locations: (a) Levi's Stadium Visa Box Office; (b) Levi's Stadium Guest Entrances; (c) Levi's Stadium Concession Stands; and (d) Levi's Stadium Team Stores.

11.     Within twenty-one (21) days of the Court's Order granting preliminary approval of settlement, Defendants shall post the Long Form Settlement Notice on the following websites that they control: (a)  www.levisstadium.com; (b) www.49ers.com; (c) https://twitter.com/49ers; (d) https://www.facebook.com/SANFRANCISCO49ers; (e) santaclaraca.gov; and (f) http://santaclaraca.gov/government/stadium-authority. A link on the home page of each of these websites shall be described as "INFORMATION ABOUT THE CLASS ACTION SETTLEMENT INVOLVING ACCESS TO LEVI'S STADIUM FOR PERSONS WITH MOBILITY DISABILITIES," and shall take viewers directly to the Long Form Settlement Notice.

12.     Within twenty-one (21) days of the Court's Order granting preliminary approval of settlement, Plaintiffs shall distribute the Short Form Notice to the following membership and/or service organizations for individuals with mobility disabilities: 1) Bay Area Outreach and Recreation Program (BORP); 2) Californians for Disability Rights; 3) California Foundation for Independent Living Centers; 4) Center for Independent Living – Berkeley; 5) Center for Independence of Individuals with Disabilities (CID, San Mateo); 6) Central Coast Center for Independent Living (CCCIL, Monterey, San Benito, and Santa Cruz Counties); 7) Community Resources for Independent Living (CRIL, Hayward); 8) Dayle McIntosh Center (DMC); 9) Disability

32

Action Center (DAC); 10) Disability Services and Legal Center (DSLC); 11) FREED Center for Independent Living (FREED); 12) Independent Living Center of Kern County (ILCKC); 13) Independent Living Resource Center San Francisco (ILRCSF); 14) Independent Living Resources of Solano & Contra Costa Counties (ILR); 15) Marin Center for Independent Living (MCIL); 16) Placer Independent Resource Services (PIRS); 17) Resources for Independence Central Valley (RICV); 18) Resources for Independent Living (RIL, Sacramento); 19) Silicon Valley Independent Living Center (SVILC); 20) Tri-County Independent Living (TCIL); 21) Paralyzed Veterans of America, Sacramento National Service Office; 22) Paralyzed Veterans of America, Bay Area & Western Chapter; 23) United Spinal San Francisco Bay Area Chapter; and 24) NorCal SCI – Northern California Chapter of United Spinal.  In addition to the methods of providing notice set forth herein, the parties may distribute notice of the settlement through other agreed-upon methods.

## VI.   OBJECTIONS AND OPT-OUTS

1.   Any written objection to the Settlement must (i) clearly identify the case name and number; (ii) be submitted to the Court by filing the written objection through the Court's Case Management/Electronic Case Files ("CM/ECF") system, by mailing the written objection to the Class Action Clerk for United States District Court for the Northern District of California, San Jose Division, or by filing the written objection in person at any location of the United States District Court for the Northern District of California; (iii) state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection; and (iv) be filed or postmarked on or before the objection deadline provided in the Court's Preliminary Approval Order.  To the extent a timely objection is withdrawn before final approval, such an objection shall be treated as though it has not been made.

2.      In their motion requesting preliminary approval of this Agreement, Plaintiffs shall request that the Court allow any party to file a reply to any objection, no later than seven (7) days before the Fairness Hearing, or as the Court may direct.

3.      Members of the Damages Class may elect to opt out of the Settlement, relinquishing their rights to any portion of the Damages Fund hereunder. Members of the Damages Class who opt out of the Settlement will not release their claims for actual, treble, or statutory damages, and attorney's fees pursuant to California Civil Code section 52(a).

4.      Plaintiff Class Members wishing to opt out of the Settlement must send a signed letter (by U.S. Mail – address to be provided in the Class Notice) to the Settlement Administrator including (a) their full name;  (b) an email address and/or telephone number; (c) a clear statement communicating that they elect to be excluded from the Damages Class, and do not wish to be a member of the Damages Class; and (d) the case name and case number (*Nevarez et al. v. Forty Niners Football Company, LLC, et al.*, Case No. 5:16-cv-07013 LHK (SVK)).  Any request for exclusion or opt out must be postmarked or submitted on or before the exclusion or opt out deadline provided in the Court's Preliminary Approval Order.  If the opt-out is transmitted by U.S. Mail, the date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether the opt-out has been timely submitted.  Members of the Plaintiff Class who fail to submit a valid and timely opt-out on or before the date specified in the Court's Preliminary Approval Order shall be bound by all terms of this Agreement and Final Judgment, regardless of whether they have requested exclusion from the damages portion of the Settlement.

