IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| ABDUL NEVAREZ, | ) | CV-16-7013-LHK |
| | ) | |
| PLAINTIFF, | ) | SAN JOSE, CALIFORNIA |
| | ) | |
| VS. | ) | JANUARY 30, 2020 |
| | ) | |
| FORTY NINERS FOOTBALL COMPANY, | ) | PAGES 1-46 |
| LLC, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

_____

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE LUCY H. KOH
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S

FOR THE PLAINTIFF:       **BY:  GUY BURTON WALLACE**
                         SCHNEIDER WALLACE COTTRELL
                         KONECKY WOTKYNS LLP
                         2000 POWELL STREET, SUITE 1400
                         EMERYVILLE, CA 94608

FOR THE DEFENDANT:       **BY:  MARIA M. LAMPASONA**
                         RANKIN, SHUEY, RANUCCI, MINTZ,
                         LAMPASONA & REYNOLDS
                         2030 FRANKLIN STREET, 6TH FLOOR
                         OAKLAND, CA 94612

APPEARANCES CONTINUED ON THE NEXT PAGE

OFFICIAL COURT REPORTER:       SUMMER FISHER, CSR, CRR
                               CERTIFICATE NUMBER 13185

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

```
 1        APPEARANCES CONTINUED:

 2        FOR THE PLAINTIFF:      BY:  ANDREW PAUL LEE
                                  GOLDSTEIN, BORGEN, DARDARIAN & HO
 3                                300 LAKESIDE DR., STE. 1000
                                  OAKLAND, CA 94612
 4

 5        FOR THE DEFENDANT:      BY:  RANDALL C. CREECH
          TURNER/DEVCON           O'HARA CREECH LLP
 6                                255 WEST JULIAN STREET, SUITE 402
                                  SAN JOSE, CA 95110
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              SAN JOSE, CALIFORNIA              JANUARY 30, 2020

 2                      P R O C E E D I N G S

 3         (COURT CONVENED AT 1:36 P.M.)

 4              THE CLERK:  CALLING CASE 16-7013.  ABDUL NEVAREZ

 5    VERSUS FORTY NINERS FOOTBALL COMPANY, LLC.

 6              MR. WALLACE:  GUY WALLACE FOR PLAINTIFFS, YOUR HONOR.

 7    AND WITH ME IS ANDREW LEE.

 8              MR. LEE:  GOOD AFTERNOON, YOUR HONOR.

 9              MS. LAMPASONA:  GOOD AFTERNOON, YOUR HONOR.

10         MARIA LAMPASONA ON BEHALF OF THE FORTY NINERS AND THE

11    SANTA CLARA DEFENDANTS.

12              MR. CREECH:  GOOD AFTERNOON, YOUR HONOR.

13         RANDY CREECH ON BEHALF OF THIRD PARTY DEFENDANT

14    TURNER/DEVCON JV.

15              THE COURT:  OKAY.  GIVE ME ONE SECOND.

16         I'M SORRY, WOULD YOU PLEASE STATE YOUR APPEARANCE ONE MORE

17    TIME.

18              MR. CREECH:  CERTAINLY.

19         RANDY CREECH ON BEHALF OF THIRD PARTY DEFENDANT

20    TURNER/DEVCON JV.

21              THE COURT:  OKAY.  THANK YOU.

22              MR. CREECH:  CERTAINLY, YOUR HONOR.

23              THE COURT:  DO WE KNOW HOW MANY CLASS MEMBERS THERE

24    ARE IN EACH OF THE THREE CLASSES?  IS IT EVEN POSSIBLE TO TELL?

25              MR. WALLACE:  WITH RESPECT TO THE DAMAGES CLASS,
```

1    YOUR HONOR, MY RECOLLECTION IS THAT WE HAD ABOUT 4,000 CLASS

2    MEMBERS.  WITH RESPECT TO THE (B)(2) INJUNCTIVE RELIEF CLASS,

3    THAT WOULD BE A FAR LARGER NUMBER, THAT WOULD ENTAIL ANYONE WHO

4    HAD, PERHAPS, VISITED THE STADIUM.  BEYOND THOSE, WHERE THERE

5    WERE TICKETING RECORDS FOR THE ACCESSIBLE SEATING.  AND THE

6    COMPANIONS, I THINK, WOULD BE NON-DISABLED PERSONS.  THERE IS

7    THE RECORD OF THE COMPANION SEATING TICKETS, THAT'S TRUE, BUT

8    THAT PROBABLY IS LOWER THAN THE TOTAL MEMBERSHIP OF THAT CLASS.

9            THE COURT:  YOU ARE SAYING THE COMPANIONS ARE

10   PROBABLY LOWER THAN THE BROADER INJUNCTIVE RELIEF CLASS.

11           MR. WALLACE:  YES.

12           THE COURT:  OKAY.  BUT WE DON'T HAVE A NUMBER ON THE

13   INJUNCTIVE RELIEF, DO WE?

14           MR. WALLACE:  NO, IT'S HARD TO ESTIMATE WITH THE

15   (B)(2), BUT WE KNOW IT WOULD BE MANY.

16           THE COURT:  OKAY.

17       AND HOW ARE WE GOING TO KNOW, YOU KNOW, TO WHOM TO SEND

18   THE NOTICE AND HOW TO SEND IT?  OR WILL IT BE THROUGH THE SAME

19   NOTIFICATION PROCESS THAT WAS APPROVED PREVIOUSLY, LIKE ALL

20   THOSE PUBLICATIONS AND POSTED NOTICES, IS THAT --

21           MR. WALLACE:  YES, THAT'S THE NOTICE PROCESS WE ARE

22   ESSENTIALLY GOING TO USE.  AND THEN IN ADDITION, I BELIEVE WE

23   HAVE PUBLICATION IN SOME MAJOR NEWSPAPERS.

24           THE COURT:  YOU SAID PUBLICATION IN?  I'M SORRY, I

25   COULDN'T HEAR THE LAST THING.

1          MR. WALLACE:  MAJOR NEWSPAPERS.  AND THOSE SHOULD BE

2     IDENTIFIED IN OUR BRIEF.

3          THE COURT:  OKAY.  I WOULD PREFER THAT EVERYTHING BE

4     MAILED TO THE SETTLEMENT ADMINISTRATOR VERSUS HAVING, YOU KNOW,

5     OPT-OUTS AND CLAIM FORMS GOING TO THE SETTLE THE ADMINISTRATOR

6     BUT THEN OBJECTIONS GOING TO THE CLERK'S OFFICE.

7        I THINK IT'S JUST MORE SIMPLE FOR THE CLASS TO HAVE

8     EVERYTHING GOING TO THE SAME ADDRESS.  IS THAT ACCEPTABLE?  IS

9     THAT OKAY?

10          MR. WALLACE:  THAT'S ACCEPTABLE TO PLAINTIFFS,

11     YOUR HONOR.

12          THE COURT:  OKAY.  IS THAT ACCEPTABLE TO THE

13     DEFENDANTS?

14          MS. LAMPASONA:  THAT'S FINE, YOUR HONOR.

15          THE COURT:  OKAY.  SAME FOR DEVCON/TURNER?

16          MR. CREECH:  CERTAINLY, YOUR HONOR.

17          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

18        NOW WILL EVERYTHING JUST BE DONE BY THE CLASS MEMBERS'

19     DECLARATION OR ARE THE DEFENDANTS GOING TO TRY TO VERIFY

20     WHETHER TICKETS WERE SOLD TO THE CLAIMANTS WHO ACTUALLY

21     PURCHASED TICKETS?

22          MS. LAMPASONA:  WE WILL WANT TO DO A CERTIFICATION

23     PROCESS, BUT IT'S NOT GOING TO BE A HUNDRED PERCENT ACCURATE

24     BECAUSE THE CLASS MEMBERS INCLUDE PEOPLE WHO GOT TICKETS THAT

25     WE WOULDN'T HAVE RECORD OF.

```
1                THE COURT:  SURE.

2                MS. LAMPASONA:  SO WE ARE GOING TO WANT TO CHECK.

3                THE COURT:  TO THE EXTENT YOU CAN.

4                MS. LAMPASONA:  EXACTLY, YOUR HONOR.

5                THE COURT:  OKAY.  RIGHT.

6            BECAUSE I WAS NEXT GOING TO ASK YOU, THERE WILL BE CLASS

7       MEMBERS WHO FACED AN ACCESS BARRIER WHO DIDN'T PURCHASE A

8       TICKET, FOR EXAMPLE, A GUEST OF SOMEONE ELSE.  AND I GUESS IN

9       THIS SITUATION, YOU ARE GOING TO JUST RELY ON THE DECLARATION

10      OF THE PERSON WHO FACED THE ACCESS BARRIER; IS THAT RIGHT?

11               MS. LAMPASONA:  IT IS.

12           WE WOULD CHECK BOTH THE TICKETING LOGS AS WELL AS

13      COMMUNICATIONS.  AND SO IT'S POSSIBLE THAT WE WOULD BE ABLE TO

14      VERIFY THE IDENTITY OF SOME OF THESE PEOPLE IN WAYS OTHER THAN

15      JUST TICKETING, BUT THERE IS GOING TO BE A CERTAIN PERCENTAGE

16      THAT WE WILL HAVE TO RELY ON THE DECLARATION ALONE BECAUSE WE

17      WILL NOT HAVE RECORD OF THAT PERSON EITHER CONTACTING THE TEAM

18      OR PURCHASING THE TICKET.

19               THE COURT:  RIGHT.  BECAUSE ON THE CLAIM FORM, IT

20      DOESN'T SAY IF SOMEONE ELSE PURCHASED YOUR TICKET, IDENTIFY

21      THAT PERSON.

22               MS. LAMPASONA:  IT DOES NOT.

23               THE COURT:  RIGHT.  SO YOU WILL NEVER BE ABLE TO

24      VERIFY THAT.  OKAY.

25           NOW WHEN YOU TALK ABOUT THE PRO RATA REDISTRIBUTION, IF
```

