Guy B. Wallace (SBN 176151)
gwallace@schneiderwallace.com
Mark T. Johnson (SBN 76904)
mjohnson@schneiderwallace.com
SCHNEIDER WALLACE
   COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, CA 94608
(415) 421-7100; (415) 421-7105 (Fax)

Linda M. Dardarian (SBN 131001)
ldardarian@gbdhlegal.com
Andrew P. Lee (SBN 245903)
alee@gbdhlegal.com
Katharine L. Fisher (SBN 305413)
kfisher@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 763-9800; (510) 835-1417 (Fax)

Adam B. Wolf (SBN 215914)
awolf@pwcklegal.com
Catherine Cabalo (SBN 248198)
ccabalo@pwcklegal.com
PEIFFER WOLF CARR & KANE
4 Embarcadero Center, 14th Floor
San Francisco, CA 94111
(415) 766-3592; (415) 402-0058 (Fax)

*Attorneys for Plaintiffs and the Certified Classes*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ABDUL NEVAREZ and PRISCILLA NEVAREZ, on behalf of themselves and all others similarly situated, and SEBASTIAN DEFRANCESCO,<br><br>Plaintiffs,<br><br>vs.<br><br>FORTY NINERS FOOTBALL COMPANY, LLC, a Delaware limited liability company, et al.,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No.: 5:16-cv-07013-LHK (SVK)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      July 16, 2020<br>Time:      1:30 p.m.<br>Place:     Courtroom 8<br>Before:   Hon. Lucy H. Koh |

783355.12

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ............................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 1

I.     INTRODUCTION ..................................................................................................... 1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ......................... 2

    A.    The Complaint ............................................................................................... 2

    B.    Preliminary Approval .................................................................................... 3

    C.    Notice to the Class and the Class Members' Favorable Reaction .................. 4

III.   ARGUMENT ............................................................................................................ 6

    A.    The Settlement Agreement Is Fair and Reasonable and Should be Finally
        Approved ....................................................................................................... 6

        1.    The Legal Standard for Final Approval ............................................. 6

        2.    The Rule 23(e)(2) Factors Weigh Strongly in Favor of Final Approval. ........... 8

            a.    The Class Representatives and Class Counsel Have Adequately
                Represented the Class. ........................................................ 8

            b.    The Settlement Was Negotiated at Arm's Length. ............................. 8

            c.    The Relief Offered in Settlement Is More than Adequate. .................... 9

                i.    The Settlement Provides for Extensive Injunctive Relief
                    and a Substantial Damages Fund. ................................ 9

                    (a)    Injunctive Relief ............................................. 9

                    (b)    Damages ....................................................... 15

                    (c)    The Settlement Does Not Permit Any Reversion ......... 16

                    (d)    The Settlement Contains a Narrow Release of Claims  16

                ii.    The Risk, Expense, Complexity and Likely Duration of
                    Further Litigation. .................................................. 17

                iii.    The Settlement Provides Important Procedural Protections
                    to the Class Members, and Provides an Effective Method
                      for Distributing Monetary Relief to the Class. ....................... 18

            d.    The Settlement Provides an Equitable Plan of Allocation and
                Does Not Grant Preferential Treatment to the Named Plaintiffs. ........ 19

i

783355.12

3.      The Remaining *Churchill/Hanlon* Factors Also Weigh Strongly in Favor of Final Approval. ...................................................................................... 19

        a.      The Strength of Plaintiffs' Case ......................................................... 19

        b.      The Risk of Maintaining Class Action Status Through Trial ............... 20

        c.      The Extent of Discovery Completed and the Stage of the Proceedings ......................................................................................... 20

        d.      The Experience and Views of Counsel ................................................ 21

        e.      The Presence of a Governmental Participant ....................................... 22

        f.      The Reaction of the Class Members to the Proposed Settlement ......... 22

B.      The Proposed Service Awards Should Be Approved ...................................... 23

C.      Plaintiffs' Motion for Reasonable Attorneys' Fees, Costs and Litigation Expenses Should Be Approved ..................................................................... 23

IV.     CONCLUSION ........................................................................................................ 23

783355.12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Animation Workers Antitrust Litig.*,
  No. 5:14-cv-04062-LHK, 2016 WL 6841655 (N.D. Cal. Nov. 11, 2016).....................................22

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) ...........................................................................*passim*

*In re Bluetooth Headset Prods. Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011)..........................................................................................7

*Brown v. Hain Celestial Grp., Inc.*,
  No. 3:11-cv-03082-LB, 2016 U.S. Dist. LEXIS 19275 (N.D. Cal. Feb. 17, 2016).......................22

*Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*,
  No. 4:06-cv-05125-SBA, 2010 WL 2228531 (N.D. Cal. June 2, 2010).......................................18

*Castaneda v. Burger King Corp.*,
  No. 3:08-cv-04262-WHA, 2010 WL 2735091 (N.D. Cal. July 12, 2010).............................16, 18

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004)................................................................................7, 21, 22

*Dickey v. Advanced Micro Devices, Inc.*,
  No. 15-cv-04922-HSG, 2020 U.S. Dist. LEXIS 30440 (N.D. Cal. Feb 21, 2020) .................20, 23

*Edwards v. Nat'l Milk Producers Fed'n*,
  No. 4:11-cv-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) .....................................16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998).......................................................................6, 7, 21, 22

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010)..........................................................................................17

*In re Hyundai and Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) ........................................................................................6, 8

*Johnson v. Shaffer*,
  No. 2:12-cv-1059-KJM-ACP, 2016 WL 3027744 (E.D. Cal. May 27, 2016) ...............................22

*Koller v. Med Foods, Inc.*,
  No. 3:14-CV-2400-RS, 2018 U.S. Dist. LEXIS 231901 (N.D. Cal. Aug. 29, 2018)....................22

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012)............................................................................................7

783355.12

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) .................................................................................... 20

*Marshall v. Holiday Magic, Inc.,*
    550 F.2d 1173 (9th Cir. 1977) .................................................................................... 22

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 15, 18, 22

*Officers for Justice v. Civ. Serv. Comm'n of City and County of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ................................................................................ 6, 8, 15

*In re Optical Disk Drive Products Antitrust Litig.,*
    No. 3:10-md-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 12, 2016) ......................... 16

*Perkins v. Linkedin Corp.,*
    No. 5:13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649 (N.D. Cal. Feb. 16, 2016) ................... 23

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ................................................................................. 7, 21

*Stemple v. RingCentral, Inc.,*
    No. 3:18-cv-04909-LB, 2019 U.S. Dist. LEXIS 138520 (N.D. Cal. Aug. 15, 2019) ..................... 8

*In re Toys "R" Us- Delaware, Inc.- Fair & Accurate Credit Transactions Act (FACTA) Litig.,*
    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................ 8, 22

*Walmart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .................................................................................................. 20

*Winans v. Emeritus Corp.,*
    No. 3:13-cv-03962-HSG SG, 2016 U.S. Dist. LEXIS 3212 (N.D. Cal. Jan. 11, 2016) ............... 16

*In re Yahoo Mail Litig.,*
    Nos. 13-CV-4980-LHK, 13-CV-4989-LHK, 13-CV-5326-LHK, 13-CV-5388-LHK,
    2016 U.S. Dist. LEXIS 115056 (N.D. Cal. Aug. 25, 2016) ........................................ 20

**Federal Statutes**

Americans with Disabilities Act .................................................................................. *passim*

Rehabilitation Act of 1973 ............................................................................................ 3

**State Statutes**

Cal. Civ. Code
    § 51 ..................................................................................................... 1, 3, 4, 15
    § 54 ................................................................................................................... 3
    § 55.56 ......................................................................................................... 2, 20
    § 55.56(a) ......................................................................................................... 16

iv

783355.12

Cal. Government Code Section 11135 ................................................................................... 3

