```
 1                    UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF CALIFORNIA

 3                         SAN JOSE DIVISION

 4

 5      ABDUL NEVAREZ, ET AL.,          )  C-16-07013 LHK
                                        )
 6                    PLAINTIFFS,       )  SAN JOSE, CALIFORNIA
                                        )
 7             VS.                      )  JULY 16, 2020
                                        )
 8      FORTY NINERS FOOTBALL COMPANY,  )  PAGES 1-43
        LLC, A DELAWARE LIMITED         )
 9      LIABILITY COMPANY, ET AL.,      )
                                        )
10                    DEFENDANTS.       )
        _____)

11

12                  TRANSCRIPT OF ZOOM PROCEEDINGS
                   BEFORE THE HONORABLE LUCY H. KOH
13                   UNITED STATES DISTRICT JUDGE

14      A P P E A R A N C E S:

15      FOR THE PLAINTIFFS:   SCHNEIDER WALLACE COTTRELL KONECKY LLP
                              BY:  GUY B. WALLACE
16                                 MARK T. JOHNSON
                              2000 POWELL STREET, SUITE 1400
17                            EMERYVILLE, CALIFORNIA  94608

18                            GOLDSTEIN, BORGEN, DARDARIAN & HO
                              BY:  LINDA M. DARDARIAN
19                                 KATHERINE L. FISHER
                              300 LAKESIDE DRIVE, SUITE 1000
20                            OAKLAND, CALIFORNIA  94612

21

22              APPEARANCES CONTINUED ON NEXT PAGE

23      OFFICIAL COURT REPORTER:    LEE-ANNE SHORTRIDGE, CSR, CRR
                                    CERTIFICATE NUMBER 9595
24

25            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                 TRANSCRIPT PRODUCED WITH COMPUTER
```

```
 1

 2        APPEARANCES (CONTINUED)

 3

 4        FOR THE PLAINTIFFS:      PEIFFER, WOLF, CARR & KANE
                                   BY:  ADAM B. WOLF
 5                                 4 EMBARCADERO CENTER, 14TH FLOOR
                                   SAN FRANCISCO, CALIFORNIA  94111
 6

 7        FOR THE DEFENDANTS:      RANKIN, SHUEY, RANUCCI, MINTZ
                                   LAMPASONA & REYNOLDS
 8                                 BY:  MARIA M. LAMPASONA
                                   2030 FRANKLIN STREET, SIXTH FLOOR
 9                                 OAKLAND, CALIFORNIA  94612

10                                 GORDON REES SCULLY MANSUKHANI, LLP
                                   BY:  BRIAN P. MASCHLER
11                                 275 BATTERY STREET, 20TH FLOOR
                                   SAN FRANCISCO, CALIFORNIA  94111
12

13        FOR THIRD PARTY          O'HARA & CREECH
          DEFENDANT:               BY:  RANDALL C. CREECH
14                                 255 WEST JULIAN STREET, SUITE 402
                                   SAN JOSE, CALIFORNIA  95110
15

16

17

18

19

20

21

22

23

24

25
```

```
 1        SAN JOSE, CALIFORNIA                    JULY 16, 2020

 2                        P R O C E E D I N G S

 3            (ZOOM PROCEEDINGS CONVENED AT 2:30 P.M.)

 4                 THE CLERK:  MAY I CALL THE CASE?

 5                 THE COURT:  YES, PLEASE, GO AHEAD.

 6                 THE CLERK:  CALLING CASE 16-7013, ABDUL NEVAREZ

 7        VERSUS FORTY NINERS FOOTBALL COMPANY, LLC.

 8            COUNSEL, WILL YOU KINDLY STATE YOUR APPEARANCES FOR THE

 9        RECORD, STARTING WITH PLAINTIFFS' COUNSEL.

10                 MR. WALLACE:  GUY WALLACE FOR PLAINTIFFS, YOUR HONOR.

11         GOOD AFTERNOON.

12                 MS. FISHER:  KATHARINE FISHER FOR PLAINTIFFS.

13                 MR. WOLF:  GOOD AFTERNOON, YOUR HONOR.

14            ADAM WOLF FOR THE PLAINTIFFS.

15                 MR. JOHNSON:  GOOD AFTERNOON, YOUR HONOR.

16            MARK JOHNSON FOR THE PLAINTIFFS.

17                 MS. DARDARIAN:  AND GOOD AFTERNOON, YOUR HONOR.

18            LINDA DARDARIAN FOR THE PLAINTIFFS.

19                 THE CLERK:  COUNSEL FOR THE DEFENSE?

20                 MS. LAMPASONA:  GOOD AFTERNOON, YOUR HONOR.

21            MARIA LAMPASONA FOR THE DEFENDANTS.

22                 MR. CREECH:  GOOD AFTERNOON, YOUR HONOR.

23            RANDY CREECH FOR THIRD PARTY DEFENDANT TURNER/DEVCON.

24                 THE CLERK:  MR. MASCHLER, WOULD YOU LIKE TO STATE

25         YOUR APPEARANCE?
```