5.      Damages Class Members must opt out of the Damages Class individually.  So-called "mass" or "class" opt outs, whether filed by third parties on behalf of a "mass" or "class" of Damages Class Members or multiple Damages Class Members where no personal statement has been signed by each and every individual Damages Class Member, are not allowed.

6.      Members of the Injunctive Relief Class and Companion Injunctive Relief Class may not opt out of those Plaintiff Classes.  Any member of the Damages Class who submits a valid and timely opt out may not object to any part of the Agreement that relates exclusively to the provision of damages payments to Class Members or the release of Class Members' damages claims.

7.      The Settlement Administrator shall promptly provide copies of all opt-outs, objections, and/or related correspondence from Class Members to Class Counsel and Defense Counsel.  Not later than three (3) business days after the deadline for submission of opt outs, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a complete opt out list together with copies of the opt out requests.

## VII.   MONETARY RELIEF AND CLAIMS PROCEDURE

### A.      Monetary Consideration

In consideration for the Damages Release contained in Section XIII.A. of this Agreement, and without admitting liability for any of the alleged acts or omissions, and in the interest of minimizing the costs inherent in any litigation, the Forty Niners Defendants shall pay the sum of the Twenty-Four Million Dollars ($24,000,000) (hereafter "Damages Fund") for satisfaction of Damages Class Members' statutory damages claims under the California Unruh Civil Rights Act, Cal. Civ. Code § 51, *et seq*.

### B.      Creation of Damages Fund

1.      No later than twenty-one (21) days after the Effective Date, the Forty Niners Defendants shall pay an amount equal to the Damages Fund into an escrow bank account (the "Escrow Account"), to be created and administered by the Settlement Administrator pursuant to the terms of this Agreement.  The Escrow Account shall be held in a Qualified Settlement Fund (defined below) in an interest-bearing bank account with a commercial bank with excess capital exceeding One Hundred Million Dollars ($100,000,000.00), with a rating of "A" or higher by S&P and insured by the FDIC.  All funds in the Escrow Account shall be deemed to be in the custody of the Court and shall

35

remain subject to the jurisdiction of the Court until such time as the funds shall be distributed.  Interest earned on money in the Escrow Account, less any taxes owed thereon (if any), will be added to the Settlement Fund for the benefit of the Damages Class.

2.      The Parties hereto agree that the Damages Fund is intended to be a "qualified settlement fund" ("Qualified Settlement Fund") within the meaning of Treasury Regulation § 1.468B-1 and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing any required tax returns for and paying from the Damages Fund any taxes owed with respect to the Settlement Fund.  The Parties hereto agree that the Settlement Fund shall be treated as a "qualified settlement fund" from the earliest date possible, and agree to any relation-back election required to treat the Settlement Fund as a "qualified settlement fund" from the earliest date possible.  Defense Counsel agree to provide promptly to the Settlement Administrator the statement described in Treasury Regulation § 1.468B-3(e). Any and all taxes shall be paid out of the Settlement Fund, shall be paid out of the interest earned on the Damages Fund, be considered to be a cost of administration of the Settlement, and be timely paid by the Settlement Administrator without prior order of the Court.

**C.      Eligibility for Payments from the Damages Fund**

1.      To be eligible to receive a settlement share of the Damages Fund, a member of the Damages Class must satisfy each and all of the following criteria:

a.      Return a completed Claim Form that is postmarked, if submitted by U.S. Mail, or received, if submitted electronically, by no later than the deadline set forth in the Court's Preliminary Approval Order;

b.      State under oath that they are an individual with a mobility disability who uses a wheelchair, scooter or other mobility aid, and who has purchased, attempted to purchase, or for whom third parties

36

purchased accessible seating and who has been denied equal access to Levi's Stadium's facilities, services, accessible seating, parking, amenities, and privileges;

c.      Identify the event(s) attended at Levi's Stadium after April 13, 2015 and the approximate date(s) of those events;

d.      State under oath that they experienced either: 1) a Physical Access Barrier at Levi's Stadium or one of its parking lots; or 2) a ticketing Barrier.

e.      State under oath that they experienced difficulty, discomfort, or embarrassment as a result of encountering the Physical Access or ticketing Barrier(s);

f.      State that they have not previously released their claim against the Forty Niners Defendants; and,

g.      State that they have not opted out of the Damages Class pursuant to this Agreement.