1      THERE'S MONEY LEFT, I ASSUME THAT WILL ONLY GO TO CLASS MEMBERS

2      WHO SUBMITTED CLAIM FORMS; IS THAT RIGHT?

3              MR. WALLACE:  THAT WOULD BE CORRECT, YOUR HONOR.

4              THE COURT:  OKAY.  ALL RIGHT.

5          SO I HAD SOME COMMENTS OR SOME QUESTIONS, AND WANTED TO

6      TALK WITH YOU -- WELL LET ME ASK A QUESTION, DOES THE

7      ATTORNEY'S FEES THAT YOU'VE REQUESTED, DOES THAT INCLUDE FEES

8      FOR MONITORING AND ENFORCEMENT OF THE INJUNCTIVE RELIEF GOING

9      FORWARD?

10             MR. WALLACE:  NO, IT DOES NOT.  THAT IS SEPARATE,

11     YOUR HONOR.

12             THE COURT:  YOU ARE GOING TO BE MAKING A SEPARATE

13     REQUEST?

14             MR. WALLACE:  WELL, THERE IS -- DURING THE TIME

15     PERIOD OF THE SETTLEMENT, WHICH IS THREE YEARS OR SO, I BELIEVE

16     THERE IS A SIX-MONTH ANNUAL PROCESS FOR COMPENSATING CLASS

17     COUNSEL FOR MONITORING EFFORTS.  AND THEN THERE'S --

18             THE COURT:  AND WILL THAT BE A SEPARATE REQUEST THAT

19     YOU WILL MAKE TO THE COURT, OR THAT'S A SEPARATE REQUEST YOU

20     WILL JUST MAKE TO DEFENDANTS?

21             MR. WALLACE:  MY THOUGHT WAS THAT WE WOULD MAKE THAT

22     TO DEFENDANTS.  I KNOW THAT THERE IS A DISPUTE RESOLUTION

23     PROCESS THAT WOULD BRING THAT BACK TO THE COURT IF THE PARTIES

24     ARE UNABLE TO AGREE ON THOSE.  CERTAINLY WE ARE AMENABLE TO

25     HAVING THE COURT REVIEW THOSE AS WELL IF THE COURT BELIEVES

```
1        THOSE ARE NECESSARY.

2              THE COURT:  NO, I DON'T THINK IT IS, I JUST WANTED TO

3        KNOW.

4          OKAY.  IS THAT THE DEFENDANT'S UNDERSTANDING AS WELL, THAT

5        IN ADDITION TO WHATEVER THE COURT ORDERS, THE PLAINTIFFS WILL

6        BE COMING TO YOU PERIODICALLY FOR MORE FEES?

7              MS. LAMPASONA:  YES.

8              THE COURT:  THAT'S YOUR UNDERSTANDING AS WELL?  OKAY.

9              MS. LAMPASONA:  AND YOUR HONOR, THE SETTLEMENT

10       AGREEMENT DOES CAP THAT AMOUNT AS WELL.

11             THE COURT:  AND REMIND ME WHAT THE CAP IS, PLEASE.

12             MS. LAMPASONA:  85,000 ANNUALLY.

13             THE COURT:  OKAY.  THANK YOU.

14         SO LET ME ASK FOR THE DAMAGES RELIEF CLASS WHY WE NEED TO

15       CHANGE THE END DATE IN THE CERTIFICATION MOTION THAT THE

16       PLAINTIFFS FILED?  THE REQUEST WAS TO HAVE IT THROUGH THE

17       COMPLETION OF THE ACTION, BUT NOW WE ARE ADVANCING THAT DATE.

18       CAN YOU JUST EXPLAIN WHY THERE IS THAT DIFFERENCE?

19             MR. WALLACE:  IN THE MEDIATION PROCESS, YOUR HONOR,

20       MARTIN RUDY IS THE MEDIATOR ON THIS, AND HE WENT WITH JUST THE

21       STANDARD APPROACH THAT HE USES IN WAGE-AN-HOUR CASES AND OTHER

22       CONSUMER ACTIONS WHICH IS, YOU KNOW, THAT THERE'S A BEGINNING

23       PERIOD FOR THE CLASS, WHICH I GUESS IS THE STATUTE OF

24       LIMITATIONS POINT, AND THEN UP THROUGH PRELIMINARY APPROVAL.

25             AND WE THOUGHT THAT WAS APPROPRIATE.  BUT THAT DIDN'T
```

1    MATCH WHAT WE HAD ORIGINALLY PROPOSED TO THE COURT AND WHAT THE

2    COURT CERTIFIED AT THE CLASS CERTIFICATION STAGE, SO WE WERE

3    PROPOSING THAT SLIGHT MODIFICATION.

4         THE COURT:  JUST BECAUSE THAT'S HOW HE DOES IT IN

5    OTHER CASES?

6         MR. WALLACE:  WELL, THAT'S ONE REASON.  AND THEN I

7    SEEM TO RECALL AS WELL, THAT OUR EXPERT DAMAGES REPORT WAS

8    BASED ON INFORMATION THROUGH 2019.

9         AND SO THAT WAS DERIVED FROM INFORMATION ABOUT WHO

10   PURCHASED THE ACCESSIBLE SEATING AND THE COMPANION SEATING.

11   AND THAT INFORMATION THAT WE HAD WAS FROM DURING THE STATUTE OF

12   LIMITATIONS PERIOD UP THROUGH A DATE IN 2019.

13        AND THAT'S HOW WE DEVELOPED OUR MAXIMUM DAMAGES ESTIMATE

14   WHICH WAS $70 MILLION.  AND SO WE WANTED THE SCOPE OF THE

15   DAMAGES RELEASE TO TRACK WITH WHAT WE HAD DONE IN TERMS OF

16   ESTIMATING THE TOTAL DAMAGES AND WHO WOULD BE GETTING THE

17   SETTLEMENT SHARE OF DAMAGES BASED ON THE ANALYSIS THAT WE DID.

18        THE COURT:  OKAY.  DO DEFENDANTS WANT TO COMMENT ON

19   THAT THE DIFFERENT END DATE OF THE CLASS?

20        MS. LAMPASONA:  WE AGREE THAT THE MODIFICATION MAKES

21   SENSE TO EXTEND IT JUST THROUGH THE DATE OF THE PRELIMINARY

22   APPROVAL.

23        THE COURT:  OKAY.  ALL RIGHT.

24        THE SORT OF STANDARD HIGHEST CLASS REP AWARD IN SIMILAR

25   CIRCUMSTANCES, USUALLY IN EMPLOYMENT, IS 5,000.  I WAS JUST

1    WONDERING WHY HERE, I CAN UNDERSTAND IN EMPLOYMENT BECAUSE

2    THERE'S A RISK THAT NAMED PLAINTIFFS WON'T BE REHIRED, BUT THIS

3    IS REALLY WHETHER A RETAILER WOULD SELL YOU A TICKET.  SO IT

4    SEEMS UNLIKELY THAT SOME RETAILER WOULD REFUSE TO SELL A TICKET

5    TO AN EVENT TO A PLAINTIFF BECAUSE THEY WERE REPRESENTATIVES IN

6    THIS CASE.

7         SO WHY WOULD A HIGHER AWARD -- IN EMPLOYMENT CASES, I

8    DEFINITELY UNDERSTAND THE CONCERN, BUT HERE, WHEN YOU ARE

9    BUYING A TICKET, ESPECIALLY ONLINE, FOR EXAMPLE, NO ONE KNOWS

10   WHETHER YOU ARE DISABLED OR NOT, AND THEY ARE NOT LIKELY TO

11   TURN AWAY A CUSTOMER IN A SALE.

12         MR. WALLACE:  I DON'T THINK WE DISAGREE WITH THAT

13   ANALYSIS, YOUR HONOR.

14    I THINK REALLY WE ARRIVED AT THAT NUMBER BECAUSE WE FELT

15   THAT OUR PEOPLE HAD PUT IN A SIGNIFICANT AMOUNT OF TIME

16   INVESTIGATING THE FACTS, OBVIOUSLY GOING TO EVENTS, I THINK

17   EVERYONE SAT FOR DEPOSITION.

18         THE COURT:  YOU ARE SAYING THEY WENT TO THE STADIUM

19   EVENTS JUST FOR THE LAWSUIT?

20         MR. WALLACE:  NO.  THAT'S TRUE, YOUR HONOR, THEY WENT

21   TO MANY EVENTS AND CONVEYED ALL THAT INFORMATION TO US.  THEY

22   ALSO SAT FOR DEPOSITION.

23         THE COURT:  BUT THEY ARE GOING TO GET PAID BY THE

24   EVENT, $4,000, SO I DON'T UNDERSTAND WHY -- I MEAN, UNLESS THEY

25   WENT TO EVENTS JUST TO LITIGATE, WHY THEY SHOULD GET PAID MORE

1    IN ADDITION TO $4,000 PER EVENT?  THEY ARE GOING TO GET -- THEY

2    PRESUMABLY GOT SOME ENJOYMENT FOR THESE ENTERTAINMENT EVENTS, I

3    ASSUME.

4         MR. WALLACE:  WE DON'T DISAGREE WITH THAT AT ALL,

5    YOUR HONOR.

6    IT REALLY -- THE SERVICE AWARD REQUEST HERE REALLY IS

7    BASED UPON THE AMOUNT OF TIME THAT THEY PUT IN, WHICH DID

8    INCLUDE SITTING FOR DEPOSITION, PREPARATION OF DECLARATIONS,

9    THEY DID COME TO ONE OR MORE MEDIATIONS.

10        SO THAT WAS REALLY THE BASIS, RESPONDING TO WRITTEN

11   DISCOVERY, MR. LEE REMINDS ME.  SO THEY WERE QUITE ACTIVE

12   PARTICIPANTS.  THEY ALSO GAVE US THEIR FEEDBACK ON THE

13   SETTLEMENT AT VARIOUS POINTS.

14        SO WE THOUGHT $7,500 WAS NOT UNREASONABLE FOR THE AMOUNT

15   OF TIME THAT THEY PUT IN.  AND, YOU KNOW, WE WOULD LIKE THE

16   OPPORTUNITY TO TRY AND, YOU KNOW, MAKE THAT PRESENTATION TO

17   YOUR HONOR IN THE MOTION FOR SERVICE AWARDS.

18         THE COURT:  AND I WILL WANT IT TO BE SPECIFIC.

19   BECAUSE NOTHING I'M HEARING IS ANY DIFFERENT THAN WHAT

20   EMPLOYMENT PLAINTIFFS DO.

21        EMPLOYMENT PLAINTIFFS ARE DEPOSED, THEY RESPOND TO

22   DISCOVERY REQUESTS, THEY ATTEND THE MEDIATION.  LIKE, THE LEVEL

23   OF INVOLVEMENT DOES NOT SOUND ANY DIFFERENT, AND THE RISK OF

24   PEOPLE NOT BEING REHIRED IN AN EMPLOYMENT CASE IS FAR GREATER,

25   SO I JUST WOULD LIKE THAT LAID OUT WITH SPECIFICITY, PLEASE.

1        OKAY.  NO KIND OF GENERAL, GENERIC, COMPENSATE FOR THE

2    TIME DECLARATION, PLEASE.

3        MR. WALLACE:  WE WILL DO OUR VERY BEST.

4        THE COURT:  OKAY.  THANK YOU.

5    THANK YOU.  OKAY.  SO LET ME ASK, IF YOU ADD THE 24

6    MILLION, THE SETTLEMENT FUND WITH THE 13.46 MILLION THAT YOU

7    ARE GOING TO REQUEST IN ATTORNEY'S FEES, IF YOU ADD THAT UP,

8    THAT'S 37.46 MILLION.  I DON'T SEE HOW THE 13.46 MILLION IS

9    32.5 PERCENT OF 37.46 MILLION.

10        MR. WALLACE:  HOW WE GOT TO THAT, YOUR HONOR, IS WE

11    DID NOT INCLUDE COSTS, WHICH ARE APPROXIMATELY 1.3 MILLION.  I

12    THINK IT'S A LITTLE BIT MORE THAN THAT.  SO THE FEE COMPONENT

13    WOULD BE 12.0, 12.1, AND WE DIVIDED THAT INTO THE 37.46.  AND

14    THAT IS HOW WE ARRIVED AT THE --

15        THE COURT:  I'M SORRY, SAY THAT ONE MORE TIME.

16        MR. WALLACE:  IT'S ABOUT 12.1 OR 12.05, WOULD BE THE

17    LODESTAR COMPONENT FOR FEES.  AND THEN WE DIVIDED THAT INTO THE

18    37.46, AND I RECALL THAT THAT RESULTED IN 32 PERCENT.

19        THE COURT:  NO, IF YOU TAKE 13.46 AND YOU DIVIDE THAT

20    BY 37.46, IT'S 36 PERCENT, IT'S NOT 32.5 PERCENT.

21        MR. WALLACE:  BUT WITHOUT THE COSTS, IF YOU ARE JUST

22    LOOKING AT THE PERCENTAGE OF THE FEES COMPARED TO THE --

23        THE COURT:  OKAY.  BUT YOU ARE REQUESTING FEES OF

24    13.46 MILLION.