**Rules**

Fed. R. Civ. P.
    23 ................................................................................................................................ 1, 2
    23(b)(2) ......................................................................................................................... 4
    23(b)(3) ..................................................................................................................... 4, 20
    23(e) .............................................................................................................................. 6
    23(e)(2) ...................................................................................................................... 7, 8
    23(e)(2)(A) .................................................................................................................... 8
    23(e)(2)(A)(ii) ............................................................................................................. 19
    23(e)(2)(D) .................................................................................................................. 19
    23(e)(4) ....................................................................................................................... 18

783355.12

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 16, 2020 at 1:30 p.m., in the Courtroom of the Honorable Lucy H. Koh, United States District Judge for the Northern District of California, located at 280 South 1st Street, San Jose, California, Plaintiffs in the above-captioned cases will and hereby do move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order granting final approval of the Parties' proposed Settlement Agreement and Release of Claims and the exhibits attached thereto (collectively, "Settlement Agreement").  This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Settlement Agreement, including all exhibits thereto, the accompanying Declarations of Guy B. Wallace, Edward Dattilo, Stuart Kirkpatrick, Brian P. Maschler, and Maria Lampasona, the argument of counsel, all papers and records on file in these cases, and such other matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

The proposed Settlement Agreement and Release of Claims ("Settlement" or "Settlement Agreement") provides both extensive injunctive relief and a substantial damages fund to the Plaintiff Classes.  The Settlement Agreement provides comprehensive injunctive relief to remedy the violations of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act ("Unruh Act"), California Civil Code Sections 51, *et seq.*, that were alleged in the Fourth Amended Complaint, including the barrier lists attached to the Complaint as Exhibits A through D. The proposed Settlement requires remedial access work with respect to all areas of Levi's Stadium, its parking, and the pedestrian rights of way leading from the parking lots to the Stadium.  The remedial work to be performed is set forth in the Settlement and Exhibits A-J thereto, which include a detailed remedial plan and specifications.  The Settlement will ensure that Class Members with mobility disabilities and their companions have full and equal access to the Stadium and its related facilities.  The Settlement will also require Defendants to provide full and equal access to ticketing services.  To ensure that Class Members receive this relief, the proposed Settlement mandates effective reporting and monitoring under the Court's continuing jurisdiction.

The proposed Settlement also provides a $24 million class damages fund with no reversion to Defendants.  Class Members who make valid and timely claims on the fund will receive a minimum of $4,000 for each visit to Levi's Stadium in which they encountered an access barrier that caused them difficulty, discomfort or embarrassment within the meaning of California Civil Code Sections 55.56, *et seq.,* up to a maximum of $80,000, depending upon the number of eligible claims filed.  This is the largest class damages settlement ever achieved in a case challenging physical access to a place of public accommodation.  The Settlement contains all agreements between Plaintiffs and Defendants.

This Court preliminarily approved the proposed Settlement on March 9, 2020.  Since then, the Parties have caused Notice of the Settlement to issue in conformance with this Court's Order Granting Preliminary Approval.  *See* Declaration of Guy B. Wallace in Support of Motion for Final Approval of Class Action Settlement ("Wallace Decl.") ¶¶ 4-6; Declaration of Stuart Kirkpatrick in Support of Motion for Final Approval of Class Action Settlement ("Kirkpatrick Decl.") ¶¶ 3-5; Declaration of Edward Dattilo Re: Notice Procedures ("Dattilo Decl.") ¶¶ 4-6; Declaration of Brian P. Maschler in Support of Motion for Final Approval of Class Action Settlement ("Maschler Decl.") ¶¶ 3-5; Declaration of Maria Lampasona in Support of Final Approval of Class Action Settlement ("Lampasona Decl.") ¶¶ 3-5.  The deadline for objecting to the proposed Settlement or opting out of the damages class is June 28, 2020.  As of the date of this submission, there are no objections or opt-outs.  Dattilo Decl. ¶ 12.

The proposed Settlement is fair, adequate, and reasonable, and satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure.  Accordingly, Plaintiffs ask that the Court: (i) grant final approval of the Settlement; and (ii) retain jurisdiction over the litigation and the Parties throughout the term of the Settlement Agreement.[1]

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Complaint

Plaintiffs Abdul and Priscilla Nevarez filed this class action on December 7, 2016, asserting

---

[1] By separate motions filed concurrently herewith, Plaintiffs also ask the Court to (i) grant service awards of $5,000 to each of the three Named Plaintiffs and Class Representatives; and (ii) award Class Counsel reasonable attorneys' fees, costs, and litigation expenses in the amount of $13,457,152.40.

claims for both injunctive relief and damages against the Forty Niners Football Company LLC, the City of Santa Clara ("the City"), the Santa Clara Stadium Authority (the "Stadium Authority") and Ticketmaster Entertainment, Inc. ("Ticketmaster") based on alleged violations of the ADA, the Rehabilitation Act of 1973, California Government Code Section 11135, the California Disabled Persons Act (California Civil Code Sections 54, *et seq.*) and the California Unruh Act.  *See* Complt. (ECF No. 1).  Thereafter, the Complaint was amended to add the Forty Niners Stadium Management Company LLC as a Defendant (ECF No. 9).[2]

On April 13, 2017, pursuant to Stipulation of the Parties approved by this Court, Plaintiffs filed their Second Amended Complaint limiting their claims to the alleged violation of Titles II and III of the ADA and California's Unruh Act, and adding Sebastian DeFrancesco as a Plaintiff.  (ECF No. 47, 50).  On August 1, 2017, the Court dismissed the Named Plaintiffs' claims for individual damages against the City and Stadium Authority except for Plaintiffs Abdul and Priscilla Nevarezes' claims for damages based on their visit to the Stadium on April 2, 2016.  On August 15, 2017 the Court dismissed without prejudice Plaintiffs' claims against Ticketmaster, finding that those claims were subject to mandatory arbitration.  (ECF No. 85).

Plaintiffs filed a Third Amended Complaint on August 8, 2017 (ECF No. 78) and the operative Fourth Amended Complaint on July 27, 2018 (ECF No. 195).  The Complaint includes and incorporates exhibits identifying the alleged disability access barriers in the Stadium, as well as in the Stadium's main parking lot and the adjacent pedestrian right of way.  (ECF No. 195-1 to 195-4).  It also maintains class claims against the Forty Niners Defendants for Unruh Act damages.  *Id.*

**B.**   **Preliminary Approval**

On March 9, 2020, this Court granted preliminary approval of the proposed Settlement.  *See* Order (1) Granting Preliminary Approval of Class Action Settlement; (2) Modifying Damages Class Definition; (3) Appointing Additional Injunctive Relief Class Representative; (4) Directing Notice to The Classes; and (5) Setting Date for Fairness Hearing (ECF No. 392) ("Preliminary Approval Order").  In its Preliminary Approval Order, the Court made the following modification to the

---

[2] A full description of the facts and history are set forth in the Motion for Reasonable Attorneys' Fees, Costs and Expenses filed concurrently with this Motion.

definitions of the three Plaintiff classes:

> **Injunctive Relief Class:** 1. All persons with mobility disabilities who use wheelchairs, scooters, or other mobility aids who will attempt to purchase accessible seating for a public event at Levi's Stadium and who will be denied equal access to the Stadium's facilities, services, accessible seating, parking, amenities, and privileges, including ticketing, from December 7, 2013 through the date of the Court's Order Granting Preliminary Approval of Class Action Settlement.

> **Companion Injunctive Relief Class:** 2. All persons who are companions of persons with mobility disabilities who use wheelchairs, scooters or other mobility aids and who have used or will use companion seating for public events located at Levi's Stadium from December 7, 2013 through the date of the Court's Order Granting Preliminary Approval of Class Action Settlement.