1          THE COURT:  MR. MASCHLER, YOU'RE ON MUTE.

2          MS. LAMPASONA, IS THERE ANY REASON WHY MR. MASCHLER IS NOT

3     STATING HIS APPEARANCE?

4          MS. LAMPASONA:  NOT THAT I KNOW OF, YOUR HONOR.  I

5     ASSUME THAT IT JUST HAS TO DO WITH TECHNICAL DIFFICULTIES.

6          THE COURT:  OKAY.

7          THE CLERK:  IF I COULD ALSO ASK THAT ANYONE WHO'S NOT

8     SPEAKING BE ON MUTE, BECAUSE WE'RE GETTING A LITTLE BIT OF AN

9     ECHO WITH THE FEEDBACK.  THANK YOU.

10          THE COURT:  ALL RIGHT.  THANK YOU.

11     WELL, I'LL JUST NOTE FOR THE RECORD THAT

12     MR. BRIAN MASCHLER APPEARS TO BE PARTICIPATING IN OUR MEETING

13     AS A PANELIST, EVEN THOUGH HIS MUTE BUTTON IS ON AND HE DOESN'T

14     HAVE HIS VIDEO TURNED ON, EITHER.

15     SO ANYWAY, WELCOME AND THANK YOU TO ALL OF YOU FOR BEING

16     HERE.

17     LET ME ASK WHETHER ANY OF THE CLAIM NUMBERS, OPT OUT

18     NUMBERS, OR OBJECTOR NUMBERS HAVE CHANGED SINCE THE

19     SUPPLEMENTAL BRIEF.

20          MR. WALLACE:  YOUR HONOR, JCC INFORMS US THAT THERE

21     ARE NO OBJECTIONS, THERE ARE NO REQUESTS FOR OPT OUTS, AND

22     THAT'S AS OF YESTERDAY'S DATE.

23     AND RIGHT NOW WE HAVE 5,418 CLAIMS.

24     AND I THINK YOUR HONOR HAD ASKED SOME QUESTIONS EARLIER

25     TODAY BY ORDER, AND THE AVERAGE ANTICIPATED RECOVERY FOR THE

1    CLASS MEMBERS IS $4,423.96.  THE MEDIAN IS $4,340.99.

2          AND THEN ACCORDING TO THE CALCULATIONS WE GOT FROM JCC, IT

3    LOOKS LIKE MR. DEFRANCESCO WOULD RECEIVE $13,432.91, INCLUDING

4    HIS PROPOSED $5,000 SERVICE AWARD.  AND FOR ABDUL NEVAREZ, IT

5    WOULD BE $10,704.97, INCLUDING THE PROPOSED $5,000 SERVICE

6    AWARD.

7          AND I THINK THERE WERE A COUPLE QUESTIONS ABOUT THE NUMBER

8    OF CASES THAT THEY HAVE.

9          THE COURT:  I'M SORRY, LET ME INTERRUPT YOU.

10   WHAT ABOUT PHYLLIS NEVAREZ?

11         MR. WALLACE:  PRISCILLA NEVAREZ --

12         THE COURT:  PRISCILLA, EXCUSE ME.

13         MR. WALLACE:  -- I DO NOT BELIEVE THAT SHE'S MAKING A

14   CLAIM ON THE DAMAGES FUND BECAUSE SHE IS A NON-DISABLED

15   COMPANION, AND MY UNDERSTANDING OF THE DAMAGES FUND IS THAT

16   THAT'S LIMITED TO PERSONS WITH MOBILITY DISABILITIES.  SHE WILL

17   ONLY BE GETTING THE $5,000 SERVICE AWARD FOR HER WORK ON BEHALF

18   OF THE COMPANION CLASS, YOUR HONOR.

19         THE COURT:  OKAY.  THANK YOU.

20   CAN YOU PLEASE REPEAT THE TOTAL NUMBER OF CLAIM FORMS

21   RECEIVED?

22         MR. WALLACE:  SO FAR WE HAVE 5,418 CLAIMS.

23         THE COURT:  AND DO WE KNOW WHAT PERCENTAGE OF CLAIMS

24   ARE BEING REJECTED, IF ANY?

25         MR. WALLACE:  WE HAVE NOT -- JCC IS IN THE PROCESS OF

1    REVIEWING THE CLAIMS, AND SO AT THIS TIME, I DON'T THINK ANY

2    CLAIMS HAVE BEEN REJECTED.  BUT WE DO ANTICIPATE THAT THERE

3    WILL BE SOME, OF COURSE.  WE JUST WOULDN'T BE ABLE TO GIVE YOU

4    EVEN A REASONABLE ESTIMATE TODAY.

5              THE COURT:  OKAY.  THAT'S ALL RIGHT.

6         WHAT ABOUT WHAT YOU ANTICIPATE THE HIGHEST RECOVERY TO BE?

7    WILL ANYONE GET UP TO 80,000 DO YOU THINK?

8              MR. WALLACE:  WE DON'T HAVE THE NUMBER ON THE HIGHEST

9    CLAIM YET.  WE DO KNOW THAT SOMEONE HAS SUGGESTED THAT THEY

10    MADE 50 VISITS, WHICH I DOUBTED EARLIER.

11        BUT BECAUSE THE DAMAGES FUND IS SET UP TO MAKE SURE

12    EVERYONE GETS THE 4,000, AND THEN ABOVE THE 4,000 YOU GET A

13    PRO RATA SHARE OF VISITS, WE'RE NOT ANTICIPATING PEOPLE ARE

14    GOING TO GET CLOSE TO THE 80,000, YOUR HONOR.

15              THE COURT:  I SEE.  OKAY.  SO AT THIS POINT YOU DON'T

16    HAVE A CLEAR SENSE OF WHAT THE HIGHEST RECOVERY MIGHT BE?  IS

17    THAT RIGHT?

18              MR. WALLACE:  NO, NOT TODAY.

19              THE COURT:  OKAY.  THAT'S FINE.

20        WHEN DOES JCC EXPECT TO COMPLETE PROCESSING THE FORMS?

21              MR. WALLACE:  I THINK THAT'S NOT GOING TO BE FOR

22    SEVERAL WEEKS.

23              THE COURT:  OKAY.  AND THEN -- I MEAN, I'M INTENDING

24    TO GRANT FINAL APPROVAL.  HOW SOON DO YOU THINK THE DAMAGES

25    CLASS WILL RECEIVE THEIR CHECKS?

1           MR. WALLACE:  WELL, I WOULD ANTICIPATE WITHIN A FEW

2    MONTHS AT MOST.

3           THE COURT:  OKAY.  NOW, THE STADIUM ITSELF HAS BEEN

4    CLOSED BECAUSE OF COVID-19.  IT DOESN'T SEEM LIKE THAT HAS

5    IMPACTED YOUR ABILITY TO GET NOTICE OUT TO THE CLASS.  WOULD

6    YOU AGREE WITH THAT, OR --

7           MR. WALLACE:  YES.  WE THINK NOTICE HAS BEEN

8    EFFECTIVE, AND OUR UNDERSTANDING IS THAT, YOU KNOW, PEOPLE HAVE

9    RECEIVED IT IN THE DISABILITY COMMUNITY AND MORE GENERALLY.

10          THE NOTICE WENT OUT TO THE CLASS LIST, THE ENTIRE CLASS

11   LIST.  AND THEN IN ADDITION TO THAT, IN TERMS OF THE CLAIMS

12   BEING MADE, WE HAVE MANY FROM PEOPLE WHO WERE NOT ON THE CLASS

13   LIST.  SO I THINK THE SETTLEMENT HAS BEEN WELL KNOWN TO THE

14   PUBLIC, YOUR HONOR.

15          THE COURT:  AND DO YOU THINK THOSE INDIVIDUALS ARE

16   NOT CLASS MEMBERS, OR ARE THOSE PEOPLE THAT YOU MAY NEED TO ADD

17   TO THE CLASS?

18          MR. WALLACE:  I THINK THAT THEY WILL INCLUDE SOME

19   PEOPLE WE NEED TO ADD TO THE CLASS, AND THEN IT WILL ALSO

20   INCLUDE SOME WHO ARE NOT CLASS MEMBERS AND WHO MAY BE MAKING

21   CLAIMS THAT ULTIMATELY WILL NOT BE VALIDATED BY JCC.

22          THE COURT:  I SEE.

23          MR. WALLACE:  SO WE'RE GOING TO HAVE SOME IN BOTH

24   GROUPS.

25          THE COURT:  ALL RIGHT.  AND DO YOU HAVE A SENSE ON

```
 1     WHAT THOSE NUMBERS ARE OF -- THE FIRST GROUP BEING PEOPLE WHO

 2     NEED TO BE ADDED TO THE CLASS?

 3             MR. WALLACE:  THAT I THINK IS GOING TO PROBABLY BE --

 4     I'M JUST GOING TO HAVE TO ESTIMATE VERY ROUGHLY, YOUR HONOR --

 5     1- OR 2,000 PEOPLE.

 6         AND IN TERMS OF PEOPLE WHO MIGHT TURN OUT TO HAVE CLAIMS

 7     THAT ARE PERHAPS NOT VALID -- AND JCC IS GOING TO HAVE A

 8     PROCESS FOR FOLLOW UP WITH THESE PEOPLE -- WE'VE OBSERVED, FOR

 9     EXAMPLE, THAT WE HAVE 800 DUPLICATE CLAIMS, WHICH DOESN'T SEEM

10     REASONABLE, AND SO THEY'LL BE FOLLOWING UP ON THOSE.

11         AND THERE MAY BE A SIGNIFICANT NUMBER OF CLAIMS THAT ARE

12     DISALLOWED.

13             THAT'S WHERE WE ARE.

14             THE COURT:  AND BY DUPLICATE CLAIMS, DO YOU MEAN THAT

15     THE INDIVIDUAL CLASS MEMBER MAY HAVE SUBMITTED MULTIPLE CLAIM

16     FORMS?

17             MR. WALLACE:  YES.

18             THE COURT:  OKAY.  SO I ASSUME IF YOU ADD 1,000 TO

19     2,000 PEOPLE TO THIS CLASS SIZE, THEN THE RECOVERY MAY GO DOWN.

20     IS THAT CORRECT?

21             MR. WALLACE:  THE 5,000 -- THE 5,418 NUMBER INCLUDES

22     ALL CLAIMS THAT HAVE BEEN MADE, BOTH FROM PEOPLE FROM THE

23     ORIGINAL CLASS LIST AND FROM PEOPLE WHO WERE NOT ON THE

24     ORIGINAL CLASS LIST.

25         AND SO WHEN I GAVE YOU THOSE NUMBERS EARLIER, YOUR HONOR,
```