2.      The Named Plaintiffs shall be eligible to receive a settlement share of the Damages Fund subject to the eligibility requirements set forth above.

**D.      <u>Distribution of Claim Forms</u>**

The Settlement Administrator shall send each Damages Class Member a Claim Form along with the Settlement Notice.  In addition, the Internet Website created by the Settlement Administrator, www.LevisStadiumclassactionsettlement.com, shall allow Damages Class Members to submit Claim Forms electronically through the date of the claim filing deadline set forth in the Court's Preliminary Approval Order.  A .pdf version of the Claim Form shall also be available for download from the Internet Website through the date of the claim filing deadline.  The Settlement Administrator shall also mail hard copy or email electronic Claim Forms to potential members of the Damages Class pursuant to the Class Member's written or telephone request.  The Settlement Administrator shall mail Claim Forms within three (3) days after receiving

37

the Class Member's written or telephone request.  Any written or telephone requests for Claim Forms received by Class Counsel, Defendants, or Defendants' Counsel, shall be forwarded to the Settlement Administrator within twenty-four (24) hours of receipt.

### E.    Filing of Completed Claim Forms

All claims for a settlement share of the Damages Fund shall be made in writing using the Claim Form approved by the District Court.  All Claim Forms must be physically or electronically signed by the claimant under penalty of perjury.  Each claimant, including minors, must submit their own Claim Form.  A parent, legal guardian or next of kin may complete and sign a Claim Form on behalf of a minor or deceased claimant.  A designated representative may complete and sign a Claim Form on behalf of a claimant who, because of disability, cannot sign his or her name.  If a claimant experienced more than one discriminatory incident, all such incidents must be detailed in one (1) Claim Form.  All Claim Forms must be mailed to the Settlement Administrator and postmarked or submitted electronically by no later than the deadline set forth in the Court's Preliminary Approval Order.

### F.    Review of Claim Forms

The Settlement Administrator shall initially review all Claim Forms to determine if the form is filled out completely and is signed properly.  If a Claim Form is incomplete or is not signed properly, the Settlement Administrator shall notify the claimant of the deficiency.  All claimants shall be provided thirty (30) days from the date of notification to cure any defects in their Claim Forms.  The failure of a claimant to complete, sign and return their Claim Form within thirty (30) days shall result in the denial of their claim.

### G.    Approval of Claims

Following the initial review, the Settlement Administrator shall then conduct an assessment of all Claim Forms to determine whether they present valid claims in accordance with the terms and provisions of this Agreement.  The Forty Niners Defendants shall have an opportunity to review and dispute any Claim Forms deemed

38

valid by the Settlement Administrator.  All claims determined to be valid by the Settlement Administrator and undisputed by the Forty Niners Defendants shall be eligible for a settlement share of the Damages Fund.

### H. Disputed Claims

If upon initial review of the Claim Form, the Settlement Administrator is unable to determine the validity of the claim, the Settlement Administrator shall notify the claimant in writing and state the reasons why the information contained on the Claim Form is insufficient to determine the validity of the claim.  The claimant shall be given thirty (30) days from the date of mailing or email transmission in which to supplement or amend their Claim Form or provide such other information supporting the validity of his/her claim.  Class Counsel may also submit information to the Settlement Administrator in support of any disputed Claim Form.  Upon further review of the disputed Claim Forms, including such additional information as may be submitted by the claimant, the Settlement Administrator shall either approve or reject the claim.

### I. Rejected Claims

If the Settlement Administrator rejects a claim as not meeting the terms or provisions of this Agreement, the Settlement Administrator shall so notify the claimant in writing.

### J. Deadline for Settlement Administrator Review of All Claims

The Settlement Administrator shall complete its review and issue a determination as to the validity of all Claim Forms and eligibility for a settlement share of the Damages Fund within ninety (90) days of the deadline for submitting Claim Forms.

### K. Determination – Final and Binding

All determinations of the Settlement Administrator shall be final, binding, and non-appealable.

## VIII.  DAMAGES CLASS PAYMENT ALLOCATION AND DISTRIBUTION

### A.  Damages Allocation Procedure

1.  Each claimant with a validated Claim Form ("Eligible Claimant") and at least one visit to Levi's Stadium during the Damages Class Period that satisfies the requirements of Section VII.C. above ("Qualifying Visit"), shall be entitled to receive a portion of the Class Damages in accordance with the Parties' agreed-upon distribution formula, with a minimum award of $4,000.  In the event that the claims submitted and found to be Eligible under this sub-section exceed the amount of the Damages Fund, the Settlement Administrator shall make *pro rata* reductions in the size of the claimants' awards.  The remaining amounts in the Damages Fund shall be allocated to Eligible Claimants who have made more than one Qualifying Visit. Those amounts shall be allocated based on the number of Qualifying Visits of each claimant, with a maximum per-claimant award of $80,000.