25        MR. WALLACE:  ACTUALLY THAT'S -- WE WEREN'T CLEAR

1    ABOUT THAT.  THAT'S FEES AND COSTS OF 13.46, YOUR HONOR.  AND

2    THE COSTS AND EXPENSES ARE ABOUT 1.3, SO THE FEE COMPONENT IS

3    ABOUT 12.1.

4              THE COURT:  12.16, YOU ARE SAYING.

5              MR. WALLACE:  SOMEWHERE RIGHT IN THERE.

6         IT WILL BE, PERHAPS, A LITTLE BIT HIGHER OR LOWER.  I

7    THINK LOWER BECAUSE THERE'S A LITTLE BIT MORE COSTS THAT WE

8    HAVEN'T QUITE FINISHED FULLY ADDING UP AND PAYING.

9         SO THE COSTS ARE A LITTLE OVER 1.3 MILLION.

10             THE COURT:  ALL RIGHT.

11        YOU HAD MOVED FOR A TRO TO ENJOIN THE ALTERNATIVE DISPUTE

12   RESOLUTION IN THE FIRST FILED CASE TO PREVENT INJUNCTIVE RELIEF

13   FROM BEING AWARDED OUTSIDE OF YOUR SETTLEMENT.

14        I WOULD NOT REIMBURSE ANY ATTORNEY'S FEES OR COSTS FOR

15   THAT MOTION OF THE TRO.  I THINK THAT WAS NOT IN THE INTEREST

16   OF THE CLASS.  I WAS VERY DISAPPOINTED TO SEE THAT MOTION, SO

17   I'M NOT GOING TO REIMBURSE THAT.  I WANT YOU TO TAKE THAT OUT.

18             MR. WALLACE:  WE WILL DO THAT, YOUR HONOR.  WE ARE

19   SORRY.

20             THE COURT:  FEES AND COSTS.

21        ANY OTHER EFFORTS YOU HAVE DONE TO TRY TO BLOCK AN EARLIER

22   SETTLEMENT IN ANY OF THE OTHER CASES, I WANT ALL OF THAT

23   REMOVED FROM YOUR ATTORNEY'S FEES REQUESTS.  I DON'T THINK

24   THAT'S IN THE INTEREST OF YOUR CLASS.

25             IF YOUR CLASS'S INTEREST IS TO GET INJUNCTIVE RELIEF AS

1    QUICKLY AS POSSIBLE SO THAT YOUR CLASS MEMBERS CAN ENJOY THE

2    ENTERTAINMENT EVENTS AT THIS FACILITY, THEN YOU SHOULD BE HAPPY

3    THAT THIS DEFENDANT MAY MAKE THOSE INJUNCTIVE RELIEF CHANGES

4    SOONER RATHER THAN LATER, WHETHER THEY ARE IN THE CONTEXT OF

5    YOUR SETTLEMENT OR IN THE CONTEXT OF ANOTHER SETTLEMENT.  I

6    DON'T FEEL LIKE THAT IS IN THE INTEREST OF THE CLASS.

7              MR. WALLACE:  WE UNDERSTAND, YOUR HONOR.

8         I THINK OUR CONCERN WAS THAT THEIR INJUNCTIVE RELIEF WOULD

9    BE INFERIOR TO WHAT WE WOULD SEEK AND THAT THEN WE WOULD FACE

10   SOME SORT OF RISK OF PRECLUSION.  THAT'S WHY WE DID WHAT WE

11   DID.

12             THE COURT:  NO.  YOU COULD HAVE GOTTEN ANY

13   SUPPLEMENTAL INJUNCTIVE RELIEF THAT WAS NECESSARY, AND YOU DID

14   NOT PRESENT IT IN YOUR TRO IN THAT WAY.  AND I'M NOT GOING TO

15   REIMBURSE ANY FEES AND COSTS.

16        I THINK YOU WERE TRYING TO PROTECT THE ATTORNEY'S FEES AND

17   YOUR OWN SETTLEMENT IN THIS CASE.  THAT WAS A FIRST FILED CASE,

18   THAT CASE WAS FILED FIRST.  THERE'S NO REASON IT SHOULDN'T HAVE

19   BEEN SETTLED FIRST.

20        SO ANY FEES AND COSTS TO PREVENT EARLY INJUNCTIVE RELIEF

21   FOR THIS CLASS, I DON'T THINK IS IN THE INTEREST OF THE CLASS

22   AND YOU SHOULD NOT BE REIMBURSED FOR IT.  FEES OR COSTS.  I

23   FEEL ADAMANT ABOUT THAT.

24             MR. WALLACE:  WE UNDERSTAND WHAT YOUR HONOR IS

25   SAYING.  I DON'T BELIEVE THAT THERE WERE ANY OTHER ACTIONS THAT

1    WE TOOK TO ENJOIN ANY OTHER CASE.

2         THE COURT:  ALL RIGHT.  SO LET'S GO THROUGH THE

3    FORMS.  AND I WOULD LIKE YOU TO FILE NEW ONES.  I CAN GIVE YOU

4    REDLINES IF YOU NEED IT, BUT I'M HOPING WE CAN DISCUSS THEM

5    HERE TODAY.

6         SO WITH REGARD TO YOUR CLAIM FORM, I JUST DON'T THINK

7    THERE'S ENOUGH SPACE FOR ANY ANSWERS TO BE WRITTEN IN.

8         SO IF YOU LOOK AT NUMBER 4, "WHAT TYPE OF AN ABILITY/AID

9    DID YOU USE WHILE VISITING LEVI STADIUM?"  YOU LEAVE A TINY

10   LINE AND TINY SPACE TO WRITE THAT ANSWER.  AND I JUST THINK

11   THAT IT'S TOO TIGHT.

12        SIMILARLY, FOR QUESTIONS 9 AND 10, THERE'S JUST NOT ENOUGH

13   SPACE TO WRITE, HANDWRITE, ANSWERS IN THOSE LINES.  SO IF YOU

14   COULD PROVIDE MORE SPACE, PLEASE.

15        I ALSO THINK THAT THE QUESTIONS SHOULD SORT OF FLOW

16   BETTER.  SO IF YOU WANT AN IDENTIFICATION OF THE BARRIERS, THAT

17   SHOULD FOLLOW THE QUESTION ABOUT DENIAL OF ACCESS.

18        SO, FOR EXAMPLE, QUESTION 9 SHOULD BE BETWEEN QUESTIONS 5

19   AND 6.  SO WHEN YOU ASK, "WHAT ARE THE PHYSICAL BARRIERS THAT

20   YOU EXPERIENCED," IT SHOULD FOLLOW THE QUESTION OF, "WELL, DID

21   YOU EXPERIENCE ANY PHYSICAL ACCESS BARRIERS."

22        AND THEN YOU ASK THE QUESTION, "DID THOSE PARTICULAR

23   BARRIERS CAUSE YOU TO EXPERIENCE ANY DISCOMFORT OR

24   EMBARRASSMENT?"  AND THEN WHEN YOU START WITH THE WHOLE SECOND

25   SET OF QUESTIONS REGARDING DIFFICULTIES IN GETTING A TICKET,

1    SIMILARLY, I THINK QUESTION 10 SHOULD BE BETWEEN QUESTION 7 AND

2    8.