> **Damages Class**: 3. All persons with mobility disabilities who use wheelchairs, scooters or other mobility aids who have purchased, attempted to purchase, or for whom third parties purchased accessible seating and who have been denied equal access to Levi's Stadium's facilities, services, accessible seating, parking, amenities, and privileges at an event controlled by the Forty Niners Football Company, LLC; Forty Niners SC Stadium Company, LLC; or Forty Niners Stadium Management Company, LLC, from April 13, 2015 through the date of the Court's Order Granting Preliminary Approval of Class Action Settlement.

*Id.* at 1.  The first and second classes seek declaratory and injunctive relieve pursuant to Title II and Title III of the ADA and were certified pursuant to Federal Rule of Civil Procedure ("Rule") 23(b)(2). The third class seeks statutory damages under the Unruh Act and was certified pursuant to Rule 23(b)(3).  This Court appointed Abdul Nevarez and Sebastian DeFrancesco as class representatives for of the first class for injunctive relief, Priscilla Nevarez as representative of the second class for injunctive relief, and Abdul Nevarez as representative for the third class.  *Id.* at 2; *see also* Order Granting in Part and Denying in Part Motion for Class Certification (ECF 186) ("Class Certification Order") at 43.

## C.   Notice to the Class and the Class Members' Favorable Reaction

After preliminary approval, the Parties effected notice pursuant to this Court's Preliminary Approval Order.  Wallace Decl. ¶¶ 4-6; Kirkpatrick Decl. ¶¶ 3-5; Dattilo Decl. ¶¶ 2-6; Maschler Decl. ¶¶ 3-5; Lampasona Decl. ¶¶ 3-5.

Prior to the March 30, 2020 "Class Notice Date," the Court-approved settlement administrator, KCC Class Action Services, LLC ("KCC"), compiled an updated list of potential Class Members using

the contact information previously produced at class certification, a supplemental list covering the time period from class certification to the date of preliminary approval, and potential Class Member contact information obtained by Class Counsel during the pendency of this matter. *See* Preliminary Approval Order, ECF 392 ¶¶ 13.b & 13.c; Dattilo Decl. ¶¶ 2-3. This process resulted in a list of 5,779 potential Class Members after de-duplication. Dattilo Decl. ¶¶ 2-3. A total of 4,789 potential Class Members had email addresses, and 495 mailing addresses were updated using the National Change of Address Database. *See id.* ¶¶ 3, 6.

On March 30, 2020 KCC mailed the Court-approved long-form Notice (ECF No. 390-5) and Claim Form (ECF No. 390-3) (collectively "Settlement Notice") to all 5,779 potential Class Members along with self-addressed postage prepaid return envelopes. *See id.* ¶ 4 & Ex. A. To date, 258 Settlement Notices have been returned as undeliverable. KCC has been able to resend thirty-three (33) Settlement Notices based on its search for updated addresses. Accordingly, 5,554 (96% of the total) potential Class Members known to the Parties have been sent the Settlement Notice. *See id.* ¶ 5. Also on March 30, 2020, KCC emailed the Settlement Notice to the 4,789 potential Class Members (82% of the total) with email addresses. *See id.* ¶ 6.

KCC also established a WCAG 2.0 AA-compliant settlement website (www.LevisStadiumClassActionSettlement.com) to inform Class Members of the Settlement, their rights and options, and applicable dates and deadlines; to make important case documents (including the Settlement Agreement and operative Fourth Amended Complaint) available for review and download by Class Members; to provide KCC's and Class Counsel's contact information; and to enable Class Members to submit Damages Claim Forms and any supporting documentation electronically, or to download a PDF version of the Damages Claim Form to mail to KCC, according to the Class Member's preference. *See id.* ¶ 7. KCC also established a toll-free telephone number and email address for the case. *See id.* ¶¶ 8-9.

In addition, the Notice of Settlement was also provided to the twenty-four organizations listed in Section V.C.12 of the Settlement, which were identified by Class Counsel as organizations that serve the interests of persons with mobility disabilities. Kirkpatrick Decl. ¶ 3. Each form of notice was published, posted or mailed by the deadlines set forth in the Settlement and the Court's

783355.12

1    Preliminary Approval Order.  *See* Dattilo Decl. ¶¶ 2-6; Kirkpatrick Decl. ¶ 4 Maschler Decl. ¶¶ 3-5;

2    Lampasona Decl. ¶¶ 3-5.

3           The Court-approved Class Notice explained the litigation and the terms of the Settlement,

4    including the injunctive relief, release of claims, and amounts requested for the Named Plaintiffs'

5    service awards and Class Counsel's attorneys' fees, costs, and litigation expenses.  The Notice also

6    informed Class Members how to object to the Settlement and provided a website and toll-free number

7    for Class Members to obtain further information about the Settlement or Settlement documents.  Class

8    Members have until June 28, 2020 to object to the Settlement, to opt out of the Damages Class, and/or

9    to file Claim Forms.  *See* Preliminary Approval Order, ECF 392 ¶ 13.h., i.

10          Class Members have responded favorably to the proposed Settlement so far.  Since the

11   distribution of the Settlement Notice, Class Counsel has received and responded to numerous inquiries

12   from Class Members about the Settlement, and Class Members have expressed support for the

13   Settlement and the injunctive and monetary relief it provides.  Wallace Decl. ¶ 7.  As of the date of this

14   submission, there are no objections to the proposed Settlement, there are no opt-outs from the damages

15   class, and KCC has received 3,866 Claim Forms.  Wallace Decl. ¶¶ 8-9; Dattilo Decl. ¶¶ 11-12.

16                              **III.    ARGUMENT**

17   **A.    The Settlement Agreement Is Fair and Reasonable and Should be Finally Approved**

18          **1.    The Legal Standard for Final Approval**

19          The law favors the settlement of class actions.  *See, e.g., In re Hyundai and Kia Fuel Economy*

20   *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc).  "[T]he decision to approve or reject a settlement is

21   committed to the sound discretion of the trial judge because he [or she] is exposed to the litigants and

22   their strategies, positions, and proof."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)

23   (internal citations and quotations omitted).

24          To grant final approval of a settlement, "Fed. R. Civ. P. 23(e) requires the district court to

25   determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon,*

26   150 F.3d at 1026; *see also, Officers for Justice v. Civ. Serv. Comm'n of City and County of San*

27   *Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that the "universally applied standard" is whether

28   the settlement is "fundamentally fair, adequate, and reasonable").  "It is the settlement taken as a

1   whole, rather than the individual component parts, that must be examined for overall fairness."

2   *Hanlon*, 150 F.3d at 1026.

3       Rule 23(e)(2) states as follows:

4           a court may approve a settlement only on finding that it is fair, reasonable, and
            adequate after considering whether: (A) the class representatives and class
5           counsel have adequately represented the class; (B) the proposal was negotiated
            at arm's length; (C) the relief provided for the class is adequate, taking into
6           account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness
            of any proposed method of distributing relief to the class, including the method
7           of processing class-member claims; (ii) the terms of any proposed award of
            attorney's fees, including timing of payment; (D) The proposal treats class
8           members equitably relative to each other.

9       Under well-settled Ninth Circuit precedent, in order to assess a class action settlement, courts

10   must balance several similar factors, including the following "*Hanlon* factors":

11          [t]he strength of plaintiff's case; the risk, expense, complexity, and likely
            duration of further litigation; the risk of maintaining class action status
12          throughout the trial; the amount offered in settlement; the extent of discovery
            completed and the stage of the proceedings; the experience and views of counsel;
13          the presence of a governmental participant; and the reaction of the class
            members to the proposed settlement.
14

15   *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026).  These

16   same factors are also sometimes referred to as the eight "*Churchill* factors."  *See, e.g., In re Bluetooth*

17   *Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen.*

18   *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

19       To satisfy appellate review, the Court must demonstrate comprehensive consideration of all

20   factors.  However, in conducting this analysis, the Ninth Circuit has noted that "'it is the very

21   uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce

22   consensual settlements.'"  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting

23   *Officers for Justice*, 688 F.2d at 625).  Accordingly, when determining whether to grant final approval,

24   the Court's role in reviewing "what is otherwise a private consensual agreement negotiated between

25   the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the

26   agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties,

27   and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers*

28   *for Justice*, 688 F.2d at 625; *see also In re Toys "R" Us- Delaware, Inc.- Fair & Accurate Credit*

7

1  *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014).