1    THAT ASSUMES THAT 5,418 CLAIMS ARE VALID, SO THAT AVERAGE

2    ANTICIPATED RECOVERY AND THAT MEDIAN ANTICIPATED RECOVERY

3    SHOULD NOT GO DOWN SIGNIFICANTLY.

4        AND IF CLAIMS ARE DISALLOWED AND CLAIMS THAT ARE NOT

5    REASONABLE OR QUITE POSSIBLY A CLAIM FROM A NON-DISABLED

6    PERSON -- WHICH YOU DON'T WANT TO THINK ABOUT, BUT THERE

7    PROBABLY IS SOME OF THAT GOING ON -- THOSE NUMBERS ARE GOING TO

8    COME UP.

9        THE COURT:  I SEE.  OKAY.

10       MR. WALLACE:  WE'RE ANTICIPATING THAT THE RECOVERY

11    WILL BE ABOVE 4,400 PER CLASS MEMBER.

12       THE COURT:  I SEE.  OKAY.  SO THE 5,418 INCLUDES THE

13    DUPLICATE CLAIMS?

14       MR. WALLACE:  IT DOES NOT, MR. JOHNSON INFORMS ME.

15       THE COURT:  I SEE.  OKAY.  OKAY.  SO THAT SHOULD

16    HOPEFULLY BE A FAIRLY SOLID NUMBER.

17       BASED ON -- JUST TO KNOW FOR FUTURE CASES, WHAT DO YOU

18    THINK WAS THE BEST FORM OF NOTICE AND OUTREACH TO THE CLASS?

19    BECAUSE I WOULD WANT TO REPEAT THAT FOR A FUTURE ADA CASE.  DID

20    YOU GET A SENSE FROM CLASS MEMBERS AS TO WHAT WAS PARTICULARLY

21    EFFECTIVE IN REACHING THEM?  I MEAN, A GOOD -- A GOOD DAMAGES

22    AWARD HELPS, BUT --

23       MR. WALLACE:  I GET THE SENSE THAT THE -- YES.  I GET

24    THE SENSE THAT THE ONLINE NOTICE MAY HAVE BEEN THE MOST

25    EFFECTIVE NOTICE OF ALL.  CERTAINLY A LOT OF PEOPLE GOT THE

1    MAIL AND THE E-MAIL NOTICE OFF THE CLASS LIST, BUT WE SEEM TO

2    HAVE REALLY REACHED MORE BROADLY WITH THE POSTINGS.

3         THE COURT:  OKAY.  ALL RIGHT.  WELL, THAT'S GOOD TO

4    KNOW.  THANK YOU FOR LETTING ME KNOW THAT.

5         YOU GOT A VERY GOOD PARTICIPATION RATE, SO I'M NOT

6    CONCERNED, BUT FOR THE FOLKS WHOSE CLASS NOTICE AND CLAIM

7    PACKETS WERE RETURNED AS UNDELIVERABLE, DO YOU FEEL CONFIDENT

8    THAT THEY PROBABLY GOT THE NOTICE THROUGH SOME OTHER WAY?

9         MR. WALLACE:  YES.  WE'RE GOING TO BE FOLLOWING UP

10   WITH THE NON-DELIVERABLES MORE.  I KNOW WE HAVE PROVISIONS IN

11   THE SETTLEMENT AGREEMENT ABOUT THAT, AND JCC HAS A STANDARD

12   PROTOCOL FOR THAT.  SO WE'LL BE TRYING TO REACH THOSE PEOPLE.

13        THE COURT:  AND HOW WOULD YOU DO THAT IF YOU'VE

14   ALREADY TRIED MAIL AND E-MAIL AND ONLINE PUBLICATIONS AND

15   NOTICES THAT CERTAIN FACILITIES -- GO AHEAD.

16        MR. WALLACE:  I THINK WE'LL BE -- YOU KNOW, FOR THE

17   PEOPLE THAT WE WERE NOT ABLE TO REACH WHO WERE ON THE MAILING

18   LIST, THERE WOULD BE SKIP TRACING AND THINGS LIKE THAT, YOUR

19   HONOR, TO TRY AND SEE IF THERE'S A BETTER ADDRESS FOR THEM.

20        THE COURT:  OKAY.

21        MR. WALLACE:  BUT THAT PROCESS IS -- SHOULD BE

22   UNDERWAY NOW.

23        THE COURT:  BUT WASN'T THE -- WAS THE DEADLINE NOT

24   JUNE 28TH?  ARE YOU GOING TO EXTEND IT FOR THOSE INDIVIDUALS?

25   OR HOW WOULD THAT WORK?

1          MR. WALLACE:  IF JCC HASN'T COMPLETED THAT FOLLOW-UP

2     WITH THE SKIP TRACING, YES, WE WOULD DEFINITELY ANTICIPATE, ON

3     OUR SIDE, BEING FINE WITH SOME LATE CLAIMS IF THERE'S BEEN A

4     PROBLEM FINDING A FEW PEOPLE.

5          THE COURT:  AND DOES THE SETTLEMENT AGREEMENT ALLOW

6     YOU TO EXTEND THE DEADLINE?

7          MR. WALLACE:  MY UNDERSTANDING IS THAT IT DOES.  BUT

8     WE WOULD CERTAINLY HOPE THAT DEFENDANTS WOULD BE AMENABLE TO

9     THAT.

10          THE COURT:  THAT WOULD DELAY THE -- THAT WOULD DELAY

11     THE PAYMENT TO THE ENTIRE CLASS BECAUSE YOU'LL HAVE TO WAIT AND

12     SEE WHAT THEN THE FINAL NUMBERS ARE AND THE FINAL DISTRIBUTIONS

13     ARE; CORRECT?

14          MR. WALLACE:  IT COULD.

15          THE COURT:  I AM NOT -- I AM NOT AWARE OF SETTLEMENTS

16     ALLOWING JUST EXTENSIONS OF THE DEADLINE.  IT'S KIND OF

17     PROBLEMATIC TO ME BECAUSE ARE THEY GOING TO OPT OUT AND OBJECT?

18     THEN SHOULD I HOLD OFF ON GRANTING FINAL APPROVAL?  BECAUSE I

19     NEED TO KNOW THE FINAL NUMBERS BEFORE I MAKE A DECISION.

20          SO WHERE -- I HAVE THE SETTLEMENT AGREEMENT IN FRONT OF

21     ME.  WHERE IS THE PROVISION THAT ALLOWS JUST SORT OF INDEFINITE

22     DEADLINES, AND HOW LONG THEN DO I HAVE TO WAIT BEFORE I RULE ON

23     ANY FINAL APPROVAL MOTION?

24          MR. WALLACE:  I THINK WE CAN CHECK WITH JCC.

25     MR. JOHNSON IS TELLING ME THAT WE MAY HAVE ALREADY COMPLETED

1    THE SKIP TRACING AND ALL OF THAT BEFORE JUNE 28TH, AND THAT

2    APPEARS TO BE THE UNDERSTANDING OF MS. DARDARIAN AS WELL.

3        BUT WE WILL CONFIRM THAT, AND IF ANY STEPS TO FOLLOW UP

4    WITH CLASS MEMBERS THAT COULDN'T BE LOCATED DON'T NEED TO BE

5    TAKEN, THEN THERE WOULD BE NO NEED TO EXTEND ANY DEADLINES.

6        THE COURT:  OKAY.  DOES ANYONE ELSE --

7        MR. WALLACE:  WE WOULD LIKE TO CONFIRM THAT THEY'VE

8    COMPLETED THAT BEFORE WE, YOU KNOW, EXCLUDE PEOPLE THAT MIGHT

9    STILL BE FINDABLE.

10        THE COURT:  WELL, DOES ANYONE ELSE ON THE CALL HAVE

11   THE RELEVANT PROVISION -- I'M LOOKING THROUGH THE SETTLEMENT

12   AGREEMENT RIGHT NOW -- THAT WOULD PROVIDE FOR EXTENSION OF THE

13   DEADLINES?  AND WHAT DOES THAT MEAN THEN?  DO I NEED TO SET A

14   FUTURE FINAL APPROVAL HEARING TO GO THROUGH THE FINAL NUMBERS?

15   WHAT DOES THAT MEAN FOR US AND HOW WE PROCEED IN THIS CASE?

16        MR. WOLF:  YOUR HONOR, THIS IS ADAM WOLF.

17        ONE OF THE FEW BENEFITS OF BEING ONLINE AND NOT IN PERSON

18   HERE IS THAT WE GET TO E-MAIL A LITTLE BIT DURING THIS PROCESS,

19   AND SO IF I CAN MAKE THE SUGGESTION THAT WE TRY TO RUN THIS

20   DOWN DURING THIS HEARING, MAYBE BY THE END OF THE HEARING,

21   WE'LL HAVE A DEFINITIVE ANSWER FOR YOU.

22        THE COURT:  OKAY.  THAT'S FINE.

23        MR. WOLF:  THANK YOU.

24        THE COURT:  THAT'S FINE.

25        MS. LAMPASONA:  YOUR HONOR, THIS IS MARIA LAMPASONA

1      FOR THE DEFENSE.

2          ON PAGE 37 AND 38 IS WHERE THE APPLICABLE PROVISIONS ARE.

3      THERE ISN'T A PROVISION THAT PERMITS A UNILATERAL EXTENSION,

4      BUT THERE ARE PROVISIONS RELATED TO DEFECTIVE CLAIM FORMS AND

5      THE LIKE THAT DO GIVE 30 DAYS FROM THE DATE OF WHICH -- FROM

6      THE DEADLINE TO SUBMIT A CLAIM.

7          SO THERE'S ALREADY A 30 DAY WINDOW BUILT IN, ALTHOUGH AS

8      YOUR HONOR OBSERVED, THERE IS NO SPECIFIC EXTENSION PROVISION.

9          THE COURT:  OKAY.  BUT THAT'S A DIFFERENT PROVISION.

10     I'M LOOKING AT SECTION F ON PAGE 38.  IT SAYS THAT "IF A CLAIM

11     FORM IS INCOMPLETE OR IS NOT SIGNED PROPERLY, THE SETTLEMENT

12     ADMINISTRATOR SHALL NOTIFY THE CLAIMANT OF THE DEFICIENCY.  ALL

13     CLAIMANTS SHALL BE PROVIDED 30 DAYS FROM THE DATE OF

14     NOTIFICATION TO CURE ANY DEFECT IN THEIR CLAIM FORM.  THE

15     FAILURE OF A CLAIMANT TO COMPLETE, SIGN AND RETURN THE CLAIM

16     FORM WITHIN 30 DAYS SHALL RESULT IN THE DENIAL OF THEIR CLAIM."

17         NOW, I'M READING THIS TO ASSUME THAT IS AT LEAST A CLAIM

18     FORM THAT WAS TIMELY SUBMITTED THAT MAY HAVE A DEFECT.  I'M NOT

19     READING THIS AS SAYING WE HAVE AN INDEFINITE OPEN DEADLINE TO

20     SUBMIT A CLAIM FORM.

21         DO YOU SEE MY DISTINCTION?

22         MR. WALLACE:  I THINK --

23         THE COURT:  SO I -- I WOULD HOPE THAT --

24         MR. WALLACE:  I MAY HAVE BEEN IN ERROR, YOUR HONOR.

25         THE COURT:  I'M SORRY?

1      MR. WALLACE:  I MAY HAVE BEEN IN ERROR, YOUR HONOR.

2  THE SETTLEMENT AGREEMENT MAY NOT PERMIT IT, IN WHICH CASE I

3  SUPPOSE JCC WILL REVIEW THE CLAIMS IT HAS ALREADY RECEIVED.

4      THE COURT:  SO I'M LOOKING AT PARAGRAPH E ON PAGE 38

5  OF THE SETTLEMENT AGREEMENT.  IT SAYS, "ALL CLAIM FORMS MUST BE

6  MAILED TO THE SETTLEMENT ADMINISTRATOR AND POSTMARKED OR

7  SUBMITTED ELECTRONICALLY BY NO LATER THAN THE DEADLINE SET

8  FORTH IN THE COURT'S PRELIMINARY APPROVAL ORDER."

9      I DON'T SEE ANY FLEXIBILITY ON EXTENDING THAT.  AS MUCH AS

10  I APPRECIATE THE DESIRE TO GET AS MUCH PARTICIPATION AS

11  POSSIBLE, MY CONCERN IS AT SOME POINT WE NEED TO GET FINALITY

12  AND GET THAT MONEY DISTRIBUTED, AND I CAN'T MAKE ANY FINAL

13  DECISION ON THIS UNLESS I KNOW WHAT THE FINAL NUMBERS ARE.

14      SO, I MEAN, IF YOU ALL TELL ME THAT AS, AS THE PARTIES,

15  YOU WANT ME TO SET A FURTHER FINAL APPROVAL HEARING A MONTH OR

16  TWO FROM NOW AND YOU CAN GIVE ME THE UPDATED NUMBERS, I CAN DO

17  THAT.  OR DO YOU WANT TO PROCEED TODAY?

18      MR. WALLACE:  I THINK ON THE PLAINTIFFS' SIDE, WE

19  WOULD BE -- WE WOULD BE WANTING TO PROCEED TODAY, YOUR HONOR.

20      THE COURT:  WHAT ABOUT THE DEFENDANTS?

21      MS. LAMPASONA:  YOUR HONOR, WE HAVE NO OBJECTION TO

22  PROCEEDING TODAY.

23      BUT I DO THINK THAT THERE IS AN INTEREST IN GETTING IN

24  TOUCH WITH AS MANY PEOPLE AS POSSIBLE, SO I WOULD LIKE TO KNOW

25  WHETHER THE FOLKS THAT WERE UNABLE TO BE REACHED, IF IT'S

1    POSSIBLE TO REACH THEM.

2         BUT, OF COURSE, WE WILL DEFER TO WHATEVER THE COURT

3    DECIDES.

4         THE COURT:  SO HOW MANY PEOPLE IS THAT?  IS THAT 225

5    POTENTIAL CLASS MEMBERS?  OR WHO IS THE -- YOU KNOW, WHAT IS

6    THE UNIVERSE OF POTENTIAL PEOPLE THAT YOU STILL WANT TO REACH

7    OUT TO?  AND WHY WASN'T IT DONE ALREADY?  I MEAN, THIS

8    NOTICE -- PRELIMINARY APPROVAL WAS BACK IN JANUARY SO, I MEAN,

9    WE'VE BEEN -- THIS IS NOT SOMETHING THAT YOU JUST STARTED LAST

10   WEEK.  SO WHY ARE WE STILL NOT HAVING EXHAUSTED OUTREACH

11   EFFORTS BY THIS POINT, THE FINAL APPROVAL HEARING POINT?

12        MR. WALLACE:  I KNOW, YOUR HONOR, THAT THE MAILING

13   WENT TO APPROXIMATELY 5,000 PEOPLE.  WE DO HAVE 5,418 CLAIM

14   FORMS.  BUT WE ALSO KNOW THAT SOME OF THE PEOPLE WHO MADE THOSE

15   CLAIMS DO NOT APPEAR ON THE CLASS LIST.

16        SO WE FEEL LIKE THE NOTICE HAS BEEN EFFECTIVE AND THE

17   CLAIMS HAVE BEEN RECEIVED.  I BELIEVE THAT JCC HAS COMPLETED

18   ITS FOLLOW-UPS FROM WHAT I'M SEEING IN THE E-MAIL TRAFFIC IN

19   TERMS OF ADDRESSES THAT COULD BE REACHED, BUT WE JUST NEED TO

20   CONFIRM THAT.

21        MS. DARDARIAN:  YOUR HONOR, IF I MAY, THIS IS

22   LINDA DARDARIAN.

23        IN THE DECLARATION OF EDWARD DATTILO FROM JCC, THE

24   SETTLEMENT ADMINISTRATOR, HE SUBMITTED A DECLARATION IN SUPPORT

25   OF FINAL APPROVAL WHERE HE STATES THAT PRIOR TO THE CLASS

1    NOTICE BEING ISSUED, JCC DID UPDATE THE LIST FOR MAILING CLASS

2    NOTICE, THEY UPDATED APPROXIMATELY 500, OR AS HE STATES, 495

3    ADDRESSES THAT WERE UPDATED TO CREATE A TOTAL CLASS LIST OF

4    5,779 INDIVIDUALS WHO RECEIVED MAIL NOTICE; 4,789 --

5           THE COURT:  I'M SORRY TO INTERRUPT YOU.  I HAVE YOUR

6    BIG BINDERS.  CAN YOU TELL ME WHICH ONE IT IS?  I'D LIKE TO

7    LOOK AT THE DOCUMENT.

8         CAN I HAVE A COPY OF THE PRELIMINARY APPROVAL ORDER?  I

9    DON'T HAVE THAT WITH ME ON THE BENCH IN THESE BINDERS.

10          MS. DARDARIAN:  YOUR HONOR, THAT IS IN THE

11   DECLARATION OF EDWARD DATTILO, D-A-T-T-I-L-O, AT PARAGRAPH 4.

12        (PAUSE IN PROCEEDINGS.)

13          THE COURT:  OKAY.  ECF 395-2?

14          MS. DARDARIAN:  YES, YOUR HONOR.

15          THE COURT:  OKAY.  AND CAN YOU POINT ME TO THE

16   PARAGRAPH, PLEASE?

17          MS. DARDARIAN:  PARAGRAPH 4.

18        (PAUSE IN PROCEEDINGS.)