2.  The Settlement Administrator's allocation determinations, and award amounts shall be final and binding on all Damages Class Members and not subject to appeal.

3.  No later than thirty (30) days after the completion of the Claims Determination process set forth in Section VII., the Settlement Administrator shall cause the distribution of damages awards in the amounts specified in the Claims Determination process to Eligible Claimants in the form of checks or electronic payments, per the Eligible Claimant's election of payment method, along with 1099-MISC forms to Eligible Claimants.  All checks shall be negotiable for no more than one (1) year from the date of mailing.

4.  For each check returned to the Settlement Administrator as undeliverable, the Settlement Administrator shall, within twenty (20) days, conduct one or more computer database traces of such claimant and re-mail the check to such additional address as may be obtained through the tracing process.  All returned checks for

40

claimants for whom no additional address is obtained through the tracing process shall be held by the Settlement Administrator for ninety (90) days.  If no claim is made for such checks during this time period, the funds shall become part of the funds to be redistributed to Eligible Claimants or allocated to the Cy Pres and distributed in accordance with Section VIII.B., below.

5.   The Settlement Administrator will provide the Forty Niners Defendants and Class Counsel with a complete list of all award recipients, including their names, addresses, email addresses and the amount of their awards.

**B.**    **Cy Pres**

In the event that any portion of the Damages Fund has not been distributed as provided for by this Settlement Agreement after a period of 400 days has elapsed from the date on which damages awards are mailed by the Settlement Administrator, then such remaining amounts shall be used first to pay any otherwise valid claims that were excluded from the Damages Class Monetary Distribution through error or omission of the Settlement Administrator.  Any further balance remaining shall be redistributed to Eligible Claimants pro rata, if the balance exceeds $100,000.  Otherwise the remaining balance shall be paid in equal portions to Silicon Valley Independent Living Center (SVILC) and Center for Independence of Individuals with Disabilities, San Mateo.

## IX.  NO RETALIATION AGAINST OR ADVERSE TREATMENT OF CLASS MEMBERS

Defendants are prohibited from retaliating in any way against any member of the Classes.  Class members including representatives, deponents and declarants shall suffer no adverse treatment by Defendants, their agents and employees.

## X.    COMPLIANCE

**A.**    **Grievances and/or Complaint System**

By no later than one hundred twenty (120) days after the Effective Date, Defendants shall establish a written policy and procedure for Class members to submit complaints or grievances regarding the Accessibility of Levi's Stadium, its related parking

41

and Pedestrian Right of Way facilities, and ticketing and transportation services to Persons with Mobility Disabilities.  This written policy and procedure, and Defendants' response and remediation efforts regarding any such grievances or complaints by Class members, shall comply with the requirements of 28 C.F.R. § 35.107.  Defendants will provide Class Counsel with a draft of the policy and procedure for their review and comment at least 30 days before finalizing the policy and procedure.  Plaintiffs will provide their comments, if any, within 15 days of receipt thereof.  Defendants will give good faith consideration to Class Counsel's input regarding the policy and procedure.  Defendants shall maintain the policy and procedure and the grievance or complaint system throughout the Compliance Period.

**B.  Reporting Requirements**

1.      Throughout the Duration of the Agreement, Defendants shall report to Class Counsel every six months in writing on the status of their efforts to implement the terms of this Agreement.  The first report shall be due by no later than six (6) months after the Effective Date.

2.      The reports shall summarize the following:

a.      All compliance efforts that have been made since the last report with respect to each of the substantive terms of this Agreement;

b.      All parts of Levi's Stadium, its parking lots and the Pedestrian Rights of Way leading from its parking lots to Levi's Stadium that have been modified and in what manner, all Access work that has been performed, all elements of Levi's Stadium, its parking lots and the Pedestrian Rights of Way leading from the parking lots to the Stadium that have been brought into compliance with the 2010 ADA Standards and the 2019 CBC, and all Conditions identified in Exhibit A to this Agreement that have been remediated or removed and the manner in which this was done;

c.      The status of any scheduled Access work on the Stadium, its parking lots and the Pedestrian Rights of Way leading from the Stadium's parking lots to the Stadium;

d.     The reason(s) why any previously scheduled Access work on the Stadium, its parking lots and the Pedestrian Rights of Way leading from the Stadium's parking lots to the Stadium has not been completed;

e.     Anticipated delay(s) completing Access work in the future and the reason(s) for the anticipated delay(s);

f.     All grievances or complaints received by Defendants regarding disability access or ticketing services related to accessible tickets since the last report, including copies of same, and the response to the grievances or complaints; and,

g.     The monies spent since the last report performing the Access Work specified in Section III, including but not limited to a detailed itemization of the monies expended to remediate or remove Conditions identified in Exhibits A-J.