3         SO THE FIRST QUESTION 7 WILL BE, "WAS IT DIFFICULT FOR YOU

4    TO CHECK A TICKET FOR WHEELCHAIR ACCESSIBLE SEATING?"  THEN

5    QUESTION 10, WHAT IS CURRENTLY QUESTION 10, SHOULD BE, "FOR

6    WHAT YOU'VE IDENTIFIED WAS DIFFICULT, PLEASE DESCRIBE YOUR

7    EXPERIENCE."

8         AND THEN THE NEXT QUESTION SHOULD BE, "WELL, WAS THAT

9    EXPERIENCE ONE THAT CAUSED YOU DISCOMFORT, DIFFICULTY OR

10   EMBARRASSMENT."

11        DO YOU UNDERSTAND?  I FEEL LIKE THE WAY THAT IT IS NOW,

12   THE FLOW DOESN'T MAKE SENSE.  IT'S NOT POSSIBLE -- LIKE WHY

13   SHOULD I SAY FROM QUESTION 5, GO ANSWER QUESTION 7.  WELL, IF

14   YOUR ANSWER IS YES, I JUST FEEL LIKE ALL OF THE PHYSICAL ACCESS

15   BARRIER QUESTIONS SHOULD BE TOGETHER, AND THEN YOU SHOULD GO TO

16   ALL THE TICKETING BARRIERS IN THOSE QUESTIONS.

17        IS THAT ACCEPTABLE?

18             MS. LAMPASONA:  THAT'S ACCEPTABLE TO THE DEFENSE.

19             MR. WALLACE:  YES.

20             MS. LAMPASONA:  YES, YOUR HONOR.

21             THE COURT:  OKAY.  SO JUST MOVE, PLEASE, QUESTION 9,

22   BETWEEN 5 AND 6, AND PLEASE MOVE QUESTION 10 BETWEEN QUESTIONS

23   7 AND 8.  AND JUST PROVIDE A LITTLE BIT MORE ROOM FOR PEOPLE TO

24   PROVIDE AN ANSWER.

25        OKAY.  SO IF THOSE CHANGES ARE ACCEPTABLE, I WOULD LIKE

1    YOU TO RE-FILE THE CLAIM FORM.  WE WILL GO THROUGH THE REST OF

2    THE DOCUMENTS, AND THEN I WOULD LIKE TO KNOW WHAT YOU THINK,

3    YOU CAN FILE A NEW ONE, OKAY.

4         AND THEN WHAT I WILL DO IN THE PRELIMINARY APPROVAL ORDER,

5    JUST IDENTIFY THE REVISED ONES AND APPROVE THOSE.

6         ALL RIGHT.  SO LET'S GO THEN, PLEASE, TO THE SHORT FORM.

7    NOT MANY -- SO ARE YOU TRYING TO KEEP THIS ONE PAGE?  BECAUSE

8    RIGHT NOW IT'S ONE PAGE AND CHANGE.  BUT I THINK IT'S

9    WORTHWHILE TO HAVE A LITTLE BIT MORE INFORMATION, BECAUSE

10   PEOPLE MAY ONLY LOOK AT THE SHORT FORM AND MAY NOT EVEN GO BACK

11   TO LOOK AT THE LONG FORM, SO IT WOULD BE HELPFUL IF THIS WERE A

12   SELF-CONTAINED DOCUMENT THAT GAVE EVERYONE ENOUGH INFORMATION.

13        SO WITH REGARD TO THE SHORT FORM, I HAVE A COUPLE OF

14   SUGGESTIONS.

15        FOR QUESTION 1, I THINK IT WOULD BE HELPFUL FOR YOU TO

16   NAME THE LAWYERS, SO THAT IF A CLASS MEMBER CALLS, THEY KNOW

17   WHO TO ASK FOR.  IT'S A LITTLE BIT DAUNTING TO MAKE JUST A

18   GENERAL REQUEST AND NOT KNOW WHO TO DIRECT YOUR QUESTION TO.

19   SO IF YOU WOULD PLEASE ADD NAMES IN NUMBER 1.

20        AND AS FAR AS NUMBER 3, THE MONETARY AWARD, AND THIS IS A

21   CONCERN I HAVE ABOUT BOTH THE LONG FORM AND THE SHORT FORM, THE

22   DOCUMENTS GIVE THE IMPRESSION, I SHOULD SAY "NOTICE" INSTEAD OF

23   "FORM," THAT AS LONG AS YOU JUST SIGN AND MAIL IN THE CLAIM

24   FORM, YOU ARE AUTOMATICALLY GOING TO GET THE MONETARY AWARD.

25        I THINK THERE SHOULD BE SOMETHING HERE THAT SAYS WHAT YOU

1    HAVE TO DO IN THE CLAIM FORM.  IN THE CLAIM FORM, YOU NEED TO

2    IDENTIFY THE BARRIER.  I GUESS YOU DON'T HAVE TO PROVIDE ANY

3    TICKETING; IS THAT RIGHT?  OH, YOU DO, YOU HAVE TO APPROXIMATE

4    THE DATE AND THE DIFFICULTY AND YOU HAVE TO SAY THAT IT CAUSED

5    YOU DIFFICULTY, DISCOMFORT OR EMBARRASSMENT.

6         I THINK IT WOULD BE HELPFUL TO JUST LET PEOPLE KNOW THAT

7    YOU WILL HAVE TO MAKE THIS KIND OF DECLARATION UNDER PENALTY OF

8    PERJURY AS TO THESE PIECES OF INFORMATION, JUST SO PEOPLE THINK

9    OH, IF I JUST SIGN AND MAIL THIS IN ON TIME, I'M AUTOMATICALLY

10   GOING TO GET THE MONETARY AWARD.

11        ANY OBJECTION TO IDENTIFYING WHAT THE REQUIREMENTS ARE TO

12   GET THE MONETARY AWARD?

13             MR. WALLACE:  NO, YOUR HONOR.  IT SOUNDS LIKE A GOOD

14    IDEA.

15             MS. LAMPASONA:  NO OBJECTION.

16             THE COURT:  OKAY.  JUST SO PEOPLE KNOW.  I DON'T WANT

17    TO CREATE UNREALISTIC EXPECTATIONS EITHER, THAT PEOPLE THINK

18    OH, I CAN JUST SIGN AND DATE IT AND I'M AUTOMATICALLY GOING TO

19    GET MONEY.  NO, YOU HAVE TO DO A LITTLE BIT MORE THAN THAT.

20        OKAY.  THEN SIMILARLY, SINCE YOU ARE GOING TO CHANGE THE

21   OPTING OUT AND OBJECTIONS FOR EVERYTHING TO BE MAILED TO THE --

22   THIS IS ALL YOU SAY ABOUT OBJECTIONS, "IF YOU DO NOT LIKE ANY

23   PART OF THE SETTLEMENT, THE DEADLINE TO FILE A WRITTEN

24   OBJECTION IS BLANK.  THE DETAIL OF NOTICE AVAILABLE ON THE

25   SETTLEMENT WEBSITE EXPLAINS HOW TO OPT OUT OR OBJECT."

1          I GUESS I DON'T UNDERSTAND WHY EARLIER IN THE FIRST

2     SENTENCE OF THAT SECTION YOU SAY, "IF YOU ARE A DAMAGES CLASS

3     MEMBER, YOU MAY EXCLUDE YOURSELF FROM THE DAMAGES CLASS BY

4     MAILING A LETTER TO THE SETTLEMENT ADMINISTRATOR" BY SUCH AND

5     SUCH DATE, "THE LETTER MUST CLEARLY STATE THAT YOU WANT TO OPT

6     OUT OF THE DAMAGES CLASS IN THIS CASE," ET CETERA.

7          I THINK IT WOULD BE A LOT CLEANER THAT YOU PROVIDE THE

8     SAME LEVEL OF INFORMATION ABOUT HOW YOU EITHER OPT OUT OR

9     OBJECT AND WHO THE MAILING GOES TO, VERSUS JUST SAYING, WELL,

10    IF YOU WANT TO FILE AN OBJECTION, YOU GOT TO GO TO ANOTHER

11    DOCUMENT TO GET THE INFORMATION.

12         I FEEL LIKE THIS SHOULD BE A SELF-CONTAINED DOCUMENT,

13    BECAUSE MOST OF THE PEOPLE ARE NOT GOING TO GO BACK AND READ

14    THE LONG FORM.  SO IT SHOULD SAY, THIS IS HOW YOU OBJECT, THIS

15    IS HOW YOU OPT OUT, OKAY.

16         YOU KNOW, YOU WANT $7,500 FOR THE NAMED CLASS

17    REPRESENTATIVES, BUT YOU NEVER IDENTIFY THEM BY NAME IN ANY OF

18    THESE DOCUMENTS.  I HAVE NOT SEEN THAT BEFORE.  THEIR NAMES ARE

19    NOT ON THE LONG FORM, THEIR NAMES ARE NOT ON THE SHORT FORM.

20              MR. WALLACE:  WE HAVE NO OBJECTION TO ADDING THEIR

21    NAMES TO THE NOTICE, YOUR HONOR.  THEY ARE ON THE COMPLAINT, SO

22    I THINK IT MAKES SENSE.

23              THE COURT:  WELL, I'VE NEVER SEEN A NOTICE THAT

24    DIDN'T HAVE THE NAMED CLASS REPRESENTATIVES, RIGHT.  PEOPLE

25    LIKE TO KNOW WHO IS REPRESENTING THEM.  THEY LIKE TO KNOW WHO

1    IS GOING TO GET THE ENHANCEMENT AWARD.  AND NO ONE IS EVER

2    NAMED IN EITHER OF THESE DOCUMENTS, AND I THINK THAT SHOULD BE

3    ADDED.

4         NOW I WOULD TAKE OUT -- I WOULD LIKE YOU TO TAKE OUT ALL

5    THIS STUFF ABOUT THE ATTORNEYS FEES WILL NOT IN ANY WAY

6    DIMINISH THE DAMAGES FUND, BECAUSE I THINK THAT'S ALREADY BEEN

7    DONE.

8         WHEN THE DEFENDANTS SETTLED, THEY SETTLED TO AN OVERALL