2       For several reasons, the proposed Settlement clearly meets the requirements for final approval.

3       **2.      The Rule 23(e)(2) Factors Weigh Strongly in Favor of Final Approval.**

4            **a.      The Class Representatives and Class Counsel Have Adequately
                 Represented the Class.**

5

6       As this Court has previously found when it certified this case as a class action and when it

7  preliminarily approved the Settlement, the Class Representatives and Class Counsel have adequately

8  represented the Classes.  As demonstrated in the Motion for Service Awards filed concurrently

9  herewith, the Class Representatives have no conflicts with Class Members, actively participated in the

10 litigation and represented the interests of the certified Plaintiff Classes.  *See also* Class Certification

11 Order (ECF No. 186 at 24); Preliminary Approval Order (ECF No. 392 ¶ 3).  As demonstrated in the

12 Motion for Reasonable Attorneys' Fees, Costs, and Expenses filed concurrently herewith, and

13 consistent with the Court's findings at Class Certification that "Plaintiffs' counsel has vigorously

14 litigated this case from the beginning, and …will continue to do so," (ECF No. 186 at 24), Class

15 Counsel have thoroughly investigated and litigated the Class claims, obtained outstanding results on

16 behalf of the Classes, and have no conflicts of interest with the certified Classes.  This factor supports a

17 finding that the Settlement is fair, reasonable and adequate.  Fed. R. Civ. P. 23(e)(2)(A).

18            **b.      The Settlement Was Negotiated at Arm's Length.**

19       "Where a settlement is the product of arm's-length negotiations conducted by capable and

20 experienced counsel, the court begins its analysis with a presumption that the settlement is fair and

21 reasonable."  *Stemple v. RingCentral, Inc.*, No. 3:18-cv-04909-LB, 2019 U.S. Dist. LEXIS 138520, at

22 *12 5 (N.D. Cal. Aug. 15, 2019) (internal quotation omitted)); *see also, In re Hyundai and Kia*, 926

23 F.3d at 570 ("'[W]e put a good deal of stock in the product of an arm's-length, non-collusive,

24 negotiated resolution.' ") (quoting *Rodriguez,* 563 F.3d at 965).

25       The Settlement was reached after informed negotiations supervised by two well-respected

26 mediators experienced in class action cases, Michael Loeb and Mark Rudy.  Wallace Decl. ¶ 13.  The

27 Parties participated in eight in-person mediations over the eighteen-month period between May 2018

28 and August 2019.  *Id.*  The first three mediations took place with Mr. Loeb; the latter five mediations

783355.12

took place with Mr. Rudy.  *Id.*  Mr. Rudy made a mediator's proposal regarding the amount of class damages, which was accepted by the Parties.  Six months later, at the conclusion of the mediation process, Mr. Rudy made a mediator's proposal regarding reasonable attorneys' fees and costs.  Both sides accepted his proposal two weeks later.  *Id.* ¶ 15.  All major issues regarding injunctive relief were resolved prior to the mediation of fees and costs.  *Id.*

### c.   The Relief Offered in Settlement Is More than Adequate.

#### i.   The Settlement Provides for Extensive Injunctive Relief and a Substantial Damages Fund.

##### (a)   Injunctive Relief

The injunctive relief guaranteed by the Settlement constitutes an excellent result for the Plaintiff Classes.  The Settlement provides comprehensive injunctive relief regarding all of the claims in the Fourth Amended Complaint, including Defendants' failure to provide physical access and Defendants' failure to make reasonable modifications in policy and practice to ensure equal access to the Stadium's facilities and services.  The Settlement requires Defendants to remediate nearly all of the access barriers identified by Plaintiffs' experts, as well as requiring Defendants to remove many other access barriers that were not identified in Plaintiffs' Complaint.  As this Court will recall, Plaintiffs' Exhibit A identified 2,699 access barriers in the Stadium and its related facilities, including its parking lots and the pedestrian right of way leading from those lots to the Stadium.  The Settlement will remediate all but 25 of the alleged barriers (*i.e.*, all but 1% of the barriers identified in the Complaint).[3]

---

[3] These alleged barriers include: 18 alleged barriers regarding the lack of clear space on counters in the Stadium concessions; 4 alleged barriers regarding the location of the accessible toilet compartment door openings and whether they were located too far from the side wall or partition; an alleged barrier regarding the lack of wheelchair maneuvering space at urinals; and 2 alleged barriers regarding the existence of dirt sections of the pedestrian right of way serving the remote parking lots.  Plaintiffs compromised regarding the clear space on the counters because of a recent U.S. Access Board interpretive guidance in which the Board stated that this type of condition did not violate the 2010 ADAS.  Similarly, the parties' experts had a good-faith disagreement regarding the correct interpretation of the requirement regarding the location of accessible toilet compartment door openings and the side walls or partitions.  The lack of clear space for wheelchair users at urinals was not remediated because the Stadium's restrooms have designated accessible wheelchair stalls and the Settlement provides comprehensive remediation regarding same.  Settlement Agreement § III.A.1.i., Exh. A at Items 823 through 1502.1.  Finally, it was not necessary to remediate the two dirt sections in the pedestrian right of way because the Settlement provides compliant accessible parking in the Main Lot immediately adjacent to the Stadium, and compliant paths of travel from the Main Lot to the Stadium's entrances.  *See Id.*, Ex. J.

Wallace Decl. ¶¶ 28-29.  The Settlement will also remediate numerous other barriers in the Stadium's

stairs and breastfeeding stations that were not included in the Complaint.

The detailed remedial access work that is specified in the Settlement Agreement and Exhibits A-L will bring the Stadium and its surrounding pedestrian right of way into full compliance with the 2010 ADAS and the 2019 CBC.  Moreover, the Settlement provides extensive injunctive relief regarding all of the other problems with ticketing, transportation, and other services that were described by the Class Members in their declarations.  *See* Appendix of Class Member Declarations (ECF No. 139).  Specifically, the Settlement mandates the following access work and improvements, all of which must fully comply with the 2010 ADAS and the 2019 CBC:

Parking, Exterior Path of Travel, and Entrances.  The Settlement will provide 282 accessible parking spaces immediately adjacent to the Stadium in the Main Lot.  Settlement Agreement § III.A.3.a, Ex. J.  This is a sufficient number of parking spaces to meet the accessible parking requirement for all of the lots that Defendants use to provide parking.  Wallace Decl. ¶ 20.  An accessible path of travel will connect the accessible parking spaces in the Main Lot to the primary entrances to the Stadium at Gates A and C.  The accessible path of travel, clearly marked and eight feet in width (*i.e.*, double the 48 inch width specified in the 2010 ADAS and the 2019 CBC), will connect all of the accessible external features of the Stadium, including any amenities in the Main Lot (such as portable toilets and coat check), the stores and other points of interest in the Plaza, to the accessible Box Office windows, and the Stadium restaurants.  Settlement Agreement §§ III.A.1.b, Exs. B, C, and J.  The specifications for this remedial work are set forth in the drawings comprising Exhibit B (for the Plaza area and exterior entrances to the Stadium) and Exhibit J (for the path of travel from the parking lot) to the Settlement Agreement.  The accessible path of travel to be established and maintained leading to and between the Bourbon Steak, Bourbon Pub, and Tailgate restaurants is described in further detail at Section III.A.2 of the Settlement Agreement.  As a result of this access work, Class Members will no longer have to struggle with inaccessible parking, inaccessible security gates, inaccessible entrances, inaccessible ticket windows at the Box Office, and many other similar access problems that existed on the exterior of the Stadium.  And, the parking adjacent to the Stadium will be priced at the lowest price Defendants charge for parking in the remote parking lots.  *Id.* at § III.A.3.b.