19          THE COURT:  OKAY.  LET ME ASK, DOES THIS SATISFY THE

20   PARTIES THAT YOU HAVE DONE AS MUCH OUTREACH AS YOU CAN, OR DO

21   YOU WANT ME TO SET A FURTHER HEARING?

22          MS. DARDARIAN:  YOUR HONOR, THIS IS LINDA DARDARIAN

23   AGAIN.

24        I BELIEVE THAT JCC AND CLASS COUNSEL AND DEFENSE COUNSEL

25   ALL TOGETHER HAVE PROVIDED THE BEST NOTICE PRACTICABLE UNDER

1    THE CIRCUMSTANCES, WITH THE MAILED NOTICE AND THE E-MAILED

2    NOTICE THAT WERE SENT OUT AFTER SKIP TRACING, WITH THE

3    DISTRIBUTION ON DIFFERENT WEBSITES AND THE DISTRIBUTION TO

4    DISABILITY RIGHTS ORGANIZATIONS, AND WE DID RECEIVE MORE CLAIM

5    FORMS THAN WE EXPECTED, AND I THINK THAT ALSO INDICATES THAT

6    CLASS NOTICE WAS ROBUST.

7            THE COURT:  OKAY.  AND SO ALL THE PLAINTIFFS ARE

8    SATISFIED; IS THAT CORRECT?

9            MR. WALLACE:  YES, YOUR HONOR.

10           THE COURT:  ANYONE ELSE?  THAT WAS MR. WALLACE.

11    I SEE MR. WOLF SHAKING HIS HEAD YES; MR. JOHNSON SHAKING

12    HIS HEAD YES; MS. FISHER SHAKING HER HEAD YES.

13    OH, MR. MASCHLER, YOU HAVE JOINED US.  WOULD YOU LIKE TO

14    STATE YOUR APPEARANCE?

15           MR. MASCHLER:  YES, YOUR HONOR.

16    BRIAN MASCHLER FOR DEFENDANTS.

17           THE COURT:  WELCOME.  GOOD AFTERNOON.

18    OKAY.  SO LET ME ASK MS. LAMPASONA AND MR. MASCHLER AND

19    MR. CREECH NOW, ARE YOU SATISFIED THAT I CAN GO FORWARD TODAY

20    AND NOT HOLD UP OUR PROCEEDINGS HERE TO SEE IF WE CAN GET MORE

21    CLAIMS?

22           MS. LAMPASONA:  YOUR HONOR, I AM NOT PRIVY TO THE

23    INFORMATION REGARDING THE UNDELIVERABLES.  I UNDERSTOOD

24    MR. WALLACE, AT THE BEGINNING OF THIS HEARING, TO REPRESENT

25    THAT THERE ARE A NUMBER OF UNDELIVERABLES FOR WHICH SKIP

1    TRACING MIGHT BE NECESSARY.

2         NOW IT'S SOUNDING LIKE THAT'S NOT THE CASE, SO I WOULD

3    JUST LIKE A LITTLE MORE CLARIFICATION REGARDING THE STATUS OF

4    THE UNDELIVERABLES BEFORE VOICING AN OPINION AS TO WHETHER WE

5    ARE IN A POSITION TO GO FORWARD TODAY.

6         THE COURT:  OKAY.  IS THERE ANY CHANCE THAT SOMEONE

7    COULD REACH OUT TO JCC DURING TODAY'S HEARING AND PERHAPS WE

8    COULD GET AN ANSWER ON THAT?

9         MS. DARDARIAN:  I'M SORRY, YOUR HONOR, TO INTERRUPT.

10   WE HAVE -- WE DO HAVE AN ANSWER ON THE UNDELIVERABLES.  OF

11   THE, YOU KNOW, SEVERAL THOUSAND NOTICE PACKAGES THAT WENT OUT,

12   JCC RECEIVED 258 OF THEM AS UNDELIVERABLE, AND DELIVERED 33 --

13   RE-MAILED 33 UPON GETTING UPDATED ADDRESS INFORMATION.

14        SO THERE ARE ABOUT -- OF THE MANY THOUSAND OF NOTICE

15   PACKAGES THAT WENT OUT, APPROXIMATELY 225 WERE, IN FACT,

16   UNDELIVERABLE.

17        THE COURT:  SO LET ME UNDERSTAND THE DEFENDANT'S

18   CONCERN.  I UNDERSTOOD -- AND CORRECT ME IF I'M WRONG -- THAT

19   IF YOU DON'T GET AN OPT OUT, THEN CLASS MEMBERS HAVE RELEASED

20   THEIR CLAIMS.  IS THAT CORRECT?  WHAT IS IT THAT YOU ARE

21   CONCERNED ABOUT THAT WOULD REQUIRE US NOT TO PROCEED TODAY?

22        MS. LAMPASONA:  I WAS JUST CONCERNED WITH THE

23   FINALITY OF THE NUMBERS THAT YOUR HONOR WOULD NEED TO CONSIDER

24   IN ORDER TO ISSUE FINAL APPROVAL, AND OF COURSE THE BOTTOM LINE

25   CONCERN OF REACHING THE HIGHEST NUMBER OF INDIVIDUALS POSSIBLE.

```
 1              THE COURT:  OKAY.  BUT YOU WOULD AGREE THAT THEY'RE
 2      GOING TO RELEASE THEIR CLAIMS IF THEY DON'T OPT OUT?
 3              MS. LAMPASONA:  I AGREE.
 4              THE COURT:  OKAY.  SO TO THAT EXTENT, DEFENDANTS
 5      WOULD HAVE FINALITY.
 6          OKAY.  THEN IS THERE ANY OTHER DEFENDANT, MR. MASCHLER,
 7      MR. CREECH, WHO HAS ANY CONCERNS ABOUT US PROCEEDING TODAY AND
 8      THE COURT ISSUING RULINGS?
 9              MR. CREECH:  YOUR HONOR, THIS IS RANDY CREECH.  I
10      REPRESENT THIRD PARTY DEFENDANT TURNER/DEVCON, AND I BELIEVE AS
11      A THIRD PARTY DEFENDANT, I DON'T REALLY HAVE STANDING TO OBJECT
12      OR MAKE A COMMENT --
13              THE REPORTER:  I'M SORRY, MR. CREECH.  I DIDN'T HEAR
14      THE LAST PART OF THAT.
15              MR. CREECH:  I DON'T BELIEVE, AS A THIRD PARTY
16      DEFENDANT, I HAVE STANDING TO CONTEST THE SETTLEMENT BETWEEN
17      THE PLAINTIFF AND THE DEFENDANT, AS I WAS GOING TO CHALLENGE IF
18      THEY HAD NOT.
19              THE COURT:  ALL RIGHT.  THANK YOU.
20          MR. MASCHLER, ANYTHING TO ADD?
21          YOU'RE SHAKING YOUR HEAD NO, BUT WE CAN'T HEAR YOU.  OKAY.
22              MR. MASCHLER:  YOUR HONOR --
23              THE COURT:  OH, NOW WE CAN HEAR YOU.  GO AHEAD,
24      PLEASE.
25              MR. MASCHLER:  YES.  I HAVE NO OBJECTION.
```