3.     Defendants shall submit a final report to Class Counsel within sixty (60) days of completion of all Access Work undertaken by Defendants pursuant to this Agreement. The final report shall describe Defendants' compliance with this Agreement, and in particular shall set forth in detail the Access Work and other remedial measures that Defendants have taken to comply with this Agreement, including an itemization of all Conditions that have been removed or remediated.  In connection with the submission of the final report, Defendants shall file with the District Court an affidavit under oath from a person authorized to bind Defendants attesting that all of Defendants' obligations under the terms of this Agreement have been discharged, and verifying the facts contained within the final report.

4.     Throughout the Compliance Period, the Parties shall confer on a semi-annual basis to review Defendants' efforts to implement this Agreement, and to resolve any disputes regarding implementation or enforcement thereof.

5.     Within ninety (90) days of the Effective Date, Defendants shall designate a liaison who shall have responsibility and authority to act as an administrative liaison to Class Counsel for the Duration of the Agreement.  The designated liaison shall have responsibility and authority to take the following actions on behalf of Defendants: (1)

43

collect information pertaining to Defendants' compliance with this Agreement, and (2) respond to requests from Class Counsel for information or other documents as provided in this Agreement.

## XI.   INSPECTIONS

During the Compliance Period, Class Counsel shall be entitled to conduct semi-annual inspections, on mutually agreed-upon dates, each year of Defendants' facilities and Pedestrian Rights of Way upon reasonable written notice to Defendants' designated liaison, to monitor compliance with the Agreement.  During the Compliance Period, Class Counsel shall have access to Defendants' designs and drawings for Access Work pursuant to the Agreement, and shall be permitted to review any plans or specifications that are required for the remediation of the Conditions identified in Exhibits A-J.

## XII.  RESOLUTION OF DISPUTES

In the case of any disputes arising out of or related to any alleged failure to perform in accordance with the terms of this Agreement, the Party asserting a failure of performance shall notify the counsel for the other parties via electronic and overnight mail.  Within ten (10) business days of the notification, the Parties shall commence to meet and confer in a good faith effort to resolve the dispute.  If, after forty-five days, the Parties are unable to resolve the dispute through the meet and confer process, the Parties shall engage in non-binding mediation.  The Parties shall mutually agree upon a mediator.  If the Parties are unable to agree upon a mediator, a mediator shall be selected by the District Court.  Upon certification from the mediator that the Parties cannot resolve the dispute through mediation, either Party may file a motion with the Court to resolve the issue or issues specified in the meet and confer process.  In the motion, the Party shall indicate whether the resolution of the motion requires the taking of live testimony.

# XIII. RELEASES

## A. Releases by the Members of the Plaintiff Classes

1.      In return for the consideration provided for in this Settlement Agreement, the adequacy of which is hereby acknowledged, on the Effective Date or on the date of the resolution of any appeal of any Order by the District Court granting Final Approval, whichever is later, all Class Members, both individually and as a class, and Named Plaintiffs shall be deemed to release and shall have released Defendants and their trustees, officers, directors, employees, attorneys, agents and insurers, and their successors and assigns ("Released Parties") from any and all claims that are the subject of, included within, and/or arise from this lawsuit, including without limitation, all claims, liabilities, obligations, demands, actions, and claims under Title II and Title III of the ADA, California Civil Code § 51, *et seq.*, and their accompanying regulations that were brought or could have been brought based on the facts alleged in the Complaint against the Released Parties for injunctive or declaratory relief only relating to Conditions that allegedly deny access to the facilities specified in Exhibit A and access to Defendants' ticketing services for wheelchair accessible and companion seating.  This release for declaratory and injunctive relief shall apply throughout the Duration of the Settlement Agreement.