9    AMOUNT.  THEY SETTLED FOR 36.46 MILLION.  YOU ALL DECIDED HOW

10   TO SPLIT THAT UP.  BASICALLY, THE FEES ARE ABOUT HALF, MORE

11   THAN HALF, 60 PERCENT OF WHAT'S GOING TO THE CLASS.  THE CLASS

12   IS GOING TO GET 24 MILLION, THE PLAINTIFFS WANT 14 MILLION, SO

13   MORE THAN 60 PERCENT.

14        SO I FEEL LIKE IT'S A LITTLE BIT NOT COMPLETELY ACCURATE

15   TO SAY OH, WELL, DON'T WORRY, YOU KNOW, THERE'S NOT ANY IMPACT

16   ON THE DAMAGES FUND BASED ON THE ATTORNEYS FEES.

17        JUST BECAUSE YOU ALL HAVEN'T NEGOTIATED THAT, DOESN'T MEAN

18   THERE WASN'T AN IMPACT ON HOW MUCH WILL GO TO THE CLASS.  SO I

19   WOULD LIKE TO TAKE ALL OF THAT OUT, I DON'T THINK IT'S FULLY

20   ACCURATE.

21        THE DEFENDANTS SETTLED FOR 37.46 MILLION AND YOU ALL

22   NEGOTIATED TO CARVE OUT THE 13.5 MILLION.  SO CLASS MEMBERS

23   COULDN'T EVEN GET THAT, COULDN'T EVEN TOUCH THAT, COULDN'T EVEN

24   ASK FOR THAT.  I OBJECT TO THAT BEING DONE, BUT I KNOW

25   PLAINTIFFS LIKE TO DO THAT BECAUSE THEY WANT TO MAKE SURE THAT

1    MORE OF THE MONEY GOES TO THE ATTORNEY'S FEES AND LESS TO THE

2    CLASS, AND THEY KNOW IF THEY LEAVE IT OPEN, I WILL TRY TO GIVE

3    MORE TO THE CLASS.

4        SO I DON'T LIKE THE WAY THAT'S DONE, BUT THAT'S NOT A

5    BASIS FOR ME NOT TO APPROVE THIS SETTLEMENT.  BUT I'M NOT GOING

6    TO TELL THESE CLASS MEMBERS OH, DON'T WORRY, THE FACT THAT THE

7    CLASS IS GETTING 24 MILLION AND THE LAWYERS WANT 13.5 MILLION,

8    WHICH IS MORE THAN 56 PERCENT OF THE -- WHAT THE CLASS IS

9    GETTING, I JUST -- I DON'T THINK IT'S ACCURATE.

10       I THINK IT'S JUST THAT YOU ALL HAVE NEGOTIATED THAT SO

11   THAT I CAN'T GIVE ANY MORE OF THE MONEY TO THE CLASS.  SO I

12   WOULD LIKE THAT DELETED IN NUMBER 7, AND ALSO IN THE LONG FORM.

13       I KNOW PLAINTIFF'S LAWYERS LIKE TO DO THAT TO RESERVE MORE

14   MONEY, SUCH THAT IT CAN'T BE GIVEN TO THE CLASS, SO IT HAS TO

15   BE PAID TO THEM IF I DECIDE TO AWARD IT.  AND I DON'T LIKE

16   THAT.  I DON'T THINK THAT'S CONSISTENT WITH THE CLASS'S

17   INTEREST TO CARVE OUT MONEY AND SAY IT'S UNTOUCHABLE BY THE

18   CLASS, IT ALL HAS TO GO TO THE DEFENDANT OR TO THE LAWYERS FOR

19   THE PLAINTIFFS.  BUT I KNOW CERTAIN PLAINTIFF'S COUNSEL LIKE TO

20   DO THAT.

21       OKAY.  LET'S GO, PLEASE, TO THE LONG FORM.  I THINK SOME

22   OF THE CHANGES I'VE REQUESTED, I WOULD ALSO LIKE TO BE MADE

23   HERE.  AND THAT IS, THE CLASS MEMBERS ARE NEVER MENTIONED BY

24   NAME, THEY ARE NEVER TOLD WHAT THEY WILL HAVE TO DECLARE IN

25   ORDER TO GET THE MONETARY SETTLEMENT.

1    I THINK THAT WOULD BE HELPFUL TO GIVE THEM SOME SENSE OF

2    WHAT INFORMATION THEY WILL HAVE TO PROVIDE IN THE CLAIM FORM,

3    THAT'S NOT ANYWHERE HERE, IT MAKES IT SEEM LIKE YOU SIGN IT,

4    YOU MAIL IT IN TIMELY, YOU ARE AUTOMATICALLY GOING TO GET THE

5    FUNDS.  SO I WOULD LIKE THAT CORRECTED, PLEASE.

6    I HAVE SOME NITS IN THIS DOCUMENT, BUT WHAT I WANTED TO --

7    I MEAN, I CAN TELL YOU WHAT SOME OF THESE NITS ARE, BECAUSE I

8    WOULD LIKE YOU TO FILE REVISED ONES.

9    I WILL JUST SAY IN THE FOURTH BULLET, YOU ARE MISSING A

10   WORD.  IN THE THIRD LINE OF THE FOURTH BULLET ON THE FIRST

11   PAGE, IT SAYS, "WITH IMPROVED TO THE STADIUM," I THINK "ACCESS"

12   SHOULD BE INCLUDED OR INSERTED BETWEEN "IMPROVED" AND "TO."

13   DO YOU SEE THAT?  "SCOOTERS, CANES, WALKERS AND OTHER

14   MOBILITY AIDS WITH IMPROVED TO THE STADIUM."  JUST INSERT

15   "ACCESS," PLEASE.

16   AND IN THIS LANGUAGE OF THIS FORM, YOU NORMALLY JUST REFER

17   TO IT AS SETTLEMENT, AND SO I THINK WHERE YOU SAY "MAKE US PART

18   OF THE SETTLEMENT AGREEMENT," YOU SHOULD JUST SAY "AS PART OF

19   THE SETTLEMENT."  SO IN THE FIFTH BULLET, I WOULD DELETE

20   "AGREEMENT."

21   SO LET ME JUST GIVE YOU AN EXAMPLE.  THAT PARAGRAPH READS,

22   "MEMBERS OF ALL OF THE CLASS, AS CERTIFIED BY THE COURT, WILL

23   BENEFIT FROM THE ACCESS IMPROVEMENTS DEFENDANTS AGREE TO MAKE

24   AS PART OF THE SETTLEMENT AGREEMENT.  THEY CANNOT OPT OUT OF

25   THAT PART OF THE SETTLEMENT, BUT CAN OBJECT TO IT IF THEY SO

1    DESIRE.  MEMBERS OF THE DAMAGES CLASS, HOWEVER, CAN EXCLUDE

2    THEMSELVES FROM THAT PART OF THE SETTLEMENT AND RETAIN ANY

3    RIGHTS THEY MAY HAVE TO SUE ON THEIR OWN.  IN THAT CASE,

4    THOUGH, THEY WILL RECEIVE NO MONETARY COMPENSATION IN THIS CASE

5    AND CANNOT OBJECT TO THE DAMAGES PART OF THE SETTLEMENT

6    AGREEMENT."

7         I JUST FEEL LIKE THE USE OF "SETTLEMENT AGREEMENT" VERSUS

8    "SETTLEMENT" IS INCONSISTENT AND IT MAKES MORE SENSE TO JUST

9    SAY "SETTLEMENT" INSTEAD OF "SETTLEMENT AGREEMENT."

10        I WOULD ADD A COMMA AFTER "THE SETTLEMENT," "THEY CANNOT

11   OPT OUT OF THAT PART OF THE SETTLEMENT," COMMA, "BUT CAN OBJECT

12   TO IT IF THEY SO DESIRE."

13        AND I THINK THAT LAST SENTENCE IS A LITTLE BIT INCOMPLETE.

14   I THINK IN THAT LAST SENTENCE IF WE SAY, "IN THAT CASE, THOUGH,

15   THEY WILL RECEIVE NO MONETARY COMPENSATION IN THIS CASE AND

16   CANNOT OBJECT TO THE DAMAGES PART," I WOULD SAY "OF THE

17   SETTLEMENT IN THIS CASE."

18        OKAY.  AND THEN IN YOUR BOX ON PAGE 2, I THINK INSTEAD OF

19   AN INDIVIDUAL SETTLEMENT AWARD AND SUBMIT A CLAIM FORM, JUST TO

20   SAY, "WILL RECEIVE A MONETARY SETTLEMENT AWARD AS PART OF THE

21   SETTLEMENT?"

22        IN EVERYWHERE ELSE, YOU HAVE BEEN CAPITALIZING

23   "SETTLEMENT," LET'S JUST KEEP THAT CONSISTENT.  SO IN THIS

24   DOCUMENT AS WELL, ON PAGE 2, IN SOME INSTANCES YOU CAPITALIZE

25   "SETTLEMENT" AND IN SOME CASES YOU DON'T.  IF YOU WOULD PLEASE

1    JUST DO A GLOBAL SEARCH, AND WE SHOULD CAPITALIZE IT EVERYWHERE

2    IT'S REFERRING TO THE INSTANT SETTLEMENT THAT'S THE SUBJECT OF

3    THIS MOTION, OKAY.

4         WE ARE MISSING A WORD IN THE OPT OUT BOX.  "BY OPTING OUT,

5    YOU WILL MAINTAIN ANY RIGHT YOU MAY HAVE SUE THE DEFENDANTS."

6    I THINK WE NEED A "TO" BETWEEN "HAVE" AND "SUE."

7         I WOULD ADD A COMMA AFTER LEVI STADIUM.  AND ADD, "BUT YOU

8    WILL RECEIVE NO PAYMENT FROM THE SETTLEMENT IN THIS CASE."  OR

9    I GUESS YOU COULD JUST LEAVE IT "FROM THE SETTLEMENT IN THIS

10   CASE" BECAUSE THEY COULD STILL, I GUESS, BRING THEIR OWN SUIT.

11        "IF YOU TAKE NO ACTION IN THE DO NOTHING ROW," I WOULD ADD

12   A COMMA AFTER THAT, PLEASE.  CAPITALIZE "SETTLEMENT" IN THE

13   "OBJECT" COLUMN.