1         <u>Pedestrian Rights of Way Leading to the Stadium</u>.  Some Class Members may continue to

2    choose to park in the fifteen off-site parking lots that also serve Levi's Stadium.  The pedestrian right

3    of way connecting those off-site parking lots to the Stadium contain numerous barriers to access,

4    including curb ramps that lack a flush transition to the street and have excessive running, cross,

5    counter, and side-flare slopes; sidewalks with excessive running and cross slopes, surface gaps, and

6    abrupt changes in level; and pedestrian signals that fall outside of reach range for persons using

7    wheelchairs and scooters.  The proposed Settlement requires the City of Santa Clara to make these

8    portions of the pedestrian right of way fully accessible to persons with mobility disabilities.  In total,

9    the Settlement requires the remediation of 454 non-compliant conditions, including 236 curb ramp

10   barriers present on 97 curb ramps, 203 sidewalk barriers, and 15 barriers related to inaccessible

11   pedestrian signals.  *Id*. § III.A.4; Exs. H, I.

12        <u>Stadium Box Office</u>.  To ensure an accessible box office and approach to the box office at the

13   Stadium, Defendants are required to remediate the box office-related barriers identified in Exhibit A to

14   the Settlement Agreement in the manner specified and in Section III.A.1.c. and Exhibit C of the

15   Settlement.  This includes removing the foot bar at the base of the designated accessible ticket window

16   to allow a forward approach by wheelchair users, raising the existing grade to provide a level

17   accessible area in front of the window, using accessible queuing plans, providing signage for the

18   accessible window and providing all services at the accessible window that are offered to the public.

19   *Id.*, Ex. C notes 8, 11.

20        <u>Interior Circulation Within the Stadium</u>.  The Settlement ensures that Class Members will have

21   an accessible path of travel throughout the Stadium.  Defendants are required to remediate the specific

22   conditions in the interior path of travel identified in Exhibit A in the manner specified therein, and no

23   ramps in the path of travel will be permitted to have excessive running slopes.  *Id*. § III.A.1.e.  The

24   location and specifications of the accessible interior path of travel are set forth in Exhibit D.

25        <u>Signage, Access Map, and Trained Stadium Staff</u>.  The Settlement also requires a detailed

26   signage plan to direct Class Members to the accessible exterior and interior features of the Stadium.

27   Settlement Agreement § III.A.1.e, Ex. D.  Clearly marked accessible paths and overhead signage will

28   guide Class Members from the Main Lot to the entrances to the Stadium, and to the entrances leading

783355.12

to the elevators.  *Id.*  This information will also be provided in a comprehensive access map that will be available both electronically and on paper.  *Id.* § III.D.  Further, Stadium employees will be trained on the location of accessible elevators, restrooms, and seating so that Class Members can get reliable assistance with finding their way to their seats.  *Id.* § III.F.1.  Under the Settlement, Class Members will no longer have to struggle and engage in trial and error efforts to find the accessible routes and features within the Stadium.

Accessible seating, companion seating, and restrooms.  The Settlement requires Defendants to make extensive access improvements within the Stadium itself.  Significantly, it requires Defendants to perform access work to the designated accessible seating so that it strictly complies with the requirement of the 2010 ADAS for level seating spaces.  *Id.*, Ex. E.  As a result of this access work, Class Members who use wheelchairs will no longer roll around in their seating spaces because of the excessive drainage gradient that was erroneously constructed.  The number of accessible and companion seats shall comply with the 2010 ADAS standards.  Arm rests and cupholders will be provided for companion seats to make them equivalent to standard seating.  *Id.* § III.A.1.f., Ex. E.  Further, Defendants will be required to remove all of the barriers identified in the Stadium's restrooms in accordance with the remedial work specified in Exhibit A to the Settlement.  *Id.* at § III.A.1.i., Ex. A at Items 823 through 1502.1.

Social and Dining Spaces and Features, Including Restaurants, Bars, Drink Rails, and Drinking Fountains.  Some of the most significant barriers in the Stadium included the general lack of accessible tables in restaurants, accessible lowered sections in bars, and the inaccessibility of other social spaces such as the Stadium drink rails and other counters at which patrons congregate or make purchases from Stadium personnel.  As a result of the Settlement, Defendants will provide accessible seating and bar spaces at all locations at which food and drink is served or consumed within the Stadium.  Settlement Agreement §§ III.A.1.g, III.A.1.h, III.A.2, Ex. E.  Further, the Settlement requires that all of the Stadium's drinking fountains be made accessible.  *Id.* § III.A.1.j.

Shops and Concessions.  The Settlement requires that all of the barriers identified in the Stadium's shops and concessions be remediated in accordance with Exhibit A.  *Id.* §§ III.A.1.k, m. This access work will provide Class Members and their companions with equal access to the Stadium's

shops and concessions.

Boxes and Suites.  The Settlement will make significant access improvements to the Stadium's boxes and suites.  Defendants will be required to provide accessible tables and other furniture within the boxes and suites in place of the existing inaccessible furniture.  In addition, Defendants will be required to provide compliant accessible seating in the boxes and suites so that users with mobility disabilities will be able to access their seats and enjoy an unobstructed sightline to watch Stadium events.  *Id*. § III.A.1.l.

Stairs and Handrail Extensions.  The Settlement requires Defendants to provide compliant handrail extensions throughout the Stadium so that Class Members will be able to safely and easily transition from stairs and ramps to the landings at the top and bottom of same.  *Id*. § III.A.1.n.  In addition, the Settlement requires important access fixes that go beyond the barriers identified in Exhibit A to the Complaint, and which Plaintiffs would *not* have been able to obtain at trial. Specifically, the Settlement requires that Defendants remove access barriers in the Stadium's external stairways, including barriers such as abrupt nosings on the risers of the stairs that constitute a tripping hazard.  *Id*. § III.A.1.s.  This important access and safety work will be performed on the external stairs at Gate A and Gate C, as well as the internal stairs at Toyota Gate F, the stairs within the Stadium bowl itself, and the stairs within the United Club.  *Id*.

First Aid and Breastfeeding Stations.  Work required to make the Dignity Health First Aid Room on Level 300 (Main Concourse) accessible are specified in Section III.a.1.p. of the Settlement Agreement.  The Settlement also requires that all of the inaccessible conditions in the Stadium's breastfeeding stations be remediated so that women with disabilities will be able to access these important features.  *Id*. § III.A.1.p.

Restaurants.  The Settlement requires Defendants to ensure that the Stadium restaurants remediate numerous access barriers identified in Exhibit A, including inaccessible entrances, paths of travel, dining areas, tables and restrooms.  Settlement Agreement § III.A.2.

Auditorium – Section III.A.1.r. of the Settlement Agreement requires that Defendants provide an accessible means for gaining access to the stage and integrated accessible and companion seating.

Ticketing.  The Settlement provides important relief regarding ticketing.  Defendants will no

1  longer require Class Members to purchase or exchange standard tickets for tickets for accessible

2  seating at the Stadium Box Office.  Instead, Class Members may now simply purchase or exchange

3  standard tickets for tickets for accessible seating electronically without being required to go to the Box

4  Office in-person.  *Id.* § III.C.

5      Other Relief.  The Settlement requires Defendants to provide accessible shuttles and golf carts,

6  to maintain the Stadium's access features in operating condition by performing maintenance on a

7  specific schedule, and to provide Class Members with a complaint and grievance procedure regarding

8  access or service problems.  *Id.* §§ III.B, III.E, X.

9      Compliance Period and Deadlines.  In all cases, express deadlines are set forth in the

10  Settlement Agreement for the completion of the specified remediation work to be undertaken.

11  Although these deadlines vary depending on the scope of the work and other factors identified during

12  the settlement negotiations, all of the remedial work must be completed within a three-year compliance

13  period.  *Id.* § II.D.