 1          THE COURT:  ALL RIGHT.  THANK YOU.

 2          AND MS. LAMPASONA, YOU ARE NOT OBJECTING TO US PROCEEDING

 3     NOW; IS THAT CORRECT?

 4          MS. LAMPASONA:  YES, YOUR HONOR, THAT'S CORRECT.

 5          THE COURT:  ALL RIGHT.  THANK YOU.  I'M GLAD TO CLEAR

 6     THAT UP.

 7          OKAY.  WITH REGARD TO -- LET'S GO BACK THEN TO THE SERVICE

 8     AWARDS.  DOES THE FACT THAT MR. DEFRANCESCO IS NOT A DAMAGES

 9     CLASS REPRESENTATIVE BECAUSE HE DIDN'T EFFECTIVELY EXHAUST HIS

10     ADMINISTRATIVE REMEDIES, DOES THAT OR SHOULD THAT AFFECT THE

11     RECOVERY HE RECEIVES?  NOT HIS DAMAGES RECOVERY, BUT HIS

12     RECOVERY AS A CLASS REPRESENTATIVE?  I GUESS IT'S JUST AN

13     INJUNCTIVE CLASS REPRESENTATIVE.

14          GO AHEAD, PLEASE.

15          MS. FISHER:  THIS IS KATHERINE FISHER.

16          WE WOULD SUBMIT THAT IT SHOULDN'T AFFECT HIS SERVICE

17     AWARD.  HE DIDN'T PERFECT HIS CLAIM FOR DAMAGES AGAINST THE

18     SANTA CLARA DEFENDANT.

19          THE COURT:  UM-HUM.

20          MS. FISHER:  BUT THE DAMAGES CLASS ONLY HAS CLAIMS

21     AGAINST THE FORTY NINERS DEFENDANT, SO WE DON'T REALLY THINK

22     THAT SHOULD AFFECT HIS SERVICE AWARD RECOVERY HERE.

23          THE COURT:  RIGHT.  BUT I THINK THE COURT FOUND IN A

24     CLASS CERTIFICATION ORDER THAT HE WASN'T TYPICAL AND COULDN'T

25     SERVE AS A CLASS REPRESENTATIVE AS TO DAMAGES BECAUSE HE DID

1    HAVE THAT DIFFERENCE.

2        ANYONE ELSE HAVE ANYTHING TO ADD?

3            MR. WALLACE:  YOUR HONOR, I THINK YOU APPOINTED

4    MR. DEFRANCESCO AS A CLASS REPRESENTATIVE IN THE PRELIMINARY

5    APPROVAL ORDER, AND SO SINCE HE DID SERVE AT THIS POINT AS A

6    CLASS REPRESENTATIVE IN THE CASE, I THINK THE DISTINCTION ABOUT

7    THE VALIDITY OF HIS DAMAGES CLAIM AGAINST THE PUBLIC ENTITY

8    WOULDN'T REALLY IMPACT HIS ABILITY TO RECOVER LEGALLY FOR THE

9    WORK THAT HE DID ON BEHALF OF THE INJUNCTIVE RELIEF CLASS.

10           THE COURT:  YES, THE PRELIMINARY APPROVAL ORDER JUST

11   APPOINTED HIM AS A CLASS REPRESENTATIVE FOR THE INJUNCTIVE

12   RELIEF CLASS ONLY AND NOT AS A DAMAGES CLASS REPRESENTATIVE.

13           OKAY.  LET ME ASK, DO YOU HAVE ANY -- THE RISK THAT'S

14   INVOLVED IN JUSTIFYING A HIGHER SERVICE AWARD IS USUALLY IN THE

15   CONTEXT OF EMPLOYMENT WHERE PLAINTIFFS WHO SUE MAY NOT BE HIRED

16   BY FUTURE EMPLOYERS WHO MAY BE CONCERNED ABOUT BEING SUED, AND

17   WE DON'T HAVE THAT HERE IN THAT HERE YOU HAVE A RETAIL BUSINESS

18   WHO'S NOT LIKELY TO DECLINE THE MONEY OF ANY OF THESE THREE

19   CLASS REPRESENTATIVES TO MAKE A PURCHASE AT SOME KIND OF RETAIL

20   BUSINESS.

21           BUT YOU SAY THE RISK THAT THEY FACE IS BEING TAINTED AS

22   BEING SERIAL LITIGANTS.

23           DO YOU HAVE ANY PRECEDENT THAT SUPPORTS THAT TYPE OF RISK?

24   I HAVE NOT SEEN THAT, AND IN DISABILITY CASES, IT DOES TEND TO

25   BE A FEW NUMBER PLAINTIFFS WHO BRING ALL THE CASES IN A LOT OF

1     RESPECTS, AND I JUST HAVEN'T SEEN THAT AS A BASIS TO INCREASE

2     THE SERVICE AWARD.

3            MS. FISHER:  YOUR HONOR, WE SEE THAT -- YOU KNOW, THE

4     PURPOSE OF THE SERVICE AWARD IS TO INCENTIVIZE INDIVIDUALS TO

5     CONFORM -- TO ENFORCE IMPORTANT PUBLIC POLICIES ON A CLASS-WIDE

6     BASIS.  WE THINK THAT THE WORK THAT THE PLAINTIFFS PUT IN HERE

7     ISN'T DIFFERENT THAN THE EFFORTS MADE BY PLAINTIFFS IN OTHER

8     CASES WHERE $5,000 SERVICE AWARDS WERE APPROVED.

9         I DON'T HAVE A CITE SPECIFICALLY RECOGNIZING THE RISK OF

10    BEING LABELED AS SERIAL LITIGANTS, AND DISABILITY ACCESS CLASS

11    ACTIONS AREN'T AS COMMON AS EMPLOYMENT CLASS ACTIONS, BUT I DO

12    HAVE A COUPLE OF OUT OF DISTRICT CITATIONS TO ORDERS OR REPORTS

13    THAT APPROVED THE $5,000 SERVICE AWARD FOR DISABILITY ACCESS

14    CLASS REPRESENTATIVES, AND THESE WERE IN --

15           THE COURT:  OH, I'M SORRY TO INTERRUPT YOU.  I DON'T

16    HAVE ANY PROBLEM WITH THE 5,000 AWARD.  BUT YOU'RE SORT OF

17    SIMULTANEOUSLY ASKING FOR A $7,500 AWARD AND SAYING THE

18    INCREASE WOULD BE BECAUSE OF THIS RISK.

19        SO HOW MANY CASES -- LET'S GO THROUGH THEM ONE BY ONE.

20    FOR MR. ABDUL NEVAREZ, HOW MANY CASES HAS HE SERVED AS A LEAD

21    PLAINTIFF, A NAMED PLAINTIFF, OR A CLASS REPRESENTATIVE?  IN

22    HOW MANY CASES IS THAT FOR HIM?

23           MS. FISHER:  FIRST, YOUR HONOR, I JUST WANT TO

24    CLARIFY THAT WE ACTUALLY ARE SEEKING $5,000 SERVICE AWARDS FOR

25    EACH OF THE NAMED PLAINTIFFS HERE.

1          THE COURT:  RIGHT.  BUT I THOUGHT YOUR PROPOSED ORDER

2     AND YOUR MOTION WAS TRYING TO BE A LITTLE BIT PLAYING IT BOTH

3     WAYS, BECAUSE YOU HAVE BOTH NUMBERS IN BOTH YOUR MOTION AND

4     YOUR PROPOSED ORDER, SO IT'S A LITTLE BIT NOT AS CLEAR.  BUT, I

5     MEAN, I'M FINE WITH THE $5,000 AWARD.

6          BUT LET ME HEAR, HOW MANY CASES HAS MR. ABDUL NEVAREZ BEEN

7     A LEAD PLAINTIFF, A NAMED PLAINTIFF, OR A CLASS REPRESENTATIVE?

8          MS. FISHER:  OF COURSE.

9          SO MR. ABDUL NEVAREZ WAS A PLAINTIFF IN 13 DISABILITY

10    ACCESS CASES, BUT HE'S NEVER BEEN A CLASS REPRESENTATIVE AND

11    NEVER RECEIVED A SERVICE AWARD IN ANOTHER CASE.

12         MR. DEFRANCESCO -- AND THAT 13 IS INCLUSIVE OF THIS CASE.

13         THE COURT:  OKAY.  THANK YOU.

14         MS. FISHER:  MR. DEFRANCESCO HAS BEEN A PLAINTIFF IN

15    SIX DISABILITY ACCESS CASES, INCLUDING THIS ONE.

16         AND PRISCILLA NEVAREZ HAS BEEN A PLAINTIFF IN 12

17    DISABILITY ACCESS CASES, INCLUDING THIS ONE.

18         AND NEITHER MR. DEFRANCESCO OR MS. NEVAREZ HAVE BEEN CLASS

19    REPRESENTATIVES IN OTHER ACTIONS.

20         THE COURT:  I SEE.  AND MS. PRISCILLA NEVAREZ IS NOT

21    HERSELF DISABLED, SO IS THERE A 100 PERCENT OVERLAP BETWEEN HER

22    12 ADA CASES AND HER HUSBAND'S 13 ADA CASES?

23         MS. FISHER:  THAT'S CORRECT, YOUR HONOR.

24         THE COURT:  ALL RIGHT.  THANK YOU.

25         WELL, I AM FINE WITH GRANTING THE REQUEST FOR A $5,000

1    SERVICE AWARD TO EACH OF THE THREE OF THEM.

2          DOES ANYONE WANT TO ADD ANYTHING MORE ON THAT SCORE?

3          MR. WALLACE:  NO, YOUR HONOR.  THANK YOU.

4          THE COURT:  OKAY.  LET'S GO TO THE INJUNCTIVE RELIEF.

5    I SAW IN THE SCHRAIBMAN DECLARATION THAT IT'S POSSIBLE

6    THAT COVID-19 MAY CAUSE SOME DELAYS IN THE COMPLETION,

7    POTENTIALLY, OF ANY REMEDIATION AT LEVI'S STADIUM, AND SO I'M

8    JUST WONDERING, WHAT IMPACT WILL THAT HAVE ON THE AGREEMENT,

9    WHICH ANTICIPATES THAT ALL OF THE IMPROVEMENTS WOULD BE MADE IN

10   THREE YEARS FROM FINAL APPROVAL AND THAT YOU ALL WOULD BE ABLE

11   TO CONFIRM THE REMEDIATIONS SIX MONTHS AFTER THAT AND FILE A

12   MOTION FOR COMPLETION?

13   I DON'T KNOW IF THE SETTLEMENT AGREEMENT PROVIDES FOR SOME

14   TYPE OF FORCE MAJEURE OR SOMETHING TO ALLOW THOSE DEADLINES TO

15   BE EXTENDED.

16   WHAT WAS YOUR THINKING IN CASE THE CLOSURE OF THE STADIUM

17   AND SOCIAL DISTANCING PREVENTS THE TIMELINE THAT YOU HAD

18   ENVISIONED FROM ACTUALLY BEING ACHIEVED?

19          MR. WALLACE:  YOUR HONOR, IF THERE IS A PROBLEM WITH

20    IMPLEMENTING THE CONSTRUCTION, I THINK THAT, AS I RECALL -- I

21    HOPE I'M GETTING THIS RIGHT -- FEDERAL RULE OF CIVIL PROCEDURE

22    16(B)(5) ALLOWS FOR MODIFICATIONS OF CLASS ACTION SETTLEMENTS

23    OR JUDGMENTS FOR EVENTS THAT ARE UNFORESEEN.

24          AND THIS -- YOU KNOW, IF IT REALLY IS A COVID PROBLEM THAT

25    SLOWS THE CONSTRUCTION, IT WOULD SEEM THAT THIS WOULD QUALIFY

```
 1        FOR THAT, AND WE WOULD MEET AND CONFER WITH THE DEFENDANTS
 2        ABOUT THE CIRCUMSTANCES AND HOPEFULLY ARRIVE AT SOME SORT OF
 3        JOINT PROPOSAL ABOUT A REASONABLE EXTENSION OF THE TIMELINE TO
 4        DO THE WORK.
 5             BUT WE HAVE NOT HEARD, ON OUR SIDE SO FAR FROM DEFENDANTS,
 6        THAT THERE'S A SLOW DOWN AT THIS POINT.
 7                  THE COURT:  AND I'LL JUST NOTE THAT IN SECTION 16 OF
 8        THE SETTLEMENT AGREEMENT, IT DOES SAY "NOTHING IN THIS SECTION
 9        SHALL BAR CLASS COUNSEL FROM MOVING FOR AN EXTENSION OF THE
10        AGREEMENT TO ENFORCE ANY OF ITS OBLIGATIONS."  SO THERE IS A
11        MECHANISM FOR YOU ALL.
12             I WOULD HOPE THAT IF THAT IS THE CASE, THAT YOU ALL COULD
13        STIPULATE TO AN EXTENSION AND NOT REQUIRE LITIGATION ON THAT
14        ISSUE.
15             BUT GO AHEAD, PLEASE.  I DON'T KNOW WHETHER DEFENDANTS
16        WANT TO ADD ANYTHING ON WHETHER COVID IS AFFECTING THE
17        REMEDIATION TIMELINE.
18                  MS. LAMPASONA:  YOUR HONOR, REMEDIATION EFFORTS ARE
19        UNDERWAY.
20             WE DID HAVE A CONVERSATION WITH PLAINTIFFS' COUNSEL
21        RECENTLY ABOUT THE CHALLENGES THAT ARE BEING PRESENTED TO THE
22        CITY OF SANTA CLARA FROM BOTH A SCHEDULING POINT OF VIEW DUE TO
23        COVID SOCIAL DISTANCING, AND ALSO A BUDGETARY POINT OF VIEW DUE
24        TO THE BUDGET SHUTDOWN.  WE ARE STILL OPTIMISTIC THAT WE'RE
25        GOING TO BE ABLE TO WORK WITHIN THE DEADLINES SET IN THE
```

```
1        SETTLEMENT AGREEMENT.

2            WITH REGARD TO THE FORTY NINERS DEFENDANTS, SAME CONCERN,

3    THE SAME CONCERN OF KIND OF SLOW MOVING GIVEN THAT LARGE GROUPS

4    OF PEOPLE AND ENGINEERS AND SUCH CAN'T GET TOGETHER AT THE

5    STADIUM LIKE WE HAD BEEN DOING PRIOR TO THE SHUTDOWN.  SO WE

6    HAD BEEN MAKING PROGRESS BEFORE THIS ALL HAPPENED.

7            SO I DO THINK THE CONVERSATIONS THAT I'VE HAD WITH

8    PLAINTIFFS' COUNSEL, ESPECIALLY ABOUT THE CHALLENGES WITH THE

9    CITY OF SANTA CLARA, ARE NOT INSURMOUNTABLE AND WE WOULD BE

10   ABLE TO STIPULATE TO SOME SORT OF EXTENSION IF THAT BECOMES

11   NECESSARY.

12           SAME THING WITH THE FORTY NINERS.  I HAVE NO CONCERNS

13   THAT -- I HAVE CONCERNS THAT WE'LL BE ABLE TO MEET THE

14   DEADLINES JUST GIVEN THE CURRENT SITUATION, BUT I HAVE NO

15   CONCERNS THAT THE PARTIES WILL NOT BE ABLE TO WORK OUT A

16   REASONABLE EXTENSION IF IT'S NECESSARY.

17           BUT I CAN REPRESENT TO THE COURT THAT ALL OF THE

18   DEFENDANTS ARE ENGAGING IN REMEDIATION EFFORTS TO THE EXTENT

19   POSSIBLE CURRENTLY, AND HAVE BEEN IN AN EFFORT TO TRY TO COMPLY

20   WITH THE DEADLINES AS CURRENTLY SET.

21               THE COURT:  OKAY.  THANK YOU.

22               MR. CREECH:  THIS IS RANDY CREECH.

23               THE COURT:  GO AHEAD, PLEASE.

24               MR. CREECH:  TO FURTHER SUPPLEMENT THAT, THAT FACTORS

25    AND REPRESENTATIVES OF THE FORTY NINERS WERE ACTUALLY OUT AT
```