2.      With respect to damages, in return for the consideration provided for in this Settlement Agreement, the adequacy of which is hereby acknowledged, on the Effective Date or on the date of the resolution of any appeal of any Order by the District Court granting Final Approval, whichever is later, all Damages Class Members, both individually and as a class, and Named Plaintiffs shall be deemed to release and shall have released the Forty Niners Defendants and their trustees, officers, directors, employees, attorneys, agents and insurers, and their successors and assigns ("Released Parties") from any and all claims that are the subject of, included within, and/or arise from this lawsuit, including without limitation, all claims, liabilities, obligations, demands, actions, and claims under California Civil Code § 51, *et seq.*, and accompanying regulations that were

45

brought or could have been brought based on the facts alleged in the Complaint against the Released Parties for statutory damages relating to Conditions that allegedly deny access to the facilities specified in Exhibit A and access to Defendants' ticketing services for wheelchair accessible and companion seating, at any time up to the Date that the Court grants Preliminary Approval of the Settlement Agreement.

3.      The Release provided in Section XIII shall not apply to the Stadium Museum which was not part of this litigation.

**B.      <u>Service Awards/Damages Payments and Releases by the Named Plaintiffs</u>**

Within thirty (30) days of the Effective Date, Defendants, while denying any fault or liability, shall pay the sum of $7,500.00 as a service award to each Named Plaintiff.  The Named Plaintiffs shall also be eligible to recover their pro rata allocation of class damages under the Settlement Agreement.  In return for such consideration, the adequacy of which is hereby acknowledged and received, the Named Plaintiffs shall be deemed to release and shall have released all Defendants and their respective officers, directors, employees, attorneys, agents and insurers, and their successors and assigns, ("Released Parties") from any and all claims for damages of every kind up through the Date that the Court grants Preliminary Approval of the Settlement Agreement  and for injunctive or declaratory relief up to the termination of this Agreement, that are the subject of, included within, and/or arise from this lawsuit, including all claims, liabilities, obligations, demands, actions, and claims under California Civil Code Section 51 *et seq.*, Title II and Title III of the ADA, and their accompanying regulations, that were brought or could have been brought by them individually against the Released Parties relating to Conditions that allegedly deny access to persons with Mobility Disabilities at Levi's Stadium, its parking lots and the Pedestrian Rights of Way leading from its parking lots to Levi's Stadium as well as any injunctive or declaratory relief claims relating to access to Defendants' ticketing services for wheelchair accessible or companion seating.  This release shall not apply to any statutory damages or physical injuries or other property damages that the Named Plaintiffs suffer as a result of the

inaccessibility of Levi's Stadium, its parking lots and the Pedestrian Rights of Way leading from its parking lots to Levi's Stadium after the Effective Date.

## XIV.  ATTORNEYS' FEES AND COSTS

### A.  Reasonable Attorneys' Fees, Costs and Expenses

Plaintiffs shall file a motion with the District Court in accordance with applicable law for an award of reasonable attorneys' fees, costs and expenses incurred in connection with this litigation through the Effective Date of this Agreement. Plaintiffs' motion shall not seek an amount in excess of $13,457,152.40 in attorneys' fees, costs and expenses. Defendants shall not oppose Plaintiffs' motion.  Defendants are not entitled to recover any reasonable attorneys' fees, costs or expenses in this matter.  If there are no objections, Defendants shall issue payment of the amount awarded by the Court within 30 days of the final approval order.  If there is a timely objection that is not subsequently withdrawn, Defendants shall issue payment within 30 days of the Court's order granting final approval, or within 30 days after the dismissal of any appeal or the Court's final approval order is affirmed on appeal, whichever is later.

### B.  Reasonable Attorneys' Fees and Costs Regarding Monitoring and Enforcement

1.      Class Counsel shall be entitled to recover reasonable attorneys' fees and costs for work performed in connection with the monitoring and implementation of this Agreement. Defendants agree not to oppose such a petition up to a total amount of $85,000 annually. Above that amount, Defendants may challenge the reasonableness of the amount of any fees and costs so requested.  Class Counsel shall submit to Defendants a statement and supporting documentation regarding monitoring fees and costs on an annual basis. Defendants shall pay such fees and costs within 30 days of receipt of such statement and all supporting documentation (including invoices for costs incurred).  If Defendants object to such fees and costs, they shall do so in writing within 30 days of receipt of such statement. If Defendants object to such fees and costs, Defendants shall pay the undisputed portion. In addition, Defendants shall not oppose $60,000 for the first year, and up to $50,000

47

annually for the remainder of the Compliance Period for any reasonable costs of experts hired by Class Counsel to assist with the monitoring and implementation of this Settlement Agreement.

2.      With respect to reasonable attorneys' fees and costs arising from a dispute between the parties pursuant to Section XII, Plaintiffs shall only recover reasonable attorneys' fees, expenses and costs in connection with such a dispute if they prevail with respect to the disputed issue.  With respect to such disputes, Defendants may dispute that Plaintiffs are the prevailing party and/or may dispute the reasonableness of any fees and costs claimed by Plaintiffs.  Defendants shall not be entitled to the recovery of reasonable attorneys' fees, expenses, and/or costs for any work performed in connection with this Agreement or the enforcement thereof.