14        AND THIS IS A QUESTION, IT'S NOT A BIG POINT, SOMETIMES WE

15   SAY PART, SOMETIMES WE SAY PORTION.  I THINK IN MOST INSTANCES

16   YOU SAY, PART OF THE SETTLEMENT.  SO I WOULD JUST RECOMMEND

17   THAT WE KEEP THAT CONSISTENT, PLEASE.

18        NOW, ONE QUESTION I HAVE IS ABOUT THE CLASS DEFINITION.

19   IT'S KIND OF COMPLICATED.  SO I'M WONDERING IF WE SHOULD WAIT

20   AND DO THAT IN SECTION 6, BECAUSE IN SECTION 3, IT'S JUST NOT

21   THAT HELPFUL, BECAUSE IT SAYS "THE PEOPLE TOGETHER ARE A CLASS

22   OR CLASS MEMBERS."

23        PEOPLE TOGETHER.  THAT'S TOTALLY NOT DEFINED, IT'S NOT

24   GOING TO BE THAT HELPFUL.  IF IT'S TOO COMPLICATED TO FRONT

25   THIS DEFINITION OF CLASSES, MAYBE WE JUST KEEP NUMBER 6 AND

1    FIGURE OUT A WAY TO DEFINE THE NAMED CLASS REPRESENTATIVES IN

2    PARAGRAPH 6, AND YOU COULD ALSO NAME THE DEFENDANTS IN

3    PARAGRAPH 6.

4         BUT IT'S JUST -- I HAVEN'T SEEN A NOTICE THAT JUST DEFINES

5    THE CLASS AS THE PEOPLE TOGETHER, IT'S JUST TOO VAGUE.

6         SO ARE YOU OKAY WITH MAYBE COMBINING 3 AND 6?  DOES

7    EVERYONE SEE MY POINT ON THAT ONE?

8              MR. WALLACE:  YES, YOUR HONOR.

9              THE COURT:  THERE ARE ALSO THREE CLASSES, SO MAYBE

10   SAYING PEOPLE ALL TOGETHER AS A CLASS WILL ALSO BE CONFUSING,

11   SO I WOULD SAY LET'S MOVE 3 INTO 6, PLEASE.

12             MS. LAMPASONA:  YOUR HONOR, WHEN YOU SUGGESTED THAT

13   THE DEFENDANTS BE IDENTIFIED, THE DEFENDANTS AREN'T -- FOR

14   EXAMPLE, THE DAMAGES CLASS DOESN'T INCLUDE THE CITY OF SANTA

15   CLARA, THE SANTA CLARA STADIUM AUTHORITIES, SO HOW DO YOU

16   SUGGEST THAT WE IDENTIFY THE DEFENDANTS, BUT KEEPING IN MIND

17   THAT NOT ALL THE DEFENDANTS ARE -- APPLY TO EACH CLASS?

18             THE COURT:  WELL, IN SECTION 3, YOU JUST SAY THERE

19   ARE THREE DEFENDANTS WHO ARE REFERRED TO AS 49ER DEFENDANTS IN

20   THIS NOTICE AND THEN YOU LIST THE THREE 49ER DEFENDANTS.

21        AND THEN YOU SAY THE CITY OF SANTA CLARA AND THE SANTA

22   CLARA STADIUM AUTHORITY ARE ALSO DEFENDANTS IN THIS LAWSUIT.

23        SO YOU DON'T PROVIDE THAT CLARIFICATION IN WHAT YOU

24   CURRENTLY HAVE EITHER.

25             MS. LAMPASONA:  I UNDERSTAND.

1       WHAT I'M ASKING IS, DID YOU WANT US TO DO THAT, OR IS IT

2    MERELY JUST MOVING THE TEXT FROM NUMBER 3 OVER TO NUMBER 6?

3            THE COURT:  WELL, NO, WHY DON'T YOU SPECIFY, I THINK

4    IT WOULD BE HELPFUL.

5       WHO ARE THE DEFENDANTS FOR THE DAMAGES CLASS, JUST THE

6    49ER DEFENDANTS?

7            MS. LAMPASONA:  YES, YOUR HONOR.

8            THE COURT:  OKAY.  AND THEN WHO ARE THE DEFENDANTS

9    FOR THE TWO INJUNCTIVE RELIEF CLASSES?

10            MS. LAMPASONA:  ALL OF THE DEFENDANTS, BOTH THE

11    FORTY NINERS AND THE SANTA CLARA DEFENDANTS.

12            THE COURT:  I THINK YOU CAN JUST SAY EXACTLY THAT.

13            MS. LAMPASONA:  OKAY.

14            THE COURT:  YOU KNOW, YOU COULD SAY, THERE ARE THREE

15    DEFENDANTS WHO ARE REFERRED TO AS THE 49ER DEFENDANTS AND LIST

16    ALL THREE OF THEM.  AND SAY, THE 49ER DEFENDANTS ARE THE

17    DEFENDANTS IN THE CLAIMS -- IN THE DAMAGES CLASS CLAIMS, OR

18    HOWEVER YOU WANT TO DO IT.  AND THEN SAY, AS FAR AS THE TWO

19    INJUNCTIVE RELIEF CLASSES, THE 49ER DEFENDANTS AND THE CITY OF

20    SANTA CLARA AND THE SANTA CLARA STADIUM AUTHORITY ARE THE

21    DEFENDANTS, OR SOMETHING LIKE THAT.

22       I THINK YOU COULD JUST SPELL THAT OUT.  I THINK THAT

23    ACTUALLY WOULD BE HELPFUL.

24            MS. LAMPASONA:  OKAY.  GREAT.

25            THE COURT:  OKAY.  SO YOU WILL PUT THAT IN 6, PLEASE.

```
 1        YOU WILL NAME THE PLAINTIFFS.

 2            NOW I GUESS THE OTHER QUESTION I HAD, I THOUGHT IT WAS A

 3    LITTLE BIT CONFUSING IN THAT, SO WE HAVE THE CLASS MEMBERS'

 4    RIGHTS AND OPTIONS, AND THE ONLY OPTIONS THAT ARE CALLED OUT

 5    FOR THEM ARE, YOU CAN SUBMIT A CLAIM FORM, YOU CAN OPT OUT, OR

 6    YOU CAN DO NOTHING.

 7            I DON'T THINK THERE'S ANYTHING UNDER THE DAMAGES CLASS

 8    MEMBERS' RIGHTS AND OPTIONS, THERE'S NOTHING ABOUT HOW YOU

 9    OBJECT.  DO YOU SEE THAT?

10            SO UNDER DAMAGES OF CLASS MEMBERS' RIGHTS AND OBJECTIONS,

11    YOU HAVE NUMBER 10, WHAT ARE MY OPTIONS, YOU HAVE NUMBER 11,

12    FILE A CLAIM FORM, YOU HAVE NUMBER 12, HOW DO I OPT OUT, YOU

13    HAVE NUMBER 13, WHAT IF I DO NOTHING.

14            SO IT'S NOT EVEN CLEAR YOU CAN OBJECT.  THEN YOU GO TO

15    RIGHTS AND OPTIONS OF OTHER CLASS MEMBERS WHICH JUST SAYS, 14,

16    WHAT IF I'M NOT PART OF THE DAMAGES CLASS.

17            AND THEN YOU HAVE THIS WHOLE OTHER SECTION SAYING, THE

18    LAWYERS REPRESENTING THE SETTLEMENT CLASS.  DO I HAVE A LAWYER,

19    HOW WILL THE LAWYERS BE PAID.

20            AND THEN YOU HAVE THIS WHOLE OTHER SECTION WHICH SAYS,

21    OBJECTING TO THE SETTLEMENT, AND IT JUST SAYS, NUMBER 17, WHAT

22    IF I DON'T LIKE THE SETTLEMENT.

23            SO IT'S JUST THE WAY THAT THIS IS ORGANIZED, IT DOESN'T

24    EVEN MAKE IT SEEM LIKE OBJECTING IS AN OPTION FOR A DAMAGES

25    CLASS MEMBER OR AN INJUNCTIVE RELIEF CLASS MEMBER.  I DON'T
```

1      KNOW WHY THERE'S THIS INTERVENING SECTION ABOUT THE LAWYERS

2      WHEN YOU'VE ALREADY PREVIOUSLY GONE THROUGH THE OPTIONS OF ALL

3      THREE CLASSES.

4           DOES THAT MAKE SENSE?

5                MS. LAMPASONA:  YES.

6                THE COURT:  I FEEL LIKE IT WOULD BE CLEARER AND

7      CLEANER TO PERHAPS LAY OUT, YOU KNOW, UNDER THE DAMAGES CLASS,

8      HERE ARE YOUR FOUR DIFFERENT OPTIONS.

9           NOW IF YOU FILE A CLAIM FORM, YOU CAN STILL OBJECT,

10     CORRECT?  IF YOU OPT OUT, YOU CAN'T OBJECT BECAUSE YOU ARE OUT

11     OF THE CLASS.  I ASSUME IF YOU DO NOTHING, YOU CAN ALSO OBJECT,

12     IS THAT RIGHT, "IF YOU CHOOSE TO FOREGO YOUR PAYMENT UNDER THE

13     MONETARY SETTLEMENT AWARD."

14          SO I THINK IT SHOULD BE CLEAR HERE, IF YOU ARE IN THE

15     DAMAGES CLASS, YOU HAVE THESE FOUR DIFFERENT OPTIONS, AND THE

16     RIGHT TO OBJECT APPLIES EVEN IF YOU FILE A CLAIM FORM OR YOU DO

17     NOTHING.  BUT IF YOU EXCLUDE YOURSELF, YOU OBVIOUSLY CAN'T

18     OBJECT, YOU ARE OUT.

19          I THINK THAT WOULD BE HELPFUL TO LAY THAT OUT MORE CLEARLY

20     AND THEN HAVE THE RIGHT TO OBJECT, HOW DO I OBJECT, AS A

21     SECTION UNDER THE DAMAGES CLASS MEMBERS' OPTIONS.

22          IS THERE ANY OBJECTION TO THAT?  IT JUST FEELS WEIRD TO

23     HAVE THAT WHOLE SECTION AFTER THE LAWYERS REPRESENTING THE

24     CLASS, WHICH HAS NOTHING TO DO, REALLY, WITH THE OPTIONS OF

25     EITHER SET OF EITHER THE INJUNCTIVE RELIEF CLASS OR THE DAMAGES

```
 1        CLASS.
 2                  MS. LAMPASONA:  NO OBJECTION.
 3                  THE COURT:  YEAH.
 4             ANY OBJECTION FROM THE PLAINTIFFS ON THAT?
 5                  MR. WALLACE:  NO, YOUR HONOR.
 6                  THE COURT:  OKAY.
 7             SO -- AND THEN SIMILARLY, I WOULD LIKE FOR THE INJUNCTIVE
 8        RELIEF CLASS, LET'S JUST CALL IT OUT, INSTEAD OF "RIGHTS OF
 9        OTHER CLASS MEMBERS," I THINK THAT'S TOO VAGUE.  I PREFER THAT
10        IT SAY, "RIGHTS AND OPTIONS OF," OR YOU COULD SAY "THE
11        INJUNCTIVE RELIEF CLASS MEMBERS AND COMPANION INJUNCTIVE RELIEF
12        CLASS MEMBERS' RIGHTS AND OPTIONS."
13             AND THEN SECTION 14, WHICH WILL HAVE TO BE RENUMBERED,
14        WILL SAY, "IF I'M A MEMBER OF THE INJUNCTIVE RELIEVE CLASS OR
15        THE COMPANION INJUNCTIVE RELIEF CLASS, BUT NOT THE DAMAGES
16        CLASS, WHAT ARE MY OPTIONS," AND THEN LAY THEM OUT.
17             AND RATHER THAN -- YOU KNOW, IN THE PAST, IN THE EARLIER
18        SECTIONS OF THIS SAME DOCUMENT, WE HAVE BEEN JUST SAYING, A
19        MONETARY AWARD FROM THE SETTLEMENT IN THIS CASE.  I WOULD JUST
20        KEEP THAT LANGUAGE CONSISTENT, RATHER THAN SWITCHING SOMETIMES
21        USING THAT LANGUAGE AND OTHER TIMES USING "DAMAGES FUND."  JUST
22        SAY "FROM THE SETTLEMENT IN THIS CASE."
23             OKAY.  AND HERE TOO, I THINK IT SHOULD BE CLEARER THAT YOU
24        CAN OBJECT.
25                  ALL RIGHT.  CAN -- AND THEN IF WE MOVE ON INTO THE LAWYERS
```