14      Monitoring.  Under the Settlement Agreement's reporting and monitoring provisions, Class

15  Counsel will be able to ensure that Defendants complete all of the access work and other remedial

16  measures required by the Settlement.  The Settlement Agreement includes periodic reporting

17  requirements for Defendants to provide specific information regarding their progress and the status of

18  scheduled access work.  *Id.* § X.B.  Class Counsel are entitled to review designs, drawings, plans and

19  specifications for the access work and to conduct semi-annual inspections to monitor compliance.  *Id.*

20  §§ X.B., XI.  The Settlement provides for reasonable attorneys' fees for Class Counsel and for

21  reasonable expert costs on an annual basis in connection with these monitoring and enforcement

22  activities.  *Id.* § XIV.B.

23      Continuing Jurisdiction.  This Court will also retain jurisdiction in the event that the Parties are

24  unable to resolve any disputes regarding implementation.  Settlement Agreement § XV.

25      In summary, the Settlement constitutes an excellent result for the Plaintiff Classes.  It provides

26  Class Members with comprehensive injunctive relief, including a detailed remedial plan to remove

27  over 2,674 access barriers which will guarantee that the Stadium and its related facilities provide full

28  and equal access as required by the ADA and the Unruh Act.  Wallace Decl. ¶¶ 19-29.  It is doubtful

14

783355.12

1    that this Court could have ordered greater injunctive relief if Plaintiffs prevailed at trial.

2                    **(b)    Damages**

3         A proposed settlement is not to be measured against "a hypothetical or speculative measure of

4    what might have been achieved." *Officers for Justice*, 688 F.2d at 625; *see also*, *In re Anthem, Inc.*

5    *Data Breach Litig.*, 327 F.R.D. 299, 322 (N.D. Cal. 2018); *Nat'l Rural Telecomms. Coop. v.*

6    *DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed

7    settlement may be acceptable even though it amounts to only a fraction of the potential recovery that

8    might be available to the class members at trial.").

9         The Class damages fund represents an outstanding result for the Damages Class.  As an initial

10   matter, the $24 million damages fund in this case is the largest ever obtained in a physical access case

11   under Title III of the ADA with Unruh Act damages claims.  Wallace Decl. ¶ 47; *see also* ECF No.

12   375-19 (settlement comparison chart).  This non-reversionary fund will guarantee a substantial

13   recovery to the Damages Class Members who make claims, with a minimum recovery of $4,000 and a

14   maximum recovery of $80,000 per person depending on the number of visits during which the Class

15   Member encountered an access barrier that caused them "difficulty, discomfort or embarrassment,"

16   and depending on the number of valid claims filed.  *Id.* §§ VII.A; VII.D; VIII.A.1.

17        The $24 million recovery compares favorably with Plaintiffs' estimates of total exposure.  As

18   one point of comparison, the $24 million settlement amount represents 34.3% of the approximate $70

19   million outside exposure analysis calculated by Plaintiffs' damages expert.  Plaintiffs' aggregate

20   damages model was based on the assumption that a Class Member was in attendance at a particular

21   event if 100% of the seats sold to that Class Member were used.  If a lesser percentage of seats were

22   actually used for a particular event, the damages calculation for that Class Member was based on a

23   corresponding percentage of the statutory amount of $4,000.  This assumes the seats were actually sold

24   to and used by Class Members with mobility disabilities, and that they encountered at least one barrier

25   that caused them "difficulty, discomfort or embarrassment" on each occasion that they attend an

26   event.[4]  Wallace Decl. ¶ 32.  Plaintiffs' damages expert calculated interest on these claims at

27   _____

28   [4] Under the Unruh Act, a plaintiff may recover the $4,000 minimum per visit to a place of public accommodation, not per barrier encountered on any visit.  Cal. Civ. Code § 55.56(a).

approximately $9 million, using a 10% interest rate which was likely to be disputed at trial.  *Id.*  These

figures are based on Plaintiffs' assessment of a best-case scenario.  *Id.*  To have obtained such a result

at trial, Plaintiffs would have had to prove that all Damages Class Members visited the Stadium on at

least one occasion and encountered a barrier that caused them "difficulty, discomfort or

embarrassment."  During expert discovery, Defendants strongly disputed that Plaintiffs' damages

model provided a reliable and accurate means of calculating the number of visits on which Class

Members encountered such barriers.  They also strongly disputed that such claims could be resolved

manageably at a class trial.  Indeed, the uncertain and risky nature of calculating the number of visits

by disabled class members to a public accommodation which would qualify for a $4,000 damages

award was recognized by Judge Alsup in his decision in the *Castaneda* case, and was a factor in his

approval of the damages fund.  *Castaneda v. Burger King Corp.*, No. 3:08-cv-04262-WHA, 2010 WL

2735091, at *3 (N.D. Cal. July 12, 2010).

Moreover, the Damages Class's recovery of 34.3% of Plaintiffs' maximum estimated class

damages compares favorably with recoveries that have been held to be fair, reasonable, and adequate

in other class actions.  *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 319 (approving

recovery of 14.5% of the "projected recovery that Settlement Class Members would be entitled to if

they prevailed on their claims" and collecting authorities); *Edwards v. Nat'l Milk Producers Fed'n*,

No. 4:11-cv-04766-JSW, 2017 WL 3623734, at *7 (N.D. Cal. June 26, 2017) (approving recovery of

30% of maximum damages); *In re Optical Disk Drive Products Antitrust Litig.*, No. 3:10-md-2143 RS,

2016 WL 7364803, at *5 (N.D. Cal. Dec. 12, 2016) (approving 31% of maximum damages); *Winans v.

Emeritus Corp.*, No. 3:13-cv-03962-HSG SG, 2016 U.S. Dist. LEXIS 3212, at *14 (N.D. Cal. Jan. 11,

2016) (approving recovery of 33.2% of maximum damages and collecting authorities).

**(c)     The Settlement Does Not Permit Any Reversion**

The Settlement does not permit any reversion of any part of the Class damages fund to

Defendants.  The entire $24 million class damages fund will be distributed to Class Members who

make validated claims.  Settlement Agreement § VIII.

**(d)     The Settlement Contains a Narrow Release of Claims**

The Settlement only releases the claims that were alleged, or that could have been alleged,

16

1   based on the factual allegations of the Fourth Amended Complaint.  In exchange for the equitable

2   relief provided for by the Agreement, Class Members and Plaintiffs release "any and all claims that are

3   the subject of, included within, and/or arise from this lawsuit, including without limitation, all claims,

4   liabilities, obligations, demands, actions, and claims under Title II and Title III of the ADA and

5   California Civil Code § 51, *et seq*., and their accompanying regulations that were brought or could

6   have been brought based on the facts alleged in the Complaint against the Released Parties for

7   injunctive or declaratory relief only relating to Conditions that allegedly deny access to the facilities

8   specified in Exhibit A and access to Defendants' ticketing services for wheelchair accessible and

9   companion seating." *Id*. § XIII.A.1.  This release only applies for the duration of the agreement, *i.e.*

10  three and a half years after it becomes effective.  *Id.* § XVI.  The scope of the release for the Damages

11  Class is essentially the same, except that it only releases claims for statutory damages that were

12  brought or could have been brought based on the facts alleged in the Complaint for the period of time

13  up to the date on which the Court grants Preliminary Approval of the Settlement Agreement.

14  Settlement at § XIII.A.2.  These narrow releases fully accord with Ninth Circuit precedent.  *Hesse v.*

15  *Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

16
            ii.     **The Risk, Expense, Complexity, and Likely Duration of Further**
17                  **Litigation**

18          Consistent with Court's finding at preliminary approval, the potential risks, expense,

19  complexity and duration of further litigation of this case support final approval.  *See* Preliminary

20  Approval Order (ECF No. 392 ¶ 4).  Courts have long recognized the inherent risks and "vagaries of

21  litigation," and emphasized the comparative benefits of "immediate recovery by way of the

22  compromise to the mere possibility of relief in the future, after protracted and expensive litigation."