1    THE STADIUM YESTERDAY VERY SAFELY, VERY SOCIALLY DISTANCED WITH

2    MASKS WORKING ON REMEDIATION EFFORTS.

3            THE COURT:  OKAY, GREAT.  THANK YOU.

4        I -- YOU KNOW, I HOPE THAT THEY BOTH HAVE THE PUBLIC

5    HEALTH ABILITY AND THE FINANCIAL ABILITY TO COMPLETE THE

6    REMEDIATION THAT IS SET FORTH IN THE SETTLEMENT AGREEMENT.  SO

7    THANK YOU.  THAT'S GOOD NEWS TO HEAR THAT'S ON TRACK.

8            AND I'M ASSUMING, MR. -- I APOLOGIZE FOR GETTING UP.  I'M

9    IN A TINY SPACE AND I HAVE ALL THESE BINDERS.

10           I'M ASSUMING, MR. WALLACE, THAT THE PLAINTIFFS, YOU ALL

11   WILL BE REASONABLE IF A JUSTIFIED EXTENSION IS NECESSARY BASED

12   ON COVID-19.

13           MR. WALLACE:  YES.

14           THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

15       OKAY.  SO THAT'S IT.

16       SO THE LAST TOPIC I WANTED TO COVER ARE THE ATTORNEYS'

17   FEES AND COSTS.

18       LET ME ASK, THE PLAINTIFFS FILED A NINE PAGE ERRATA FIXING

19   14 DIFFERENT DOCUMENTS, AND I WAS JUST WONDERING, WHAT WAS THE

20   REASON FOR THAT?  I HAD NOT SEEN THAT BEFORE, YOU KNOW, WHY

21   YOUR COST NUMBERS CHANGED.  OTHER THAN THESE LITTLE TYPO

22   CHANGES, WHY DID YOU THINK THAT WAS NECESSARY AND WHY WAS IT SO

23   LATE?  IT WAS FILED MONTHS AFTER YOU --

24       CAN YOU PLEASE PUT YOURSELF ON MUTE IF YOU'RE NOT

25   SPEAKING, BECAUSE THERE'S FEEDBACK.

```
1              THANK YOU.
2                   MR. WALLACE:  FOR PLAINTIFFS, YOUR HONOR, I THINK
3        MR. JOHNSON IS PROBABLY BEST TO ADDRESS THAT.
4              BUT THERE WERE SOME INVOICES THAT WE HAD ACCIDENTALLY
5        OMITTED FROM THE ORIGINAL FILING, BUT WE ULTIMATELY TRACKED
6        THEM DOWN AND WE WANTED TO BE ABLE TO PROVIDE THEM TO THE
7        COURT.
8              AND THEN OTHER THAN THAT, THERE ACTUALLY WERE JUST SOME
9        SORT OF TYPOS IN MY DECLARATION ACTUALLY THAT WERE FIXED.
10             BUT REALLY, THE KEY THING WAS THAT THERE WERE SOME
11       ADDITIONAL INVOICES THAT WE HAD, YOU KNOW, ERRONEOUSLY OMITTED
12       THAT WE FOUND.
13             AND I BELIEVE MR. JOHNSON -- THE AMOUNT THAT IT CHANGED
14       THE COSTS WAS REALLY QUITE MODEST.  I THINK IT WAS MAYBE A FEW
15       THOUSAND DOLLARS.
16                  MR. JOHNSON:  YES, I CAN SPEAK TO THAT, YOUR HONOR.
17             THIS IS MARK JOHNSON.
18                  THE COURT:  ALL RIGHT.
19             CAN EVERYONE PUT THEMSELVES ON MUTE?
20                  THE CLERK:  MR. JOHNSON -- OKAY, THANK YOU.
21                  MR. JOHNSON:  YES, YOUR HONOR.
22             THE ISSUE WITH THE ERRATA WAS ALMOST EXCLUSIVELY RELATED
23       TO COSTS, AS MR. WALLACE SAID.  THERE WERE A FEW MINOR THINGS
24       IN HIS DECLARATION THAT WE CHANGED, BUT EVEN MANY OF THOSE WERE
25       RELATED TO THE -- TO CERTAIN DISCREPANCIES THAT WE FOUND AFTER
```

1    THE ORIGINAL FILING WITH COSTS.

2         MOST OF THOSE WERE MINOR.  WE NEEDED TO EXCLUDE SOME

3    ITEMS, FOR EXAMPLE, THAT WE, IT TURNED OUT, DIDN'T HAVE

4    DOCUMENTATION FOR.

5         THERE WERE A COUPLE OF MAJOR EXPENSE ITEMS THAT WERE --

6    THAT TURNED OUT TO OFFSET ONE ANOTHER, BUT WE FELT CERTAINLY

7    WITH THE SIZE OF THEM, IT WAS NECESSARY TO BRING THEM TO THE --

8    TO CORRECT THEM ON THE RECORD.  ONE OF THOSE WAS THE FACT THAT

9    WE HAD DOUBLE BILLED FOR AN EXPENSE THAT WE HADN'T REALIZED

10   THAT IT HAD BEEN CREDITED, AN OVERPAYMENT THAT HAD ALREADY BEEN

11   CREDITED AGAINST ANOTHER BILLING BY THE SAME VENDOR.

12        THE OTHER ONE WAS A VENDOR THAT WE HAD OMITTED A BILL FOR,

13   AND IT WAS ABOUT THE SAME SIZE, AND SO THOSE OFFSET ONE

14   ANOTHER.

15        AND AS YOUR HONOR HAS SEEN, THE RESULT -- THE TOTAL RESULT

16   DIDN'T REALLY DIFFER THAT MUCH FROM OUR ORIGINAL FILING TO THE

17   FINAL FILING.

18        AND IN TERMS OF THE TIME, I PERSONALLY WAS INVOLVED IN

19   TRYING TO DO ALL THE RECONCILIATION THAT WAS NECESSARY, AND

20   PART OF THAT WAS THE FACT THAT THE THREE FIRMS THAT SHARED

21   COSTS IN THIS MATTER HAD DIVIDED UP THINGS KIND OF ON A, AN AD

22   HOC BASIS, AND SO IT WAS VERY DIFFICULT TO RECONCILE ALL OF THE

23   RECEIPTS AND FIX THE DISCREPANCIES THAT WE ULTIMATELY

24   IDENTIFIED AND PREPARE THE ERRATA CORRECTING ALL OF THOSE.

25        SO WE CERTAINLY APOLOGIZE TO THE COURT FOR THE CONFUSION

1    THAT AROSE FROM HAVING TO SUBMIT SUCH A LENGTHY ERRATA, BUT WE

2    WANTED TO BE, YOU KNOW, AS ACCURATE AS POSSIBLE AND NOT HAVE

3    THOSE ORIGINAL ERRORS TO BE FILED AND REMAIN IN THE RECORD.

4            THE COURT:  OKAY.  WELL, AS I SAID IN MY PRIOR ORDER,

5    I CANNOT -- YOUR OVERALL BOTTOM LINE WAS YOU INCREASED THE

6    AMOUNT OF COSTS THAT YOU WERE REQUESTING, AND THAT -- IT IS TOO

7    LATE FOR THE CLASS MEMBERS TO BE ABLE TO OBJECT TO THAT.  OUR

8    PROCEDURAL GUIDANCE FOR CLASS ACTION SETTLEMENTS REQUIRES US TO

9    GIVE 35 DAYS TO CLASS MEMBERS TO OBJECT TO A MOTION FOR

10   ATTORNEYS' FEES AND COSTS, SO I CAN'T HONOR THAT INCREASE.

11   OKAY?

12           MR. JOHNSON:  YES, YOUR HONOR.  WE UNDERSTOOD THAT TO

13   BE THE COURT'S RULING PREVIOUSLY, AND I HOPE WE MADE CLEAR IN

14   OUR PAPERS THAT WE WERE NOT ASKING THE COURT TO AWARD MORE IN

15   COSTS THAN WE HAD ORIGINALLY ASKED FOR, EVEN THOUGH THE PAPERS

16   THAT WE SUBMITTED IN THE FINAL FILING SHOWED THAT.

17           THE COURT:  SO I SAW THAT THE RICHARD PEARL

18   DECLARATION TO SUPPORT YOUR ATTORNEYS' FEES REQUEST COST ABOUT

19   $30,000.