3.      With respect to any disputes between the parties regarding reasonable attorneys' fees and costs arising from monitoring the implementation of this Settlement Agreement, the parties shall meet and confer in any effort to resolve the dispute within 30 days of Plaintiffs' receipt of Defendants' written objection to Plaintiffs' request for monitoring fees and costs.  If the parties are unable to resolve their dispute through meet and confer, the parties shall engage in mediation with a mediator to be mutually agreed-upon between them.  If the parties are unable to agree upon a mediator, a mediator shall be selected by the District Court.  If the parties are unable to resolve the dispute through mediation, the dispute shall be resolved through binding arbitration with a mutually agreed upon arbitrator.  If the parties are unable to agree upon an arbitrator, an arbitrator shall be selected by the District Court.

## XV.   **CONTINUING JURISDICTION**

The District Court shall maintain continuing jurisdiction over this Lawsuit for the length of this Agreement for the purpose of overseeing and enforcing its terms.

## XVI.  **DURATION OF AGREEMENT**

This Agreement shall be effective and binding upon the parties for a period of three and a half (3½) years after the Effective Date or after the final resolution of any

disputes, whichever is later.  At that time, Defendants may move the District Court for an Order terminating its jurisdiction of this matter on the basis that all of Defendants' obligations under the Judgment have been fully discharged.  Nothing in this Section shall bar Class Counsel from moving for an extension of the Agreement to enforce any of its obligations.  In the event that the District Court grants Defendants' motion to terminate its jurisdiction in this matter, Defendants' obligation to comply with the Americans with Disabilities Act of 1990, California Civil Code Section 51 *et seq.* and their accompanying regulations shall not be affected.

## XVII.  SETTLEMENT APPROVAL

By no later than October 7, 2019, Plaintiffs shall apply to the Court for preliminary approval of the Settlement Agreement and for an order directing notice of the proposed settlement to all class members who will be bound by the Settlement Agreement, pursuant to Fed. R. Civ. P. 23(e).  The Settlement Agreement shall remain in full force and effect if the District Court grants preliminary and final approval of the Settlement Agreement but declines to establish procedures for notice, objections or opt-outs or establishes different procedures than those requested by the parties.

Plaintiffs shall move for and brief the issue of Final Approval of the Settlement in accordance with the Preliminary Approval Order or such other or further order of the Court.

## XVIII.  NOTICES

A.      All notices (other than the Class Settlement Notice and CAFA Notices) required by this Agreement shall be made in writing and communicated by mail and email to the following addresses:

B.      All notices to Class Counsel shall be sent to Class Counsel, c/o:

Guy B. Wallace
Mark T. Johnson
Schneider Wallace Cottrell Konecky Wotkyns LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608

1  Adam B. Wolf
   Catherine M. Cabalo
2  Peiffer Wolf Carr & Kane
   4 Embarcadero Center, 14th Floor
3  San Francisco, CA 94104

4  Linda M. Dardarian
   Andrew P. Lee
5  Goldstein Borgen Dardarian & Ho
   300 Lakeside Drive, Suite 1000
6  Oakland, CA 94612

7  C.   All notices to the Forty Niners Defendants or their Counsel shall be sent to

8  the Forty Niners' Counsel, c/o:

9  Hannah Gordon
   Chief Administrative Officer & General Counsel
10 San Francisco 49ers
   4949 Marie P. Debartolo Way
11 Santa Clara, CA 95054

12 D.   All notices to the Santa Clara Defendants or their Counsel shall be sent to

13 the Santa Clara Defendants' Counsel, c/o:

14 Maria M. Lampasona
   Rankin, Shuey, Ranucci, Mintz, Lampasona & Reynolds
15 2030 Franklin Street, Sixth Floor
   Oakland, CA 94612-3541
16
   Brian Doyle
17 City Attorney
   City of Santa Clara
18 1500 Warburton Avenue
   Santa Clara, CA 95050
19
   Brian P. Maschler
20 Gordon Rees Scully Mansukhani, LLP
   275 Battery Street, 20th Floor
21 San Francisco, CA 94111

22 Martin H. Orlick
   Jeffer Mangels Butler & Mitchell LLP
23 2 Embarcadero Center, Fifth Floor
   San Francisco, CA 94111-3824

24 E.   The notice recipients and addresses designated above may be changed by

25 written notice.