1    REPRESENTING THE CLASS, I DON'T LIKE IT TO SAY "YOU WILL NOT BE

2    CHARGED FOR THESE LAWYER SERVICES."  I THINK THE CLASS ALREADY

3    HAS BEEN CHARGED, BY VIRTUE OF THE FACT THEY CAN'T EVEN TOUCH

4    AND TRY TO GET ANY OF THE 13.46 MILLION.  THEY HAVE ALREADY

5    PAID.  THEY ARE ONLY GETTING 24 MILLION.  THE LAWYERS WANT

6    56 PERCENT OF THAT.  THEY HAVE ALREADY PAID.

7          SO I THINK IT'S A MIRAGE TO SAY, LOOK, YOU ARE NOT BEING

8    CHARGED, IT'S NOT AFFECTING YOUR PAYMENTS, IT'S NOT AFFECTING

9    YOUR PAYOUT AT ALL.

10         WELL, THEY HAVE HAD NO OPPORTUNITY TO EVEN HAVE THAT

11   HAPPEN SINCE YOU ALL HAVE SEPARATED THE FUNDS INTO ATTORNEY'S

12   FEES AND CLASS MEMBERS DAMAGES.  SO I WANT THAT OUT.  I THINK

13   IT'S NOT ACCURATE.

14              MR. WALLACE:  YOUR HONOR, ON THAT POINT, IF I MAY BE

15    HEARD.

16              THE COURT:  YEAH.

17              MR. WALLACE:  JUST AS A FACTUAL MATTER, WE NEGOTIATED

18   THE DAMAGES FUND FOR THE CLASS MEMBERS WITH MR. RUBY, THE

19   MEDIATOR'S PROPOSAL TO RESOLVE THAT.  IN THE SPRING OF 2019, I

20   THINK IT WAS MARCH OR APRIL, FEES WERE NOT DISCUSSED OR

21   RESOLVED UNTIL SIX MONTHS LATER IN THE FALL.

22         AND SO JUST SOME OF THE COMMENTARY FROM THE COURT --

23              THE COURT:  RIGHT.  AND YOU ARE SAYING YOU NEVER

24   DISCUSSED ATTORNEYS FEES AT ALL IN THE SETTLEMENT DISCUSSIONS

25   WITH THE MEDIATOR.  I FIND THAT REALLY HARD TO BELIEVE.  FROM

1    THE DEFENDANTS, THEY NEED TO KNOW WHAT THEIR MAXIMUM EXPOSURE

2    IS.

3            MR. WALLACE:  WE DID NOT, YOUR HONOR.  WE LEFT THAT

4    UNTIL LAST, AND IT WAS DISCUSSED QUITE SEPARATELY FROM THE

5    MAJOR INJUNCTIVE RELIEF ISSUES AND FROM THE AMOUNT OF DAMAGES

6    FROM THE CLASS.

7            MS. LAMPASONA:  WITHOUT DISCLOSING MEDIATION

8    PRIVILEGED INFORMATION, YOUR HONOR, I WOULD SAY THAT WE AGREE

9    WITH THE COURT THAT THE DEFENDANTS' PERSPECTIVE ON THIS WAS A

10   GLOBAL SETTLEMENT, EVEN THOUGH I AGREE WITH MR. WALLACE THAT

11   THE PLAINTIFFS WERE ADAMANT ABOUT NOT DISCUSSING SPECIFIC

12   NUMBERS RELATED TO THE ATTORNEY'S FEES UNTIL AFTER THE DAMAGES

13   HAD BEEN SETTLED.

14       BUT FROM THE DEFENSE PERSPECTIVE, WE WERE ALWAYS LOOKING

15   AT THIS AS, WHAT'S THE GLOBAL NUMBER, IT'S JUST PART OF THE

16   REASON WHY WE'VE AGREED TO THE DAMAGES THAT WE HAVE AS WELL AS

17   THE ATTORNEY'S FEES THAT WE HAVE.  BUT THEY WERE VERY CAREFUL

18   ABOUT NOT NEGOTIATING THE FEES BEFORE THE DAMAGES WAS RESOLVED.

19           THE COURT:  UH-HUH.  AND I ASSUME FROM THE

20   DEFENDANT'S PERSPECTIVE, YOU ARE NOT UNAWARE THAT MOST

21   PLAINTIFFS ALWAYS ASK FOR 33 PERCENT OF THE TOTAL FUND,

22   CORRECT?

23           MS. LAMPASONA:  CORRECT.

24           THE COURT:  YEAH.  SO EVEN IF THEY NEVER SAID A

25   NUMBER, IF THEY ASK FOR THE DAMAGES, YOU CAN DO THE CALCULATION

1      TO FIGURE OUT WHAT 33 PERCENT WOULD BE, ROUGHLY, FOR ATTORNEY'S

2      FEES, CORRECT?

3           MS. LAMPASONA:  WE THOUGHT WE KNEW WHAT THE NUMBER

4      WOULD BE, CLOSE TO IT, YOUR HONOR.

5           THE COURT:  YEAH.  AND WERE YOU PRETTY RIGHT?

6           MS. LAMPASONA:  IN THE RANGE, YES.

7           THE COURT:  YEAH.  OKAY.  SO, I MEAN, WE ALL KNOW HOW

8      THIS WORKS.

9           SO ANYWAY, I JUST THINK, OBVIOUSLY I WOULD NOT WITHHOLD

10     APPROVAL BASED ON THIS, BUT I FEEL LIKE IF IT'S NOT NEGOTIATED

11     THIS WAY, WHERE THE MONEY IS COMING FROM A SEPARATE POOL, SO

12     ANY MONEY THAT GOES TO THE LAWYERS, WILL NOT GO TO THE CLASS,

13     IS DONE SPECIFICALLY TO MAXIMIZE MONEY GOING TO THE CLASS

14     COUNSEL.

15         AND I CAN UNDERSTAND, FROM COUNSEL'S PERSPECTIVE, WHY YOU

16     WANT TO DO THAT.  I THINK AS FAR AS WHAT WILL BE BENEFICIAL TO

17     THE CLASS, I THINK IT'S BENEFICIAL TO THE CLASS THAT THEY HAVE

18     THE OPTION TO HAVE, AT THE COURT'S DISCRETION, MORE OF THE

19     MONEY BE GIVEN TO THEM VERSUS HAVING A SEPARATE POT OF MONEY

20     THAT ONLY GOES TO THE LAWYERS FOR THE PLAINTIFFS OR GOES BACK

21     TO THE DEFENDANTS.

22         AND I WOULD SAY THAT IS AN OUTLIER IN TERMS OF THE

23     SETTLEMENT.  MOST OF THE SETTLEMENTS TO NOT HAVE THIS SEPARATE

24     POT OF MONEY THAT CAN'T BE TOUCHED AND CANNOT GO TO THE CLASS.

25     SO MOST OF THE SETTLEMENTS I SEE DO NOT DO IT THIS WAY.

1          ANYWAY.  ALL RIGHT.  SO LET'S KEEP GOING.

2          SO I WOULD LIKE TO TAKE OUT ALL OF THIS, "THEY WILL NOT

3     COME OUT OR OTHERWISE REDUCE THE DAMAGES FUND AND WILL NOT

4     AFFECT MONETARY PAYMENTS TO ANY OF THE DAMAGES CLASS MEMBERS"

5     BECAUSE I THINK I'VE SAID ENOUGH ON THIS POINT.  I DON'T THINK

6     IT'S -- I DON'T THINK IT'S ACCURATE.  THE EFFECT HAS ALREADY

7     BEEN DONE.  YOU ARE NOT GIVING THE COURT'S DISCRETION TO DO

8     ANYTHING DIFFERENT AND YOU ARE NOT GIVING THE CLASS ANY OPTION

9     TO BE ABLE TO FILE AN OBJECTION THAT WOULD MAKE ANY DIFFERENCE

10    BECAUSE YOU'VE SEPARATED THE POTS OF MONEY THIS WAY.

11         SO I THINK IT'S NOT ACCURATE AND I'M NOT GOING TO APPROVE

12    ANY LANGUAGE LIKE THAT, SO THAT SHOULD BE TAKEN OUT OF WHAT'S

13    NOW PARAGRAPH 16.

14         ALL RIGHT.  THEN IN PARAGRAPH -- WHAT'S NOW PARAGRAPH 17,

15    WHICH IT'S NOT EVEN LABELED "HOW DO I OBJECT TO THE SETTLEMENT"

16    BUT IT SHOULD BE, IT JUST SAYS "WHAT IF I DON'T LIKE THE

17    SETTLEMENT."  IF YOU WOULD PLEASE HAVE THOSE OBJECTIONS MAILED

18    TO THE SETTLEMENT ADMINISTRATOR.  AND JUST KEEP IN SECTION 18,

19    "PART OF THE SETTLEMENT," INSTEAD OF A "PORTION OF THE

20    SETTLEMENT."

21         AND THEN IN PARAGRAPH 19, SOMETIMES YOU REFER TO THESE AS

22    INCENTIVE AWARDS, SOMETIMES YOU REFER TO THEM AS SERVICE

23    AWARDS.  I WOULD JUST SAY LET'S KEEP IT CONSISTENT, TITLE FOR

24    THESE PAYMENTS.  HOW ARE THEY DEFINED IN THE SETTLEMENT

25    AGREEMENT, YOU MIGHT AS WELL JUST USE THE SAME LANGUAGE.

1    WHETHER THAT'S SERVICE AWARD OR INCENTIVE AWARDS, LET'S JUST

2    MAKE IT CONSISTENT.  EARLIER IN THIS DOCUMENT THEY ARE CALLED

3    SERVICE AWARDS, BUT IN PARAGRAPH 19 THEY ARE CALLED INCENTIVE

4    AWARDS, SO IF YOU COULD JUST MAKE THAT GLOBALLY CONSISTENT,

5    THAT'S FINE.

6         IN PARAGRAPH 20, I WOULD JUST SAY WHERE IT SAYS "YOU ARE

7    WELCOME TO ATTEND THE HEARING AT YOUR OWN EXPENSE," WHY DON'T

8    WE JUST SAY "YOU OR YOUR OWN LAWYER ARE WELCOME TO ATTEND THE

9    HEARING AT YOUR OWN EXPENSE," SO THEY KNOW THEY WILL HAVE TO

10   PAY FOR IT.

11        YOU COULD EVEN ADD -- ACTUALLY, THAT LAST SENTENCE SAYS

12   "YOU MAY ALSO PAY YOUR OWN LAWYER TO ATTEND THE HEARING BUT

13   IT'S NOT NECESSARY."  MAYBE YOU CAN SAY "YOU OR YOUR OWN LAWYER

14   ARE WELCOME TO ATTEND THE HEARING AT YOUR OWN EXPENSE, BUT YOUR

15   ATTENDANCE IS NOT NECESSARY" OR SOMETHING LIKE THAT, JUST SO

16   IT'S CLEAR THEY KNOW THEY DON'T HAVE TO COME, BUT THEY ARE

17   WELCOME TO.

18        AND THEN ON PARAGRAPH 21, "HOW DO I GET MORE INFORMATION"

19   I THINK IT WOULD BE VERY HELPFUL IN THIS SECTION TO IDENTIFY

20   PLAINTIFF COUNSEL BY NAME, ADDRESS, E-MAIL, TELEPHONE NUMBER,

21   AS WELL AS THE SETTLEMENT ADMINISTRATOR.  BECAUSE I SAW IN THE

22   SHORT FORM NOTICE, YOU DO WANT TO MAKE THE SETTLE ADMINISTRATOR

23   AVAILABLE TO ANSWER ANY QUESTIONS, SO I THINK IT WOULD BE

24   HELPFUL IN THE "HOW I DO GET MORE INFORMATION" PART, TO VERY

25   EASILY FIND WHO TO CONTACT IN CASE THE PERSON HAS A QUESTION.

1       SO IF YOU WOULD ADD THAT, PLEASE, HERE.  BECAUSE RIGHT

2   NOW, THE ONLY INFORMATION HERE IS THE COURT, BUT THEN IT SAYS

3   DON'T CONTACT THE COURT.  SO IF SOMEONE GOES TO 21, IT WOULD BE

4   GREAT IF THEY COULD EASILY FIND THE CONTACT INFORMATION NAME

5   FOR SOMEONE TO GET IN TOUCH WITH FOR MORE INFORMATION.

6       SO DO THOSE CHANGES SOUND ACCEPTABLE?

7           MS. LAMPASONA:  YES, YOUR HONOR.

8           THE COURT:  DOES THAT SOUND ACCEPTABLE.

9           MR. WALLACE:  YES, YOUR HONOR.

10          THE COURT:  OKAY.  SO IF YOU MAKE THOSE CHANGES, I

11  WILL APPROVE THIS SETTLEMENT.  HOW LONG DO YOU THINK IT WOULD

12  TAKE TO MAKE THOSE CHANGES TO ALL THREE FORMS?  I WOULD LIKE A

13  NEW CLAIM FORM, PLEASE, A NEW SHORT FORM NOTICE AND A NEW LONG

14  FORM NOTICE, PLEASE.

15          MR. WALLACE:  I THINK WE CAN DO ALL OF THAT IN TEN

16  DAYS, YOUR HONOR.

17          THE COURT:  OKAY.  WELL, LET'S SEE, WHAT IS TODAY,

18  TODAY IS THE 30TH, IS THAT RIGHT?  SO YOU WANT UNTIL

19  FEBRUARY 10TH?

20          MR. WALLACE:  THAT SOUNDS GOOD.

21          MS. LAMPASONA:  YOUR HONOR, IF WE COULD JUST PUSH IT

22  OUT ONE MORE WEEK.  I NEED TO RUN BY THE CHANGES BY MY CLIENT,

23  AND IT'S GOING TO BE VERY DIFFICULT TO GET ANYBODY'S ATTENTION

24  AT THE FORTY NINERS IN THE NEXT WEEK OR SO.

25          THE COURT:  OH, GOOD POINT, GOOD POINT.

1          MS. LAMPASONA:  AND HOPEFULLY EVERYONE WILL BE

2     ATTENDING A PARADE NEXT WEEK TOO.

3          THE COURT:  THAT'S A GOOD POINT.

4       SO DO YOU WANT TO SAY THE 14TH OR THE 17TH?

5          MS. LAMPASONA:  THE 17TH WOULD BE GREAT, YOUR HONOR.

6     THANK YOU.

7          THE COURT:  OKAY.  LET'S DO -- AND I'M SORRY THAT

8     THIS HEARING IS SO FAR OUT, I'M SORRY THAT YOU ARE HAVING TO

9     WAIT FOR THIS APPROVAL.

10         SO FEBRUARY 17TH OF 2020.  IF YOU WOULD PLEASE FILE NEW

11    DOCUMENTS.  AND I WILL TRY TO REVIEW IT REALLY -- WELL, I WILL

12    TRY BY MAYBE WEDNESDAY THE 19TH, TRY TO REVIEW THIS, OR THE

13    20TH, OKAY.

14         SO IF YOU GET PRELIMINARY APPROVAL, LET'S JUST SAY BY

15    FEBRUARY 20TH, THEN LET'S GO AHEAD AND FIGURE OUT WHAT THE

16    DEADLINES ARE.  YOU WILL DO THE CAFA NOTICE TEN DAYS AFTER

17    THAT, THEN 14 DAYS, FOUR DAYS LATER YOU WILL PROVIDE UPDATED

18    CONTACT INFORMATION, THEN YOU WILL DISTRIBUTE, SEVEN DAYS AFTER

19    THAT, THE NOTICES.

20         MS. LAMPASONA:  THE DEFENDANTS REQUEST A LITTLE MORE

21    TIME, YOUR HONOR, FOR PROVIDING THE UPDATED CONTACT INFORMATION

22    AND FOR THE NOTICE PERIOD OF TIME AS WELL.

23         THE COURT:  OKAY.  LET'S FIGURE OUT, LET'S JUST GO

24    THROUGH THE DATES NOW, AND I WOULD LIKE TO GIVE YOU A FINAL

25    APPROVAL HEARING TO MAKE SURE THAT YOU'RE AVAILABLE ON THAT

1      DATE.  SO WHAT DO YOU NEED FOR WHICH DAYS?

2                MS. LAMPASONA:  WE WOULD REQUEST, PLEASE, 30 DAYS FOR

3      THE CONTACT INFORMATION AND 60 DAYS FOR THE NOTICE PROVISION.

4                THE COURT:  WHY IS THAT?

5                MS. LAMPASONA:  THE EXTRA TIME NECESSARY FOR THE

6      CONTACT INFORMATION IS JUST THE EFFORT THAT IT TAKES TO GET THE

7      CONTACT INFORMATION ORGANIZED.

8          WE ARE NOT JUST PULLING INFORMATION FROM THE TICKETING,

9      BUT WE ARE ALSO SEARCHING E-MAILS FOR PEOPLE WHO HAVE E-MAILED

10     THE ACCESS HELP AT LEVI STADIUM, THAT'S THE ARRANGEMENT THAT WE

11     HAVE MADE WITH PLAINTIFF'S COUNSEL IN TERMS OF TRYING TO

12     IDENTIFY THE MAXIMUM CLASS MEMBERS.  AND JUST THE E-MAIL SEARCH

13     DOES TAKE A LITTLE WHILE.

14               THE COURT:  BUT DIDN'T YOU ALL -- THESE DATES ARE

15     WHAT THE PARTIES PROPOSED.  DIDN'T YOU ALREADY APPROVE THESE

16     INTERVALS?  AND IN FACT, THIS MOTION WAS FILED IN OCTOBER.  I

17     REALLY APOLOGIZE THAT IT'S TAKEN UNTIL THE END OF JANUARY TO

18     GIVE YOU A HEARING, BUT YOU'VE ALREADY HAD ALMOST FOUR MONTHS

19     TO DO THIS.

20         AND AS IT IS, YOU WILL HAVE, TODAY IS JANUARY 30TH, AS IT

21     IS, YOU WILL HAVE -- IF I APPROVE THIS ON FEBRUARY 20TH, YOU

22     WILL HAVE UNTIL MARCH 5TH.  YOU DON'T THINK YOU COULD GET THAT

23     DONE IN TIME?

24               MS. LAMPASONA:  I WAS JUST ASKING FOR MORE TIME.  WE

25     WILL GET IT DONE IN WHATEVER THE COURT REQUIRES US TO,

1      YOUR HONOR.

2              THE COURT:  WELL, I'M SORRY, BUT I PREFER TO KEEP THE

3      DEADLINES THAT YOU AGREED TO.  AND YOU HAD AGREED TO GIVE THE

4      UPDATED CONTACT INFORMATION 14 DAYS AFTER PRELIMINARY APPROVAL.

5      SO IF I GIVE PRELIMINARY APPROVAL ON FEBRUARY 20TH, THEN YOU

6      WILL BE FILING ON MARCH 5TH.

7              MS. LAMPASONA:  UNDERSTOOD, YOUR HONOR.

8              THE COURT:  IS THAT -- OKAY.

9          AND THEN THAT MEANS YOU WOULD BE GIVING THE NOTICE THROUGH

10     POSTING AND DISTRIBUTION AND PUBLICATION BY MARCH 12TH.  AND

11     THEN THE PLAINTIFFS WOULD FILE THEIR MOTION MARCH 19TH.

12         SO ASSUMING PRELIMINARY APPROVAL IS FEBRUARY 20TH, THEN --

13     OKAY.  SO OBJECTING OR OPTING OUT WOULD BE -- IF THE NOTICE IS

14     MARCH 12TH, SO THAT WOULD BE 45 DAYS AFTER THAT.

15         CAN I ASK, HOW COME THE CLAIM FORM DEADLINE IS 90 DAYS

16     AFTER NOTICE BUT THE OBJECTION OR OPTING OUT DEADLINE IS

17     45 DAYS AFTER NOTICE?  WHY IS IT DONE THAT WAY?