23  *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 526; *see also, In re Anthem, Inc. Data Breach Litig.*, 327

24  F.R.D. at 318 (delay in recovery as a result of trial and appellate proceedings weighs in favor of final

25  approval where "[s]ettlement provides the Class with timely, certain, and meaningful recovery").  The

26  "inherent" risks of protracted litigation, trial and appeal are all factors that militate in favor of

27  settlement in systemic access cases under the ADA.  *See, e.g., Castaneda*, 2010 WL 2735091, at *3*;

28  *Californians for Disability Rights, Inc. v. Cal. Dept. of Transp.*, No. 4:06-cv-05125-SBA, 2010 WL

2228531, at *3 (N.D. Cal. June 2, 2010) ("The settlement affords significant and immediate relief that may never have materialized had the trial concluded.").  Proceeding to the series of short trials regarding groups of barriers that this Court had ordered (and the inevitable appeals of those decisions) would have added many years to the resolution of this case.  Each trial would have required the presentation of extensive expert testimony, thereby increasing the expense of these already lengthy proceedings.  Given the importance of the accessibility of the Stadium to the Class Members lives, the potential for years of delayed recovery is a significant concern.  Considered against the risks of continued litigation, and the importance of the accessibility of the Stadium and its related facilities to the Class Members, the totality of relief provided under the proposed Settlement is fair, reasonable, and adequate.  Wallace Decl. ¶¶ 38-46.

**iii.    The Settlement Provides Important Procedural Protections to the Class Members, and Provides an Effective Method for Distributing Monetary Relief to the Class.**

Members of the Injunctive Relief and Companion Classes, as well as Damages Class Members who do not opt out, have been given the opportunity to object to the settlement and to appear at the Final Approval/Fairness Hearing in order to have their objections heard by the Court.  Damages Class Members who did not already opt out of the case at the class certification stage have been given another opportunity to opt-out of the proposed Settlement should they so desire.  Settlement Agreement § VI.  This satisfies the requirements of Rule 23(e)(4).

The Claims Process set forth in the Settlement Agreement also provides Damages Class Members with a full and fair opportunity to submit claims for damages and, should they disagree with Defendants' records regarding the number of events that they attended at the Stadium, to provide documentation and/or an explanation to show a different number of visits.  Settlement Agreement § VII.G, H.  If there is a dispute, the Settlement Administrator will consult with the Parties to determine whether an adjustment is warranted.  Damages payments to eligible Damages Class Members will be distributed in the form of checks and checks returned as undeliverable will be traced and re-mailed.  *Id.* § VIII.A.3 & 4.  These procedural safeguards further support final approval, under both Rule 23(e)(2)(A)(ii) & D, and the *Hanlon/Churchill* factors.

**d.**   **The Settlement Provides an Equitable Plan of Allocation and Does Not Grant Preferential Treatment to the Named Plaintiffs.**

Consistent with Rule 23(e)(2)(D), the Settlement provides for an equitable plan of allocation of money damages without granting preferential treatment to any particular Class Members.  Settlement at § VII.A.  All of the class members who make claims that confirm, as required under applicable law, that they have mobility disabilities and encountered one or more barriers at Levi's Stadium or its related facilities that caused them "difficulty, discomfort or embarrassment" will be able to recover a minimum of $4,000 or a maximum of $80,000 depending on the number of visits in which they encountered such barriers, and the number of validated claims filed.  This objective allocation plan does not grant preferential treatment to any member of the Damages Class, or to the Named Plaintiffs, who are subject to the same damages allocation plan as the absent Class Members.

As discussed below, subject to Court approval, the Named Plaintiffs would also receive service awards not to exceed $5,000 each, which Plaintiffs submit are fair and reasonable payments to recognize and compensate the Named Plaintiffs for the efforts and risks they took in stepping forward to assert claims, their participation in discovery and depositions, and the work done on behalf of the Plaintiff Classes to prosecute the claims.  *See* Plaintiffs' Motion for Service Awards (ECF No. 394) and discussion *infra* at § III.B.

**3.**   **The Remaining *Churchill/Hanlon* Factors Also Weigh Strongly in Favor of Final Approval.**

**a.**   **The Strength of Plaintiffs' Case**

There can be no reasonable dispute that Plaintiffs developed a strong case on the merits.  However, the Parties disputed which disability access standard applied to the Stadium (the 2010 Americans with Disabilities Act Standards ("2010 ADAS") or the 1991 Americans with Disabilities Act Access Guidelines ("1991 ADAAG").  This issue involved novel and difficult questions of law, as well as complex factual disputes regarding groundbreaking at the site and the start of construction.  The resolution of these legal and factual issues was therefore uncertain.  If Plaintiffs had lost on this issue, they would not have been able to seek relief regarding many access barriers that were covered by the 2010 ADAS, but not by the older and more lenient 1991 ADAAG.  As this Court has stated, "legal uncertainty favors approval." *In re*

1  *Yahoo Mail Litig.*, Nos. 13-CV-4980-LHK, 13-CV-4989-LHK, 13-CV-5326-LHK, 13-CV-5388-LHK,

2  2016 U.S. Dist. LEXIS 115056, at \*20 (N.D. Cal. Aug. 25, 2016); *see also*, *Dickey v. Advanced Micro*

3  *Devices, Inc.*, No. 15-cv-04922-HSG, 2020 U.S. Dist. LEXIS 30440, at \*13  (N.D. Cal. Feb 21, 2020)

4  ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to

5  lengthy and expensive litigation with uncertain results.") (quoting *Ching v. Siemens Indus., Inc.*, No. 3:11-

6  cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002, at \*13 (N.D. Cal. June 27, 2014)).  In contrast, pursuant to

7  the Settlement it is guaranteed that all areas of the Stadium will be brought into substantial compliance with

8  the 2010 ADAS.  Accordingly, this factor favors final approval.

9  **b.     The Risk of Maintaining Class Action Status Through Trial**

10  This was the first disability access case in which a money damages class was certified

11  subsequent to the Supreme Court's decision in *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

12  Defendants argued vigorously against certification of a damages class, contending that certification of

13  such a class was precluded by the allegedly individualized questions raised by establishing entitlement

14  to money damages under California Civil Code Section 55.56.  Post *Dukes*, the Ninth Circuit has not

15  yet addressed the propriety of class certification of a disability access case for money damages under

16  Fed. R. Civ. Proc. 23(b)(3).  Thus, there was a significant risk that Plaintiffs would not be able to

17  maintain class status through trial with respect to the damages class, and/or that there would be a risk

18  of decertification on appeal.  Accordingly, this factor weighs in favor of approving the class settlement.

19  **c.     The Extent of Discovery Completed and the Stage of the Proceedings**

20  Courts require the parties to have conducted sufficient discovery to be able to make an

21  informed decision about the value and risks of the action and come to a fair settlement.  *Linney v.*

22  *Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).  The purpose of the Ninth Circuit's

23  consideration of the extent of the parties' discovery is to ensure that counsel negotiating the pending

24  settlement were fully informed of the facts and issues at stake.  *Rodriguez*, 563 F.3d at 967 (affirming

25  the district court's finding that discovery had been extensive where the court "could find that counsel

26  had a good grasp on the merits of their case before settlement talks began"); *Hanlon*, 150 F.3d at 1027

27  (affirming the district court's approval of class settlement where "[t]here [was] no evidence to suggest

28

1    that the settlement was negotiated in haste or in the absence of information illuminating the value of

2    plaintiffs' claims").