20       HOW MUCH DID THE JOSE ALLEN AND STEVEN SCHRAIBMAN

21   DECLARATION COST, AND ARE YOU ALSO BILLING THOSE TO THE CLASS?

22   THOSE WERE ALSO SUBMITTED IN SUPPORT OF YOUR ATTORNEYS' FEES

23   REQUEST.

24           MR. WALLACE:  THE DECLARATION OF JOSE ALLEN, THERE IS

25   NO COST ASSOCIATED WITH THAT, YOUR HONOR.

1       MR. SCHRAIBMAN'S WORK IN TERMS OF PREPARING THE MINIMUM

2    CONSTRUCTION COSTS ESTIMATE I BELIEVE WAS SOMEWHERE AROUND $25-

3    TO $30,000.

4            THE COURT:  AND THAT IS -- WHAT IS INCLUDED IN THE

5    SERVICES PROVIDED FOR THAT AMOUNT AGAIN, PLEASE?

6            MR. WALLACE:  HE WENT THROUGH THE 2,975 BARRIER ITEMS

7    AND LOOKED AT THE ATTENDANT REMEDIAL WORK FOR ALL OF THOSE AND

8    PREPARED A MINIMUM COST ESTIMATE OF THE CONSTRUCTION WHICH, AS

9    I RECALL OFF THE TOP OF MY HEAD, WAS RIGHT AROUND $11 MILLION.

10           THE COURT:  OH, I'M SORRY TO INTERRUPT YOU.

11      I'M ASKING, HOW MUCH DID HIS DECLARATION -- HE PREPARED --

12   OR YOU ALL PREPARED AND HE SIGNED A DECLARATION JUST FOR THE

13   ATTORNEYS' FEES MOTION.  THAT'S WHAT I'M ASKING ABOUT, NOT HIS

14   WORK FOR THE ENTIRE CASE.

15           MR. WALLACE:  AND THAT'S WHAT I WAS REFERRING TO,

16   YOUR HONOR.  THE DECLARATION WAS PROFFERED TO PROVIDE THE COURT

17   WITH INFORMATION ABOUT THE MINIMUM COSTS OF IMPLEMENTING THE

18   ACCESS WORK.

19           THE COURT:  SO THERE WAS NO SEPARATE COST FOR -- HE

20   CALLS IT A DECLARATION IN SUPPORT OF THE MOTION FOR ATTORNEYS

21   'FEES.  THERE WAS NO COST?  IT WAS JUST INCLUDED IN WHAT HE WAS

22   ALREADY CHARGING FOR THE EXPERT WORK HE WAS DOING?  IS THAT

23   YOUR POINT?

24           MR. WALLACE:  THE ONLY CHARGE THAT WE HAVE IS

25   ASSOCIATED WITH THAT DECLARATION, AND THE UNDERLYING WORK WAS

1    PREPARING THE COST ESTIMATE.

2         YOU KNOW, YOUR HONOR, IT'S -- WE -- IT'S NOT AN ITEM THAT

3    I FEEL LIKE WE DEEPLY NEED TO RECOVER FOR.  MY FIRM CAN JUST

4    COVER THAT IF THAT MAKES IT EASIER.

5         THE COURT:  WELL, I'M JUST -- I'M ASKING -- I'M

6    ASKING QUESTIONS.  I JUST WANT TO UNDERSTAND.

7         MR. WALLACE:  OKAY.

8         THE COURT:  SO IF I UNDERSTAND THIS CORRECTLY, SO HE

9    DID WORK TO QUANTIFY THE COST OF THE REMEDIATION EFFORTS, AND

10   THEN HE SUBMITTED A DECLARATION IN SUPPORT OF YOUR ATTORNEYS'

11   FEES MOTION, BUT HE'S NOT CHARGING SEPARATELY FOR THAT

12   ATTORNEYS' FEES MOTION DECLARATION, IT'S JUST PART OF HIS WORK

13   FOR THE CASE.  IS THAT CORRECT?  OR WAS HIS ONLY ROLE TO HELP

14   YOU ON THE ATTORNEYS' FEES?

15        MR. WALLACE:  THE ONLY ROLE IS TO ASSESS THE EVIDENCE

16   FOR THE FEE MOTION, YOUR HONOR.

17        THE COURT:  I SEE.

18        MR. WALLACE:  YEAH.

19        THE COURT:  I SEE.  OKAY.  ALL RIGHT.  SO IT SOUNDS

20   LIKE THEN THE EXPERT COSTS ARE ABOUT $55- TO $60,000 IN THESE

21   EXPERT DECLARATIONS IN SUPPORT OF YOUR FEES MOTION.

22        SO I'M NOT SAYING I'M NOT GOING TO APPROVE IT, BUT WHAT IS

23   THE RATIONALE FOR THE CLASS PAYING FEES TO GET YOUR FEES?

24        MR. WALLACE:  OH, I THINK, YOUR HONOR, THE RATIONALE

25   WOULD SIMPLY BE THAT OUR UNDERSTANDING OF THE CASE LAW

1      TRADITIONALLY IS THAT FEES ON FEES ARE RECOVERABLE.  AND, FOR

2      EXAMPLE, THE PEARL DECLARATION WOULD BE PART OF FEES ON FEES.

3              THE COURT:  LET ME ASK, DID YOU HAVE ANY ATTORNEYS

4      WHO ARE CONTRACT ATTORNEYS OR PAID BY THE HOUR?  I'LL JUST ASK

5      SPECIFICALLY ABOUT -- WELL, LET ME ASK FOR ALL THE FIRMS

6      INVOLVED.  DID YOU HAVE ANY CONTRACT ATTORNEYS DOING DOCUMENT

7      REVIEW OR SOMEONE THAT YOU PAID BY THE HOUR FOR DOING ANYTHING

8      ELSE ON THE CASE?

9              MR. WALLACE:  RIGHT.  WE DID -- WE DID NOT HAVE ANY

10     CONTRACT ATTORNEYS DOING THAT, YOUR HONOR.

11         WE DID HAVE THREE STAFF ATTORNEYS WHO WERE DOING THAT, AND

12     THEIR NAMES ARE EDGAR OLIVARES, JUSTIN PROCTOR, AND

13     RYAN BONNER, AND THEY WERE PAID HOURLY.  BUT THEY ARE STAFF

14     ATTORNEYS WITH MY FIRM.

15             THE COURT:  AND I KNOW THAT SOME PEOPLE CALL CONTRACT

16     ATTORNEYS STAFF ATTORNEYS.  YOU PAY THEM BY THE HOUR?  THAT'S

17     THE REAL ESSENCE OF IT.

18             MR. WALLACE:  WE DO.

19             THE COURT:  SO WHAT IS THE MARKUP ON -- YOU KNOW, I

20     WAS INTERESTED IN THAT YOU'RE CHARGING FOR THESE, EFFECTIVELY,

21     CONTRACT BILLERS, LIKE, $625 AN HOUR TO DO DOCUMENT REVIEW.

22         I DON'T KNOW IF YOU'VE SEEN MY PRIOR DECISIONS, BUT I --

23     YOU KNOW, MOST OF THESE CONTRACT ATTORNEYS ARE MAKING $25, $35

24     AN HOUR, SO I DON'T ALLOW THE PROFIT ON THOSE INDIVIDUALS TO

25     BE, LIKE, $600 AN HOUR.  I DON'T PERMIT THAT.

1          AS IN MY <u>ANTHEM DATA BREACH</u> ORDER, I ALLOWED IT TO BE $240

2     FOR THE -- YOU KNOW, THAT'S STILL A CONSIDERABLE MARKUP,

3     BECAUSE THESE PEOPLE ARE GENERALLY MAKING LESS THAN $35 AN

4     HOUR.

5          AND, YOU KNOW, SAME WITH THE <u>YAHOO! DATA BREACH</u>.  THEY'RE

6     ONLY ASKING FOR $240 AN HOUR FOR PEOPLE WHO ARE BEING BILLED

7     OUT AT THESE COMPARABLE NUMBERS.

8          SO WHAT -- I JUST DON'T SEE WHY THE MARKUP SHOULD BE SO

9     DRAMATIC.

10          DO YOU WANT TO FILE UNDER SEAL HOW MUCH THESE THREE ARE

11     BEING PAID PER HOUR?  WHAT'S THE MARKUP ON THEM?

12          MR. WALLACE:  THE MARKUP IS -- I THINK THEY ARE BEING

13     PAID $30 AN HOUR, YOUR HONOR, AND SO, YES, THAT WOULD BE A

14     MARKUP TO THE $625 HOURLY RATE.

15          THE COURT:  I JUST AM NOT SURE WHY CONTRACT DOCUMENT

16     REVIEWERS GETTING PAID $30 AN HOUR SHOULD BE BILLED OUT AT

17     $625.  I MEAN, SOME OF THEM ARE EVEN HIGHER.  I THINK --

18          MR. WALLACE:  I'M NOT AWARE OF ANY THAT ARE HIGHER

19     THAN THAT, YOUR HONOR.

20          MR. PROCTOR AND MR. OLIVARES ARE 13TH YEAR ATTORNEYS AND

21     THEY HAVE EXTENSIVE EXPERIENCE IN THE ANALYSIS OF DOCUMENTS, IN

22     PARTICULAR CONSTRUCTION DOCUMENTS, FOR LARGE ACCESS CASES LIKE

23     THIS ONE.  SO THERE'S SIGNIFICANT EXPERTISE THAT THEY BRING TO

24     BEAR.

25          THEY PREPARED ANALYSIS MEMOS OF THE VOLUMINOUS DOCUMENT

1    PRODUCTION IN THIS CASE THAT WAS LARGELY MADE WITHOUT BATES

2    NUMBERS AND ARRIVED TO US EN MASS, AND OUT OF THAT, BY

3    RESEARCHING THE DOCUMENTS AND ANALYZING THEM, THEY WERE ABLE TO

4    GENERATE THE DOCUMENTS THAT WE USED FOR DEPOSITION EXHIBITS.

5         SO THEIR ROLE WAS VERY IMPORTANT, YOUR HONOR, AND THEY DO

6    VERY GOOD WORK.

7              THE COURT:  WELL, I'M NOT AT ALL DOUBTING THAT

8    THEY'RE NOT GOOD ATTORNEYS WHO ARE NOT MAKING VALUABLE

9    CONTRIBUTIONS.

10        SO WHAT IS THE TOTAL AMOUNT OF -- AND I GUESS I COULD JUST

11   DO THE CALCULATION OF HOW MANY HOURS DID THEY WORK, WHAT'S THE

12   TOTAL --

13             MR. WALLACE:  THAT SHOULD BE POSSIBLE TO DETERMINE BY

14   LOOKING AT THE CHART AT THE BACK OF THE FEE BRIEF, YOUR HONOR.

15        DO YOU HAVE THAT, MARK?

16             THE COURT:  I DO HAVE IT AND I KNOW WHAT YOU'RE

17   TALKING ABOUT.

18             MR. WALLACE:  AND THE THREE ATTORNEYS ARE -- IT IS --

19             THE COURT:  IT DOESN'T SAY HOW MANY HOURS THEY

20   WORKED.  THIS CHART JUST SAYS 625 IS BEING CHARGED FOR

21   MR. OLIVARES AND MR. PROCTOR, 575 FOR MR. STEWART.

22        I MEAN, I LOOKED AT YOUR BILLING RECORDS.  I COULD TELL

23   THEY WERE ALL CONTRACT ATTORNEYS.

24             MR. WALLACE:  YOU'RE RIGHT.  YOUR HONOR, THEIR TOTAL

25   NUMBER OF HOURS WOULD BE IN THE CHART THAT'S AT THE BACK OF THE

1    BRIEF, AND IT'S JUSTIN PROCTOR, EDGAR OLIVARES, AND RYAN BONNER

2    WHICH FIT THIS CATEGORY OF BEING HOURLY FOR THEIR WORK ON THE

3    CASE.

4           THE COURT:  OKAY.  NOW IS THERE ANYONE AT EITHER

5    GOLDSTEIN OR PEIFFER WOLF THAT IS SIMILARLY SITUATED?

6           MR. WOLF:  LINDA, YOU GO FIRST.

7           MS. DARDARIAN:  NO, YOUR HONOR.  THE ONLY PERSON FROM

8    GOLDSTEIN BORGEN WHO DID DOCUMENT REVIEW WHO WAS NOT A REGULAR

9    ASSOCIATE WAS OUR SUMMER LAW CLERK, MENGFEI SUN.

10          THE REPORTER:  I'M SORRY.  CAN YOU REPEAT THAT NAME

11   PLEASE, AND SPELL IT?

12          MS. DARDARIAN:  OH.  MENGFEI, M-E-N-G-F-E-I, LAST

13   NAME SUN, S-U-N.

14      SHE DID SOME DOCUMENT REVIEW IN ADDITION TO OTHER TASKS ON

15   THE CASE WHILE SHE WAS A SUMMER ASSOCIATE AT THE LAW FIRM.

16          THE COURT:  AND HOW MUCH DID YOU BILL HER OUT AT?

17   $300 AN HOUR?  IS THAT THE NUMBER I SAW?

18          MS. DARDARIAN:  YES, IT WAS EITHER -- YES, 300 AN

19   HOUR.

20          THE COURT:  OKAY.  SO THAT'S THE ONLY ONE YOU HAVE IS

21   A SUMMER ASSOCIATE.  WAS SHE A 1L OR 2L?

22          MS. DARDARIAN:  2L.

23          THE COURT:  OKAY.

24          MS. DARDARIAN:  SHE ALSO DID LEGAL RESEARCH AND SOME

25   DEPOSITION SUMMARIES IN ADDITION TO DOING DOCUMENT REVIEW ON

1       THE CASE AT THAT TIME.

2               THE COURT:  WHAT ABOUT PEIFFER WOLF?

3               MR. WOLF:  GOOD AFTERNOON, YOUR HONOR.  THIS IS

4       ADAM WOLF.

5           NO, ALL OF OUR PEOPLE WERE FULL-TIME SALARIED INDIVIDUALS.

6               THE COURT:  OKAY.  ALL RIGHT.  SO, YOU KNOW, I --

7           (PAUSE IN PROCEEDINGS.)

8               THE COURT:  SO LET ME ASK -- I'LL MAYBE JUST GO TO

9       MR. WALLACE SINCE IT SOUNDS LIKE THIS IS ONLY APPLICABLE TO HIS

10      FIRM.

11          IF I LOOK AT THIS -- LET'S GO TO MR. OLIVARES.  HE WORKED

12      242.4 HOURS, HE MADE $7,272, BUT YOU BILLED HIM OUT AT

13      $151,500.  THE MARKUP IS $144,228.