26

27

28

# XIX. MISCELLANEOUS

### A.   Counterparts

This Agreement may be executed in counterparts, each of which will be considered an original, but all of which, when taken together, will constitute one and the same instrument.

### B.   Interpretation

The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties.  The headings in this Agreement are solely for convenience and will not be considered in its interpretation.  Where required by context, the plural includes the singular and the singular includes the plural, and the terms "and" and "or" shall mean "and/or."  This Agreement is the product of negotiation and joint drafting so that any ambiguity shall not be construed against any Party.

### C.   Additional Documents

To the extent any documents are required to be executed by any of the Parties to effectuate this Agreement, each Party hereto agrees to execute and deliver such and further documents as may be required to carry out the terms of this Agreement.

### D.   Authority to Bind

The undersigned each represent and warrant that they are authorized to sign on behalf of, and to bind, Defendants.  The Santa Clara Defendants represent and warrant that this Agreement has been approved by the Santa Clara City Council and the Santa Clara Stadium Authority.

For Plaintiffs:

Dated:  September 26, 2019          By: _____

Abdul Nevarez
Plaintiff

Dated:  September 26, 2019

By: _____
    Priscilla Nevarez
    Plaintiff

Dated:  September ___, 2019

By: _____
    Sebastian DeFrancesco
    Plaintiff

SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP

Dated:  September ___, 2019

By: _____
    Guy B. Wallace
    Attorneys for Plaintiffs

PEIFFER, WOLF, CARR & KANE

Dated:  September 26, 2019

By: _____
    Catherine M. Cabalo
    Attorneys for Plaintiffs

SETTLEMENT AGREEMENT – *Nevarez, et al. v. 49ers et al.*, Case No. 5:16-cv-07013 LHK (SVK)

1    Dated: September ___, 2019          By: _____

2                                            Priscilla Nevarez
                                             Plaintiff
3

4

5    Dated: September 25 , 2019          By: _____

6                                            Sebastian DeFrancesco
                                             Plaintiff
7

8

9                                        SCHNEIDER WALLACE
                                         COTTRELL KONECKY
10                                       WOTKYNS LLP

11

12

13   Dated: September 25, 2019           By: _____
                                             Guy B. Wallace
14                                           Attorneys for Plaintiffs

15

16

17                                       PEIFFER, WOLF, CARR & KANE

18   Dated: September ___, 2019          By: _____

19                                           Catherine M. Cabalo
                                             Attorneys for Plaintiffs
20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: 07D1F9B6-F6BD-42ED-A139-68CA167DE6DD

GOLDSTEIN BORGEN DARDARIAN &
HO

Dated:  September 25, 2019          By:  _Linda M. Dardarian_
                                          Linda M. Dardarian
                                          Attorneys for Plaintiffs


For Defendants:


FORTY NINERS FOOTBALL CO. LLC

FORTY NINERS SC STADIUM CO. LLC

FORTY NINERS STADIUM
MANAGEMENT CO. LLC


Dated:  September ___, 2019          By:  _____
                                          Scott Sabatino

                                          Chief Financial Officer, San Francisco
                                          Forty Niners

SETTLEMENT AGREEMENT – *Nevarez, et al. v. 49ers et al.*, Case No. 5:16-cv-07013 LHK (SVK)

GOLDSTEIN BORGEN DARDARIAN & HO

Dated: September ___, 2019

By: _____
Linda M. Dardarian
Attorneys for Plaintiffs

For Defendants:

FORTY NINERS FOOTBALL CO. LLC

FORTY NINERS SC STADIUM CO. LLC

FORTY NINERS STADIUM MANAGEMENT CO. LLC

Dated: September 26, 2019

By: _____
Scott Sabatino

Chief Financial Officer, San Francisco Forty Niners

53

Approved as to form:

Dated: September 26, 2019

CITY OF SANTA CLARA

By: _____

    Brian Doyle
    City Attorney

CITY OF SANTA CLARA

Dated:  September 26, 2019

By: _____
Deanna J. Santana
City Manager

Approved as to form:

Dated:  September 26, 2019

SANTA CLARA STADIUM AUTHORITY

By: _____
Brian Doyle
Stadium Authority Counsel

Dated:  September 26, 2019

SANTA CLARA STADIUM AUTHORITY

By: _____
Deanna J. Santana
Executive Director

RANKIN, SHUEY, RANUCCI
MINTZ, LAMPASONA & REYNOLDS

Dated:  September 27, 2019

By: _____
Maria M. Lampasona
Attorneys for Defendants

GORDON REES SCULLY MANSUKHANI, LLP

Dated:  September 27, 2019                    By: _____

Brian P. Maschler
Attorneys for Defendants