18         DON'T WE WANT PEOPLE TO MAKE A DECISION ABOUT WHETHER THEY

19     ARE GOING TO OPT OUT OR FILE A CLAIM FORM AT ABOUT THE SAME

20     TIME, VERSUS SOMEONE FILING THEIR OPT OUT AND THEN 45 DAYS

21     LATER FILING A CLAIM?

22             MR. WALLACE:  YEAH, WE CAN TIGHTEN THAT, YOUR HONOR.

23             THE COURT:  WHY ARE PEOPLE GIVEN MUCH LESS TIME TO

24     OBJECT OR OPT OUT?  THEY ARE GIVEN HALF THE TIME, 45 DAYS

25     VERSUS 90 DAYS TO FILE A CLAIM.

1          MR. WALLACE:  WE COULD MAKE THAT THE SAME DATE IF

2     YOUR HONOR WISHES.

3          THE COURT:  WHY DON'T WE MAKE THAT THE SAME DATE JUST

4     SO PEOPLE DON'T GIVE US CONFLICTING INFORMATION, GIVE US AN OPT

5     OUT AND THEN GIVE US A CLAIM.

6          SO THAT WOULD BE, IF THE NOTICE GOES OUT ROUGHLY ON THE

7     12TH OF MARCH -- OH, THAT WOULD NOT BE UNTIL JUNE, THAT'S

8     PRETTY LATE.  LET'S SAY ROUGHLY, LIKE, JUNE 11TH.

9          WHY WERE 90 DAYS GIVEN?  I MEAN, IT'S FINE, BUT LET ME

10     JUST UNDERSTAND.

11          MR. WALLACE:  I THINK IT WAS MOSTLY TO GIVE PEOPLE A

12     LONGER OPPORTUNITY TO FILE A CLAIM.

13          THE COURT:  OKAY.

14          MR. WALLACE:  I WOULD THINK THAT -- WE DON'T THINK

15     THE CLAIM FORM IS TOO DIFFICULT, YOUR HONOR.  SO PEOPLE WHO

16     WANTED TO MAKE A CLAIM, THEY SHOULD BE ABLE TO GET THAT IN.

17          THE COURT:  WELL, I'M OKAY -- ARE THESE DATES IN THE

18     SETTLEMENT, BECAUSE THEN YOU WOULD HAVE TO AMEND YOUR

19     SETTLEMENT AGREEMENT.  I THINK YOU ARE GOING TO HAVE TO AMEND

20     YOUR SETTLEMENT AGREEMENT JUST TO HAVE YOUR OBJECTIONS MAILED

21     TO THE SETTLEMENT ADMINISTRATOR.

22          SO I HOPE YOUR PROCESS TO AMEND IS EASY AND DOESN'T

23     REQUIRE CLIENT SIGNATURES, BUT I WILL LET YOU LOOK AT THAT, OR

24     SHOULD WE LOOK AT IT RIGHT NOW?

25          MR. WALLACE:  WE DON'T BELIEVE THAT THAT SCHEDULE IS

1       INCORPORATED IN THE SETTLEMENT, YOUR HONOR.

2                MS. LAMPASONA:  NO, YOUR HONOR, IT'S SPECIFICALLY NOT

3       INCLUDED.

4                THE COURT:  WHAT ABOUT MAILING THE OBJECTIONS?  THAT

5       MIGHT REQUIRE -- YEAH.  UNFORTUNATELY, THE OBJECTIONS HAVE TO

6       BE EITHER E-FILED OR MAILED TO THE -- FILED IN PERSON OR ON ECF

7       OR MAILED.  SO THAT, UNFORTUNATELY, IS IN THE AGREEMENT.

8            I'M WONDERING IF THE OTHERS -- I DON'T SEE ANY PROVISION

9       ABOUT AMENDING THE AGREEMENT.  I'M WONDERING IF YOU COULD DO AN

10      ADDENDUM WITH THESE CHANGES, THEN FILE IT AS AN AMENDMENT TO

11      THE AGREEMENT.

12               MR. WALLACE:  I DON'T SEE WHY WE COULDN'T DO THAT,

13      YOUR HONOR.

14               THE COURT:  ALL RIGHT.  IF YOU WOULD, PLEASE.

15           OKAY.  SO I'M OKAY, WE CAN KEEP THESE DATES.

16           SO IF THAT'S JUNE 11TH, THEN HOW MUCH TIME AFTER YOU GET

17      THE OBJECTIONS AND OPT-OUTS AND THE CLAIM FORMS WOULD YOU LIKE

18      TO FILE THE FINAL APPROVAL MOTION AND RESPOND TO THOSE?  HOW

19      MUCH TIME DO YOU THINK YOU WOULD LIKE?

20               MR. WALLACE:  YOU KNOW, YOUR HONOR, USUALLY I THINK

21      WE DO SOMETHING LIKE TWO OR THREE WEEKS.

22               THE COURT:  OKAY.  SO IF THAT'S JUNE 11TH, THEN YOU

23      WANT TO FILE LIKE ON EITHER JUNE 25TH OR JULY 2ND?

24               MR. WALLACE:  JULY 2ND SOUNDS GOOD, YOUR HONOR.

25               THE COURT:  OKAY.  SO IF YOU FILE THAT THEN JULY 2ND,

1    THEN I WOULD LIKE -- LET ME ASK WHETHER MAYBE JULY 16TH OR 23RD

2    OF 2020 IS AVAILABLE FOR A FINAL APPROVAL HEARING, PLEASE.

3            THE CLERK:  JULY 16TH IS AVAILABLE.

4            THE COURT:  ARE YOU AVAILABLE ON THE 16TH OF JULY?

5            MR. WALLACE:  YES, I AM, YOUR HONOR.  YES, WE ARE.

6            MS. LAMPASONA:  YES, YOUR HONOR.

7            THE COURT:  DOES THAT WORK FOR EVERYBODY?

8            MR. CREECH:  YES, YOUR HONOR.

9            THE COURT:  OKAY.  SO THEN LET'S HAVE THAT BE FINAL

10   APPROVAL, PLEASE, AND THAT WILL BE AT 1:30.

11        AND THEN THE DEADLINE FOR THE SETTLEMENT ADMINISTRATOR, I

12   GUESS THAT WILL FALL OFF AFTER THE JUNE 11TH DEADLINE, SO

13   THAT'S FINE.

14        IS THAT OKAY TO HAVE THE 90 DAYS FOR THE SETTLEMENT

15   ADMINISTRATOR TO REVIEW AND DETERMINE THE VALIDITY OF CLAIMS

16   WOULD BE 90 DAYS FROM JUNE 11TH, EVEN THOUGH YOU WON'T GET

17   FINAL APPROVAL UNTIL, LIKE, MID TO LATE JULY.  IS THAT ALL

18   RIGHT?  IS THAT OKAY?

19            MR. WALLACE:  I THINK SO.

20            MS. LAMPASONA:  THAT'S FINE, YOUR HONOR.

21            THE COURT:  OKAY.

22        ALL RIGHT.  SO I'M GOING TO KEEP YOUR DEADLINES WITH THE

23   EXCEPTION THAT THE OPT OUT OR OBJECT WOULD BE AT THE SAME TIME

24   AS CLAIMING FORMS DEADLINE -- THE DEADLINE TO FILE CLAIM FORMS,

25   SO THAT WE DON'T GET INCONSISTENT DOCUMENTS FROM A CLASS

1      MEMBER.  AND THEN I WILL SET THE HEARING FOR JULY 16TH.

2          OKAY.  SO WHAT ELSE DO WE NEED TO DO TODAY?  DID YOU GET

3      ALL THE CHANGES THAT I WANTED ON THE DIFFERENT FORMS?

4          MS. LAMPASONA:  YES, YOUR HONOR.

5          THE COURT:  OKAY.  ALL RIGHT.  I MEAN, I WAS GOING TO

6      FILE A RED LINE VERSION, BUT SOME OF THESE ARE STRUCTURAL, AND

7      SO I THOUGHT I SHOULD DEFER TO THE PARTIES TO FIGURE OUT HOW

8      YOU WANT TO DO IT, IF THAT'S OKAY.  BUT OTHERWISE, I PLAN TO

9      APPROVE THIS SETTLEMENT AS SOON AS WE MAKE THESE NITS TO THE

10     DOCUMENTS; IS THAT ALL RIGHT?

11         MS. LAMPASONA:  UNDERSTOOD, YOUR HONOR.

12         MR. WALLACE:  YES, YOUR HONOR.

13         THE COURT:  ALL RIGHT.  SO I DON'T THINK WE NEED ANY

14     FURTHER HEARING.  AS SOON AS I SEE THOSE DOCUMENTS, I WILL GO

15     AHEAD AND GIVE PRELIMINARY APPROVAL, AND WE WILL ASSUME THEN

16     THAT THE FINAL APPROVAL HEARING WILL BE JULY 16TH.

17         MR. LEE:  MAY I ASK ONE QUESTION, YOUR HONOR?

18         THE COURT:  YES, PLEASE, GO AHEAD.

19         MR. LEE:  WITH RESPECT TO THE FEE MOTION.

20         THE COURT:  YES.

21         MR. LEE:  WHAT INFORMATION WOULD THE COURT LIKE

22     REGARDING OUR BILLING RECORDS AND HOW WOULD YOU LIKE THAT

23     INFORMATION PRESENTED?

24         THE COURT:  OH, OKAY.  SO I LIKED THE DETAILED

25     BILLING RECORDS.

1              MR. LEE:  OKAY.

2              THE COURT:  I HOPE YOU HAVE, LIKE, CONTEMPORANEOUSLY

3    RECORDED.

4              MR. LEE:  YES.

5              THE COURT:  SO I WOULD LIKE TO SEE, I MEAN, I GUESS

6    IT'S GOING TO BE PROBABLY QUITE VOLUMINOUS, BUT I WOULD LIKE TO

7    SEE IT, ESPECIALLY BECAUSE THE REQUEST IS QUITE LARGE.

8          SO I WOULD LIKE TO SEE IT ALL.  DETAILED BILLING RECORDS,

9    BY TASK, BY TIME BILLED.

10             MR. LEE:  WHEN YOU SAY BY TASK, DID YOU MEAN BY

11   CODING OR --

12             THE COURT:  NO, I WANT WHATEVER -- WHATEVER YOUR

13   CONTEMPORANEOUS BILLING RECORDS ARE, WHATEVER EACH BILLER DID

14   FOR EVERY DAY, HOW DID THEY KEEP THEIR RECORDS.

15         I DON'T WANT YOU TO CREATE ANYTHING NEW FOR ME, I WANT TO

16   SEE WHATEVER THEY ACTUALLY BILLED.  AND HOW THEY DESCRIBED

17   THEIR WORK AND HOW MUCH TIME THEY BILLED FOR EACH TASK.

18         IS THAT HOW THE RECORDS ARE KEPT?

19             MR. LEE:  THAT'S HOW --

20             MR. WALLACE:  YES, THAT IS HOW THEY ARE MAINTAINED,

21   YOUR HONOR.

22         AND THEN AS PART OF OUR BILLING JUDGMENT, WE WOULD

23   INDICATE WHERE BILLINGS ARE CHANGED OR REDUCED.

24             THE COURT:  OKAY.  IF YOU COULD LET ME KNOW IF THERE

25   ARE CERTAIN THINGS YOU WROTE OFF OR REDUCED OR WHAT WAS DELETED

```
 1        AND WHY.

 2             MR. WALLACE:  WE WILL DO THAT, YOUR HONOR.

 3             THE COURT:  OKAY.  THANK YOU.  I APPRECIATE THAT.

 4        WHAT ELSE?  ANY OTHER INFORMATION I CAN PROVIDE FOR HOW I

 5   DO FINAL APPROVAL?

 6             MS. LAMPASONA:  I HAVE NO QUESTIONS, YOUR HONOR.

 7             THE COURT:  OKAY.  AND I WOULD LIKE TO KNOW, SINCE

 8   THIS WAS LITIGATED OVER A NUMBER OF YEARS, LIKE WHAT WERE YOUR

 9   BILLING RATES, I ASSUME YOU CHANGED YOUR RATES, WHAT WAS THE

10   CHANGE, WHO HAS APPROVED THOSE RATES FOR EACH BILLER.

11             MR. WALLACE:  WE CAN DO THAT, YOUR HONOR, ABSOLUTELY.

12             THE COURT:  THANK YOU.

13        I DO TAKE A REALLY CLOSE LOOK AT FEES, AND COSTS AS WELL.

14   I LIKE TO KNOW, I WOULD LIKE INVOICES.  YOU KNOW, I HAD ALL

15   THESE WAGE-AN-HOUR CASES OF ALL THESE LAWYERS COMING FROM L.A.,

16   AND ALL THEIR FLIGHTS WERE OVER $500.  AND I FLY TO L.A. FOR

17   LESS THAN $200.  IT TURNS OUT THEY ARE ALL FLYING FIRST CLASS

18   FROM SAN JOSE TO LAX.

19             MR. WALLACE:  WE TYPICALLY PROVIDE ALL THE BACKUP,

20   YOUR HONOR.

21             THE COURT:  PERFECT.

22        SO THAT'S WHY I'VE STARTED, IN THOSE CASES, TO ASK FOR THE

23   BACK UP, AND IT TURNS OUT SOMETIMES THEY DOUBLE BILLED HOTELS,

24   I THINK BY ACCIDENT, BUT WHEN I GET THE BACKUP IS WHEN I CAN

25   SEE SOME OF THOSE THINGS.
```

1      BUT I -- YOU KNOW, AND MANY OF THOSE CASES, THEY WERE

2   MINIMUM WAGE WORKERS GETTING PENNIES ON THE DOLLAR, AND I JUST

3   DIDN'T THINK IT WAS APPROPRIATE FOR THEIR LAWYERS TO CONSTANTLY

4   BE FLYING FIRST CLASS FOR A 55-MINUTE FLIGHT, SO I DIDN'T

5   REIMBURSE THEM FOR THE FULL AMOUNTS.

6      SO ANYWAY, YES, IF YOU WOULD PLEASE PROVIDE THE BACKUP ON

7   THE COSTS.

8      WHAT ELSE?  ANYTHING ELSE?

9      MR. WALLACE:  I DON'T THINK THERE'S ANYTHING FURTHER

10  FOR PLAINTIFFS, YOUR HONOR.

11      THE COURT:  OKAY.  ALL RIGHT.  WELL, THANK YOU ALL

12  VERY MUCH.  THANK YOU ALL.

13      AND THEN GO AHEAD, PLEASE SEND ME THE DOCUMENTS, I WILL

14  GRANT PRELIMINARY APPROVAL, AND THEN I WILL SEE YOU FOR THE

15  FINAL APPROVAL HEARING.

16      OKAY.  THANK YOU ALL.  THANK YOU VERY MUCH.

17      MR. WALLACE:  THANK YOU, YOUR HONOR.

18      MS. LAMPASONA:  THANK YOU, YOUR HONOR.

19      THE COURT:  TAKE CARE.  THANK YOU.

20      (THE PROCEEDINGS WERE CONCLUDED AT 2:45 P.M.)

21

22

23

24

25

1

2

3

4                    **CERTIFICATE OF REPORTER**

5

6

7

8              I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13             THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 1/31/20