3        As this Court found when preliminarily approving the Settlement, "substantial evaluation of the

4    merits, through extensive litigation, including motion practice, [and] fact and expert discovery over the

5    three years since filing, has been conducted such that Counsel for the Parties are able to reasonably

6    evaluate their respective positions."  Preliminary Approval Order (ECF 392 ¶ 4).  Indeed, at the time of

7    settlement the Parties had completed fact and expert discovery, and were in the process of preparing

8    for trial.  These and other proceedings in the case produced a thorough pre-settlement vetting of the

9    factual and legal bases for Plaintiffs' claims and the key defenses thereto.  Thus, by the time the Parties

10    reached a settlement, the litigation had proceeded to a point in which the Parties had a clear view of the

11    strengths and weaknesses of their cases and were able to make a well-informed decision about

12    settlement.  *Id.* ¶ 41.

13        In *In re Anthem, Inc. Data  Breach Litigation*, this Court found that this factor favored final

14    approval where the parties "engaged in extensive motion practice, including fifteen discovery

15    motions," reached a settlement after class-certification discovery and briefing, and had completed fact

16    and expert discovery, including the review of 3.8 million pages of documents.  327 F.R.D. at 320.

17    While the parties took and defended far more depositions in *In re Anthem* than in this case, the overall

18    scope of discovery and the stage of proceedings prior to settlement was similar.  Accordingly, this

19    factor further supports final approval.

20            **d.**     **The Experience and Views of Counsel**

21        Courts must also consider the experience and views of counsel regarding the settlement.  *See*

22    *Churchill Vill., L.L.C.*, 361 F.3d at 576-77.  "Parties represented by competent counsel are better

23    positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

24    litigation.'"  *See Toys "R" Us*, 295 F.R.D. at 455 (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373,

25    378 (9th Cir. 1995)).

26        Class Counsel have extensive experience litigating and settling systemic disability access and

27    other complex class actions.  Wallace Decl. ¶ 44.  Under applicable law, the fact that qualified and

28    well-informed counsel endorse the proposed settlement as being fair, reasonable, and adequate weighs

1   in favor of approval.  *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 320; *Koller v. Med*

2   *Foods, Inc.*, No. 3:14-CV-2400-RS, 2018 U.S. Dist. LEXIS 231901, at *10-11 (N.D. Cal. Aug. 29,

3   2018); *Brown v. Hain Celestial Grp.*, *Inc.*, No. 3:11-cv-03082-LB, 2016 U.S. Dist. LEXIS 19275, at

4   *15-16 (N.D. Cal. Feb. 17, 2016).

5               **e.       The Presence of a Governmental Participant**

6               In determining the fairness of a settlement, the Court should consider whether the proposed

7   settlement includes a governmental participant.  Although the City of Santa Clara and the Santa Clara

8   Stadium Authority are government entities and Defendants herein, the Ninth Circuit in *Hanlon* was

9   referring to settlements in which the government was involved as a prosecutor.  *See Johnson v. Shaffer*,

10  No. 2:12-cv-1059-KJM-ACP, 2016 WL 3027744, at *5 (E.D. Cal. May 27, 2016) (citing *Hanlon*, 150

11  F.3d at 1026); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977) (citing SEC

12  approval of settlement as weighing in favor of approval, where SEC was prosecuting a parallel action).

13  Accordingly, this factor weighs neither for nor against final approval of the Settlement Agreement.

14  *See, e.g., In re Animation Workers Antitrust Litig.*, No. 5:14-cv-04062-LHK, 2016 WL 6841655, at *2

15  (N.D. Cal. Nov. 11, 2016) (where there is no governmental participant, that factor is "irrelevant").

16              **f.       The Reaction of the Class Members to the Proposed Settlement**

17              In determining the fairness of a settlement, the Court should consider class member objections

18  to the settlement.  The absence of a large number of objections to a proposed settlement raises a strong

19  presumption that the terms of the agreement are fair.  *See, e.g.*, *Churchill Vill., L.L.C.,* 361 F.3d at 577

20  (approving a settlement where "only 45 of the approximately 90,000 [.005 percent] notified class

21  members objected to the settlement"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 321; *Nat'l*

22  *Rural Telecomms. Coop.,* 221 F.R.D. at 529.  As discussed, as of the date of this submission, no one

23  has objected to the proposed Settlement.  Wallace Decl. ¶ 8.

24              Moreover, as of the date of this submission, no class member has requested to opt out of the

25  proposed Settlement.  *Id.*  Finally, notice was mailed and/or emailed to 5,779 potential members of the

26  Damages Class.  *Id.* ¶ 9.  As of the date of this submission, 3,866 class members have submitted Claim

27  Forms.  The absence of opts outs, and the high claims rate, also indicate a favorable reaction by the

28  class members to the proposed settlement, and provide further support for final approval.  *See, e.g.*,

1   *Perkins v. Linkedin Corp.*, No. 5:13-cv-04303-LHK, 2016 U.S. Dist. LEXIS 18649, at *9 (N.D. Cal.

2   Feb. 16, 2016) ("low rates of objections and opt-outs are 'indicia of the approval of the class'")

3   (citation omitted); *Dickey*, 2020 U.S. Dist. LEXIS 30440, at *17  (N.D. Cal. Feb. 21, 2020) ("[t]he

4   27.4% claims rate is an excellent result in the Court's experience" that supports final approval) (citing

5   *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1006 (N.D. Cal. 2015)).  For these

6   reasons, this factor also favors approval.

7   **B.      The Proposed Service Awards Should Be Approved**

8           As discussed in Plaintiffs' Motion for Service Awards (ECF No. 394) and the accompanying

9   declarations, Plaintiffs request that this Court approve service awards to Class Representatives Abdul

10  Nevarez, Priscilla Nevarez, and Sebastian DeFrancesco for their important and substantial

11  contributions to the Plaintiff Classes with respect to both the litigation and settlement of this matter.

12  As of the date of this submission, no one has objected to the proposed service awards.  Wallace Decl. ¶

13  8.  Accordingly, for the reasons stated in their papers, Plaintiffs respectfully request that this Court

14  grant the requested awards.

15
    **C.      Plaintiffs' Motion for Reasonable Attorneys' Fees, Costs and Litigation Expenses Should
16           Be Approved**

17          Plaintiffs' Motion for an Award of Reasonable Attorneys' Fees, Costs and Expenses, and the

18  points and authorities in support of their request, are the subject of separate submissions to the Court.

19  In accordance with Section XIV.A of the Settlement Agreement, Plaintiffs seek an award of reasonable

20  attorneys' fees, costs and expenses in the amount of $13,457,152.40.

21          As of the date of this submission, no class member has objected to the proposed award of

22  attorneys' fees, costs and litigation expenses since the Class Notice was disseminated.  Wallace Decl.

23  ¶ 8.  As explained in Plaintiffs' Motion Reasonable Attorneys' Fees, Costs and Expenses, the relief

24  obtained here constitutes a truly "excellent result" for the class and fully supports the requested award.

25  Accordingly, Plaintiffs respectfully request that the Court grant the requested amount in full.

26                              **IV.      CONCLUSION**

27          For the reasons stated herein, Plaintiffs respectfully request that the Court (1) grant final

28  approval of the Settlement Agreement; and (2) retain jurisdiction over the litigation and the Parties

throughout the term of the Settlement Agreement.  By separate motions files concurrently herewith, Plaintiffs also request that the Court grant service awards of $5,000 to each of the three Class Representatives, and award Class Counsel reasonable attorneys' fees, costs, and litigation expenses in the amount of $13,457,152.40, as set forth in the Settlement.

Dated:  May 25, 2020                           Respectfully submitted,

                                              GOLDSTEIN, BORGEN, DARDARIAN & HO


                                              */s/ Guy B. Wallace*
                                              Guy B. Wallace

                                              *Attorneys for Plaintiffs and the Certified Classes*

783355.12

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court

3  for the United States District Court, Northern District of California, by using the Court's CM/ECF

4  system on May 25, 2020.

5      I certify that all participants in the case are registered CM/ECF users and that service will be

6  accomplished by the Court's CM/ECF system.

7   Dated: May 25, 2020

8                                            */s/ Guy B. Wallace*
                                            Guy B. Wallace

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

783355.12