14          I MEAN, I AGREE THAT YOU'RE ENTITLED TO GET SOME PROFIT ON

15      HIS WORK BECAUSE YOU'VE TRAINED HIM, YOU'RE SUPERVISING HIM,

16      YOU'RE PROVIDING THE INFRASTRUCTURE FOR HIM TO DO THE WORK.

17              BUT DOES THAT SEEM LIKE A BIG MARKUP TO YOU?

18              MR. WALLACE:  IT DOES, YOUR HONOR.  YOU KNOW, IF --

19      AT OUR FIRM, WE'RE AMENABLE TO THE TYPE OF APPROACH THAT YOU

20      TOOK TO THIS ISSUE IN THE ANTHEM DATA BREACH ORDER.

21              THE COURT:  OKAY.  BECAUSE I'M --

22              MR. WALLACE:  I DON'T WANT THIS TO BECOME A BIG

23      STICKING POINT IN TERMS OF TRYING TO BRING US TO A RESOLUTION

24      TODAY.

25              THE COURT:  OH, AND I DON'T MEAN THIS TO BE A

1    STICKING POINT.  I'M JUST TRYING TO FIGURE OUT WHAT THE RIGHT

2    NUMBER IS FOR THE ATTORNEYS' FEES.

3         AND I'LL JUST NOTE FOR -- FOR MR. PROCTOR, THE MARKUP IS

4    $883,813.  IT'S QUITE A BIT BECAUSE HE WORKED ALMOST 1500

5    HOURS.

6         MR. WALLACE:  HE WAS THE PRIMARY DOCUMENT ANALYSIS

7    ATTORNEY REALLY ON PLAINTIFFS' SIDE FOR THE CASE.

8         THE COURT:  YEAH.  AND IF I LOOK AT MR. STEWART, THE

9    MARKUP WAS $224,447.50.

10         SO WE'RE TALKING ABOUT MORE THAN A MILLION DOLLARS WORTH

11    OF MARKUP HERE, AND I -- I THINK THAT'S A LOT.  ACTUALLY, THE

12    TOTAL MARKUP IS $1,252,488.50.

13         SO I DON'T KNOW.  DOES ANYONE WANT TO COMMENT ON THAT?  IT

14    DOES -- THAT'S A LOT OF -- THAT'S A LOT OF PROFIT.

15         ANYONE WANT TO COMMENT ON THAT?

16         MR. WALLACE:  I DON'T THINK THAT IN PARTICULAR WE

17    HAVE MORE TO ADD.

18         WE DID ALSO, OF COURSE, EXERCISE SIGNIFICANT BILLING

19    JUDGMENT AS WELL.

20         THE COURT:  OKAY.  ALL RIGHT.

21         SO FROM WHAT I CAN TELL, YOU'RE -- BECAUSE THE SETTLEMENT

22    AGREEMENT CAPS THE TOTAL AMOUNT OF FEES AND COSTS BASED ON YOUR

23    LODESTAR, WHICH DOES INCLUDE THIS LARGE MARKUP FOR THESE THREE

24    ATTORNEYS.  YOU ARE -- IT LOOKS LIKE YOU'RE REQUESTING AN EXTRA

25    $653,289.24.  IS THAT CORRECT?

1          MR. WALLACE:  AN EXTRA?  OH, IN TERMS OF GETTING UP

2    TO THE CAP?

3          THE COURT:  THAT'S CORRECT.

4          MR. WALLACE:  I -- THAT SOUNDS RIGHT.

5          THE COURT:  OKAY.

6          MR. WALLACE:  I MEAN, MR. WOLF IS ACTUALLY THE

7    ATTORNEY THAT PREPARED THE FEE MOTION, YOUR HONOR.

8          THE COURT:  I SEE.  OKAY.  THANK YOU FOR LETTING ME

9    KNOW THAT.

10         IS THAT RIGHT?  I'M JUST TRYING TO UNDERSTAND.  BEYOND

11   WHAT YOU SAY IS YOUR LODESTAR AND THE COSTS, THAT IS THE DELTA

12   THAT WOULD GET YOU TO THE CAP IN THE SETTLEMENT AGREEMENT?  IS

13   THAT CORRECT?

14         MR. WOLF:  IT SOUNDS LIKE THAT IS CORRECT THAT THAT

15   IS THE DELTA BETWEEN THE DOWNWARD ADJUSTED LODESTAR AND WHAT

16   YOUR HONOR JUST CALCULATED AS THE, I DON'T KNOW, EXCESS AMOUNT,

17   IF YOU WILL, FOR THE CONTRACT OR STAFF ATTORNEYS.

18         THE COURT:  OKAY.

19         MR. WOLF:  I WILL SAY THAT THE WAY THAT WE HAVE

20   FRAMED THE FEE MOTION, THOUGH, IS THAT WE TOOK OUR DOWNWARD

21   ADJUSTED LODESTAR, MULTIPLIED WHAT WE THOUGHT WAS A REASONABLE

22   MULTIPLIER, THAT CAME TO -- WITH OUR COSTS THEN, THAT CAME TO

23   ABOUT 18.6 MILLION.

24         BUT THEN WE SAID, BUT WE'RE ONLY ASKING FOR --

25         THE COURT:  WAIT.  YOUR MULTIPLIER SAID, WELL, WE GET

1    50 PERCENT OF OUR LODESTAR.  I MEAN, YOU KNOW, IT'S A LITTLE

2    BIT OF VOODOO ECONOMICS.  I KIND OF DON'T LIKE SAYING, WELL,

3    THIS IS OUR LODESTAR, BUT WE'RE ENTITLED TO 50 PERCENT AS MUCH

4    ON TOP, SO WE'RE REALLY ENTITLED TO 18 MILLION.  BUT THEN WE'RE

5    REALLY JUST GOING TO ASK FOR 11 MILLION AND THEN THE COSTS AND

6    THEN GIVE US THIS EXTRA AND THEN WE WOULD REACH THE CAP.

7         I MEAN, IT MADE THE MOTION CONFUSING, FRANKLY.

8         MR. WOLF:  I'M SORRY.  WE CERTAINLY DID NOT MEAN TO

9    CAUSE ANY CONFUSION, YOUR HONOR.

10        WE WERE JUST TRYING TO SAY THAT WE THOUGHT THAT, YOU KNOW,

11   UNDER A TRADITIONAL ANALYSIS, THAT WE WERE ENTITLED TO ASK FOR

12   APPROXIMATELY 18.6 MILLION, BUT THEN --

13        THE COURT:  AND THAT WAS BECAUSE -- I'M SORRY TO

14   INTERRUPT YOU -- BECAUSE YOU THINK YOU'RE ENTITLED TO 50

15   PERCENT OF YOUR LODESTAR, ON TOP OF YOUR LODESTAR?

16        MR. WOLF:  CORRECT, AT 1.8.

17        THE COURT:  OKAY.  BUT WHAT YOU'RE ASKING FOR, THE

18   DELTA, THE 653, THAT WOULD BE A MULTIPLIER OF 1.05?  IS THAT

19   RIGHT, ROUGHLY?

20        MR. WOLF:  I GUESS THAT'S --

21        THE COURT:  OKAY.

22        MR. WOLF:  I THINK THAT'S RIGHT, YOUR HONOR.

23        THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

24        LET ME ASK -- AND YOU DID -- YOU HAD APPLIED FOR A TRO

25   SEEKING TO ENJOIN THE MEDIATION OF THE FIRST FILED CASE, AND I

1    SAID YOU WERE NOT ALLOWED TO SEEK FEES FOR THAT BECAUSE THAT

2    COULD HAVE ALLOWED FOR THE INJUNCTIVE RELIEF TO BE IMPLEMENTED

3    SOONER AT THE STADIUM.

4         HOW MUCH OF THE -- HOW MUCH MONEY DID YOU TAKE OUT FOR

5    THAT TRO?

6              MR. WALLACE:  I THINK APPROXIMATELY $50,000 OR SO.

7              THE COURT:  OKAY.

8              MR. WALLACE:  WE GOT ALL OF IT OUT OF THERE, THOUGH,

9    I'M PRETTY SURE.

10             THE COURT:  ALL RIGHT.

11        MR. WOLF, WERE YOU -- WHAT WERE YOU GOING TO SAY?  YOU

12   LOOKED LIKE YOU WERE GOING TO SAY SOMETHING.

13             MR. WOLF:  THANK YOU, YOUR HONOR.

14        I WAS JUST SAYING -- I WAS JUST CONFIRMING FOR YOU THAT

15   THE LODESTAR FIGURE WE HAVE CALCULATED AND GIVEN TO YOUR HONOR

16   AND THE TIME THAT SUPPORTED THAT DO NOT INCLUDE ANY WORK ON

17   THAT ISSUE.

18             THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

19        OKAY.  I THINK I HAVE EXHAUSTED MY LIST OF QUESTIONS.  I'M

20   PLEASED THAT THE PARTICIPATION RATE HAS BEEN VERY HIGH AND THAT

21   THE CLASS MEMBERS ARE GOING TO GET REALLY MEANINGFUL -- THIS IS

22   A SIGNIFICANT DAMAGES AWARD AND THERE'S GOING TO BE EXTENSIVE

23   REMEDIATION, SO INJUNCTIVE RELIEF AS WELL.

24        SO I DO INTEND TO GRANT FINAL APPROVAL AND GRANT THE

25   $5,000 IN SERVICE AWARDS.

```
 1          I DO WANT TO LOOK A LITTLE BIT MORE AT THE ATTORNEYS' FEES
 2   QUESTION.  I MEAN, OBVIOUSLY I WILL AWARD ATTORNEYS' FEES.  I
 3   JUST DO WANT TO LOOK AT THE NUMBERS A LITTLE BIT.
 4          IS THERE ANYTHING MORE FOR TODAY?  BECAUSE I BELIEVE THAT
 5   IS MY FULL COMPLEMENT OF QUESTIONS.
 6          MR. WALLACE:  I DON'T THINK WE HAVE MORE FOR
 7   PLAINTIFFS, YOUR HONOR, OTHER THAN THANK YOU TO YOU AND YOUR
 8   STAFF FOR WORKING HARD ON THIS CASE.
 9          THE COURT:  AND THANK YOU TO ALL OF YOU.  THIS WAS A
10   HARD FOUGHT CASE.  I HAVE TO SAY IT WAS PRETTY INTIMIDATING
11   WITH SO MANY CLAIMS AND SO MANY BARRIERS AND A LOT OF
12   LITIGATION.
13          SO THANKS TO ALL OF YOU.  I THINK THIS IS A GOOD
14   SETTLEMENT THAT WILL BRING MEANINGFUL RELIEF TO THE CLASS.  SO
15   THANK YOU TO EVERYONE.
16          ANYONE ELSE WANT TO ADD ANYTHING?  OTHERWISE I'M GOING TO
17   THANK YOU AND WISH THAT YOU STAY IN GOOD HEALTH AND HAVE A
18   GREAT DAY.
19          ANYTHING ELSE?
20          MS. LAMPASONA:  NO, YOUR HONOR.
21          MR. WOLF:  THANK YOU, YOUR HONOR.
22          MR. CREECH:  THANK YOU, YOUR HONOR.
23          MR. WALLACE:  THANK YOU, YOUR HONOR.
24          THE COURT:  ALL RIGHT.  TAKE GOOD CARE OF YOURSELVES.
25   THANK YOU.
```

1                    MS. FISHER:  THANK YOU.

2                    MS. DARDARIAN:  THANK YOU, YOUR HONOR.

3                    THE CLERK:  THANK YOU.  COURT ADJOURNED.

4               (THE PROCEEDINGS WERE CONCLUDED AT 3:43 P.M.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF ZOOM PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18              DATED:  AUGUST 14, 2020

19

20

21

22

23

24

25